1   Andrew P. Bridges (SBN 122761)
    Jennifer Golinveaux (SBN 203056)
2   **WINSTON & STRAWN LLP**
    101 California Street
3   San Francisco, CA  94111-5802
    Telephone:     (415) 591-1000
4   Facsimile:     (415) 591-1400

5   Attorneys for Defendants
    GIGANEWS, INC. and LIVEWIRE SERVICES, INC.

6

7

8                   **UNITED STATES DISTRICT COURT**

9                 **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  PERFECT 10, INC., a California corporation,   )   **Case No. 11-CV-0905 H (MDD)**
                                                 )
12              Plaintiff,                        )   **MEMORANDUM OF POINTS AND**
                                                 )   **AUTHORITIES IN SUPPORT OF**
13         vs.                                    )   **DEFENDANTS' RULE 12(b)(6) MOTION**
                                                 )   **TO DISMISS**
14  GIGANEWS, INC., a Texas corporation;          )
    LIVEWIRE SERVICES, INC., a Nevada             )   **DATE: August 15, 2011**
15  corporation; and DOES 1 through 100,          )   **TIME: 10:30 a.m.**
    inclusive,                                    )   **Hon Marilyn L. Huff**
16                                                )   **COURTROOM 13 – Fifth Floor**
                Defendants.                       )
17  _____          )

18

19

20

21

22

23

24

25

26

27

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...............................................................................................1

II.  FACTUAL BACKGROUND ..............................................................................2

A.   The Parties ...............................................................................................2

1.   Perfect 10 .....................................................................................2

2.   Defendants ....................................................................................2

(a)   Defendants' Business .......................................................3

(b)   Defendants' Robust Copyright Policy .............................3

B.   The Usenet ...............................................................................................4

C.   Perfect 10's Correspondence With Giganews. ........................................5

D.   Perfect 10's Claims .................................................................................6

III. PERFECT 10 FAILS TO ALLEGE A SINGLE VALID CAUSE OF ACTION ...................6

A.   The Legal Standard on a Motion to Dismiss. ..........................................6

B.   Perfect 10's Copyright Infringement Claim Fails. ..................................7

1.   Perfect 10 Fails to Allege Volitional Conduct by Defendants, Which is Necessary for Direct Copyright Infringement. ...................................................7

2.   Perfect 10 Fails to State a Contributory Copyright Infringement Claim. ...........9

(a)   The Legal Standard for Contributory Copyright Infringement .............9

(b)   Perfect 10 Fails to State a Claim for Contributory Infringement ..........9

(c)   Perfect 10's Pre-Complaint Communications Cannot Establish that Defendants Had Knowledge of Direct Infringement. ...................10

(d)   Perfect 10's Fatally Flawed Notices Precluded Giganews from Taking Simple Measures to Prevent Infringement. ...........................11

3.   Perfect 10's Complaint Fails to State a Claim for Vicarious Copyright Infringement. ...................................................................12

(a)   The Legal Standard for Vicarious Copyright Infringement ................12

(b)   Perfect 10 Fails to Allege Adequately that Defendants Exercise Requisite Control Over Direct Infringers. ...........................................13

(c)   Perfect 10 Fails to Allege Adequately that Defendants Derived a Direct Financial Benefit from Direct Infringement. ........................13

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

i

(d)     Perfect 10's Allegations of Underlying Direct Infringement Are Too Speculative. ...................................................14

4.     In the Alternative, The Court Should Require a More Definite Statement on Copyright Claims. ...................................15

C.     Perfect 10's Trademark Infringement and Dilution Claims Fail. ...............15

1.     Perfect 10 Fails to State a Claim for Direct Trademark Infringement............15

2.     Perfect 10 Fails to State a Claim for Secondary Liability for Trademark Infringement. ...................................................16

(a)     Perfect 10 Fails to Allege Underlying Trademark Infringements. ...................................................17

(b)     Perfect 10 Fails to Allege Elements of Contributory Trademark Infringement or Vicarious Liability. ...................................................17

3.     Perfect 10 Fails to State a Claim for Dilution. ...................................................18

4.     The Court Should Dismiss Perfect 10's Lanham Act Claims Because They Are Disguised Copyright Claims. ...................................................18

IV.     THE COURT SHOULD DISMISS PLAINTIFF'S STATE-LAW CLAIMS .......................19

A.     The CDA Preempts Plaintiff's Unfair Competition and Right of Publicity Claims. ...................................................19

1.     The CDA Grants Broad Immunity. ...................................................19

2.     Defendants Qualify For CDA Immunity From The State-Law Claims. ...........20

(a)     Defendants are Providers and Users of an Interactive Computer Service. ...................................................20

(b)     Perfect 10 Sues Defendants For the Republication of Third-Party Content. ...................................................22

B.     Perfect 10 Lacks Standing to Bring Its Section 17200 Claim to the Extent the CDA Does Not Preempt the Claim. ...................................................23

C.     Perfect 10 Also Lacks Standing to Bring Its Publicity Claims. ...................................................23

V.     CONCLUSION. ...................................................25

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001) .......................................................................7, 10

*ACLU v. Reno*,
  929 F. Supp. 824 (E.D. Pa. 1996), *aff'd, sub.nom. Reno v. ACLU*,
  521 U.S. 844 (1997)............................................................................ passim

*Arista Records LLC v. Usenet.com, Inc.*,
  633 F. Supp. 2d 124 (S.D.N.Y. 2009)...........................................................8

*Ashcroft v. Iqbal*,
  556 U.S. ___, 129 S.Ct. 1937 (2009) ............................................. passim

*Balistreri v. Pacifica Police Dep't*,
  901 F.2d 696 (9th Cir. 1988) ........................................................................6

*Bell Atlantic v. Twombly*,
  550 U.S. 544 (2007)............................................................................. passim

*Birdsong v. Apple, Inc.*,
  590 F.3d 955 (9th Cir. 2009) ......................................................................23

*Carafano v. Metrosplash.com, Inc.*,
  339 F.3d 1119 (9th Cir. 2003) ....................................................................21

*Cole v. Allen*,
  3 F.R.D. 236 (S.D.N.Y. 1942) ....................................................................15

*Corbis Corp. v. Amazon.com, Inc.*,
  351 F. Supp. 2d 1090 (W.D. Wash. 2004)..............................................13, 18

*Costar Group Inc. v. Loopnet, Inc.*,
  373 F.3d 544 (4th Cir. 2004) ....................................................................7, 8

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
  539 U.S. 23 (2003)......................................................................................18, 19

*Ellison v. Robertson*,
  189 F. Supp. 2d 1051 (C.D. Cal. 2002), *rev'd in part on other grounds*,
  357 F.3d 1072 (9th Cir. 2004) ....................................................................8

*Fair Housing Council of San Fernando Valley v. Roommates.com*,
  521 F.3d 1157 (9th Cir. 2008) ....................................................................22

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

iii

*Field v. Google, Inc.*,
   412 F. Supp. 2d 1106 (D. Nev. 2006) .............................................................7, 8

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
   76 F.3d 259 (9th Cir. 1996) ....................................................................................16

*Fractional Villas, Inc. v. Tahoe Clubhouse*,
   [No. 08-cv-1396] 2009 U.S. Dist. LEXIS 4191 (S.D. Cal Jan. 22, 2009)............18

*Gikas v. Zolin*,
   6 Cal. 4th 841 (Cal. 1993)......................................................................................24

*Hudson v. Sherwood Securities Corp.*,
   C-86-20344-WAI, 1989 WL 534960 (N.D. Cal. May 9, 1989) .......................10, 12

*Io Group, Inc. v. Veoh Networks, Inc.*,
   586 F. Supp. 2d 1132 (N.D. Cal. 2008) .................................................................13

*James v. Screen Gems, Inc.*,
   174 Cal. App. 2d 650 (Cal. App. 1959) .................................................................24

*Kelly v. L.L. Cool J*,
   145 F.R.D. 32 (S.D.N.Y. 1992) .............................................................................15

*Kwikset Corp. v. Sup. Ct.*,
   51 Cal. 4th 310 (2011) ............................................................................................23

*Lugosi v. Universal Pictures*,
   25 Cal. 3d 813 (1979) .............................................................................................24

*Martin v. Walt Disney Internet Group*,
   No. 09-CV-1601, 2010 WL 2634695 (S.D. Cal. June 20, 2010)............................19

