Andrew P. Bridges (SBN 122761)
Jennifer Golinveaux (SBN 203056)
K. Joon Oh (SBN 246142)
Thomas J. Kearney (SBN 267087)
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111-5802
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

Attorneys for Defendants
GIGANEWS, INC. and LIVEWIRE SERVICES, INC.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>GIGANEWS, INC., a Texas corporation; LIVEWIRE SERVICES, INC., a Nevada corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 11-CV-0905 H (MDD)<br><br>**DECLARATION OF RONALD B. YOKUBAITIS IN OPPOSITION TO PERFECT 10'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>DATE: SEPTEMBER 12, 2011<br>TIME: 10:30 A.M.<br>HON. MARYLYN L. HUFF<br>COURTROOM 13 – FIFTH FLOOR<br><br>**SPECIAL BRIEFING SCHEDULE ORDERED** |

I, Ronald B. Yokubaitis, declare as follows.

1. I have personal knowledge of the facts I state in this declaration, and if called to testify to them could do so competently.

**Designated Agent for Giganews, Inc. and for Livewire Services, Inc. under 17 U.S.C. § 512(c)**

2. I am Giganews, Inc.'s agent designated to receive notifications of claimed infringement pursuant to Section 512(c) of the Copyright Act. 17 U.S.C. § 512(c). Giganews filed its current designation with the Copyright Office in January 2008. The designated email address is dmca2008@giganews.com. Attached as Exhibit A to this declaration is a true and correct copy of Giganews's Amended Interim Designation of Agent to Receive Notification of Claimed

1  Infringement from the Copyright Office's website, available at
2  http://www.copyright.gov/onlinesp/agents/g/giganews.pdf. I have been Giganews' designated agent
3  at all times relevant to this case. As Giganews's designated agent, I have personal knowledge of
4  Giganews's policies, procedures, and processes regarding notifications of claimed infringement.

5      3.    I am Livewire Services, Inc.'s agent designated to receive notifications of claimed
6  infringement pursuant to Section 512(c) of the Copyright Act. 17 U.S.C. § 512(c). Livewire
7  Services' filed its current designation with the Copyright Office in January 2008. The designated
8  email address is dmca2008@livewireservicesinc.com. Attached as Exhibit B to this declaration is a
9  true and correct copy of Livewire Services' Amended Interim Designation of Agent to Receive
10 Notification of Claimed Infringement from the Copyright Office's website, available at
11 http://www.copyright.gov/onlinesp/agents/l/livwirsv.pdf. I have been Livewire Services' designated
12 agent at all times relevant to this case. As Livewire Services' designated agent, I have personal
13 knowledge of Livewire Services' policies, procedures, and processes regarding notifications of
14 claimed infringement.

15     4.    Livewire Services uses currently the following names to offer its Usenet access
16 services: rhinonewsgroups.com, powerusenet.com, and usenet.net. Livewire Services previously,
17 though no longer, used the following names to offer its Usenet access services: eurousenet.com,
18 galacticgroups.com, cheapnewgroups.com, fastusenet.com, orangeusenet.com, and usenetgiant.com.

19     5.    Giganews and Livewire Services (collectively, "Defendants") carefully track DMCA
20 (Digital Millennium Copyright Act) notices sent to dmca2008@giganews.com and
21 dmca2008@livewireservicesinc.com, respectively. Defendants assigned each of those notices a
22 number and stored those notices in its ticketing system. Defendants also maintain older DMCA
23 notices sent by email in a separate email folder. Defendants maintain files for notices sent by fax,
24 mail, or messenger delivery.

25     6.    Defendants' Terms of Services, Acceptable Use Policies, and DMCA notification
26 instructions are publicly available on their respective websites. Attached as Exhibits C and D to this
27 declaration are true and correct copies of Giganews's and Livewire Services' Terms of Service,
28 respectively. Attached as Exhibits E and F to this declaration are true and correct copies of

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Giganews's and Livewire Services' Acceptable Use Policies, respectively. Attached as Exhibits G and H to this declaration are true and correct copies of the Giganews's and Livewire Services' DMCA notification instructions, respectively. Defendants' Terms of Service make clear that anyone using Defendants' services may not use them to "violate copyright laws by transferring copyrighted works through our system or by causing them to be transferred or stored without the permission of the copyright holder" and that Defendants have the right to terminate user accounts at any time for this reason or "at any time, for any reason." Defendants' respective Acceptable Use Policies also state that the user agrees "not to transfer or store copyrighted works on our system without the permission of the copyright holder."

