Eric J. Benink, Esq., (State Bar No. 187434)
Krause Kalfayan Benink & Slavens, LLP
625 Broadway, Suite 635
San Diego, CA  92101
Email: eric@kkbs-law.com
Tel: (619) 232-0331
Fax: (619) 232-4019

Attorneys for Plaintiff Perfect 10, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>            Plaintiff,<br><br>       v.<br><br>GIGANEWS, INC., a Texas corporation; LIVEWIRE SERVICES, INC., a Nevada corporation; and DOES 1 through 100, inclusive,<br><br>            Defendants. | CASE NO. 2:11 CV 7098 JHN (RZx)<br><br>**REPLY DECLARATION OF DR. NORMAN ZADA IN SUPPORT OF PLAINTIFF PERFECT 10, INC.'S MOTION FOR PRELIMINARY INJUNCTION AGAINST DEFENDANTS GIGANEWS, INC. AND LIVEWIRE SERVICES, INC.**<br><br>Date:  Under Submission<br>Time:  n/a<br>Place: Courtroom 790 (Roybal)<br>Judge: Jacqueline H. Nguyen |

# DECLARATION OF DR. NORMAN ZADA

I, Norman Zada, declare as follows:

1. I make this reply declaration in support of Perfect 10's motion for Preliminary Injunction against Giganews, Inc. and Livewire Services, Inc. I have reviewed Defendants' opposition as well as the declarations and exhibits they have submitted. Except where otherwise stated, I have direct and personal knowledge of the facts set forth herein and, if called as a witness, could and would competently testify thereto. I have spent at least 400 hours downloading Perfect 10 copyrighted images ("P10 Images") from Defendants' websites. I am very familiar with the operations of the internet and have a background in computer science and applied mathematics.

2. The exhibits attached hereto, except where otherwise noted, fall into one of the following categories: (a) true and correct copies of documents that I have downloaded as Adobe PDF files from the Internet – I have personally downloaded each and every one of the Adobe files attached to this declaration as printed exhibits; (b) true and correct copies of snapshots of my computer screen, which I captured using the program "Snagit," or screen captures created under my direct supervision; (c) true and correct copies of notices that I sent to Giganews and others, and their responses; d) true and correct copies of spreadsheets that I have created; and e) true and correct copies of Exhibits from CCBill. Exhibits reflecting dates contain the correct date the document was downloaded, captured and/or saved, and, when applicable, the correct URL of the webpage from which it was downloaded. I have added green check marks, text boxes, red arrows and/or highlighting to some exhibits so that the Court may more readily locate relevant information contained in those exhibits. I will use the terms "P10" and "Perfect 10" interchangeably to denote Perfect 10. I will also use the terms "Message ID" and "Message-ID" interchangeably, as do Defendants. Because the Yokubaitis family appears to own and/or control both Giganews and Livewire, I will use the terms Giganews and Defendants interchangeably. I will refer to my declaration that was submitted as Docket No. 22 as the "Zada Decl." I will refer to this declaration

1  as the "Zada Reply Decl."

2      3.    Attached as Exhibit 26 are two press releases from the U.S. House of Representatives Judiciary Committee, dated April 4 and April 6, 2011. Page 1 of Exhibit 26 states,

> "IP theft costs the U.S. economy more than $100 billion every year, and results in the loss of thousands of American jobs. … IP industries provide an estimated 19 million jobs to American workers and account for more than 60% of U.S. exports. Unfortunately, the online theft of America's intellectual property results in the loss of billions of dollars and thousands of jobs. From movies and music to software and medicine, IP theft drains our economy and puts lives at risk. … The Internet has regrettably become a cash-cow for the criminals and organized crime cartels who profit from digital piracy. … U.S. copyright industries are facing disastrous threats from online theft."

