1  Andrew P. Bridges (SBN 122761)
   abridges@winston.com
2  Jennifer Golinveaux (SBN 203056)
   jgolinveaux@winston.com
3  K. Joon Oh (SBN 246142)
   koh@winston.com
4  **WINSTON & STRAWN LLP**
   101 California Street
5  San Francisco, CA  94111-5802
   Telephone:  (415) 591-1000
6  Facsimile:  (415) 591-1400

7  Attorneys for Defendants
   GIGANEWS, INC. and LIVEWIRE SERVICES, INC.
8

9                    UNITED STATES DISTRICT COURT

10                   CENTRAL DISTRICT OF CALIFORNIA

11

12 | PERFECT 10, INC., a California  ) | **Case No. 11-CV-07098 JHN - RZ**
   | corporation,                    )
13 |                                 ) | **REPLY BRIEF IN SUPPORT OF**
   |             Plaintiff,          ) | **DEFENDANTS' RULE 12(b)(6)**
14 |                                 ) | **MOTION TO DISMISS**
   |      vs.                        )
15 |                                 ) | **[Supporting Declaration of K. Joon Oh**
   | GIGANEWS, INC., a Texas corporation; ) | **filed Concurrently]**
16 | LIVEWIRE SERVICES, INC., a Nevada )
   | corporation; and DOES 1 through 100, )
17 | inclusive,                      ) | **Hearing Date Not Yet Set**
   |                                 )
18 |             Defendants.         ) | **Hon. Jacqueline H. Nguyen**
   |                                 )
19                                   )

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ............................................................................................. 1

II. PERFECT 10'S CONCLUSORY ALLEGATIONS FAIL TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT. .................................................. 1

    A. Perfect 10 Fails Adequately to Allege Volitional Copying. ...................... 1

    B. Perfect 10's Conclusory Allegations Fail to State a Claim for Secondary Copyright Infringement. ............................................................ 6

        1. Perfect 10 Cannot Point to Any Allegations of Underlying Third Party Infringements. ............................................................ 6

        2. Perfect 10's Conclusory Allegations Cannot State a Claim for Contributory Infringement. ............................................................ 7

        3. Perfect 10's Conclusory Allegations Fail to State a Claim for Vicarious Infringement. ............................................................ 8

    C. Contrary to Its Assertions, Perfect 10 Has Failed to Sufficiently Identify Registered Works. ............................................................ 8

III. PERFECT 10'S CONCLUSORY ALLEGATIONS FAIL TO STATE A CLAIM UNDER THE LANHAM ACT. .................................................. 9

    A. Perfect 10 Tacitly Concedes the Failure of Its Trademark Infringement Claim. ............................................................ 9

    B. Perfect 10 Fails to State a Claim for Secondary Trademark Infringement. ............................................................ 9

    C. Perfect 10 Cannot Dispute that Search Results Are Insufficient to State a Claim for Dilution. ............................................................ 10

    D. Perfect 10 Ignores Recent Precedent Precluding It from Disguising Its Copyright Claims as Lanham Act Claims. ............................................................ 11

IV. TO THE EXTENT PERFECT 10'S STATE-LAW CLAIMS ARE NOT PREEMPTED, IT LACKS STANDING. ............................................................ 11

V. CONCLUSION ............................................................ 13

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Arista Records LLC v. Usenet.com, Inc*,
   633 F. Supp. 2d 124 (S.D.N.Y. 2009) ............................................................. 3, 5

*Ashcroft v. Iqbal*,
   556 U.S. ___, 173 L. Ed. 2d 868, 129 S. Ct. 1937 (2009) ......................... passim

*Bell Atlantic v. Twombly*,
   550 U.S. 544, 167 L. Ed. 2d 929, 127 S. Ct. 1955 (2007) ......................... passim

*Capitol Records, Inc. v. MP3tunes, LLC*,
   No. 07 Civ. 9931, 2009 WL 3364036 (S.D.N.Y. Oct. 16, 2009) .......................... 4

*Capitol Records, Inc. v. MP3tunes, LLC*,
   — F. Supp. 2d — , 2011 WL 3667335 (S.D.N.Y. Aug. 22, 2011) ...................... 4

*CoStar Group, Inc., v. LoopNet, Inc.*,
   373 F.3d 544 (4th Cir. 2004) ................................................................................ 5

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
   539 U.S. 23, 156 L. Ed. 2d 18, 123 S. Ct. 2041 (2003) ..................................... 11

*Ellison v. Robertson*,
   189 F. Supp. 2d 1051 (C.D. Cal. 2002), *rev'd in part on other grounds by*
   357 F.3d 1074 (9th Cir. 2004) ......................................................................... 5, 8

