Andrew P. Bridges (SBN: 122761)
abridges@winston.com
Jennifer A. Golinveaux (SBN: 203056)
jgolinveaux@winston.com
K. Joon Oh (SBN: 246142)
koh@winston.com
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111-5802
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

Attorneys for Defendants
GIGANEWS, INC. AND LIVEWIRE SERVICES, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation, <br><br> Plaintiff, <br><br> vs. <br><br> GIGANEWS, INC., a Texas corporation; LIVEWIRE SERVICES, INC., a Nevada corporation; and DOES 1 through 100, inclusive, <br><br> Defendants. | **Case No. 11-CV-07098 JHN - RZ** <br><br> **DECLARATION OF K. JOON OH SUPPORTING REPLY BRIEF IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS** <br><br> **Hearing Date Not Yet Set** <br><br> **Hon. Jacqueline H. Nguyen** |

I, K. Joon Oh, declare as follows:

1.     I am a member in good standing of the State Bar of California and the bar of this Court. I am an associate with Winston & Strawn LLP, attorneys for Defendants Giganews, Inc. and Livewire Services, Inc. in this action. I have personal knowledge of the facts set forth herein, except where noted, and, if called to testify, could and would competently testify thereto.

2.     Attached as Exhibit A to this declaration is a true and correct copy of the order from *Perfect 10, Inc. v. GUBA, LLC*, No. CV-02-2842 (N.D. Cal. Dec. 30, 2002).

1

3.      Attached as Exhibit B to this declaration is a true and correct copy of the Order Granting Motion to Change Venue in this action, *Perfect 10, Inc. v. Giganews, Inc.*, No. 11-CV-00905 H (MDD) (S.D. Cal. Aug. 22, 2011) (Docket No. 56).

4.      Attached as Exhibit C to this declaration is a true and correct copy of S. Comm. on Judiciary, 1983-84 Sess., Senate Policy Committee Analysis on S.B. 613: Commercial Exploitation of Deceased Celebrities (Cal. 1984), which is a portion of the legislative history of California Civil Code § 3344.1.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 2nd day of September, 2011, in San Francisco, California.

By: _____
K. Joon Oh

SF:318055.2

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Oh Declaration in Support of Reply Brief re Motion to Dismiss          11-CV-07098

# EXHIBIT A

**to**
**Declaration of K. Joon Oh**
**in Support of Reply Brief**

**FILED**

DEC **3 0** 2002

**RICHARD W. WIEKING**
CLERK U.S. DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PERFECT 10, INC.,

Plaintiff,

v.

GUBA, LLC, et al.,

Defendants

No. C 02-2842 MMC  50th

**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, FOR PARTIAL SUMMARY JUDGMENT; VACATING HEARING**
(Docket Nos. 23, 36)

Before the Court are (1) a motion by plaintiff Perfect 10, Inc. ("Perfect 10") for partial summary judgment against defendant GUBA LLC ("GUBA") pursuant to Rule 56 of the Federal Rules of Civil Procedure and (2) a motion by defendants GUBA, Thomas G. McInerney, Jr. ("McInerney"), and Eric Lambrecht ("Lambrecht") for summary judgment or, in the alternative, for partial summary judgment, pursuant to Rule 56. Having considered the papers filed in support of and in opposition to the motions, the Court deems the motions suitable for decision on the papers, VACATES the hearing scheduled for December 20, 2002, and rules as follows:

1. Each party seeks summary judgment on the issue of infringement. It is undisputed that images of 332 photographs in which Perfect 10 owns copyrights were found on GUBA's internet site, www.guba.com, on May 31, 2002. (See Zadeh Decl. ¶¶ 12,

