[Attorneys on next page]

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>GIGANEWS, INC., a Texas corporation; LIVEWIRE SERVICES, INC., a Nevada corporation; and DOES 1 through 100, inclusive,<br><br>　　　　Defendants.<br><br>GIGANEWS, INC., a Texas corporation; LIVEWIRE SERVICES, INC., a Nevada corporation; and DOES 1 through 100, inclusive,<br><br>　　　　Counter-claimants,<br><br>　vs.<br><br>PERFECT 10, INC., a California corporation,<br><br>　　　　Counter-defendant. | CASE NO. 2:11-CV-07098-ABC-SH<br><br>**DISCOVERY MATTER**<br>*Before Hon. Stephen J. Hillman*<br><br>**CORRECTED JOINT STIPULATION RE PROTECTIVE ORDER PURSUANT TO LOCAL RULE 37-1**<br><br>Date: **January 6, 2014**<br>Time: 2:00 P.M.<br>Courtroom: 550<br><br>Discovery Cut-off: June 30, 2014<br>Pretrial Conference: January 19, 2015<br>Trial Date: January 27, 2015 |

**JOINT STIPULATION RE PROTECTIVE ORDER PURSUANT TO LOCAL RULE 37-1**

1  Eric J. Benink, Esq., SBN 187434
   eric@kkbs-law.com
2  Krause Kalfayan Benink & Slavens, LLP
   550 West C Street, Suite 530
3  San Diego, CA 92101
   P 619.232.0331 | F 619.232.4019
4
5  Lynell D. Davis, Esq., SBN 271152
   lynell@perfect10.com
   Perfect 10, Inc.
6  11803 Norfield Court
   Los Angeles, CA 90077
7  P 310.476.0794 | F 310.476.8138

8  Attorneys for Plaintiff and Counter-defendant
   Perfect 10, Inc.
9

10

11
   FENWICK & WEST LLP
12 Andrew P. Bridges (CSB No. 122761)
   abridges@fenwick.com
13 Ilana Rubel (CSB No. 221517)
   Irubel@fenwick.com
14 Kathleen Lu (CSB No. 267032)
   klu@fenwick.com
15
   555 California Street, 12th Floor
16 San Francisco, California 94104
   Telephone:  (415) 875-2300
17 Facsimile:   (415) 281-1350

18
   Attorneys for Defendants and Counter-claimants
19 Giganews, Inc. and Livewire Services, Inc.

20

21

22

23

24

25

26

27

28

## I. INTRODUCTION

Pursuant to Fed. R. Civ. P. 36 and Local Rule 37-2.1, Plaintiff Perfect 10 Inc. ("Perfect 10") and Defendants Giganews, Inc. "Giganews" and, Livewire Services, Inc. ("Livewire") (collectively "Defendants") submit the following Joint Stipulation requesting that this Court determine the appropriate protective order applicable to all discovery in this case, *Perfect 10, Inc. v Giganews, Inc.*, CV-11-7098-ABC.

## II. PERFECT 10'S POSITION

Defendants are attempting to prevent Dr. Norman Zada, Perfect 10's president, from accessing highly confidential/attorneys eyes only ("AEO") materials, even though it is aware that this issue has been litigated three times before and in all instances, the Court found that Dr. Zada should have access to all materials[1]. See *Perfect 10, Inc. v. Yandex, Inc.*, Case No. CV-12-1521 WHA (LB) ("*Yandex*"), July 12, 2013 (Dkt. No. 193); *Perfect 10, Inc. v. Google, Inc.*, Case No. CV 04-9484-AHM (SHx) ("*Google*"), December 27, 2005 (Dkt. No. 93); see also *Perfect 10, Inc. v. Rapidshare AG*, Case No. 09-CV-2596 H (WMC) ("*Rapidshare*"), May 17, 2010 (Dkt. No. 66) ("Dr. Zada is a party who has unique significance to the prosecution of the case… Dr. Zada should have access to all material"). In *Google*, this Court found that there was no reasonable likelihood that Dr. Zada would flaunt the strict terms of a protective order. Defendants also know that Dr. Zada has never been accused of violating a protective order. Dr. Zada has been allowed to review all AEO materials in all cases for at least the last eight years.

