1  ANDREW P. BRIDGES (CSB No. 122761)
   abridges@fenwick.com
2  ILANA RUBEL (CSB No. 221517)
   irubel@fenwick.com
3  TODD R. GREGORIAN (CSB No. 236096)
   tgregorian@fenwick.com
4  KATHLEEN LU (CSB No. 267032)
   klu@fenwick.com
5  FENWICK & WEST LLP
   555 California Street, 12th Floor
6  San Francisco, CA 94104
   Telephone:  415.875.2300
7  Facsimile:  415.281.1350

8  Attorneys for Defendants
   GIGANEWS, INC. and
9  LIVEWIRE SERVICES, INC.

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12                    WESTERN DIVISION

| | |
|---|---|
| 13  PERFECT 10, INC., a California Corporation, | Case No. 11-cv-07098-ABC (SHx) |
| 14 | **DISCOVERY MATTER** |
|     Plaintiff, | *Before Hon. Stephen J. Hillman* |
| 15    v. | |
| 16  GIGANEWS, INC., a Texas Corporation; LIVEWIRE SERVICES, INC., a Nevada | **DEFENDANT GIGANEWS, INC.'S MOTION TO STRIKE PERFECT 10'S SUPPLEMENTAL DISCOVERY MEMORANDUM** |
| 17  Corporation; and Does 1 through 100, inclusive, | |
| 18 | |
|     Defendant. | Date:  February 10, 2014 |
| 19 | Time:  2:00 p.m. |
|    | Ctrm:  550 (Roybal) |
| 20  GIGANEWS, INC., a Texas Corporation; LIVEWIRE SERVICES, INC., a Nevada | Discovery Cut-Off:  June 30, 2014 |
| 21  Corporation, | Pretrial Conference:  January 19, 2015 |
|    | Trial Date:  January 27, 2015 |
| 22     Counterclaimants, | |
| 23     v. | |
| 24  PERFECT 10, INC., a California Corporation, | |
| 25 | |
|     Counterdefendant. | |
| 26 | |

27

28

DEFENDANT GIGANEWS, INC.'S MOTION TO
STRIKE PERFECT 10'S SUPPLEMENTAL                    CASE NO. 11-cv-07098-ABC (SHx)
DISCOVERY MEMORANDUM

# I. INTRODUCTION

Giganews asks the Court to strike Perfect 10's "supplemental memorandum" as (1) untimely with respect to its original motion (Dkt. No. 173, filed January 13, 2014), which has a hearing date of February 10, 2014, and (2) an attempt to deceive the Court with allegations of spoliation. Giganews requests as sanctions its fees in connection with this motion to strike the false and improper memorandum.

## II. PERFECT 10'S SUPPLEMENTAL MEMORANDUM IS UNTIMELY.

Local Rule 37-2.3 is crystal clear:

> **Supplemental Memorandum.** After the Joint Stipulation is filed, each party may file a supplemental memorandum of law **not later than fourteen (14) days prior to the hearing date**. Unless otherwise ordered by the Court, a supplemental memorandum shall not exceed five (5) pages in length. **No other separate memorandum of points and authorities shall be filed by either party in connection with the motion**.

The hearing date on the current motion is February 10, 2014. By filing a supplemental memorandum on February 4, 2014, Perfect 10 was impermissibly late.

## III. PERFECT 10 ASKED TO MEET AND CONFER AFTER IT FILED THE SUPPLEMENTAL MEMORANDUM.

Not only is Perfect 10's filing untimely as a supplemental memorandum, but also Perfect 10 first raised the issues in its briefing in a January 28, 2014 letter, which requested the parties meet and confer on February 3, 4, or 5, 2014. Declaration of Kathleen Lu ("Lu Decl.") ¶ 2. Giganews responded on January 31, 2014, rebutting all of Perfect 10's points, but agreeing to a conference on the issues in the letter on February 4, 2014. *Id.* ¶ 3. Before this conference took place, however, Perfect 10 filed and served its supplemental memorandum on the very issues raised in its letter, going so far as to attach the letter and Giganews's

response. *Id.* ¶ 4-5.

