| | |
|---|---|
| 1 | ANDREW P. BRIDGES (CSB No. 122761)<br>abridges@fenwick.com |
| 2 | ILANA RUBEL (CSB. No. 221517)<br>irubel@fenwick.com |
| 3 | TODD R. GREGORIAN (CSB No. 236096)<br>tgregorian@fenwick.com |
| 4 | KATHLEEN LU (CSB No. 267032)<br>klu@fenwick.com |
| 5 | FENWICK & WEST LLP<br>555 California Street, 12th Floor |
| 6 | San Francisco, CA 94104<br>Telephone: (415) 875-2300 |
| 7 | Facsimile: (415) 281-1350 |
| 8 | Attorneys for Defendants<br>GIGANEWS, INC., and |
| 9 | LIVEWIRE SERVICES, INC. |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| 13 | PERFECT 10, INC., a California corporation, | Case No.: 11-cv-07098-ABC (SHx)<br>**DISCOVERY MATTER**<br>*Before Hon. Stephen J. Hillman* |
| 14 | Plaintiff, | |
| 15 | v. | **REPLY DECLARATION OF JOSEPH S. BELICHICK IN SUPPORT OF DEFENDANTS *EX PARTE* APPLICATION FOR AN ORDER SHORTENING TIME FOR HEARING ON (1) MOTION FOR LEAVE TO SEEK FURTHER DISCOVERY RELIEF FOLLOWING THE COURT'S DISCOVERY COMPLIANCE DEADLINES; AND (2) MOTION FOR CLARIFICATION OF THE JUNE 5, 2014 ORDER REGARDING DEFENDANTS' MOTION TO COMPEL DISCOVERY COMPLIANCE FROM PERFECT 10, AND MOTION FOR LEAVE** |
| 16 | GIGANEWS, INC., a Texas Corporation; LIVEWIRE SERVICES, INC., a Nevada corporation; and DOES 1 through 100, inclusive, | |
| 17 | | |
| 18 | | |
| 19 | Defendants. | |
| 20 | | |
| 21 | GIGANEWS, INC., a Texas Corporation; LIVEWIRE SERVICES, INC., a Nevada Corporation, | |
| 22 | | |
| 23 | Counterclaimants, | Date: *Ex Parte/on shortened time*<br>Time: *Ex Parte/on shortened time*<br>Courtroom: 550 (Roybal) |
| 24 | v. | |
| 25 | PERFECT 10, INC., a California Corporation, | Discovery Cut-off: June 30, 2014<br>Pretrial Conference: January 19, 2015<br>Trial Date: January 27, 2015 |
| 26 | | |
| 27 | Counterdefendant. | |
| 28 | | |

BELICHICK REPLY DECL. ISO DEFS.'　　　　　　　　　　　　　　CASE NO. 11-cv-07098-ABC (SHx)
*EX PARTE* APPLICATION

I, Joseph S. Belichick, hereby declare as follows:

1. I am an associate at Fenwick & West, LLP, counsel for Defendants in this action. I submit this further declaration in support of Defendants' *Ex Parte* Application for an Order Shortening Time for a Hearing on (1) Defendants' Motion for Leave to Seek Further Discovery Relief Following the Court's Discovery Compliance Deadlines, and (2) Defendants' Motion for Clarification of the June 5, 2014 Order Regarding Defendants' Motion to Compel Discovery Compliance from Perfect 10, and Defendants' Motion for Leave. I have personal knowledge of the facts in this declaration.

**History of Defendants' Productions to Perfect 10**

2. Throughout the discovery process, Defendants have cooperated with Perfect 10 to work through any technical issues and to produce documents in a readily usable format. Defendants' productions to Perfect 10 use industry-standard formats, with load files compatible with standard eDiscovery tools and accompanying TIFFs. Additionally, Defendants' productions typically contain associated text information that includes the text of the native file in a computer readable format. *See* Dkt. 260-4 [Declaration of David Tran in Support of Defendants' Position Regarding Joint Stipulation as to Perfect 10's Motion for Sanctions]. Attached as **Exhibit A** is a copy of Defendants' production log in this case.

3. Perfect 10 did not complain about Defendants' February 7, 2014 and February 12, 2014 productions, which used the same structure of TIFF images, associated text files and metadata. Giganews provided standard instructions for accessing the files in these productions, but Perfect 10 never responded as to whether it actually followed those instructions.

4. Following Defendants' productions on March 17, 18, and 28, 2014, Perfect 10 informed Defendants that it had encountered technical issues with these productions. In response, on April 3, 2014, Defendants reissued these productions

on an encrypted hard drive. Attached as **Exhibit B** is a copy of the letter accompanying this replacement production on April 3, 2014.

