1  [Attorneys On Next Page]

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                     CENTRAL DISTRICT OF CALIFORNIA

10

11  PERFECT 10, INC., a California          CASE NO. 2:11-CV-07098-ABC-SH
    corporation,
12                                          **DISCOVERY MATTER**
                    Plaintiff,              ***Before Hon. Stephen J. Hillman***
13
            vs.                             **JOINT STIPULATION RE**
14                                          **PERFECT 10, INC'S MOTION FOR**
    GIGANEWS, INC., a Texas                 **SANCTIONS PURSUANT TO FED.**
15  corporation; LIVEWIRE SERVICES,         **R. CIV. P. 37(B) FOR FAILURE TO**
    INC., a Nevada corporation; and         **COMPLY WITH A COURT ORDER**
16  DOES 1 through 100, inclusive,
17                  Defendants.
                                            Date:        August 18, 2014
18  ─────────────────────────────           Time:        2:00 P.M.
                                            Courtroom:   550 (Roybal)
19  GIGANEWS, INC., a Texas
    corporation; LIVEWIRE SERVICES,         Discovery Cut-off:    June 30, 2014
20  INC., a Nevada corporation; and         Pretrial Conference:  January 19, 2015
    DOES 1 through 100, inclusive,          Trial Date:           January 27, 2015
21
                    Counter-claimants,
22
            vs.
23
24  PERFECT 10, INC., a California
    corporation,
25
                    Counter-defendant.
26

27

28

─────────────────────────────────────────────────────────────────────
Joint Stipulation Re Perfect 10, Inc's Motion For Sanctions Pursuant To Fed. R. Civ. P 37(b)

PERFECT 10, INC.
Lynell D. Davis, Esq., SBN 271152
lynell@perfect10.com
Natalie Locke, Esq., SBN 261363
natalie@perfect10.com
11803 Norfield Court
Los Angeles, CA 90077
P 310.476.0794  |  F 310.476.8138

KRAUSE KALFAYAN BENINK & SLAVENS, LLP
Eric J. Benink, Esq., SBN 187434
eric@kkbs-law.com
550 West C Street, Suite 530
San Diego, CA 92101
P 619.232.0331  |  F 619.232.4019

Attorneys for Plaintiff and Counter-defendant

Perfect 10, Inc.


FENWICK & WEST LLP
Andrew P. Bridges (CSB No. 122761)
abridges@fenwick.com
Ilana Rubel (CSB No. 221517)
Irubel@fenwick.com
Kathleen Lu (CSB No. 267032)
klu@fenwick.com
555 California Street, 12th Floor
San Francisco, California 94104
Telephone:  (415) 875-2300
Facsimile:  (415) 281-1350

Attorneys for Defendants and Counter-claimants

Giganews, Inc. and Livewire Services, Inc.

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ..................................................................................... 1

        A.      Perfect 10's Preliminary Statement ........................................... 1

        B.      Giganews's Preliminary Statement ............................................ 4

II.     Perfect 10's Position ..................................................................... 6

        A.      Giganews has failed to Provide Additional Technical Expertise to Decode the X-trace Header .................................. 8

        B.      Giganews has failed to Provide Additional Technical Expertise Regarding Missing Text Files ................................ 10

        C.      Defendants Have Filed A Series Of False And Misleading Declarations .................................................................. 11

III.    GIGANEWS'S POSITION: ................................................................ 12

        A.      Giganews Made Itself Available to Provide Additional Technical Expertise to Decode the X-Trace Header, But Perfect 10 Sought No Assistance During the Discovery Period ........................ 13

        B.      Giganews Made Itself Available to Provide Additional Technical Expertise Regarding Text Files, But Perfect 10 Sought No Assistance During the Discovery Period ........................ 17

        C.      Perfect 10's Complaints About the Veracity of Defendants' Declarations Are As Meritless As Its Past Complaints the Court Rejected ................................................................. 19

IV.     CONCLUSIONS ................................................................................. 21

        A.      Perfect 10's Conclusion ........................................................... 21

        B.      Giganews's Conclusion ........................................................... 22

## I.      INTRODUCTION

Pursuant to Federal Rule Civil Procedure 37 and Local Rule 37-2.1, Plaintiff Perfect 10, Inc. ("Perfect 10") and Defendant Giganews, Inc. ("Giganews") submit the following Joint Stipulation regarding Perfect 10's Motion for Sanctions Pursuant to Fed. R. Civ. P 37(b) (the "Motion").  Discovery closed on June 30, 2014.  Pursuant to the Court's June 27, 2014 Order (Dkt. No. 338[1]) Perfect 10 asks the Court to impose sanctions upon Giganews due to Giganews's failure to comply with the Court's June 2, 2014 Order (Dkt. No. 295)(the "June 2 Order"). [Giganews contends it complied with that Order and thus opposes Perfect 10's request for sanctions.]  As Local Rule 37-2.1 requires, Perfect 10 attaches a copy of the Court's Scheduling Order to the Declaration of Lynell. D. Davis in support of Perfect 10's Motion ("Davis Decl."), which accompanies this Joint Stipulation.  ¶2, Exh. 1.  Pursuant to Fed. R. Civ. P. 26-37 and Local Rule 37-1 counsel for the parties met and conferred telephonically on July 18, 2014.  Davis Decl. ¶4.

### A.      Perfect 10's Preliminary Statement

Giganews has elected to completely disregard this Court's June 2 Order.  For example, this Court ordered "Giganews to provide any additional technical expertise it may have to plaintiff as to how plaintiff itself may decode the 'X-Trace header' to obtain the identity of posters."  June 2 Order at 4:17-19.   Giganews has admitted that it can decode its own X-Trace headers (see Molter Decl. Dkt. 149-11 ¶30) but has not provided any such assistance to Perfect 10 as ordered by this Court.

