1  Eric J. Benink, Esq., SBN 187434
   eric@kkbs-law.com
2  KRAUSE KALFAYAN BENINK & SLAVENS, LLP
   550 West C Street, Suite 530
3  San Diego, CA 92101
   P 619.232.0331 | F 619.232.4019
4
   Lynell D. Davis, Esq., SBN 271152
5  lynell@perfect10.com
   Natalie Locke, Esq., SBN 261363
6  natalie@perfect10.com
   PERFECT 10, INC.
7  11803 Norfield Court
   Los Angeles, CA 90077
8  P 310.476.0794 | F 310.476.8138
9  Attorneys for Plaintiff and Counter-defendant
   Perfect 10, Inc.
10
11              UNITED STATES DISTRICT COURT
12             CENTRAL DISTRICT OF CALIFORNIA
13  PERFECT 10, INC., a California       Case No.: 2:11-cv-07098-AB-SH
    corporation,
14                                       *Before Honorable André Birotte, Jr.*
                   Plaintiff,
15                                       **PLAINTIFF PERFECT 10, INC.'S**
            v.                           **NOTICE OF MOTION AND**
16                                       **MOTION FOR PARTIAL**
    GIGANEWS, INC., a Texas corporation; **SUMMARY JUDGMENT RE**
17  LIVEWIRE SERVICES, INC., a Nevada    **SUFFICIENCY OF SAMPLE DMCA**
    corporation; and DOES 1 through 100, **NOTICES**
18  inclusive,
                   Defendants.           *[Declarations of Dr. Norman Zada and*
19                                       *Lynell D. Davis submitted separately*
    ─────────────────────────────────    *herewith]*
20  GIGANEWS, INC., a Texas corporation;
    LIVEWIRE SERVICES, INC., a Nevada    Date:   November 10, 2014
21  corporation; and DOES 1 through 100, Time:   10:00 a.m.
    inclusive,                           Ctrm:   790 (Roybal)
22
                   Counter-claimants,    Demand for Jury Trial
23                                       Discovery Cut-Off: June 30, 2014
            v.                           Pretrial Conference: January 19, 2015
24                                       Trial Date: January 27, 2015
    PERFECT 10, INC., a California
25  corporation,
26                 Counter-defendant.
27
28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on November 10, 2014 at 10:00 a.m., or as soon thereafter as the motion may be heard, in the Courtroom of the Honorable Andre Birotte, Jr., Courtroom 790 of the Edward R. Roybal Federal Building and United States Courthouse, located at 255 East Temple Street, Los Angeles, California 90012-3332, Plaintiff Perfect 10, Inc. ("Perfect 10") shall and hereby does move this Court, pursuant to Rules 56(a) and 56(c) of the Federal Rules of Civil Procedure, for Partial Summary Judgment as follows:

1)      That each of five Perfect 10 notices that were emailed to Defendants Giganews, Inc. and Livewire Services, Inc. ("Defendants") under the Digital Millennium Copyright Act ("DMCA") (the "Emailed Sample Notices") are compliant with the DMCA's notification requirements, 17 U.S.C. § 512(c)(3)(A)(i–vi); and

2)      That Defendants are barred from challenging the sufficiency of DMCA notification compliance of any of the twenty notices that Perfect 10 faxed to Defendants which contained what Defendants insist upon in their DMCA notice requirements, namely, "Message-IDs."

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, all of the pleadings and other documents on file in this action, such additional pleadings, evidence and oral argument as may be presented, and the following pleadings submitted herewith:

1.      Declaration of Dr. Norman Zada in Support of Plaintiff Perfect 10, Inc.'s Motion for Partial Summary Judgment;

2.      Declaration of Lynell D. Davis in Support of Plaintiff Perfect 10, Inc.'s Motion for Partial Summary Judgment;

3.      The Separate Statement in Support of Plaintiff Perfect 10, Inc.'s Motion for Partial Summary Judgment; and

4.      [Proposed] Order Granting Plaintiff Perfect 10, Inc.'s Motion for Partial Summary Judgment.

## **STATEMENT OF COMPLIANCE WITH LOCAL RULE 7-3**

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on September 15, 2014.

Dated:  September 22, 2014          Respectfully submitted,

By: _____
Lynell D. Davis, Esq.
Attorney for Plaintiff Perfect 10, Inc.

## MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ...............................1

II.    RELEVANT FACTUAL BACKGROUND .........................................3

    A.    Giganews's Business.........................................................3

    B.    Livewire's Business .........................................................3

    C.    Perfect 10's Business .......................................................3

    D.    Downloading Perfect 10 Content Offered By Defendants .......................4

    E.    Giganews's DMCA Notice Requirements.....................................4

    E.    The Mimo Automatic Message-ID Extraction Feature ...........................5

III.   LEGAL STANDARDS APPLICABLE TO THE MOTION ...........................5

    A.    Standards for Granting Summary Judgment....................................5

    B.    The Requirements of a Compliant DMCA Notice ..............................6

IV.    EMAILED SAMPLE NOTICES ...............................................7

    A.    Sample Notice 1: Search on perfecttengallery.........................................8

        1.    Whether Or Not Search Results Change Is Inconsequential .........9

    B.    Sample Notice 2: Search on "your P10"......................................9

    C.    Sample Notice 3: Search on P10website .....................................10

    D.    Sample Notice 4: Search on Don Chu Luvitt > Your P10 2007.............11

    E.    Sample Notice 5: Search on Marketa Belonoha ....................................11

V.     FAXED NOTICES GIGANEWS REFUSED TO PROCESS..........................12

    A.    Sample Notice 6 (Faxed): Search on perfecttengallery .........................12

    B.    Sample Notice 7 (Faxed): Search on P10 2004 .................................13

    C.    Sample Notice 8 (Faxed): Search on "P10 2006"................................14

i                                          **2:11-cv-07098-AB-SH**

Plaintiff Perfect 10, Inc.'s Memorandum of Points and Authorities in Support of its Motion for
Partial Summary Judgment Re Sufficiency of DMCA Notices

