ANDREW P. BRIDGES (CSB No. 122761)
abridges@fenwick.com
ILANA RUBEL (CSB. No. 221517)
irubel@fenwick.com
TODD R. GREGORIAN (CSB No. 236096)
tgregorian@fenwick.com
KATHLEEN LU (CSB No. 267032)
klu@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:  (415) 875-2300
Facsimile:   (415) 281-1350

Attorneys for Defendants
GIGANEWS, INC., and
LIVEWIRE SERVICES, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| PERFECT 10, INC., a California corporation, | Case No.: 11-cv-07098-AB (SHx) |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS GIGANEWS, INC. AND LIVEWIRE SERVICES, INC.'S _DAUBERT_ MOTION TO EXCLUDE EXPERT TESTIMONY OF JUSTIN DOUGLAS TYGAR PURSUANT TO FEDERAL RULE OF EVIDENCE 702** |
| v. | |
| GIGANEWS, INC., a Texas Corporation; LIVEWIRE SERVICES, INC., a Nevada corporation; and DOES 1 through 100, inclusive, | |
| Defendants. | Date:          October 27, 2014<br>Time:          10:00 a.m.<br>Courtroom:  790 Roybal<br>Judge:        Hon. André Birotte |
| GIGANEWS, INC., a Texas Corporation; LIVEWIRE SERVICES, INC., a Nevada Corporation, | |
| Counterclaimants, | Discovery Cut-off:   June 30, 2014<br>Pretrial Conference: January 19, 2015<br>Trial Date:             January 27, 2015 |
| v. | |
| PERFECT 10, INC., a California Corporation, | |
| Counterdefendant. | |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................... 1

II.   LEGAL STANDARD ............................................................................... 1

III.  ARGUMENT ............................................................................................ 2

    A.   The Court Should Exclude All Opinions by Mr. Tygar that Exceed the Scope of His Expertise. ......................................................... 2

        1.   Mr. Tygar Lacks Expertise for Any of His Opinions About the Incidence of Infringement on Usenet. ........................ 2

        2.   Mr. Tygar Has No Basis for His Opinions About Measures Giganews Might Take to Reduce Potential Infringement. .................................................................................. 5

IV.   CONCLUSION ......................................................................................... 9

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bourjaily v. United States*,
483 U.S. 171 (1987) ........................................................................ 1

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993) ........................................................................ 1

*Gable v. NBC*,
727 F. Supp. 2d 815 (C.D. Cal. 2010), *aff'd*, 438 F. App'x 587
(9th Cir. 2011) ............................................................................... 2

*In re Canvas Specialty, Inc.*,
261 B.R. 12 (Bankr. C.D. Cal. 2001) .............................................. 2

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) .................................................................... 1, 2

*United States v. Hayat*,
2:05-CR-240-GEB, 2007 WL 1454280 (E.D. Cal. May 17, 2007),
*aff'd*, 710 F.3d 875 (9th Cir. 2013) .................................................. 8

*United States v. Vallejo*,
237 F.3d 1008, *opinion amended on denial of reh'g*, 246 F.3d 1150
(9th Cir. 2001) ............................................................................... 3

*Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*,
254 F.3d 706 (8th Cir. 2001) ........................................................ 2, 8

**OTHER AUTHORITIES**

Fed. R. Evid. 403 ............................................................................... 4

Fed. R. Evid. 702 ........................................................................... 1, 2

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## I.      INTRODUCTION

The reports of Perfect 10, Inc.'s expert, Justin Douglas Tygar, contain opinions that far exceed the scope of his expertise.  Though qualified only as a computer scientist, Mr. Tygar provides extensive opinions about both the incidence of infringement on Usenet and measures that Defendant Giganews, Inc. could theoretically implement in order to reduce potential infringement.  By Mr. Tygar's own admission, these additional opinions lack a reliable basis either in his expertise or in his analysis.  Mr. Tygar has no special expertise in identifying online infringements.  Further, Mr. Tygar has virtually no server-side experience with Usenet.  Rather, his familiarity with Usenet is largely limited to his experiences *as a user*, and the principal part of that experience occurred decades ago.

