ANDREW P. BRIDGES (CSB No. 122761)
abridges@fenwick.com
ILANA RUBEL (CSB. No. 221517)
irubel@fenwick.com
TODD R. GREGORIAN (CSB No. 236096)
tgregorian@fenwick.com
KATHLEEN LU (CSB No. 267032)
klu@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:  (415) 875-2300
Facsimile:   (415) 281-1350

Attorneys for Defendants
GIGANEWS, INC., and
LIVEWIRE SERVICES, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PERFECT 10, INC., a California corporation, <br><br> Plaintiff, <br><br> v. <br><br> GIGANEWS, INC., a Texas Corporation; LIVEWIRE SERVICES, INC., a Nevada corporation; and DOES 1 through 100, inclusive, <br><br> Defendants. | Case No.: 11-cv-07098-AB (SHx) <br><br> **GIGANEWS' REPLY BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO LIABILITY FOR INDIRECT COPYRIGHT INFRINGEMENT** <br><br> Date:          November 17, 2014 <br> Time:          10:00 A.M. <br> Courtroom:  790 Roybal <br> Judge:        Hon. André Birotte |
| GIGANEWS, INC., a Texas Corporation; LIVEWIRE SERVICES, INC., a Nevada Corporation, <br><br> Counterclaimants, <br><br> v. <br><br> PERFECT 10, INC., a California Corporation, <br><br> Counterdefendant. | Discovery Cut-off:    June 30, 2014 <br> Pretrial Conference:  January 12, 2015 <br> Trial Date:            January 27, 2015 |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ........................................................................................... 1

I.   PERFECT 10'S COMPARISON OF GIGANEWS TO
     UNRELATED COMPANIES IS IRRELEVANT AND
     PERVERSE. ......................................................................................... 3

     A.   In Contrast to Usenet.com, No Evidence Shows Giganews'
          Active Involvement in, or Control of, Infringement of the
          Plaintiff's Copyrights. ................................................................ 3

     B.   Giganews's Business as a Usenet Provider Has No Similarity
          to Hotfile's or Megaupload.com's Cyberlocker Services. ............ 5

     C.   As an Access Provider, Giganews Has No Need to License
          Content. ...................................................................................... 8

II.  PERFECT 10 HAS NO EVIDENCE TO SUPPORT
     GIGANEWS'S VICARIOUS LIABILITY FOR ANY
     INFRINGEMENTS. ............................................................................. 9

     A.   There Is No Evidence That Giganews Supervises the Alleged
          Direct Infringers. ...................................................................... 10

     B.   There Is No Evidence That Giganews Supervises Any
          Infringing Activity. ................................................................... 10

     C.   There Is No Evidence That Infringement of Perfect 10's
          Copyrights Caused a Direct Financial Benefit to Giganews. ...... 13

III. PERFECT 10 HAS PRODUCED NO EVIDENCE TO SHOW
     CONTRIBUTORY INFRINGEMENT BY GIGANEWS. ........................ 15

     A.   Giganews Discourages Infringement, and Perfect 10 Cannot
          Show Giganews Intended Any Infringement of Perfect 10's
          Works. ...................................................................................... 16

     B.   Perfect 10 Has No Evidence That Usenet Lacks Substantial
          Non-Infringing Uses. ................................................................ 20

     C.   Perfect 10 Has No Evidence That Giganews Has Knowledge
          of Specific Infringements (Without Taking the Alleged
          Infringements Down) from Which Intent to Infringe Perfect
          10's Works Can Be Imputed. ..................................................... 20

     D.   The Only Simple Measure to Prevent Infringement of
          Perfect 10's Copyrights Is Giganews's DMCA Notice
          Process That Perfect 10 Tries to Stymie. ................................... 22

CONCLUSION ............................................................................................ 22

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

CASES

*A & M Records, Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001)............................................................................. 12

*Arista Records LLC v. Usenet.com, Inc.*,
633 F. Supp. 2d 124 (S.D.N.Y. 2009)............................................................*passim*

*Capitol Records, Inc. v. mp3tunes, LLC*,
821 F. Supp. 2d 627 (S.D.N.Y. 2011) ..................................................................... 3

*Columbia Pictures Indus., Inc. v. Fung*,
710 F.3d 1020 (9th Cir. 2013)............................................................................. 15

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) .............................................................................................. 5

*Disney Enters., Inc. v. Hotfile Corp.*,
2013 WL 6636286 (S.D. Fla. Sept. 20, 2013)........................................... 5, 7, 9, 16

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
76 F.3d 259 (9th Cir. 1996)................................................................................. 12

*In re Seroquel Prods. Liab. Litig.*,
2009 WL 223140 (M.D. Fla. Jan. 30, 2009) ........................................................... 1

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*,
658 F.3d 936 (9th Cir. 2011)........................................................................... 19, 20

*Luvdarts, LLC v. AT&T Mobility, LLC*,
710 F.3d 1068 (9th Cir. 2013)......................................................................*passim*

*Meyer v. Holley*,
537 U.S. 280 (2003) ............................................................................................ 10

*MGM Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005) ............................................................................................ 15

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007)............................................................................. 12

*Perfect 10, Inc. v. CCbill LLC*,
488 F.3d 1102 (9th Cir. 2007).......................................................... 2, 13, 15, 17

*Religious Tech. Center v. Netcom On-Line Commc'n Servs., Inc.*,
907 F. Supp. 1361 (N.D. Cal. 1995) ..................................................................... 13

*Reno v. ACLU*,
521 U.S. 844 (1997) ......................................................................................... 6, 20

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Shapiro, Bernstein & Co. v. H.L. Green Co.,*
  316 F.2d 304 (2d Cir. 1963) ................................................................. 10

*UMG Recordings, Inc. v. Shelter Capital Partners LLC,*
  718 F.3d 1006 (9th Cir. 2013) ............................................................... 16

*Wolk v. Kodak Imaging Network, Inc.,*
  840 F. Supp. 2d 724 (S.D.N.Y. 2012) ................................................... 14

**STATUTES**

17 U.S.C. § 512(i)(1)(A) ........................................................................ 11

17 U.S.C. § 512(c)(3)(B)(i) .................................................................... 21

17 U.S.C. § 512(m) ................................................................................. 21

**RULES**

Fed. R. Evid. 401 ...................................................................................... 1

Fed R. Evid. 702 ....................................................................................... 5

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**INTRODUCTION**

Lacking facts to show any basis for its claims of indirect copyright infringement, Perfect 10 instead resorts to misplaced comparisons between Giganews and other companies such as Apple, Usenet.com, Netflix, Megaupload, and Hotfile.  Rather than focus on the evidence in *this* case, Perfect 10 improperly tries to tar Giganews with the alleged misconduct of others who have no relation to this case.  As Giganews elaborates in its accompanying objections to Perfect 10's "evidence," only Giganews's conduct is relevant.  Fed. R. Evid. 401; *see also In re Seroquel Prods. Liab. Litig.*, 2009 WL 223140, at *4 (M.D. Fla. Jan. 30, 2009) (finding that evidence of third party's "misconduct would inject a collateral issue and suggest to the jury [defendant's] 'guilt by association'" in violation of Federal Rules of Evidence).

