1  Eric J. Benink, Esq., SBN 187434
   eric@kkbs-law.com
2  KRAUSE KALFAYAN BENINK & SLAVENS, LLP
3  550 West C Street, Suite 530
   San Diego, CA 92101
4  P 619.232.0331 | F 619.232.4019

5  Lynell D. Davis, Esq., SBN 271152
   lynell@perfect10.com
6  Natalie Locke, Esq., SBN 261363
7  natalie@perfect10.com
   PERFECT 10, INC.
8  11803 Norfield Court
   Los Angeles, CA 90077
9  P 310.476.0794 | F 310.476.8138

10 Attorneys for Plaintiff and Counter-defendant
11 Perfect 10, Inc.

12             UNITED STATES DISTRICT COURT

13           CENTRAL DISTRICT OF CALIFORNIA

14
   PERFECT 10, INC., a California        Case No.: 2:11-cv-07098-AB-SH(x)
15 corporation,                          *Before Honorable André Birotte, Jr.*
16          Plaintiff,                    **MEMORANDUM OF POINTS AND
                                          AUTHORITIES IN OPPOSITION
17     v.                                 TO DEFENDANTS' MOTION FOR
                                          PARTIAL SUMMARY JUDGMENT
18 GIGANEWS, INC., a Texas corporation;   ON INADEQUACY OF PERFECT
   LIVEWIRE SERVICES, INC., a Nevada      10, INC.'S NOTICES UNDER THE
19 corporation; and DOES 1 through 100,   SECTION 512 SAFE HARBOR**
   inclusive,
20
            Defendants.                   Date:   November 17, 2014
21 ─────────────────────────────────      Time:   10:00 a.m.
   GIGANEWS, INC., a Texas corporation;   Place:  790 (Roybal)
22 LIVEWIRE SERVICES, INC., a Nevada
   corporation; and DOES 1 through 100,
23 inclusive,                             Discovery Cut-Off:   June 30, 2014
                                          Pretrial Conference: January 19, 2015
24          Counter-claimants,            Trial Date:          January 27, 2015
25     v.
26 PERFECT 10, INC., a California
   corporation,
27
            Counter-defendant.
28

───────────────────────────────────────────────
Plaintiff Perfect 10, Inc.'s Opposition to Defendants' Motion for Partial Summary Judgment on
Inadequacy of Perfect 10 Inc.'s Notices Under Section 512 Safe Harbor

# **TABLE OF CONTENTS**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT .................................1

II.   RELEVANT FACTUAL BACKGROUND ......................................................4

     A.    Giganews's Business...............................................................4

     B.    Livewire's Business ...............................................................4

     C.    Giganews's DMCA Notice Requirements.............................4

     D.    The Mimo Automatic Message-ID Extraction Feature ...........5

     E.    Downloading Perfect 10 Content Offered By Defendants ....6

III.  DEFENDANTS HAVE FAILED TO SUBMIT OR ADDRESS
     ALL OF PERFECT 10'S NOTICES AT ISSUE IN THE CASE......................6

IV.  DEFENDANTS' SUBMISSION OF ALTERED NOTICES
     COMPELS THIS COURT TO DENY THE MOTION...................................8

V.   THE SAMPLE NOTICES DISCUSSED BY DEFENDANTS
     ALL SATISFY SECTION 512(C)(3)(A)(III) OF THE DMCA......................8

     A.    "Group A" Consists Of A Single Notice ..............................8

     B.    Examples of Compliant Group B Notices .............................9

     C.    Sample Notice C Is Altered But Satisfies Section 512(c)(3)(A)(iii) ......10

     D.    Sample Notice D Is Altered, Improper, and Should be Stricken............11

     E.    The Fact That Other Usenet Operators Have Processed Perfect 10's
         Notices Shows That They Comply With Section 512(c)(3)(A)(iii) .......12

     F.    Applicable Case Law Supports The Conclusion That
         Perfect 10's Notices Comply With The DMCA ...................12

VI.  DEFENDANTS' INCORRECT ASSERTIONS PROVIDE
     NO BASIS TO RULE THAT PERFECT 10'S NOTICES DEFICIENT.........14

     A.    There Is No Required Format For A DMCA Notice ...............14

     B.    Perfect 10's Notices Are Written Documents.......................15

Plaintiff Perfect 10, Inc.'s Opposition to Defendants' Motion for Partial Summary Judgment on
Inadequacy of Perfect 10 Inc.'s Notices Under Section 512 Safe Harbor

C.   Perfect 10's Notices Identified The Material That Is
     Claimed To Be Infringing ...................................................15

D.   Perfect 10's Notices Also Provided Information Sufficient
     To Locate The Allegedly Infringing Material .........................15

E.   Defendants' Claims Of "Burden" Are Imaginary.....................16

F.   Case Law Does Not Support A Message-ID Requirement....................17

VII.  MESSAGE DESCRIPTIONS ARE MUCH MORE EFFICIENT
      THAN MESSAGE-IDS IN LOCATING INFRINGING MESSAGES ...........18

A.   There May Be Thousands Of Message-IDs For One Message
     Description .........................................................19

B.   Message Descriptions Describe The Infringing Content And
     May Be Searched On, Message-IDs Do Neither ...................19

C.    The Closest Analog To A URL Is The Message Description,
      Not The Message-ID ...............................................19

D.   Message-IDs Often Do Not Exist ...................................20

E.   Even When Message-IDs Exist, It Is Frequently Not Possible
     To Determine The Correct Message-ID...............................21

F.   Lists Of Message-IDs Are Prone To Human And Computer Error .......21

VIII.  DEFENDANTS HAVE NO BASIS TO REQUIRE LISTS OF
       MESSAGE-IDS AS DMCA NOTICES ...............................21

A.   List Of Message IDs Do Not Comply With The Requirements
     of the DMCA........................................................22

B.   Defendants Do Not Explain How To Find Message-IDs .....................23

C.   Message-IDs Are Extremely Burdensome To Cut And
     Paste By Hand .....................................................23

D.   To The Extent That Message-IDs Are Needed, To Avoid Error,
     Defendants Need To Extract Them...................................24

IX.   GIGANEWS RELIES ON WITNESSES WHOSE CREDIBILITY
      IS AT ISSUE .......................................................24

IX.   CONCLUSION ........................................................25

# TABLE OF AUTHORITIES

## Cases

*ALS Scan, Inc. v. RemarQ Communities, Inc.*, 239 F.3d 619 (4th Cir. 2001)........12, 14

*Arista Records, Inc. v. MP3Board, Inc.*, 2002 WL 1997918, at * 9 (S.D.N.Y., August 29, 2002)...............................................................................................................14

*Perfect 10, Inc. v. CCBill, LLC*, 488 F.3d 1102 (9th Cir.),
    *cert. denied*, 552 U.S. 1062 (2007) .............................................2, 3, 11, 17

*Perfect 10, Inc. v. Yandex, N.V.*, 2013 WL 1899851............................................14, 15

## Statutes

17 U.S.C. § 512(c) ...........................................................................................passim

## Other Authorities

J. Dratle and S. McJohn, *Cyberlaw-Intellectual Property in the Digital Millennium* (Law Journal Press 2010) ......................................................17

Plaintiff Perfect 10, Inc.'s Opposition to Defendants' Motion for Partial Summary Judgment on Inadequacy of Perfect 10 Inc.'s Notices Under Section 512 Safe Harbor

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants Giganews, Inc. ("Giganews") and Livewire Services, Inc. ("Livewire") (collectively, "Defendants") have filed a Motion for Partial Summary Judgment (the "Motion") regarding the alleged inadequacy of the notices sent to them by Plaintiff Perfect 10, Inc. ("Perfect 10") under the Digital Millennium Copyright Act (the "DMCA") that is fatally flawed.  This Court should deny the Motion for several separate and independent reasons.

