UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | CV 11-07098-AB (SHx) | Date: | October 31, 2014 |
|---|---|---|---|

| Title: | *Perfect 10, Inc. v. Giganews, Inc.* |
|---|---|

| Present: The Honorable | ANDRÉ BIROTTE JR. |
|---|---|

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** [In Chambers] Order GRANTING Defendant Giganews, Inc.'s *Daubert* Motion to Exclude Dr. Richard Waterman's Expert Testimony to the Extent it Is Not Moot (Dkt. No. 477)

Pending before the Court is Defendant Giganews, Inc.'s ("Giganews") and Defendant Livewire Services, Inc.'s ("Livewire," collectively "Defendants") joint motion to exclude the expert opinion testimony offered in discovery by Plaintiff Perfect 10, Inc.'s ("Perfect 10") expert, Dr. Richard Waterman. (Dkt. No. 477.) Defendants move to exclude the opinions at issue under Federal Rules of Evidence 403 and 702, as well as the standards for expert testimony articulated by the Supreme Court in *Daubert v. Merrell Dow Pharm., Inc.*("*Daubert*") 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael* ("*Kumho Tire*"), 526 U.S. 137 (1999). Because Dr. Waterman's opinion is irrelevant to the issues in this action, the Court **GRANTS** the motion to the extent any portion of the motion is not rendered **MOOT** by Perfect 10's withdrawal of Dr. Waterman's only expert opinion disclosed in discovery.

**I. BACKGROUND**

This copyright infringement action involves the alleged distribution of copyrighted adult images, owned by Perfect 10, over the internet via Defendants' Usenet systems. Dr. Waterman is a professor of statistics at the Wharton School of Business at the University of

Pennsylvania, with many academic and professional accolades to his name. (Dkt. No. 498-2, p. 54.) In 2008, Dr. Waterman conducted a study (the "2008 Survey") in his role as an expert witness in *Arista Records LLC v. Usenet.com, Inc.*, an unrelated lawsuit that was then pending in the Southern District of New York. *See Arista Records LLC v. Usenet.com, Inc.*, 633 F.Supp.2d 124, 144-45 (S.D.N.Y. 2009). In that study, Dr. Waterman took a "random sample of content files from a list of music newsgroups that had been disabled by … Usenet.com, but that remained available on … Giganews.com ." *Id.*, at 144. The sample size of that study was 1,800 files out of roughly 5,000,000. (Dkt. No. 498-2, p. 57.) Another expert in that case then analyzed whether the downloaded files were protected by copyright and, if so, whether the copyrighted files were authorized for such use. *Arista Records LLC v. Usenet.com, Inc.*, 633 F.Supp.2d at 144. Based on that expert's determinations, Dr. Waterman concluded "that over 94% of the content files available on the music newsgroups" he analyzed "were either unauthorized or highly likely to have been unauthorized." *Id*. The plaintiff in *Arista Records* (as the party offering Dr. Waterman's testimony) made it clear that "the purpose of Dr. Waterman's survey was never to measure infringement on the USENET in general, but rather to estimate the volume of infringing content files in music newsgroups." *Id*. The court in *Arista Records* found Dr. Waterman's opinions involving the survey to be relevant and reliable under Rule 702 and *Daubert* and admitted the testimony. *Id*. at 145.

In this action, Perfect 10 seeks to introduce Dr. Waterman's 2008 Survey offered in *Arista Records*. Specifically, Perfect 10 retained Dr. Waterman, not to conduct a new survey focusing on adult images in general or images owned by Perfect 10, but to "provide an opinion as to the extent to which the study [Dr. Waterman] performed in connection with … *Arista Records* … is relevant to the Giganews site today." (Dkt. No. 498-2, p. 55; *see also* Dkt. No. 489-3, p. 76 ("The purpose of my Expert Report was to make a determination as to whether or not a study I had conducted in 2008 using music newsgroups hosted on Giganews … still has relevance today.").) Dr. Waterman opines that "the results from [his] Original Study are still relevant today." (Dkt. No. 498-2, p. 56; *see also* Dkt. No. 498-3, pp. 80-81 ("My opinion on the findings of the Review Study is that the nature of the content of the music newsgroups has not changed dramatically since 2008, and for that reason, results from 2008 are still pertinent today.").) To reach that conclusion, Dr. Waterman conducted a new study (the "Review Study") in which he analyzed a subsample 100 files-names for files found to be infringing in the original sample of 1,800 files. (Dkt. No. 498-2, p. 57.) Dr. Waterman did not actually download any of the 100 files to determine whether the underlying file was the same as the file he downloaded in the 2008 Survey (Dkt. No. 498-1, p. 46), but he compared the file names of current Giganews postings to the file names in the 2008 Survey and determined that 67 of the 100 works he subsampled from the original 1,800-file sample "were still available in some form related to their original posting." (Dkt. No. 498-2, p. 57.) Based on his finding that, by a rough comparison of the file names, 67 of the 100 files selected for his subsample were still available on Giganews' servers, Dr. Waterman opines "that, as far as