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
   545 U.S. 913 (U.S. 2005)..............................................................9, 10, 11, 13

*Meyer v. Holley*,
   537 U.S. 280 (2003) ................................................................................................12

*Murawski v. Pataki*,
   514 F. Supp. 2d 577 (S.D.N.Y. 2007).............................................................21, 22

*Parker v. Google, Inc.*,
   422 F. Supp. 2d 492 (E.D. Pa. 2006) *aff'd*,
   242 Fed. App'x 833 (3d Cir. 2007).............................................................. passim

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007)...................................................................11, 12, 13

*Perfect 10, Inc. v. CCBill LLC*,
   488 F.3d 1102 (9th Cir. 2007), *cert. denied*, 552 U.S. 1062 (2007)....................2, 20

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

iv

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
   494 F.3d 788 (9th Cir. 2007), *cert. denied*, 553 U.S. 1079 (2008)................................. passim

*Playboy Enters., Inc. v. Russ Hardenburgh, Inc.*,
   982 F. Supp. 503 (E.D. Ohio 1997) ....................................................................................8

*Religious Tech. Ctr. v. Netcom On-line Commc'n Servs., Inc.*,
   907 F. Supp. 1361 (N.D. Cal. 1995) .............................................................................. passim

*Rosen v. Hosting Servs., Inc.*,
   CV 10-216-CAS (FMOx), 201 WL 5630637 (C.D. Cal. Aug. 16, 2010) .............................11

*Rosetta Stone Ltd. v. Google, Inc.*,
   730 F. Supp. 2d 531 (E.D. Va. 2010) ...............................................................................18

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
   464 U.S. 417 (1984)...........................................................................................................10

*Stayart v. Yahoo! Inc.*,
   651 F. Supp. 2d 873 (E.D. Wisc. 2009)...........................................................................22

*Upper Deck Authenticated, Ltd. v. CPG DIRECT*,
   971 F. Supp. 1337 (S.D. Cal. 1997).................................................................................24

STATUTES AND RULES

15 U.S.C. § 1114(1)(a).........................................................................................................16

15 U.S.C. § 1125(a)(1)(A) ...................................................................................................16

15 U.S.C. § 1125(c)(1)-(2) ..................................................................................................18

15 U.S.C. § 1127 ..................................................................................................................16

17 U.S.C. § 101 ....................................................................................................................14

17 U.S.C. § 106(5) ...............................................................................................................14

47 U.S.C. § 230(c).................................................................................................................19

47 U.S.C. § 230(c)(1)..................................................................................................19, 20, 21

47 U.S.C. § 230(e)(3)............................................................................................................19

47 U.S.C. § 230(f)(2)......................................................................................................20, 21

47 U.S.C. § 230(f)(4)......................................................................................................21, 22

47 U.S.C. § 230(f)(4)(C)......................................................................................................21

Cal. Bus. & Prof. Code § 17200 ......................................................................................22, 23

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

v

Cal. Bus. & Prof. Code § 17204 ...................................................................................23

California Civil Code § 3344 ...............................................................................23, 24

California Civil Code § 3344.1 ....................................................................................24

Fed. R. Civ. P. 8(a)(2) ...................................................................................7, 15, 23

Fed. R. Civ. P. 10(c) ...........................................................................................4, 5, 7

Fed. R. Civ. P. 12(b)(6) ......................................................................................1, 10

Fed. R. Civ. P. 12(e) ..................................................................................................15

OTHER AUTHORITIES

C. Wright & A. Miller, *Federal Practice and Procedure* § 1327 .........................4, 5, 7

C. Wright & A. Miller, *Federal Practice and Procedure* § 1363 ......................... passim

Charles W. Adams, *Indirect Infringement From a Tort Law Perspective,*
    42 U Rich. L. Rev. 635 (2008)............................................................................12

Copyright Act § 106......................................................................................................7

Copyright Act § 501......................................................................................................7

Restatement (Third) of Agency § 703 (2005)...........................................................12

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

vi

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Perfect 10 is a publisher of adult content and an experienced serial litigant best known for bringing a series of copyright infringement lawsuits against a variety of companies such as CCBill, Visa and MasterCard, Google, Amazon.com, RapidShare, and Microsoft for their alleged involvement in third-party infringements on the Internet.

In this case, Perfect 10 has sued two providers of Usenet access.  Defendant Giganews, Inc. ("Giganews") and its predecessor have been operating for nearly twenty years and were among the earliest providers of Internet access in the state of Texas.  Like many other Internet Service Providers, Giganews's predecessor offered Usenet access for its local subscribers beginning in 1994. Defendant Giganews now operates the Usenet portion of the service.  Defendant Livewire Services, Inc. provides Usenet access to its subscribers.  It does not itself store Usenet messages on servers, but instead contracts with Giganews for access to Usenet messages and newsgroups stored on servers maintained by Giganews.

Usenet is one of the oldest computer network communications systems still being widely used.  Graduate students conceived of Usenet in the late 1970's.  It is an open electronic communications forum in which users read and post messages on various topics in categories called "newsgroups."  Because Usenet newsgroups reside on servers of various Internet service providers, Usenet service providers like Defendants are necessary to provide more comprehensive access to Usenet postings.

Perfect 10 has sued Defendants for direct and secondary copyright and trademark infringement, violation of publicity rights, and unfair competition because Defendants maintain and provide access to user-generated Usenet posts.  Defendants move pursuant to Rule 12(b)(6), Fed. R. Civ. P., to dismiss all of Plaintiff's claims.  Perfect 10 fails to state a claim for copyright infringement because it has failed to allege elements necessary to establish direct or indirect copyright infringement.  It fails to state a claim for trademark infringement or dilution because it fails to allege cognizable use of its marks in commerce or the requisite elements of secondary trademark infringement.  Finally, Plaintiff's two state-law claims (for violation of publicity rights

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1

and unfair competition) fail both because the Communications Decency Act preempts them and because Plaintiff lacks standing to assert the claims.  Because any amendment is futile, Defendants respectfully request that the Court dismiss all of Plaintiff's claims with prejudice.

II.    FACTUAL BACKGROUND

   A.    **The Parties**

      1.    **Perfect 10**

   Perfect 10, based in Los Angeles, is a purveyor of images of naked women and a frequent litigant.  Perfect 10 has brought dozens of lawsuits over the last decade and a half.  Although Perfect 10 claims that "rampant infringement" has driven it from both the magazine business (Compl. ¶ 14) and the business of "licensing of downloads of images for cell phones" (Compl. ¶ 15), it persistently demonstrates that its mission is to secure windfall statutory damages for infringement rather than curbing infringement.  While lamenting the demise of copyright, it buys up copyrights to base damages claims on them in litigation.  Notwithstanding repeated criticisms by the courts, Perfect 10 refuses to comply with standard notice procedures to remove images infringing its copyrights from Internet services.  Perfect 10's defective notices and litigation tactics are part of a crusade to impose on service providers either catastrophic damages or a formidable burden to seek out and remove all potentially infringing images, whether or not Perfect 10 has identified them or provided notices with required information, such as where the alleged infringements reside. *See Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1112-13 (9th Cir. 2007), *cert. denied*, 552 U.S. 1062 (2007)  (Perfect 10 repeatedly sent defective notices that "unduly burden service providers").

      2.    **Defendants**

   As Perfect 10 alleges, Defendants are service providers who provide access to the Usenet. Compl. ¶ 24.  In fact, Giganews and Livewire are two of the many service providers that provide such access.  Defendant Giganews is a Texas corporation headquartered in Austin, Texas.  It maintains servers in various locations around the world which, like servers owned by other entities, provide access to the various newsgroups that make up Usenet.  Defendant Livewire contracts with Giganews to provide Usenet access to its subscribers.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

2

(a)     **Defendants' Business**

Perfect 10 alleges that, as part of providing access to the Usenet, Defendants operate Usenet servers to disseminate Usenet articles.   "Defendants purportedly copy all of the materials on their servers from a global system of online bulletin boards called the USENET." Compl. ¶ 24 "Defendants store the infringing materials on their [Usenet] servers.  They program their servers to distribute infringing content to other servers hosted by other third parties.  Defendants' servers, in turn, are programmed to copy infringing materials from other third party servers."  Compl. ¶ 25. Perfect 10 also alleges that Defendants provide access to the Usenet for a fixed fee.  Compl. ¶ 24. Perfect 10 does not allege any direct human intervention or review by Defendants.  Compl. ¶¶24-47. It also does not allege that Defendants posted Usenet articles that infringed Perfect 10's copyrights.