7. Defendants have implemented reasonably their DMCA-related policies. Defendants have working notification systems. Defendants have received successfully tens of thousands of DMCA notices from copyright claimants during the time period relevant to this case. In response to DMCA-compliant notices, Defendants have deleted millions of Usenet messages. For example, in 2010, Defendants received approximately 48,652 DMCA-compliant notices and deleted approximately 88,000,302 Usenet messages. Defendants handle such notices expeditiously. The processing times vary by complexity of notices and volume of notices at a particular time. Defendants have deleted messages based on DMCA-compliant notices from a wide range of copyright claimants, including Sony Music, Columbia Pictures, Microsoft, HBO, the Entertainment Software Association, Nintendo, Warner Bros., CBS, NBC Universal, Random House, Paramount, and many others. Defendants do not interfere with standard technical measures that copyright owners use to identify or protect copyrighted works, and they do not actively prevent copyright owners from collecting information required for DMCA notifications. Newsgroups have been deleted when a copyright or trademark owner has complained that the entire newsgroup infringed upon its copyright or trademark rights.

8. When Defendants receive a DMCA notice from a copyright owner that does not meet the DMCA requirements for a proper notice, it is Defendants' standard practice to contact the sender of the non-compliant notice and to encourage the sender to send a compliant notice by providing information about the requirements for a proper DMCA notification.

9. Defendants frequently explain to claimants the relevance and importance of Message-IDs or Message Headers that they require in order to delete allegedly infringing materials. For example, a number of years ago, a law firm representing Sony Music had difficulties sending proper notices under the DMCA. It exhibited confusion between the technical Internet protocol standard for the World Wide Web, HTTP (hypertext transfer protocol), and the Internet protocol standard for Usenet, NNTP (network news transfer protocol). As such, it issued defective notices that failed to provide the Message-IDs or Message Headers to locate the allegedly infringing materials on Giganews's Usenet servers. As part of Giganews's efforts to assist copyright claimants, I informed Sony Music's lawyers about third-party services, in this instance BayTSP, which format and send DMCA notices that include the Message-IDs or Message Header on behalf of copyright claimants. After providing the contact information for BayTSP, I received numerous DMCA-compliant notices from Sony Music's authorized representative. Giganews promptly deleted those Usenet messages identified by Message-IDs or Message Headers.

10. Defendants have implemented a two-strike policy concerning repeat copyright infringers. Defendants have a policy that, after a copyright holder sends a DMCA-compliant notice of allegedly infringing materials posted by one of Defendants' subscribers, Defendants will temporarily suspend the posting privileges for that account. That is strike one. If a copyright holder sends another DMCA-compliant notice of allegedly infringing materials posted from the same account after that subscriber's suspension ended, that is strike two. Defendants will then, at their sole discretion, terminate the subscriber account or place a permanent ban on that account's posting privileges.

11. Attached as Exhibit I is a true and correct copy of a webpage from the Chilling Effects website, available at http://www.chillingeffects.org/dmca512/notice.cgi?NoticeID=173, showing a redacted version of a notice that Giganews sent to one of its subscribers in response to a DMCA notice from the Motion Picture Association of America, Inc. (MPAA).

**Livewire Has Never Received a DMCA Notice from Perfect 10.**

12. Livewire Services has no records of ever receiving a DMCA notification from Perfect 10, Inc.

**Perfect 10's Defective DMCA Notice to Giganews from March 25, 2009**

13. Attached as Exhibit J to this declaration is a true and correct copy of a letter, dated March 25, 2009, that Giganews received from Norm Zada of Perfect 10, Inc. I previously attached a true and correct copy of a DVD that accompanied that March 25, 2009 letter as Exhibit B to my June 22, 2011 Declaration in Support of Defendants' Rule 12(b)(6) Motion to Dismiss. My June 22, 2011 Declaration was filed as Docket No. 11-3, and a copy of that DVD was lodged with the Court on July 14, 2011 pursuant to the Court's June 30, 2011 Order.