Page 3 states, "With digital theft, what is distributed was created by those who have had their property stolen. Perfect reproductions of movies, sound recordings, books, software and musical compositions compete directly with licensed goods." Attached as page 4 of Exhibit 26 is an news release from the Department of Homeland Security Website, entitled, "HSI Agents Arrest Website Operator That Illegally Streamed Copyrighted Sporting Events." When a sporting event is streamed to a user, it normally cannot be saved by the user and then recopied. Thus streaming is typically less damaging to copyright holders than what Defendants do, which is to provide users with broadcasts that be viewed multiple times, recopied, and given to others. The criminal complaint filed accused the website channelsurfing.net of offering pirated telecasts of sporting events, including those of the National Basketball Association (NBA). Giganews offers an enormous number of pirated sporting events. I have verified that Giganews offers at least **190,000** large files (see pages 5-6 of Exhibit 26), many of which are over 100 megabytes in size, from the giganews-offered newsgroup alt.binaries.multimedia.sports. Attached as pages 5 and 6 of Exhibit 26 are print screens of two pages of NBA games offered by Giganews, that I obtained by searching

1  the alt.binaries.multimedia.sports newsgroup offered by Giganews, for "NBA."  Most
2  of the files are approximately 118 million bytes in size, which would suggest that they
3  each contain at least a quarter of a televised NBA basketball game.  Defendants'
4  members can view these broadcasts at any time, copy them, and give them to others.  I
5  have placed in Exhibit 43 (the disk), in a folder labeled "Pirated sportcasts" more
6  examples of sporting events offered by Giganews.
7        4.  Attached as pages 1-9 of Exhibit 27 are the results I obtained on August
8  19, 2011 by doing a Google search on: *giganews-binary-newsreader.com movies "If*
9  *you are interested in music."*  At the top left of page 1 of Exhibit 27, it says "About
10  23,800 results."  Most of the websites that are listed on pages 1-9 of Exhibit 27, are
11  well-known to promote infringement, including free-software-programs.com,
12  freedownload3.com, soft4share.com, and filestube.com.  Attached as pages 10-11 of
13  Exhibit 27 are two of the pages I obtained by using archive.org (a site that archives
14  web pages from the past) to find copies of the website giganews-binary-
15  newsreader.com as they appeared on November 19, 2003.  Page 10 states, "Welcome
16  to the Giganews homepage!  Giganews is a newsreader specialized for reading media
17  files from the internet newsgroups.  If you are interested in audio, video, or pictures,
18  Giganews is the right choice…. Giganews has an integrated browser with the
19  capability to display all common file types and even movies!"  Later on the page it
20  states, "Integrated browser plays even movies."  On page 11 of Exhibit 27, it states,
21  "The costs for the Giganews registration are EUR 35, - or about USD 39."  Attached as
22  page 12 of Exhibit 27 is a page I printed from archive.org which shows what the
23  webpage giganews-binary-newsreader.com looked like on December 8, 2007.  That
24  page states, "If you are interested in music, films or pictures GBN [Giganews Binary
25  Newsreader] is the right choice."  I printed pages 13-25 of Exhibit 27 on or about
26  August 18, 2011.  Pages 13 and 14 state, "If you are interested in music, films or
27  pictures, GBN [Giganews Binary Newsreader] is the right choice."  Page 16 has a
28  diagram showing how the Giganews Binary Newsreader can be used to download

songs by Chaka Khan.  Page 17 displays a Giganews ad next to text which promotes giganews.com as a way to receive "a years worth of access to downloadable music, movies and games."  Page 18 shows a Giganews ad on a page which discusses the downloading of TV Shows "Lost," "Heros," "Prison Break," "Scrubs," "Weeds," "Smallvile," as well as "Movies, Music, TV, Software, and Games."  Page 19 shows a youtube.com page containing a video on "How to download music dvd movies blu ray and software with high speed."  Below the video it states, "Signup with giganews now with a free 14days trial signup here."  Pages 20-21 contain an eHow article that promotes Giganews and provides instructions on how to download movies from Giganews and similar Usenet sites.  On page 21, near the bottom, it says "Resources."  Below that is a link to "giganews."  When I clicked on that, I was brought to a signup promotion for Giganews.  Pages 23-24 are a similar promotion on the same website, eHow.com.  Near the bottom, under "Resources" it says "usenet."  I have verified that link goes to usenet.com, the website that was at issue in *Arista v. Usenet.com*.  Attached as page 25 of Exhibit 27 is a page from Giganews.com.  That page promotes a program which conceals the downloaders IP address.  Attached as page 26 of Exhibit 27 is a who is search on giganews-binary-newsreader.com showing that it was registered by YHC, Inc. (which is controlled by the Yokubaitis family) and that its current domains servers are subdomains of giganews.com.