*Fair Housing Council of San Fernando Valley v. Roommates.com*,
   521 F.3d 1157 (9th Cir. 2008) ...................................................................... 11, 12

*Law v. Harvey*,
   No. C 07-00134, 2007 WL 2990426 (N.D. Cal. Oct. 11, 2007) ....................... 13

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*,
   No. C 07-03952, 2010 WL 5598337 (N.D. Cal. Mar. 19, 2010) ...................... 10

*Metro Goldwyn Mayer Studios Inc. v. Grokster, Ltd.*,
   545 U.S. 913, 162 L. Ed. 2d 781, 125 S. Ct. 2764 (2005) .................................. 7

*N.Y. Times Co., Inc. v. Tasini*,
   533 U.S. 483, 150 L. Ed. 2d 500, 121 S. Ct. 2381 (2001) .................................. 3

*Parker v. Google, Inc.*,
   422 F. Supp. 2d 492 (E.D. Pa. 2006), *aff'd* 242 F. App'x 833 (3d Cir. 2007),
   *cert. denied*, 552 U.S. 1156 (2008) ........................................................................5

*Perfect 10, Inc. v. CCBill LLC*,
   488 F.3d 1102 (9th Cir. 2007) ...............................................................................11

*Perfect 10, Inc. v. GUBA, LLC*,
   No. C 02-2842 (N.D. Cal. Dec. 30, 2002)..............................................................3

*Perfect 10, Inc., v. Megaupload Ltd.*,
   No. 11-cv-0191, 2011 WL 3203117 (S.D. Cal. July 27, 2011) .............10, 11, 13

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
   494 F.3d 788 (9th Cir. 2007), *cert. denied*, 553 U.S. 1079 (2008) .......6, 8, 10, 13

*Playboy Enters., Inc. v. Russ Hardenburgh, Inc.*,
   982 F. Supp. 503 (E.D. Ohio 1997)........................................................................5

*Playboy Enters., Inc. v. Webbworld, Inc.*,
   991 F. Supp. 543 (N.D. Tex. 1997) ................................................................4, 5, 8

*Polar Bear Prod., Inc. v. Timex Corp.*,
   384 F. 3d 700 (9th Cir. 2004) ...............................................................................11

*Religious Tech. Ctr. v. Netcom On Line Commc'n Servs., Inc.*,
   907 F. Supp. 1361 (N.D. Cal. 1995).....................................................................4, 5

*Rosetta Stone Ltd. v. Google, Inc.*,
   730 F. Supp. 2d 531 (E.D. Va. 2010) ...................................................................10

*Sega Enters. Ltd. v. MAPHIA*,
   857 F. Supp. 679 (N.D. Cal. 1994).........................................................................5

*Sega Enters. Ltd. v. MAPHIA*,
   948 F. Supp. 923, 932 (N.D. Cal. 1996)................................................................5

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
   464 U.S. 417, 78 L. Ed. 2d 574, 104 S. Ct. 774 (1984) .......................................7

*Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*,
   7 F.3d 1434 (9th Cir. 1993) ..................................................................................13

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

**STATUTES AND RULES**

California Civil Code § 3344 ................................................................................. 12

California Civil Code § 3344.1 .............................................................................. 12

Rule 12(b)(6) ............................................................................................................ 1


**OTHER AUTHORITIES**

1983-84 Sess., SENATE POLICY COMMITTEE ANALYSIS ON S.B. 613:
    COMMERCIAL EXPLOITATION OF DECEASED CELEBRITIES (Cal. 1984) .............. 12

## I. INTRODUCTION

In an effort to survive this motion, Perfect 10 argues that it has alleged generally "that Defendants are the operators of massive infringing paysites," and that this allegation "distinguishes Defendants from passive hosting companies and other Internet Service Providers that are truly performing their functions without knowledge that they are involved in copyright infringement." Pl.'s Mem. P&A in Opp'n to Defs.' Rule 12(b)(6) Mot. to Dismiss ("MTD Opp'n") at 1-2 (Docket No. 37). Perfect 10 argues that this and other similar conclusory allegations are sufficient to state the asserted claims and survive a motion dismiss. Perfect 10 urges that similarly conclusory allegations are adequate to avoid preemption of its state law claims.

To the contrary, Perfect 10's allegations fall far short of the pleading standard. As the Supreme Court has repeatedly made clear, "'naked assertion[s]' devoid of 'further factual enhancement'" are insufficient to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. ___, 173 L. Ed. 2d 868, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 557, 167 L. Ed. 2d 929, 127 S. Ct. 1955, 1966 (2007)) (alteration in original). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Perfect 10's Complaint relies on just such naked, conclusory assertions. It falls far short of pleading the factual enhancements required adequately to state any of the asserted causes of action.