*United States District Court*
*For the Northern District of California*

20-25, Exs. A, I-M.)  It is also undisputed that GUBA obtained the subject images by using its proprietary software to "retrieve binary files posted by users on the Usenet,"[1] which images GUBA then made available on its site for its customers.  (See Lambrecht Decl., filed November 1, 2002, ¶ 9.)  The Court finds GUBA's activities, as a matter of law, constitute direct infringement in violation of the Copyright Act.  See Playboy Enterprises, Inc. v. Webbworld, Inc., 991 F. Supp. 543, 551-52 (N.D. Tex. 1997) (holding defendant who used software program to retrieve plaintiff's copyrighted images posted by third parties on Usenet sites and thereafter posted such images on defendant's site was liable to plaintiff for direct infringement); cf. Religious Technology Center v. Netcom On-line Communication Services, Inc., 907 F. Supp. 1361, 1365, 1381-82 (N.D. Cal. 1995) (holding where individual posted copyrighted material on computer bulletin board service, operator of bulletin board service was not liable for direct infringement where operator took no "affirmative steps to cause the copies to be made").  Accordingly, in the absence of an affirmative defense, Perfect 10 is entitled to summary judgment on the issue of copyright infringement based on the above-referenced 332 photographs and defendants are not entitled to summary judgment on the issue of copyright infringement.

2.  Defendants argue they are entitled to judgment under the Digital Millennium Copyright Act, specifically the affirmative defense provided in 17 U.S.C. § 512(d).  Under § 512(d), a "service provider" is not liable for infringement "by reason of the provider referring or linking users to an online location containing infringing material or infringing activity, by using information location tools, including a directory, index, reference, pointer, or hypertext link."  See 17 U.S.C. § 512(d).  Here, however, GUBA's alleged infringement is "by reason of" GUBA's own copying of the 322 infringing images from other sites and then posting those images on its website, not "by reason of" GUBA referring or linking its

---

[1]"The USENET, an abbreviation of 'User Network,' is an international collection of organizations and individuals (known as 'peers') whose computers connect to each other and exchange messages posted by USENET users.  Messages are organized into 'newsgroups,' which are topic-based discussion forums where individuals exchange ideas and information."  Ellison v. Robertson, 189 F. Supp. 2d 1051, 1053 (C.D. Cal. 2002).

2

1 | users to other sites. Accordingly, defendants have not shown they are entitled to summary

2 | judgment on the issue of infringement based on the affirmative defense set forth in §

3 | 512(d).

4 |         3. Relying on <u>Kelly v. Arriba Soft Corp.</u>, 280 F. 3d 934 (9th Cir. 2002), defendants

5 | further argue that, to the extent Perfect 10 alleges GUBA's use of low-resolution

6 | "thumbnails" to display the copyrighted images constitutes infringement, defendants are

7 | entitled to judgment because GUBA's thumbnails, as a matter of law, constitute "fair use"

8 | under 17 U.S.C. § 107. Contrary to defendants' argument, however, <u>Kelly</u> does not hold

9 | that the use of low-resolution thumbnails constitutes fair use as a matter of law. Rather,

10 | the court in <u>Kelly</u> discussed such evidence as bearing on the first and fourth of four

11 | statutory factors that must be considered in determining whether use in a particular case

12 | constitutes fair use. <u>See</u> <u>id</u>. at 941, 944; 17 U.S.C. § 107.[2] Defendants here have not

13 | addressed the requisite four-factor analysis, and, as plaintiffs point out, significant

14 | differences exist between the facts in <u>Kelly</u> and the present case. Accordingly, defendants

15 | have not shown they are entitled to partial summary judgment based on the defense of fair

16 | use.

17 |                                  **CONCLUSION**

18 |         For the reasons stated, plaintiff's motion for partial summary judgment is hereby

19 | GRANTED; defendants' motion for summary judgment or, in the alternative, for partial

20 | summary judgment is hereby DENIED.

21 |         This order closes Docket Nos. 23 and 36.