Perfect 10 is a tiny company with only two employees, Dr. Zada, a former Stanford, UCLA, and Columbia University professor and former IBM Computer Science Research Staff Member, and Melanie Poblete, Perfect 10's in-house paralegal. Perfect 10's business has been destroyed by copyright infringement.

---

[1] On October 21, 2013, Perfect 10 provided Defendants with the protective orders from the *Yandex* and *Google* cases. On October 30, 2013, Perfect10 provided Defendants with the protective order from *Rapidshare*.

Because of Perfect 10's very limited resources (its business revenues are less than $70,000/year), Dr. Zada has been forced to do much of Perfect 10's legal work, including producing and reviewing discovery and participating in the drafting of initial versions of briefs, discovery requests and responses, and deposition questions. Dr. Zada will also testify as an expert for Perfect 10 at trial and must be allowed to have access to highly confidential/AEO documents for that reason as well.

Defendants have yet to identify *any* basis to exclude Dr. Zada from accessing AEO materials. Perfect 10 is not in the same business as Defendants (alleged infringing paysite operators) and is not a competitor to Defendants[2].

Perfect 10 finds Defendants' attempts to smear Dr. Zada by bringing up a number of completely irrelevant issues, highly inappropriate. For example, the SEC matter Defendants improperly refer to came about as a result of an ad that Dr. Zada placed in the Wall Street Journal in 1993 listing his financial competition's top contestants. Dr. Zada was never accused of fraud, or prevented from continuing to manage money. The primary allegation was that he did not know his clients well enough, before accepting them into his hedge fund, a standard that has since been abandoned by the SEC, as hedge funds are now allowed to operate websites which advertise their availability. The simple fact is that Defendants have failed to provide a single instance where Dr. Zada was ever accused of violating a protective order.

Defendants also mistakenly claim that Ms. Lynell Davis and Ms. Natalie Locke are Perfect 10 employees.

In order to decrease the burden upon this Court, Perfect 10 first contacted

---

[2] Additionally, while Defendants attempt to exclude Dr. Zada and Ms. Poblete from AEO and OAEO materials, Defendants have included language within their proposed protective order to increase the number of officers permitted to view "Confidential" materials from 1 allowed for in the *Google* protective order to 3, without providing any basis as to why 3 officers from each, Giganews, Inc. and Livewire Services, Inc. should be permitted to view materials provided by Perfect 10 and designated "Confidential."

Defendants on October 21, 2013 to negotiate the terms of a stipulated proposed protective order. Perfect 10 indicated that it would require the protective order to allow both Dr. Zada and its in-house paralegal, Ms. Poblete, to see all documents. Perfect 10 has since provided Defendants with the protective orders from the three aforementioned cases and a draft Stipulated [Proposed] Protective Order almost identical to the protective order this Court approved in *Google*, specifically asking Defendants to agree to this previously litigated point. Declaration of Lynell D. Davis ("Davis Decl."), attached hereto as Exhibit A, ¶2. Defendants altered the Perfect 10 proposed protective order to render it essentially a new document excluding Dr. Zada and Ms. Poblete from highly confidential/AEO materials; and excluding Dr. Zada, Ms. Poblete and counsel of record (in-house counsel) from viewing information Giganews identified as "Highly Confidential Source Code – OAEO" without providing any basis for their exclusion. Unfortunately, it appears that Defendants have decided that this is an issue best re-litigated before this Court[3].

**A.  A separate provision regarding "source code" is unnecessary and fails to allow even an attorney of record to review what Giganews believes are documents responsive to P10's Requests for Production.**

Defendants' additional "OAEO" language regarding "source code" attempts to prevent not only Dr. Zada, but even counsel of record (in-house counsel) and in-house counsel's sole support staff, Ms. Poblete, from reviewing such material. As Defendants know, in-house counsel for Perfect 10 is co-counsel of record in this matter and would not be able to draft pleadings and/or other required documents for this case without the ability to view all documents produced in response to Perfect

---

[3] In response to many of Perfect 10's Interrogatories and Requests for Production Defendants have noted that they will provide documents following the entry of a "document production management and control order and appropriate protective order," given the fact that the deadline to add claims or parties is December 9, 2013, Defendants' insistence on re-litigating the issue of Dr. Zada and Ms. Poblete viewing all materials will severely limit Perfect 10's ability to timely add parties.