To the extent Perfect 10 is trying to shoehorn a new matter into the previously briefed motion, it acts improperly and has violated Rule 37-1 by failing to meet and confer *before* bringing a matter before the Court.

### IV. PERFECT 10 MISREPRESENTS THE FACTS.

#### A. Perfect 10 had failed to inspect the DMCA database.

Perfect 10 told this Court Giganews has produced no discovery. This is deceptive. On January 29, 2014, Giganews informed Perfect 10 that its DMCA log database would be available for inspection at Giganews's facilities in Austin beginning on February 3, 2014. Lu. Decl. ¶ 8 Ex. B. Perfect 10 replied that it was not available on February 3. *Id.* Giganews informed Perfect 10 that the database would be available for inspection at a later time as well and asked Perfect 10 to provide a convenient time for it to begin inspection. *Id.* Perfect 10 has thus far refused to provide a date. *Id.*

Perfect 10's arguments about Giganews's DMCA database are distortions. Mr. Yokubaitis testified that "**We have a record of notice receives [sic] and how they were processed**" (Lu Decl., Ex. A at 129:25-130:1), that he did not know the dates, but that "**Our chief technical officer, I believe, would know.**" *Id.* at 130:23-24. Perfect 10 deposed Mr. Yokubaitis in his personal capacity, but Giganews has repeatedly offered its chief technical officer, Philip Molter, for deposition on March 1, 2014, in both his individual capacity and as a representative of the company. Lu Decl. ¶ 8 Ex. B. Despite three requests for a confirmation of this date, Perfect 10 has refused and has not offered any alternative mutually convenient date. *Id.*

Furthermore, because Giganews has also offered to make its entire DMCA database available for Perfect 10's inspection at its facilities in Austin, Perfect 10 can inspect for itself the dates available in the database. It has simply chosen not to do so because it insists that only Mr. Zada can perform the inspection (a condition Perfect 10 first raised at the February 4 conference, see Lu Decl. ¶ 6), not Perfect

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10's lawyers, their staffs, or their consultants, and because the parties have a continuing dispute (in Defendants' pending objections to the protective order) over whether Mr. Zada can have special, non attorney, access to attorney's eyes only materials.

B.   **Perfect 10 distorts the testimony on customer records.**

Perfect 10 selectively and misleadingly excerpted Mr. Yokubaitis's transcript. (Giganews furnishes the entire transcript so that the Court may see the entire context if it wishes.) Perfect 10 implies falsely that the testimony about *Usenet users in general* was actually about *Giganews customers*. The District Court has noted Perfect 10's failure to distinguish between the two: "Many of the messages hosted on Giganews servers are posted through accounts registered with other Usenet providers." Order Dkt. No. 180, at 10. "[T]hat a Usenet server provider cannot identify all users whose messages reside on its servers appears to be a function of how the entire Usenet works." *Id.* During the deposition Mr. Yokubaitis explained Giganews's records regarding *customers* accused of infringement:

```
A. And the X-Trace is 256 bit encoding of
various customer information so we can locate
and record which customer got this, on whose
account it was posted from.
```
Lu Decl., Ex. A (Yokubaitis Depo.) at 56:4-6.

```
Q. And from the X-Trace, you can locate the
customer, but is that the only information that
you receive from the X-Trace?
MR. BRIDGES: Objection, vague and ambiguous.
You may answer.
A. There is more information there, I believe -
- there is more information than just the
customer number, the customer's Giganews ID
number. I think we forwarded that information
to you. But I can't remember each one of the
factors that are in there, there are not many,
but –
```
*Id.* at 58:4-14.