5. After serving this replacement production on April 3, 2014, Defendants discovered technical issues involving its Vol007 production, which appeared in the original March 28, 2014 production and April 3, 2014 update. Upon discovering these errors, on April 9, 2014, Defendants replaced their previous production of March 28, 2014. Attached as **Exhibit C** is a copy of the letter accompanying this replacement production on April 9, 2014. This April 9 correspondence provided that: "This production replaces the previous March 28th production. Please destroy or return the March 28th production, which Perfect 10 received separately by disk and which is also Vol007 on the hard drive we recently sent."

6. Following the April 3, 2014 production, Perfect 10 informed Defendants that it still had technical issues with the production originally made on March 17, 2014. Defendants asked whether Perfect 10 had followed our instructions for decrypting and accessing the March 17, 2014 document production. Again, Perfect 10 did not respond.

7. On May 7, 2014, Defendants once again reissued the March 17, 2014 document production, this time on three separate hard drives. Attached as **Exhibit D** is a copy of the letter accompanying this further replacement production on May 7, 2014. The letter also asked Perfect 10 to once again confirm that it had followed Defendants' instructions for decrypting and accessing productions.

8. On May 23, 2014, *over two weeks after the May 7 production*, Perfect 10 sent Defendants an email requesting "a disk similar to the most recent one you provided but with a complete set of text files[.]" When Defendants attempted to clarify Perfect 10's request, Perfect 10 merely referred Defendants to its supplemental briefing regarding Perfect 10's Motion for Evidentiary Sanctions

BELICHICK REPLY DECL. ISO DEFS.'
*EX PARTE* APPLICATION

2

CASE NO. 11-cv-07098-ABC (SHx)

Against Giganews.  Attached as **Exhibit E** is a copy of this May 23, 2014 email exchange.

9. On May 28, 2014, Perfect 10 again raised issues regarding "text files"—without further clarification.  Again, Defendants investigated the issue.  Unable to determine the basis for Perfect 10's complaint, Defendants again asked for clarification.  Attached as **Exhibit F** is a copy of the email exchange between Lynell Davis and Kathleen Lu from May 28, 2014 through May 30, 2014.

10. Perfect 10 never responded to any of Defendants' requests for clarification regarding their purported technical issues regarding "text files."

**The Court Has Already Approved of Defendants' Productions**

11. On June 2, 2014, the Court denied Perfect 10's Motion for Evidentiary Sanctions Against Giganews. *See* Dkt. 295.  In its Order, the Court recognized that Defendants' productions complied with industry-standard formats. *Id.* at 4 ("In the court's experience, parties often wage battles over the feasibility of producing exactly the kind of format of document production which Giganews here has willingly provided to Plaintiff.").  The Court also noted that, in its view, Perfect 10's asserted issue with "text files" was "simply another technical problem that plaintiff has experienced in attempting to access the discovery records." *Id.* at 5.

12. Before filing its Opposition to Defendants *Ex Parte* Application, Perfect 10 had not mentioned any further issues regarding "text files" at any point after the Court's June 2 Order.

**Mr. Laven Reviewed a Drive Containing an Outdated, Irrelevant Production**

13. Perfect 10 does not provide adequate detail about the origin or contents of the hard drive it allegedly sent to Paul Laven of Merrill Corporation ("Merrill") for analysis.  For instance, Perfect 10 does not provide any declaration under penalty of perjury that the hard drive delivered to Merrill contained unaltered versions of productions made by Defendants.  Also, despite the fact that Defendants reissued their March 17, 2014 production to Perfect 10 on May 7, 2014 on multiple

drives, Mr. Laven's declaration that Perfect 10 filed in support of its Opposition to Defendants' *Ex Parte* Application only mentions a single drive. *See* Dkt. 332-2 at ¶¶ 3-4. Perfect 10 has not provided any evidence that it forwarded this most recent production to Merrill for analysis. Furthermore, Mr. Laven's declaration says nothing about when Perfect 10 first engaged Merrill to assist with eDiscovery, and we have no reason to believe that Perfect 10 retained Merrill any earlier than mid-June 2014.

14. As established above, Defendants produced a hard drive containing six volumes (Vol002 through Vol007) to Perfect 10 on April 3, 2014. Following this production, Defendants discovered technical issues involving Vol007 production and set forth a replacement production fixing these issues on April 9, 2014. Based on the description of the hard drive submitted by Perfect 10 appearing in his declaration, *see* Dkt. 332-2 at ¶¶ 3-4, Mr. Laven appears to have conducted his analysis on a hard drive containing this outdated production from April 3, 2014, which admittedly contains errors. *See* Exhibit A.

15. Perfect 10 has consistently ignored this April 9 replacement production. Perfect 10 never responded to Defendants' April 9 correspondence. Nor did Perfect 10 ever return the erroneous Vol007 production or confirm that it had been destroyed, as Giganews requested. In fact, on May 23, 2014, Perfect 10 issued its Second Set of Requests for Admission to Giganews, which contained documents from this earlier, erroneous March 28 production. Specifically, Exhibits 6-8, 13 and 16 contained documents from this incorrect production.