Giganews was also ordered that "[i]f, as plaintiff argues, Giganews in fact has the ability to match ficticious email addresses to the true identities of the posters by performing a specific search method recommended by plaintiff[,]

---

[1] In its June 27, 2014 Order, the Court stated that "[a]ll parties will be presumptively permitted to seek discovery compliance limited to Orders which this court has issued prior to this date."

**Giganews shall so inform the plaintiff…**" [emphasis added].  June 2 Order at
4:20-22.  Giganews clearly has that ability, and simply refused to relay this
information to Perfect 10.  The fact that Giganews has this ability is demonstrable
in several ways.  Firstly, Giganews has admittedly sent warnings to alleged
infringers in response to Perfect 10's DMCA notices, which include the poster's
purported email address.  Molter Decl. (Dkt. 149-11) ¶ 11; Declaration of Dr.
Norman Zada attached hereto concurrently ("Zada Decl.") ¶ 4, Exh. 1.  In order to
send such warnings, Giganews must use the correct email of the alleged infringer,
and must know the name associated with that email, and has the purported email
address of the infringer from Perfect 10's notice.  Zada Decl. ¶ 4, Exh. 1.

Secondly, Giganews provided discovery responses that evidence its ability to
match ficitious email addresses to the account holder (uploader).  Perfect 10's first
interrogatory request ("Interrogatory No. 1"), identifies ficitious email addresses
used to upload infringing Perfect 10 copyrighted images and requests that
Giganews identify those infringers.  Initially, Giganews provided Perfect 10 with a
Bates-range corresponding to 33 pages of documents that identified the names and
addresses of 33 Giganews's subscribers, but failed to include the uploader's
ficitious email addresses, which made it impossible for Perfect 10 to match a
ficitious email address with an actual Giganews subscriber/uploader.  After motion
practice, in its Court-ordered Supplemental Responses to Perfect 10's First Set of
Interrogatories dated March 17, 2014, Giganews then provided a wider Bates-range
of documents, but still refused to match each of the fictitious email addresses to
actual subscribers/uploaders.  Giganews could not have provided the 33 pages of
documents showing the real names of the accused Giganews subscribers without
first knowing which fictitious email address corresponds to an actual Giganews
account holder.  Zada Decl. ¶ 5.  So Giganews not only misled this Court by
claiming that it did not have such information, Giganews further did not inform
Perfect 10 of its ability as ordered by this Court.  *See* Section II.A below.

Giganews was also ordered to work with Perfect 10 to address the issue of the missing text files for more than 421,000 pages of Giganews's productions. June 2 Order at 5:7-11.  Giganews did not obey that order either.  *See* Section II.B below.

Defendants have filed a slew of false and misleading declarations in this case which have damaged Perfect 10 and completely misled this Court.  For example, Defendants have filed declarations which falsely contended that a) Perfect 10's inability to properly search Defendants productions was due to its own technical inability, b) that Defendants provided the underlying text files to Perfect 10 when they did not, and c) that Perfect 10 was unable to download Defendants productions because it ran out of computer memory.  All such claims are demonstrably false. Declaration of Melanie Poblete in Support of Perfect 10's Motion for Evidentiary Sanctions (Dkt. No. 260-3) ("Poblete Decl. Dkt. No. 260-3") and Declaration of Melanie Poblete, filed concurrently herewith ("Poblete Decl.") ¶5.  *See* Section II.C below.

For these reasons and others explained below, Perfect 10 asks the Court to impose sanctions pursuant to Fed. R. Civ. P. 37.  Perfect 10 requests that this Court a) compel Giganews to provide Perfect 10 a disk which contains a complete set of text and image files for Giganews's productions to date, so that Perfect 10 may properly search those productions, b) compel Giganews to provide the real names and addresses of the persons with the fictitious email addresses listed in Perfect 10's Interrogatories Nos. 1 and 2 and match each name to each purported email address, c) compel Giganews to provide the real names and addresses of the persons who uploaded the material associated with the Message-IDs listed within Interrogatory No. 3, d) allow Perfect 10 to take an additional 30(b)(6) deposition of Giganews, and e) that Giganews be required to pay for the cost of this Motion and that 30(b)(6) deposition.

### B.      Giganews's Preliminary Statement

The latest in Perfect 10's string of motions for sanctions (*see* Dkt. 260 and 325) is just as meritless as the last, which Judge Collins denied  as "ill-considered and overreaching."  Dkt. 343 at 2.  Throughout discovery, Giganews has provided technical guidance to Perfect 10, including detailed instructions on how to use message data (the "X-Trace header") to find user-identifying information, if available.  *See, e.g.*, Dkt. 279 [Lu Decl.] at ¶¶10–13.  The Court's June 2, 2014 Order (Dkt. 295 at 4) directed Giganews "to provide any additional technical expertise it may have to plaintiff as to how plaintiff itself may decode the 'X-Trace header' to obtain the identity of posters."  But, there was no further technical assistance that Giganews could give to decode the X-Trace header to obtain the identity of posters.  Declaration of Joseph S. Belichick ("Belichick Decl.") at ¶3.  If Perfect 10 had asked, Giganews would have informed Perfect 10 of that fact.  *Id.* Rather than request any specific technical help, however, Perfect 10 silently waited until July 8, 2014,  a week after the June 30, 2014 close of discovery, to ambush Giganews with a complaint about Giganews's supposed noncompliance with the June 2 Order.[2]  *Id.*

The root of this dispute is the same as Perfect 10's previous, unwarranted attempts to foist the burden of extracting user information onto Giganews.  The Court's June 2 Order denied Perfect 10's motion to have Giganews bear that burden and cost because the "burden of extracting the specific information plaintiff seeks would be equal for both parties."  Dkt. 295 at 3.  Claiming a violation of that same June 2 Order, Perfect 10's present argument merely recycles its motion that the Court denied on June 2.  In fact, Perfect 10's proposed order (that Giganews will identify users' "real names and addresses of the persons") echoes the proposed

---

[2]   Perfect 10 manufactured this dispute while forcing Defendants to obtain court multiple orders compelling Perfect 10 to meet its basic discovery obligations. *See, e.g.*, Dkt. 326.