|   | D. | Defendants Have No Basis For Not Processing Perfect 10's Faxed Notices ............................................................................... 14 |
|---|----|---|
| VI. | | DEFENDANTS HAVE NO BASIS TO REQUIRE LISTS OF MESSAGE-IDS AS DMCA NOTICES .............................................. 15 |
| | A. | Message IDs Are Unintelligible And Are Thus Not DMCA Compliant. ............................................................................. 15 |
| | B. | Message IDs May Not Be Available ............................................... 15 |
| | C. | Lists Of Message-IDs Are Prone To Human And Computer Error ....... 16 |
| | D. | Defendants Do Not Explain How To Find Message-IDs ..................... 16 |
| | E. | Message-IDs Are Extremely Burdensome To Cut And Paste By Hand ............................................................................ 16 |
| | F. | Defendants Should Have Done the Message-ID Extraction ................. 17 |
| | G. | There Is No Required Format For A DMCA Notice ........................... 17 |
| | H. | Perfect 10's Notices Are Clearly Superior To Lists Of Message-IDs .......................................................................... 19 |
| | | 1.  Message-Descriptions Better Identify Infringing Content ........... 19 |
| | | 2.  Message-IDs Are Not The Analogue Of URLs ......................... 20 |
| VI. | | OTHER USENET OPERATORS HAVE PROCESSED PERFECT 10'S NOTICES ........................................................... 20 |
| IX. | | CONCLUSION .......................................................................... 21 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ii                                                                                   2:11-cv-07098-AB-SH
Plaintiff Perfect 10, Inc.'s Memorandum of Points and Authorities in Support of its Motion for
Partial Summary Judgment Re Sufficiency of DMCA Notices

# TABLE OF AUTHORITIES

## Cases

*Allstate Ins. Co. v. Madan*, 889 F.Supp. 374 (C.D.Cal. 1995) ....................................... 6

*ALS Scan, Inc. v. RemarQ Communities, Inc.*, 239 F.3d 619
   (4th Cir. 2001) ..................................................................................... passim

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......................................... 6

*Buzayan v. City of Davis*, 2013 WL 687087 (E.D.Cal., Feb. 25, 2013) ..................... 6

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..................................................... 6

*Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001) ............................................ 6

*Perfect 10, Inc. v. CCBill, LLC,* 488 F.3d 1102 ................................................ 15

*Perfect 10, Inc. v. Yandex, N.V.*, 2013 WL 1899851 ......................................... 18

## Statutes

17 U.S.C. § 512 .................................................................................... passim

Fed.R.Civ.P. 56(a) ...................................................................................... 6

Fed.R.Civ.P. 56(c) ...................................................................................... 6

Fed.R.Civ.P. 56(g) ...................................................................................... 7

Plaintiff Perfect 10, Inc.'s Memorandum of Points and Authorities in Support of its Motion for
Partial Summary Judgment Re Sufficiency of DMCA Notices

# I.     INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants Giganews, Inc. ("Giganews") and Livewire Services, Inc. ("Livewire"), collectively ("Defendants") sell access to approximately *25,000 trillion* bytes of movies, TV series, songs, images, and other copyrighted works residing on Giganews's servers without payment to, or authorization from copyright holders. Defendants attempt to justify their obvious piracy by claiming that they are merely "providing access to the Usenet."  In fact, they are providing access to Giganews's servers, and are no different from any other copyright pirate.

Beginning on March 25, 2009, Plaintiff Perfect 10, Inc. ("Perfect 10") spent months creating and sending at least 335 notices to Giganews and/or Livewire under Title II of the Digital Millennium Copyright Act ("DMCA") (the "Online Copyright Infringement Liability Limitation Act"), 17 U.S.C. § 512(c) (3)(A)(i-vi). Perfect 10's most recent notices were particularly easy to process.  All Defendants needed to do was perform a specific search on a distinctive search term such as "perfecttengallery" and remove all resulting messages.  They could have done this in literally seconds. Nevertheless, Defendants have refused to process the vast preponderance of Perfect 10's notices, even though other Usenet providers have processed similar notices.

Defendants insist that Perfect 10 and other copyright holders provide them with DMCA notices in a particular format, specifically, lists of character strings similar to HdudnROJa72YB0nVnZ2dnUVZ_tzinZ2d@giganews.com, which Defendants call "Message-IDs."

Defendants' insistence on notices consisting of lists of Message-IDs is particularly unreasonable for at least eight separate reasons.  First, because Message-IDs are unintelligible character strings, they do not identify the copyrighted work infringed and thus are not DMCA compliant.  Second, Message-IDs may not be available.  Perfect 10 has found at least 900 images that could be downloaded from Defendants where no Message-ID was available.  Defendants cannot require that copyright holders send them something that does not exist.  Third, Defendants do not

explain how to find Message-IDs in their DMCA instructions. Their DMCA agent did even know how to find them during his deposition. Fourth, Message-IDs are prone to error. *More than 44% of the Message-IDs that Defendants produced to Perfect 10 in discovery had one or more errors.* Fifth, Message-IDs are extraordinarily burdensome to manually cut and paste into a DMCA notice. Sixth, lists of Message-IDs are substantially inferior to the notices that Perfect 10 has sent to Defendants. Seventh, other Usenet Operators have processed Perfect 10 notices which did not contain Message-IDs. Finally, there is no DMCA requirement to provide DMCA notices in a particular format, particularly when that format renders them incomprehensible.

Nevertheless, Perfect 10 sent to Defendants twenty notices in the format Defendants request. Defendants refused to process those Message-IDs, claiming they were illegible.

In this Motion, Perfect 10 seeks partial summary judgment that:

1) Each of five sample Perfect 10 DMCA notices attached to this Motion that were emailed to Defendants (the "Emailed Sample Notices"), substantially satisfy the DMCA notification requirements as listed in § 512(c)(3)(A)(i–vi). The Emailed Sample Notices were very easy to process – all Defendants needed to do was perform the recommended search and remove all resulting messages. This could have been done in seconds.