Despite these conspicuous deficiencies, Perfect 10 nevertheless uses Mr. Tygar's expert reports as a Trojan horse, attempting to leverage his expertise in one field as an improper vehicle for offering inadmissible opinions in many others.  Accordingly, Defendants Giganews and Livewire Services, Inc. respectfully ask this Court to exclude all opinions by Mr. Tygar that exceed the scope of his expertise as a computer scientist.

## II.     LEGAL STANDARD

Under Rule 702, a witness may render expert opinions or proffer expert testimony if qualified "by knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  Pursuant to its "gatekeeping role" in admitting expert testimony, trial courts must ensure that any expert opinions advanced rest upon a reliable basis.  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596-97 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (applying the requirements of *Daubert* to all expert testimony).  The party seeking admission of expert testimony bears the burden of establishing admissibility.  *See Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987).

Testimony that exceeds the scope of an expert's qualifications is not reliable. *See, e.g.*, *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001) ("[A] district court must continue to perform its gatekeeping role by ensuring that the actual testimony does not exceed the scope of the expert's expertise, which if not done can render expert testimony unreliable under Rule 702, *Kumho Tire*, and related precedents."). In other words, "[i]t is not enough that the proposed expert have expertise in an area of knowledge." *In re Canvas Specialty, Inc.*, 261 B.R. 12, 19 (Bankr. C.D. Cal. 2001). Rather, "[t]he expertise must be *relevant to the determination of the facts in issue*." *Id.* (emphasis added); *see also Gable v. NBC*, 727 F. Supp. 2d 815, 835-36 (C.D. Cal. 2010) (excluding testimony by copyright expert about substantial similarity, because "his legal expertise does not qualify him as a literary expert" capable of rendering such an opinion), *aff'd*, 438 F. App'x 587 (9th Cir. 2011). Accordingly, the trial court should exclude such opinions.

## III.   ARGUMENT

### A.   The Court Should Exclude All Opinions by Mr. Tygar that Exceed the Scope of His Expertise.

#### 1.   Mr. Tygar Lacks Expertise for Any of His Opinions About the Incidence of Infringement on Usenet.

Defendants do not contest Mr. Tygar's credentials as a computer scientist. But Perfect 10 attempts to introduce several opinions that reach far beyond the reasonable scope of Mr. Tygar's expertise. In particular, Mr. Tygar's expert reports include a number of opinions about the incidence of copyright infringement on Usenet, even though Mr. Tygar lacks any pertinent qualifications to make such a judgment. *See* Declaration of Joseph S. Belichick ("Belichick Decl."), filed concurrently herewith, at ¶ 2, Ex. 1 [July 21, 2014 Opening Expert Report of J. Douglas Tygar ("Tygar Opening Report")] at ¶¶ 20(a), 22, 24-26, 31-34; ¶ 3, Ex. 2 [August 4, 2014 Opposition Expert Report of J. Douglas Tygar ("Tygar Opposition

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Report")] at ¶¶ 7(c), 27; ¶ 4, Ex. 3 [August 18, 2014 Rebuttal Expert Report of J. Douglas Tygar ("Tygar Rebuttal Report")] at ¶¶ 29, 32-33.  The Court should exclude all efforts by Perfect 10 to advance these additional, unsupported opinions through Mr. Tygar.

Relying on Mr. Tygar's testimony, Perfect 10 attempts to cast Usenet as an environment containing "stunning amounts of binary files containing copyright protected material (with no indication that they are being legally distributed under a license)."  Belichick Decl. at ¶ 2, Ex. 1 [Tygar Opening Report] at ¶ 26.  But Mr. Tygar acknowledges that, under the standard Usenet protocol, there is no indicator to convey whether a Usenet poster has rights to transmit the material in a particular message.  Belichick Decl. at ¶ 5, Ex. 4 [Transcript of August 21, 2014 Expert Deposition of J. Douglas Tygar ("Tygar Expert Depo.")] at 92:6-11.  Furthermore, Mr. Tygar admits that he lacks any special legal expertise or training to determine whether any particular material on Usenet is infringing.  *Id*. at 94:7-96:3, 96:12-97:22, 126:15-127:2, 140:3-141:5, 225:21-226:9; *see also id.* at ¶ 4, Ex. 3 [Tygar Rebuttal Report] at ¶ 23 ("I am not a lawyer or a copyright expert, and I am not in a position to determine rights.").  Nor does Mr. Tygar have expertise in licensing relationships or copyright law more broadly.  Belichick Decl. at ¶ 5, Ex. 4 [Tygar Expert Depo.] at 129:18-22.  And Mr. Tygar admittedly has no idea what proportion of pornographic material on Usenet is posted by copyright owners of the material in question.  *Id*. at 230:3-6.