Perfect 10's misdirection is an attempt to distract attention from the absence of relevant facts about *this* case.  As this Court has found, Usenet messages are "user-driven."  Dkt. 97, at 2.  The role of Giganews as a Usenet service provider is to "provide access to USENET" and maintain the "computers [that] connect to one another and exchange messages posted by USENET users."  *Id.*  Discovery has confirmed that Giganews does not control, encourage, or induce user infringements.  SOF ¶¶ 12–22.  To the contrary, Giganews actively *discourages* users from uploading infringing material and has an effective procedure for copyright holders to remove any material that they identify as infringing their copyrights.  SOF ¶¶ 24–29.  The overwhelming majority (98%) of messages on Giganews's servers have never been the object of a removal notice (SOF ¶ 109), but on those occasions when users have posted allegedly infringing material, Giganews has quickly processed DMCA-compliant removal notices.  SOF ¶¶ 27–30.[1]  Giganews has

---

[1] Defendants are separately seeking partial summary judgment that Perfect 10's notices are inadequate under Section 512 of the DMCA because they did not provide requisite Message-IDs for identifying and locating the offending messages. Dkt. 534.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

appropriately and consistently responded to notifications of claimed infringement it has received from a wide variety of copyright holders.  Perfect 10 stands alone as the sole copyright holder that chooses *not* to provide Giganews with the Message-IDs that are necessary to identify and locate messages expeditiously (SOF ¶ 36).  Perfect 10 pursues litigation instead of removal of its material from Usenet.

In its response to Giganews's statement of undisputed facts, Perfect 10 concedes that no material on Giganews's website or in Giganews's marketing encourages users to seek out Perfect 10 materials.  Giganews's Reply Separate Statement of Uncontroverted Facts ("RSOF") ¶ 62 [Fact 62].  Indeed, Giganews has no incentive to encourage users to infringe Perfect 10's copyrights, especially in light of the undisputed fact that Giganews does not charge users extra based on what newsgroups or messages they access.  *Id.* ¶¶ 52–53 [Facts 52–53].  Rather than present any competent evidence that Giganews actively encourages or controls the infringing activity of certain users, Perfect 10 seeks to hold Giganews indirectly liable simply for not policing Usenet for Perfect 10's images.  Perfect 10 repeatedly suggests that Giganews take on the job of investigating Usenet messages by using third party newsreaders such as Mimo[2] and Newsrover, despite Giganews having no legal obligation to do so and despite Perfect 10 itself admitting that those newsreaders return inconsistent results.  The law does not require Giganews to police Usenet for Perfect 10.  As the Ninth Circuit previously held in another Perfect 10 case, a service provider need not affirmatively police for infringement.  *See Perfect 10, Inc. v. CCbill LLC*, 488 F.3d 1102, 1111 (9th Cir. 2007); *see also*

---

[2] Although Giganews has offered Mimo to customers as one newsreader they could download and use, Mimo is not part of Giganews's Usenet service architecture.  Reply Declaration of Philip Molter ("Molter Reply Decl.") ¶ 13.  The company that created and developed the Mimo newsreader was Golden Frog, a third party software company.  *Id.*  Giganews does not own the Mimo newsreader.  *Id.*  Giganews has no in-house newsreader or other technology that can search Usenet messages to determine whether the message bodies contain any images encoded as text.  *Id.*

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Capitol Records, Inc. v. mp3tunes, LLC*, 821 F. Supp. 2d 627, 637 (S.D.N.Y. 2011). Perfect 10 concedes that users exchange non-infringing materials on Usenet. RSOF ¶ 108 [Fact 108]. That Giganews does not police the billions of Usenet messages for ones that might infringe Perfect 10's copyrights does not make Giganews liable for indirect copyright infringement.

# I.     PERFECT 10'S COMPARISON OF GIGANEWS TO UNRELATED COMPANIES IS IRRELEVANT AND PERVERSE.

Perfect 10 likens Giganews to unrelated companies with significantly different operations and business models. No evidence *in this case* shows any relationship or meaningful similarity between Giganews and those companies.

## A.     In Contrast to Usenet.com, No Evidence Shows Giganews' Active Involvement in, or Control of, Infringement of the Plaintiff's Copyrights.

Perfect 10 argues that Giganews is "virtually identical" to Usenet.com, an unrelated party in a copyright infringement case[3] involving music files that has nothing to do with Perfect 10's claims of infringement of erotic images here. No Perfect 10 copyrighted works were at issue in the *Usenet.com* case. The only common point is that both cases involve claims of infringement among the billions of messages that users have posted on Usenet. This Court has already distinguished *Usenet.com* as involving defendants who "actively engaged in the process" of exchanging infringing materials between uploaders and downloaders. Dkt. 97, at 11–12 (among other things, Usenet.com "actively created servers *dedicated* **to** storing music files" and routinely engaged in *human review* of infringing newsgroups) (emphasis added).[4]

---

[3] *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124 (S.D.N.Y. 2009). Usenet.com is *not* Usenet.net, a brand of Defendant Livewire Services, Inc.