First, although Defendants seek to obtain a ruling that all of Perfect 10's notices fail to satisfy the requirements of Section 512(c) of the DMCA,[1] Defendants have failed to submit to this Court 37 of Perfect 10's notices that are at issue in the case.  In particular, Defendants improperly classify Perfect 10's notices into five groups (Groups A through E) which are simply not representative of Perfect 10's notices. Defendants further fail to address key Perfect 10 notices including notices where Message-IDs are not available to the copyright holder, which is a common occurrence.

Second, Defendants are not entitled to any relief because at least 139 of the notices upon which Defendants seek to rely have been substantially altered, either because portions of the notice have been cropped off or because the notice has been reduced and degraded so as to make it almost impossible to read.  Because Defendants fail to submit or address the DMCA notices actually submitted to them by Perfect 10, their Motion fails.

Even if Defendants overcome these obstacles (and they should not be able to do so), Defendants still are not entitled to any relief.  In order for a notice to comply with Section 512(c)(3)(A) of the DMCA, it must satisfy six requirements.  Defendants do not dispute that Perfect 10's notices satisfy five of these requirements.  Rather, the

---

[1] Defendants' [Proposed] Order asks this Court to enter partial summary judgment that "all of Perfect 10's notices, *other than* the notices in which Perfect 10 transmitted Message-IDs in machine-readable formats" are inadequate under Section 512(c) of the DMCA.  See Proposed Order (Docket No. 534-38) at 1 (emphasis in original).

1                                    2:11-cv-07098-AB-SH(x)
Plaintiff Perfect 10, Inc.'s Opposition to Defendants' Motion for Partial Summary Judgment on
Inadequacy of Perfect 10 Inc.'s Notices Under Section 512 Safe Harbor

Motion only challenges whether Perfect 10's notices provide "[i]dentification of the material that is claimed to be infringing … and information reasonably sufficient to **permit** the service provider to *locate* the [allegedly infringing] material." 17 U.S.C. § 512(c)(3)(A)(iii) (emphasis added).  Defendants assert that a notice does not comply with this requirement unless it includes "machine-readable"[2] Message IDs for each infringing work.   As the Court likely is aware by now, a Message-ID is a character string such as Ot-dnen7MO3tpivUnZ2dnUVZ8teWn Z2d@giganews.com.

Defendants simply are wrong.  Their Motion is based entirely on the false premise that, unless Perfect 10 strictly complies with Defendants' Message-ID requirement, its notices are deficient.  Neither the DMCA nor case law so demands.  On the contrary, it is well settled that Section 512(c)(3) does not require any particular format for DMCA notices.  Requiring a Message-ID may be convenient for Defendants, but it is not statutorily compelled.  Rather, Perfect 10 need only show that its notices satisfy the language of Section 512(c)(3)(A)(iii).

As explained in Section V below, Perfect 10's notices, including the sample notices discussed in the Motion, comply with Section 512(c)(3)(A)(iii).  These notices identify the material that is claimed to be infringing and provide information reasonably sufficient to permit Defendants to locate the allegedly infringing material.  In fact, because Defendants have processed at least 12 of Perfect 10's notices, and other Usenet operators have also processed Perfect 10's notices, Defendants cannot assert that such notices are deficient.

Defendants nevertheless assert that Perfect 10's notices were "burdensome" to process.  This claim fails, for two separate reasons.  First, the language of "burden" is nowhere found in Section 512(c)(3) of the DMCA.  *Perfect 10, Inc. v. CCBill, LLC*, 488 F.3d 1102 (9th Cir.), *cert. denied*, 552 U.S. 1062 (2007) ("*CCBill*"), upon which

---

[2] Nowhere in their moving papers do Defendants explain what "machine readable" Message-IDs are.  Moreover, Giganews's website states only that DMCA notices must include Message-IDs. Zada Decl. ¶ 15, Exh. 6.

Plaintiff Perfect 10, Inc.'s Opposition to Defendants' Motion for Partial Summary Judgment on Inadequacy of Perfect 10 Inc.'s Notices Under Section 512 Safe Harbor

Defendants mistakenly rely, is not to the contrary.  *CCBill* does not change the language of Section 512(c)(3)(A)(iii); it simply restates the statutory requirement that it is the "burden" of the copyright holder to provide information reasonably sufficient to permit the service provider to locate allegedly infringing content.

Furthermore, contrary to Defendants' claim, Perfect 10's notices are not burdensome to process.  Rather, as shown below, Perfect 10's notices could have been processed at least *2,000 times faster* than the average time Google spends processing notices it receives via its electronic web form.  In fact, Perfect 10's notices which provide a search term, such as "perfecttengallery," can be processed at a rate **533,250 times faster** than the typical web form notice processed by Google.  Therefore, there is no basis for this Court to conclude that such notices are "burdensome."

Finally, Defendants' contention that notices must include lists of Message-IDs in order to comply with the DMCA also fails, for multiple reasons.  First, because Message-IDs are incomprehensible, they fail to comply with Section 512(c)(3)(A)(iii) because they do not identify the allegedly infringing material to a lay person (such as a juror).  Second, Defendants cannot be allowed to require Message-IDs in DMCA notices, when such Message-IDs frequently do not exist.  Third, Message-IDs are extraordinarily prone to both human and computer error.  Approximately 44.7% of all Message-IDs produced by Defendants in discovery (1,150,000 Message-IDs), had one or more errors, making them unusable.  Fourth, Defendants cannot be allowed to require Message-IDs, when they fail to explain how to locate Message-IDs, let alone expeditiously.  For this reason, Defendants should be barred under the principle of equitable estoppel from insisting on Message-IDs.[3]

Giganews has *25,000 terabytes* of copyrighted works on its servers, which it copies, distributes, and sells to Livewire and its users without permission from *any*

---

[3] Judge Collins' January 29, 2104 Order (Dkt No. 180), upon which Defendants heavily rely, is not to the contrary.  New evidence submitted by Perfect 10 to this Court, which was not before Judge Collins, demonstrates that it is not burdensome for Defendants to process Perfect 10's notices.

3                     2:11-cv-07098-AB-SH(x)
Plaintiff Perfect 10, Inc.'s Opposition to Defendants' Motion for Partial Summary Judgment on
Inadequacy of Perfect 10 Inc.'s Notices Under Section 512 Safe Harbor

1   copyright holders.  Defendants have failed to produce even ONE example of an

2   authorized copyrighted work on the Giganews's Usenet servers.  Giganews has yet to

3   distinguish its operation from those of usenet.com, hotfile.com, news-service.com,

4   guba.com, binnews.com, or megaupload.com, the operators of which were found

5   liable for copyright infringement and/or are facing 25 years in jail for criminal

6   copyright infringement.  Defendants are now attempting to avoid liability for their

7   conduct by asking this Court to accept their own self-created requirements for DMCA

8   notices, even though such requirements are contrary to the statute and case law.  This

9   Court should reject Defendants' baseless contentions and deny the Motion.

10  **II.     RELEVANT FACTUAL BACKGROUND**

11       **A.     Giganews's Business**

12       Giganews owns and operates giganews.com – a site which offers 25,000 *trillion*

13  bytes of content to its users.  Declaration of Dr. Norman Zada, submitted herewith

14  ("Zada Decl.") ¶ 6, Exh. 2, p. 6.  In exchange for paying a monthly fee, a user receives

15  a Giganews username and password. The user must also purchase a subscription to