the music newsgroups hosted by Giganews are concerned, their content, and in particular the overwhelming proportion of it that is not authorized for distribution, is essentially the same … in July 2014 as it was when [he] reported on the" 2008 Survey.  (*Id.*, at p. 63; *see also* Dkt. No. 498-3, pp. 80-81.)

Dr. Waterman does not offer any opinion as to whether his findings related to the incidence of infringement in music newsgroups pertain more broadly to the "entire Usenet universe … ."  (Dkt. No. 498-3, p. 76.)   Dr. Waterman has not studied the incidence of infringement on Giganews' servers outside of the music newsgroups he studied in the 2008 Survey and does not have an opinion as to the incidence of infringement on Usenet as a whole, outside of the music newsgroups he studied.  (Dkt. No. 498-1, pp. 6-7.)  Rather, in his expert reports, Dr. Waterman left it "up to the Court to make a determination whether or not the information" regarding the incidence of infringement in certain music newsgroups "is pertinent" to this case.  (Dkt. No. 498-3, p. 76.)  And at deposition, Dr. Waterman went further, testifying that his work done with "respect to the composition of music news groups on the Usenet" would not "allow [him] to draw a conclusion as to the composition of infringing works on the Usenet as a whole."  (Dkt. No. 498-1, p. 20.)  Dr. Waterman does not know whether there are any music works at issue in this case or whether Perfect 10 owns the copyright to any works listed in a music newsgroup.  (*Id.*, at p. 4.)  Perfect 10 "was not on the radar in any way" when Dr. Waterman designed and conducted the 2008 Survey.  (*Id.* at p. 7.)  The 2008 Survey was not "designed to make a specific statement about the erotic images news groups or other news groups" and does not suggest "a specific number for what is going on in those other news groups to do with images." (*Id.* at p. 21.)

Defendants move to exclude Dr. Waterman's opinion testimony on the ground that it is irrelevant, and that the Review Study lacks reliability.  In opposition, Perfect 10 "withdraws Dr. Waterman's expert opinions based on, and references to, the Review Study" and states that it "intends to elicit and rely only on testimony from Dr. Waterman regarding his findings in the" 2008 Survey.  (Dkt. No. 526, p. 2.)

## II.  LEGAL STANDARD

### A.  Federal Rule of Evidence 702 and *Daubert*

Federal Rule of Evidence 702 governs the scope of admissible expert testimony, providing:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in

>issue;
>
>(b) the testimony is based on sufficient facts or data;
>
>(c) the testimony is the product of reliable principles and methods; and
>
>(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 "imposes a special obligation upon a trial judge to 'ensure that any and all scientific testimony ... is not only relevant, but reliable.'" *Kumho Tire*, 526 U.S. at 147, quoting *Daubert*, 509 U.S. at 589. That is, Rule 702 imposes a "gatekeeping" obligation on the trial court (*Daubert*, 509 U.S. at 597) to guard "the twin concerns of 'reliability' ... and 'helpfulness.'" *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007), quoting *United States v. Mitchell*, 356 F.3d 215, 234 (3d Cir. 2004). "Maintaining Daubert's standards is particularly important considering the aura of authority experts often exude, which can lead juries to give more weight to their testimony." *Elsayed Mukhtar v. California State University, Hayward*, 299 F.3d 1053, 1064-65, *overruled on other grounds in Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 467 (9th Cir. 2014)

The question of reliability embodied in rule 702 is one of foundation: "whether an expert's testimony has 'a reliable basis in the knowledge and experience of the relevant discipline.'" *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014), quoting *Kumho Tire*, 526 U.S. at 149. The reliability inquiry applies to all forms of expert testimony, whether based on scientific, technical, or other forms of specialized knowledge. *Kumho Tire*, 526 U.S. at 147-48. "Rule 702 demands that expert testimony relate to scientific, technical or other specialized knowledge, which does not include unsubstantiated speculation and subjective beliefs." *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir.1997). "[S]omething doesn't become 'scientific knowledge' just because it's uttered by a scientist; nor can an expert's self-serving assertion that his conclusions were 'derived by the scientific method' be deemed conclusive … ." *Daubert v. Merrell Dow Pharm., Inc.* ("*Daubert II*"), 43 F.3d 1311, 1318 (9th Cir. 1995). Rather, Court's role as a gatekeeper of *reliable* expert testimony is to independently ensure that the expert's methods are valid. *Daubert*, 509 U.S. at 590 n.9. An expert's opinions derived from an unsound or invalid methodology are without any evidentiary value because "[o]pinion evidence is only as good as the facts upon which it is based." *State of Washington v. United States*, 214 F.2d 33, 43 (9th Cir. 1954). Among the factors to consider in determining whether the expert's opinion stands upon a reliable foundation are:

>"(1) whether a scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error and the

existence and maintenance of standards controlling the technique's operation; and (4) whether the technique is generally accepted."

*Cooper v. Brown*, 510 F.3d 870, 943 (9th Cir. 2007), citing *Daubert*, 509 U.S. at 593-94.

It is important to emphasize, however, that the reliability inquiry tests only the foundation for the expert's opinion, not the accuracy of her conclusion. "[T]he test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology." *Daubert II*, 43 F.3d at 1318. As one leading practice guide correctly puts it, "the trial court's 'gatekeeping' role is not intended to serve as a replacement for the adversary system." Jones, Rosen Wegner, & Jones, *Rutter Group Prac. Guide: Fed. Civil Trials & Evid.*, §8:1503.3 (The Rutter Group, 2014). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010).

Even reliable expert testimony must still be helpful to the jury's determination of the material factual questions at hand. *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d at 1192; *accord* Fed. R. Evid. 402. "Whether testimony is helpful within the meaning of Rule 702 is in essence a relevancy inquiry." *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1184 (9th Cir.2002). "Expert testimony which does not relate to any issue in the case is not relevant, and ergo, non-helpful." *Daubert,* 509 U.S. at 591 (internal quotes omitted). "The evidence must logically advance a material aspect of the party's case." *Cooper v. Brown*, 510 F.3d at 942. Moreover, ostensibly relevant expert opinion testimony is only "helpful to the jury if it concerns matters beyond the common knowledge of the average layperson and is not misleading." *Moses v. Payne*, 555 F.3d 742, 756 (9th Cir. 2009) "[E]xpert testimony is inadmissible if it concerns factual issues within the knowledge and experience of ordinary lay people, because it would not assist the trier of fact in analyzing the evidence." *In re Apollo Grp. Inc. Sec. Litig.*, 527 F. Supp. 2d 957, 961-62 (D. Ariz. 2007). "[E]xpert testimony that merely tells the jury what result to reach is inadmissible." *Id.* Nor is expert testimony helpful if it "encroaches on the jury's vital and exclusive function to make credibility determinations." *United States v. Finley*, 301 F.3d 1000, 1015 (9th Cir. 2002).

In assessing both reliability and relevance, the "inquiry envisioned by Rule 702 is … a flexible one." *Daubert*, 509 U.S. at 589-90. "[J]udges are entitled to broad discretion when discharging their gatekeeping function." *U.S. v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000). "[T]he trial court must be afforded wide latitude both in deciding whether to admit expert testimony and in deciding how to test reliability." *United States v. Alatorre*, 222 F.3d 1098, 1101-02. Ultimately, however, "[t]he proponent of the expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements are met." *In re Silicone Gel Breast Implants Prod. Liab. Litig.*, 318 F.Supp.2d 879, 889 (C.D. Cal. 2004); *accord United States v. 87.98 Acres of Land More or Less in the County of Merced*, 530 F.3d 899, 904 (9th Cir. 2008) ("proponent of [the]

expert testimony… has the burden to establish its admissibility."). In the exercise of its broad discretion, a district court may determine the admissibility of an expert's opinion without hearing. *Id*. at 1102.

Finally, even if otherwise admissible under Rule 702 expert testimony "may be excluded if its probative value is substantially outweighed by danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

## III.  DISCUSSION

The Court begins by noting that, given Perfect 10's withdrawal of all of Dr. Waterman's "expert opinions based on … the Review Study," the motion appears to be moot. The only opinion Perfect 10 designated Dr. Waterman to offer was "the extent to which the [2008 Study] … is relevant to the Giganews site today." (Dkt. No. 498-2, p. 55.) But Perfect 10 offers no foundation for such an opinion other than the Review Study, and neither does Dr. Waterman. Dr. Waterman's expert reports and deposition testimony make clear that the Review Study is the sole basis for his conclusion that the 2008 Study is relevant today. Plaintiffs appear to withdraw that opinion, leaving nothing left of Dr. Waterman's testimony.[1]