Perfect 10 does not allege that any of Defendants' respective customers actually infringe Perfect 10's copyrights, trademarks, or other alleged rights.  It merely speculates that "a *user* interested in Perfect 10's works *might use* the search term 'Perfect 10,' 'P10,' or the names of Perfect 10 models," and that "[*u*]*sers may choose* to display articles from Defendants' servers or *can download* the files directly to their own computer."  Compl. ¶ 24 (emphasis added).

Plaintiff alleges Defendants infringe its trademarks "by providing lists of titles containing such marks when a user searches for one of Perfect 10's copyrighted works." Compl. ¶ 54.

(b)     **Defendants' Robust Copyright Policy**

Defendants do not tolerate infringing use of their services.  Their Terms of Use prohibit such use and their publicly available DMCA policies explain how copyright claimants can submit requests for removal of any infringing posts.  Defendants' websites require users to agree, as a condition of use, not to use Defendants' services for copyright infringement.  Each of Defendants' websites prominently posts its DMCA policy and states that violators will be dealt with promptly to include account termination.  *Eg*. Declaration of Thomas J. Kearney ("Kearney Decl."), ¶¶ 2-3, Exs. A and B (Giganews Terms of Service and DMCA Policy).  The Court may properly consider these documents from the Giganews website because the pleadings may be "supplemented by . . . any matter validly incorporated by reference" in the Complaint, and the Complaint refers to the relevant websites.  C. Wright & A. Miller, *Federal Practice and Procedure* § 1363, n.42.  When a plaintiff

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

3

fails to introduce a pertinent document as part of her pleading the defendant may introduce the document as an exhibit.  Fed. R. Civ. P. 10(c);  Wright & Miller, *supra*, § 1327.  These documents provide context for Perfect 10's correspondence with Giganews described  below.

## B.    The Usenet

Developed in the late 1970's, Usenet is one of the oldest computer network communications systems still being widely used.  The court in *ACLU v. Reno* provided detailed background concerning Usenet and its role as a communications network, and the role of Usenet service providers.  Unlike "'closed' networks, [which are] not linked to other computers or networks," the Internet is a "global Web of linked networks and computers."  *ACLU v. Reno*, 929 F. Supp. 824, 831 (E.D. Pa. 1996), *aff'd*, *sub.nom. Reno v. ACLU,* 521 U.S. 844 (1997).  "The Internet had its origins in 1969 as an experimental project of the Advanced Research Project Agency . . . and was called ARPANET."  *ACLU,* 929 F. Supp. at 831.  "At the same time that ARPANET was maturing . . . similar networks developed to link universities, research facilities, businesses, and individuals around the world.  These other formal or loose networks included . . .*USENET* . . . It is this series of linked networks (themselves linking computers and computer networks) that is today commonly known as the Internet."  *Id.* at 832 (emphasis added).

The *ACLU* court explained, "[t]he most common methods of communications on the Internet (as well as within the major online services)" include "'*USENET newsgroups*,'" e-mail, the World Wide Web, listserv, Internet Relay Chat, telnet, gopher, and ftp.  *Id.* at 834 (emphasis added).  "Taken together, these tools constitute a unique medium—known to its users as 'cyberspace'— located in no particular geographical location but available to anyone, anywhere in the world, with access to the Internet."  *Reno*, 521 U.S. at 851.  "User-sponsored newsgroups are among the most popular and widespread applications of Internet services, and cover all imaginable topics of interest . . .  [N]ewsgroups are open discussions and exchanges on particular topics."  *ACLU*, 929 F. Supp. at  834.  "There are thousands of such [news]groups, each serving to foster an exchange of information or opinion on a particular topic running the gamut from, say, the music of Wagner to Balkan politics to AIDS prevention to the Chicago Bulls."  *Reno*, 521 U.S. at 851.  The "content on the Internet is as diverse as human thought."  *Id*. at 870 (discussing protected speech on the Usenet)

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

(quotation marks and citation omitted).  "Articles" is the term for messages posted to Usenet newsgroups.  *ACLU*, 929 F. Supp. at 835.

A Usenet service provider's "local server makes available its postings to a group of Usenet servers, which do the same for other servers until all Usenet sites worldwide have obtained access to the postings, which takes a matter of hours. Unlike some other large on-line service providers, such as CompuServe, America Online, and Prodigy, [a Usenet provider] does not create or control the content of the information available to its subscribers."  *See Religious Tech. Ctr. v. Netcom On-line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1368 (N.D. Cal. 1995) (citation omitted).  "In 1994, approximately 70,000 messages were posted to newsgroups each day, and those messages were distributed to the approximately 190,000 [Usenet servers]."  *ACLU,* 929 F. Supp. at 835.  "The dissemination of messages to USENET servers around the world is an automated process that does not require direct human intervention or review."  *Id.*

C.    **Perfect 10's Correspondence With Giganews.**

Perfect 10 first wrote to Giganews in March 2009.  Compl. ¶ 31.[1]  A copy of that letter and the accompanying DVD are Exhibits A and B to the Decl. of Ronald B. Yokubaitis ("Yokubaitis Decl.") ¶ 2.  The Court may properly consider the letter and accompanying DVD here because the pleadings refer to them.  Wright & Miller, *supra*, §§ 1327, 1363 n.42; Fed. R. Civ. P. 10(c).

Perfect 10's March 25, 2009 letter claimed generally that Giganews was "stealing and selling massive quantities of not only our copyrighted materials but the copyrighted materials of most copyright holders."  The letter did not identify any particular Usenet postings that Plaintiff claimed to be infringing and did not identify any particular registration numbers for copyrightable work claimed by Perfect 10.  The letter merely attached a DVD with more than 1,400 images of naked and scantily clad women, but no discernable copyright registration numbers, and it claimed that the DVD contained a "sampling of [Perfect 10's] copyrighted materials."  Kearney Decl. ¶ 4.

Giganews promptly responded to the March 25, 2009 letter explaining that Usenet contained over 110,000 newsgroups and billions of articles.  Yokubaitis Decl. ¶ 3, Ex. C at 8, 11; Compl. ¶ 31

---

[1] Plaintiff does not claim to ever have contacted Defendant Livewire, and Livewire has never received a communication from Plaintiff apart from this lawsuit.

Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5802

Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5802

1  ("Giganews wrote back . . .").  Giganews explained that "[e]ach and every article posted to a Usenet

2  server has its own unique Message ID.  We cannot locate any article without the Message ID and

3  therefore Giganews will need the full headers and/or Message-Ids to find the specific infringing

4  material and remove it."  Giganews asked Perfect 10 to provide this basic information necessary to

5  identify any allegedly infringing Usenet messages.  *Id*.  Perfect 10 refused.

6          In its Complaint Perfect 10 now alleges that only approximately 800 images of the 1,400

7  images on the March 25, 2009 DVD are Perfect 10's copyrighted images.  Compl. ¶ 31.  Perfect 10

8  alleges that Defendants have infringed approximately 15,000 images. Compl. ¶ 18.

9          Perfect 10 alleges that it wrote to Giganews also in August 2010.  Compl. ¶ 32.  Perfect 10

10  did not attach a copy of that email to its Complaint.  It is Exhibit D to the Yokubaitis Declaration.

11  The August 2010 email neither mentioned Perfect 10, identified any of Perfect 10's copyrighted

12  works, nor identified infringements of such works.

13          D.      **Perfect 10's Claims**

14          Perfect 10 asserts the following groups of claims:  (1) direct and indirect copyright

15  infringement, based upon Defendants' provision of access to Usenet, which contains material that

16  infringes its copyrights; (2) trademark infringement and dilution based upon Defendants' alleged

17  provision of Usenet search results that contain Perfect 10's marks; (3) unfair competition based upon

18  the alleged copyright and trademark infringement; and (4) violation of publicity rights it claims to

19  have acquired from models, based upon Defendants allegedly "providing lists of models' names and

20  by returning images that are not of the model," as part of Usenet search results (Compl. ¶ 74).