14. Attached as Exhibit K to this declaration is a true and correct copy of a letter, dated April 7, 2009, that I, as Giganews's designated agent under Section 512(c) of the Copyright Act, sent to Norm Zada of Perfect 10, Inc. Giganews informed Perfect 10 that its notice did not comply with the requirements set forth in the DMCA. For example, Perfect 10 failed to provide the location information, namely the Message-ID or Message Header information, for any of the allegedly infringing materials allegedly stored on Giganews's Usenet servers. Giganews explained to Perfect 10 that Giganews operates a service to provide access to Usenet and that Giganews does not provide access to any Usenet message or newsgroup through the World Wide Web. Giganews explained that Giganews required Message-IDs or Message Headers to locate Usenet message. Giganews provided Perfect 10 simple and clear instructions to help Perfect 10 provide the Message-IDs or Message Headers to Giganews. Giganews also suggested that Perfect 10 could use third-party services, such as those by BayTSP or Media Sentry, to provide the Message-IDs or Message Headers to Giganews.

15. After Giganews sent its April 7, 2009 response, Giganews received a reply from Norn Zada of Perfect 10 dated April 7, 2009 in which Perfect 10 stated that:

> "I don't have any of the 'Message ID or Group Name + Article numbers' [sic] that you are talking about. That information is not required by the DMCA, and I don't see how providing that information to you, if I had it, would help you do anything more than to block the appearance of our property *from one message*. [sic] We want you to block our copyrighted images from being offered by giganews.com in any manner whatsoever, *including in all messages*. [sic]

Perfect 10 also wrote:

> We are not interested in spending countless hours sending you DMCA notices, so you can block one message containing our material and

> have it appear in hundreds of other messages. You have to block our property from appearing on your system, period.

Perfect 10 did not provide any Message-IDs or Message Headers for any allegedly infringing materials. Perfect 10 did not indicate that it had contacted (or was planning to contact) third-parties services such as BayTSP or Media Sentry to provide Message-IDs or Message Headers to Giganews. Perfect 10 did not send that reply to Giganews's designated email address, dmca2008@giganews.com, but instead he sent that email to my assistant Carmen Garces. Attached as Exhibit L to this declaration is a true and correct copy of Perfect 10's April 7, 2009 email.

16. Attached as Exhibit M to this declaration is a true and correct copy of a letter, dated April 16, 2009, that Giganews sent to Norm Zada of Perfect 10, Inc. in response to Perfect 10's April 7, 2009 email. Giganews again asked that Perfect 10 provide Giganews with Message-IDs or Message Headers for the allegedly infringing materials. Giganews also informed Perfect 10 that its request for Giganews to affirmatively "prevent" or "block" allegedly infringing materials from Giganews's system was neither technologically feasible or legally required under the DMCA.

17. Giganews received an email from Norm Zada of Perfect 10 on April 16, 2009 sent to dmca2008@giganews.com. Perfect 10 stated that "[t]his notice is not a DMCA notice as it deals with issues of unfair competition." Attached as Exhibit N to this declaration is a true and correct copy of Perfect 10's April 16, 2009 email.

18. Perfect 10 did not send Giganews another DMCA notice until June 25, 2011, after it sued Defendants Giganews and Livewire Services in April 2011.

**Perfect 10's Non-DMCA-related Communication from 2010.**

19. Attached as Exhibit O to this declaration is a true and correct copy of the email, dated August 11, 2010, that Giganews received from Norm Zada. Dr. Zada did not write on behalf of Perfect 10, did not identify any materials allegedly infringing upon Perfect 10 copyrighted works, did not sign the email under penalty of perjury, and did not claim that this email was a DMCA notice.

20. Dr. Zada's August 11, 2010 email lacked the required elements for a DMCA-compliant notice. On August 19, 2010, provided information to Dr. Zada about the elements

6

DECLARATION OF RONALD B. YOKUBAITIS IN OPPOSITION TO PRELIMINARY INJUNCTION    CASE NO. 11-CV-0905

required for a DMCA-compliant notice.