   5. Giganews has apparently replaced its giganews-binary-newsreader with a new newsreader that it is currently offering, called Mimo.  Giganews allow users to search its USENET offerings via that newsreader.  Attached as page 1 of Exhibit 28 is a page I printed from giganews.com on August 20, 2011.  Page 1 states, "Mimo is the only Usenet browser that can search Giganews' world leading retention."  It also states, "Golden Frog is actively developing Mimo…"  When I signed up for Mimo, I had to pay giganews.com.  Attached as page 3 is the results of a "who is" search on goldenfrog.com, which shows the registered owner.  The registration provider was YHC, Inc. whose officers are members of the Yokubaitis family (see Zada Decl.  Exh.

1  4, pg. 4).  The domains servers are listed as datafoundry.com, which are the same as
2  Giganews.com's domain servers.

3      6.    Attached as page 1 of Exhibit 29 is the cover page of a DMCA notice that
4  I sent to newsdemon.com on March 27, 2009, along with a disk with somewhat over
5  800 full-size P10 Images.  Newsdemon is a USENET paysite which operates in a
6  fashion similar to Defendants.  The letter and disk were very similar to what I sent to
7  Giganews on March 25, 2009.  Attached as pages 2-6 of Exhibit 29 are a sampling of
8  the images that were contained in that notice.  Below each image is the Image
9  Identifier that appeared on the image when it was sent to Newsdemon.  Attached as
10 pages 7-9 of Exhibit 29 is an email string between Perfect 10 and Newsdemon ending
11 on April 19, 2009.  On page 7 it states that "Highwinds Media [the supplier of
12 USENET feeds to newsdemon.com] hereby notifies you that **it has removed or**
13 **disabled public access to the Message ID(s) that you provided (the Material).**  This
14 action is authorized by 17 U.S.C. §512 and has been taken by Highwinds Media
15 **following its receipt of an Effective Notification of Claimed Infringement** (as
16 defined in 17 U.S.C. §512(c)(3)(A)…(emphasis added).   I have verified that most if
17 not all of the identified images were removed as newdemon claimed, but many are
18 now reappearing with different Image Identifiers.  I have included the entire notice in
19 Exhibit 43 (the disk) in a folder labeled "Notices to other USENET paysites."

20     7.    Attached as page 1 of Exhibit 30 is a cover page of a DMCA notice that I
21 sent to thundernews.com on March 27, 2009, along with a disk with approximately
22 1,338 full-size P10 Images.  The letter and disk were very similar to what I sent to
23 Giganews on March 25, 2009.  Attached as pages 2-9 of Exhibit 30 are some of the
24 P10 Images identified in that notice.  Attached page 10 of Exhibit 30 is a response
25 from thundernews.com dated April 10, 2009.  It states, **"The admin team has been**
26 **able to identify and remove approximately 75% of the material you submitted**
27 **based on the information you provided.  They are continuing to investigate the**
28 **balance of the material"**  (emphasis added).  Because I submitted some of the same

1  images to both Newsdemon and Thundernews, (compare pages 8-9 of Exhibit 30 to
2  pages 5-6 of Exhibit 29) it is possible that Thundernews could not find some of the
3  images because they had already been removed by Newsdemon. I have included the
4  entire notice to Thundernews in Exhibit 43 (the disk) in a folder labeled "Notices to
5  other USENET paysites."

6        8.    Other ISPs have processed Perfect 10's more recent notices, including
7  CCBill. I have including in Exhibit 43 (the disk) in a folder labeled "Notices
8  processed by CCBill and other ISPs" notices which Perfect 10 sent on or after 2007,
9  that were processed by CCBill, Yahoo! IAC, and Host Dime.