## II. PERFECT 10'S CONCLUSORY ALLEGATIONS FAIL TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT.

### A. Perfect 10 Fails Adequately to Allege Volitional Copying.

Defendants' opening brief explained that Plaintiff's claim of direct copyright infringement fails because Perfect 10 does not allege volitional conduct necessary for direct copyright infringement. Mem. P&A in Supp. of Defs.' Rule 12(b)(6) Mot. to Dismiss ("Mem. P&A") at 7-8 (Docket No. 11-1). Defendants cited a long line of cases establishing that automated processes, such as an Internet service provider's

1
REPLY BRIEF IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS   CASE No. 11-CV-07098

automated dissemination of Usenet messages posted by others, do not of themselves give rise to liability for direct copyright infringement. *Id.*

Perfect 10 responds that it *has* alleged volitional acts because it alleged generally that (1) Defendants programmed their computers to copy and distribute known infringing content; (2) Defendants "select and control which newsgroups to distribute and copy" in Paragraphs 25, 26, 28 of the Complaint; and (3) Defendants "willfully copied, distributed and sold" access to Plaintiff's images in Paragraphs 5, 29, 36, and 43 of the Complaint. MTD Opp'n at 7-8. Those paragraphs, however, contain nothing but factless conclusions pertaining to Defendants' provision of access to Usenet in general. There are no facts to support a claim of volitional copying.

For example, Paragraph 25 of the Complaint merely alleges that Defendants store the allegedly infringing materials "on their servers," "program their servers to distribute" the allegedly infringing material, and "control" which materials are distributed and copied. These allegations, however, would apply indiscriminately to any provider of Usenet access. Plaintiff fails to allege Defendants engaged in any specific volitional conduct.

The other referenced paragraphs are entirely conclusory. For example, Paragraph 28 alleges that "Defendants are aware that they are illegally copying, reproducing, distributing, displaying, and selling massive quantities of infringing materials because they do not own the rights to any of the materials" and that "[b]ecause Defendants charge membership fees, they are distributors and sellers of pirated materials." These are not factual allegations sufficient to state a claim for volitional copying; they are merely Perfect 10's argumentative conclusions about Usenet in general. While factual allegations in the Complaint need not be detailed, they must suffice to "raise a right to relief above the speculative level"; "labels and conclusions" cannot suffice. *Twombly*, 550 U.S. at 555.

Having failed to allege facts sufficient to indicate volitional copying, Perfect 10 resorts to a misguided argument that this case is "virtually identical" to other cases

2
REPLY BRIEF IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS   CASE NO. 11-CV-07098

that found volitional copying. Perfect 10 grossly mischaracterizes the factual relevance of *Arista Records LLC v. Usenet.com, Inc.* and the unpublished decision *Perfect 10 v. GUBA, LLC*. *See* MTD Opp'n at 12 (the "only cases dealing with similar conduct are *Arista* and *Guba*"). *Arista* specifically acknowledged the volition requirement, and cuts against Perfect 10 because the defendant Usenet provider there "took active steps, including both automated filtering and human review . . ." MTD Opp'n at 8 (quoting *Arista*, 633 F. Supp. 2d 124, 148-49 (S.D.N.Y. 2009)). Defendants do not do so; more importantly, Perfect 10 fails to allege that Defendants took any active steps outside of the routine, automated processes required to provide Usenet access services.[1] Moreover, the *Arista* decision also turned on discovery abuses and sanctions that precluded Defendants from seeking DMCA safe harbor. *Arista,* 633 F. Supp. 2d at 142. Defendants here will be entitled to the safe harbor if it becomes necessary to reach that issue.

Perfect 10 also claims that "Guba operated in an almost identical fashion to Defendants." MTD Opp'n at 1 n.1. But GUBA was *not* a Usenet service provider. It harvested hundreds of images infringing Perfect 10's copyrights and then "post[ed] those images on its website." *Perfect 10, Inc. v. GUBA, LLC*, No. C 02-2842, at 2 (N.D. Cal. Dec. 30, 2002) (emphasis added) (attached to Declaration of K. Joon Oh ("Oh Decl.") ¶ 2, Ex. A). Defendants do no such thing, and Perfect 10 makes no such allegations. Unlike GUBA, in which it was "undisputed that images of 332 photographs in which Perfect 10 owns copyrights <u>were found on GUBA's Internet site, www.guba.com</u>", *id.* at 1-2 (emphasis added), Defendants do not maintain websites that host any allegedly infringing material; <u>they provide access to Usenet</u>. Perfect 10's conclusory mischaracterization of Defendants as providing *pirate websites* rather than *Usenet access,* without pleading any facts to support the claim, is