22 |         **IT IS SO ORDERED.**

23 | Dated:   DEC 3 0 2002

24 |                                                   MAXINE M. CHESNEY
                                                       United States District Judge

25 |

26 |         [2]"The four factors are: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature

27 | of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for

28 | or value of the copyrighted work." <u>See</u> <u>Kelly</u>, 280 F. 3d at 940 n. 10 (citing 17 U.S.C. § 107.)

3

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

Perfect 10, Inc., a California corporation,

        Plaintiff,

v.

Guba, LLC, a limited liability company;
Thomas G. McInerney, Jr., an individual; and
Eric Lambrecht, an individual,

        Defendant.

Case Number: C-02-2842 MMC

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on December 30, 2002, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Julie L. Sigall
Arnold & Porter
555 Twelfth Street, N.W.
Washington, DC 20004

Ronald L. Johnston
Sharon Douglass Mayo
Arnold & Porter
1900 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067

Shelley M. Liberto
Law Offices of Shelley M. Liberto
3 Hutton Center Drive, Suite 900
Santa Ana, CA 92707

Dated: December 30, 2002

Richard W. Wieking, Clerk

By: _____
    Deputy Clerk

# EXHIBIT B

**to**
**Declaration of K. Joon Oh**
**in Support of Reply Brief**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

PERFECT 10, INC., a California corporation,

Plaintiff,

vs.

GIGANEWS, INC., a Texas corporation; LIVEWIRE SERVICES, INC., a Nevada corporation; and DOES 1 through 100, inclusive,

Defendants.

CASE NO. 11-CV-00905 H (MDD)

**ORDER GRANTING MOTION TO CHANGE VENUE**

18      On June 21, 2011, Defendants Giganews, Inc, and Livewire Services, Inc.
19 ("Defendants") filed a motion to change venue in this case. (Doc. No. 10.) On July 18, 2011,
20 Plaintiff Perfect 10, Inc. filed its response in opposition to Defendants' motion. (Doc. No. 32.)
21 On August 19, 2011, Defendants filed their reply. (Doc. No. 50.) The Court, pursuant to its
22 discretion under Local Rule 7.1(d)(1), determines this matter to be appropriate for resolution
23 without oral argument, submits it on the parties' papers, and vacates the motion hearing set for
24 August 29, 2011. For the following reasons, the Court GRANTS Defendants' motion to
25 change venue, and directs the Clerk to transfer this case to the Central District of California.
26 ///
27 ///
28

- 1 -

**Background**

Plaintiff Perfect 10 is engaged in the business of design, creation, production, marketing, promotion, and sale of copyrighted adult entertainment products, including photographs, magazines, video productions, and other media. (Doc. No. 1, Compl. ¶ 13.) Perfect 10 is a California corporation with offices in Los Angeles. (Doc. No. 10-4, Kearney Decl. ¶ 2 & Ex. A.) Perfect 10's founder and principal Norman Zada resides within the Central District of California. (Kearney Decl. ¶ 3 & Ex. B.) Its accountant and its DMCA Agent also reside in the Central District. (Kearney Decl. ¶¶ 4-6.) The Court takes judicial notice under Federal Rule of Evidence 201, that since 1997, Perfect 10 brought 24 cases in the Central District of California.[1] The Central District is currently presiding over one Perfect 10 case with closely similar claims against an Internet service provider. See Perfect 10, Inc. v. Google, Inc., No. 04-CV-9484 (filed Nov. 19, 2004). On April 28, 2011, Plaintiff filed a complaint against Defendants in this Court, alleging causes of action for (1) copyright infringement; (2) trademark infringement; (3) trademark dilution; (4) unfair competition; and (5) violation of rights of publicity. (Doc. No. 1., Compl.)

Defendants contend that they are Internet service providers that provide Usenet access to their users. (Doc. No. 10-1 at 6.) Defendant Giganews is a Texas corporation headquartered in Austin, Texas. (Id.) Defendant Livewire is a Nevada corporation. (Id.) Defendants contend that neither Giganews nor Livewire owns or leases any equipment of any kind or maintains any facilities or employees in the Southern District of California.