1  10's discovery requests.  Additionally, as noted above and previously ruled upon, Dr.
2  Zada is uniquely qualified to review the type of material contemplated within
3  Defendants' separately designated section intended to govern the control of "source
4  code" Defendants may produce.  For the same reasons noted above regarding "Highly
5  Confidential/AEO" materials, Dr. Zada should be permitted to review all "source
6  code."

7  Additionally, Perfect 10 believes that the language in the Defendants' proposed
8  protective order regarding source code including but not limited to the language "other
9  software or programs" is sufficiently vague so as to potentially affect the designation
10 of a large category documents and responses and result in multiple discovery disputes.
11 At this time, Perfect 10 is not aware of any Requests that properly call for the
12 production of such materials, nor would Perfect 10 have the time to analyze "source
13 code" written by others.  Perfect 10 is concerned that this paragraph has been included
14 in an effort to prevent Dr. Zada from viewing certain materials that are not, in fact,
15 "source code."

**B. Defendants' Suggested "Procedures for Disclosure of Customer Information" are time consuming and will require this Court to rule on numerous customer objections.**

19  Defendants' proposed language regarding "Procedures for Disclosure of
20 Customer Information" reflects Defendants' continued attempts to withhold
21 documents and/or compliant responses to Perfect 10's discovery requests.  The
22 "customers" at issue are in fact massive infringers who Perfect 10 has alleged are
23 either Defendants' employees or third-parties that Defendants have paid to upload
24 billions of dollars of infringing material, including at least 50,000 Perfect 10
25 copyrighted images, either to the servers of giganews.com or to the Usenet.
26 Obviously, all such parties will "object" to their identities being revealed.

27  Thus, Defendants' proposed language would not only result in an indeterminate
28 delay in the discovery of the identity of co-conspirators and other critical information,

1  it would lead to at least twenty or thirty motions before this Court.  It should also be
2  noted that as part of the repeat infringer/counter notification process as described in
3  Section 512(g)(3)(D) of the DMCA, Defendants should have already provided Perfect
4  10 with the names of most of the alleged infringers as part of the counter-notification
5  process.  However, Defendants have yet to provide Perfect 10 with a single counter-
6  notification, and thus never identified any alleged infringer, even though Perfect 10
7  has provided Defendants with at least 1191 Message-IDs in its notices (what
8  Defendants consider to be a compliant notice).
9         Furthermore, Defendants contend that they will disclose the identity of alleged
10 infringers upon receiving a court order.  Davis Decl. ¶3.
11        Perfect 10 simply proposes that such "customer" information be designated
12 "Confidential" or "Highly Confidential" resulting in any such information being
13 limited to use in this litigation and only by those individuals identified within Perfect
14 10's [Proposed] Protective Order.

15        **C.    Perfect 10's [Proposed] Protective Order follows precedent.**
16        Perfect 10, in the interest of easing the burden on this Court, provided
17 Defendants with the protective orders imposed in *Yandex*, *Rapidshare* and *Google* as
18 well as a draft protective order that was virtually identical to the *Google* order ruled
19 on by this Court, in the hope of agreeing on a stipulated proposed protective order.
20 Defendants have elected to re-litigate the issue of Dr. Zada's review of all materials
21 disclosed in response to Perfect 10's discovery requests and to add the unnecessary
22 language noted above.
23        Perfect 10's [Proposed] Protective Order does not differ from the *Google*
24 protective order in any substantive respect, in fact, the primary difference reflects
25 Perfect 10's inclusion of some language suggested by Defendants, see for example
26 paragraph 2 of Perfect 10's [Proposed] Protective Order.  Davis Decl. ¶2.
27        As such, Perfect 10 asks this Court to rule that Perfect 10's [Proposed]
28 Protective Order in its entirety shall govern all discovery in this case, *Perfect 10, Inc.*

*v Giganews, Inc.*, CV-11-7098-ABC.