Perfect 10 instead quotes a section of the transcript regarding "individuals" generally, not *Giganews customers*. Perfect 10 also confused the issues by asking

about "a record of individuals" immediately after this testimony about X-Trace, indicating that Perfect 10's definition of a "record" is something other than X-Trace. *Id.* at 58:15-17.

When Perfect 10 asked more precise questions, the transcript becomes clear:

```
Q. When you receive the DMCA notice from a
copyright holder ... do you contact the customer
who posted the allegedly infringing material?
MR. BRIDGES: Objection. Objection, lacks
foundation, vague and ambiguous. You may answer.
A. Okay. Do you contact -- yes, ma'am.
Q. How do you contact those individuals?
A. Email.
Q. Do you maintain those emails?
A. Maintain them?
Q. Do you still have them?
A. I don't know how far back but we have emails of
our contacts.
Q. Do those emails consist of both your Giganews
contacting the individual and the individual
returning an email?
MR. BRIDGES: Objection, vague and ambiguous, lacks
foundation.
A. They may or may not respond.
Q. Do you have records or do you have emails to
and/or from alleged infringers dating back to 2009?
MR. BRIDGE: Objection, vague and ambiguous, lacks
foundation.
A. I don't know for sure. I believe so, but I don't
know for sure, ma'am.
Q. Do you -- who would know?
A. Our CTO, Phil Molter.
Q. And he would have access to that information,
the actual emails?
A. Yes, ma'am, or our -- yes, ma'am.
```

*Id.* at 59:10-60:16. Giganews has repeatedly offered its chief technical officer, Philip Molter, for deposition in both his individual capacity and as a representative of the company, an offer Perfect 10 has so far refused.

### C. **Perfect 10 bases its accusation on "irrelevant emails like spam."**

Perfect 10's accusations of wrongful deletion of emails is balderdash. The witness testified that Giganews receives "*irrelevant emails like spam.*" *Id.* at 189:12-13. Perfect 10 then asked what Giganews did with "*irrelevant communications.*" *Id.* at 190:8. In other words, Perfect 10 asked the witness what

he thought the company did with "spam." There is nothing remarkable in the witness's response that the Company trashes irrelevant emails like spam.

"[T]he duty to preserve only extends to documents relevant to the claim of which the party has notice[.]" *In re Pfizer Inc. Sec. Litig.*, 288 F.R.D. 297, 317 (S.D.N.Y. 2013). Perfect 10's question clearly and specifically asked about "*irrelevant* communications." Lu Decl., Ex. A at 190:8. Perfect 10 now attempts to mislead the court by suggesting this statement could refer to DMCA notices.

### D. Perfect 10 misrepresents Giganews's responses to discovery.

Because Perfect 10 filed this brief without conferring with Giganews, Perfect 10 misstates Giganews's actions regarding the identity of customers Perfect 10 has accused of infringement. Perfect 10 asked Mr. Yokubaitis "Has anybody – anyone at Giganews, excepting your counsel, made an effort to determine the *legal name* of BillC@myplace.com?" *Id.* at 55:4-6. Before this question, Perfect 10 asked about customer information like "their name on the credit card." *Id.* at 54:11-12. Giganews cannot know if that is a *legal name* of the *user*; it is the apparent name of the *payor*. At the conference, Giganews's counsel informed Perfect 10 that Giganews had notified the affected customers and would provide account information, (*e.g.*, the name associated with a payment method), after the end of the customer objection period. Lu Decl. ¶ 6.

## V. CONCLUSION

The Court should strike Perfect 10's untimely and deceptive supplemental memorandum and award Giganews its fees in connection with this motion.

Dated: February 6, 2014

FENWICK & WEST LLP

By: _____/s/ Kathleen Lu_____
    Kathleen Lu

Attorneys for Defendant
GIGANEWS, INC.

DEF. GIGANEWS'S MOTION. TO STRIKE
PERFECT 10'S SUPP. DISCOVERY MEMO.       5       CASE NO. 11-cv-07098-ABC (SHx)