**Ms. Davis' Misstatements About and Inadequate Supervision of Discovery Compliance Efforts**

16. The Declaration of Lynell Davis filed in support of Perfect 10's Opposition states that "Defendants served the first of their subpoenas for the production of documents upon a third-party, now specially represented for the purposes of his document subpoena by Perfect 10, on March 31, 2014, upon Mr.

Yamato." *See* Dkt. 332-1 at ¶ 7. This statement is false. As I stated in my reply declaration regarding Defendants' Motion to Compel Discovery Compliance from Craig Ken Yamato II, Mr. Yamato was not served with a document subpoena until April 24, 2014. *See* Dkt. 317-2 at ¶¶ 19-21.

17. Defendants noticed the deposition and document subpoenas of Sheena Chou on May 23, 2014. Attached as **Exhibits G.1 and G.2** are copies of the deposition and document subpoenas of Sheena Chou, dated May 23, 2014, respectively. Perfect 10 refused to accept service of either subpoena.

18. I am informed and believe that upon receiving the copies of the subpoenas, Perfect 10 warned Ms. Chou that Defendants intended to serve her. For weeks, Ms. Chou attempted to evade service. After conducting surveillance, a process server finally served Ms. Chou on June 13, 2014. Attached as **Exhibits H.1 and H.2** are true and correct copies of the proofs of service for the deposition and document subpoenas of Sheena Chou, respectively.

19. Ms. Davis' declaration also provides that she has been communicating with third-party witnesses about their compliance with the Court's orders (Dkts. 318 and 322). *See* 332-1 at ¶¶ 2-6. But, beyond stating that she has instructed these third-party witnesses about performing the court-ordered searches, Ms. Davis does not set forth specific facts demonstrating that she is supervising or directing the search for any documents.

**Defendants' Interaction with the Court Clerk Regarding the Order Compelling Discovery Compliance from Third-Party Witnesses**

20. On June 5, 2014, the Court entered its order granting Defendants Motion to Compel Further Discovery Compliance from Third-Party Witnesses. Dkt. 312. Although the body of the Order specifically refers to Appendix A, Appendix B, Appendix C, and Appendix D, the Order attached only Appendix A to the Order.

21.     I immediately contacted Perfect 10 and its affiliated Third-Party Witnesses and attempted to reach agreement that they would use the search terms on all Appendices.  But they refused and claimed that they did not have to use all of the search terms listed in the Appendices unless the Court attached each Appendix to the Order.  They also refused to stipulate to allowing Defendants to file a motion for reconsideration.  *See* 332-1[Davis Decl.] at 7-9, Ex. 1.

22.     In an effort to avoid burdening the Court with unnecessary motion practice, my assistant first contacted the ECF Helpdesk and was directed to contact the Court's relief clerk.  My assistant later called the relief clerk, who was on vacation, and so she sent the Court's clerk a brief email explaining the situation and asking for direction.  When the Court clerk's response did not appear to understand the situation, I sent the Court clerk an email explaining the situation in more detail, and informing the Court clerk of Perfect 10 and its affiliated third-party witnesses' position.  I further stated that I would file an *ex parte* application for an order shortening time and motion for reconsideration, if necessary, but did not want to burden the Court.

23.     On June 16, 2012, the Court entered an amended order that included all of the Appendices.  *See* Dkt. 318.

**The Relative Volume of Perfect 10's Productions**

24.     The relative sizes of Perfect 10's and Defendants' document productions do not reflect the extent of each party's discovery compliance.  Perfect 10's production contains a number of very large files, including pictures and video.  Also, the majority of documents produced by Perfect 10 in this matter were produced in a "dump" of over a million documents in October of 2013, *before Defendants propounded any document requests*.  The relevance of these documents is in dispute.  Indeed, the fact that the Court has granted multiple discovery compliance orders against Perfect 10 confirms that the sheer volume of Perfect 10's production has little bearing on its discovery compliance.

BELICHICK REPLY DECL. ISO DEFS.' *EX PARTE* APPLICATION    6    CASE NO. 11-cv-07098-ABC (SHx)

**Perfect 10's Motion for Sanctions Pursuant to Fed. R. Civ. P. 56(h) for Submission of Declarations in Bad Faith**

25. Perfect 10 recently filed a motion claiming that Defendants filed "bad faith" declarations in support of their opposition to Perfect 10's unsuccessful motion of partial summary judgment. Dkt. 325. The Court has found that this motion is procedurally deficient. Dkt. 327.

26. Defendants have already responded in writing to Perfect 10's allegations about filing "bad faith" declarations and will do so again if and when they have to file an Opposition to Perfect 10's sanctions motion.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 26th day of June, 2014 in Mountain View, California.

*/s/ Joseph S. Belichick*
Joseph S. Belichick