Joint Stipulation Re Perfect 10, Inc's Motion For Sanctions Pursuant To Fed. R. Civ. P 37(b)

order that the Court rejected on June 2 (that Giganews "identify all of the persons . . . by providing each of those persons' name, address, email address, and telephone number"). Dkt. 260-1 at 2, ¶1. Once again, Perfect 10 seeks information that requires *multiple steps* to extract, with no possible technical shortcut. And, once again, Perfect 10 wants the Court to order Giganews to do the work that Perfect 10 itself is capable of doing if it chose to do so. Perfect 10's arguments for shifting the burden remain groundless, especially since Perfect 10 *never* sought any of the technical assistance that it now complains Giganews did not provide, *never* asked Giganews about any specific search method recommended by Perfect 10, and *never* tendered any funds to Giganews to cover Giganews's provision of technical assistance or any specific search method recommended by Perfect 10, as the June 2, 2014 Order required. Belichick Decl. at ¶4.

Similarly, despite possessing Giganews's document production for months, Perfect 10 did not identify any *specific* alleged problem with the accompanying text files—whose purpose is to make review of documents *more convenient* by including only the text of those documents—until June 25, 2014. *Id.* at ¶5. At that time Perfect 10 claimed Defendants' production had missing text files, based on its vendor's analysis of outdated hard drives that *Defendants had long previously replaced. Id.*; *see also* Dkt. 337 at 4-5, 7 n.7; Dkt. 371 [Belichick Reply Decl.] at ¶¶ 2-15, Exs. A–F. After that exchange, Perfect 10 went quiet again until its July 8, 2014 letter. Belichick Decl. at ¶5. Only since then has Perfect 10 informed Giganews that certain volumes of documents produced by Giganews appeared to include some errors or omissions. *Id.* Giganews has promptly responded to these issues as Perfect 10 has identified them. *Id.* Many of the supposedly "missing" text files correspond to documents (such as images) that *contain no text* and thus could not have text file versions in any event. *Id.* at ¶¶9-10, Exs. C-E. For the few remaining alleged technical issues, Giganews has re-produced all text files from certain volumes rather than inefficiently giving individual, corrected files to Perfect

Joint Stipulation Re Perfect 10, Inc's Motion For Sanctions Pursuant To Fed. R. Civ. P 37(b)

10's piecemeal complaints.  *Id.* at ¶¶9-15, Exs. C-J.  Giganews knows of no remaining technical issues regarding these text files.  *Id.*

Perfect 10 also recycles its baseless charge—which the Court has repeatedly rejected—that Giganews has submitted false and misleading declarations in this case.  The Court found Perfect 10's objections[3] to the declarations that Defendants filed in opposition to Perfect 10's motion for partial summary judgment to be "substantially meritless."  *Perfect 10, Inc. v. Giganews, Inc.*, No. 11-7098, 2014 WL 323655, at *2 (C.D. Cal. Jan. 29, 2014).  Undeterred, Perfect 10 exhumed those baseless objections for its June 23, 2014 motion for sanctions, arguing that the Court's previous denial of Perfect 10's motion for partial summary judgment "should not be allowed to stand."  Dkt. 325-1 at 2.  Denying the motion for sanctions, the Court again found the charge that Defendants' declarations were false and misleading to be "meritless" and "entirely unpersuasive."  Dkt. 343 at 1.  Yet Perfect 10's present motion repeats the same rejected arguments that Giganews' declarations are "demonstrably false." Perfect 10 simply ignores the Court's rulings and forces Giganews to spend resources to defeat the same arguments *over and over*.  Giganews respectfully requests that the Court deny Perfect 10's present motion in full, order Perfect 10 to desist from filing any further motions for sanctions without leave of Court, and order whatever other relief the Court considers appropriate to deter Perfect 10 from abusing the Court's discovery dispute process.

## II.    PERFECT 10'S POSITION

Giganews has  failed to comply with this Court's Order resulting in Perfect 10's inability to identify persons or entities who have uploaded Perfect 10's copyrighted works to Giganews's Usenet servers or match correspondence with such claimants to the corresponding notices.  Giganews's failure to comply has prevented Perfect 10 from being able to review the vast preponderance of the

---

[3]    *See, e.g.*, Dkt. 153 at 5:25 (claiming "declaration is demonstrably false").

documents Defendants have allegedly produced during the critical discovery phase. Giganews's failure to comply with such orders has substantially impacted Perfect 10's ability to litigate this case, both because it was unable to depose potentially critical witnesses, and because it was unable to utilize potentially critical documents at depositions or otherwise.

The Court has made two separate Orders with regard to Perfect 10's First Set of Interrogatories and First Set of Requests for the Production of Documents to Defendant Giganews, Inc., both propounded on September 24, 2013.  In its February 26, 2014 Order (Dkt. No. 216) the Court granted Perfect 10's Motion to Compel with regard to a number of its Interrogatories and Requests for Production[4]. Because Giganews failed to fully comply with that order, this Court issued another order, the June 2 Order, which required Giganews to provide Perfect 10 with technical assistance to decipher Giganews's X-Trace field, as well as deal with technical problems regarding Perfect 10's inability to search Defendants production.  June 2 Order at 3:17-5:11.

Giganews has elected to simply ignore the June 2 Order.  Giganews did not communicate at all with Perfect 10, or do anything to help Perfect 10 decrypt Giganews's X-trace field or provide Perfect 10 with the missing text files needed to search its voluminous production.  Giganews has also intentionally misled the Court and Perfect 10 with regard to its ability to ascertain the persons or entities posting Perfect 10's copyrighted works to Giganews's Usenet servers.  Zada Decl. ¶¶ 4-6, Exh. 1.

"Under Rule 37(b) of the Federal Rules of Civil Procedure, if a party fails to obey an order to provide or permit discovery, the court may issue further just orders which may include compelling compliance with the order or imposing sanctions."