2) Defendants are barred from challenging the sufficiency of twenty DMCA notices which Perfect 10 faxed to Defendants which contained the lists of Message-IDs Defendants request, but which Defendants nevertheless refused to process.

Perfect 10 has selected three sample faxed notices which will be referred to as the "Sample Faxed Notices." The five Emailed Sample Notices and the three Faxed Sample Notices are collectively referred to as the "Sample Notices". Together, they cover most of the 19,409 distinct Perfect 10 images at issue in this case.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    Giganews's Business

Giganews owns and operates giganews.com – a site which offers 25,000 *trillion* bytes of content to its users.  Declaration of Dr. Norman Zada submitted herewith ("Zada Decl.") ¶ 6, Exh. 2, p. 6.  Giganews stores the content on its servers and makes the content available to its users for 2,227 days.  Zada Decl. ¶ 6, Exh. 2, p. 1. Giganews allows its users to download that content for a monthly fee of from $4.99 to $29.99, depending on the amount of material downloaded by the user and the speed of delivery.  Zada Decl. ¶ 6, Exh. 2, p. 4.  Giganews contends that it stores "messages" or "articles" rather than "content."  This is semantics.  Perfect 10 has downloaded its own copyrighted images directly from Defendants' sites without any textual messages.  Zada Decl. ¶ 6.

In exchange for paying a monthly fee, a user receives a Giganews username and password.  The user must also purchase a subscription to use a newsreader, such as the newsreader created by Giganews called "Mimo" or a third-party newsreader such as "Newsrover."  Zada Decl. ¶¶ 6, 9, Exh. 2, p. 5.  The newsreader allows the user to search through and download the content offered by Giganews.

### B.    Livewire's Business

Livewire contracts with Giganews to provide Livewire users with content that is stored on Giganews's Usenet servers.  Livewire owns and operates various sites selling such access, including usenet.net.  Zada Decl. ¶ 7, Exh. 3.

Giganews and Livewire have the same DMCA agent, Ronald Yokubaitis, the Co-CEO of Giganews.  Zada Decl. ¶ 7.

### C.    Perfect 10's Business

From 1997 to 2007, Perfect 10 published the popular magazine PERFECT 10, an arguably upscale version of Playboy featuring tasteful semi-nude photos of top natural models.  Perfect 10 is probably best known for the many appearances of its models on television and radio shows, its promotion of the London Sun/Perfect 10

1    search for England's most beautiful natural model, and its photos of top models, such

2    as Victoria's Secret and Sports Illustrated cover model Marisa Miller.  Perfect 10 was

3    forced to close its magazine in 2007 because of rampant infringement, but maintains

4    its website, perfect10.com.  Zada Decl. ¶ 4.  Perfect 10 currently offers more than

5    20,000 images on its website, perfect10.com, all of which it owns.  Subscribers may

6    access these images by paying a monthly fee of $25.95.  Zada Decl. ¶ 4.

7              **D.     Downloading Perfect 10 Content Offered By Defendants**

8              Perfect 10 has included a video demonstration in Exhibit 1 (the disk) to the

9    Zada Declaration, which shows how content may be downloaded using a membership

10   to Defendants' websites.  A search is performed on "Karolina Runosson," the name of

11   a Perfect 10 model, using the Giganews Mimo newsreader.  Messages appear, along

12   with the date the message was posted, the name of the poster, and other related

13   information, all of which will be referred to as the "Message-Description." Full-size

14   Perfect 10 images are downloaded, each with an identifying file name (also referred to

15   as an "image identifier"), such as "Karolina Runosson02.jpg."  The Image Identifier

16   can normally be searched on to find associated messages containing that same

17   infringing Perfect 10 image.  Zada Decl. ¶¶ 11-13, Exhs. 1, 4.

18             **E.     Giganews's DMCA Notice Requirements**

19             Giganews's published DMCA instructions require a list of Message-IDs.  A

20   Message-ID is an undecipherable character string such as Ot-dnen7MO3tpivUnZ2dn

21   UVZ8teWnZ2d@giganews.com that Giganews claims it needs to remove infringing

22   messages.  Zada Decl. ¶¶ 11-13, Exhs. 1, 4-5.  Giganews also accepts as a valid

23   DMCA notice, a list of Message-headers.  Zada Decl.  ¶ 15, Exh. 6, p. 5.  A Message-

24   header contains one or more Message-IDs, along with other information regarding the

25   infringing message.  On its website, Giganews does not explain how to find Message-

26   IDs or Message headers, let alone expeditiously.  Even Giganews's DMCA agent,

27   Ronald Yokubaitis, testified that he did not know how to find Message-IDs.

28   Declaration of Lynell D. Davis submitted herewith ("Davis Decl.") Exh. 3 (Deposition

Transcript of Ronald Yokubaitis ("R. Yokubaitis Depo.")) 91:12-24, 94:9-13, 194:22-195:9.  Giganews requires that the copyright holder state under penalty of perjury that the notice is accurate, which is not a requirement of the DMCA.  Zada Decl. ¶ 15, Exh. 6.; *see generally* 17 U.S.C. § 512(c).

### E.    The Mimo Automatic Message-ID Extraction Feature

Between March 25, 2009 and May 11, 2014, Perfect 10 spent months creating and sending to Giganews approximately 335 DMCA notices.  Zada Decl. ¶ 25.  Defendants have refused to process most of the notices because they contend that it was too burdensome for them to manually extract the Message-ID corresponding to each identified infringing message.  Davis Decl., Exh. 3 (R. Yokubaitis Depo.) at 41:10-43:9, 50:16-51:4.  However, on May 21, 2014, after Perfect 10 had sent to Defendants the last of its approximately 335 DMCA notices, Perfect 10 independently discovered that the Mimo newsreader has had an Automatic Message-ID extraction feature that would have allowed Defendants to highlight a group of messages and extract all of the associated Message-IDs into a separate text file in seconds.  Zada Decl. ¶¶ 17-24, Exhs. 1, 8-9.

On or about May 21, 2014, Perfect 10 also independently discovered that three other popular newsreaders – Newsrover, Newsbin, and Newsleecher – have similar features that allow a user to automatically extract Message-IDs.  Zada Decl. ¶¶ 17, 22, Exh. 1.