Instead, Mr. Tygar bases his claims that Usenet messages may contain infringing materials on his "own understanding *as a layperson*."  *Id*. at 96:12-97:22 (emphasis added); *see also id.* at 124:21-126:13 (same).  It is axiomatic that for expert testimony to be helpful to the trier of fact, and therefore admissible, it must "address an issue beyond the common knowledge of the average layman."  *United States v. Vallejo*, 237 F.3d 1008, 1019, *opinion amended on denial of reh'g*, 246 F.3d 1150 (9th Cir. 2001).  It is unhelpful and improper for Mr. Tygar to introduce

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

his own lay understanding of Usenet infringement issues, particularly when Perfect 10 misleadingly cloaks his lay views as expert testimony.

Not only did his deposition reveal that Mr. Tygar lacks expertise in making infringement determinations, but it also established that he made no serious effort to investigate whether any of the messages he encountered on Usenet actually infringed copyrighted material. Beyond looking at the information in the "From" header field, Mr. Tygar did nothing to determine who actually posted the material that he opined to be infringing. Belichick Decl. at ¶ 5, Ex. 4 [Tygar Expert Depo.] at 97:23-99:15; *see also id.* at 99:8-15 ("I wasn't asked to investigate who posted the messages, and I did not attempt to make such an investigation."). Worse yet, Mr. Tygar kept no record of the Usenet messages he downloaded in connection with his analysis, making it impossible for Defendants or the Court to assess or independently verify Mr. Tygar's claims of pervasive infringement. *See id.* at 137:10-21. That failure to preserve the factual record makes Mr. Tygar's already unreliable testimony completely useless.

Similarly, Mr. Tygar's claim that "scams" plague Usenet has no reliable basis in either his expertise or his analysis. *See* Belichick Decl. at ¶ 2, Ex. 1 [Tygar Opening Report] at ¶ 22. Mr. Tygar admits that he did not conduct any further investigation into the articles he claims contain "scams" or malware. Belichick Decl. at ¶ 5, Ex. 4 [Tygar Expert Depo.] at 84:4-14. In fact, Mr. Tygar does not even recall any of the subject headers for the "scam" articles. *Id.* at 85:12-22.

In summary, Mr. Tygar lacks any expert or even factual basis for his opinions regarding infringing or scamming conduct on Usenet. The Court should not permit Perfect 10 to use Mr. Tygar's testimony to create the prejudicial and baseless impression that scams and infringing content dominate Usenet. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. The Court should therefore exclude any opinions or testimony by Mr. Tygar regarding infringement.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

### 2. Mr. Tygar Has No Basis for His Opinions About Measures Giganews Might Take to Reduce Potential Infringement.

Perfect 10 also attempts to advance testimony by Mr. Tygar regarding steps Giganews might theoretically undertake to curb alleged infringement on Usenet. *See* Belichick Decl. at ¶ 2, Ex. 1 [Tygar Opening Report] at ¶¶ 20(c), 30, 45-47, 62-65; ¶ 3, Ex. 2 [Tygar Opposition Report] at ¶¶ 10-12, 15-18, 22-35; ¶ 4, Ex. 3 [Tygar Rebuttal Report] at ¶¶ 9(c), 17-28. As with Mr. Tygar's conclusory statements about infringement, these additional opinions lack any expert or even factual basis and should be excluded.