[4] Once sued, Usenet.com tried in vain to hide its active involvement by engaging in "bad faith spoliation of documents and other evasive discovery tactics." *Usenet.com*, 633 F. Supp. 2d at 142 (sanctioning Usenet.com by precluding safe

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Moreover, Usenet.com "openly and affirmatively sought to attract former users of other notorious file-sharing services such as Napster and Kazaa." *Usenet.com*, 633 F. Supp. 2d at 152.  Usenet.com did so by publicly touting its business as facilitating file-sharing of infringing materials on its service.  *Id.*  The evidence against Usenet.com included:

- "employees overtly acknowledging the infringing purpose" of their service;
- drafting marketing essays about how to "attract infringement-minded users to their service";
- "advertising such [infringing] uses on their website";
- "featur[ing] promotional materials advertising the service's infringing uses, including webpages advertising music files by popular recording artists [and] webpages encouraging users to '[d]ownload thousands of FREE CD quality music files!'";
- commenting internally: "Music and Movies so get your pirate on!";
- "numerous instances when [Usenet.com's] own employees acknowledged the availability of infringing uses through [Usenet.com's] service and used the service themselves to download Plaintiffs' copyrighted works"; and
- "provid[ing] technical assistance to users in obtaining copyrighted content," including "tutorials on how to download content, using infringing works as examples."

*Id.* at 152-53 & n.18. Despite Perfect 10's wishful thinking, the record here lacks those facts.

Indeed, Giganews has no active role relating to the infringement Perfect 10 alleges.  Giganews does not choose or review the messages that users post and

harbor defense).  Here Perfect 10 also moved for sanctions, a ploy that the Court denied as "meritless" and "ill-considered and overreaching."  Dkt. 343.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  automatically disseminate on Usenet, SOF ¶¶ 8–14, and Perfect 10 has no

2  competent evidence to the contrary.  Giganews's only active step with respect to

3  messages that infringe is to *remove* them upon receipt of a DMCA-compliant

4  notice.  *Id.* ¶ 33.

5      Perfect 10 also retained the same expert, Richard Waterman,[5] that the

6  plaintiff in the Usenet.com case hired, to offer an opinion about the extent of

7  infringement on Usenet.  But he admitted in his deposition that his work in that case

8  was only about "music news groups" as they existed in 2008.  Declaration of

9  Kathleen Lu in Support of Reply ("Lu Decl.") ¶ 12, Ex. 11 [Waterman Depo.] at

10  94:16-22.  He did no analysis related to Perfect 10's copyrighted images.  *Id.* at

11  25:20-26:7.  He had no opinion about whether or not material on the Usenet as a

12  whole infringes any copyrights.  *Id.* at 24:22-25, 40:5-40:18.  Mr. Waterman's

13  outdated opinions about music news groups, which he formed for litigation

14  involving unrelated companies, are irrelevant to whether Giganews contributed to

15  or controlled the alleged infringement of Perfect 10's images here.

16      **B.    Giganews's Business as a Usenet Provider Has No Similarity to**

17      **Hotfile's or Megaupload.com's Cyberlocker Services.**

18      Perfect 10 also makes the unsupported claim that Giganews is factually like

19  Hotfile, an offshore corporation whose "*website* provides a simple interface

20  between Hotfile users (and their data) and *Hotfile's* storage network."  *Disney*

21  *Enters., Inc. v. Hotfile Corp.*, 2013 WL 6336286, at *2 (S.D. Fla. Sept. 20, 2013)

22  (emphasis added).   The *Hotfile* court clearly explained Hotfile's web presence and

23  interface:  "Once a file is uploaded, the uploading user automatically receives one

24  or more unique **URL links** containing the file name and an extension.  So, for

25

26  ────────────────────────

    [5] Defendants have separately moved to exclude Mr. Waterman's opinions as
27  irrelevant and untrustworthy under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S.
    579 (1993) and Federal Rule of Evidence 702.  Dkt. 477.  The court will hear the
28  motion on November 3, 2014.  Dkt. 488.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  example, if a user uploads a piece of software called "JDownloader"—which is a

2  real program whose authors voluntarily **uploaded it through Hotfile's website**—

3  Hotfile would issue the user a **link location such as "http://**

4  **hotfile.com**/dl/14052520/7a3c8f8/JDownloader% 200.8.821. zip.html." *Id.*

5  (emphasis added).  In this way, Hotfile "is what is known as an online 'storage

6  locker.'" *Id.*

7       In contrast, the Usenet is a worldwide network of servers consisting of

8  continuously updating archives of *messages* (also called "articles").  Lu Decl. ¶ 13,

9  Ex 12 [Rosenblatt Decl.] ¶ 29.  As the Supreme Court has recognized, it is a four-

10  decade-old network (SOF ¶ 105) with thousands of "[news]groups, each serving to

11  foster an exchange of information or opinion on a particular topic running the

12  gamut from, say, the music of Wagner to Balkan politics to AIDS prevention to the

13  Chicago Bulls." *Reno v. ACLU*, 521 U.S. 844, 851 (1997).  Usenet servers and

14  users communicate using the Network News Transfer Protocol ("NNTP"), not the

15  Web's HyperText Transfer Protocol ("HTTP").  Rosenblatt Decl. ¶¶ 19, 21; Molter

16  Decl. ¶ 13.  Further, unlike the Web, material on the Usenet exists as messages, not

17  webpages or files.  Rosenblatt Decl. ¶¶ 25, 29.  As this Court judicially noticed,

18  "[t]o obtain access to the USENET, a user must gain access through a commercial

19  USENET provider . . . or an internet service provider."  Dkt. 97, at 2.  SOF ¶¶ 1-2.

20  Giganews is one of many companies that provides Usenet access.[6]  It is undisputed

21  that Giganews's pricing does not depend on what messages customers upload or

---

[6] In response to these facts, Perfect 10 claims "Giganews provides access to servers, not to the Usenet," falsely implying that Giganews provides access to *web* servers like Hotfile, not the Usenet, which Giganews actually provides access to.  Perfect 10 cites no evidentiary support that Giganews sells access to web servers.  In fact, users cannot access Giganews's servers except through the use of a Usenet newsreader.  SOF ¶¶ 1–2; Molter Decl. ¶ 10; *see also* Molter Decl. ¶ 5 (explaining that Usenet disseminates messages worldwide, not just to Giganews's servers); FAC, Dkt. 105, Ex. 8, at 1 (listing Giganews as a Usenet access provider.  Thus Giganews's business is providing Usenet access, not merely use of web servers like Hotfile's.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   access. SOF ¶¶ 52–53.

2        Perfect 10 has presented no evidence that Giganews encouraged infringement

3   as Hotfile did. The evidence against Hotfile showed its "deliberate design to

4   facilitate infringement, because "Hotfile is deliberately modeled after networks that

5   were subsequently subject to challenges of infringement." *Hotfile*, 2013 WL

6   6336286, at *36.  Hotfile took the "simply unprecedented" step of paying infringers

7   for their infringing activity.  *Id.*  Discovery revealed that Hotfile:

8        • created an "incentive structure [that] rewards large and frequent file

9              downloads" and "pays members through an affiliate program";

10       • "relies on the popularity of content to drive growth, even imploring

11              users to post 'interesting' links and media files"; and

12       • "provides technical assistance to those who infringe . . . by providing

13              tutorials that reference copyrighted works."

14  *Id.*[7]  Actions like those to reward and encourage possible infringement are absent

15  here.  To the contrary, Giganews diligently works with copyright holders to remove

16  messages they identify as infringing through a DMCA compliant notice.  SOF

17  ¶¶28–29.

18       In *Hotfile*, the court also found that the defendant seller of online file storage

19  had effective "counter-piracy technologies" but did not use them until after the

20  lawsuit started.  *Hotfile*, 2013 WL 6336286, at *36.  Such technologies may work

21  in the context of online file storage, where the defendant could screen certain file

22  types or content, but no such technologies are available to Usenet providers like

23  Giganews. SOF ¶¶ 84, 86–91.  Because any images within Usenet messages require

24  encoding as text, no automated filtering mechanism could effectively block images

25  from being posted or allow Giganews to filter messages by file type. SOF ¶¶ 88–89.

26

27  [7] Even these facts did not entitle the copyright holder to summary judgment of
    contributory infringement, but simply created a triable issue regarding the
28  defendants' intent to have its users infringe.  *Id.* at *38.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Giganews has investigated the possibility of using image recognition software and determined that it does not work for its Usenet service. *Id.* ¶ 84. Indeed, Perfect 10 concedes that no other Usenet provider successfully applies a content-based filter to limit infringement. *Id.* ¶ 91.[8]

### C.    As an Access Provider, Giganews Has No Need to License Content.

Perfect 10 and its CEO Norman Zada throughout his declaration repeatedly mischaracterize Giganews as "offering" movies, music files, or copyrighted content (*see, e.g.*, Opp. at 1:22, 2:21, 3:15, 5:22). In fact, Giganews does not market, rent, or sell files, such as movies, music files, or images. *See* SOF ¶¶ 51, 55–56, 62; Molter Decl. ¶ 14. Giganews is a provider of Usenet *access*. SOF ¶ 1.[9] Saying that Giganews "offers" any particular message or type of material on Usenet is as nonsensical as saying that a provider of Internet access "offers" the files that users make available over the Internet. Likewise, despite Perfect 10's repeated claims that Giganews "copied" images onto its Usenet servers, Perfect 10 ignores that this Court has already found that Usenet users, not Giganews, are responsible for reproducing messages or materials on Usenet. Dkt. 97, at 2 ("content that is stored on a USENET provider's server is generally uploaded by USENET users or subscribers"). The Court held that Perfect 10's allegations that Giganews (1) copies and stores "the material on their servers from content uploaded onto USENET", (2) "program[s] their servers" to distribute and download the infringing content, and (3) "control[s] which materials are distributed to and copied from other third party

---

[8] Perfect 10's attempt to associate Giganews with Megaupload.com is even more outlandish. Perfect 10 offers no competent evidence about Megaupload.com and simply insinuates that Giganews's conduct is criminal. Such calumny is baseless and inadmissible.

[9] Exemplifying Perfect 10's lack of understanding or candor (or both) about Usenet is its statement that giganews.com is a *website* that "offers" content to its users (Opp. at 3:15). Usenet does not consist of "websites," and Giganews's servers are Usenet servers, not web servers. Gregorian Decl ¶ 2, Ex. 1 [Yokubaitis Decl.] ¶¶ 2, 5. The giganews.com website is part of the Worldwide Web, not part of Usenet, and no Usenet access is available through giganews.com. *Id.*

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

servers" all fail to "indicate that it was Defendants themselves that committed the act of copying, displaying or distributing Plaintiff's copyrighted content." *Id.* at 10.

Accordingly, it is irrelevant and unremarkable that Giganews does not have a business need to obtain licenses for copyrighted works available on Usenet.[10] Whether Giganews has obtained such licenses cannot be evidence of its contribution to, or control of, the infringing activity of users.

## II.   PERFECT 10 HAS NO EVIDENCE TO SUPPORT GIGANEWS'S VICARIOUS LIABILITY FOR ANY INFRINGEMENTS.

In addition to Perfect 10's misdirection on the facts, Perfect 10 engages in misdirection on the law.  Without explanation, Perfect 10 ignores the Ninth Circuit's most recent case on vicarious liability.  *See Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1071 (9th Cir. 2013) (vicarious liability elements are "(1) 'right and ability to supervise the infringing activity' and (2) 'a direct financial interest' in the activity") (citation omitted).  Instead, Perfect 10 relies on an unpublished Florida district court opinion, which no later court decision has followed, to argue that merely "providing the means to commit direct infringement" constitutes the "capacity to control the activities of their users." *Hotfile*, 2013 WL 6336286, at *40.[11]  That confuses contributory infringement with vicarious liability, and that is not the law here, as *Luvdarts* confirmed.  *Luvdarts*, 710 F.3d at 1072 (holding absence of "a capacity to supervise is fatal to a claim of vicarious liability").

---

[10] Perfect 10 provides no evidence about Apple or Netflix despite comparing Giganews to them.

[11] The defendant found vicariously liable in *Hotfile* did not merely provide means for infringement, but also exhibited its capacity to control through its own counter-piracy technologies that it admitted were "effective in filtering and targeting infringing works" but chose not to use. *Hotfile*, 2013 WL 6336286, at *41.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## A. There Is No Evidence That Giganews Supervises the Alleged Direct Infringers.

In the seminal case addressing a claim of vicarious liability for copyright infringement, *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304 (2d Cir. 1963), the Second Circuit contrasted an example of a relationship that could result in vicarious liability from one that could not. A landlord leasing property, at a fixed rate, to a tenant who engages in infringing activity on the property would not be vicariously liable. *Id.* at 307. In contrast, a dance hall proprietor who hires a band to perform and gets more customers and income from the band's infringing performance would be vicariously liable. *Id.* Vicarious liability exists only if the relationship is "closer on the spectrum to the employer-employee model than to the landlord-tenant model." *Id.* at 308 (finding defendant liable because it retained the "ultimate right of supervision" over the conduct of its licensee and its employees).

Accordingly, unless Perfect 10 has evidence to show that Giganews had something akin to a *respondeat superior* or principal-agent relationship with the alleged direct infringers of Perfect 10's works, the claim of vicarious infringement fails as a matter of law. Perfect 10 has no evidence of such a relationship.[12]

## B. There Is No Evidence That Giganews Supervises Any Infringing Activity.

In *Luvdarts*, the copyright holders sought to hold network owners vicariously liable for not stopping their network's users from infringing. *Id.* at 1071. The network owners' ability to stop persons from using the networks was immaterial. What mattered was whether the network owners currently had the "right and ability

---

[12] Copyright infringement is a federal statutory tort. The Supreme Court, in *Meyer v. Holley,* 537 U.S. 280, 285-91 (2003), cautioned that courts should not expand the scope of vicarious liability for federal statutory torts, beyond its traditional common-law contours, without express direction from Congress. While that case concerned a claim under the Fair Housing Act, the principle has equal application to copyright claims.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   to supervise the infringing conduct," and they did not have that ability merely

2   because they ran the network.  *Id.* (citation omitted).

3          Likewise, Giganews provides access to the Usenet network but cannot screen

4   or monitor the messages that a user posts or views on the network.  Unlike Hotfile,

5   which could search the set of files on a server for a particular file type or media

6   content, Giganews has no technology that can filter and block Usenet messages

7   based on what they contain.  SOF ¶¶ 84, 86–91.  In fact, Perfect 10 concedes that

8   no Usenet provider has found an effective content-based filter.  *Id.* ¶ 91.  Although

9   Giganews, like the network operators in *Luvdarts*, can theoretically stop allowing

10  user access to the network, this ability is not equivalent to a "right and ability to

11  supervise *the infringing activity.*" *See Luvdarts*, 710 F.3d at 1071 (emphasis added).

12  Control over a user's access does not imply control over a user's infringing activity.

13  The fact that users register with Giganews and can lose their access is not evidence

14  that Giganews supervises the infringing activity.[13]

15         Giganews has no practical way to remove infringing messages that former

16  users posted to Usenet before they had their access terminated.  Molter Decl. ¶ 42.

17  Because no index of messages by user exists, Giganews by itself has no practical

18  way of disabling these earlier messages based on user. *Id.*[14]  Regardless of

19  Giganews's termination of a user, that user's messages (infringing or

20  noninfringing) would remain on Usenet (except for the particular messages that are

21  the object of a DMCA-compliant removal notice), and the user could continue his

22  infringing activity by accessing Usenet through another provider.  Perfect 10

23  _____

24  [13] Indeed, making a service provider liable on the mere basis of being able to
    terminate a user would be incongruous with the DMCA, which requires service

25  providers to have a policy of terminating repeat infringers (17 U.S.C.
    § 512(i)(1)(A)) in order to qualify for the Section 512 safe harbor.

26  [14] Giganews also has no practical ability to filter, screen, or disable any infringing

27  messages that other companies' Usenet servers disseminate to Giganews's servers,
    because that process is automatic and happens irrespective of message content.

28  Molter Decl. ¶ 5; SOF ¶¶ 8, 13.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   suggests that Giganews could use Mimo or News Rover to investigate Usenet

2   messages, but Perfect 10 cites no authority that would require Giganews to modify

3   its system or use other tools to police or filter Usenet messages.  To the contrary, a

4   service provider's hypothetical ability to use tools outside its current system does

5   not constitute a right and ability to supervise.  *Luvdarts*, 710 F.3d at 1071-72; *A &*

6   *M Records, Inc. v. Napster, Inc*., 239 F.3d 1004, 1024 (9th Cir. 2001) (system

7   operator's "'right and ability' to police is cabined by the system's current

8   architecture.").  Giganews cannot be vicariously liable in light of this lack of a

9   "practical ability" to stop or limit the infringing activity.  *See Perfect 10, Inc. v.*

10  *Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007).[15]

11       Perfect 10's comparison of Giganews to Napster is flawed because "Napster

12  had a *closed* system," a "proprietary music-file sharing system" that Napster

13  designed and controlled.  *See id.* at 1174 (emphasis added).  In contrast to Usenet's

14  open network, the proprietary nature of the Napster system allowed Napster to

15  supervise and control the infringing activity.  Beyond merely blocking a user's

16  access, Napster had the practical and legal ability to "prevent its users from

17  engaging in the infringing activity of uploading file names and downloading

18  Napster users' music files." *Id*.  Napster thus had a distinctly greater right and

19  ability to supervise the infringing activity than Giganews.[16]

20  _____

21  [15] Perfect 10 mischaracterizes Giganews's argument as injecting a knowledge
    element into vicarious liability.  Although vicarious liability in the abstract does not

22  require knowledge of the infringing activity, whether or not the defendant is
    capable of knowing which material is infringing does affect whether the defendant

23  has the requisite "practical ability to police the third-party . . . infringing conduct."
    *Amazon*, 508 F.3d at 1174 (affirming district court finding that defendant lacked

24  supervisory power because it could not "determine whether a certain image on the
    web infringes someone's copyright.")

25  [16] Similarly, in *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 262 (9th Cir.

26  1996), the swap meet organizer could literally supervise the activities in its physical
    space.  Moreover, the organizer's termination of a vendor meant that the vendor's

27  *infringing activity* would no longer occur at the swap meet, not merely that the
    vendor would cease to have access.  In *Arista*, the defendant's unique system not

28  only had the ability to terminate a user's access, but also had "filtering capabilities

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Indeed, Perfect 10 itself has a greater capacity to address infringing activity than Giganews:  Perfect 10 could readily submit DMCA-compliant notices containing Message-IDs as other copyright holders do, but Perfect 10 chooses not to do so. SOF ¶¶ 34, 38.

## C.    There Is No Evidence That Infringement of Perfect 10's Copyrights Caused a Direct Financial Benefit to Giganews.

Contrary to Perfect 10's misrepresentation of this Court's previous rulings, this did *not* decide that Giganews's fixed monthly fee is a "direct financial benefit." Rather, in the context of Defendants' motion to dismiss in which the Court had to take Perfect 10's allegations as true, the Court stated that the fixed nature of a fee did not categorically preclude a finding of direct financial benefit.  Dkt. 97, at 17-18.  But the Court emphasized that "The essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps."  *Id.* at 16 (citing *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004)).  Perfect 10 has no evidence of that causal relationship.

Giganews sells Usenet access based on a monthly subscription fee.  SOF ¶ 50. It does not charge users extra based on what newsgroups or messages they access.  SOF ¶¶ 52–53.  As the Ninth Circuit has held, "flat, periodic payments for service from a person engaging in infringing activities would not constitute receiving a 'financial benefit directly attributable to the infringing activity.'" *CCBill LLC*, 488 F.3d at 1118; *see also Religious Tech. Center v. Netcom On-Line Commc'n Servs., Inc.,* 907 F. Supp. 1361, 1376-77 (N.D. Cal. 1995) (Usenet

---

to search for, limit or eliminate infringement on their service." *Arista*, 633 F. Supp. 2d at 153.  In spite of those filters, the defendant chose not to use them to screen out the infringing activity of sharing music files. *Id.*  There is no similar evidence here of Giganews having such control.  Perfect 10 argues that *Io Group*, which found that the right and ability to control infringing activity requires more than the mere ability to block access, is limited to the context of DMCA safe harbors.  Giganews asserts that it is eligible for such safe harbors.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

provider receiving fixed fees not vicariously liable); *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 748 (S.D.N.Y. 2012) (finding no direct financial benefit when "Defendants' profits are derived from the service they provide, not a particular infringement").

Because it is undisputable that Giganews does not market its service to encourage users to seek out or upload Perfect 10 materials (SOF ¶¶ 62, 65), Perfect 10 instead tries to point to other copyright owners' works as a possible draw for customers. Whether or not non-Perfect 10 works ever existed on Usenet or on Giganews's servers is irrelevant to this case. Nothing about those works proves that the alleged infringing activity involving Perfect 10's works drew customers to Giganews. Moreover, the third-party messages that Perfect 10 refers to are ones that Giganews removed after receiving DMCA-compliant notices from other copyright owners. SOF ¶¶ 28-30, 101. Messages that do not exist on Giganews's servers because it has diligently removed them cannot possibly be a draw to customers.

The record shows not a single customer stating that the availability of Perfect 10 images was the reason for signing up with Giganews. Nor is there evidence that the unavailability of Perfect 10 images caused a single customer to unsubscribe from Giganews. Indeed, Perfect 10's own witnesses—individuals hired to investigate Giganews's alleged infringement of Perfect 10 images—support that Perfect 10 images were *not* a draw to Giganews. Sean Chumura admitted that he was not aware of any actions by defendants to single out Perfect 10 images in any way, including for display, transmission, or sale to its customers. *See* Lu Decl., ¶ 14, Ex. 13 [4/17/14 Chumura Depo. Trans.] at 248:20-249:6. Mike Saz admitted that no aspect of Giganews's marketing or advertising encouraged him to look for Perfect 10 materials on Usenet or Giganews's service; Giganews did not in any way direct him to seek Perfect 10 materials on either Usenet or Giganews. Gregorian Decl., ¶ 9, Ex. 8 [6/27/14 Saz Depo. Trans.] at 82:16-83:9. In place of evidence,

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Perfect 10 resorts to the unsupported conclusion that its image library "has been stolen by Giganews" in its entirety and that Giganews cannot show why that library is not a draw for customers.  But it is *Perfect 10's burden* to show that infringement of its images is a draw, and Perfect 10 has no competent evidence of that.[17]

## III.   PERFECT 10 HAS PRODUCED NO EVIDENCE TO SHOW CONTRIBUTORY INFRINGEMENT BY GIGANEWS.

Perfect 10 has no evidence that Giganews, as a Usenet access provider that outright discourages infringement, is liable for contributory infringement.  The heart of Perfect 10's argument is that Giganews should have known of the alleged infringements.  As Defendants explain below, Perfect 10 fails to show any evidence that Giganews had knowledge of *specific* infringement of Perfect 10's works.  More importantly, Perfect 10 has failed to satisfy the "paramount" requirement that it set forth "proper proof of the defendant's *intent* that its product or service be used to infringe."  *See Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1038 (9th Cir. 2013) (emphasis added).  Without evidence that Giganews *intended* the infringement of Perfect 10's works, the contributory infringement claim fails.  *Grokster* requires purposeful, culpable expression and conduct.  *See MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 937 (2005).  Perfect 10 downplays the importance of this requirement and instead fixates on Giganews' alleged knowledge of infringement, because evidence of intent simply does not exist.  But after *Grokster*, knowledge is not enough, and in any event Perfect 10 cannot show Giganews's disregard of any actual, specific knowledge of infringements.

---

[17] Perfect 10 cannot plausibly argue that, by voluntarily paying Giganews for memberships to investigate this lawsuit, it has conferred a direct benefit related to Perfect 10's allegedly infringed images to establish its claim for vicarious liability.  In *CCBill,* Perfect 10 argued that by not accepting Perfect 10's subscriptions, CCBill interfered with Perfect 10's investigation and thus voided it safe harbor.  *CCBill,* 488 F.3d at 1115.  Perfect 10 cannot have it both ways.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

A.   **Giganews Discourages Infringement, and Perfect 10 Cannot Show Giganews Intended Any Infringement of Perfect 10's Works.**

At no time has Giganews promoted its services by advertising the existence of Perfect 10 images as among the billions of messages on Usenet.  SOF ¶¶ 61–62. Indeed, as Giganews' opening brief explained, Giganews's Terms of Service and DMCA practices establish that Giganews has taken active steps to *discourage* copyright infringement on its services.  Furthermore, Giganews has repeatedly sought Perfect 10's cooperation in supplying Message-IDs of infringing messages so that Giganews can identify and locate those messages for removal.  SOF ¶¶ 38–39.

Perfect 10 suggests, without supporting evidence, that users would not take seriously Giganews's "anti-infringement statements," such as in the Terms of Service.  Especially given the number of takedowns under Giganews's DMCA procedures and its documented termination of repeat infringers, there is no evidence that a user would disbelieve Giganews's anti-infringement statements.

Furthermore, in contrast to Usenet.com and Hotfile, which expressly promoted piracy and sought users who were infringers (*Usenet.com*, 633 F. Supp. 2d at 152; *Hotfile*, 2013 WL 6336286, at *36), Giganews has not taken affirmative steps to encourage or induce infringement.  The examples Perfect 10 provides do not show intent to encourage or induce infringement.

- That Giganews mentioned the availability of newsgroups whose names contain terms such as "software," "video," or "mp3s" does not amount to Giganews advertising *infringing* materials.  *See UMG Recordings, Inc. v. Shelter Capital Partners LLC,* 718 F.3d 1006, 1021 (9th Cir. 2013) ("merely hosting material that falls within a category of content capable of copyright protection," such as "music" does not "impute knowledge to service

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

providers").[18]  Perfect 10 makes unsubstantiated assumptions that a newsgroup with the word "software" in its name must include infringing software, as opposed to authorized or royalty-free software or simply a group of messages discussing software.  Moreover, none of the categories remotely shows any intent for users to infringe Perfect 10's works.

- Whether a third-party newsreader such as *Newsrover* can show the availability of certain types of materials such as "movies" or "music" does not show that those materials infringe or that Giganews intends users to look for infringing materials, let alone Perfect 10's works specifically.

- Inclusion of the terms "warez" and "usenet movie" in metatags of a decade ago shows no intent to induce infringement of Perfect 10's works, which are neither software nor movies. Such metatags also do not show intent for users to infringe generally, as opposed to looking for authorized materials or newsgroups discussing particular topics. Moreover, no evidence shows that these metatags appeared during any relevant period. [19]

- Terms that *users* decide to put in message names (*e.g.*, "bootleg" or "warez") do not show any intent of Giganews, and in any event, those terms within a message title do not mean that the message includes an infringing copy or a copy of any Perfect 10 work.  *See CCBill*, 488 F.3d at 1114 (websites with names such as "illegal.net" and "stolencelebritypics.com" did not signal infringement).

---

[18] Perfect 10's "evidence," a third-party document supposedly from archive.org depicting a nine-year-old web page—is hearsay and cannot be admitted for the truth of the matter asserted.  Zada Decl., Exh. 3, at 21-25

[19] Perfect 10's only supporting evidence for this statement is a reference to a metatag from 2003—eleven years ago and not currently used—allegedly associated with an older version of Giganews's website at www.giganews.com.  Dkt. 42 [Molter Decl. in Opp. to P10's Motion for Preliminary Injunction] ¶ 18.  Moreover, as set forth in Giganews's accompanying objections to evidence, this evidence is inadmissible hearsay.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- Despite Perfect 10's repeated demand for Usenet filters, no automated filtering mechanism could effectively block images from being posted or allow Giganews to filter messages by file type. SOF ¶¶ 88–89. Giganews has no ability to identify messages as infringing unless the copyright owner provides Giganews with Message-IDs and confirms that the messages are infringing.

- While Giganews does not track what users download (and states as much in its privacy policy), Giganews *does not* "advertise" this privacy protection as a reason for infringers to subscribe to Giganews.

- Giganews does not offer discounted memberships to known infringers or encourage them to re-activate their accounts for the purpose of encouraging infringing messages. Indeed, a subscriber who lost his posting privileges and who re-activates his account would not regain his posting privileges. SOF ¶ 26; Molter Decl. ¶¶ 40–41.

- Giganews does not promote the use of anonymous uploading for the purpose of encouraging infringing messages. *Usenet* protocol does not require that users list their identities, and there is no affirmative act or promotion *by Giganews* to upload content anonymously. In fact, if a DMCA notice lists a Message-ID for a message from a Giganews account, Giganews traces that message back to the subscriber, so that user would *not* remain anonymous.

- Giganews has not refused to identify alleged infringers to copyright holders. Giganews has revealed the identity of alleged infringers in response to appropriate discovery requests in this case.[20] Dkt. 412 at 1 ("As for the issue of the identity of those persons who uploaded material to Giganews, the court

---

[20] Perfect 10 complained three times about the "identity of the posters" and Defendants' discovery responses and documents. Dkt. 261, 332, and 344.1. But the Court each time found no fault by Defendants. Dkt. 295, 338, 354, and 412. To continue to assert otherwise in the face of multiple adverse court orders shows Perfect 10's lack of respect for the Court's rulings.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

has reviewed the extensive briefing and declarations of the parties, and has considered the oral argument.  The court concludes that Giganews has complied with this court's orders in good faith.").

- Giganews does not "offer" any works, let alone Perfect 10's.  Users (not Giganews) post messages.  Giganews provides Usenet access irrespective of what messages or materials exist on Usenet, but Giganews works with copyright holders to remove infringing material.

- The fact that Giganews cannot find (and thus cannot locate for removal) messages that a particular user uploaded in the past is not evidence of intent to induce or encourage infringement.  First, Giganews would need a copyright holder to identify each of those messages by Message-ID.  Second, this Court has already found that there is no requirement for Giganews to "disable or delete all messages a repeat infringer has ever posted." Dkt. 180, at 9.  Third, the alleged statements by uploaders such as those whom Perfect 10 lists (Opp. at 6-8) are inadmissible hearsay, but in any event there is no evidence that Giganews encouraged or induced their alleged past infringement.

In addition, despite Perfect 10's attempt to lump Giganews together with unrelated third parties Usenet.com, Hotfile, MegaUpload.com, and Akanoc,[21] their conduct is irrelevant and thus cannot tar Giganews.

---

[21] Perfect 10's comparison of Giganews and the defendants in *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936 (9th Cir. 2011) is as wrong as the comparisons to Hotfile and Megaupload that Defendants discussed above. *Akanoc* involved two defendants, one (Akanoc) that provided infringers with server space for hosting of their infringing files and websites, and one (MSG) that supplied the servers, bandwidth and IP addresses, for that hosting. *Id.* at 940.  The *Akanoc* Court found that MSG did not contributorily infringe because it lacked "reasonable means to withdraw services to the direct infringers" even though MSG *could have physically pulled the plug or stopped leasing servers to Akanoc* to stop the infringement. *Akanoc*, 658 F.3d at 942.  *Akanoc* does not, as Perfect 10 contends, state that "a plaintiff need not establish a defendant's intent to contribute to the infringement."  Instead, citing *Amazon.com*, the *Akanoc* court merely noted

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## B. Perfect 10 Has No Evidence That Usenet Lacks Substantial Non-Infringing Uses.

Perfect 10 also cannot show evidence that Giganews intended the alleged direct infringement by users on grounds that Giganews's service lacks substantial non-infringing uses.  The Supreme Court itself observed that the Usenet features thousands of newsgroups fostering the exchange of information or opinion on various topics.  *Reno v. ACLU*, 521 U.S. 844, 851 (1997).  Perfect 10's expert and other witnesses agree that substantial noninfringing uses continue on Usenet.  *See* Gregorian Decl. ¶ 11, Ex. 10 [7/21/14 Levine Expert Report] ¶ 21; ¶ 10, Ex. 9 [8/21/14 Tygar Depo.] at 64:17-23; 71:24-72:3; ¶ 9, Ex.8 [6/27/14 Saz Depo.] at 85:7-10; Molter Decl. ¶ 31.  Perfect 10's argument is essentially that Usenet is unnecessary in light of alternatives such as email and Internet forums.  But whether Usenet is necessary is irrelevant to the question of whether it has substantial non-infringing uses.  Perfect 10 does not dispute that users exchange non-infringing materials on Usenet, so non-infringing uses exist.  SOF ¶¶ 107-108.

## C. Perfect 10 Has No Evidence That Giganews Has Knowledge of Specific Infringements (Without Taking the Alleged Infringements Down) from Which Intent to Infringe Perfect 10's Works Can Be Imputed.

Giganews's inability to process Perfect 10's defective removal notices cannot constitute evidence of Giganews's knowledge of infringing activity.[22]  Notices that do not substantially comply with the requirements of Section 512 of the DMCA "shall not be considered . . . in determining whether a [defendant] has actual knowledge or is aware of facts or circumstances from which infringing activity is

that an online service provider's intent to contribute to infringement can be *imputed.  Id.* at 943.

[22] Giganews has separately moved for partial summary judgment that Perfect 10's notices are inadequate under Section 512.  Dkt. 534.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

apparent." 17 U.S.C. § 512(c)(3)(B)(i).[23]  In all events, Giganews *has* processed the modest number of readable Message-IDs in Perfect 10's notices.  SOF ¶ 45.

Perfect 10 alternatively argues that it gave Giganews suggestions for searches Giganews could perform to find specific infringements, but these are simply additional examples of defective notices that Perfect 10 may not use as evidence of Giganews's knowledge or awareness of specific infringement.  *See* 17 U.S.C. § 512(c)(3)(B)(i); *see also* 17 U.S.C. § 512(m) (specifying that a service provider has no duty to monitor activity occurring on its service or to "affirmatively seek[] facts indicating infringing activity").

As to the statements that Perfect 10 attributes to users who admitted uploading infringing copies of Perfect 10 images, those statements are inadmissible hearsay.  In addition, none of the users provided Message-IDs that would allow Giganews to identify and locate specific messages to remove them.  *See Luvdarts*, 710 F.3d at 1072 (contributory liability "requires more than a generalized knowledge" by the service provider about infringement).  Giganews's system does not allow a search for messages by user, so the lack of that search cannot lead to a finding that Giganews had actual, culpable knowledge of specific infringement.

In addition, Perfect 10's accusation of willful blindness about specific works is groundless in light of the fact that Giganews has repeatedly asked Perfect 10 to provide the Message-IDs for those specific works and stood ready to remove the associated messages.  Giganews cannot be willfully blind by openly trying to cooperate with Perfect 10 to effect the removal of Perfect 10's works from Usenet.

---

[23]"Subject to clause (ii), a notification from a copyright owner or from a person authorized to act on behalf of the copyright owner that fails to comply substantially with the provisions of subparagraph (A) shall not be considered under paragraph (1)(A) in determining whether a service provider has actual knowledge or is aware of facts or circumstances from which infringing activity is apparent." 17 U.S.C. § 512(c)(3)(B)(i).

**D.      The Only Simple Measure to Prevent Infringement of Perfect 10's Copyrights Is Giganews's DMCA Notice Process That Perfect 10 Tries to Stymie.**

Perfect 10 also fails to raise any genuine issue of fact under the alternative *Amazon* contributory infringement formulation of whether the defendant knew of specific infringement and yet failed to take simple measures to prevent further damage to the copyrighted works.

Giganews has expeditiously removed messages that Perfect 10 properly identified by Message-ID in its DMCA notices.  Perfect 10 claims that Giganews did not process certain Message-IDs but obscures the fact that Perfect 10 intentionally began sending DMCA notices to Giganews by fax without legible Message-IDs.  Lu Decl. ¶ 15, Ex. 14 [Declaration of R. Yokubaitis in Support of Defendants' Motion for Partial Summary Judgment on Inadequacy of Perfect 10, Inc.'s Notices Under the Section 512 Safe Harbor] ¶ 48.  Perfect 10 rebuffed Giganews's requests for clean and legible copies of the original to allow Giganews to process the Message-IDs.  It is Perfect 10 that prevents Giganews from taking the simple step of removing messages, because Perfect 10 refuses to provide notices with readable Message-IDs.[24]

## CONCLUSION

Perfect 10 offers irrelevant or inadmissible facts, including unsupported comparisons with unrelated companies, that cannot make up for its lack of evidence that Giganews in any way contributes to the infringement of Perfect 10's works.  In addition, Perfect 10 has failed to set forth competent evidence that Giganews is vicariously liable for others' infringement of Perfect 10's copyrights because of control and supervision of others' infringements coupled with a direct financial interest in or benefit from those infringements.  For these reasons, Giganews

---

[24] Mr. Zada is not competent to opine on other possible simple measures, and Defendants have moved to exclude his testimony.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  respectfully asks the Court now to grant it partial summary judgment of no indirect

2  copyright infringement.

3  Dated:  October 20, 2014          FENWICK & WEST LLP

4

5                                        By:  /s/ Andrew P. Bridges
                                              Andrew P. Bridges

6                                        Attorneys for Defendants
                                          GIGANEWS, INC., and LIVEWIRE
7                                        SERVICES, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GIGANEWS' REPLY BRIEF ISO MOT. FOR PART.        23        CASE NO. 11-cv-07098-AB (SHx)
SUMM. JUDGMENT OF NO LIABILITY FOR INDIRECT
COPYRIGHT INFRINGEMENT