16  use a newsreader, such as the newsreader created by Giganews called "Mimo" or a

17  third-party newsreader such as "Newsrover."  Zada Decl. ¶¶ 6, 9, Exh. 2, p. 5.  The

18  newsreader allows the user to search through and download the content offered by

19  Giganews.

20       **B.     Livewire's Business**

21       Livewire contracts with Giganews to provide Livewire users with content that is

22  stored on Giganews's Usenet servers.  Livewire owns and operates various sites

23  selling such access, including usenet.net.  Zada Decl. ¶ 7, Exh. 3.  Giganews and

24  Livewire have the same DMCA agent, Ronald Yokubaitis, the Co-CEO of Giganews.

25  Zada Decl. ¶ 7.

26       **C.     Giganews's DMCA Notice Requirements**

27       Giganews's published DMCA instructions require a list of Message-IDs.  A

28  Message-ID is an undecipherable character string such as Ot-dnen7MO3tpivUnZ2dn

---

Plaintiff Perfect 10, Inc.'s Opposition to Defendants' Motion for Partial Summary Judgment on
Inadequacy of Perfect 10 Inc.'s Notices Under Section 512 Safe Harbor

UVZ8teWnZ2d@giganews.com.  Giganews claims it needs Message-IDs to remove infringing messages.  Zada Decl. ¶¶ 11-13, Exhs. 1, 4.  Giganews also accepts a list of Message headers as a valid DMCA notice.  Zada Decl. ¶ 15, Exh. 6, p. 5.  A Message header contains one or more Message-IDs, along with other information regarding the infringing message.  On its website, Giganews does not explain how to find Message IDs or Message headers, let alone expeditiously.  Giganews's DMCA agent, Ronald Yokubaitis, testified during deposition that he did not know how to find Message-IDs.  Declaration of Lynell D. Davis, submitted herewith ("Davis Decl.") Exh. 3 [Deposition Transcript of Ronald Yokubaitis ("R. Yokubaitis Depo.")] 91:12-24, 94:9-13, 194:22-195:9.  Giganews will only accept by email DMCA notices that are six megabytes or less.  This limit is substantially lower than the limit of other service providers.  Zada Decl. ¶ 6.  Giganews requires that the copyright holder state under penalty of perjury that the notice is accurate, which is not a requirement of the DMCA.  Zada Decl. ¶ 15, Exh. 6; *see generally* 17 U.S.C. § 512(c)(3).

### D.   The Mimo Automatic Message-ID Extraction Feature

Between March 25, 2009 and May 11, 2014, Perfect 10 spent months creating and sending to Giganews hundreds of DMCA notices.  Zada Decl. ¶ 2.  Defendants refused to process most of the notices because they contended that it was too burdensome for them to manually extract the Message-ID corresponding to each identified infringing message.  Davis Decl., ¶ 4, Exh. 3 (R. Yokubaitis Depo.) at 41:10-43:9, 50:16-51:4.  On May 21, 2014, however, after Perfect 10 had sent to Defendants the last of its more than 335 DMCA notices, Perfect 10 independently discovered that the Mimo newsreader has an Automatic Message-ID extraction feature that would have allowed Defendants to highlight a group of messages and extract all of the associated Message-IDs into a separate text file in seconds.  Zada Decl. ¶¶ 23-24, Exh. 1, Video Demonstrations Folder, Video 4.  Perfect 10 also independently discovered on or about that same day that three other popular newsreaders – Newsrover, Newsbin, and Newsleecher – have similar features that allow a user to

1   automatically extract Message-IDs.  Zada Decl. ¶¶ 23-24, Exh. 1, Video

2   Demonstrations Folder, Videos 2, 3.

3       **E.      Downloading Perfect 10 Content Offered By Defendants**

4       Perfect 10 has included a short video demonstration, Video 1 (Zada Decl.

5   (disk), in a folder "Video Demonstrations"), which shows how content may be

6   downloaded using a membership to Defendants' websites.  A search is performed on

7   "Karolina Runosson," the name of a Perfect 10 model, using the Giganews Mimo

8   newsreader.  Messages appear, along with the date the message was posted, the name

9   of the poster, and other related information, all of which will be referred to as the

10  "Message-Description." Full-size Perfect 10 images are downloaded, each with an

11  identifying file name (also referred to as an "Image Identifier"), such as "Karolina

12  Runosson02.jpg."  The Image Identifier normally can be searched on to find

13  associated messages containing that same infringing Perfect 10 image.  Zada Decl. ¶¶

14  11-13, Exhs. 1, 4.   This video demonstrates why Message-Descriptions, which are

15  comprehensible and can be searched on, are more usable than Message-IDs, which are

16  incomprehensible and cannot be searched on.

17  **III.   DEFENDANTS HAVE FAILED TO SUBMIT OR ADDRESS ALL OF**

18        **PERFECT 10'S NOTICES AT ISSUE IN THE CASE**

19        Defendants' Motion misleadingly asks this Court to rule that all of Perfect 10's

20  DMCA notices are deficient, even though all of these notices are not before the Court.

21  Rather, Defendants have not even submitted 37 of the notices sent to them by Perfect

22  10.  Zada Decl. ¶ 25. Defendants have failed to address a number of key Perfect 10

23  notices, including Sample Notices submitted by Perfect 10 in connection with Perfect

24  10's Motion for Partial Summary Judgment on the sufficiency of its notices (Dkt. No.

25  449), which cannot be properly placed in any of the five groups of notices Defendants

26  discuss.

27        Two of Perfect 10's Sample Notices, neither of which were before Judge

28  Collins when she issued her January 29, 2014 Order, demonstrate this point.  Sample

Notice 1 recommended that Defendants perform a search on "perfecttengallery" and remove all resulting messages.  *See* Dkt No. 449-12.   Representative samples of both the allegedly infringing images and the allegedly infringing messages were provided, sufficient to satisfy the first prong of Section 512(c)(3)(A)(iii).  A representative sample of infringed images was also provided.  Defendants could have used Sample Notice 1 to remove 4,951 infringing messages (which were all contained in a single .zip file) in approximately 20 seconds.  See Zada Decl. ¶ 24, Exh. 1 (the disk) Video 5.  This translates to approximately 247 images per second.  By contrast, Google claims that it processes DMCA notices submitted via its electronic form at the rate of approximately *one image blocked every thirty six minutes* (one image blocked per 2,160 seconds).  Zada Decl.  ¶ 45, Exh. 28.  Thus, using a notice that Defendants failed to address in their Motion, Defendants could have removed infringing images at a rate of 247 x 2,160 or **533,520 times faster** than Google processes a typical notice!

Defendants likewise fail to submit or address Sample Notice 5.  *See* Dkt No. 449-16.  Sample Notice 5 provided four instances of large files containing multiple messages where Message-IDs were not available but infringing images nevertheless could be downloaded.  See Declaration of Dr. Norman Zada (Dkt. No. 449-3) ("Zada DMCA Decl.") ¶ 31, Exh. 14.  This notice demonstrates that there is no basis for Defendants' requirement that a copyright holder must provide Message-IDs, because Message-IDs in many cases cannot be obtained.  In fact, Perfect 10 has provided evidence that in as many as 50% of the situations where infringing messages are contained in large files such as .zip files, an error message appears when one attempts to obtain the Message-ID.  Perfect 10 has downloaded more than 6,680 Perfect 10 images from Defendants' websites when Message-IDs were not available.  Zada Decl. ¶¶ 16-18, Exhs. 1, 7-9.

Defendants' failure to submit or address Sample Notices 1 and 5, as well as 35 other Perfect 10 notices they have not provided to the Court, provides a separate and independent basis for this Court to deny the Motion.

## IV.   DEFENDANTS' SUBMISSION OF ALTERED NOTICES COMPELS THIS COURT TO DENY THE MOTION

In connection with the Motion, Defendants have submitted Exhibit F to the Declaration of Ronald Yokubaitis – a disk that appears to include 388 distinct DMCA notices.  A review of Exhibit F establishes that at least 139 of these notices, or 36%, have been altered.  Portions of these notices have been cropped off or the notices have been reduced and degraded so that they are impossible to read.  In fact, some notices have been altered to the point of being unrecognizable.  Zada Decl. ¶ 25, Exh. 11. Moreover, the versions of the notices found in Exhibit F do not have Bates numbers and were not produced in discovery.  Zada Decl. ¶ 25, Exh. 11.

## V.   THE SAMPLE NOTICES DISCUSSED BY DEFENDANTS ALL SATISFY SECTION 512(C)(3)(A)(iii) OF THE DMCA

Although Defendants ask this Court to rule that all of Perfect 10's notices are deficient, their moving papers focus entirely upon five groups of notices (A-E), from which they have selected five sample notices, which we will refer to as Sample Notices A-E.  Because Defendants apparently concede that Sample Notice E complies with their DMCA requirements, Perfect 10 will only address Sample Notices A-D.  As explained below, although these notices are not representative of the various notices submitted by Perfect 10 to Defendants, each notice complies with Section 512(C)(3)(A)(iii) and thus satisfies the DMCA's notification requirements.

### A.   "Group A" Consists Of A Single Notice

As far as Perfect 10 is able to determine, there is only one Group A notice – a notice sent by Perfect 10 to Giganews via Federal Express on March 25, 2009, which consisted of full-size images with their File Names and/or Image Identifiers. Defendants' suggestion that this notice did not identify the infringing material or allow such material to be located [*see* Memo at 7:9-11] is simply wrong.  The infringing material was the full-size images that were included with the notice, and each had an Image Identifier that allowed the image to be rapidly located.  This notice

could have been processed at the rate of at least one image every 1.06 seconds, which is extraordinarily fast by DMCA standards and cannot possibly be considered burdensome.  Zada Decl. ¶¶ 27-28, Exhs. 13-14. In fact, Perfect 10 sent a similar notice at almost exactly the same time to two other Usenet operators, newsdemon.com and thundernews.com.  Both processed the notices they received, whereas Giganews did not.  Zada Decl. ¶ 36, Exh. 20.

Because Sample Notice A both identified the allegedly infringing images by providing copies of them, and allowed the associated infringing messages to be rapidly located and removed at the rate of about one message per 1.06 seconds, the notice substantially complied with Section 512(c)(3)(A)(iii) of the DMCA.

### B. Examples of Compliant Group B Notices

Sample Notice B is unique and is not representative of any of the other notices that Defendants label as "Group B" notices.  In fact, Defendants have *left out of their Motion* numerous Perfect 10 "Group B" notices, including nine of the 12 Group B notices that they belatedly processed in late 2011, which they still claim are deficient. Zada Decl. ¶ 29.  Defendants' statement that "[t]he [Group B] notices did not state exactly which messages Perfect 10 believed contained infringing material" [Memo at 7:27-28] is demonstrably false, and is symptomatic of the false and misleading statements Defendants have made throughout this case.  For example, Exhibit 15 to the Zada Declaration was Sample Notice 1 in connection with Perfect 10's earlier motion before Judge Collins (Dkt No. 142).  This notice identified the material claimed to be infringing, and thus satisfied the first part of Section 512(c)(3)(A)(iii), because it included copies of the infringing images.  The notice also provided copies of the infringing messages and copies of the authorized images from *Perfect 10 Magazine*, as well as a search term that led exclusively to content that infringed Perfect 10's images.  That content could have been removed at the rate of 1.3 images per second.  Zada Decl. ¶¶ 29-31, Exhs. 1 (Video 2), 15.  This is more than 2,800 times faster than Google's typical processing rate and cannot possibly be considered

"burdensome" under any reasonable DMCA standard.

Contrary to Defendants' mistaken assertion, Judge Collins did not find that this notice, or any of the other notices submitted by Perfect 10 in connection with its earlier motion, were deficient.  Rather, Judge Collins found only that there were triable issues of fact as to whether these notices were DMCA compliant.  Given that the existence of the Mimo automatic Message-ID extraction feature was not before Judge Collins, and given Perfect 10's new evidence that Defendants could have processed the notice 2,800 times faster than Google's normal processing time, this notice should be found to satisfy Section 512(c)(3)(A)(iii).

### C.    Sample Notice C Is Altered But Satisfies Section 512(c)(3)(A)(iii)

Sample Notice C is attached to the Declaration of Kathleen Lu in support of the Motion (Dkt No. 534-35) ("Lu Decl.") as Exhibit 22, pp. 764 -770.  As may be seen by a review of the actual notice sent by Perfect 10, found at Exhibit 16 to the Zada Declaration, the version of the notice submitted by Defendants ***has been improperly altered.***  The poster name, Message-ID, and newsgroup have been cropped off on the right side of pages 4-10 of the notice.  Moreover, the notice lacks Bates numbers, was never produced in discovery, and should be stricken.   Zada Decl.  ¶ 32, Exh. 16.

The actual notice identified the allegedly infringing material by attaching copies of the both the allegedly infringing images and the infringing messages, and by providing a search term "H99 P10" that led to exclusively infringing material.  The notice allowed Giganews to expeditiously locate and remove allegedly infringing material because it could have been processed at the rate of about 1.13 messages per second – approximately 2,440 times faster that Google's processing rate.  Zada Decl. ¶ 32, Exhs. 1 (Video 3), 16.  The notice thus clearly satisfies Section 512(c)(3)(A)(iii).

Defendants' claim that Giganews had to "review each image in each notice and manually re-type what appeared to be the Message-ID in the image" [*see* Memo at 8:18-20], is another example of a false and misleading statement that Defendants used to mislead Judge Collins.  No such manual typing was necessary to process the notice,

Plaintiff Perfect 10, Inc.'s Opposition to Defendants' Motion for Partial Summary Judgment on Inadequacy of Perfect 10 Inc.'s Notices Under Section 512 Safe Harbor

as demonstrated by the video submitted by Perfect 10.  Zada Decl. ¶ 32, Exhs. 1 (Video 3), 16.

### D.     Sample Notice D Is Altered, Improper, and Should be Stricken

Sample Notice D is horribly degraded, was never produced in discovery, and should be stricken.  Defendants appear to have reduced the notice by approximately 30% in size and have repeatedly copied the notice to substantially degrade its quality.  Zada Decl. ¶ 33, Exh. 17.

Defendants' only complaint is that the notice was illegible when it came out of Giganews's fax machine.  Memo at 9:23-25.  However the notice was not illegible when it was placed into Perfect 10's fax machine.  In fact, Defendants have admitted that they were able to process another copy of the notice that was produced in discovery on June 12, 2014, sometime in September 2014.  Memo at 10 n.7; Lu Decl. ¶ 27; SUF ¶ 126.  Perfect 10 is only responsible for the quality of its notices, not the quality of Defendants' fax machine.  Furthermore, the fax machine that Perfect 10 used is a business-grade machine that is highly recommended.  Perfect 10 has never had an issue with the quality of faxes from that machine have never been an issue before.  Zada Decl.  ¶ 34, Exh. 18.  On the other hand, Defendants have provided no evidence as to the quality of their fax machine, or whether Defendants have *ever* processed a notice sent by fax or by mail.

In order to be eligible for a DMCA safe harbor, Defendants must be able to process notices sent by fax, mail, or email.  *See CCBill,* 488 F.3d 1102, 1109.  Because the quality of Defendants' fax machine makes clear they are incapable of accepting notices by fax, Defendants should be estopped from challenging the sufficiency of any of Perfect 10's faxed notices.

Finally, even if Defendants were unable to read any of the Message-IDs in that notice, they were still provided with information sufficient to locate the infringing material as demonstrated in Video 4 found in Exhibit 1 to the Zada Declaration.

Plaintiff Perfect 10, Inc.'s Opposition to Defendants' Motion for Partial Summary Judgment on Inadequacy of Perfect 10 Inc.'s Notices Under Section 512 Safe Harbor

**E.      The Fact That Other Usenet Operators Have Processed Perfect 10's Notices Shows That They Comply With Section 512(c)(3)(A)(iii)**

Defendants' assertion that Perfect 10's notices are deficient is further belied by the fact that at least four other Usenet operators have processed DMCA notices sent by Perfect 10 that were less detailed than those sent to Defendants.  Zada Decl. ¶¶ 36-40, Exhs. 20-24.  If those notices included information sufficient to allow those other Usenet operators to locate the allegedly infringing material, then the information in Perfect 10's notices must have been reasonably sufficient to permit Defendants to locate the infringing material as well.  Moreover, Defendants themselves have processed 12 of Perfect 10's notices, once again establishing their sufficiency.  Zada Decl. ¶ 29.  For these reasons as well, the Motion fails.

**F.      Applicable Case Law Supports The Conclusion That Perfect 10's Notices Comply With The DMCA**

The only appellate case to address what constitutes a compliant notice to a Usenet provider under the DMCA supports the conclusion that Perfect 10's notices satisfy the requirements of Section 512(c)(3)(A)(iii). In *ALS Scan, Inc. v. RemarQ Communities, Inc.*, 239 F.3d 619 (4th Cir. 2001), Defendant RemarQ, a Usenet provider, provided its subscribers with access to two newsgroups which contained Plaintiff ALS Scan's name in the title and contained hundreds of postings that infringed ALS Scan's copyrighted images:  "alt.binaries.pictures.erotica.als" and "alt.als." *Id.* at 620.  ALS Scan sent RemarQ a letter advising RemarQ that these newsgroups were created for the sole purpose of violating ALS Scan's copyrights and demanding that RemarQ cease carrying these newsgroups.  RemarQ refused to take any action, but advised ALS Scan that RemarQ would remove individual infringing items if ALS Scan identified them with "sufficient specificity." *Id.* at 620-21.

After ALS Scan sued, RemarQ asserted that ALS Scan failed to comply with the DMCA's notice requirements because "ALS Scan never provided it with a 'representative list' of the infringing photographs, as required by § 512(c)(3)(A)(ii),

1    nor did it identify those photographs with sufficient detail to enable RemarQ to locate

2    and disable them, as required by § 512(c)(3)(A)(iii)." *Id.* at 624.  RemarQ buttressed

3    its assertion "with the observation that not all materials at the offending sites

4    contained material to which ALS Scan held the copyrights." *Id.* at 624.

5            In rejecting RemarQ's position, and holding that ALS Scan's letter

6    "substantially complied with the notification requirement" of providing "information

7    reasonably sufficient to enable RemarQ to locate the infringing material" [*id.* at 625],

8    the Fourth Circuit described the requirements of Section 512(c)(3)(A)(iii) as follows:

9            [W]ith respect to location information, the copyright holder must provide

10           information that is "*reasonably* sufficient" to permit the service provider

11           to "locate" this material. *Id.* § 512(c)(3)(A)(iii) (emphasis added).  This

12           subsection specifying the requirements of a notification **does not seek to**

13           **burden copyright holders with the responsibility of identifying every**

14           **infringing work – or even most of them** – when multiple copyrights are

15           involved. Instead, the requirements are written so as to **reduce the**

16           **burden of holders of multiple copyrights who face extensive**

17           **infringement of their works**. Thus, when a letter provides notice

18           equivalent to a list of representative works that can be easily identified by

19           the service provider, the notice substantially complies with the

20           notification requirements.

21   *Id.* at 624 (emphasis in italics in original; emphasis in bold added).  Thus, under *ALS*

22   *Scan*, *it was sufficient for Plaintiff ALS Scan to identify a collection of messages, the*

23   *vast preponderance of which infringed its copyrights.*  It was not necessary for ALS

24   Scan to identify each specific infringing message, let alone the Message-ID for each

25   such message.

26           Perfect 10's notices are demonstrably more detailed and complete than the

27   notice found compliant in *ALS Scan.*  Instead of merely pointing to a particular

28   newsgroup, and stating that *almost all* of the images in that newsgroup are infringing,

---

Plaintiff Perfect 10, Inc.'s Opposition to Defendants' Motion for Partial Summary Judgment on
Inadequacy of Perfect 10 Inc.'s Notices Under Section 512 Safe Harbor

as plaintiff did in *ALS Scan*, Perfect 10 provided Defendants with a recommended search that resulted in 100% infringing Perfect 10 images.  Zada Decl. ¶ 24, Exh. 1 (Video 5).  Furthermore, Perfect 10 provided copies of a representative sample of the infringed images, rather than just pointing Defendants to its website, as plaintiff did in *ALS Scan*.  Application of *ALS Scan* thus compels the conclusion that Perfect 10's notices substantially satisfy Section 512(c)(3)(A)(iii), regardless of whether they include Message-IDs.  *See also Arista Records, Inc. v. MP3Board, Inc*., 2002 WL 1997918, at * 9 (S.D.N.Y., August 29, 2002) (record company's letter naming particular artists and songs, with screen shots of defendant's website, without URLs, was sufficient to locate the links of the infringing materials); Zada Decl. ¶48, Exh. 31.

## VI.   DEFENDANTS' INCORRECT ASSERTIONS PROVIDE NO BASIS TO RULE THAT PERFECT 10'S NOTICES DEFICIENT

Defendants raise various mistaken and misleading contentions in an attempt to show that Perfect 10's notices are deficient.  As explained below, this Court should reject all of these assertions.

### A.   There Is No Required Format For A DMCA Notice

Defendants first contend that Perfect 10's notices are deficient because they fail to include Message-IDs.  Memo at 19:26-28.  This assertion is contrary to law.  The issue before this Court is whether Perfect 10's notices substantially satisfy Section 512(c)(3)(A)(iii), not whether Perfect 10 should have included Message-IDs in its notices.  "Section 512(c)(3) does not require any particular format for DMCA notices."  *Perfect 10, Inc. v. Yandex, N.V.*, 2013 WL 1899851, at *5 ("*Yandex*").  Thus, the fact that many Perfect 10's notices contained Message Descriptions, rather than Message-IDs, does not invalidate these notices.  *See* Section VII, below.  In fact, the Perfect 10 notice that the *Yandex* court found to comply with the DMCA attached copies of infringing images and authorized images, much in the same fashion as the notices sent by Perfect 10 to Defendants at issue here.  Zada Decl. ¶ 41, Exh. 25.

Plaintiff Perfect 10, Inc.'s Opposition to Defendants' Motion for Partial Summary Judgment on Inadequacy of Perfect 10 Inc.'s Notices Under Section 512 Safe Harbor

### B.     Perfect 10's Notices Are Written Documents

Defendants also mistakenly contend that Perfect 10's written notices do not constitute a "written communication under Section 512(c)(3).  Memo at 16:11-13. This assertion is unsupportable and incorrect, and no Court has ever made such a finding.  On the contrary, the Perfect 10 notice found compliant in *Yandex* had very similar written language.  *See Yandex,* 2013 WL 1899851, at *5.

### C.     Perfect 10's Notices Identified The Material That Is Claimed To Be Infringing

Defendants incorrectly assert that Perfect 10 failed to satisfy the first prong of Section 512(c)(3)(A)(iii) because its notices did not identify the allegedly infringing material.  As demonstrated in Section V above, Perfect 10's notices satisfied this requirement in multiple ways.  These notices attached copies of the allegedly infringing images with their Image Identifiers in thumbnail format and generally provided all or a representative sample of the allegedly infringing messages as well. Moreover, many notices also provided a search term which identified all of the infringing messages.  Defendants have not shown, and cannot show, that such information fails to comply with the first prong of Section 512(c)(3)(A)(iii).

### D.     Perfect 10's Notices Also Provided Information Sufficient To Locate The Allegedly Infringing Material

Perfect 10's notices also satisfied the second prong of Section 512(c)(3)(A)(iii), because they provided information sufficient for Defendants to locate the allegedly infringing material by including one or more of the following: (i) Image Identifiers for each allegedly infringing image, which Defendants could have used to remove blocks of images at a time [Zada Decl. ¶¶ 27-28, Exhs. 13-14]; (ii) copies of the actual infringing messages [Zada Decl. ¶¶ 31-32, Exhs. 15-16]; and (iii) search terms which allowed hundreds of infringing messages to be located and removed, typically in seconds.  Zada Decl. ¶¶ 32-33, Exhs. 16-17.

### E.    Defendants' Claims Of "Burden" Are Imaginary

Defendants assert that they it would be extremely burdensome for them to process Perfect 10's notices.  Memo at 16:23-17:16.  Defendants are wrong.  As explained above, Sample Notices A, B, and C are substantially less burdensome to process than the average DMCA notice, because these notices all could have been processed at least 2,000 times faster than Google's average processing rate.  Zada Decl.  ¶¶ 27-28, 31-33, Exhs. 1, 13-17; Declaration of Professor J. Douglas Tygar, submitted herewith ("Tygar Decl.") ¶¶ 13-21.  In addition, a review of Defendants' alleged list of "burdens" shows that the steps they describe are nothing more than would be required to process any DMCA notice:

Burden No. 1: Reading the notice.  DMCA agents are supposed to read DMCA notices they receive.  Failure to read DMCA notices constitutes willful blindness.  If Defendants read the hundreds of thousands of DMCA notices they have received, they would realize that virtually everything on their servers infringes copyright.

Burden Nos. 2 and 3: Acquiring the newsreader and selecting the newsgroup.  DMCA agents are supposed to set up a department to process DMCA notices and provide the department with whatever it needs to do so.  Purchasing Newsrover costs $30 and setting it up takes ten minutes.  Zada Decl. ¶ 9.   Defendants already have the Mimo newsreader.  Moving from one newsgroup to another using Mimo takes at most six seconds.  Zada Decl. ¶ 35, Exh. 19.  Defendants are making billions from infringement.  Under these circumstances, the assertion that spending $30 and ten minutes to set up a newsreader constitutes a burden is laughable.

Burden No. 4: Typing in the search and pressing the enter button.  This task takes a few seconds at most.  Zada Decl. ¶ 24, Exh. 1, Video 5.

Burden Nos. 5 and 6: Burden 5 is non-existent for Perfect 10's notices that ask Defendants to conduct a search and remove all resulting messages.  Once the search is performed, Defendants could simply employ the Mimo or Newsrover automatic Message-ID/Message Header extraction feature to remove all the resulting messages

in seconds.   Zada Decl. ¶ 24, Exh. 1, Video 5.

Defendants' contention that search results may change for searches recommended by Perfect 10, or that Defendants need to do any comparison or counting of search results [Memo at 17:8-14], is misplaced.  In most instances, when the search recommended by Perfect 10 is performed, the result will be no more than a few .zip files, all of which contain exclusively Perfect 10 content.  Zada Decl. ¶ 17, Exh. 8.  Defendants provide no evidence to the contrary.  Furthermore, Sections 512(f) and (g) of the DMCA protect Defendants from any liability for removing non-Perfect 10 content as a result of an over-inclusive Perfect 10 notice, should that ever occur.  As one treatise has noted, Sections 512(f) and (g) of the DMCA "provide[] sufficient disincentives and correctives for overbroad notification to obviate any need for hypertechnical interpretation of the requirement for identifying works allegedly infringed."  J. Dratle and S. McJohn, *Cyberlaw-Intellectual Property in the Digital Millennium* (Law Journal Press 2010) at 6-88.7.

Defendants currently have no person who regularly reviews DMCA notices.  If Defendants can spend the time and money to create an elaborate computerized system to automatically process millions of DMCA notices, they certainly can spend a few minutes to purchase a subscription to the Newsrover newsreader and load it with the three newsgroups needed to process the vast preponderance of Perfect 10 notices. Zada Decl. ¶ 9.

### F.   Case Law Does Not Support A Message-ID Requirement

In support of their Motion, Defendants rely almost exclusively on the Ninth Circuit's ruling in *CCBill*.  *CCBill* provides no basis for this Court to grant the Motion.  The case merely stands for the proposition that it is the copyright holder's burden to provide information to **locate** the infringing material, a requirement that simply tracks the language of the statute.  *CCBill*, 488 F.3d at 1113.   The statutory requirement set forth in Section 512(c)(3)(A)(iii) is information reasonably sufficient to **locate** the allegedly infringing material, not information sufficient to **remove** that

17                                     2:11-cv-07098-AB-SH(x)

Plaintiff Perfect 10, Inc.'s Opposition to Defendants' Motion for Partial Summary Judgment on Inadequacy of Perfect 10 Inc.'s Notices Under Section 512 Safe Harbor

1    material.  Defendants have not shown, and cannot show, that it is unreasonably

2    burdensome for them to locate the allegedly infringing material identified in Perfect

3    10's notices.  Instead, they attempt to mislead the Court by confusing the issue of

4    **removing** content with the issue of **locating** content.

5           Perfect 10's notices, however, provide information sufficient both to locate and

6    remove allegedly infringing material.  Because the Message-ID extraction process is

7    almost instantaneous, a Perfect 10 notice that asks Defendants to perform a search and

8    remove all resulting messages both locates the material and allows Defendants to

9    remove the material in seconds.  Such a notice simply is not burdensome to process.

10          *CCBill* is of no help to Defendants for an additional reason.  The DMCA notice

11   at issue in *CCBill* was not a single document.  Instead, the notice consisted of more

12   than 22,185 pages of three different sets of documents, sent in eight bankers' boxes as

13   many as eight months apart.  Zada Decl. ¶ 47, Exh. 30.  Because the notice was not a

14   single document, it was unduly burdensome to use to locate the infringing material.

15   *CCBill,* 488 F.3d at 1112-1113.  Moreover, the notice failed to satisfy Sections

16   512(c)(3)(A)(v) and (vi) because it lacked the necessary swearing language.  Zada

17   Decl. ¶ 47, Exh. 30.  Neither Sample Notices A-D nor any of Perfect 10's notices has

18   any of those deficiencies.  Rather, each Perfect 10 notice is a single, self-contained

19   document.  Accordingly, *CCBill* provides no support for Defendants' position.

20   **VII.  MESSAGE DESCRIPTIONS ARE MUCH MORE EFFICIENT THAN**
21          **MESSAGE-IDS IN LOCATING INFRINGING MESSAGES**

22          A Message Description is the line of text that appears in each line of a

23   newsreader.  An example of a Message-Description is "Don Chu Luvitt > Your P10

24   2007 (which is the Message-Title), followed by "24 Jan 2009 06:41 PM" (the date of

25   the post) followed by "224 MB" (the size of the file posted), followed by

26   BillC@myplace.com (BillC).  Zada Decl. Exh. 8, p 11.  Perfect 10 provided Message

27   Descriptions, rather than Message- IDs, in many of its DMCA notices.  Zada Decl. ¶¶

28   31-32, Exhs. 15-16.  As discussed below, the multiple advantages of Message

Descriptions over Message-IDs further demonstrates that compliant DMCA notices
need not include Message-IDs, and provides yet another reason to deny the Motion.

### A.     There May Be Thousands Of Message-IDs For One Message Description

A single Message Description of a movie, such as "X-Men Origins" may be
associated with as many as 63,632 Message-IDs.  Zada Decl. ¶ 14, Exh. 5.
Defendants have not explained, and cannot explain, why it is more efficient to provide
63,632 Message-IDs in a DMCA notice, rather than simply providing a one-line
Message Description.

Moreover, Defendants' suggestion that a Message Description does not
uniquely identify the allegedly infringing message is simply wrong.  Tygar Decl. ¶ 15.
Defendants have never provided, and cannot provide, an example of two different
messages with the same Message Description.  Even if such a rare occurrence ever
arose, Defendants simply could check the content in both messages and remove both
messages if the material in both messages was infringing.

### B.     Message Descriptions Describe The Infringing Content And May Be Searched On, Message-IDs Do Neither

Perfect 10 identified the infringing material in its notices by including the
infringing Perfect 10 image, together with its Image Identifier that is part of the
infringing message.  An example of an Image Identifier is Masha Vasileva 2.jpg.  The
Image Identifier describes the infringing material to a lay person, because it is part of
the Message Title.  Moreover, the Image Identifier may be searched on by a lay
person to find the associated infringing message.  In contrast, the Message-ID is not
the infringing material and may not be searched by a lay person to find the associated
message.  Zada Decl. ¶¶ 11-13, Exhs. 1, 4; Tygar Decl. ¶ 35.

### C.     The Closest Analog To A URL Is The Message Description, Not The Message-ID

Defendants mistakenly assert that Message-IDs  are analogous to URLs on the

Plaintiff Perfect 10, Inc.'s Opposition to Defendants' Motion for Partial Summary Judgment on
Inadequacy of Perfect 10 Inc.'s Notices Under Section 512 Safe Harbor

1   World Wide Web.  Memo at 4:2-4.  That is simply not the case.  Because Message-

2   IDs cannot be searched on by lay persons, they cannot be used by third-parties to

3   locate the associated message.  Philip Molter, Giganews's Chief Technical Officer has

4   conceded that point.  Davis Decl. Exh. 1 (Molter Depo.) 151:3-152:5; Zada Decl. ¶¶

5   11-13, Exhs. 1, 4.  The analog of a URL in the context of the Usenet, if there is one, is

6   the Message Description.  The Message Description may be searched on by anyone to

7   locate the associated message, and in fact, effectively is the associated message.

8   Furthermore, although one generally may use the Message Description to find the

9   associated Message-ID(s), one cannot use Message-IDs to locate the associated

10  Message Description.  Zada Decl. ¶¶ 11-13, Exhs. 1, 4.

11          **D.      Message-IDs Often Do Not Exist**

12          Message-IDs frequently do not exist.  In fact, Perfect 10 recently has discovered

13  more than 500 .zip or .rar files containing more than 6,680 infringing Perfect 10

14  images for which Message-IDs do not exist, including a Group B notice that

15  Defendants have omitted from their Motion.  Zada Decl.  ¶¶ 16-18, 30, Exhs. 7-9;

16  Tygar Decl. ¶¶ 31-32; See also ¶¶ 22-30.  This critical fact was not before Judge

17  Collins when she ruled on Perfect 10's earlier motion for partial summary judgment

18  (Dkt. 180).  By contrast, there cannot be a message without a Message Description.

19  Defendants' requirement that compliant DMCA notices include Message-IDs cannot

20  possibly be upheld when Message-IDs frequently do not exist.

21          For example, although Defendants claim that Perfect 10 should have provided

22  Message-IDs for the 1468 infringing images identified by Sample Notice A,

23  *Defendants have provided no evidence that such Message-IDs were available for any*

24  *of those images* back in 2009 when the notice was created.[4]  Under the circumstances,

25  Giganews should be estopped from claiming that the notice is deficient because

26  _____

27  [4] The messages shown in page 5 of Exhibit 13 to the Zada Declaration were posted

28  after Sample Notice A (Perfect 10's March 25, 2009 notice) was created.

Plaintiff Perfect 10, Inc.'s Opposition to Defendants' Motion for Partial Summary Judgment on
Inadequacy of Perfect 10 Inc.'s Notices Under Section 512 Safe Harbor

1   Message-IDs were not provided.

2   **E.   Even When Message-IDs Exist, It Is Frequently Not Possible To**

3   **Determine The Correct Message-ID**

4   Whenever Perfect 10's images are intermixed with third party images in a .zip

5   file, it is typically not possible for Perfect 10 to determine which Message-IDs are

6   associated with its images.  Zada Decl. ¶ 19, Exh. 10.  In these situations, Perfect 10

7   had no choice but to provide the infringing Message Descriptions with copies of the

8   infringing images and their Image Identifiers.

9   **F.   Lists Of Message-IDs Are Prone To Human And Computer Error**

10   Message-IDs are extraordinarily prone to both human and computer error.  This

11   fact was also not before Judge Collins.  The i's and l's and 1's in Message-IDs are

12   very frequently misread by computers (as well as O's and 0's and other similar

13   characters), rendering the Message-ID useless.  Giganews has produced to Perfect 10

14   in discovery 2,494,344 Message-IDs in machine readable text that Perfect 10 has

15   examined.  Of those, approximately, 44.7%, or 1,115,040 Message-IDs, had obvious

16   errors.  Zada Decl.  ¶ 20.  These extremely high numbers strongly suggest that

17   Message-IDs are completely unusable.  Zada Decl. ¶ 20.

18   Message Titles  are much less prone to errors because they typically contain

19   terms such as "perfecttengallery" that can be understood.  If there is an error in a

20   Message-Title, it can be readily spotted.  However, errors in Message-IDs typically

21   cannot be spotted because Message-IDs are incomprehensible.

22   **VIII.  DEFENDANTS HAVE NO BASIS TO REQUIRE LISTS OF MESSAGE-**

23   **IDS AS DMCA NOTICES**

24   In addition to the reasons discussed in Section VII, above, there are additional

25   bases for this Court to reject Defendants requirement that DMCA notices include

26   Message-IDs.

27

28

Plaintiff Perfect 10, Inc.'s Opposition to Defendants' Motion for Partial Summary Judgment on
Inadequacy of Perfect 10 Inc.'s Notices Under Section 512 Safe Harbor

## A.  List Of Message IDs Do Not Comply With The Requirements of the DMCA

A Message-ID, standing alone, such as beidnZ1rdsfZ-kTVnZ2dnUV, is not understandable and does not identify the infringed copyrighted work.  It is reasonable to assume that when Congress used the terms "identify" and "locate" in Section 512(c)(3)(A), it meant "identify" for the purposes of a lay person, such as a juror. Jurors and judges cannot look at a list of Message-IDs and determine anything. Stated another way, a notice that is incomprehensible to a lay person cannot satisfy Section 512(c)(3)(A)(ii), which requires an identification of the copyrighted works allegedly infringed, or Section 512(c)(3)(A)(iii), which requires identification of the material claimed to be infringing.  Giganews's DMCA agent and its co-CEO Ronald Yokubaitis has described a list of Message-IDs as "gibberish."  Davis Decl. ¶ 4, Exh. 3 (R. Yokubaitis Depo.) 141:23-144:20.  Copyright holders cannot be required to create notices they cannot understand, when one of the requirements of a compliant DMCA notice is a statement, under penalty of perjury, that the notice is accurate.  *See* 17 U.S.C. § 512(c)(3)(A)(vi).

Moreover, the Honorable A. Howard Matz first presided over this case when it was first transferred to the Central District of California.  In *Perfect 10, Inc. v. Google, Inc.,* Case No. 04-9484 AHM in the United States District Court for the Central District of California, Judge Matz ruled on July 26, 2010 that certain notices sent by Perfect 10 were deficient because they failed to provide "the URL on the P10 website or the volume and page number of *Perfect 10* magazine at which the original copyrighted image appears."  Zada Decl. ¶¶ 50-51, Exhs. 32, 33, n. 7**.**  As a result, Judge Matz would have found lists of Message-IDs as required by Defendants deficient under the DMCA.

Defendants previously have asserted that compliant DMCA notices must provide lists of copyright registration numbers.  *See* Defendants Motion to Dismiss (Dkt No. 11-1), 5:20-22, 10:25-27.  Furthermore, Defendants have conceded that

notices that merely provide lists of Message-IDs, as required by Defendants, do not comply with the DMCA or with Judge Matz's ruling in *Google*. Zada Decl. ¶¶19, 50-51, Exhs. 10, 32-33.

Defendants cannot have it both ways. If some sort of identification of the copyrighted work is required, as Defendants concede, then the lists of Message-IDs required by Defendants do not comply with the DMCA. For this reason as well, this Court should not uphold Defendants' Message-ID requirement.[5]

## B.   Defendants Do Not Explain How To Find Message-IDs

Defendants' DMCA instructions do not explain how to find Message-IDs, let alone find them expeditiously. There is no mention in Defendants' DMCA instructions of the Mimo automatic Message-ID extraction feature. Zada Decl. ¶ 15, Exh. 6. Defendants' DMCA agent, Ronald Yokubaitis, did not even know how to find Message-IDs. Davis Decl. ¶ 4, Exh. 3, (R. Yokubaitis Depo.) 91:12-24, 94:9-13, 194:22-195:9. Copyright holders typically download content without ever encountering Message-IDs. Zada Decl. ¶ 11, Exh. 1 (Videos 1 and 6). Under the circumstances, Defendants cannot reasonably insist that copyright holders provide Message-IDs in their DMCA notices; the average copyright holder cannot be expected to find Message-IDs, let alone know how to rapidly extract them.

## C.   Message-IDs Are Extremely Burdensome To Cut And Paste By Hand

Message-IDs are extremely burdensome to cut and paste by hand. It would have taken Perfect 10 months to cut and paste the tens of thousands of Message-IDs corresponding to approximately 61,000 copies of Perfect 10 images infringed by Defendants. Zada Decl. ¶ 15, Exh. 6. Furthermore, because Defendants do not issue cancel commands (requests that other Usenet providers remove the same infringing

---

[5] To the extent that Defendants contend that Perfect 10 should have matched each image to its associated Message-ID, such a task is impossible to carry out because the Message-IDs are incomprehensible.

message), Perfect 10 would have had to create a separate set of DMCA notices for each of potentially hundreds of different Usenet operators to remove all of the infringing Perfect 10 images found on the Usenet.  Zada Decl. ¶ 21.

### D.   To The Extent That Message-IDs Are Needed, To Avoid Error, Defendants Need To Extract Them

Defendants cannot reasonably suggest that Perfect 10 should have extracted Message-IDs itself, for multiple reasons.  First, Perfect 10 was not aware of the Mimo automatic Message-ID extraction feature while it was creating and sending the hundreds of DMCA notices it submitted to Defendants.  Defendants failed to notify Perfect 10 (or any other copyright holders) of such a feature.  Zada Decl. ¶¶ 15, 23, Exh. 6.  Because the extraction of thousands of Message-IDs by hand would take months, Defendants cannot possibly claim that Perfect 10 should have performed such a burdensome task, when Defendants knew how to perform this extraction in seconds.

Furthermore, there is no reason for Defendants to insist that copyright holders extract the Message-IDs themselves.  Because Message-IDs are prone to error, requiring copyright holders to extract and send these Message-IDs to Defendants would only lead to those Message-IDs being misread by Defendants' automated system, thereby causing massive errors.  Zada Decl. ¶ 20.   To eliminate the possibility of such errors, Defendants should do the automatic Message-ID extraction themselves.  The few extra seconds it would take to perform this task cannot possibly be considered unduly burdensome.

### IX.   GIGANEWS RELIES ON WITNESSES WHOSE CREDIBILITY IS AT ISSUE

Defendants' Motion should be denied for the additional reason that it relies almost exclusively on declarations of witnesses whose credibility is at issue.  Giganews's four employee witnesses, Ron Yokubaitis, Philip Molter, Jonah Yokubaitis, and Shane Menking, answered "I don't know" or the equivalent, 1,426 times in five days of depositions.  Davis Decl. ¶ 7.  In his current declaration, Mr.

1   Yokubaitis has "authenticated" at least 139 altered Perfect DMCA notices.  Even

2   though they have made multiple critical statements of Perfect 10's notices, **none** of

3   Defendants' witnesses review DMCA notices or are involved in the processing of

4   DMCA notices.  Davis Decl. Exh. 1 (Molter Depo.), 38:2-3.  Neither Mr. Molter nor

5   Mr. Yokubaitis ever performed any of Perfect 10's recommended searches or

6   otherwise attempted to process any of Perfect 10's DMCA notices.  *Id*. Exh. 1,

7   (Molter Depo.) 126:23-127:10. Mr. Yokubaitis testified he has never looked at

8   Giganews's DMCA log as he lacks the technical expertise to do so.  Nor did Mr.

9   Yokubaitis even know how to find a Message-ID.  *Id*. Exh. 3 (R. Yokubaitis Depo.)

10   91:12-24, 94:9-13, 194:22-195:9.  Both Ronald Yokubaitis and Philip Molter

11   suppressed the existence of the Mimo automatic Message-ID extraction feature.

12   Neither has any personal knowledge to support the statements made in their

13   declarations.

14        Giganews's purported expert, William Rosenblatt, submitted a declaration on

15   November 25, 2013 (Dkt. 149-2) before Judge Collins ("Rosenblatt Decl."), which

16   criticized Dr. Zada and Perfect 10's notices.  He also contended that it would be

17   "trivial" for Perfect 10 to create a computer program to automatically generate DMCA

18   notices.  Rosenblatt Decl. ¶¶ 46-47, 79-81. However, during his August 22, 2014

19   deposition ("Rosenblatt Depo."), Mr. Rosenblatt testified that he did not know how to

20   write such a program, and that he was not a competent programmer.  Davis Decl. ¶ 8,

21   Exh. 7 (Rosenblatt Depo.) 231:3-233:18.

22   **IX.   CONCLUSION**

23        For all of the foregoing reasons, Perfect 10 respectfully requests that this Court

24   deny Defendants' Motion in full.

25   Dated: October 20, 2014     Respectfully submitted,

26

27        By: _____

               Lynell D. Davis, Esq.

28                  Attorney for Plaintiff Perfect 10, Inc.

25     2:11-cv-07098-AB-SH(x)

Plaintiff Perfect 10, Inc.'s Opposition to Defendants' Motion for Partial Summary Judgment on Inadequacy of Perfect 10 Inc.'s Notices Under Section 512 Safe Harbor