But even assuming Perfect 10's designation of Dr. Waterman permits the conclusion that he was *also* designated to offer opinion testimony on the 2008 Survey independent of the Review Survey, the 2008 Survey is irrelevant to this action. At deposition, Dr. Waterman emphasized that the 2008 Survey focused exclusively on "the composition of music news groups on the Usenet." (Dkt. No. 498-1, p. 20.) Dr. Waterman disclaimed any opinion that the 2008 Survey would "allow [him] to draw a conclusion as to the composition of infringing works on the Usenet as a whole." (Dkt. No. 498-1, p. 20; *see also* Dkt. No. 498-3, p. 76.) The 2008 study was not "designed to make a specific statement about the erotic images news groups or other news groups" and does not suggest "a specific number for what is going on in those other news groups to do with images." (Dkt. No. 498-1, pp. 7, 21.)

As the Court observes in relation to Dr. Tygar's testimony, however, "[e]vidence pertaining to the infringement of copyrights Plaintiffs do not own is of questionable relevance." *Capitol Records, Inc. v. MP3tunes, LLC*, No. 07 Civ. 9931 (WHP), 2014 WL 503959 at *5 (S.D.N.Y. Jan. 29, 2014). A "general awareness that infringement may be occurring" is usually irrelevant to the specific question of whether a particular defendant violated a particular copyright held by a particular plaintiff. *Viacom Int'l. v. YouTube, Inc.*, 676 f.3d 19, 35 (2d Cir. 2012), cited with approval in *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1023 (9th Cir. 2013). This is because "merely

---

[1] Without Dr. Waterman's expert testimony, the 2008 Survey is clearly hearsay.

hosting a category of copyrightable content, such as music videos, with the general knowledge that one's services could be used to share infringing material, is insufficient to meet the actual knowledge requirement" for copyright violation. *UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, 718 F.3d at 1022.

To the extent evidence of pervasive infringement is relevant at all to the particular acts of infringement alleged here, it could only be relevant to show that Defendants had a pattern or practice of being "willfully blind" to numerous "red flags" of the *specific acts of infringement at issue in this case*. *UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, 718 F.3d at 1022-23. "[P]roof of willful blindness" must be "tailored to the same infringing conduct" at issue in the litigation. *Capitol Records, LLC v. Vimeo, LLC*, 972 F.Supp.2d 500, 524-25 (S.D.N.Y. 2013). Evidence that a defendant was willfully blind "as to infringing content collateral to the litigation" is irrelevant to prove the specific acts of infringement alleged in this case. *Id.* at 525. Such evidence is classic inadmissible character evidence. Fed. R. Evid. 404.

Moreover, even if evidence of general infringement across Defendant's servers might be relevant to show a pattern or practice of "willful blindness" when combined with other specific evidence of willful blindness as to Perfect 10's copyrights, the 2008 Survey does not show *general* infringement. The 2008 Survey shows evidence of specific infringement of specific copyrights on specific musical works owned by specific record companies on specific newsgroups. By Dr. Waterman's own admission, the 2008 Survey is decidedly *not* evidence of general infringement across Usenet. *Arista Records LLC v. Usenet.com, Inc.*, 633 F.Supp.2d 124, 144.

If anything, Dr. Waterman's 2008 Study is a helpful example of the sort of study Perfect 10 could have commissioned in this action. Perfect 10 could have asked Dr. Waterman to conduct a similar survey tailored to the specific images at issue in this case over which Perfect 10 holds the copyright (or at least erotic images more generally) by downloading them from Giganews' servers, analyzing their copyright status, and determining the prevalence of copyrighted materials in the relevant newsgroups. Perfect 10 did not ask Dr. Waterman to conduct such a study, and even Dr. Waterman demurred when asked whether the 2008 Survey was relevant to the issues in this case. It is not.

IV. **CONCLUSION**

In light of the foregoing, the Court **GRANTS** Defendants' motion to exclude the expert opinions offered by Dr. Waterman (Dkt. No. 477) to the extent any portion of the motion is not rendered **MOOT** by Perfect 10's withdrawal of Dr. Waterman's only opinion in this case.

Pursuant to Federal Rule of Civil Procedure 78(b) and Local Rule 7-15, the Court finds this matter appropriate for determination without oral argument, and the hearing

previously scheduled for November 3, 2014 at 10:00 a.m. is hereby **VACATED**.  *See also United States v. Alatorre*, 222 F.3d at 1102 (holding "a pretrial hearing is not required" on a *Daubert* motion).

    **IT IS SO ORDERED**