21  III.    PERFECT 10 FAILS TO ALLEGE A SINGLE VALID CAUSE OF ACTION

22          A.      **The Legal Standard on a Motion to Dismiss.**

23          Dismissal is appropriate where the allegations of a claim or counterclaim do not establish a

24  cognizable legal theory or fail to allege facts that would support such a theory.  *Balistreri v. Pacifica

25  Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  "To survive a motion to dismiss, a complaint must

26  contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

27  face.'"  *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic v.

28  Twombly*, 550 U.S. 544, 570 (2007)).  While the Court must accept as true all of the well-pleaded

6

allegations of the complaint, this rule "is inapplicable to legal conclusions." *Id.* Thus, a complaint that merely offers "'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient to survive a motion to dismiss. *Id.* (quoting *Twombly*, 550 U.S. at 557). Likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Id.* The "plausibility standard . . . asks for more than the sheer possibility that a defendant has acted unlawfully." *Id.* Where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to satisfy the requirements of Fed. R. Civ. P. 8(a)(2), and should be dismissed. *Id.* at 1950.

The Court may properly consider documents referred to in the pleadings. Wright & Miller, *supra*, §§ 1327, 1363; Fed. R. Civ. P. 10(c).

### B.       Perfect 10's Copyright Infringement Claim Fails.

Perfect 10's claim for copyright infringement fails because it has failed to adequately allege elements necessary to state a claim for either direct or secondary copyright infringement.

### 1.       Perfect 10 Fails to Allege Volitional Conduct by Defendants, Which is Necessary for Direct Copyright Infringement.

To present a *prima facie* case of direct copyright infringement, Perfect 10 must allege adequately that (1) it owns the copyright for the allegedly infringed materials; and (2) the Defendants violated at least one exclusive right granted to copyright holders under 17 U.S.C. § 106. *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001).

Direct infringement requires "some element of volition or causation" by a defendant. *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 297 (E.D. Pa. 2006) (citation and quotation marks omitted); *Field v. Google, Inc.*, 412 F. Supp. 2d 1106, 1115 (D. Nev. 2006). The "automatic copying, storage, and transmission of copyrighted materials, when instigated by others, does not render an [Internet service provider] strictly liable for copyright infringement under §§ 501 and 106 of the Copyright Act." *Costar Group Inc. v. Loopnet, Inc.*, 373 F.3d 544, 555 (4th Cir. 2004). This derives from the seminal case of *Religious Tech. Ctr. v. Netcom On-line Commc'n Servs., Inc.*, 907 F. Supp. 1361 (N.D. Cal. 1995)). Cases regularly find that Internet service providers' automated activities, such as

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

7

those Perfect 10 alleges here, are not "volitional" and therefore do not constitute direct infringement. *See, e.g.*, *Netcom*, 907 at 1369-70; *Field*, 412 F. Supp. 2d at 1115; *Costar*, 373 F.3d at 555.

As discussed above, "[t]he dissemination of messages to USENET servers around the world is an automated process that does not require direct human intervention or review." *ACLU*, 929 F. Supp. at 835.  Because Usenet messaging is automated, Internet service providers, like Defendants, could not be found guilty of direct copyright infringement based on copies of works that were made and stored on its USENET servers.  *Netcom*, 907 F. Supp. at 1372-73 (Usenet provider not guilty of direct copyright infringement); *Ellison v. Robertson*, 189 F. Supp. 2d 1051, 1056-57 (C.D. Cal. 2002), *rev'd in part on other grounds*, 357 F.3d 1072 (9th Cir. 2004) (same).  Direct liability applies only to those users who are responsible for the actual copying by posting the infringing articles.  *See Netcom*, 907 F. Supp. at 1372-73; *Ellison*, 189 F. Supp. 2d at 1057.

Perfect 10 merely alleges that Defendants operate Usenet servers and provide access to their respective customers for a fixed fee.  *E.g.*, Compl. ¶¶ 24, 25.  Perfect 10 fails to allege non-automated conduct, i.e. direct human intervention to satisfy the element of volition.  *Compare Netcom*, *Field*, and *Ellison with, e.g.*, *Playboy Enters., Inc. v. Russ Hardenburgh, Inc.*, 982 F. Supp. 503, 508, 513 (E.D. Ohio 1997) (direct intervention to review and select infringing files for release onto  system) and *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 133, 148-49 (S.D.N.Y. 2009) (defendants took active steps including human review.)

Perfect 10 may argue that it alleges the *possibility* that Defendants *could* act volitionally because Defendants "control which materials are distributed to and copied from other third party servers."  *See* Compl. ¶ 25.  But Perfect 10 does not, and cannot, allege human review or manual selection of Usenet content to establish volitional conduct.  While factual allegations in the Complaint need not be detailed, they must suffice to "raise a right to relief above the speculative level"; "labels and conclusions" cannot suffice.  *Twombly*, 550 U.S. at 555.  The "sheer possibility that a defendant acted unlawfully" does not "raise a right to relief above the speculative level . . . ." *Iqbal*, 129 S. Ct. at 1949;  *Twombly*, 550 U.S. at 555.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

2.　　**Perfect 10 Fails to State a Contributory Copyright Infringement Claim.**

(a)　　**The Legal Standard for Contributory Copyright Infringement**

A defendant "infringes contributorily by intentionally inducing or encouraging direct infringement" by a third party. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). The *Grokster* standard requires "'active steps . . . taken to encourage direct infringement,' such as *advertising infringing use* or *instructing how to engage in an infringing use*, show *an affirmative intent that the product be used to infringe*, and a showing that *infringement was encouraged* overcomes the law's reluctance to find liability when a defendant merely sells a commercial product suitable for some lawful use." *Id.* at 936 (citations omitted) (emphasis added). Computer system operators induce copyright infringement when they "'communicate[] an inducing message to their . . . users,' the classic example of which is an 'advertisement or solicitation that broadcasts a message designed to stimulate others to *commit violations*.'" *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 801 (9th Cir. 2007), *cert. denied*, 553 U.S. 1079 (2008) (quoting *Grokster*, 545 U.S. at 937) (emphasis added).

(b)　　**Perfect 10 Fails to State a Claim for Contributory Infringement.**

Perfect 10 alleges no "'active steps . . . taken [by Defendants] to encourage direct infringement,' such as *advertising <u>infringing use</u>* or *instructing how to engage* in an infringing use, show *an affirmative intent that the product <u>be used to infringe</u>*, and a showing that *<u>infringement was encouraged</u>*." *See Grokster,* 545 U.S. at 936 (citations omitted) (emphasis added).  Perfect 10 failed to allege "the classic example" of "an 'advertisement or solicitation that broadcasts a message designed to stimulate others to *commit violations*.'" *Visa*, 494 F.3d at 801 (quoting *Grokster,* 545 U.S. at 937) (emphasis added).

The documents referred to in the Complaint instead show that Giganews took *active steps* to *prevent* infringement.  Giganews' April 2009 letter to Perfect 10 shows that Giganews *instructed* Perfect 10 how to "help us, to help you" prevent infringement, shows Giganews' *affirmative intent* to prevent infringement, and that Giganews *encouraged* preventing infringement.  "[W]hen the allegations of the complaint are refuted by an attached document, the court need not accept the

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

9

1    allegations as being true."  *Hudson,* 1989 WL 534960 at *1 (dismissing claims pursuant to Rule

2    12(b)(6)) (citations and quotation marks omitted); Wright & Miller, *supra,* § 1363 n.33.

3           Unable to allege requisite facts of inducement, Perfect 10 falls back on an argument that

4    Defendants must know about infringements on their Usenet system because the Usenet may be used

5    for infringing purposes.  Compl. ¶¶ 26, 28.  The Supreme Court has rejected such an argument.  In

6    the *Sony* case, the Supreme Court ruled that constructive knowledge may not rest upon knowledge of

7    the characteristics of a product or even actual uses of a product if the product is capable of

8    substantial non-infringing uses. *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417

9    (1984); *Grokster*, 545 U.S. at 941 ("product's capability of substantial lawful employment should bar

10   the imputation of fault and consequent secondary liability for the unlawful acts of others"); *id.* at 934

11   ("*Sony's* rule limits imputing culpable intent as a matter of law from the characteristics or uses of a

12   distributed product").  Moreover, analysis that focuses solely on "current uses," rather than "the

13   system's capabilities," is improper.  *Napster,* 239 F.3d at 1020-21 (citing *Sony,* 464 U.S. at 442-43).

14   The "thousands of such [Usenet news]groups, each serving to foster an exchange of information or

15   opinion on a particular topic running the gamut from, say, the music of Wagner to Balkan politics to

16   AIDS prevention to the Chicago Bulls," highlight that the Usenet is capable of significant non-

17   infringing uses.  *Reno,* 521 U.S. at 851.

              (c)    **Perfect 10's Pre-Complaint Communications Cannot Establish
18                          that Defendants Had Knowledge of Direct Infringement.**

19

20          Perfect 10 relies heavily upon its communications to Giganews.  But a notice that fails to

21   "make any mention of specific registered works" also "fails [as an] alleg[ation] that [defendants] had

22   requisite knowledge of a third party's infringing activity, a failure that is fatal to this [contributory

23   infringement] claim." *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 499 n.5 (E.D. Pa. 2006) *aff'd*,

24   242 Fed. App'x 833 (3d Cir. 2007) (per curiam) (dismissing copyright claims relying on a deficient

25   notice).  As discussed above, the Perfect 10's March 25, 2009 letter, accompanying DVD, and the

26   August 2010 email each failed to name the registration number for a registered work owned by

27   Perfect 10 or Zada and fail to identify *any* infringing Usenet postings.  Perfect 10's notices, and its

28   contributory infringement claim, are defective.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Another fatal flaw of the DVD accompanying Perfect 10's March 25, 2009 letter is that it misidentifies the allegedly infringing materials.  Over 40% of the images on it were not Perfect 10's.  Kearney Decl. ¶5.  As a matter of common sense, a notice that only approximates a random coin flip cannot impute knowledge onto Defendants.  Additionally, a "notice is insufficient *as a matter of law* to impart actual knowledge" of direct infringement when "it misidentifies the allegedly infringing material."  *Rosen v. Hosting Servs., Inc.*, CV 10-2186, 2010 WL 5630637, *3 (C.D. Cal. Aug. 16, 2010) (emphasis added) (quotation marks omitted).

Yet another flaw is that Perfect 10 did not allege that it notified Defendant Livewire.

Even ignoring all those fatal flaws, Perfect 10 fails to allege facts that meet the Ninth Circuit's post-*Grokster* requirement of "'*actual* knowledge that *specific* infringing material is available using its system.'"  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007) (emphasis in original) (citation omitted).  "[M]ere knowledge of infringing potential or of actual infringing uses would not be enough here to subject [defendants] to liability.  Nor would ordinary acts incident to product distribution, such as offering customers technical support or product updates, support liability in themselves."  *Grokster,*  545 U.S. at 937.

> (d)     **Perfect 10's Fatally Flawed Notices Precluded Giganews from Taking Simple Measures to Prevent Infringement.**

Even if Perfect 10 had properly alleged the requisite intent to promote infringement (which it failed to do), Perfect 10 must also allege adequately a material contribution to underlying direct infringements.  Following *Grokster*, the Ninth Circuit articulated that a computer system operator materially contributes to copyright infringement when it "can 'take simple measures to prevent further damage' to copyrighted works, yet continues to provide access to infringing works."  *Amazon.com*, 508 F.3d at 1172  (emphasis in original) (quoting discussion of substantial participation element in *Netcom,* 907 F. Supp. at 1375).

As discussed above, the information in the Perfect 10's March 25, 2009 letter and DVD was not specific or accurate, thereby refuting Perfect 10's allegations that (a) it provided Giganews proper and accurate notice, (b) Giganews could have found infringing images based on that notice, (c) Giganews could have blocked infringing images based on that notice, and (d) Giganews failed to

11

**Winston & Strawn LLP**
101 California Street
San Francisco, CA 94111-5802

act properly based on that notice.  Compl. ¶ 31.  "[W]hen the allegations of the complaint are refuted by an attached document, the court need not accept the allegations as being true."  *Hudson v. Sherwood Securities Corp.*, C-86-20344-WAI, 1989 WL 534960, *1 (N.D. Cal. May 9, 1989) (citations and quotation marks omitted); *Wright & Miller, supra*, § 1363 n.33.

Because Perfect 10 has not alleged facts constituting contributory copyright infringement, the Court should dismiss that claim.

3.   **Perfect 10's Complaint Fails to State a Claim for Vicarious Copyright Infringement.**

(a)   **The Legal Standard for Vicarious Copyright Infringement**

Vicarious liability holds a defendant liable for another's actions under a narrow set of conditions.  *Amazon.com,* 508 F.3d at 1175.  "[V]icarious [copyright] infringement's roots lie in the agency principles of *respondeat superior."  Visa,* 494 F.3d at 802.  Traditionally, a principal may be liable for the torts of an agent if the agent is acting within the scope of employment.  Restatement (Third) of Agency § 703 (2005).  Inherent in a principal-agent relationship is the ability of the principal to supervise and control the behavior of the agent.  *Id.* § 1.01 (2005).

In *Meyer v. Holley*, 537 U.S. 280 (2003), the Supreme Court clarified the common-law basis of vicarious liability and emphasized its narrow application to federal statutory torts.  The unanimous Court held that common-law principles of secondary liability, including vicarious liability, apply whenever Congress legislates a tort and does not specify a different standard for vicarious liability.  *Id.* at 286.  The Court held that Meyer could not be liable because under common law a corporate officer would not normally be liable for actions of the corporation.  *Id.*  Since the Copyright Act is silent on vicarious liability, courts must therefore apply "traditional principles" to vicarious liability claims in copyright law.  *See* also Charles W. Adams, *Indirect Infringement from a Tort Law Perspective*, 42 U Rich. L. Rev. 635, 671-74 (2008).

To conform to *Meyer*'s teachings, Perfect 10 must allege adequately that Defendants had the indicia of a principal-agent relationship with the direct infringers, namely Usenet "users."  *See* Compl. ¶ 24.  The Complaint must contain facts sufficient to show (a) that Defendants "exercise[] the requisite control over the direct infringer and [(b)] that the defendant[s] derive[] a direct financial

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

12

1  benefit from the direct infringement."  *Amazon.com,* 508 F.3d at 1173 (citing *Grokster,* 545 U.S. at

2  930 n.9).

3        (b)      **Perfect 10 Fails to Allege Adequately that Defendants Exercise**
            **Requisite Control Over Direct Infringers.**
4

5        Perfect 10 must have "allege[d] specific conduct by a third party which [Defendants] may

6  have had the right and ability to supervise" to sustain a vicarious infringement claim.  *Parker,* 422 F.

7  Supp. 2d at 500.  This right and ability to supervise the infringing conduct requires the ability to

8  "directly control" the "actual infringing activities."  *Visa,* 494 F.3d at 805 n.16.

9        The requisite ability "cannot simply mean the ability of a service provider to block or remove

10  access to material posted on its website or stored on its system.  *Io Group, Inc. v. Veoh Networks,*

11  *Inc.*, 586 F. Supp. 2d 1132, 1151 (N.D. Cal. 2008).  Something more is needed.  For example, a

12  computer system operator may act as the principal in an *respondeat superior* relationship when (a)

13  the computer system "existed solely to provide the site and facilities for copyright infringement, and

14  [(b)] its control over its system was directly intertwined with its ability to control the infringing

15  activity."  *Io Group,* 586 F. Supp. 2d at 1153; *Visa*, 494 F.3d at 799 n.10.

16        Perfect 10 fails to allege facts establishing that Defendants possessed the requisite right and

17  ability to supervise infringing activity.  Perfect 10 does not allege that the Usenet existed *solely* to

18  facilitate copyright infringement or that Defendants created it for the purpose for providing a forum

19  for easy copyright infringement.  *See* Compl. ¶¶ 26, 28.  On the contrary, the Usenet is a vibrant and

20  easy forum for a wide range of protected free speech, including speech concerning music, politics,

21  and sports.  *Reno,* 521 U.S. at 851.  Merely providing a computerized platform, whether for articles,

22  newsgroups, or even online shopping, cannot establish the right and ability to supervise infringing

23  activity.  *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1109-10 (W.D. Wash. 2004) (no

24  right and ability to control infringing activities of retailers using Amazon's platform).

25        (c)      **Perfect 10 Fails to Allege Adequately that Defendants Derived a**
            **Direct Financial Benefit from Direct Infringement.**
26

27        Perfect 10 alleges that Defendants provided access to the Usenet for a fixed fee and

28  generated revenues from those fixed fees.  Compl. ¶¶24, 26, 28 ("Defendants sell to their customers

13

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

for as little as $4.99 per month, access to their [Usenet] servers").  A fixed fee, however, cannot constitute a direct financial benefit required for vicarious infringement.  *Netcom,* 907 F. Supp. at 1377-78 (no vicarious liability of a Usenet access provider that charged a fixed fee).  Plaintiff attempts to sidestep this roadblock by mischaracterizing Defendants' providing access to the Usenet for a fixed fee as a "sale" of "pirated materials" (akin to defendants selling contraband apples and oranges to their respective customers).  Compl. ¶ 40.  *See, e.g., id.* ¶¶ 23, 28, 32 (reselling and selling infringing or pirated content), ¶¶ 3, 28, 67 (selling memberships).  Plaintiff's characterizations, nonetheless, stem from a sole operative factual allegation: that Defendants provide access to the Usenet for a fixed fee.  The "court need not accept [Perfect 10's] conclusory allegations of law or unwarranted inferences."  *Visa,* 494 F.3d at 794.

Perfect 10 also fails to allege adequately any other facts that could be a direct financial benefit.  Its claim for vicarious liability therefore fails.

(d)    **Perfect 10's Allegations of Underlying Direct Infringement Are Too Speculative.**

Perfect 10 merely speculates that "a *user* interested in Perfect 10's works *might use* the search term 'Perfect 10,' 'P10,' or the names of Perfect 10 models," and that "[u]sers *may choose* to display[2] articles from Defendants' servers or *can download* the files directly to their own computer."  Compl. ¶ 24 (emphasis added).  Without more, Perfect 10 merely alleges a string of speculations: (1) there *may be* a user, (2) who *may have* conducted a search for Perfect 10 copyrighted works, (3) and then *may have* directly infringed Perfect 10's copyrights because that speculative user *may have* downloaded an infringing image, and (4) that this speculative direct infringer *may have* a relationship with a Defendant that warrants holding that Defendant vicariously liable as the principal in a *respondeat superior* agency.

Although factual allegations in the Complaint need not be detailed, they must "raise a right to relief above the speculative level . . ."  *Twombly,* 550 U.S. at 555.  "The plausibility standard is not

---

[2]  Perfect 10 fails to allege a direct infringement by those users based on a public display violation because Perfect 10 failed to allege adequately facts that those users displayed images *publicly*.  17 U.S.C. § 101 (definition to display a work "publicly"); 17 U.S.C. § 106(5) (rights to display a work publicly).  Without direct infringement by those users, Perfect 10's vicarious liability claim concerning its public display rights also fails.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1   akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant

2   acted unlawfully." *Iqbal*, 129 S. Ct. at 1949.  Perfect 10 has failed to meet that standard.

3       **4.**   **In the Alternative, The Court Should Require a More Definite Statement on Copyright Claims.**

4

5       Perfect 10's allegations are too vague to provide (a) fair notice of which registered works

6   Defendants allegedly infringed or (b) whether Defendants even infringed a specific registered work.

7   *See Twombly*, 550 U.S. at 555 (2007) (the fair notice standard under Fed. R. Civ. P. 8(a)(2)).

8       A more definite statement under Rule 12(e) is appropriate where a plaintiff fails to allege

9   properly one or more elements of a copyright claim. *See, e.g., Kelly v. L.L. Cool J*, 145 F.R.D. 32

10   (S.D.N.Y. 1992) (granting motion because of inadequate ownership allegations); *Cole v. Allen*, 3

11   F.R.D. 236, 237 (S.D.N.Y. 1942) (granting motion because defendant "entitled to know *what*

12   *particular portion* of the copyrighted work [it is] charged with having infringed") (emphasis added).

13       Absent dismissal, a more definite statement is especially appropriate because Perfect 10 fails

14   to identify specific registered works that Defendants allegedly infringed.  A more definite statement

15   would provide Defendants fair notice of the scope of Perfect 10's allegations by:

16       (a) identifying which registration in Exhibit 1 of the Complaint that Perfect 10 alleges

17   Defendants infringed;

18       (b) identifying each registration associated with each images in Exhibit 2 of the Complaint;

19       (c) identifying each registration associated with each of the images that Defendants allegedly

20   infringed.  *See* Compl. ¶ 18 (identifying more than 15,000 images), ¶ 29 (identifying more than

21   165,000 images); and

22       (d) identifying which particular portions of each registered work that Perfect 10 alleges that

23   Defendants infringed.

24       **C.**   **Perfect 10's Trademark Infringement and Dilution Claims Fail.**

25       Perfect 10 also fails to state a claim for direct or indirect trademark infringement.

26       **1.**   **Perfect 10 Fails to State a Claim for Direct Trademark Infringement.**

27       Perfect 10 alleges that Defendants use its trademarks by providing to users search result lists

28   containing file names with Perfect 10's trademarks.  Compl. ¶ 54.  A plaintiff must show that a

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

15

1  defendant *uses in commerce* trademarks (a) "in connection with the sale, offering for sale,

2  distribution, or advertising of any goods or services on or in connection with which such use is likely

3  to cause confusion" or (b) in a way which "is likely to cause confusion . . . as to the origin,

4  sponsorship, or approval of [Defendants'] goods, services, or commercial activities by another

5  person." 15 U.S.C. § 1114(1)(a); 15 U.S.C. § 1125(a)(1)(A).  The Lanham Act requires that

6  Defendants "use in commerce" Perfect 10's trademarks by "us[ing] or display[ing] in the sale or

7  advertising of services and the services are rendered in commerce." 15 U.S.C. § 1127 (defining "use

8  in commerce").

9      Perfect 10, however, fails to allege adequately that Defendants use Perfect 10's trademark in

10  commerce.  Perfect 10 also fails to allege any advertisement by Defendants using Perfect 10's

11  trademarks or any other facts showing that Defendants rely upon Perfect 10's trademarks to sell

12  Defendant's services.  Perfect 10 fails to allege that Defendants used Perfect 10's trademarks as a

13  keyword to place advertisements or to sell advertising space.

14      Furthermore, Perfect 10 does not adequately allege facts that demonstrate that users would

15  likely be confused.  Perfect 10's "[t]hreadbare recitals of the elements of a cause of action, supported

16  by mere conclusory statements" are insufficient to state a claim.  *Iqbal*, 129 S.Ct. at 1949 (2009).

17  Because Perfect 10's allegations lack the basic elements for a trademark infringement claim; the

18  Court should dismiss that claim.

19          2.    **Perfect 10 Fails to State a Claim for Secondary Liability for Trademark**
                  **Infringement.**
20

21      "The tests for secondary trademark infringement are even more difficult to satisfy than those

22  required to find secondary copyright infringement."  *Visa,* 494 F.3d at 806 (9th Cir. 2007) (citing

23  *Sony,* 464 U.S. at 439 n. 19); *Fonovisa*, *Inc. v. Cherry Auction, Inc.,* 76 F.3d 259, 265 (9th Cir. 1996).

24      "While the tests for such infringement are somewhat different in the trademark context,

25  Perfect 10's factual allegations in support of these claims are essentially identical to those alleged in

26  Perfect 10's copyright claims, and they fail to state a claim for similar reasons."  *See Visa,* 494 F.3d

27  at 806 (dismissing Perfect 10's trademark claims).

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

(a)      **Perfect 10 Fails to Allege Underlying Trademark Infringements.**

As a threshold matter, Perfect 10 must have alleged adequately a direct trademark infringement by third party in order for *secondary* liability to attach to Defendants.  Perfect 10, however, fails to allege a *primary* trademark infringement by users.  Perfect 10 fails to allege a use in commerce by any user.  Even if Perfect 10 had, it still failed to allege a likelihood of confusion stemming from such a primary infringement.

Because Perfect 10 fails to allege the prerequisite primary infringement, the Court must dismiss the contributory and vicarious trademark infringement claims.

(b)      **Perfect 10 Fails to Allege Elements of Contributory Trademark Infringement or Vicarious Liability.**

Assuming for argument only that Perfect 10 had alleged properly a primary infringement, its secondary infringement claims would still fail.

> To be liable for contributory trademark infringement, a defendant must have (1) intentionally induced the primary infringer to infringe, or (2) continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied.  When the alleged direct infringer supplies a service rather than a product, under the second prong of this test, the court must consider the extent of control exercised by the defendant over the third party's means of infringement.  For liability to attach, there must be direct control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark.

*Visa,* 494 F.3d at 806 (citations and quotation marks omitted).

Perfect 10 fails to allege facts of any conduct showing intentional inducement of trademark infringement: no advertisement, no solicitation, no broadcasts of such a message.  Additionally, Perfect 10 fails to show that Defendants possessed knowledge of any trademark infringement by users.

"Vicarious liability for trademark infringement requires a finding that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product."  *Visa*, 494 F.3d at 806 (citations and quotation marks omitted).  Perfect 10 fails to allege any such facts.  The Court should therefore dismiss the vicarious trademark infringement claim.

Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5802

17

3.     **Perfect 10 Fails to State a Claim for Dilution.**

To sustain a trademark dilution claim, Perfect 10 must allege adequately that (a) its marks are famous, (b) Defendants used in commerce Perfect 10's trademarks in a way "likely to cause dilution by blurring or dilution by tarnishment"; (c) similarity between Defendants' mark and Perfect 10's mark gives rise to an association between the marks, and (d) and the resulting association is likely to impair the distinctiveness or reputation of the famous mark. *Rosetta Stone Ltd. v. Google, Inc.*, 730 F. Supp. 2d 531, 550 (E.D. Va. 2010); 15 U.S.C. § 1125(c)(1)-(2).

As discussed above, Perfect 10 fails to allege that Defendants uses Perfect 10's trademarks in commerce. Furthermore, Perfect 10 fails to allege that Defendants use Perfect 10's marks (or similar marks) as source identifiers for Defendants' own services. This additional failure is fatal to Perfect 10's dilution claim. "Absent proof that [defendant search engine] uses the [plaintiff's] Marks to identify its *own* goods and services, the Court finds that [defendant] is not liable for trademark dilution." *Rosetta Stone*, 730 F. Supp. 2d at 550 (emphasis in original).

4.     **The Court Should Dismiss Perfect 10's Lanham Act Claims Because They Are Disguised Copyright Claims.**

Perfect 10 bases its Lanham Act claims and Copyright Act claims on the same set of alleged misconduct by Defendants. In *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), the Supreme Court thwarted an effort by a plaintiff to use the Lanham Act as an alternative to copyright law where the plaintiff could no longer enforce copyright in a work that had passed into the public domain. Here, Perfect 10 uses the Lanham Act as a vain alternative to fatally defective copyright claims.

> The Supreme Court in *Dastar* [. . . ] cautioned against over-extending or misusing Lanham Act protection of trademark and competition "into areas traditionally occupied by patent or copyright." After *Dastar*, district courts in the Ninth Circuit "have been reluctant to allow an overlap between claims involving the Lanham Act and copyright law and have dismissed Lanham Act claims where the copyright laws provided an adequate remedy." *Corbis*, 351 F.Supp.2d at 1116; *Fractional Villas, Inc. v. Tahoe Clubhouse*, [No. 08-cv-1396] 2009 U.S. Dist. LEXIS 4191 *10-11 [(S.D. Cal Jan. 22, 2009) (Gonzalez, C.J.)] (dismissing plaintiff's Lanham claim against defendants for copying information from plaintiff's website).

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

*Martin v. Walt Disney Internet Group*, No. 09-CV-1601, 2010 WL 2634695, *8 (S.D. Cal. June 20, 2010) (dismissing plaintiff's Lanham Act claim against defendants for copyrighted information from plaintiff's website) (quoting *Dastar*, 539 U.S. at 34, 37).

This Court should likewise dismiss Perfect 10's Lanham Act claims.

## IV.   THE COURT SHOULD DISMISS PLAINTIFF'S STATE-LAW CLAIMS

The Court should also dismiss Perfect 10's state-law claims for violation of California's unfair competition law (Claim 4) and California's statutory and common-law right of publicity (Claim 5), because the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c), preempts them. To the extent Perfect 10's unfair competition claim purports to rest on grounds not covered by the CDA, Perfect 10 lacks standing to bring such a claim.  The Court should dismiss the right of publicity claim for the additional reason that publicity rights of living individuals are non-assignable in California, and the Plaintiff cannot invoke them in this case.

### A.   The CDA Preempts Plaintiff's Unfair Competition and Right of Publicity Claims.

Plaintiff's state-law claims, for both unfair competition and violation of statutory and common-law right of publicity, rest upon Defendants' alleged republication of Usenet content provided by others.  This is precisely the kind of liability that the CDA immunizes, and the Court should dismiss the claims for this reason alone.

#### 1.   The CDA Grants Broad Immunity.

The CDA states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).  With a few specified exceptions not applicable here, Section 230 provides broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service, and expressly preempts any state law to the contrary.  *See* 47 U.S.C. §§ 230(c)(1), (e)(3).

The Ninth Circuit has explicitly held that the CDA preempts both of the state-law claims Perfect 10 has brought in this matter. In another case *by Perfect 10*, it held that CDA immunity extended to state-law claims, including putative state intellectual property claims, and the court

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

19

1  found that defendants were "eligible for CDA immunity for all of the state claims raised by Perfect

2  10," including unfair competition and publicity like those Perfect 10 asserts here.  *CCBill*, 488 F.3d

3  at 1118-19.

4          2.     **Defendants Qualify For CDA Immunity From The State-Law Claims.**

5        Because Defendants are providers or users of an "interactive computer service" and are being

6  sued as the "publisher or speaker of any information" provided by a third–party, they are entitled to

7  CDA immunity.  47 U.S.C. § 230(c)(1).

8          (a)     **Defendants are Providers and Users of an Interactive Computer**

9                  **Service.**

10        CDA immunity applies to a defendant who is either a provider or a user "of an interactive

11  computer service," which the statute defines as:

12            any information service, system, or access software provider that
   provides or enables computer access by multiple users to a computer

13            server, including specifically a service or system that provides access
   to the Internet. . . . .

14

15  47 U.S.C. § 230(f)(2).  Defendants provide just such services:  They give users access to third party

16  Usenet content.  Perfect 10 concedes that each of the Defendants "operates . . . internet websites."

17  Compl. ¶ 23.[3]  Each "sell[s] to their customers . . . access to their servers." Compl. ¶ 24. The

18  information on  these servers is part of the "global system of online bulletin boards called . . .

19  USENET." *Id.* Usenet is one of the networks that makes up the Internet. *See, e.g., ACLU,* 929 F.

20  Supp. at 832.  In short, Defendants are among the businesses for whose protection Congress

21  explicitly enacted the CDA.

22        The CDA also immunizes "any . . . access software provider that provides or enables

23  computer access by multiple users to a computer server."  47 U.S.C. § 230(f)(2).  The CDA defines

24  an "access software provider" as:

25            a provider of software (including client or server software), or
   enabling tools that do any one or more of the following:

26

27                (A) filter, screen, allow, or disallow content;

28      [3] Because the Court must treat Perfect 10's factual allegations as true, this motion focuses on the
   allegations in Perfect 10's complaint. Defendants do not concede the truth of the allegations.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

(B) pick, choose, analyze, or digest content; or

(C) transmit, receive, display, forward, cache, search, subset, organize, reorganize, or translate content.

*Id.* § (f)(4). Thus, the CDA expressly protects providers of services and enabling tools for Internet "search" and content "display". This is another function about which Perfect 10 complains. *See, e.g.*, Compl. ¶ 24 ("Defendants allow users to search their massive collections of infringing materials for specific files"), ¶28 ("Defendants are aware that they are illegally . . . displaying . . . massive quantities of infringing materials"). This provision, therefore, also protects Defendants.

Given that the CDA includes "search" within its definition of an interactive computer service, it is not surprising that courts have held that the CDA protects search engines. Google is an example. "[T]here is no doubt that Google qualifies as an interactive computer service." *Parker,* 422 F. Supp. 2d at 501. Providing search results in response to user requests to a search engine makes Defendants quintessential providers of an interactive computer service. *See Murawski v. Pataki*, 514 F. Supp. 2d 577, 591 (S.D.N.Y. 2007). Indeed, "reviewing courts have . . . adopt[ed] a relatively expansive definition of 'interactive computer service.'" *See generally Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003). Accordingly, to the extent that Defendants' alleged misappropriations of Perfect 10's rights of publicity result from "software . . . or enabling tools that . . . transmit, receive, display, forward, cache, search, subset, organize, reorganize, or translate content," the CDA also preempts the claim. 47 U.S.C. §§ 230(f)(4), (f)(4)(C).

In addition to *providing* an interactive computer service, Defendants also *use* interactive computer services within the meaning of 47 U.S.C. § 230(c)(1). Defendants use "a service or system that provides access to the Internet" in order to communicate with users, and they conduct their search operations via interactive computer services. *Id.* § (f)(2). Defendants transmit Usenet articles and communicate search results to their users through the Internet. Compl. ¶¶ 24, 74.

As both providers and users of interactive computer services, Defendants satisfy the first requirement for CDA immunity.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

21

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

(b)     **Perfect 10 Sues Defendants For the Republication of Third-Party Content.**

Perfect 10's claim for violation of the right of publicity arises from republication of others' information, precisely the conduct the CDA shields from civil claims.  Perfect 10 alleges that "Defendants have infringed the Perfect 10 Rights of Publicity by providing lists of models' names and by returning images that are not of the model (including sexually explicit, defamatory images) when a user searches for images of the models."  Compl. ¶ 74.  Perfect 10 concedes that Defendants do not create the "information" at issue.  *See* Compl. ¶ 24 ("Defendants purportedly copy all of the materials on their servers from . . . USENET").  The third party Usenet content on which Perfect 10's claims rest is by definition "information provided by another information content provider." *See also* ACLU, 929 F. Supp. at 834-35 (describing Usenet as a collection of "[u]ser-sponsored newsgroups" where each message is posted by "an individual user with access to a USENET server").  Perfect 10's Section 17200 claim also targets Defendants' provision of access to third-party Usenet content.  Compl. ¶ 65.  As set forth above, Section 230(f)(4) of the CDA also immunizes Defendants for providing search functionality so that their users can search the Usenet.

The provision of search results also constitutes the provision of third-party content that the CDA immunizes. *Parker*, 242 Fed. App'x at 838 (Google entitled to CDA immunity from various state-law claims); *Murawski*, 514 F. Supp. 2d at 591(dismissing claims despite search engine's failure to remove offending results after notice); *see also Stayart v. Yahoo! Inc.*, 651 F. Supp. 2d 873, 885 (E.D. Wisc. 2009) (search results immunized by the CDA).  An individual's use of a search engine to search for allegedly infringing material also does not affect CDA immunity.  For example, "[i]f an individual uses an ordinary search engine to query for a 'white roommate,' the search engine has not contributed to any alleged unlawfulness in the individual's conduct; providing *neutral* tools to carry out what may be unlawful or illicit searches does not amount to 'development' for purposes of the immunity exception."  *Fair Housing Council of San Fernando Valley v. Roommates.com*, 521 F.3d 1157, 1169 (9th Cir. 2008) (en banc) (emphasis in original).

B.      **Perfect 10 Lacks Standing to Bring Its Section 17200 Claim to the Extent the CDA Does Not Preempt the Claim.**

In an apparent effort to skirt its CDA problem, Perfect 10 also alleges (without plausible factual specificity) that Defendants are "misleading customers into believing that their multiple websites offer different materials so as to sell more memberships." Compl. ¶ 67. Even if this were true, Perfect 10 lacks standing to bring such a claim.  A section 17200 plaintiff must have "suffered injury in fact and [have] lost money or property as a result of the unfair competition." Cal. Bus. & Prof. C. § 17204. But Perfect 10 alleges (implausibly) injury to Defendants' *customers*; it does not allege injury to *itself.  See Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009) (dismissal of UCL claim where plaintiffs lacked standing because of failure to allege requisite injury to themselves.)  Perfect 10 has not alleged the necessary injury in fact.

To support a Section 17200 claim Perfect 10 must also show that it has "lost money or property" as a result of Defendants' *alleged misconduct in selling multiple services to its customers.* Cal. Bus. & Prof. C. § 17204; *Kwikset Corp. v.  Sup. Ct.*, 51 Cal. 4th 310, 323 (2011) ("a plaintiff must demonstrate some form of economic injury" to have standing). Even taking Perfect 10's allegations at face value, Perfect 10 does not plausibly allege this has caused *it* to suffer economic injury. The bald allegation is also implausible on its face. Perfect 10 does not plead facts necessary to support such a claim, or indeed any facts at all relating to the allegation.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (citing Fed. R. Civ. P. 8(a)(2); second bracket in original).

Because Perfect 10 does not have standing to bring its claim for unfair competition under California law, the Court should dismiss the Fourth Claim.

C.      **Perfect 10 Also Lacks Standing to Bring Its Publicity Claims.**

Perfect 10 also lacks standing to bring its claims under California Civil Code section 3344 and the common law because California publicity rights of *living persons* are not assignable.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

23

Although Perfect 10 asserts that it "secures assignments" from "some" of its models (Compl. ¶ 21), neither the statute nor the common law permit such a purported "assignment," which would give Perfect 10 control over the very identities of its models.

The court in *Upper Deck Authenticated, Ltd. v. CPG DIRECT*, 971 F. Supp. 1337 (S.D. Cal. 1997), recognized that "the [common law] right of publicity appears to attach only to actual persons." *Id.* at 1348-49.  Other California cases strongly suggest that common-law publicity rights are personal and nontransferable as are the other privacy rights.  In *Lugosi v. Universal Pictures*, 25 Cal. 3d 813, 817 (1979), the California Supreme Court addressed whether publicity rights in a deceased actor descended to his heirs.  In that case, the court concluded that "the right to exploit name and likeness is personal to the [individual]." *Id.* at 824.  Because "[t]he protection of name and likeness from unwarranted intrusion or exploitation is the heart of the law of privacy," the right of publicity was a privacy right and personal to the individual. *Id.*  Thus it could not pass to a deceased's heirs. *Id.*  By the same token, the common-law right of publicity is not assignable to any third party. *See James v. Screen Gems, Inc.*, 174 Cal. App. 2d 650, 653 (Cal. App. 1959) (widow could not bring publicity claims because privacy cannot be asserted by anyone other than person whose privacy is invaded).

A careful reading of California Civil Code Sections 3344 and 3344.1, which create California's statutory right of publicity, reveals that Section 3344 does not grant a transferable right to living individuals.  Section 3344.1, which creates a distinct statutory right of publicity with respect to the *deceased*, explicitly makes the right transferable: "[t]he rights recognized under this section are . . . freely transferable or descendible, in whole or in part, by contract or by means of any trust or any other testamentary instrument. . . ."  Cal. Civ. C. § 3344.1(b) (emphasis added).  Section 3344 contains no such language.  The California Supreme Court has recognized the rule of statutory interpretation that "[t]he expression of some things in a statute necessarily means the exclusion of other things not expressed." *Gikas v. Zolin*, 6 Cal. 4th 841, 852 (Cal. 1993).Under standard canons of statutory construction, the fact that one section of California's right of publicity statute explicitly makes the *deceased's* right of publicity transferable, while the section creating the right in a *living person* is silent on transferability, means that the right is not transferable for a living person.  If the

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

24

legislature had intended the right of publicity in a living person to be transferable, it could easily have said so.

There are important practical reasons that California law permits assignment of a deceased person's, but not a living person's, right of publicity.  Alienation of the right by a living person would deprive that person of the right to exploit his or her own personality in competition with the new owner.  This amounts to an impermissible restrictive covenant that offends California law.  This would be especially pernicious in the case of *models*, whose likenesses are the very essence of their business.  This goes to the heart of the distinction between living and deceased individuals, because alienation of the right of publicity carries no such consequence to the deceased.

For all of these reasons, the Court should dismiss Plaintiff's state-law claims.  Because it would be futile to permit Perfect 10 to amend its state-law claims in the face of CDA immunity and lack of standing, the Court should dismiss the claims without leave to amend.

V.     CONCLUSION.

Perfect 10 is a seasoned litigant that has pressed similarly aggressive claims in other cases resulting in decisions repudiating its arguments and correcting its misapprehensions about the law. Its failure to allege any valid case of action in this case does not result from inexperience or modest misunderstandings.  The Court should dismiss the action in its entirety with prejudice.

Dated:  June 22, 2011                  WINSTON & STRAWN LLP
                                       Andrew P. Bridges
                                       Jennifer Golinveaux


                                By:     /s Andrew P. Bridges

                                       Attorneys for Defendants
                                       E-mail: abridges@winston.com

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802