**Perfect 10's Post-Complaint DMCA Notices to Giganews**

21. On April 28, 2011, Perfect 10 filed this lawsuit against Defendants Giganews and Livewire Services, Inc.

22. On June 22, 2011, Defendants Giganews, Inc. and Livewire Services, Inc. filed a motion to dismiss this lawsuit. On June 23, 2011, Perfect 10 informed Defendants that it secured a hearing date for a preliminary injunction motion. Between June 25, 2011 and June 29, 2011, Giganews received 22 DMCA notices from Norm Zada of Perfect 10, Inc. Attached as Exhibits P to KK to this declaration are true and correct copies of those DMCA notices.

23. Perfect 10 filed a motion for a preliminary injunction against Defendants Giganews, Inc. and Livewire Services, Inc. on July 11, 2011.

24. Between July 18, 2011 and July 20, 2011, Giganews received ten DMCA notices from Norm Zada of Perfect 10, Inc. Attached as Exhibits LL to UU to this declaration are true and correct copies of those DMCA notices.

25. Giganews, through its attorneys, informed Perfect 10 on August 5, 2011, that the 32 DMCA notices that Giganews received from Perfect 10 between June 25, 2011 and July 20, 2011 did not comply with the DMCA notification requirements.

26. Between August 2, 2011 and August 7, 2011, Giganews received six DMCA notices from Norm Zada of Perfect 10, Inc. Attached as Exhibits VV to AAA to this declaration are true and correct copies of those DMCA notices.

27. As discussed above, Defendants make a concerted effort to assist copyright claimant provide compliant-DMCA notices with Message-IDs or Message Headers. Based on my experience as Defendants' designated agent to receive notification of claimed copyright infringement, Perfect 10 is the only copyright claimant that has refused to work cooperatively with Defendants in order to provide Message-IDs or Message Headers in its DMCA notices. Other copyright claimants have provided the Message-IDs or Message Headers after receiving additional explanation or assistance from Defendants.

**Livewire Services' Usenet Access Services**

DECLARATION OF RONALD B. YOKUBAITIS IN OPPOSITION TO PRELIMINARY INJUNCTION    CASE NO. 11-CV-0905

28. I am Vice President of Livewire Services, Inc. I have held this position since 2003. I am knowledgeable about the business and technical operations of Livewire Services.

29. Livewire Services is a Nevada corporation that resells Usenet access to its customers. Livewire Services does not itself store Usenet messages or newsgroup files, but instead contracts with Giganews, Inc. to provide access to Usenet message and newsgroup files stored on servers maintained by Giganews.

30. Much like the telephone companies, Livewire Services resells Usenet access service to its subscribers based on fixed-fee plans. Subscribers may sign up for fixed-fee plans ranging from $9.99 per month to $19.99 per month. Livewire Services does not charge its subscribers any additional fees for its Usenet access services. Livewire Services' subscribers can access Giganews's Usenet servers to post messages to Usenet newsgroups as well as retrieve messages posted on Usenet by other users. Subscribers must use a third-party newsgroup reader (or newsreader, for short) in order to post message or retrieve messages from Usenet. A Usenet newsgroup reader is analogous to a browser for the World Wide Web such as Mozilla's Firefox or Microsoft's Internet Explorer. Some programs, such as Microsoft's Outlook Express, have built-in newsgroup-reader functionality.

31. Livewire Services publishes its policies and other information but do not provide Usenet access on its websites. Livewire Services maintains websites for general information, sign-up, account management, FAQ and help, and DMCA-related information. These websites, however, are not part of Usenet. Livewires Services leases a virtual web server from a third-party cloud computing services vendor. Livewire Services' web server (which maintains Livewire Services' websites) contains no Usenet messages or newsgroups. A Livewire Services subscriber cannot post a message to Usenet or retrieve a message from Usenet from Livewire Services' web server. A Livewire Services subscriber must connect to Giganews's Usenet servers to access Usenet.

32. I have read the "Declaration of Sheena Chou in Support of Plaintiff Perfect 10, Inc.'s Motion for Preliminary Injunction Against Defendants Giganews, Inc. and Livewire Services, Inc." In her June 22, 2011 declaration at paragraph 3, Sheena Chou claims to have personally downloaded allegedly infringing images "from various pay websites." Those websites included supernews.com

1  and Livewire Services' cheapnewsgroups.com, fastusenet.com, galacticgroups.com, infinityusenet.com, powerusenet.com, rhinonewsgroups.com, and usenetgiant.com. As explained above, it would have been impossible technologically for Ms. Chou to have downloaded infringing images from those websites because Livewire Services' websites are not part of Usenet and because Livewire Services' web server contains no Usenet messages or newsgroups.

33. I have read the "Declaration of Dr. Norman Zada in Support of Plaintiff Perfect 10, Inc.'s Motion for Preliminary Injunction Against Defendants Giganews, Inc. and Livewire Services, Inc." In his July 10, 2011 declaration at paragraph 5, Norm Zada claims that he and Sheena Chou "were able to download the same recently posted images" "[f]or each website." Those websites included supernews.com and Livewire Services' fastusenet.com, cheapnewsgroups.com, eurousenet.com, galacticgroups.com, infinityusenet.com, powerusenet.com, rhinonewsgroup.com, usenet.net, and usenetgiant.com. As explained above, it would have been impossible technologically for Ms. Chou or Norm Zada to have downloaded infringing images from those websites because Livewire Services' websites are not part of Usenet and because Livewire Services' web server contains no Usenet messages or newsgroups.

34. Livewire Services has never done business as supernews.com. Supernews.com is neither a parent corporation or subsidiary of Livewire Services.

35. Livewire Services' records show that Norm Zada has not subscribed to Livewire Services' Usenet access services through fastusenet.com, cheapnewsgroups.com, eurousenet.com, galacticgroups.com, infinityusenet.com, or usenetgiant.com since November 2007.

36. Livewire Services' records show that Sean Chumura previously subscribed to Livewire Services' Usenet access services through fastusenet.com, powerusenet.com, and usenet.com between August 2006 through March 2008.

37. Because all of Livewire Services' subscribers are subscribers for Usenet access services, a preliminary injunction would result in putting Livewire Services out of business. Based on current annual income, the value of Livewire Services is well over $2 million when compared to valuations of comparable companies.

**Giganews's Usenet Access Services**

38. I am Co-CEO of Giganews, Inc. I have held this position since 2007. I am knowledgeable about the business and technical operations of Giganews.

39. Because all of Giganews's subscribers are subscribers for Giganews's Usenet access services, a preliminary injunction would result in putting Giganews out of business. Based on current annual income, the value of Giganews is well over $10 million when compared to valuations of comparable companies.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 15th day of August, 2011.

By: _____
RONALD B. YOKUBAITIS

## Table of Exhibits

| Exhibit | Page |
|---|---|
| A | 11 |
| B | 13 |
| C | 15 |
| D | 19 |
| E | 26 |
| F | 30 |
| G | 38 |
| H | 41 |
| I | 45 |
| J | 55 |
| K | 57 |
| L | 64 |
| M | 67 |
| N | 72 |
| O | 75 |
| P | 81 |
| Q | 88 |
| R | 106 |
| S | 126 |
| T | 132 |
| U | 139 |
| V | 147 |
| W | 168 |
| X | 192 |
| Y | 216 |
| Z | 241 |
| AA | 266 |
| BB | 290 |
| CC | 315 |
| DD | 336 |
| EE | 361 |

## Table of Exhibits

| | |
|---|---|
| FF | 386 |
| GG | 409 |
| HH | 434 |
| II | 459 |
| JJ | 484 |
| KK | 512 |
| LL | 536 |
| MM | 539 |
| NN | 542 |
| OO | 547 |
| PP | 553 |
| QQ | 558 |
| RR | 564 |
| SS | 569 |
| TT | 574 |
| UU | 583 |
| VV | 600 |
| WW | 647 |
| XX | 664 |
| YY | 671 |
| ZZ | 677 |
| AAA | 685 |