10       9.    As far as I can determine, Defendants have not removed **anything** that I
11 have advised them of, including Perfect 10 images ("P10 Images"), child pornography,
12 disgusting defamatory celebrity fakes, and the same infringing music files that were at
13 issue in *Arista v. Usenet*. I have placed in Exhibit 43 (the disk), in a folder labeled
14 "Giganews and Child Pornography," a spreadsheet and printscreens showing that
15 Giganews was likely offering at least 29,800 child-pornographic files to its users as of
16 August 21, 2011, including virtually every file that I advised them of. Most had very
17 explicit titles, such as "Petite Lolita, loves tiny male penis." I have only viewed the
18 titles of the messages. I have not viewed or downloaded any of the associated
19 materials. I advised Mr. Yokubaitis that at least 95% of the results of a default
20 newsrover search on "Sarah Michelle Gellar" are defamatory fakes and have sent to
21 Giganews examples of such fakes in prior notices (see Zada Decl. ¶18, Exh. 12).
22 However, as far as I can tell, Giganews has not removed any of those images. I have
23 also included in Exhibit 43 (the disk) evidence that as of August 27, 2011, Giganews
24 had not removed the infringing songs that I have identified to it, in a folder labeled
25 "Giganews infringes songs identified in Arista."

26       10.    I have made a special effort to send Defendants DMCA notices that
27 satisfy the statutory requirements. I have also tried to keep the notices relatively small
28 in size, with no folders or subfolders. To satisfy §512(c)(3)(a)(iii), "information

1 reasonably sufficient to permit the service provider to locate the material," I have
2 provided Defendants not only with the Image Identifiers which they could use, but I
3 have also provided, whenever possible, a search term that would yield all of the
4 infringing posts in one search, making the notice easy to quickly process. An example
5 of such a search would be "P10 Vol4 01," which returns solely infringing copies of
6 pages for Perfect 10 Magazine Volume 4, Number 1. To satisfy §512(c)(3)(a)(ii),
7 "identification of the copyrighted work claimed to have been infringed," I have
8 attached copies of the actual infringing images, which should identify the copyrighted
9 work (image) since they are copies of that work (image). I have also attached copies
10 of the authorized images along with a URL showing their authorized location on
11 Perfect 10's website. Attached as Exhibit 31 is one such notice which I sent to
12 Giganews on August 6, 2011. The notice is one document that does not have folders
13 or subfolders. I provided copies of the infringing images on page 3 of the notice,
14 which have Image Identifiers that Defendants could use to find the infringing material
15 (and the associated Message-IDs if they so chose). I also indicate in the notice that all
16 of the infringing images could be found by simply doing a Newsrover search on
17 "Ildiko Fronte." Defendants were thus provided with two different ways to find the
18 infringing material. I also provided copies of the authorized images on page 4 of the
19 notice, as well as the location of those images (see the URL at the bottom of page 4 of
20 Exhibit 31). I believe that this notice and at least 26 of the other notices that I have
21 sent to Defendants, would satisfy the standards enunciated by Judge Matz in his July
22 2010 ruling. However, Defendants have not processed any of those notices.

23     11. Attached as Exhibit 32 is another such notice. In this notice, I advised
24 Giganews that it could simply do a search on "Isabelle Funaro" and remove all the
25 resulting posts that appeared. I also provided Image Identifiers which could be used to
26 find the associated Message-IDs as well, if Defendants so chose. The notice is one
27 document with no folders or subfolders. I provided copies of both the infringing
28 images and the authorized images, as well as the location of the authorized images (see

1  URL at the bottom of pages 4 and 5).

2  12. Attached as Exhibit 33 is another such notice, except in this case, I also
3  included printscreens of the actual infringing posts, to give Defendants three different
4  ways to find the infringing materials.  In the notice, I state that all of the infringing
5  materials could be removed by simply doing a newsrover  search on "P10 Vol4 01" on
6  the Giganews offered newsgroup alt.binaries.pictures.erotica.scanmaster.  Pages 3-5
7  contain the images themselves, with the image identifiers.  On page 6 and 7 of the
8  notice, I attached print-screens of the infringing posts made by Polander@Poland.com,
9  which contain the corresponding infringing images that appear on pages 3-5.  On pages
10 8-9, I included printscreens of the authorized images from Perfect 10 Magazine,
11 Volume 4, Number 1.  Defendants could have found the infringing material simply
12 doing the search I indicated, "P10 Vol4 01" and removing all of the resulting posts.
13 They could have removed thousands of infringing posts by removing all posts by
14 Polander@Poland.com, who has massively infringed Perfect 10's works and is using a
15 phony email address.  This notice explains how Defendants can find all the
16 infringments with one search, and provides copies of both the infringing images and
17 the authorized images from Perfect 10 Magazine.

18 13. Attached as Exhibit 34 are two more notices which I sent to Giganews on
19 or about August 17, 2011 that are similar to the notice in Exhibit 33.  In this case I
20 explained that Defendants could find and remove all infringements by simply
21 performing the searches "P10 Vol2 05" and "P10 Vol 3 04."  Every message that
22 appeared as a result of those searches was infringing, and could have been removed by
23 Defendants if they had so desired.

24 14. I have included in Exhibit 43 (the disk), in a folder labeled "Additional
25 DMCA notices," copies of each of Perfect 10's DMCA notices that were not included
26 in Exhibit 25 (the disk) to the Zada Decl.

27 ////
28 ////

**WHY USING MESSAGE IDS FOR LARGE NUMBERS OF INFRINGMENTS IS NOT FEASIBLE**

15.  Attached as page 1 of Exhibit 35 are the Message-IDs that Giganews claims it requires, which correspond to the Image Identifiers shown on page 3 of Exhibit 31.  I cannot use Defendants' proposed Message-IDs for multiple reasons.  First, a list of Message IDs for the 46,000 Images that Defendants have infringed, would take approximately 1,000 pages to list and three months to create.  By itself, the list of Message-IDs would tell me nothing about what was infringed.  Consequently, I would also have to keep a list of the associated Image Identifiers as shown on page 2 of Exhibit 35.  That would likely take an additional month, but I would still not be able to readily determine which image was infringed.  I have attached as page 3 of Exhibit 35, the full infringing message which I obtained by clicking on the highlighted message title on the third row.  I have placed arrows to the Image Identifier as well as the Message-ID.  **Because both the Image Identifier and the Message-ID appear in the infringing message, either one can be searched on to locate that message.**  However, because the Image Identifiers each contain the same term "Ildiko Fronte" (see page 2), by searching on the common portion of the Image Identifiers, many infringing messages can be located with just one search.  Second, since I cannot use Newsrover to search on the Message-IDs, I could not tell from a list of Message-IDs, whether or not Defendants removed anything, or even locate the infringing material myself (see Zada Decl. ¶19, Exh. 13).   Third, because a list of Message-IDs does not identify the infringed works, there would be no point in spending so much time to create a notice that is incomprehensible, unsearchable, and DMCA deficient.  I have repeatedly asked Mr. Yokubaitis how one could reasonably send notices that list Message-IDs and simultaneously allow the copyright holder to keep track of which images were associated with those Message-IDs.  Mr. Yokubaitis did not respond to any of those emails.  I have also asked Mr. Yokubaitis to explain to me exactly what he means by a "Message Header."  Attached as Exhibit 36 is that email.  Mr. Yokubaitis

1   did not respond to that email either.

2   16.   Message-IDs also are unworkable in the common situation where the
3   Message-ID identifies a zip file that may contain a hundred images, only some of
4   which the copyright holder owns rights to.  In that instance, the copyright holder
5   cannot swear that it owns the rights to all of the material identified by that Message-
6   ID.  Attached as page 1 of Exhibit 37, is the results I obtained doing a Newsrover
7   default search on "Marisa Miller."  The message (post) highlighted in blue, is 20,146
8   kilobytes, or over 20 million bytes.  It actually consists of over 100 separate images of
9   Marisa Miller.  Page 2 shows the message I received when I tried to download that file
10  from giganews.com.  Page 3 shows what I obtained after I downloaded the file and
11  clicked on the message (post) to obtain the Message-ID.  There is one message-ID,
12  "4d34621a$3$28249$2d805a3e@uploadreader.eweka.nl," for all of attached files
13  (images) with Image Identifiers listed in red near the bottom of page 3.  Attached as
14  page 4 of Exhibit 37 are some of those images.  I have placed check marks by the
15  images that are owned by Perfect 10.  In this instance, Perfect 10 could not swear
16  under penalty of perjury that it owns the content associated with the Message-ID, and
17  the Message-ID by itself would not identify the specific P10 infringing material.

18  17.   Attached as Exhibit 38 are pages that I obtained when I attempted to use
19  archive.org on August 29, 2011 to view pages from Defendants websites dealing with
20  their DMCA policy.  In the case of giganews.com, the DMCA page was blocked, but
21  other pages were available.  In the case of usenet.net, powerusenet.com, and
22  rhinonewsgroups.com, all pages were blocked.  In each case, the page states, "Page
23  cannot be crawled or displayed due to robots.txt."  This means that Defendants asked
24  archive.org to not display pages from Defendants websites as they appeared in the past.

25  18.   Defendants make a number of statements regarding Perfect 10's
26  procedures for sending DMCA notices that are completely incorrect.  I have already
27  provided to the Court, in this reply declaration, as well as the original Zada Decl.,
28  examples of at least 10 Perfect 10 DMCA notices to various ISPs that were processed,

1 in some cases in as little as two days.  As a result of the CCBill case, from 2004
2 onward, Perfect 10 has done everything possible to send the best DMCA notices I am
3 aware of.  We expend so much time creating notices, and the notices are so important,
4 that it would be foolish to send anything but the best possible notices.  The failure to
5 include the swearing language at the end of the CCBill notices sent in 2002 and 2003
6 was solely my fault.  I did not consult with any attorneys before sending those notices.
7 The Ninth Circuit also found that a key notice that I sent on July 14, 2003 was
8 deficient because I provided a spreadsheet that referred to the bates stamp numbers of
9 P10 Images that had been produced in discovery six months earlier.  I had to do that
10 because CCBill had cancelled all of our passwords to their paysites and blocked our
11 access.  I have attached for the convenience of the Court, as page 1 of Exhibit 39, the
12 language regarding the blocking issue in the Ninth Circuit's ruling.  After Perfect 10
13 had spent thousands of dollars subscribing to more than 100 CCBill affiliated websites,
14 CCBill cancelled all of our passwords and would not let us access the paysites CCBill
15 billed for.  Attached as page 2 of Exhibit 39 is an example of a block that occurred on
16 October 3, 2002.  Attached as page 3 of Exhibit 39, is an example of a block that
17 occurred on October 28, 2003.  For more than a year, Perfect 10 was effectively
18 blocked from accessing CCBill affiliated websites, barring us from gathering evidence.
19 I have included **26 pages** of examples of CCBill blocking our access in Exhibit 43 (the
20 disk) in a folder labeled "CCBill Blocked Perfect 10's Access."
21      19.    Defendants also make a number of statements without any real basis, as to
22 why Perfect 10 has never been successful.  Perfect 10 has never been successful
23 because we spent much more money than most content providers to produce what are
24 arguably the highest quality semi-nude images of top natural models available
25 anywhere in the world, and then everything was stolen from us.  For example, we paid
26 Marisa Miller $9,600 to photograph her, and then later paid her an additional $50,000
27 for finishing third in our Model of The Year Program, which cost $1,000,000 to
28 produce.  In contrast, Playboy's typical rate for shooting models has been $700 a day.

1  As a result, Perfect 10 is the only rights holder that has fully topless images of
2  supermodel Marisa Miller, which by themselves, are worth millions of dollars.
3  Entities like Defendants, who steal that material from us, as well as the intellectual
4  property of everyone else, have an enormous unfair competitive advantage over any
5  legitimate business that pays for its content.  If Defendants and other infringers paid
6  us for our content (as they should), Perfect 10 would have a thriving business.

7  20.  Attached as Exhibit 40 is a spreadsheet that I created using the data on
8  page 7 of Exhibit 5 to the Zada Decl. That Exhibit listed the major Usenet Providers as
9  well as the amount of USENET content posted through each provider.  The numbers in
10 the spreadsheet were taken from the "Mybytes" column on the right side of page 7 of
11 Exhibit 5, and consist of all numbers over 20.2.  Astraweb.com was responsible for the
12 most posted content, followed by xsnews.nl.  All of the websites in Exhibit 40 are
13 paysites and/or provide infringing newsfeeds to paysites.  Each one has infringed
14 thousands of P10 Images.  The total Mybtes for the 13 websites is 26,813.5.
15 Googlegroups, which appears to be mostly text, is responsible for 20.1 Mybtes.  That
16 means that the 13 infringing websites listed in Exhibit 40, account for more than
17 99.9% of the material on the USENET.

18 21.  Attached as Exhibit 41 is a page from the oral argument heard before the
19 Ninth Circuit regarding Perfect 10's appeal of a recent denial by Judge Matz of Perfect
20 10's second motion for preliminary injunction.  The pages were translated from the
21 audio tape by a Court Reporter, who incorporated Perfect 10's and Google's
22 corrections.  On page 1 of Exhibit 41, Judge Kozinski states, "**[The District Court]**
23 **approved the Group B notices**" (emphasis added).   On behalf of Perfect 10, I created
24 and sent 48 Group B notices to Google.  Mr. Bridges, Google's previous attorney, had
25 claimed that the Group B notices were deficient.  Because of Google's continued
26 contention that all of Perfect 10's Group B notices were deficient, in June of 2007, I
27 began sending to Google notices created using Adobe Acrobat Professional, which
28 have significant advantages (see Reply Declaration of Sean Chumura submitted

1  herewith ¶7).  Unfortunately, while the Group B notices were ultimately found to be
2  compliant, at least in form, 18 larger notices created using Adobe Acrobat were not, in
3  part because they had, in the opinion of the Court, too many folders and subfolders.  I
4  have included the entire transcript of the oral argument before the Ninth Circuit in
5  Exhibit 43 (the disk) in a folder labeled "Ninth Circuit Oral Argument."
6       22.   Attached as pages 1-4 of Exhibit 42, are copies of pages from the actual
7  Perfect 10 DMCA notice, sent to Google in 2001.  Defendants' version of page 4 is
8  attached as Page 5 of Exhibit 42, which Defendants attached as part of Docket No. 45-
9  2 (Exhibit Part 2 of the Declartion of Thomas J. Kearney ("Kearney Decl.")).
10 Defendants' copy is substantially less readable and is not a true and correct copy.
11 Google provided the same low quality copies to the District Court.
12      23.   The materials attached to the Kearney Decl. are very misleading **and are**
13 **not true and correct copies** of the actual notices that were sent.  Perfect 10 had the
14 same problem in the Google case, where Google provided notices to Judge Matz that
15 **were not true and correct copies**.  Perfect 10 sent its notices in Adobe PDF format,
16 which means that the documents were pristine in color, **searchable**, **and had live links**
17 that could be readily copied using Adobe's "copy link" function.  Defendants have
18 chopped up organized notices into incomprehensible fragmented pieces.  They have
19 converted Perfect 10's sophisticated pristine searchable notices with live links to dead
20 pieces of disjointed paper.  I have attached substantial evidence that other ISPs have
21 processed similar notices.  See Exhibits 29-30, 43 filed with this declaration, and Zada
22 Decl. ¶¶20-22, Exhs. 14-16.  The images attached as Exhibit G to the Kearney Decl.
23 are also not true and correct copies because they have left off the Image Identifiers.
24 Mr. Kearney's contention that 40% of the images attached to Perfect 10's March 25,
25 2009 are not owned by Perfect 10 is simply wrong.  Perfect 10 simply used the wrong
26 number (800) in its complaint.
27      24.   In paragraph 3 to the Kearney Decl., Mr. Kearney contends that Perfect
28 10 failed to provide a list of titles of Perfect 10's copyrighted works, a list of copyright

1  registration numbers, or a list of dates for copyright registrations.  I have never seen
2  any DMCA notice which provides that information.  However, Perfect 10 did provide
3  that information in a number of notices to Defendants as we provided an actual copy of
4  the copyrighted magazine that had been infringed, as well as Image Identifiers that
5  provided the Volume and Issue number of the magazine as well.  Our Magazines were
6  registered by their volume and issue number.  Poblete Decl. ¶3.  Finally, Defendants
7  do not request such information in their DMCA policies.
8      I declare under penalty of perjury under the laws of the United States of
9  America that the foregoing is true and correct to the best of my knowledge.  Executed
10  this 1st day of September 2011 in Los Angeles, California.

                                          _____
                                          NORMAN ZADA