---

[1] Because Perfect 10 fails to allege volitional conduct, the Court does not need to reach the issue whether such conduct infringed an exclusive right under the Copyright Act. *See* MTD Opp'n at 9-10 (discussing *N.Y. Times Co., Inc. v. Tasini*, 533 U.S. 483, 150 L. Ed. 2d 500, 121 S. Ct. 2381 (2001), and similar cases). Furthermore, in *Tasini*, there was no question whether the alleged infringers acted volitionally.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1  insufficient.

2  The other cases Perfect 10 cites are even more dissimilar. *Capitol Records, Inc.
3  v. MP3tunes, LLC,* No. 07 Civ. 9931, 2009 WL 3364036 (S.D.N.Y. Oct. 16, 2009)
4  involved websites that offered online locker services, not providers of Usenet access.
5  Moreover, there the court ultimately found volitional conduct *not* on the part of
6  defendant Internet service providers, but rather on the part of the individual defendant
7  who had personally uploaded infringing files. *Capitol Records, Inc. v. MP3tunes,
8  LLC,* — F. Supp. 2d — , 2011 WL 3667335, at *15 (S.D.N.Y. Aug. 22, 2011).
9  Perfect 10 similarly mischaracterizes the factual relevance of *Playboy Enters., Inc. v.
10 Webbworld, Inc.*, 991 F. Supp. 543 (N.D. Tex. 1997). MTD Opp'n at 16. Perfect 10
11 contends that *Webbworld* is "an analogous USENET context." *Id.* But, as
12 *Webbworld* makes clear, Webbworld was *not* a Usenet service provider. Webbworld
13 instead "operated 'Netpics,' an adult-oriented site on the Internet's World Wide
14 Web . . . ." *Webbworld,* 991 F. Supp. at 549. The individual running Webbworld
15 personally selected the adult-oriented content to be downloaded and then loaded the
16 content onto the Netpics web servers using a proprietary software program he wrote
17 called ScanNews. *Id.* Defendants do no such thing, and Perfect 10 makes no such
18 allegations. *Webbworld*, in fact, illustrates perfectly why Perfect 10 fails to allege
19 adequately its copyright claims. As *Webbworld* explains, the distinction between a
20 *website* and a *Usenet access provider* is stark:

> Unlike the defendant [Usenet] service provider in [*Netcom*],
> Webbworld did not function as a mere provider of
> access . . . . Webbworld did not sell access . . . . Webbworld
> functioned primarily as a store, a commercial destination
> within the Internet. Just as a merchant might re-package and
> sell merchandise from a wholesaler, so did Webbworld re-
> package (by deleting text and creating thumbnails) and sell
> images it obtained from the various newsgroups. In contrast
> to the defendant [Usenet provider] in [*Netcom*], Webbworld
> took "affirmative steps to cause the copies to be made."
> [*Netcom*], 907 F. Supp. at 1381. Such steps included using
> the ScanNews software to troll the Usenet for Webbworld's
> product.

28 *Webbworld,* 991 F. Supp. at 552 (applying *Religious Tech. Ctr. v. Netcom On Line*

*Commc'n Servs., Inc.,* 907 F. Supp. 1361 (N.D. Cal. 1995)).

As a fallback position Perfect 10 contends that Defendants must act volitionally because "computers do not program themselves, or *select* which newsgroups to copy and distribute." MTD Opp'n at 8 (emphasis in original). Accepting Perfect 10's conclusion would eliminate the volitional requirement for direct copyright infringement that *Netcom* articulated, that Congress codified in the DMCA,[2] and that the Ninth Circuit affirmed in *Ellison*.[3] Perfect 10 alleges nothing beyond the fact that Defendants provide access to Usenet, which does not amount to volitional copying. Courts have held repeatedly that Usenet service providers' routine activities are not "volitional" and therefore do not constitute direct infringement. *See, e.g.*, *Netcom*, *Ellison*, *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 497 (E.D. Pa. 2006), *aff'd* 242 F. App'x 833 (3d Cir. 2007), *cert. denied*, 552 U.S. 1156 (2008).[4] Perfect 10 must allege something more, namely facts showing that Defendants engaged in human review or manual selection of infringing material. *Compare Netcom*, *Ellison*, *Parker,* and *Sega with, e.g.*, *Arista; Webbworld*; *Playboy Enters., Inc. v. Russ Hardenburgh, Inc.*, 982 F. Supp. 503, 508, 513 (E.D. Ohio 1997) (direct intervention to review and select infringing files for release onto system).

In lieu of facts, Perfect 10 again relies upon conclusory rhetoric to mischaracterize Defendants and their Usenet access services. Perfect 10's "'naked assertion[s]' devoid of 'further factual enhancement'" are insufficient to survive a motion to dismiss. *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). While the Court must accept as true all of the well-pleaded allegations of the

---

[2] Congress legislatively codified *Netcom* in part in the Digital Millennium Copyright Act ("DMCA"). *See CoStar Group, Inc., v. LoopNet, Inc.*, 373 F.3d 544, 554 (4th Cir. 2004).
[3] *Ellison v. Robertson*, 189 F. Supp. 2d 1051, 1056-57 (C.D. Cal. 2002), *rev'd in part on other grounds by* 357 F.3d 1074, 1073 (9th Cir. 2004).
[4] Perfect 10 relies upon a pre-*Netcom* opinion, *Sega Enters. Ltd. v. MAPHIA*, 857 F. Supp. 679 (N.D. Cal. 1994), and does not discuss the later post-*Netcom* opinion in that case, 948 F. Supp. 923, 932 (N.D. Cal. 1996), that applied *Netcom* to find that the operator of an electronic bulletin board system had not acted with volition. MTD Opp'n at 9.

5

REPLY BRIEF IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS        CASE NO. 11-CV-07098

complaint, this rule "is inapplicable to legal conclusions." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 570). The "court need not accept [Perfect 10's] conclusory allegations of law or unwarranted inferences." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 794 (9th Cir. 2007), *cert. denied*, 553 U.S. 1079 (2008). Perfect 10 has failed to allege that Defendants directly infringe copyrights.

### B. Perfect 10's Conclusory Allegations Fail to State a Claim for Secondary Copyright Infringement.

#### 1. Perfect 10 Cannot Point to Any Allegations of Underlying Third Party Infringements.

Perfect 10 argues that it pleaded underlying third-party infringements sufficient to support its secondary claims because it alleges generally that Defendants have copied, distributed, and displayed Perfect 10's images, and other third party content, on Defendants' Usenet servers. MTD Opp'n at 17 (citing Complaint ¶¶24-25, 28-30). As discussed, Perfect 10's allegations of Defendants' copying, based solely upon their provision of access to Usenet, are irrelevant to secondary liability claims. Perfect 10's only allegation concerning third-party infringement amounts to sheer speculation that "a *user* interested in Perfect 10's work *might use* the search term 'Perfect 10,' 'P10,' or the names of Perfect 10 models," and that "[u]sers *may choose* to display articles from Defendants' servers or *can download* the files directly to their own computer." Compl. ¶ 24 (emphases added); Mem. P&A at 14-15. As the Southern District of California observed in its order granting Defendants' motion to change venue, "Perfect 10 does not allege that any subscribers have actually downloaded infringing material . . . ." Case No. 11-0905-H at 5 (S.D. Cal. Aug. 25, 2011) (Dkt. 56); (Ex. B to Oh Decl. ¶ 3). While factual allegations in the Complaint need not be detailed, they must suffice to "raise a right to relief above the speculative level"; "labels and conclusions" cannot suffice. *Twombly*, 550 U.S. at 555. The "sheer possibility that a defendant acted unlawfully" does not "raise a right to relief above the speculative level . . . ." *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 555.

### 2. Perfect 10's Conclusory Allegations Cannot State a Claim for Contributory Infringement.

Perfect 10 concedes that it failed to adequately allege inducement, but it tries to distract the Court with supposed facts that it did not allege—facts that would be stale in any event as they allegedly occurred years ago, longer than the limitations period. MTD Opp'n at 14. It claims that it has nonetheless properly pleaded contributory infringement by alleging that "Defendants operate a gigantic infringing website." MTD Opp'n at 12. Such labels and conclusions cannot meet the *Twombly* standard.

Perfect 10 also claims that Defendants were aware of "specific infringing activities" because they could have done their own searches for "image identifiers" "provided on the DVD" that accompanied Perfect 10's 2009 letter referenced in Paragraph 31 of the Complaint. MTD Opp'n at 13. But Paragraph 31 does not allege knowledge of *any* infringing Usenet messages, only that Perfect 10 sent Defendants a DVD containing "approximately 800 Perfect 10 copyrighted images."[5]

Perfect 10 also speculates that Defendants must "plainly know" of specific infringing activities *because Usenet may be used for infringing purposes*. *Id.* The Supreme Court has rejected such an argument, repeatedly. *E.g.*, *Metro Goldwyn Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 934, 162 L. Ed. 2d 781, 125 S. Ct. 2764, 2779 (2005) ("*Sony*'s rule limits imputing culpable intent as a matter of law from the characteristics or uses of a distributed product") (discussing *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 78 L. Ed. 2d 574, 104 S. Ct. 774 (1984)). Moreover, "mere knowledge of infringing potential or of actual infringing uses would not be enough here to subject a distributor to liability." *Grokster*, 545 U.S. at 937.

---

[5] Perfect 10 also acknowledges that its allegations about the number of Perfect 10 images on the DVD provided to Defendants in 2009 are false, undermining its claims that the DVD provided notice of infringements of Perfect 10's images. MTD Opp'n at 6 n.5; 13 n.9.

### 3. Perfect 10's Conclusory Allegations Fail to State a Claim for Vicarious Infringement.

Perfect 10 again relies upon entirely conclusory allegations to argue that it has properly pleaded vicarious liability for copyright infringement. Regarding the direct financial benefit requirement, Perfect 10 does not dispute that the fixed fee Defendants charge for Usenet access service does not constitute a direct financial benefit from infringement. MTD Opp'n at 15; Mem. P&A at 13-14. Instead, Perfect 10 appears to argue that it adequately pleaded direct financial benefit based upon infringing material being a "draw" for customers, based solely on its allegation that Usenet contains infringing material, and despite never using the term "draw" in its Complaint. MTD Opp'n at 15; Compl. ¶ 26. The Ninth Circuit has made clear that plaintiffs cannot invoke the "draw" argument as a talisman, but must allege facts that show that a Usenet provider either *gained* or *lost* subscribers as a direct result of the availability of infringing materials. *Ellison*, 357 F.3d at 1079. Perfect 10 alleges no such fact.

Perfect 10 relies upon even more conclusory allegations to argue that it has properly pleaded the "right and ability to control" prong of vicarious liability, pointing only to its general allegation that Defendants "control every aspect of the copying, distribution, and sale of the pirated materials that are stored on their servers." Perfect 10 fails to allege facts that Defendants employed, directed, or otherwise supervised third parties to directly infringe Perfect 10's copyrights required to show the right and ability to supervise or control the direct infringement. *See Visa*, 494 F.3d at 802, 805 n.16; MTD Opp'n at 15-16. As discussed above, its reliance on *Webbworld,* MTD Opp'n at 16, is misguided.

### C. Contrary to Its Assertions, Perfect 10 Has Failed to Sufficiently Identify Registered Works.

Although Perfect 10 alleges it owns copyright registrations, it fails to allege adequately which registered works, if any, Defendants infringed. *See* MTD Opp'n at

17. Perfect 10 cannot sustain its copyright claim without an infringement of its *registered* copyrights. Absent dismissal, a more definite statement is appropriate to provide Defendants adequate notice.

### III. PERFECT 10'S CONCLUSORY ALLEGATIONS FAIL TO STATE A CLAIM UNDER THE LANHAM ACT.

#### A. Perfect 10 Tacitly Concedes the Failure of Its Trademark Infringement Claim.

In their opening brief, Defendants explained why allegations related to the term "perfect 10" appearing in Usenet search results were insufficient to state a claim of trademark infringement. Perfect 10's response is that it also alleges that some Usenet messages contain attachments that bear Perfect 10's trademarks. It claims that is sufficient to state a claim of trademark infringement because that constitutes a use of Perfect 10's marks by Defendants to promote goods or services. Not surprisingly, Perfect 10 cites no authority to support this novel theory, and it did not even bother to make this allegation in the section of its Complaint asserting trademark infringement (Compl. ¶¶48-59). Instead Perfect 10 relies on conclusory mischaracterizations of Defendants' Usenet access services. MTD Opp'n at 19 ("offering for sale" "pirated materials"; citing opinion where "defendant sold counterfeit copies"). While factual allegations in the Complaint need not be detailed, they must suffice to "raise a right to relief above the speculative level"; "labels and conclusions" cannot suffice. *Twombly*, 550 U.S. at 555. Perfect 10 also fails to allege facts that show a likelihood of confusion, a requirement for trademark infringement. *See* MTD Opp'n at 19.

Perfect 10 tacitly concedes these failures by asking the Court leave to amend its trademark infringement claim if it thinks the allegations are inadequate. MTD Opp'n at 19 n.12. Perfect 10 is no newcomer to these issues or to the standards for pleading trademark infringement. It has pleaded the best case it can, and it falls short.

#### B. Perfect 10 Fails to State a Claim for Secondary Trademark Infringement.

Perfect 10 cannot point to allegations in its Complaint that a third party used

Perfect 10's marks in commerce to infringe upon Perfect 10's marks, as required to state a claim for secondary trademark infringement. *Cf.* Mem. P&A at 17; MTD Opp'n at 20 (citing Compl. ¶¶ 25, 28-30). Perfect 10 argues that it pleads "that third party servers host infringing materials, including unauthorized P10 Images containing the Perfect 10 Marks." MTD Opp'n at 20 (citing Compl. ¶ 24). As recognized in another recent decision dismissing Perfect 10's trademark claims, such allegations are insufficient to state a claim for trademark infringement. *Perfect 10, Inc., v. Megaupload Ltd.*, No. 11-cv-0191, 2011 WL 3203117, *10 (S.D. Cal. July 27, 2011) (dismissing Perfect 10's trademark infringement claims). Perfect 10 fails even to address the import of *Megaupload* on its Lanham Act claims. *See, e.g.,* MTD Opp'n at 22. The failure to plead underlying infringement dooms Perfect 10's secondary trademark infringement claims. *Visa*, 494 F.3d at 807 (primary trademark infringement is a prerequisite for secondary liability). Perfect 10 also misplaces reliance on *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, No. C 07-03952, 2010 WL 5598337 (N.D. Cal. Mar. 19, 2010), as that opinion affirms that Perfect 10 must first establish a primary infringement by a third party to sustain a contributory claim. *Id.* at *10. *See* MTD Opp'n at 20. As discussed in Section III.D. below, Perfect 10's attempt to pass off its copyright infringement claim as a trademark infringement claim fails.

### C. Perfect 10 Cannot Dispute that Search Results Are Insufficient to State a Claim for Dilution.

Perfect 10 does not dispute that, "[a]bsent proof that [defendant search engine] uses the [plaintiff's] Marks to identify its *own* goods and services . . . [defendant] is not liable for trademark dilution." *Rosetta Stone Ltd. v. Google, Inc.*, 730 F. Supp. 2d 531, 551 (E.D. Va. 2010) (emphasis in original) (no dilution by search engine's use of trademarked terms to "trigger organic search results"); Mem. P&A at 18; *see* MTD Opp'n at 21. Perfect 10 alleges not that Defendants used Perfect 10's marks to identify *Defendants' services* but rather that the marks appeared in user searches. *See*

MTD Opp'n at 21 (citing Compl. ¶ 62).

### D.  Perfect 10 Ignores Recent Precedent Precluding It from Disguising Its Copyright Claims as Lanham Act Claims.

The Southern District, in another Perfect 10 case, recognized that *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 156 L. Ed. 2d 18, 123 S. Ct. 2041 (2003), precluded Perfect 10 from asserting a trademark infringement action as a substitute for a copyright infringement action, stating that "[i]n this case, Perfect 10's trademark infringement claims appear to arise largely from the potential for confusion as to the source of Perfect 10's creative works, to which extent the claims are precluded under *Dastar*." *Megaupload Ltd.*, No. 11-cv-0191, 2011 WL 3203117, *10 (dismissing Perfect 10's trademark infringement claims).  Perfect 10's reliance on *Polar Bear Prod., Inc. v. Timex Corp.*, 384 F. 3d 700, 721 (9th Cir. 2004), is faulty because that opinion failed to consider *Dastar*.

### IV.  TO THE EXTENT PERFECT 10'S STATE-LAW CLAIMS ARE NOT PREEMPTED, IT LACKS STANDING.

The Ninth Circuit has already rejected Perfect 10's attempt to avoid CDA preemption of similar state-law claims.  *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118-19 (9th Cir. 2007).  To avoid the same fate here, Perfect 10 relies upon rote recital of the applicable legal standards and bald, conclusory allegations:  it argues that, if a website helps to develop unlawful content, the website does not enjoy CDA immunity.  Perfect 10 further argues that its claim that Defendants contribute materially to illegal conduct meets that standard.  MTD Opp'n at 22-23.  While well-pleaded allegations of the complaint must be accepted as true, this rule "is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570).

Moreover, the Ninth Circuit has specifically held that interactive computer services do not *develop unlawful content* (thereby losing CDA immunity) merely because an individual may search for allegedly unlawful material on its system. *Fair*

*Housing Council of San Fernando Valley v. Roommates.com*, 521 F.3d 1157, 1169 (9th Cir. 2008) (*en banc*).  The Ninth Circuit held that Roommates.com developed unlawful content for its roommate-matching website by requiring its users to furnish "discriminatory answers" to mandatory "discriminatory questions" that Roommates.com asked.  *Id*. at 1169-72.  Perfect 10 fails to allege such facts, and its reliance on *Roommates.com* is misplaced.  MTD Opp'n at 23.  It fails to allege facts showing that Defendants *required* users to furnish content of any kind, yet alone infringing content.  Perfect 10's "'naked assertion[s]'" and "'formulaic recitation of the elements of a cause of action'" are insufficient to survive a motion to dismiss. *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).

      Perfect 10 also lacks standing to assert the publicity claims.  It can argue that publicity rights are transferable only because the relevant California statute, California Civil Code § 3344, is *silent on transferability*.  A different statute not at issue here, California Civil Code § 3344.1, provides expressly for transfer of a *deceased* personality's rights.  MTD Opp'n at 24-25.  The distinction between living persons' and deceased persons' rights is that privacy and personality interests of *living* persons are <u>personal</u> rights whereas for *deceased* persons they are <u>property</u> rights.  The legislative history undermines Perfect 10's argument.  Although publicity rights for the deceased are transferable under Section 3344.1,[6] publicity rights for living persons were left undisturbed:

> Civil Code Section 3344 codifies a person's right to recover damages for the knowing use of his 'name, photograph, or likeness' in commercial advertising or soliciting of purchases without his prior consent.  The statute is silent as to the rights of his heirs, and case law has held that those rights do not survive after the person's death.

S. Comm. on Judiciary, 1983-84 Sess., SENATE POLICY COMMITTEE ANALYSIS ON

---

[6] In 1999, the California Legislature extended the term of protection concerning a deceased personality and also renumbered that Section from 990 to 3344.1.  The Astaire Celebrity Image Protection Act, S.B. 209, 1999 Leg. Sess. (Cal. 1999) (enacted).

12

REPLY BRIEF IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS   CASE NO. 11-CV-07098

S.B. 613: COMMERCIAL EXPLOITATION OF DECEASED CELEBRITIES (Cal. 1984).[7] Perfect 10 bases its publicity claims on assignments from living models, MTD Opp'n at 25 n.16, and it therefore lacks standing.

Finally, Perfect 10's state unfair competition claim fails for the additional reason that it fails to plead facts to support the threshold injury in fact.  Perfect 10 speculates that Defendants' alleged misconduct injured Perfect 10's alleged publicity rights and trademarks rights because Defendants did not pay *third parties* "the costs to license the[ir allegedly] stolen materials . . ."  MTD Opp'n at 24.  Even if Perfect 10 had alleged that Defendants did not pay *it*[8] rather than third parties "the costs to license [its]" trademarks and publicity rights, its unfair competition claim would still fail, because Perfect 10 fails to allege facts showing "*entitlement* to licensing fees from the [trade]marks in the first place." *Law v. Harvey*, No. C 07-00134, 2007 WL 2990426, at *6 (N.D. Cal. Oct. 11, 2007) (dismissing unfair competition claim because no injury in fact) (emphasis added).  The "court need not accept [Perfect 10's] conclusory allegations of law or unwarranted inferences." *Perfect 10, Inc., v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 794 (9th Cir. 2007).

## V.   CONCLUSION

Unable to plead facts necessary to support its claims, Perfect 10 has relied completely upon conclusory allegations, naked assertions, and mischaracterizations of law.  Perfect 10 has had years of practice pleading the same causes of action asserted here, and it has gotten repeated instruction from the courts.  Its failure stems not from ignorance but from an absence of facts necessary to support its claims.  The Court should dismiss this action in its entirety with prejudice.

---

[7] Attached as Ex. C to Oh Decl. ¶ 4.
[8] Tellingly, Perfect 10 cites no cases to support its argument about its alleged injury in fact to its alleged trademark and publicity rights.  MTD Opp'n at 24.  Instead, Perfect 10 misplaces reliance on *Perfect 10, Inc., v. Megaupload Ltd.*, No. 11-cv-0191, 2011 WL 3203117, *10 (July 27, 2011) (citing *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1440 (9th Cir. 1993)), where the court examined only whether the Copyright Act preempted Perfect 10's UCL claim, and did not reach the question whether Perfect 10 sufficiently pled an injury in fact under section 17204 or whether the CDA preempted Perfect 10's UCL case.

| | | |
|---|---|---|
| Dated:  September 2, 2011 | | WINSTON & STRAWN LLP |
| | By: | /s/ Andrew P. Bridges |
| | | Andrew P. Bridges |
| | | Jennifer Golinveaux |
| | | K. Joon Oh |
| | | Attorneys for Defendants GIGANEWS, INC. and LIVEWIRE SERVICES, INC. |

SF:318189.1