---

[1] See, e.g., Perfect 10, Inc. v. Rasen et al., No. 97-CV-6967 (filed Sept. 19, 1997); Perfect 10, Inc. v. Internet Video Group, No. 99-CV-5332 (filed May 20, 1999); Perfect 10, Inc. v. Radvinsky et al., No. 99-CV-7376 (filed July 19, 1999); Perfect 10, Inc. v. Talisman Communicat, et al., No. 99-CV-10450 (filed Oct. 12, 1999); Perfect 10, Inc. v. Lytell, et al., No. 00-CV-11404 (filed Oct. 26, 2000); Perfect 10, Inc. v. Global Innovations, et al., No. 00-CV-11671 (filed Nov. 2, 2000); Perfect 10, Inc. v. Brainstorm Software, et al., No. 00-CV-11959 (filed Nov. 8, 2000); Perfect 10, Inc. v. AKA Entertainment, et al., No. 00-CV-13182 (filed Dec. 15, 2000); Perfect 10, Inc. v. Cybernet Ventures, No. 01-CV-2595 (filed Mar. 20, 2001); Perfect 10, Inc. v. Edghill, et al., No. 01-CV-3748 (filed Apr. 24, 2001); Perfect 10, Inc. v. Guba LLC, No. 02-CV-2842 (filed June 13, 2002); Perfect 10, Inc. v. CCBill LLC, No. 02-CV-7624 (filed Sept. 30, 2002); Perfect 10, Inc. v. Full Moon Internet, No. 03-CV-1129 (filed Feb. 18, 2003); Perfect 10, Inc. v. Amazon.com, No. 05-CV-4753 (filed June 29, 2005); Perfect 10, Inc. v. Microsoft Corp., No. 07-CV-5156 (filed Aug. 8, 2007).

11cv905

Exhibit B
Page 8

**Discussion**

## I. Legal Standard

Under 28 U.S.C. § 1404, a district court "may transfer any civil action to any other district or division where it might have been brought" "for the convenience of parties and witnesses" and "in the interest of justice."  28 U.S.C. § 1404(a).  This statute "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)).  The purpose of section 1404(a) is to "prevent the waste of time, energy, and money to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen, 376 U.S. at 616.  The Ninth Circuit recognizes that the "[w]eighing of factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge."  Sparling v. Hoffman Constr. Co., Inc., 864 F.2d 635, 639 (9th Cir. 1988) (quotation marks omitted).  In addition, "[i]f the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice [of venue] is entitled only to minimal consideration."  Pacific Car & Foundry Co. v. Pence, 403 F.2d 949, 954 (9th Cir. 1968).

In determining whether transfer is appropriate in a particular case, courts consider factors such as (1) the plaintiff's choice of forum; (2) the respective parties' contacts with the forum; (3) the contacts relating to the plaintiff's cause of action in the chosen forum; (4) the differences in the costs of litigation in the two forums; (5) the availability of compulsory process to compel attendance of unwilling non-party witnesses; (6) the ease of access to evidence; (7) the local interest in having localized controversies decided at home; (8) the unfairness of burdening citizens in an unrelated forum with jury duty; and (9) the relative congestion of dockets in the two districts, measured by the median number of months from filing to trial.  Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000); Decker Coal Co., 805 F.2d at 843; Saleh v. Titan Corp., 361 F. Supp. 2d 1152, 1167 (S.D. Cal. 2005).  Defendant, as the moving party, carries the burden of showing that transfer is warranted.

11cv905

Exhibit B
Page 9

1   Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir. 1979).  To show

2   that the action could have been brought in the Central District of California, the moving party

3   need only show that the transferee court would have had subject-matter jurisdiction, defendant

4   would have been subject to personal jurisdiction, and venue would have been proper.  See 28

5   U.S.C. § 1404(a).

6   **II.**    **Analysis**

7        Defendants argue that Perfect 10 could have brought this case in the Central District of

8   California, and a transfer to the Central District meets the threshold requirement of § 1404(a).

9   First, Defendants argue that venue is proper in the Central District pursuant to 28 U.S.C. §§

10   1391(b)(1) and (c) because Defendants have "consummated . . . transaction[s] with the forum

11   or resident[s] thereof" by locating servers in the Central District, and Perfect 10's claims

12   "relate[] to" those forum-related activities.  Defendants argue that they have no facilities,

13   employees or equipment in the Southern District.  Defendants offer a declaration by Philip

14   Molter, the Chief Technology Officer of Defendant Giganews, which states that "Giganews's

15   only California-based servers are its Usenet servers in Los Angeles, California."  (Doc. No.

16   51 at ¶ 7.)

17        Secondly, Defendants argue that the Central District is "a judicial district in which a

18   substantial part of the events or omissions giving rise to the claim occurred, or a substantial

19   part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2).  Perfect

20   10 alleges that Defendants infringed its copyrights by means of their servers.  (Compl. ¶ 25.)

21   "[A] copyright is an intangible, incorporeal right that has no situs apart from the domicile

22   of the proprietor."  Sullivan v. Author Solutions, Inc., 2008 WL 2937786 (E.D. Wis. July 23,

23   2008) (citing 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 12.01[C]

24   (1963)).  Here, Perfect 10 is located in the Central District, and thus its copyrights are

25   domiciled in the Central District.  Additionally, Defendant Giganews's only California-based

26   servers are located in downtown Los Angeles, which is in the Central District.

27        Finally, Defendants argue that venue is proper in the Central District under 28 U.S.C.

28   § 1400, which provides that a civil action "relating to copyrights . . . may be instituted in the

- 4 -

district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). The Ninth Circuit has interpreted this statute to mean that venue "is proper in any judicial district in which the defendant would be amenable to personal jurisdiction if the district were a separate state." <u>Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.</u>, 106 F.3d 284, 288 (9th Cir.), rev'd on other grounds sub nom. <u>Feltner v. Columbia Pictures Television, Inc.</u>, 523 U.S. 340 (1998).

In opposition, Perfect 10 argues that it has suffered injury in the Southern District because Defendants likely have subscribers there, and because some of those subscribers are able to download infringing material. (Doc. No. 32 at 10-11.) Perfect 10 does not allege that any subscribers have actually downloaded infringing material, and does not identify any specific infringements or any alleged direct infringer in the Southern District. The mere fact that Perfect 10 has a website does not provide a nexus to the Southern District by this logic, venue would be proper anywhere in the United States. Instead, a plaintiff must show that its choice of venue is supported by a "specific connection" to the venue. <u>Gonzales v. Palo Alto Labs, Inc.</u>, No. C 10-2456, 2010 WL 3930440, *8 (N.D. Cal. Oct. 6, 2010). A lack of such specific connection "favor[s] transfer." <u>Id.</u>

Defendants also argue that a number of likely witnesses, including third party witnesses, live and work in the Central District. (Doc. No. 10-1 at 14.) Defendants argue that Plaintiff's accountant, as well as its models who will likely be key witnesses, are located in the Central District. "The relative convenience to the witnesses is often recognized as the most important factor to be considered in ruling on a motion under § 1404(a)." <u>Saleh</u>, 361 F. Supp. 2d at 1160. Thus, this factor weighs in favor of transfer.

Additionally, Defendants argue that until recently, Perfect 10 filed cases in the Central District of California, where it brought a total of 24 cases in the last fourteen years. Defendants point out that Perfect 10 is currently involved in litigation in the Central District, in a closely similar case in which it chose the venue. Defendants argue that the Central District is very familiar with the issues raised in Plaintiff's copyright infringement litigation against Internet service providers, because Perfect 10 has filed several similar cases in that District.

By contrast, Perfect 10 filed only six cases in the Southern District, and they involved infringement claims against "storage lockers" websites that offer private online storage space to subscribers. Five of the six cases filed by Perfect 10 in the Southern District are against overseas defendants, who are less likely to challenge Plaintiff's choice of venue.[2]

The Court concludes that transferring this case to the Central District will serve the interests of justice and the convenience of witnesses and the parties. See 28 U.S.C. § 1404(a). Here, Perfect 10 has failed to show the specific connection to the Southern District, and the majority of witnesses are located in the Central District. Accordingly, the Court concludes that transferring this case to the Central District is appropriate and grants Defendants' motion to change venue.

### **Conclusion**

For the reasons above, the Court GRANTS Defendants' motion to change venue and directs the Clerk to transfer this case to the Central District of California.

**IT IS SO ORDERED.**

DATED: August 25, 2011

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

---

[2] Perfect 10, Inc. v. Rapidshare AG, No. 09-CV-2596 (filed Nov. 18, 2009) (defendant Swiss company); Perfect 10, Inc. v. Netsaits B.v., No. 10-CV-1773 (filed Aug. 25, 2010) (defendant Dutch corporation); Perfect 10, Inc. v. Hotfile Corp., No. 10-CV-2031 (filed Sept. 29, 2010) (defendant Panamanian corporation); Perfect 10, Inc. v. Megaupload Limited, No. 11-CV-191 (filed Jan. 31, 2011) (defendant Hong Kong corporation); Perfect 10, Inc. v. Kalmet Investments Limited, No. 11-CV-1416 (filed June 28, 2011) (defendant Seyshelles entity).

# EXHIBIT C

**to**
**Declaration of K. Joon Oh**
**in Support of Reply Brief**

SENATE COMMITTEE ON JUDICIARY

BACKGROUND INFORMATION

____SB 613____

1.  Source

    (a)  What group, organization, governmental agency, or other
person, if any, requested the introduction of the bill?
Please list the requestor's telephone number or, if
unavailable, his address.

        Senator William Campbell

        Bob Fylestein  (213) 550-7100

    (b)  Which groups, organizations, or governmental agencies have
contacted you in support of, or in opposition to, your
bill?

        Support:  Screen Actors Guild.  Other support pending

    (c)  If a similar bill has been introduced at a previous session
of the Legislature, what was its number and the year of
its introduction?

        Not aware of previous bill

2.  Purpose

    What problem or deficiency under existing law does the bill
seek to remedy?

        Seeks to prevent commercial exploitation of celebrities
names or likeness.

If you have any further background information or material relating
to the bill, please enclose a copy of it or state where the inform-
ation or material is available.

PLEASE COMPLETE THIS FORM AND RETURN IT TO THE SENATE COMMITTEE ON
JUDICIARY, ROOM 2187 AS SOON AS POSSIBLE.  THE COMMITTEE STAFF
CANNOT SET THE BILL FOR A HEARING UNTIL THIS FORM HAS BEEN RETURNED.

SENATE COMMITTEE ON JUDICIARY      1983-84 Regular Session

SB 613 (Campbell)                                              S
As amended May 9                                               B
Civil Code
RT                                                             6
                                                               1
                                                               3

## COMMERCIAL EXPLOITATION OF DECEASED CELEBRITIES

### HISTORY

Source:  Author

Prior Legislation:  None

Support:  Screen Actors Guild

Opposition:  No Known

### KEY ISSUE

SHOULD THE HEIRS OF A CELEBRITY BE ABLE TO COLLECT
DAMAGES FOR THE COMMERCIAL USE OF THE DECEDENT'S
NAME WITHOUT THEIR PERMISSION?

### PURPOSE

Civil Code Section 3344 codifies a person's right
to recover damages for the knowing use of his
"name, photograph, or likeness" in commercial
advertising or soliciting of purchases without his
prior consent.  The statute is silent as to the
rights of his heirs, and case law has held that
the those rights do not survive after the person's
death.

The bill would provide that the person's right
would be inheritable as personal property, and
could be enforced by the heirs for a period of 50

(More)

SB 613 (Campbell)
Page 2

years after his death.  The bill would also
increase the penalties for unauthorized use,
extend the statute to the unauthorized use of the
person's voice, signature, or image, and prohibit
unauthorized use for the purpose of selling goods
or providing services.

The purpose of the bill is to permit a celebrity's
heirs to benefit financially from the commercial
use of his name or likeness.

                    COMMENT

1.  <u>Legal background</u>

    The use of a person's name or photograph
    without consent for commercial purposes, is,
    as Witkin says, well recognized as a basis for
    liability.

    In 1971 the Legislature codified the right of
    a person to recover damages for that use.  The
    purpose of the bill, AB 826 (Vasconcellos),
    was not, however, to protect celebrities but
    to crack down on sales schemes in which a
    manufacturer or retailer randomly selected a
    person's name and used it to promote a
    particular product.  For this reason the
    statute is limited to advertising and
    soliciting purchases, and is silent as to
    whether the right to collect damages survives
    the person's death.

    In 1979 the latter question was answered by
    the California Supreme Court in the case of
    <u>Bela George Lugosi</u> v. <u>Universal Pictures</u>, 25
    Cal 3d 813.  The Court held that under

                                    (More)

SB 613 (Campbell)
Page 3

existing law "the right to exploit name and likeness is personal to the artist and must be exercised, if at all, by him during his lifetime."

2.  Need for the bill

The heirs of certain celebrities, such as Elvis Presley, find that others are commercially exploiting the name, voice, and likeness of the deceased without their permission.  Under current law there is no requirement that the exploiters receive permission from the heirs, nor any basis upon which the heirs can claim damages.

3.  Survivability of right

This bill would provide that for a period of 50 years after a person's death, anyone wishing to use his name or image commercially would have to obtain the consent of the heir to whom the right of consent had been transferred by means of a trust or will, or to whom the right of consent had passed as personal property through intestate succession.

4.  Greater penalties

Under existing law the injured party may recover actual damages.  He may also recover "no less than" $300 from a violator of the statute.

(More)

SB 613 (Campbell)
Page 4

This bill would change the penalty to either actual damages or $750, whichever was greater, plus any profits from the unauthorized use that were not taken into account in computing the actual damages.  The bill would also authorize the court to award punitive damages, attorneys fees, and costs.

5.  Broadened scope of statute

    (a)  Personal aspects

        Existing law prohibits the unauthorized use of a person's name, photograph, or likeness.

        This bill would expand the law to cover the person's voice, signature, and "image."

        SHOULD NOT "IMAGE" BE DEFINED?

    (b)  Unauthorized acts

        Existing law prohibits unauthorized use for the purpose of advertising or soliciting purchases of goods or services.

        The bill would also prohibit use for the purpose of selling goods and of providing services.

6.  Statutory exclusion

    Existing law, unchanged by this bill, provides that there is no penalty for the use of a name or likeness in a news, public affairs, or sports broadcast or in any political campaign.

                                        (More)

SB 613 (Campbell)
Page 5

Existing law also provides that the unauthorized use of a name or likeness in a commercial medium is not a violation of law just because the medium is commercially sponsored or contains paid advertising.  It is a question of fact whether the unauthorized use was for the purpose of advertising or solicitation.

7.  Opposition

Several lawyers active in representing show business clients have objected to the language in the bill as introduced.  They believe that the language was confusing, too broad, and in general poorly drafted.

The May 9th amendments entirely redraft the bill and may eliminate this opposition.

8.  Technical amendments

This bill would amend subdivision (a) of Section 3344 and expand the definition of unauthorized use to include a person's voice, signature, and image.

Conforming changes should be made in the other subdivisions of Section 3344.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*