## III. DEFENDANTS' POSITION

Defendants have grave concerns, as to both substance and form, about Perfect 10's proposed protective order.  That proposal has poor organization and is hard to follow, which makes it dangerous to use.  Apart from that, the parties have three principal disagreements regarding content.  Defendants' proposal is Exhibit B to this Stipulation.  For the Court's convenience, Defendants have highlighted the substantive portions they believe that the parties disagree on.  Perfect 10 refused to comment on the remaining portions during the pre-motion process.

### A. Section 7: Non-Attorneys Should Not Have Access to Attorneys' Eyes Only Materials.

Perfect 10's CEO Norman Zada seeks special non-attorney access to Attorneys' Eyes Only material.  This is not Norman Zada's case.  The plaintiff is Perfect 10, Inc., a corporation.  While Mr. Zada appears to takes his company's litigation personally, he is not a party.

When convenient, Mr. Zada urges courts to give him extraordinary privileges as though he were a plaintiff *in propria persona*.  He does not deserve any special treatment.

Mr. Zada argues that he is unique among company officers in deserving access to confidential information of a litigation adversary.  Mr. Zada may indeed be unusual or perhaps unique – but in ways that counsel precisely *against* allowing him special access to a company's confidential information that normally only lawyers would gain access to.  Lawyers have special obligations as officers of the Court, subject to professional ethics rules, that give them extraordinary responsibility with confidential materials they access during litigation.  Mr. Zada has no such special responsibility.

Mr. Zada has proved himself to be an intemperate copyright crusader.  In virtually all of Perfect 10's cases, he blurs the line between his company's case and his personal crusade.  In this  case, for example, he has tried to bring unrelated parties

and facts into the litigation, referring to other defendants Perfect 10 has sued (such as Megaupload) and to other copyright holders such as Microsoft, whose interests he does not represent. Amended Complaint ¶ 52.

At a dinner of the Los Angeles Copyright Society in 2007, Mr. Zada was so agitated during a debate between Perfect 10's litigator and a litigator for Google that Mr. Zada interrupted the debate to take a microphone and insist on haranguing the Google lawyer himself. Declaration of Andrew P. Bridges at ¶ 2. During that event, Perfect 10's lawyer openly solicited other lawyers at the event to bring additional copyright cases against Google. *Id.*

Mr. Zada has already, *in this case,* demonstrated that he wants to use information from this case in other contexts. During the pre-motion conference with a Giganews attorney, Mr. Zada on behalf of Perfect 10 demanded materials unrelated to Perfect 10 by explaining that they "would be very interesting reading" and that he would use them to establish the existence of "criminal liability and conspiracy" to infringe other parties' copyrighted works. Rubel Decl. ¶ 3.

Furthermore, Defendants learned that Mr. Zada recently held himself out as a witness *for another copyright plaintiff* in a case to which Perfect 10 was not a party. In *Rosen v. iWeb*, Mr. Zada submitted a declaration to help copyright plaintiff Barry Rosen oppose a motion to dismiss his claim. *See* Rubel Decl., ¶ 4, Exhibit 1 (Dkt. No. 43-5, 2:13-cv-01742-SJO (C.D. Cal. filed Oct. 11, 2013)). Mr. Zada's testimony there concerned a defendant Perfect 10 was also suing in *Perfect 10 v iWeb Technologies,* case no. 3:313-cv-00328 (S.D. Cal.). In the *Rosen* case, Mr. Zada testified as to "evidence" he had concerning the defendant and his communications with the defendant, and he appeared to be proffering opinions typically offered by experts. Rubel Decl. Exhibit 1 at 1, 5-10.

Mr. Zada's activities demonstrate that he not only regularly communicates with other copyright litigants regarding the subject of their respective litigations but also *is likely to campaign for others to bring cases, and to advise and testify in others' cases.*

1 This highly unorthodox activity substantially raises the risk that Mr. Zada will
2 improperly use (whether inadvertently or not) highly confidential material from one
3 litigation in an unrelated litigation.

4 Perfect 10's pursuit of discovery unrelated to the claims in this case combined
5 with Mr. Zada's demonstrated history of fostering other plaintiffs' lawsuits
6 demonstrates the danger that Mr. Zada will use discovery in this civil case to gin up
7 civil and criminal litigation against Giganews by other unrelated parties.

8 In addition, Mr. Zada has a track record that includes a censure by the SEC for
9 his misuse of information in connection with his hedge fund marketing activities and
10 his failure to keep appropriate books and records.  A copy of the censure order is at
11 http://www.sec.gov/litigation/admin/337560.txt.  Moreover, Perfect 10 has a history
12 of maintaining and producing documents in an unorthodox fashion; for example, it
13 frequently resists producing documents in a well-labeled and organized manner in
14 litigation.  There is little reason to believe that Perfect 10's principal Mr. Zada would
15 adopt appropriate precautions.  This is yet another reason not to trust Mr. Zada with
16 the proper use and maintenance of confidential documents of a Perfect 10 adversary.

17 For all these reasons there is every reason to deny Mr. Zada a special privilege
18 of *non-attorney* access to *attorneys' eyes only* materials.

19 Nor would treating Mr. Zada like any other CEO unfairly prejudice Perfect 10.[4]
20 Perfect 10 misleads the court with the description of its legal activities and finances to
21 suggest that, because of Perfect 10's claimed financial straits, the Court should relax
22 "attorneys' eyes only" rules so that Perfect 10 could save money.

23 Perfect 10 has four counsel of record in this case.  In the last decade it has relied
24 upon a number of attorneys to represent it in approximately 30 district court actions

---

[4] Perfect 10 argues that litigating the issue of Mr. Zada's access places it in jeopardy of missing the December 9, 2013 deadline to add claims or parties.  Because Defendants have already offered to stipulate to extend this deadline to January 2014, and Perfect 10 has agreed, this concern is baseless.

(including suits against Visa, MasterCard, Microsoft, Google, and Amazon.com) as well as at least eight appeals and at least three petitions for certiorari to the United States Supreme Court.  Perfect 10 has retained many of the biggest names in the country to represent it in litigation.  Among the law firms it has retained over the years have been Arnold & Porter, Mitchell Silberberg & Knupp, and Jenner & Block. It even appointed the current Solicitor General of the United States, Donald B. Verrilli, as its lead counsel (among four lawyers) to file an unsuccessful petition for certiorari before the U.S. Supreme Court in *Perfect 10, Inc., v. Visa International Service Ass'n*.[5]  Mr. Zada also appears (under his former name Norman Zadeh) to have litigated one case personally before this Court (Judge Collins), *Zadeh v. Goodstein*, case no. CV 98-01348-ABC, which he appealed to the Ninth Circuit.  Among Mr. Zada's counsel in that case before the Ninth Circuit was John Quinn of the Quinn Emanuel firm.

      Perfect 10 also falsely states that it has only two employees.  According to their notices of appearance in this case (Dkt. 100 and 126), two Perfect 10's counsel of record identified themselves as "Natalie Locke *of Perfect 10, Inc.*" and "Lynell D. Davis *of Perfect 10, Inc.*" (emphasis added), and gave Perfect 10's corporate address (also Mr. Zada's home address) as their business addresses as counsel of record.

      Moreover, Perfect 10 falsely claims in this motion to have "business revenues" of "less than $70,000/year."  It is no pauper, and it spends millions of dollars on litigation.  Perfect 10's business is litigation. It has admitted that "it has had settlements in excess of $16 million but that does not include the litigation costs, which were close to the litigation revenues."  Answer to Counterclaim (Dkt. 134) ¶ 317.  There is no reason to credit Perfect 10's suggestion that for financial reasons it deserves a unique exemption from all the standard protective order attorneys' eyes only limitations.

---

[5] *See* cert. pet. No. 07-1026 (denied June 2, 2008), *available at* http://www.supremecourt.gov/Search.aspx?FileName=/docketfiles/07-1026.htm

**JOINT STIPULATION RE PROTECTIVE ORDER PURSUANT TO LOCAL RULE 37-1**

1  **B.  Section 8: Perfect 10's Non-Attorney CEO and In-House Legal Team
2       Should Not Have Access to Outside Attorneys' Eyes Only Source
3       Code.**

4  The parties disagreed as to whether Mr. Zada could view Highly Confidential
5  Source Code – Outside Attorneys' Eyes Only materials.  In this joint stipulation,
6  Perfect 10 also proposed special privileges for Lynell Davis and Natalie Locke, in-
7  house counsel for Perfect 10, to have *in-house* access to *outside-attorney-only*
8  materials.  Perfect 10 already has two outside counsel of record, and it does not
9  deserve a special exemption from outside-attorney-only restrictions.

10  The same risks defendants described above apply to the even more sensitive
11  information in this category.  The Highly Confidential Source Code – OAEO
12  designation would only apply to "source code, including machine code, website
13  scripts, algorithms, and other software or programs of a highly confidential and/or
14  proprietary nature."  Defendants seek to protect their proprietary code and trade
15  secrets from employees of a company that has claimed to be Defendants' competitor.
16  *See* Complaint at ¶ 65 ("This conduct enables Defendants to compete directly and
17  unfairly with Perfect 10 . . . .").

18  Although Perfect 10 argues that its discovery requests thus far do not call for
19  any code, a piecemeal protective order that puts off this issue only wastes resources
20  and delays resolution.  Given the technical nature of Defendants' systems, it is
21  reasonable to include such a provision now.  Furthermore, there is nothing unusual
22  about limiting source code review, in cases that require it, to outside experts and
23  counsel.  *See, e.g.*, Eastern District of Texas model Protective Order for patent cases,
24  *available at* http://www.txed.uscourts.gov/cgi-
25  bin/view_document.cgi?document=22242.

26  **C.  Section 11:  Giganews Must Provide Customers Notice Before
27       Disclosure.**

28  The parties disagree as to inclusion of this section, which lays out a procedure

for disclosure of customer information.[6]

Giganews wants to provide its users, who have an expectation of privacy, an opportunity to intervene and challenge disclosure before their identities are disclosed. Perfect 10 baselessly declares that any individuals at issue are "massive infringers" and thus do not deserve privacy protections, but it offers no real grounds on which to reject this provision. Perfect 10 points out that Giganews informs customers that it will turn over customer information after entry of a court order. But Perfect 10 fails to mention that Giganews also tells its customers that that is the *only* circumstance in which Giganews will turn over customer information. *See* Exhibit 4 (Giganews's Privacy Policy). Giganews's Privacy Policy states: "Giganews requires certain information at the time of signup and in the course of providing member support. This information is necessary for us to provide quality service and support. This information is never released to others, unless we are ordered by a court of competent jurisdiction to do so." *Id.* In addition, Giganews tells its customers that, for civil cases, customers "will be notified so they will have an opportunity to contest the surrender of personal information." *Id.*

Giganews's proposed protective order will allow Giganews to provide the customer information Perfect 10 has requested in a timely manner while honoring Giganews's own terms of use. The protective order itself will direct Giganews to provide customer information after two weeks unless the *customer* challenges this court's order.[7] This accords with orders from other courts concerning release of customer information to copyright plaintiffs. *See Canal Street Films v. Does 1-2*, No.

---

[6] In addition, Perfect 10 raised for the first time in its joint stipulation a concern regarding access by three officers for each party to view Confidential Designated Material. Perfect 10 provides no explanation for this late objection, other than that it differs from a protective order in another, dismissed, case. This is not a reasonable basis. Protective orders in different cases routinely differ.

[7] The two week period is in line with other service providers. *See, e.g.*, http://www.verizon.net/policies/vzcom/civil_subpoena_popup.asp.

1:13-cv-0999, 2013 WL 1775063, at *4 (M.D. Pa. Apr. 25, 2013) (ordering ISPs to notify customers and to wait 30 days and until after resolution of any customer motion to quash before producing customer information); *see also Mick Haig Productions v. Does 1-670*, No. 3:10-cv-1900, 2011 WL 5104095, at *2 (N.D. Tex. Sept. 9, 2011) (court appointed attorneys to represent customers in opposing discovery before disclosure of identity), *affirmed on issue of sanctions against plaintiff's counsel*, 687 F.3d 649 (5th Cir. 2012).

Defendants' Section 11 presents a reasonable accommodation that allows Defendants to honor their own terms of service prohibiting user disclosures without a court order while providing an efficient mechanism for production of the information Perfect 10 seeks. By contrast, Perfect 10's proposal will ensure excessive motion practice by putting Defendants in a position where they must refuse to disclose user identities until additional motions are filed.

### D. Defendants' Proposal Is Far Clearer than Plaintiff's and Will Minimize Inadvertent Error.

A protective order should provide clear instruction to the parties and other persons on how to handle material and information stemming from the case. Perfect 10's proposal is a mish-mash of disorganized provisions that is difficult to read and likely to cause confusion for both parties and non-parties.

Perfect 10's proposal has only three headings to cover 26 paragraphs: "Confidential Designation of Material" beginning with Paragraph 4, "Highly Confidential Designation of Material" beginning with Paragraph 14, and "Other Provisions" beginning with Paragraph 19. But these headings do not in fact describe the paragraphs beneath each heading, and some paragraphs underneath one heading apply generally throughout the document or belong with provisions under other headings. The paragraphs do not flow in logical order. For instance, the paragraphs covering Highly Confidential Designation of Material" do not immediately follow the paragraphs covering Confidential Designation of Material as might be expected;

1 instead several unrelated provisions are sandwiched in between, such as procedures
2 for objecting to experts in Paragraph 6, with no additional headings to mark the topic
3 change.  Paragraph 11 of Perfect 10's proposed order also includes outdated
4 procedures for filing under seal.  Paragraphs 10 and 23 both appear to cover the same
5 topic—the protective order not acting as admission or waiver—but are pages apart in
6 the document and under two different headings.
7    Clear headings and logical organization substantially reduce the risk of
8 misunderstandings or mistakes.  Defendant's proposal has rearranged the sections
9 from Perfect 10's proposal into a logical order and added headings for every section
10 for clarity and ease of use.
11    While the byzantine structure of Perfect 10's order likely stemmed from
12 compromises in the *Google* litigation, that is no reason to repeat it.  Perfect 10 may be
13 intimately familiar with its details, but neither defendants nor nonparties who read the
14 document will have such familiarity.
15    During the pre-motion process, Perfect 10 offered no explanation or argument
16 for its refusal to agree to a reorganized protective order apart from repeating that it
17 wanted an order identical to that in the Google case.  Before conferring with Perfect
18 10, Defendants provided Perfect 10 a redline of Defendants' proposal against the
19 order this Court entered in *Perfect 10 v. Google* and asked Perfect 10 to identify
20 specifically all sections it disagreed with.  During the conference Perfect 10 identified
21 only the issues that Defendants have addressed in the earlier sections of this
22 stipulation.
23    The Court should approve Defendants' proposed protective order as a vast
24 improvement upon Perfect 10's proposal.
25    **E.    Defendants' Conclusion**
26    Mr. Zada does not deserve *non-attorney* access to *attorneys' eyes only*
27 materials, and Perfect 10's in-house lawyers and paralegal do not deserve *in-house*
28 access to *outside attorneys' eyes only source code* materials.  Giganews needs

1  provisions to allow it to notify customers and allowing them to challenge disclosure
2  before it discloses user information.  Defendants' proposed protective order is easier
3  to read, provides more clarity, and has a more logical organization than Perfect 10's
4  proposal.  For these reasons, the Court should enter Exhibit B as the protective order
5  in this case.

6        Moreover, Defendants have concerns about Perfect 10's candor in describing
7  personnel as employees or not.  Perfect 10 states in this stipulation that its two *in-*
8  *house attorneys are not* employees, yet its *in-house paralegal is* an employee.  All
9  three persons appear to work at Perfect 10's office, which is also Norman Zada's
10 home.

11       The exact status of legal personnel as in-house or outside is very important in
12 understanding the effect of a protective order, and the physical location of these legal
13 personnel in the home of Perfect 10's principal raises concerns about the security of
14 highly confidential information.  Defendants ask the Court to make specific inquiries
15 and to request detailed representations by Perfect 10's counsel that will clarify all of
16 these matters.

## IV. CONCLUSION

18       Counsel for the parties hereby respectfully submit this Joint Stipulation
19 pursuant to Local Rule 37-1.

20 DATED: December 11, 2013           PERFECT 10, INC.

22                                    By _____
23                                       Lynell D. Davis
                                         Attorney for Plaintiff P10, Inc.

25 DATED: December 11, 2013           FENWICK & WEST, LLP

26                                    By_____/S/___(pursuant to email)_____
                                         Ilana Rubel
27                                       Attorneys for Defendants GIGANEWS,
                                         INC. and LIVEWIRE SERVICES, INC.