---

[4] In its February 26 Order, the Court granted Perfect 10's Interrogatories Nos. 1-3 outright; and  4, 6-12, 14, and 16 as amended by the Court.  The Court granted Perfect 10's Requests for Production Nos. 7-8, 10-11, 14 outright; and 1, 12-13, 21, 23 and 34 as amended by the Court.

*Sutherland v. Yates*, 2014 WL 51141 (E.D.Cal., January 7, 2014).  Giganews has made no effort to comply with the Order.  "Unless the failure was substantially justified or other circumstances make an award of expenses unjust, the Court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure… an imposition of sanctions under Rule 37 does not require willfulness, fault, or bad faith if the sanction is less than dismissal."  *Varney v. California Highway Patrol*, 2013 WL 2299544 (N.D.Cal. May 24, 2013).  Prior to Perfect 10 contacting Giganews to address its failure to comply with the June 2 Order, Giganews failed to contact Perfect 10 to attempt to address its obligations pursuant to the Order.  Davis Decl. ¶3.  As such,  substantial justification has not been provided for their disobedience.  Giganews's complete neglect of this Court's June 2 Order, is further compounded by Giganews intentionally misleading the Court and Perfect 10 regarding its ability to match the posting address with the actual person or entity warrant sanctions.

### A.    Giganews has failed to Provide Additional Technical Expertise to Decode the X-trace Header

In the June 2 Order, the Court specifically "order[ed] Giganews to provide any additional technical expertise it may have to plaintiff as to how plaintiff itself may decode the 'X-trace header' to obtain the identity of the posters."  June 2 Order at 4:17-19.  Furthermore, the Court stated that if "Giganews in fact has the ability to match fictitious email addresses to the true identities of the posters by performing a specific search method recommended by plaintiff, Giganews shall so inform plaintiff."  The Court stated that it "views this issue as simply another technical problem that plaintiff has experienced in attempting to access the discovery records" and thus ordered that "[t]his issue shall be resolved by the parties as set forth above."  June 2 Order at 5:8-11.

The June 2 Order is clear with regard to Giganews's obligations.  Giganews

certainly has the expertise to decode its X-trace field because it has admittedly done so.  Molter Decl. (Dkt. 149-11) ¶ 30.  But Giganews did not provide that expertise to Perfect 10, even though it was ordered to do so.  The Court did not state that Perfect 10 must first ask Giganews for additional technical expertise, it simply ordered Giganews to provide such expertise.

Similarly, Giganews must have a list which matches purported uploader email addresses with the true identities of the posters for multiple reasons.  First, Giganews has admittedly sent warnings to alleged infringers in response to Perfect 10's DMCA notices.  Perfect 10's DMCA notices include full message headers which contain both the purported email address and the Message-ID, as well as the X-Trace field.  Zada Decl. ¶ 4, Exh. 1.  Thus, when Giganews decrypts the X-Trace field to determine the Giganews account holder ID and thus the real name of the uploader, it will also have the purported email address.  Thus Giganews's repeated contentions that it does not have such information linking the purported email address to the name of the alleged infringer are completely false.

Second, in response to Perfect 10's first set of Interrogatories, which listed a series of email addresses and asked Giganews to identify those infringers, Giganews provided Perfect 10 with 33 pages of documents showing the names and addresses of 33 Giganews clients.  Giganews later claimed that those were the persons corresponding to the listed email addresses, but refused to match each email address to a particular client.  Giganews could not have provided such information without knowing which email address corresponded to which client.  Zada Decl. ¶ 6.  So Giganews not only mislead this Court by claiming that it did not have such information, Giganews further did not inform Perfect 10 of its ability as ordered by this Court.

In fact, the June 2 Order demonstrates the extent to which Defendants have misled the Court.   No search was necessary to match the purported email address with the identity of the infringer – Giganews had all of that information contained

in the message header provided by Perfect 10, which had both the purported email address of the infringer as well as the X-Trace field containing the uploader's identity which only Giganews could decrypt.

## B. Giganews has failed to Provide Additional Technical Expertise Regarding Missing Text Files

Giganews has also violated the June 2 Order by failing to provide Perfect 10 with any additional technical expertise regarding "the text files for tens of thousands of pages [that] are missing from subfolders produced, because the subfolders are empty." June 2 Order at 5:7-8. In fact, Paul Laven of Merrill Corporation concluded in his Declaration in Opposition to Defendants' Ex Parte Application, filed June 25, 2014 (Dkt No. 332-3), the hard drive produced by Defendants which he reviewed was missing text files for 6,424 records, corresponding to 421,341 pages. Here, the Court applied the same ruling applicable to the X-Trace headers, to Perfect 10's "assert[ion] that the text files for tens of thousands of pages are missing from subfolders produced, because the subfolders are empty."[5] Order at 5:7-8. As a result of this violation of the Order, Perfect 10 is unable to view or search the vast preponderance of the documents produced by Defendants. Again, the June 2 Order was clear the impetus was upon Giganews to provide the technical expertise to Perfect 10 to make the missing text files accessible. The June 2 Order, does not require Perfect 10 to first "identify the issue" as Defendants contend. The issue was identified within Perfect 10's Motion for Sanctions (Dkt. No. 260 and related Under Seal filings), and reiterated within the June 2 Order. Giganews was well aware of its obligations pursuant to the June

---

[5] In its June 2 Order, regarding Perfect 10's Requests for Production Nos. 7-8 and 10-11, while recognizing that "[i]t is questionable… whether Giganews has produced the documents in the form in which they are ordinarily maintained or in a reasonably useable form," the Court ordered the parties to follow the procedures applicable to Perfect 10's Interrogatories to expeditiously resolve technical issues impeding Perfect 10's easy retrieval of the ordered documents. Giganews has not done so.

2 Order, any argument that Perfect 10 had to reiterate that which is already stated therein as well as in Perfect 10's motion, fails.

### C. Defendants Have Filed A Series Of False And Misleading Declarations

Defendants have further abused the discovery process by filing a sequence of false and misleading declarations before this Court. For example, in Paragraph 10 of the Declaration of David Tran in Support of Defendants' Position Regarding Joint Stipulation as to Perfect 10's Motion for Sanctions, filed on May 12, 2014 (Dkt. No. 260-4), David Tran asserts that "[i]t is my understanding that the text information was produced with the TIFF images to Perfect 10." In Paragraph 15 of his declaration, Mr. Tran similarly asserts that "[i]t is my understanding that these load files [the text files discussed by the Court] were provided to Perfect 10 as part of each document production." In Paragraph 11 of his declaration, Mr. Tran contends that "[t]he files produced to Perfect 10 are searchable." Finally, in Paragraph 22 of his declaration, Mr. Tran contends that Melanie Poblete, Perfect 10's paralegal, "experienced errors because she was out of disk space on Perfect 10's computer system, not because of the encryption." All of these statements are incorrect. Poblete Decl.¶ 5, Exh 2. In particular, the documents produced by Defendants were missing text files and thus could not be searched. Poblete Decl. Dkt. No. 260-3 ¶2; Poblete Decl. ¶¶ 2-4, Exh. 1.

Additionally, in Paragraph 2 of the Reply Declaration of Joesph S. Belichick in Support of Defendants' Ex Parte Application, filed on June 26, 2014 (Dkt. No. 337-1), Joseph Belichick, counsel for Defendants, relies upon Mr. Tran's declaration for the assertion that Defendants' productions "typically contain associated text information that includes the text of the native file in a computer readable format." In addition, in Paragraph 14 of his declaration, Mr. Belichick asserts that Paul Laven of Merrill Corporation, who had reviewed the hard drive produced by Defendants and concluded that it was missing text files for 6,424

records, corresponding to 421,341 pages, had reviewed the wrong hard drive.  That statement is inconsistent with Defendants claims that they did not produce defective productions to Perfect 10.   Poblete Decl. ¶¶ 2-4, Exh. 1.   Defendants have simply elected to disregard the June 2 Order and should be sanctioned accordingly.

## III.   GIGANEWS'S POSITION:

The Court's June 2 Order denying Perfect 10's request for sanctions did not find "Giganews failed to fully comply" with the February 26, 2014 Order (Dkt. 216) requiring answers to interrogatories.  Instead, the Court agreed that Giganews had "complied with the court's Order in good faith" by having "produced documents in an appropriate manner, consistent with preferred ediscovery practices, and properly relied on Rule 33(d)."  Dkt. 295 at 3:17, 4:1-3.  The Court stated that "Giganews is not required to create data it does not already maintain" (id. at 4:25), but ordered Giganews to:

(1) "provide any technical expertise it may have to plaintiff as to how plaintiff itself may decode the 'X-Trace' header to obtain the identity of the posters; and

(2) review whether it "has the ability to match fictitious email addresses to the true identities of the posters by performing a specific search method recommended by plaintiff."

Id. at 4:17-22 (emphasis added).  There is no technical expertise, however, that Giganews could give to Perfect 10 that would allow Perfect 10 itself to decode the X-Trace header to obtain the identity of the posters.  Belichick Decl. at ¶3. Perfect 10 also never recommended any search method as required by the June 2 Order, and indeed there is no short cut.  Giganews does not have the ability to automatically match a fictitious email address to the true identity of a poster. Giganews did not withhold any technical expertise or refuse to respond to any specific search method that Perfect 10 had recommended.  Giganews was available to assist Perfect 10 with technical problems if Perfect had raised any issues.  Id. at

¶¶3-4.  Thus Giganews did not "simply ignore[] the June 2 Order" as Perfect 10 claims.

To the contrary, it is Perfect 10 that chose to ignore these technical issues, while instead busying itself with manufacturing sanctions arguments that the Court rejected as "meritless" and "entirely unpersuasive."  Dkt. 343 at 1.  Rather than use the documents that Giganews produced months ago to do the multi-step analysis to identify allegedly infringing users, Perfect 10 waited until after fact discovery closed to claim that technical problems prevented it from identifying documents or persons of interest. Belichick Decl. ¶¶4–5.  Perfect 10 vaguely alludes to prejudice, but does not point to a single example where its purported inability to identify a specific document or user actually prejudiced its preparation of the case.6  Perfect 10 cannot:  it possessed the documents themselves and the means of identifying users itself.  Perfect 10 had ample time, and Giganews' available cooperation, to address any solvable technical problem, if Perfect 10 had actually wanted to do so.  Once again, Perfect 10 has channeled its energies into creating strife rather than seeking solutions—a characteristic of its behavior that pervades both the substantive and procedural aspects of this case.

A.   **Giganews Made Itself Available to Provide Additional Technical Expertise to Decode the X-Trace Header, But Perfect 10 Sought No Assistance During the Discovery Period**

The June 2 Order called for "Giganews to provide *any additional* technical

---

6   In fact, Perfect 10 made no effort to pursue a single one of the many users whom Giganews identified in discovery responses.   Perfect 10 did not depose any of those individuals, did not name any of them as additional defendants, and has not stated any intention to have them appear as trial witnesses in this case.  Despite Giganews's having pointed this out in a July 11, 2014 letter (Belichick Decl., Ex. A), Perfect 10 still has not identified any specific, critical witness or document it could not have discovered.  Indeed, Perfect 10 submitted no competent evidence in support of these claims and certainly nothing justifying an order allowing Perfect 10 to take another 30(b)(6) deposition of Giganews after the close of fact discovery. Belichick Decl. at ¶17.

Joint Stipulation Re Perfect 10, Inc's Motion For Sanctions Pursuant To Fed. R. Civ. P 37(b)

expertise it *may* have to plaintiff as to how plaintiff itself may decode the 'X-Trace header' to obtain the identity of poster."  Dkt. 295 at 4 (emphasis added). Giganews has made itself available to answer questions about the X-Trace headers, but it has no additional technical expertise—and certainly no shortcut—to obtain user identities from X-Trace headers, besides what Giganews previously explained. Belichick Decl. ¶3.

Giganews previously explained that obtaining user information from an allegedly infringing message requires several steps.  *See, e.g.*, Dkt. 279 [Lu Decl.] at ¶¶ 10–13.  "[A]ny party wishing to identify customer account records from Message-ID data or information in other message headers would have to examine [Giganews's] records because Giganews does not have any compilation or summary of customers' identifying information indexed by Message-IDs or by pseudonym."  *Id.* at ¶3.  First, one must know the message's "Message-ID."  The Message-ID is a unique identifier that is readily apparent in each Usenet message, so for any allegedly infringing message, Perfect 10 can easily view the Message-ID. The Message-ID enables the retrieval of the corresponding message "header," which contains data about the message's origin.  In particular, the header includes an "X-Trace" header, which includes the user's account number (assuming the user is a Giganews customer).  No technical process exists to obtain a user's identity directly from the X-Trace data.  Rather, finding a user's identity requires a separate, manual step of matching the account number found in each X-Trace header with the corresponding account records (which may include the user's credit card name and contact information pertaining to the account).  If the user is not the holder of the relevant credit card (merely another authorized user of that credit card account), a further inquiry of the cardholder is necessary.

Giganews reiterated these steps in a May 1, 2014 letter to Perfect 10.  For security reasons, Giganews encrypts X-Trace data, but Giganews has stood ready to give Perfect 10 the decrypted X-Trace data for any messages Perfect 10 identifies

by Message-ID.[7]  Indeed, during the discovery period, Giganews repeatedly provided Perfect 10 with account holder information for the small number of Message-IDs that Perfect 10 identified for Giganews. Belichick Decl. at ¶3. In the spirit of cooperation, Giganews twice offered in writing (on May 1 and May 15, 2014) to generate a new list of full message headers for those Message-IDs that Perfect 10 had provided.  *Id.* Perfect 10 ignored Giganews' offer and did not respond.  *Id.*  Perfect 10 never provided Giganews with a comprehensive list of all the Message-IDs in which it was interested.  It was Perfect 10's choice not give Giganews such a list, and only now that discovery is over does Perfect 10 complain about not having received user information associated with those Message-IDs.

In addition, Perfect 10 never informed Giganews at all about Perfect 10's technical capabilities or ability to process information.  Without Perfect10's cooperation, Giganews was in no position to provide any technical expertise at all. Giganews instructed Perfect 10 on the multiple steps for finding user information, but Giganews cannot divine what additional, specific technical problems Perfect 10 might experience. (Indeed Perfect 10 has appeared remarkably helpless on technical matters in the case.)  Perfect 10 unreasonably seeks sanctions even though it purposely avoided broaching the subject of how Giganews might assist Perfect 10 in gleaning user information associated with certain Message-IDs.  *Id.* ¶¶3-4.

Perfect 10 also incorrectly claims that Giganews can readily match fictitious email addresses to the true identities of users. The June 2 Order states:

---

[7]   To the extent that Perfect 10 is suggesting that it is entitled to receive Giganews' proprietary algorithms for encryption and decryption of X-Trace fields in message headers, nothing justifies that result.  Aside from the fact that Perfect 10 never served any discovery requests seeking those proprietary algorithms, Giganews is only obligated to produce documents in decrypted form.  *See* Fed. R. Civ. Proc. 33(b)(2)(E) (production must be in "reasonably usable form").  Giganews is not obligated to give Perfect 10 the proprietary means to decrypt.  The encryption and decryption algorithms are Giganews' trade secrets.  Knowledge of them enables the ability to falsify X-Trace headers and thus compromises Giganews' business.

Joint Stipulation Re Perfect 10, Inc's Motion For Sanctions Pursuant To Fed. R. Civ. P 37(b)

1         If, as plaintiff argues, Giganews in fact has the ability to

2         match fictitious email addresses to the true identities of

3         the posters *by performing a specific search method*

4         *recommended by plaintiff*[,]  Giganews shall so inform

5         plaintiff[.]  If Giganews responds that it is in fact able to

6         perform *such a search*, and if plaintiff requests Giganews

7         to do so, then the cost of the search shall be born entirely

8         by plaintiff, since Giganews is not required to create data

9         it does not already maintain.

10 Dkt. 295 at 4 (emphasis added).  In fact, Giganews has no ability to match fictitious

11 email addresses to user identities aside from the multi-step process Giganews has

12 disclosed to Perfect 10, the same process that Giganews itself would have to follow.

13 Thus no "specific search method" would allow Giganews to match email addresses

14 to user identities any more easily.  Moreover, just as Perfect 10 never sought

15 technical assistance during the discovery period to decode X-Trace headers,

16 Perfect 10 never reached out to Giganews to follow up on any "specific search

17 method."  Belichick Decl. at ¶4.  Perfect 10 never asked Giganews to perform any

18 "specific search method recommended by plaintiff."  *Id.*  Nor did Perfect 10 ask

19 any follow-up technical questions about any specific search method.  *Id.*  Moreover,

20 Perfect 10 never ***tendered any funds*** to Giganews to cover any "specific search

21 method recommended by plaintiff" as the June 2 Order required.  *Id.*  Perfect 10 did

22 not do its part to follow the same order it now seeks to use as a basis for imposing

23 sanctions against Giganews.  *Id*. ¶¶3-4.

24       Without basis, Mr. Zada and Perfect 10 speculate that "Giganews must have

25 a list which matches purported uploader email addresses with the true identities of

26 the posters."  But Perfect 10's purported proof that such a list exists is no proof at

27 all.  Mr. Zada states that Giganews "could match" an uploader's fictitious email

28 address with the uploader's identity.  Zada Decl. ¶4.  It does not follow that

Giganews possesses a list that matches those two sets of information.  Nor does the fact that Giganews emailed warnings to the email addresses mean that Giganews first created such a document.  As Giganews has repeatedly explained, such a list does not exist.  Dkt. 295 at 4 ("Giganews does not maintain, in discrete format, the narrative responses which plaintiff had expected to receive.").  Perfect 10 makes the same complaint—which the Court rejected on June 2—that Giganews did not undertake the multiple steps of cross-referencing X-Trace data to user account records in order to match email addresses and user identities.

Mr. Zada and Perfect 10 also speculate that Giganews must have an existing list matching email addresses and user identities  because Giganews produced account records for users who posted messages associated with the Message-IDs Perfect 10 identified.  Perfect 10 again ignores that Giganews located those records by cross referencing the *account number* from the X-Trace, not by cross referencing the fictitious email addresses.  Perfect 10 itself can create a list of email addresses and user identities by looking at the messages (containing the email addresses), the account numbers that correspond to those messages, and the user records that correspond with those account numbers.  But, Giganews does not maintain such a list, and the Court has already made clear that "Giganews is not required to create data it does not already maintain." Dkt. 295 at 4.  Flouting the June 2 Order that already settled this issue, Perfect 10 wants to make Giganews bear the burden of creating the list Perfect 10 wants.  The answer should be the same as in the June 2 Order:  no.

### B.     Giganews Made Itself Available to Provide Additional Technical Expertise Regarding Text Files, But Perfect 10 Sought No Assistance During the Discovery Period

Giganews has produced numerous volumes of documents in this case.  Only four are at issue here:  Volume Nos. 3, 4, 6, and 7.  The parties do not dispute that Giganews produced—and Perfect 10 has possessed—copies of the actual

documents more than three months ago.  All that is in dispute is the technical ability of Perfect 10 to access the *additional* text-only versions of those documents.

In its June 2 Order, the Court noted Plaintiff's assertion that certain text files were missing and ordered the parties to work together to resolve this "technical problem that plaintiff has experienced in attempting to access the discovery records." Dkt. 295 at 4.  Perfect 10 did not follow up by identifying its specific problems until *after* the discovery cut-off—indeed, *after* the July 18, 2014 conference of counsel regarding this motion, when Perfect 10 finally sent Giganews a spreadsheet detailing its supposed problems  with Giganews's production. Belichick Decl. at ¶¶5-8.[8]  Perfect 10 cannot fault Giganews for Perfect 10's own delay in raising these issues.  Giganews has promptly responded to these issues as Perfect 10 has identified them.  *Id.* at 5-15, Exs. A-J.  Moreover, because Perfect 10 has long possessed the *actual documents*, it cannot credibly claim prejudice from these technical issues.  Nor has Perfect 10 submitted any competent evidence of its diligence in timely reviewing Defendants' documents and working with Defendants to solve any technical issues before the close of fact discovery.  Belichick Decl. at ¶17.[9]

Indeed, in many instances, the text files that Perfect 10 claims are missing are absent simply *because the corresponding documents contain no text.  Id.* ¶¶9-10,

---

[8]  Perfect 10 mentioned some issues regarding missing text files on June 25, 2014 in its opposition to Defendants' *ex parte* application for an order shortening time. Dkt. 332 at 5-6.  Defendants responded to these issues, noting the Perfect 10's vendor analyzed an outdated hard drive and if Perfect 10 had specific issues it should identify the specific drives, volumes, and documents at issue.  *See* Dkt. 337 at 4-5, 7 n.7; Dkt. 371 [Belichick Reply Decl.] ¶¶ 2-15, Exs. A-F.  Perfect 10 did not do so.

[9]  For example, Perfect 10 has not submitted any evidence regarding when it hired Merrill to assist with eDiscovery and the only evidence in the record shows that it was just a few weeks before the close of fact discovery.  Dkt. 332-3 [Laven Decl.] at ¶3 (stating that he examined a hard drive on June 13, 2014 that Defendants had already replaced).

Exs. C-E.  A document comprised only of an image would not contain any text and thus *would not have a text file*.  For example, Perfect 10's July 18 chart claims that Volume 3 had 94 missing text files, but *all* of those absent files corresponded to documents without text.  Belichick Decl. at ¶¶9-10, Exs. C-E.  In other instances, it is not readily apparent why Perfect 10 has had problems.[10]  *Id.*  In the interest of good faith cooperation, Giganews provided Perfect 10 with all of the text files relating to Volume 4 and 6 in their entirety, with double-checked text files.  *Id.* at ¶¶11-13, Exs. G-H.  This solution is more efficient than trying to analyze and diagnose each claimed "problem."  Giganews knows of no remaining technical issues regarding the text files for these volumes in its document production.[11]  *Id.*

## C.    Perfect 10's Complaints About the Veracity of Defendants' Declarations Are As Meritless As Its Past Complaints the Court Rejected

This is not the first time that Perfect 10 has cried wolf about Defendants'

---

[10]    A single document produced electronically may result in numerous TIFF images (one TIFF file per page), but there would typically only be one accompanying text file for the entire document.  Thus, without additional information, comparing the number of TIFF images in a production to the number of text files does not show whether any text files may be missing.

[11]    On July 22, 2014, Perfect 10 revealed that it had chosen to have an outside vendor generate new text files for documents—instead of seeking technical assistance from Giganews or notifying Giganews of specific problems.  Belichick Decl. at ¶¶11-15, Exs. F-J.  Perfect 10 cannot reasonably claim that Giganews failed to cooperate in resolving technical issues when Perfect 10 chose not to seek Giganews' assistance for those issues.  In fact, after originally complaining about missing text files, Perfect 10 is now complaining *to Defendants* about Perfect 10's *vendor's processing* of Defendants' TIFF files, something that Defendants had no control over.  Despite the fact that Defendants have repeatedly provided updated text files, Perfect 10 appears to still be using OCR'd text files that Merrill created, which Perfect 10 complains are not sufficiently searchable.  In response, Defendants have encouraged Perfect 10 "to use the text files that Defendants have already provided and stop trying to blame Defendants for the quality of the OCR'd text files that Merrill created for Perfect 10."  *Id.*

---

Joint Stipulation Re Perfect 10, Inc's Motion For Sanctions Pursuant To Fed. R. Civ. P 37(b)

1   declarations being "demonstrably false."[12]  Every time, the supposed falsehood has

2   really been a dispute of fact, merely reflecting Perfect 10's disagreement with

3   Giganews's position.  On January 29, 2014, the Court rejected Perfect 10's

4   objections to the declarations that Defendants filed in opposition to Perfect 10's

5   motion for partial summary judgment to be "substantially meritless."  *Giganews*,

6   2014 WL 323655, at *2.  On June 23, 2014, Perfect 10 moved for sanctions on

7   grounds that Defendants' declarations were "false and misleading" (Dkt. 325-1

8   at 2), grounds that the Court found "meritless" and "entirely unpersuasive."

9   Dkt. 343 at 1.

10        Likewise, Perfect 10's present charge of falsity is meritless.  Mr. Tran's

11   declaration (Dkt. No. 260-4) accurately stated, "It is my understanding that the text

12   information was produced with the TIFF images to Perfect 10" (*id.* at ¶10) and that

13   text "load files were provided to Perfect 10 as part of each document production"

14   (*id.* at ¶15).[13]  Perfect 10 may have had certain technical issues with some of those

15   files, but that does not change the indisputable fact that Giganews did provide text

16   information and load files for its document productions.  Likewise, Mr. Belichick's

---

[12]   *See, e.g.*, Dkt. 153 at 5:25 (claiming "declaration is demonstrably false").

[13]   In an effort to be helpful, Mr. Tran attempted to diagnose the purported
technical issue that Perfect 10's Melanie Poblete was experiencing with her
computer:  "Based on a review of the screenshots attached to the declaration of
Melanie Poblete, it appears that Ms. Poblete experienced errors because she was out
of disk space on Perfect 10's computer system, not because of the encryption."
Dkt. 260-4 at ¶22.  Based on his experience with computers and encryption,
Mr. Tran accurately stated his best assessment of what her problem appeared to be,
and the basis for that assessment—the limited set of screenshots that Ms. Poblete
chose to attach to her May 12, 2014 declaration (Dkt. 260-3, Ex. 2).  The windows
in the screenshots show hundreds of thousands of files and gigabytes of data, which
could be a problem on a computer without sufficient space.  Ms. Poblete's more
recent screenshots on July 10 (7/28/14 Poblete Decl., Ex. 2) do not show the state
of her computer system at the time of her earlier declaration.  In any event, whether
Mr. Tran correctly diagnosed the root cause of her problem from afar does not
change the fact that he accurately gave his assessment of what the problem
appeared to be.

June 26, 2014 declaration (Dkt. 337-1 at ¶2) accurately stated that Giganews's productions "typically contain associated text information that includes the text of the native file in a computer readable format."  Except for the instances where the native files contain no text or where there was some technical issue identified by Perfect 10, Giganews indeed included text files with its productions of the actual documents.  As with its previous charges of falsity, Perfect 10 here trumps up alleged minor issues in an attempt to inflame the case.

## IV.   CONCLUSIONS

### A.   Perfect 10's Conclusion

Giganews has completely disregarded the Court's Order.  It has neither provided Perfect 10 with the technical expertise (which they must possess) to decrypt their X-trace fields, nor has it advised Perfect 10 that it has the ability to match purported email addresses to the real names and identities of uploaders.  And Giganews still has not provided Perfect 10 with the text files needed to search approximately 421,000 pages of Giganews's approximately 486,000 page document production.

Giganews's complete failure to even attempt to comply with this Court's Order warrants sanctions pursuant to Fed. R. Civ. P. Rule 37(b).  Perfect 10 has been severely prejudiced by its inability to search at least 421,000 pages out of approximately 486,000 pages of Defendants' total production, and its inability to contact and/or depose many of the key witnesses in this case.  This Court should order Giganews to: a) provide Perfect 10 a disk which contains a complete set of text and image files corresponding to Defendants' productions to date, so that Perfect 10 may properly search those productions, b) provide the real names and addresses of the persons with the fictitious email addresses listed in Perfect 10's Interrogatories Nos. 1 and 2 and match each name to each purported email address, c) provide the real names and addresses of the persons who uploaded the material associated with the Message-IDs listed within Interrogatory No. 3, d) allow Perfect

10 to take an additional 30(b)(6) deposition of Giganews, and e) that Giganews be
required to pay for the cost of this Motion and that 30(b)(6) deposition.

At the very minimum Giganews should also be ordered to comply with the
Court's Order forthwith and reimburse Perfect 10 the $2,000 in costs and  fees that
it has been forced to incur to file the present Motion.  Davis Decl. ¶5.

## B.      Giganews's Conclusion

For all the reasons that Giganews explains above in detail, it has complied
with the Court's February 26 and June 2 orders.  The Court should therefore deny
Perfect 10's request for sanctions, costs, and fees in its entirety.  Furthermore,
because of Perfect 10's penchant for repeatedly filing "ill-considered" and
"meritless" sanctions motions, Giganews respectfully requests that the Court order
Perfect 10 to desist from filing any further motions for sanctions without leave of
Court, and order whatever other relief the Court considers appropriate to deter
Perfect 10 from abusing the Court's discovery dispute process.

1    Dated:  July 28, 2014               FENWICK & WEST, LLP

2

3                                        By  _/s/ Andrew P. Bridges_

4                                            Andrew P. Bridges
                                             Attorneys for Defendants GIGANEWS,
5                                            INC. and LIVEWIRE SERVICES, INC.

6

7    Dated:  July 28, 2014               PERFECT 10, INC.

8

9                                        By  _/s/ Lynell D. Davis_

10                                           Lynell D. Davis
                                             Attorney for Plaintiff PERFECT 10, INC.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**2:11-CV-07098-ABC-SH**
Joint Stipulation Re Perfect 10, Inc's Motion For Sanctions Pursuant To Fed. R. Civ. P 37(b)