## III.    LEGAL STANDARDS APPLICABLE TO THE MOTION

### A.    Standards for Granting Summary Judgment

The Federal Rules of Civil Procedure provide for summary judgment when materials in the record, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  Rule 56 also allows a court to grant partial summary judgment on a part of a claim or defense.  *See* Fed.R.Civ.P. 56(a) ("A party may move for summary judgment, identifying each claim or defense – or the part of

each claim or defense – on which summary judgment is sought, and the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law"); *see also Buzayan v. City of Davis*, 2013 WL 687087, at *5 (E.D.Cal., Feb. 25, 2013); *Allstate Ins. Co. v. Madan*, 889 F.Supp. 374, 378-79 (C.D.Cal. 1995).  The same standard applies both to motions for summary judgment and partial summary judgment.  *See* Fed.R.Civ.P. 56(a), 56(c); *Buzayan,* 2013 WL 687087, at *5.  The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256 (1986).

Where the moving party has the burden of proof on an issue at trial, that party must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986).  On an issue as to which the non-moving party has the burden of proof at trial, such as an affirmative defense under the DMCA, the movant can prevail if there is an absence of evidence to support the nonmoving party's case.  *See id*.  Once the moving party meets its burden, the nonmoving party may not rest upon mere allegations or denials, but must present evidence sufficient to demonstrate that there is a genuine issue for trial. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001), *citing Celotex Corp*., 477 U.S. at 323-24.

If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact that is not genuinely in dispute and treating the fact as established in the case, including an item of damages or other relief.  Fed.R.Civ.P. 56(g).

## B.   The Requirements of a Compliant DMCA Notice

A compliant notice sent under the DMCA to an Internet Service Provider that hosts or stores content at the direction of a user, must be a written communication provided to the designated agent of that service provider that includes ***substantially*** the following:

(i) A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

(ii) Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site.

(iii) Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to **permit** the service provider to locate the material.

(iv) Information reasonably sufficient to permit the service provider to contact the complaining party, such as an address, telephone number, and, if available, an electronic mail address at which the complaining party may be contacted.

(v) A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.

(vi) A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

17 U.S.C. §512(c)(3)(A) (emphasis added).

## ARGUMENT

## IV.    EMAILED SAMPLE NOTICES

Each of the following five Emailed Sample Notices has essentially the same format.  They request that Defendants utilize a certain search term that leads to exclusively infringing Perfect 10 content and ask Defendants to remove all the messages that appear in response to that search.

### A.    Sample Notice 1: Search on perfecttengallery

Sample Notice 1 is attached as Exhibit 10 to the Zada Declaration. Highlighting has been added for the convenience of the Court.  There should be no dispute that the language on pages 1-2 of Sample Notice 1 substantially satisfies §§ 512(c)(3)(A)(i),(iv)-(vi) of the DMCA.  The notice provides an electronic signature (satisfying § 512(c)(3)(A)(i)); contact information (satisfying § 512(c)(3)(A)(iv)); and the language required in the statute at the bottom of page 1 to satisfy §§ 512(c)(3)(A)(v)-(vi).  *See* Zada Decl., ¶ 26, Exh. 10, p. 1.

Sample Notice 1 provides a representative sample of infringed images on pages 7-8 and pages 9-13.  This sample satisfies §512(c)(3)(A)(ii), which requires that the copyright holder identify a representative sample of the copyrighted works allegedly infringed  *See* Zada Decl., ¶ 26, Exh. 10, p. 7-8, 9-13.

There are essentially two requirements for §512(c)(3)(A)(iii). Sample Notice 1 identifies the material claimed to be infringing by stating that it consists of the messages returned upon doing the search on "perfecttengallery" in the newsgroup "alt.binaries.pictures.erotica.scanmaster."  Sample Notice 1 satisfies the second requirement, namely, to provide information reasonably sufficient to permit Defendants to locate the [infringing] material, by providing the search needed to locate the material, namely "perfecttengallery."  Although not required, the notice also provides Defendants with a sampling of the infringing messages on pages 3-6.  Zada Decl. ¶ 26, Exh. 10. The notice thus substantially satisfies § 512(c)(3)(A)(iii).

A two minute video (Video 2) is provided in Exhibit 1 (the disk) to the Zada Declaration, in a folder labelled "Video Demonstrations." This video shows how easily and rapidly Defendants could have processed Sample Notice 1.  The video shows that the recommended search on perfecttengallery using the Mimo newsreader takes at most four seconds.  The result is a single large file called "Bruno Torrebruno > Your PerfectTenGallery," which contains approximately 4,951 messages.  Each of those messages contains an infringing Perfect 10 image. Zada Decl. ¶ 23, Exhs. 1, 8,

p. 1.  The video then demonstrates how Defendants could have extracted the associated 4,951 Message-IDs into a text file in approximately 10 seconds, using the Mimo automatic Message-ID extraction feature.  Zada Decl. ¶¶ 19, 23, Exhs. 1, 8.  Perfect 10 has also provided in Exhibit 1 (the disk) another video (Video 5) which demonstrates how Defendants could have processed the Sample Notice 1 very rapidly using the Newsrover newsreader as well.  Zada Decl. ¶ 22, Exh. 1.

### 1.   Whether Or Not Search Results Change Is Inconsequential

Defendants will argue that this notice does not identify the infringing content because search results on "perfecttengallery" may change between the time Perfect 10 conducts the search and the time Defendants are required to process the notice.  This argument should be rejected for several reasons.

First, the single large "Bruno Torrebruno > Your PerfectTenGallery" file that is returned on that search was uploaded on September 25, 2008.  Zada Decl. ¶ 23, Exh. 8.  Defendants have provided no evidence that search result has changed since.

Second, had Defendants processed this notice when it was received, the chance that the search results on a unique term such as "perfecttengallery" would change in a single day would be remote.

Most importantly, under the DMCA, Defendants are protected from removing materials as a result of an overbroad or erroneous notice.  *See ALS Scan, Inc. v. RemarQ Communities*, *Inc*., 239 F.3d 619, 625 (4th Cir. 2001). ("To the extent that ALS Scan's claims about infringing materials prove to be false, RemarQ has remedies for any injury it suffers as a result of removing or disabling noninfringing material. See 17 U.S.C. § 512(f), (g).")

### B.   Sample Notice 2: Search on "your P10"

Sample Notice 2 is attached as Exhibit 11 to the Zada Declaration.  It has the same language as Sample Notice 1 on pages 1-2 sufficient to satisfy requirements §512(c)(3)(A)(i), (iv)-(vi), as well as a representative sample of the infringed images to satisfy §512(c)(3)(A)(ii).  Zada Decl. ¶ 28, Exh. 11.

A two minute video demonstration (Video 2) is provided in Exhibit 1 (the disk) to the Zada Declaration, which shows how easily and rapidly Defendant could have processed Sample Notice 2.  The video shows that the recommended search on "Your P10" using the Mimo newsreader takes at most four seconds.  The result is seven large files, whose Message Titles all begin with "Bruno Torrebruno > Your P10 …."  Each file contains exclusively Perfect 10 content.  The video then demonstrates how more than 3,000 Message-IDs associated with those seven files could have been extracted using the Mimo newsreader in approximately ten seconds.  Zada Decl. ¶¶ 19, 23, 28, Exhs. 1, 8, 11.   Processing 3,488 infringing images in fifteen seconds is extraordinarily fast by DMCA standards.  Zada Decl. ¶¶ 27, 44, Exh. 26.  Perfect 10 has also provided in Exhibit 1 (the disk) another video (Video 6) which demonstrates how Defendants could have processed the notice very rapidly using the Newsrover newsreader as well.  Zada Decl. ¶ 22, Exh. 1.

Sample Notice 2 complies with the DMCA notification standards for the same reasons as Sample Notice 1.  It satisfies the statutory requirements and could have been processed in literally seconds.

## C.     Sample Notice 3: Search on P10website

Sample Notice 3 is attached as Exhibit 12 to the Zada Declaration.  It is in the same format as Sample Notices 1 and 2.  A one minute video demonstration (Video 3) is provided in Exhibit 1 (the disk) to the Zada Declaration, which shows how easily and rapidly Defendant could have processed Sample Notice 3.  The video shows that the recommended search on "P10website" using the Mimo newsreader takes at most two seconds.  The result is three large files, each containing exclusively Perfect 10 content, whose Message Titles all begin with "P10website…"  The video then demonstrates how approximately 2,195 Message-IDs associated with those three files could have been extracted using the Mimo newsreader in approximately ten seconds.  Zada Decl. ¶¶ 20, 29, Exhs. 1, 12.  Perfect 10 has also provided in Exhibit 1 (the disk) another video (Video 7) which demonstrates how Defendants could have processed

the notice very rapidly using the Newsrover newsreader as well.  Zada Decl. ¶ 22, Exh. 1.

Sample Notice 3 is substantially compliant with §§ 512(c)(3)(A)(i)-(vi) for the same reasons as Sample Notices 1 and 2.

### D.    Sample Notice 4: Search on Don Chu Luvitt > Your P10 2007

Sample Notice 4 is attached as Exhibit 13 to the Zada Declaration.  It is similar in format to Sample Notices 1-3.  A one minute video demonstration (Video 8) is provided in Exhibit 1 (the disk) to the Zada Declaration, which shows how easily and rapidly Defendant could have processed Sample Notice 4.  The video shows that the recommended search on "Your P10 2007" using the Newsrover newsreader takes at most four seconds.  The result is a long list of messages, all of which contain the term "Your P10 2007" in their Message-Titles.  In the video, the resulting 1200 Messages are all highlighted, and then the Newsrover automatic Message-Header extraction feature is used to extract the full Message-Headers for all of those messages into a text file.  Zada Decl. ¶ 22, 30, Exhs. 1, 13.

Sample Notice 4 is compliant with §§ 512(c)(3)(A)(i)-(vi) for the same reasons as Sample Notices 1-3.

### E.    Sample Notice 5: Search on Marketa Belonoha

Sample Notice 5 is attached as Exhibit 14 to the Zada Declaration.  It illustrates a common problem with attempting to locate Message-IDs – they may not be available to the copyright holder.  See for example, Zada Decl. ¶ 16, Exh. 7.  Page 3 of the notice shows the result of a search on the term in the Mimo search bar, which was "Marketa Belonoha Here I am."  A single message appeared, the title of which begins with "AAA presents #0507…"  That file is a 53 MB .zip file, which strongly suggests that it contains multiple messages containing multiple images.  Zada Decl. ¶ 31, Exh. 14.  When Perfect 10 clicked on the message to obtain the associated Message-ID, it obtained an error "Header Failure: Failed loading headers from server." Zada Decl. ¶ 31, Exh. 14, p. 3.  In other words, a Message-ID was not

available and could not be provided to Giganews.  However, Perfect 10 was able to download from the .zip file, the six images shown on pages 4 and 5 of the notice, in different sizes.  Zada Decl. ¶ 31, Exh. 14.  In this situation, Defendants cannot possibly insist on Message-IDs when the Mimo newsreader will not provide them. Pages 6, 9, and 12 of Exhibit 14 provide other instances of this same problem.  *Id.* Sample Notice 5 is compliant with §§ 512(c)(3)(A)(i)-(vi) because it provides information sufficient to locate the infringing messages, which are shown on pages 3, 6, 9, and 12, namely, it recommends the searches needed to locate those messages. How Defendants would have then blocked those messages is up to them.

## V.    FAXED NOTICES GIGANEWS REFUSED TO PROCESS

Despite the obvious problems with Message-IDs and Perfect 10's continuing position that Message-IDs are not required, between April 13, 2014 and April 17, 2014, Perfect 10 faxed to Defendants twenty DMCA notices, which included 542 Message-IDs.  The notices had additional information which made them more likely to be DMCA compliant than just the list of Message-IDs that Defendants require. Specifically, they included a recommended search term that led exclusively to messages which infringed Perfect 10's copyrights.  Zada Decl. ¶ 32.  Nevertheless, Defendants still refused to process the Message-IDs identified in those notices, claiming that the Message-IDs were illegible.  Zada Decl. ¶ 32, Exhs. 15-16.

For purposes of this motion, Perfect 10 seeks a finding that Defendants are barred from challenging the sufficiency of any of the twenty faxed notices which Perfect 10 provided to Defendants, because those notices satisfied Defendants' stated DMCA requirements.  The following three Sample Faxed Notices are representative of the other seventeen faxed notices that are contained in Exhibit 1 (the disk) to the Zada Declaration.

### A.    Sample Notice 6 (Faxed): Search on perfecttengallery

Sample Notice 6 is attached as Exhibit 17 to the Zada Declaration.  The notice asked Defendants to perform a Mimo default search (across all newsgroups) on

"perfecttengallery" and then remove all resulting messages.  In addition, the notice provided a number of Message-IDs which Defendants refused to block, claiming they were illegible.  Perfect 10 has included video 9 (a one minute video) in Exhibit 1 (the disk) attached to the Zada Declaration to show how Defendants could have rapidly found the Message-IDs identified in this notice even if they were in fact illegible as Defendants claim.  The video begins by doing the recommended search on Perfecttengallery, using the Mimo default search.  The results are then ordered alphabetically, and a few of the same messages identified in the notice are rapidly found and clicked on to obtain their Message-IDs, which are then pasted into a text file.  Zada Decl. ¶ 33, Exhs. 1, 17.

Because the Mimo default search on "perfecttengallery" returns results that are exclusively from the newsgroup, alt.binaries.pictures.erotica.scanmaster, Defendants could have alternatively simply performed the recommended search on "perfecttengallery" in the newsgroup "alt.binaries.pictures.erotica.scanmaster," and used either the Mimo's automatic Message-ID extraction feature or Newsrover's automatic full Message-Header extraction feature to remove all of the approximately 4,951 infringing messages, as explained in Section IV.A above regarding Sample Notice 1.

### B.     Sample Notice 7 (Faxed): Search on P10 2004

Sample Notice 7 is attached as Exhibit 18 to the Zada Declaration.  The notice asked Defendents to perform a Mimo default search on "P10 2004" and then remove all resulting messages.  All of the Message-IDs identified in the notice are from the newsgroup alt.binaries.pictures.diva.  If Defendants were truly unable to decipher the Message-IDs identified in Sample Notice 7, they could have found those Message-IDs in the same fashion as described for Sample Notice 6.  To find the identified Message-ID on page 3 of the notice, they could have performed the recommended search for "P10 2004," then ordered the results alphabetically, or by the size, to quickly find the message "P10_2004.part30.rar."  If desired, they could have then clicked on that

1     Message to obtain the associated Message-IDs.  Zada Decl. ¶ 34, Exh. 18.

2        Alternatively, Defendants could have removed thousands of Message-IDs in

3 seconds using the Mimo automatic Message-ID extraction feature in a fashion similar

4 to that explained for Sample Notice 6.  Perfect has included a Video 4 in Exhibit 1

5 (the disk) to demonstrate this process.

6       **C.**     **Sample Notice 8 (Faxed): Search on "P10 2006"**

7        Sample Notice 8 is attached as Exhibit 19 to the Zada Declaration.  If

8 Defendants were unable to decipher the Message-IDs identified in this notice, they

9 could have found the Message-IDs in the same manner as described for Sample

10 Notices 6 and 7 above.  In fact, Defendants could have found all 542 Message-IDs

11 identified by the twenty faxed notices which Perfect 10 provided to Defendants in the

12 same fashion.  Zada Decl. ¶¶ 33-36, Exhs. 1, 17-18.

13       **D.**     **Defendants Have No Basis For Not Processing Perfect 10's Faxed**

14            **Notices**

15        To the extent that Defendants intend to argue that they did not process the

16 Message-IDs solely because they were illegible, that argument should fail for at least

17 three separate reasons.  First, under the DMCA, Defendants must be able to process

18 notices sent by fax, mail, or email.  *See Perfect 10, Inc. v. CCBill, LLC,* 488 F.3d

19 1102, 1109, (holding that in order to be eligible for DMCA safe harbor, Defendants

20 must have a "procedure for dealing with DMCA-compliant notifications…")

21 Furthermore, the fax machine that Perfect 10 used is a business-grade machine that is

22 highly recommended.  The quality of faxes from that machine have never been an

23 issue before.  Zada Decl. ¶ 32, Exh. 16.

24        Second, Defendants were provided with the original notices in electronic format

25 in Perfect 10's document productions (note the Bates numbers affixed to each page of

26 the Sample Faxed Notices), yet still have not processed them.

27        Finally, even if Defendants were unable to read any of the 542 Message-IDs at

28 issue (which was not the case), they were still provided with information sufficient to

14        **2:11-cv-07098-AB-SH**

Plaintiff Perfect 10, Inc.'s Memorandum of Points and Authorities in Support of its Motion for
Partial Summary Judgment Re Sufficiency of DMCA Notices

locate the infringing material as well as the Message-IDs, as explained in Sections

V.A, V.B., and V.C above.

## VI.    DEFENDANTS HAVE NO BASIS TO REQUIRE LISTS OF MESSAGE-IDS AS DMCA NOTICES

Any argument that copyright holders should be required to provide lists of

Message-IDs as DMCA notices should fail for at least eight different reasons.

### A.    Message IDs Are Unintelligible And Are Thus Not DMCA Compliant.

A Message-ID, standing alone, such as beidnZ1rdsfZ-kTVnZ2dnUV, is not

understandable and does not identify the infringed copyrighted work.  Consequently it

does not satisfy DMCA notification requirement §512(c)(3)(A)(ii), which requires an

identification of the copyrighted works allegedly infringed.  Giganews's DMCA

agent and its co-CEO Ronald Yokubaitis has described a list of Message-IDs as

"gibberish."  Davis Decl. Exh. 3 (R. Yokubaitis Depo.) 141:23-144:20. Juries,

courts, copyright holders, and other third parties cannot determine anything from a

Message-ID.  They cannot tell what was infringed, when the infringement occurred, or

that Defendants were ever even involved in the infringement.  Zada Decl. ¶¶ 11-14,

Exhs. 1, 4-5.  Copyright holders cannot be required to create notices they cannot

understand, when they are required to state that the notice is accurate.

§512(c)(3)(A)(vi).

### B.    Message IDs May Not Be Available

Message-IDs may not be available.  Perfect 10 has found over 900 Perfect

10 images that could be downloaded, for which the Message-Description was

available but not the Message-ID.  Zada Decl. ¶¶ 16, 31, Exhs. 1, 7, 14.

Defendants cannot require copyright holders to provide something that does not

exist.  Furthermore, it is frequently the case that Perfect 10 images are

intermixed with third party images in a large .zip file.  In that instance, it is not

possible to determine which Message-ID corresponds to which Perfect 10 image.

In that instance, the copyright holder has no choice but to provide the Message-Description along with a copy of the infringing images with their file names/image identifiers.  Zada Decl. ¶ 14.

### C.  Lists Of Message-IDs Are Prone To Human And Computer Error

Message-IDs are extraordinarily prone to both human and computer error. The i's and l's and 1's in Message-IDs are very frequently misread by computers (as well as O's and 0's and other similar characters), rendering the Message-ID useless.  Giganews has produced to Perfect 10 in discovery 2,494,344 Message-IDs in machine readable text that Perfect 10 has examined.  Of those, approximately, ***44.7%, or 1,115,040 Message-IDs, had obvious errors***.  Zada Decl.  ¶ 46, Exh. 1.  These shocking numbers strongly suggest that Message-IDs are completely unusable.  Zada Decl. ¶ 46, Exh. 1.

### D.  Defendants Do Not Explain How To Find Message-IDs

Defendants' DMCA instructions do not explain how to find Message-IDs, yet alone expeditiously.  There is no mention in Defendants' DMCA instructions of the Mimo automatic Message-ID extraction feature.  Zada Decl. ¶ 15, Exh. 6. Defendants' DMCA agent did not even know how to find Message-IDs.  Davis Decl. Exh. 3, (R. Yokubaitis Depo.) 91:12-24, 94:9-13, 194:22-195:9. Copyright holders typically download content without ever encountering Message-IDs.  Zada Decl. ¶ 15, Exh. 1.  Under the circumstances, Defendants cannot reasonably insist on Message-IDs, as the average copyright holder cannot be expected to find them, let alone know how to rapidly extract them.

### E.  Message-IDs Are Extremely Burdensome To Cut And Paste By Hand

Message-IDs are extremely burdensome to cut and paste by hand.  It would have taken Perfect 10 months to cut and paste the tens of thousands of Message-IDs corresponding to approximately 61,000 copies of Perfect 10 images infringed by Defendants.  Zada Decl. ¶ 15, Exh. 6.  Furthermore, because

Defendants do not issue cancel commands (requests that other Usenet providers remove the same infringing message) Perfect 10 would have to create a separate set of DMCA notices (each of which would be different) for each of potentially hundreds of different Usenet operators to remove all of its content from the Internet.  Zada Decl. ¶ 48.

### F.   Defendants Should Have Done the Message-ID Extraction

To the extent that Defendants suggest that Perfect 10 should have done the Message-ID extraction itself, that argument is unreasonable for multiple reasons. First, Perfect 10 was not aware of the Mimo automatic Message-ID extraction feature while it was creating and sending the approximately 335 DMCA notices it sent to Defendants.  Defendants failed to notify Perfect 10 (or any other copyright holders) of such a feature.  Zada Decl. ¶¶ 15, 17, Exh. 6.  Because the extraction of thousands of Message-IDs by hand would take months, Defendants cannot possibly claim that Perfect 10 should have performed such a burdensome task when Defendants knew how to do it in seconds.

Furthermore, because Message-IDs are so prone to error, even if copyright holders were told how to rapidly extract Message-IDs, there would still be no logical reason for Defendants to insist that copyright holders do the Message-ID extraction themselves, and then send the resulting list of Message-IDs to Defendants, who would then have to convert the copyright holder's communication into machine readable text.  That is simply a prescription for error.  See "Garbled Message-ID" folder in Exhibit 1 to the Zada Declaration, which contains examples of more than 1,115,040 garbled Message-IDs produced by Defendants to Perfect 10 in discovery.  Such errors would be completely eliminated if Defendants performed the Message-ID extraction themselves.

### G.   There Is No Required Format For A DMCA Notice

"Section 512(c)(3) does not require any particular format for DMCA notices." *Perfect 10, Inc. v. Yandex, N.V.*, 2013 WL 1899851, at *5 ("*Yandex*").

In fact, the notice that the *Yandex* court found to be compliant under the DMCA a Perfect 10 DMCA notice that attached copies of infringing images and authorized images, much in the same fashion as the notices sent by Perfect 10 to Defendants at issue here.  Zada Decl. ¶ 42, Exh. 24.

What constitutes a proper notice to a Usenet provider was considered in *ALS Scan, Inc. v. RemarQ Communities, Inc*., 239 F.3d 619 (4th Cir. 2001). There plaintiff ALS had advised Usenet provider defendant RemarQ that:

> Both of these newsgroups ["alt.als" and "alt.binaries.pictures.erotica.als"] were created for the sole purpose of violating our Federally filed Copyrights and Tradename. These newsgroups contain virtually all Federally Copyrighted images.... Your servers provide access to these illegally posted images and enable the illegal transmission of these images across state lines.

*Id*. at 620.  RemarQ refused to take any action, but claimed that it would if ALS identified individual items with "sufficient specificity."  *Id*. at 620.  After it was sued, RemarQ argued that "ALS Scan never provided it with a 'representative list' of the infringing photographs, as required by § 512(c)(3)(A)(ii), nor did it identify those photographs with sufficient detail to enable RemarQ to locate and disable them, as required by § 512(c)(3)(A)(iii). RemarQ buttresses its contention with the observation that not all materials at the offending sites contained material to which ALS Scan held the copyrights." *Id*. at 624.

Unpersuaded, the Fourth Circuit held, "[w]e believe that with this information, ALS Scan substantially complied with the notification requirement of providing a representative list of infringing material as well as information reasonably sufficient to enable RemarQ to locate the infringing material." *Id*. at 625.  In other words, under *ALS Scan*, it was sufficient for the Plaintiff to identify a collection of messages, the vast preponderance of which infringed

Plaintiff Perfect 10, Inc.'s Memorandum of Points and Authorities in Support of its Motion for
Partial Summary Judgment Re Sufficiency of DMCA Notices

1  Plaintiff's copyrights.  It was not necessary for Plaintiff to identify each specific

2  infringing message, let alone the Message-ID for each such message.

### H.  Perfect 10's Notices Are Clearly Superior To Lists Of Message-IDs

4  The Sample Notices provide representative samples of infringed images, along

5  with a recommended search term that makes locating and removing infringing

6  messages extremely easy for service providers.  Perfect 10's notices prove that

7  Defendants were involved in the infringement, and unlike lists of Message-IDs, are

8  self-contained.  Lists of Message-IDs have none of these features.

### 1.  Message-Descriptions Better Identify Infringing Content

10  Perfect 10's notices provide lists of Message-Descriptions, which are far

11  superior to a list of Message-IDs.  It is clearly more efficient to identify a single large

12  .zip file by its Message-Description, rather than by a list of thousands of

13  incomprehensible Message-IDs.  Zada Decl. ¶ 23, Exh. 8.  Furthermore, from the

14  Message-Description one can generally find the associated Message-ID(s), but the

15  converse is not true.  Zada Decl. ¶¶ 11-14, Exhs. 1, 4.  In fact, the Message-

16  Description is effectively the Message.  Zada Decl. ¶ 12.  There is no reason to require

17  a Message-ID to find the Message that has already been identified by the Message

18  Description.

19  Message Titles are much less prone to errors because they typically contain

20  terms such as "perfecttengallery" that can be understood.  If there is an error in a

21  Message-Title, it can be readily spotted.  However, errors in Message-IDs typically

22  cannot be spotted because Message-IDs are incomprehensible.

23  Perfect 10's notices are demonstrably more detailed and complete than the

24  notice found compliant in *ALS Scan,* 239 F.3d 619.  Instead of merely pointing to a

25  particular newsgroup, and stating that *almost all* of the images in that newsgroup are

26  infringing, as plaintiff did in *ALS Scan*, Perfect 10 actually provided Defendants with

27  a recommended search that resulted in 100% infringing Perfect 10 images, normally

28  contained in a single large .zip file.  Zada Decl. ¶¶ 18-24, Exhs. 1, 8-9.  Furthermore,

Perfect 10 provided copies of a representative sample of the infringed images rather than just pointing Defendants to its website, as plaintiff did in *ALS Scan*.

### 2.  Message-IDs Are Not The Analogue Of URLs

To the extent that Defendants will attempt to argue that Message-IDs are the analogue of URLs, that is not the case.  And unlike URLs, Message-IDs cannot be used by third-parties to locate the associated message.  Philip Molter, Giganews's Chief Technical Officer has conceded that point.  Davis Decl. Exh. 1 (Molter Depo.) 151:3-152:5; Zada Decl. ¶¶ 11-13, Exhs. 1, 4.  The analogue of a URL in the context of the Usenet, if there is one, is the Message Description.  The Message Description also uniquely identifies the associated Message, and unlike the Message-ID, can be searched on to locate the infringing message.  In fact, the Message-Description is essentially the message.  Zada Decl. ¶¶ 11-13, Exhs. 1, 4.

## VI.  OTHER USENET OPERATORS HAVE PROCESSED PERFECT 10'S NOTICES

Any suggestion by Defendants that they were not given information reasonably sufficient to permit them to locate the infringing material is further belied by the fact that at least four other Usenet operators have processed DMCA notices sent by Perfect 10 that were less detailed than those sent to Defendants.  Zada Decl. ¶¶ 37-40, Exhs. 20-23.   If those notices permitted those operators to locate the infringing material then they must have permitted Defendants to locate the infringing material.  Moreover, Defendants themselves have processed 12 of Perfect 10's notices, but have refused to fully process any others.  Zada Decl. ¶ 41.

For example, at 4 p.m. on April 10, 2012, Perfect 10 sent a DMCA notice to astraweb.com which merely included copies of seven infringing Perfect 10 images, along with their File Names/Image Identifiers below each image, without Message-IDs.  Seven hours later, Perfect 10 received an email from astraweb.com stating that it had blocked 37 Message-IDs, based on that notice.  Zada Decl. ¶ 37, Exh. 20.

That same day, Perfect 10 sent a similar notice to the host of the Usenet site

newscene.com, which included only copies of the infringing images with their File Names/Image Identifiers, without Message-IDs.  Ten days later, Perfect 10 received an email which stated, "We have blocked the Message-IDs associated with the image identifiers you provided."  Zada Decl. ¶ 39, Exh. 22.

To the extent that Defendants will contend that Perfect 10 routinely issues deficient DMCA notices, at least 20 other Internet Service Providers, including Yahoo, Facebook, Akamai, and GoDaddy, have processed Perfect 10's non-Usenet notices.  Zada Decl. ¶¶ 43-45, Exhs. 25-26

The fact that four other Usenet hosts or operators were able to process notices without Message-IDs, and that Defendants have also processed a few such notices, provides convincing evidence that Perfect 10's Sample Notices provided Defendants with information reasonably sufficient to permit them to locate the infringing material.

## IX.    CONCLUSION

For all of the foregoing reasons, Perfect 10 respectfully requests that this Court grant Perfect 10's proposed order.

Dated: September 22, 2014                    Respectfully submitted,

                                By: _____
                                    Lynell D. Davis, Esq.
                                    Attorney for Plaintiff Perfect 10, Inc.