As an initial matter, Mr. Tygar's professional experience with Usenet is very limited. Mr. Tygar has never operated a Usenet server or hosted a Usenet service. Belichick Decl. at ¶ 5, Ex. 4 [Tygar Expert Depo.] at 161:22-162:3. Nor has he ever consulted professionally about Usenet prior to his engagement with Perfect 10. *Id*. at 60:21-25. At his deposition, Mr. Tygar could not identify a single book, article, or speech he has written about the Network News Transfer Protocol ("NNTP") or Usenet more broadly.[1] *Id*. at 59:22-60:19. Indeed, Mr. Tygar has had no pertinent professional experience related to Usenet beyond teaching about it as just one topic of many in the software engineering course he taught at Carnegie Mellon University *in the 1980s*. *Id*. at 59:9-21.

Mr. Tygar's only potentially relevant experience with Usenet is *as a user*. By his own admission, the closest Mr. Tygar came to a Usenet server was speaking to some of the individuals who operated the Usenet server at Carnegie Mellon.

---

[1] In his deposition, Mr. Tygar mentioned that he did attend some conferences pertaining to Usenet put on by the USENIX Association "in the late 80's and early 90's." Belichick Decl. at ¶ 5, Ex.4 [Tygar Expert Depo.] at 61:2-12. When questioned about those events, however, Mr. Tygar testified that he did not remember anything about the substance of these conferences. *Id*. at 62:2-5. Mr. Tygar did not make any presentations about Usenet at these conferences. *Id*. at 59:22-60:2. Rather, he spoke only about security issues. *Id*. at 61:15-17.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Belichick Decl. at ¶ 5, Ex. 4 [Tygar Expert Depo.] at 161:9-21.  That very limited experience is as stale as it is one-sided.  For example, the last time Mr. Tygar can remember posting anything to Usenet was in the 1990s.  *Id*. at 70:17-20.

Furthermore, Mr. Tygar made no effort to cure these deficiencies in his Usenet experience before delivering opinions about how Giganews could reduce infringement on Usenet.  To date, Mr. Tygar has reviewed no source code defining the operations for either Giganews or any other major Usenet provider.  Belichick Decl. at ¶ 5, Ex. 4 [Tygar Expert Depo.] at 117:10-21 ("I was not provided source code; so I can't say exactly what technological measures Giganews uses in its Usenet server, and I also have not been provided source code for other major Usenet providers.").  Mr. Tygar also admits that he lacks any independent information about Giganews's operations (*i.e.*, file server set-up, maintenance, testing, and repair) and how those operations compare to the operations of other Usenet providers.  *Id*. at 143:2-144:25, 147:24-148:2, 148:6-25.  In fact, Mr. Tygar admits that he does not even know what technical steps Giganews must perform in order to delete a message from its Usenet servers.  *Id*.  at 168:17-169:4.  When questioned at his deposition, Mr. Tygar could not identify a single method by which Giganews can supervise or control the conduct of its customers, beyond providing general access to Usenet and providing the Mimo newsreader application software. *Id*. at 149:8-150:14.

Without any knowledge of Giganews's actual operations, Mr. Tygar's opinions about how Giganews could reduce infringement are pure speculation.  In his deposition, Mr. Tygar essentially conceded that fact, testifying that he cannot determine how to implement his proposed solutions without first reviewing Giganews's source code.  *See, e.g.*, Belichick Decl. at ¶ 5, Ex. 4 [Tygar Expert Depo.] at 188:18-189:10, 189:25-190:23 (detailing necessary steps for installing filters to block access to Perfect 10's copyrighted material: "[F]irst I would request to see the source code that the Usenet service was using. . . .  The next step would

Fenwick & West LLP
Attorneys at Law
San Francisco

depend on my examination of the source code that the Usenet service was using."). Time and again, Mr. Tygar's deposition testimony revealed that he lacks sufficient basis for his proposed changes to Giganews's architecture:

- One of Mr. Tygar's proposals would require creating indexes with additional fields, such as User ID and IP address, for Usenet messages in the binary newsgroups. *See* Belichick Decl. at ¶ 2, Ex. 1 [Tygar Opening Report] at ¶ 65; ¶ 3, Ex. 2 [Tygar Opposition Report] at ¶¶ 28-31; ¶ 5, Ex. 4 [Tygar Expert Depo.] at 217:14-218:1, 218:16-21. But, while maintaining that such an indexing measure would not require an "infeasible effort," Mr. Tygar eventually admitted that he has no understanding of what would actually be required for Giganews to create new indexes for all binary messages on its servers. *Id.* at 220:7-223:21.[2]

- Mr. Tygar also proposes that Giganews use image-recognition and/or optical-character-recognition ("OCR") software. *See* Belichick Decl. at ¶ 3, Ex.2 [Tygar Opposition Report] at ¶ 12; ¶ 5, Ex. 4 [Tygar Expert Depo.] at 232:7-234:2. But Mr. Tygar admitted that he is unaware of any Usenet service providers that perform image-recognition functions, and further that he does not know how Giganews could incorporate this functionality into its existing architecture. *Id.* at 233:14-234:2.

- Mr. Tygar admits that he does not know of any filtering mechanisms available to Usenet providers, either on the server-side or on the client-side, and did not investigate the availability of

---

[2]  Mr. Tygar also testified that he does not know how many messages appear in the binary newsgroups and has not investigated the matter. Belichick Decl. at ¶ 5, Ex. 4 [Tygar Expert Depo.] at 218:23-25, 219:24-220:6.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   such applications.  Belichick Decl. at ¶ 5, Ex. 4 [Tygar Expert

2   Depo.] at 192:16-24, 193:2-6, 197:17-198:3.

3   • Tygar claims that Giganews can use "cancel commands" to reduce

4   copyright infringement on Usenet.  *See* Belichick Decl. at ¶ 2, Ex.

5   1 [Tygar Opening Report] at ¶¶ 20(e), 30, 62-63; ¶ 3, Ex. 2 [Tygar

6   Opposition Report] at ¶¶ 9-10; ¶ 4, Ex. 3 [Tygar Rebuttal Report]

7   at ¶¶ 18-20.  But Mr. Tygar admitted that he did not investigate

8   this issue and that he is unaware of any Usenet provider that

9   currently honors such commands.  Belichick Decl. at ¶ 5, Ex. 4

10   [Tygar Expert Depo.] at 244:13-245:7.

11   These facts demonstrate that Perfect 10 is attempting to use Mr. Tygar as a conduit

12   for Perfect 10's own meritless theories about protective measures Giganews might

13   implement, without having Mr. Tygar have basic knowledge of, or perform a basic

14   investigation into, the viability of those measures.

15       At bottom, while Mr. Tygar's qualifications as a computer scientist allow

16   him to render certain expert opinions in this litigation, his testimony about

17   measures Giganews could take to reduce alleged infringement on Usenet far exceed

18   the scope of any relevant expertise.  *See United States v. Hayat*, 2:05-CR-240-GEB,

19   2007 WL 1454280, at *23 (E.D. Cal. May 17, 2007) (excluding expert testimony

20   that exceeded the scope of the witness's expertise), *aff'd*, 710 F.3d 875 (9th Cir.

21   2013); *Wheeling Pittsburgh Steel*, 254 F.3d at 715 (district court erred in admitting

22   testimony from a witness who, "[t]hough eminently qualified to testify as an expert

23   hydrologist regarding matters of flood risk management, . . . sorely lacked the

24   education, employment, or other practical personal experiences to testify as an

25   expert specifically regarding safe warehousing practices").  This Court should

26   exclude all efforts by Perfect 10 to advance unsupported opinions that exceed

27   Mr. Tygar's computer-science expertise.

28

**IV.     CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court exclude all testimony and opinions offered by Justin Douglas Tygar about the incidence of infringement on Usenet and measures Giganews could undertake to reduce infringement.

Dated:  September 29, 2014                    FENWICK & WEST LLP

                                              By: _/s/ Andrew P. Bridges_
                                                     Andrew P. Bridges

                                              Attorneys for Defendants
                                              GIGANEWS, INC., and LIVEWIRE
                                              SERVICES, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO