Eric J. Benik, Esq., SBN 187434
eric@kkbs-law.com
KRAUSE KALFAYAN BENINK & SLAVENS, LLP
550 West C Street, Suite 530
San Diego, CA 92101
P 619.232.0331 | F 619.232.4019

Lynell D. Davis, Esq., SBN 271152
lynell@perfect10.com
Natalie Locke, Esq., SBN 261363
natalie@perfect10.com
PERFECT 10, INC.
11803 Norfield Court
Los Angeles, CA 90077
P 310.476.0794 | F 310.476.8138

Attorneys for Plaintiff and Counter-defendant
Perfect 10, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>        Plaintiff,<br><br>     v.<br><br>GIGANEWS, INC., a Texas corporation; LIVEWIRE SERVICES, INC., a Nevada corporation; and DOES 1 through 100, inclusive,<br><br>        Defendants. | Case No.: CV 11-7098-AB (SHx)<br><br>***Before Honorable André Birotte, Jr.***<br><br>**PLAINTIFF PERFECT 10, INC.'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF THIS COURT'S ORDER (1) GRANTING DEFENDANT GIGANEWS, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF INDIRECT COPYRIGHT INFRINGEMENT (DKT. NO. 440) AND (2) DENYING AS MOOT PLAINTIFF'S MIRROR-IMAGE MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF INDIRECT COPYRIGHT INFRINGEMENT (DKT. NO. 467) (DKT. NO. 620)** |
| GIGANEWS, INC., a Texas corporation; LIVEWIRE SERVICES, INC., a Nevada corporation; and DOES 1 through 100, inclusive,<br><br>        Counter-claimants,<br><br>     v.<br><br>PERFECT 10, INC., a California corporation,<br><br>        Counter-defendant. | Date:   December 29, 2014<br>Time:  10:00 a.m.<br>Ctrm:  790 (Roybal)<br><br>Demand for Jury Trial<br>Discovery Cut-Off: June 30, 2014<br>Pretrial Conference: January 19, 2015<br>Trial Date: January 27, 2015 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that at 10:00 a.m. on December 29, 2014, or as soon thereafter as the Motion may be heard, in the Courtroom of the Honorable Andre Birotte, Jr., Courtroom 790 of the Edward R. Roybal Federal Building and United States Courthouse, located at 255 East Temple Street, Los Angeles, California 90012-3332, Plaintiff Perfect 10, Inc. ("Perfect 10") shall and hereby does move this Court, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, for reconsideration of this Court's Order: (1) Granting Defendant Giganews, Inc.'s Motion for Partial Summary Judgment on the Issue of Indirect Copyright Infringement (Dkt. No. 440) and (2) Denying As Moot Plaintiff's Mirror-Image Motion for Partial Summary Judgment on the Issue of Indirect Copyright Infringement (Dkt. No. 467), entered in this action on November 14, 2014 (Dkt. No. 620) (the "Order").

This Court should reconsider the Order because, in issuing the Order, this Court erred in failing to consider certain material facts presented by Perfect 10 to the Court. Had the Court considered such material facts, it would have denied Giganews's Motion for Partial Summary Judgment on the Issue of No Indirect Copyright Infringement and/or granted at least a portion of Perfect 10's Motion for Partial Summary Judgment against Giganews on its claims for contributory copyright infringement. Therefore, Perfect 10 is entitled to the relief sought herein.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the [Proposed] Order Granting Plaintiff Perfect 10, Inc.'s Motion for Reconsideration, submitted herewith, all of the pleadings and other documents on file in this action, and such additional pleadings, evidence and oral argument as may be presented at or before any hearing on this Motion.

Dated:  November 30, 2014          Respectfully submitted,

By: _____
Lynell D. Davis, Esq.
Attorney for Plaintiff Perfect 10, Inc.

## STATEMENT OF COMPLIANCE WITH LOCAL RULE 7-3

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on November 18, 2014.

## REQUEST FOR ORAL ARGUMENT

Perfect 10 hereby requests that, before the Court issues any ruling on this Motion, the Court permit oral argument on the Motion.

Dated:  November 30, 2014        Respectfully submitted,

By: _____
Lynell D. Davis, Esq.
Attorney for Plaintiff Perfect 10, Inc.

# MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

I.    INTRODUCTION AND SUMMARY OF ARGUMENT .................................1

II.   APPLICABLE LEGAL STANDARD ...................................................2

III.  ARGUMENT .....................................................................................3

    A.    The Court Incorrectly Found That Giganews Promptly Blocked All
          Legible Message-IDs ...............................................................3

    B.    Perfect 10's Evidence Regarding The Unavailability Of Message-IDs
          And Superior Alternatives To Message-IDs ................................6

        1.    Message-IDs May Not Be Available ...............................7

        2.    Carefully Selected Searches Can Be Much More Effective
             In Identifying Large Numbers Of Infringing Messages ................8

    C.    Perfect 10 Was Unaware Of Ways To Automatically Extract
          Message-IDs ...........................................................................9

    D.    Perfect 10's Sample Notices Could Be Processed In 20 Seconds
          Or Less And Did Not Require Side By Side Comparisons ...................10

    E.    The Court Did Not Address Perfect 10's Other Evidence Of Actual
          Or Constructive Knowledge .....................................................13

IV.   CONCLUSION ...................................................................................14

---

# TABLE OF AUTHORITIES

## Cases

*Ellison v. Robertson*, 357 F.3d 1072 ((9th Cir. 2007) ...................................................14

*Rogers v. Ecolor Studio*, 2013 WL 752256 (E.D.N.Y., 2013) ......................................14

*School Dist. No. 1J, Multnomah County., Oregon v. ACandS, Inc.,* 5 F. 3d 1255
    (9th Cir. 1993) ...........................................................................................................2

## Statutes

17 U.S.C. §512(c)(3)(A) .........................................................................................10, 13

Fed. R. Civ. P. 59(e) .......................................................................................................2

L.R. 7-18(c) .....................................................................................................................2

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Perfect 10, Inc. ("Perfect 10") respectfully moves this Court for reconsideration of this Court's Order: (1) Granting Defendant Giganews, Inc.'s Motion for Partial Summary Judgment on the Issue of No Indirect Copyright Infringement (Dkt. No. 440) and (2) Denying As Moot Plaintiff's Mirror-Image Motion for Partial Summary Judgment on the Issue of Indirect Copyright Infringement (Dkt. No. 467), entered in this action on November 14, 2014 (Dkt. No. 620) (the "Order").  As explained below, the Court erred in failing to consider the following material facts presented by Perfect 10 in connection with the above two motions that were the subject of the Order:

1)   Defendant Giganews, Inc. ("Giganews") failed to promptly block at least ten legible Message-IDs, including one for Sample Image 9, identified in notices sent by Perfect 10 to Giganews via email under the Digital Millennium Copyright Act (the "DMCA") [*see* Section III.A below];

2)   As of November 1, 2014, 830 copies of Perfect 10 images, many of which display Perfect 10 copyright notices, could still be downloaded from Giganews's Usenet servers, even though Giganews claimed it had blocked the Message-IDs associated with those messages [see Section III.A below];

3)   Message-IDs may not exist or may not be able to be determined by the copyright holder.  In contrast, Message Descriptions (the Message Title with date of post and poster name) always exist and also uniquely identify the infringing message [see Section III.B below].

4)   Searches on distinctive terms involving Perfect 10 such as "perfecttengallery" are at least as efficient in locating and identifying infringing content as Message-IDs, which may be unavailable or indeterminable [*see* Section III.B below];

5)   Perfect 10 did not learn about the automatic Message-ID extraction feature found in Giganews's Mimo newsreader until May 21, 2014, after it sent all of

the DMCA notices at issue in this action.  Therefore, Perfect 10 could not have rapidly provided Message-IDs in the DMCA notices it sent to Giganews, as the Court has suggested [*see* Section III.C below];

6)      None of the Sample Notices discussed by Perfect 10 in its opposition to Giganews's Motion for Partial Summary Judgment on the Issue of No Indirect Copyright Infringement ("Giganews's Motion") required side-by-side comparisons and most could be processed in 20 seconds or less [*see* Section III.D below]; and

7)      Evidence submitted by Perfect 10 apart from its DMCA notices demonstrated that Giganews had actual or constructive knowledge of infringement [*see* Section III.E below].

Perfect 10 respectfully requests that the Court grant this Motion, reconsider the rulings in the Order to which the above evidence pertains, and modify its Order to consider the above evidence.  Defendants are preparing to file a motion seeking to recover millions of dollars in attorneys' fees.  Therefore, to avoid manifest injustice, it is imperative that the Court's Order properly reflect the evidence presented by Perfect 10.

## II.    APPLICABLE LEGAL STANDARD

"A district court may reconsider its grant of summary judgment under either Federal Rule of Civil Procedure 59(e) (motion to alter or amend a judgment) or Rule 60(b) (relief from judgment)."  *School Dist. No. 1J, Multnomah County., Oregon v. ACandS, Inc.,* 5 F. 3d 1255, 1262 (9th Cir. 1993).  "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law."  *Id.* at 1263.  Similarly, Local Rule 7-18 provides for reconsideration of an Order if there is "a manifest showing of a failure to consider material facts presented to the Court before such decision."  L.R. 7-18(c).  A motion under Rule 59(e) "must be filed no later than 28 days after the entry of the judgment."  Fed. R. Civ. P. 59(e).

Here, as explained below, the Court mistakenly granted Giganews's Motion because it failed to consider various material facts presented by Perfect 10. For all of the reasons below, the Court should reconsider the Order in light of these material facts.

## III.   ARGUMENT

### A.   The Court Incorrectly Found That Giganews Promptly Blocked All Legible Message-IDs

In granting summary judgment in favor of Giganews on Perfect 10's claim for contributory copyright infringement, the Court ruled that "there is no evidence that Giganews had any knowledge, actual or constructive, of any specific infringing content other than those messages for which Perfect 10 provided legible Message IDs. As to those messages, **the evidence is undisputed that Giganews promptly blocked access to the infringing messages.**" Order at 13 (emphasis added). The Court also found that "[w]hile some of Perfect 10's takedown notices have included the relevant Message-ID (undisputedly conferring knowledge on Giganews), the evidence shows that Giganews promptly disabled access to the offending messages (Dkt. No. 442, ¶39)." Order at 12.

In making the above rulings, the Court appeared to overlook Perfect 10 evidence that Giganews did not, in fact, block all emailed Message-IDs. In particular, the Court apparently failed to consider substantial evidence submitted by Perfect 10 that Giganews did not promptly disable access to at least ten Message-IDs found in DMCA notices sent by Perfect 10 via email, including a Message-ID associated with Perfect 10's Sample Image 9. Rather, Perfect 10's evidence demonstrated that Giganews did not block access to these Message-IDs for more than one year. *See,* Perfect 10's Opposition to Giganews's Motion For No Indirect Infringement ("Dkt. No. 536") at 21:27-28 ("Giganews has also failed to process 10 Message-IDs found in DMCA notices sent by Perfect 10 via email," citing to Dkt. No. 538 ¶47, Exhs. 1, 31). For example, Perfect 10 submitted evidence that Giganews failed to disable for

more than one year the infringing message associated with the following emailed Message-ID:  ENGdnXWDWZ41WVrXnZ2dnUVZ8tSdnZ2d@giganews.com. *Compare* Dkt. No. 508-3, Exh. 31 p. 3 (showing that Message-ID in a Perfect 10 DMCA notice emailed on August 24, 2013) *with* Dkt. No. 508-3 Exh. 31 p. 8 (date in lower right-hand corner showing that same Message-ID unblocked by Giganews as of September 26, 2014).  The associated infringing message containing Sample Image 9, which displayed a Perfect 10 copyright notice, was still offered by Giganews as of September 26, 2014.  (Dkt. No. 508-3, Exh. 31 p. 9).

Perfect 10 also submitted evidence that Giganews failed to block the following emailed Message-ID for more than one year: AYGdnTaDq0kAKn3XnZ2dnUVX8kgAAAAA@giganews.com.  *Compare* Dkt. No. 508-3 Exh. 31 p. 4 (showing that Message-ID in a Perfect 10 DMCA notice emailed on August 24, 2013) *with* Dkt. No. 508-3 Exh. 31 p. 10 (showing the same Message-ID unblocked by Giganews as of September 26, 2014).  The infringing Perfect 10 image in the associated message is shown on page 11 of that same exhibit.[1]

Exhibit 31 identified two more Message-IDs, and their associated infringing Perfect 10 images that Giganews failed to block for more than one year.  (Dkt. No. 538, ¶47; Dkt. No. 508-3, Exh 31.)  *See also* Dkt. No. 538, ¶47 (referring to Exhibit 1, a disk, filed as Dkt. No. 511), which contained six additional examples of infringing messages that Giganews failed to block for more than one year, even though the Message-IDs associated with those infringing images were contained in DMCA

---

[1] Although this Court criticized the "screenshot-search takedown notices" provided by Perfect 10 as "inadequate" [Order at 13], Perfect 10 was only able to obtain evidence showing that Giganews had not promptly blocked the infringing messages associated with these ten Message-IDs by making such print screens of the relevant pages which showed the Message-ID with its associated Message and the Image Identifier of the infringing image.  Had Perfect 10 not done so, and only provided a list of Message-IDs as Giganews requests, it would not have been able to determine if those Message-IDs had been blocked or what messages and images they identified.  Dkt. 550-2 ¶49.

notices emailed to Giganews on August 9, 2013, August 21, 2013, and September 20, 2013.  *See* Exhibit 1 (Dkt. No. 511), folder labeled "Message-IDs not processed" (folder containing these DMCA notices), and the file labeled "Message IDs not removed," which contains six Message-IDs identified in the above three notices whose associated messages were not blocked by Giganews as of September 30, 2014, together with their associated infringing Perfect 10 images.

Perfect 10 also provided evidence that Giganews did not block at least 830 Perfect 10 images from .rar files the Message-IDs for which Giganews claimed it had blocked.  (Perfect 10's Reply Statement Re Giganews Indirect Liability ("Dkt. No. 616"), ¶¶124, 129, 130, 134, 146, 202 citing to Reply Declaration of Dr. Norman Zada Re Giganews Indirect Liability ("Dkt. No. 606-1") ¶¶ 8-9, Exhs. 38, A.)

In support of its findings (Order at 13), the Court cited to Paragraph 39 of the Declaration of Philip Molter, Giganews's Chief Technical Officer (Dkt. No. 442, ¶39).  *See* Order at 13.  In that paragraph, Mr. Molter stated that, "[t]o the extent that Perfect 10 has provided Giganews with legible Message-IDs for allegedly infringing messages, Giganews has disabled access to those Usenet messages if they were on Giganews's servers."

Perfect 10 submitted evidence, however, showing that, as of September 15, 2014, the date of Mr. Molter's declaration, Giganews had already received three different sets of legible Message-IDs from Perfect 10 which it had failed to block.  First, it did not block the ten emailed Message-IDs described above.  Dkt. No. 538 ¶47; Dkt. No. 508-3, Exh. 31; Dkt. No. 511, Exh. 1.  Second, on August 23, 2014, Perfect 10's counsel, Lynell Davis, emailed to Giganews an original version of one of Perfect 10's faxed notices.  (Dkt. No. 442, ¶39; Dkt. No. 443-32 pp. 467, 468, 474, 475, 480.)  However, Giganews did not block the messages identified by the Message-IDs in that notice either, as 143 Perfect 10 images could still be downloaded from those same messages as of November 1, 2014.  (Dkt. No. 606-1 ¶9; Dkt. No. 608, Exh. A folder entitled "Video Demonstrations," Video "P10 2006.")

Finally, Perfect 10 submitted evidence showing that it provided electronic copies of 20 faxed notices containing 542 Message-IDs to counsel for Giganews on June 13, 2014, as part of a production of documents.  These electronic copies were produced in a folder entitled "Notices," together with a Production Log that listed categories of documents, including "DMCA Notices from P10 to Giganews." *See* Perfect 10's Production Log (Dkt. No. 543-3, Exh. 6, p. 5).   Giganews contended that it blocked those Message-IDs in September 2014.  (Dkt. No. 528, ¶28).  However Perfect 10 submitted evidence showing that 830 Perfect 10 images could still be downloaded from the messages identified by those Message-IDs as of November 1, 2014.  (Dkt. No. 606-1, ¶¶8-9, Exh. 38; Dkt. No. 608, Exh. A, folder "Video Demonstrations.")

Mr. Molter's September 15, 2014 declaration (Dkt. No. 442), on which this Court relied in granting Giganews's Motion, is controverted by Perfect 10's evidence. In fact, Giganews did not promptly block the content of all messages for which it received legible Message-IDs.  Furthermore, Mr. Molter said nothing in Paragraph 39 of his declaration about when or how promptly Giganews disabled access to these messages.  Mr. Molter admitted in deposition testimony submitted by Perfect 10 in opposition to Giganews's Motion, that he did not review DMCA notices and was not involved in the processing of DMCA notices.  (Dkt. No. 539, Exh. 12 at 37:12-38:3, 126:23-127:10, 130:11-131:13.)   Giganews submitted no documentary evidence, and there was no evidence before the Court, showing **when** Giganews disabled access to the messages associated with the 2,821 Message-IDs included in DMCA notices that Perfect 10 emailed to Giganews.  Dkt. No. 606-1, ¶10.  Thus, there was no evidence before the Court so as to allow the Court to find that Giganews acted **promptly** in disabling access to these offending messages.

## B.   Perfect 10's Evidence Regarding The Unavailability Of Message-IDs And Superior Alternatives To Message-IDs

In the Order, the Court found that "the evidence before the Court is **undisputed**

that the only method for consistently identifying a specific Usenet message that Giganews could promptly remove is the post's Message-ID." Order at 12 (emphasis added).  The Court likewise found that "[t]he only information truly unique to a post is the Message-ID."  Order at 10.

In fact, the evidence was not undisputed.  A Message Description, which is the message subject line with poster and date and time of post (along with additional information),  uniquely identifies a message in the same way that an email subject line with the sender and time sent uniquely identifies an email.  Perfect 10 presented substantial evidence that Message Descriptions are superior to Message-IDs in describing messages because: (a) the Message Description uniquely determines the message and effectively is the message; (b) Message Descriptions always exist whereas Message-IDs may not; (c) the Message Description can be used to obtain the Message-ID if it exists but not vice-versa; (d) Message-IDs are prone to error and indecipherable; and (e) Message-IDs do not describe the infringed work and are thus not DMCA compliant.  *See* Dkt. No. 449 at 15:3-21:12 and evidence cited therein and the evidence described below.

## 1. Message-IDs May Not Be Available

In finding that the Message-ID is the only way to identify the associated message, the Court failed to consider substantial evidence presented by Perfect 10 that Message-IDs may not be available or determinable.  For example, Perfect 10 presented evidence that at least 6,680 Perfect 10 images could be downloaded by clicking on the Message Description when no Message-ID was available.  (Dkt. No. 616 ¶¶124, 129, 130, 134, 146, citing to Zada Decl. Dkt. No. 550-2 ¶¶16-19, Exhs. 1, 7-10 and Zada Reply Decl. Dkt. 606-1 ¶¶8-9, Exhs. 38, A.)  In particular, Perfect 10 submitted evidence regarding Sample Notice 5, which showed that there was no Message ID associated with the infringing messages identified in certain portions of that notice.  (Dkt. No. 449-3, ¶31; Dkt. No. 449-16, Exh. 14.)  In such instances, Perfect 10 **had no alternative** but to identify the allegedly infringing message by its

Message Description or by an appropriate search term that led exclusively to such infringing messages.

In reaching its conclusions, the Court also appears to have overlooked the testimony of Professor J. Douglas Tygar.  Professor Tygar explained how the Message Description can exist, and Perfect 10 images can be downloaded by clicking on that Message Description, while the Message-ID does not exist.  Specifically, Dr. Tygar explained that because Giganews stores redundant files to recreate data that has been blocked or corrupted, when the user attempts to download images using the Message Description, Giganews is able to recreate all or portions of a blocked file so that images may be downloaded even though the Message-ID no longer exists.   (Dkt. No. 550-7 ¶¶22-32, which was cited to by Dkt. No. 616 at ¶¶124, 129, 131, 133, 134, 136, 139, 146.)  This evidence demonstrated that Message Descriptions are a superior way of identifying messages as compared to Message-IDs, because the Message Description always exists whereas the Message-ID may not.

Finally, Perfect 10 submitted evidence that it may be impossible to determine the correct Message-ID associated with a message containing infringing Perfect 10 images when such images are mixed in with third party images in a large file.  (Zada Decl. Dkt. No. 550-2 ¶19; Dkt. No. 550-3, Exh. 10; *cited in* Dkt. No. 616 at ¶¶ 124, 129-134, 136, 139, 142-3, 146.)  In such situations, it is impossible for the copyright holder to determine which of the hundreds of Message-IDs corresponds to the copyright holder's images.  In such instances **the only alternative** for the copyright holder is to provide the Message Description of the large file along with copies of the infringing images with their Image Identifiers.

## 2.   Carefully Selected Searches Can Be Much More Effective In Identifying Large Numbers Of Infringing Messages

The Court apparently failed to consider evidence submitted by Perfect 10 that DMCA notices that ask the Usenet provider to perform searches on terms such as "perfecttengallery" or "P10website" are much more effective in identifying and

removing large numbers of infringing messages than long lists of Message-IDs.  For example, in his declaration, Professor Tygar stated that, **"specifying the search term 'perfecttengallery' is a far more efficient way of identifying and locating all of the infringing content** contained in that .zip file [that results from the perfecttengallery search] **than providing the associated list of approximately 4,951 Message-IDs."** (Dkt. No. 550-7, ¶16) (emphasis added).  Professor Tygar also testified that, because Giganews uses PAR files to help recover data from messages which may be corrupted or blocked, "**the use of search in takedown notices would be greatly preferable to the use of Message-IDs**. If search were used, the entire collection of PAR files associated with a single logical file would be removed, and that instance of the material would no longer be accessible. By using Message-IDs, Giganews allows the logical files to continue to persist on its repository and be easily accessed, because removing a single posting associated with a Message-ID does not remove the material; the material persists through redundancy mechanisms built into the PAR files." (Dkt. No. 550-7, ¶32) (emphasis added).  *See also* Dkt. No. 550-7, ¶¶13-35.

### C.    Perfect 10 Was Unaware Of Ways To Automatically Extract Message-IDs

In its Order, the Court appears to fault Perfect 10 for failing to use the automatic Message-ID extraction feature found in the Mimo newsreader to extract Message-IDs before sending its DMCA notices to Giganews.  Order at 12-13.  As the Court states, "Had Perfect 10 . . . extracted the Message-IDs, and submitted those Message-IDs to [Giganews] in a machine-readable format, there would be little left to discuss in this case. . . . But Perfect 10 did not take that simple step to protect its copyrights." *Id.* at 13.

In so stating, the Court appears to have overlooked Perfect 10's evidence that it did not learn of the automatic Message-ID extraction feature found in the Mimo newsreader until May 21, 2014, **after Perfect 10 sent to Giganews all of the DMCA notices in this case**, and that, without such knowledge, it would have taken Perfect 10

months to manually cut and paste 60,000 Message-IDs into a text file.  (Dkt. No. 550-2 ¶¶15, 23, Exh. 6 *cited in* Dkt. No. 616 ¶¶ 134, 136, 139, 144-145.)

The Court also did not consider evidence submitted by Perfect 10 showing that Giganews's own purported experts, William Rosenblatt and John Levine, likewise did not know about the Mimo newsreader's automatic Message-ID extraction feature prior to May 21, 2014 when Perfect 10 discovered it.  (Davis Decl. Dkt. No. 438-15, Exh. 11 (Rosenblatt Depo.) 135:12-19;  Davis Decl. Dkt. No. 438-11, Exh 10 (Levine Depo.) 127:13-128:4, 134:23-135:2, 136:7-13.)  Moreover, the Court did not consider evidence submitted by Perfect 10 showing that neither Mr. Rosenblatt nor Mr. Levine knew how to obtain Message-IDs when they were not readily available.  (Dkt. No. 438-11 Exh. 10 (Levine Depo.) 146:21-150:16; Dkt. No. 438-15, Exh. 11 (Rosenblatt Depo.) 140:12:-142:11.)

### D.   Perfect 10's Sample Notices Could Be Processed In 20 Seconds Or Less And Did Not Require Side By Side Comparisons

In the Order, the Court ruled that Giganews did not have actual knowledge of infringement except from legible Message-IDs provided in Perfect 10's notices, thus finding that the balance of those notices did not comply with the DMCA notification requirements set forth in 17 U.S.C. §512(c)(3)(A).  Order at 10-13.  In so ruling, the Court relied almost exclusively on Judge Collins' January 29, 2014 Order denying Perfect 10's earlier motion for partial summary judgment (Dkt. No. 180).  See, e.g., Order at 11 ("Perfect 10's search-screenshot takedown notices 'requires a Usenet provider to compare its search results to Plaintiff's search results in an onerous side-by-side, line-by-line manner' (Dkt. No. 180, p. 16)").

The above ruling failed to consider Perfect 10's evidence regarding Sample Notices 1-3 and 6-8, which were before the Court in connection with the parties' various motions for partial summary judgment on Perfect 10's indirect infringement claims.  *See* Perfect 10's Statement of Genuine Issues in opposition to Giganews's motion Re No Indirect Infringement ("Dkt. No. 537"), ¶37, citing to Zada DMCA

1   Decl. Dkt. No. 449-3 ¶¶11-40, Exhs. 1, 4-23.  Such notices were created **after** Judge

2   Collins' January 29, 2014 Order and were designed specifically to deal with Judge

3   Collins' criticisms.

4          For example, Sample Notice 1, sent on May 10, 2014, asked Giganews to

5   perform a search on the term "perfecttengallery" and remove all resulting messages.

6   Had Giganews performed that search, a single "perfecttengallery" .zip file would have

7   appeared, containing approximately 4,951 Perfect 10 images.  (Dkt. No. 449-3 ¶¶11-

8   13, 19, 23, 26; Dkt. No. 449-6 (Exh. 4); Dkt. No. 449-10 (Exh. 8); Dkt. No. 449-12

9   (Exh. 10); Dkt. No. 452 (Exh. 1) Video demonstrations folder – Video 2) cited to by

10  Perfect 10's Reply Brief In Support Of Giganews's Indirect Liability ("Dkt. No. 606")

11  at 16:2-7.  Thus, no side by side comparison was necessary.  As Perfect 10 further

12  showed, Giganews could then have extracted the approximately 4,951 Message-IDs

13  associated with those Perfect 10 images in approximately 20 seconds.  (Dkt. No. 452

14  (Exhibit 1 – the disk) Video Demonstrations folder – Video 2.)  This is 8,000 times

15  faster than the 48 hours that Giganews admits it spends to process an average notice it

16  receives.  (Dkt. 442 ¶36.)   Moreover, Sections 512(f) and 512(g) of the DMCA would

17  have protected Giganews from any liability for following Perfect 10's instructions and

18  removing all resulting messages in the event that Perfect 10 ever incorrectly identified

19  non-Perfect 10 content as belonging to Perfect 10 – a situation that Giganews has

20  never demonstrated has occurred.

21         Perfect 10 could not have automatically extracted these Message-IDs because,

22  as explained in Section III.C above, at the time it sent Sample Notice 1 to Giganews,

23  Perfect 10 was not aware of the automatic Message-ID extraction feature found in the

24  Mimo newsreader. (Dkt. No. 449-3 ¶47, cited to by Dkt. No. 616 ¶¶145, 184.)

25         Perfect 10 also submitted evidence demonstrating that alleged "deficiencies" in

26  Perfect 10's DMCA notices described in the Order [*see* Order at 11-12] did not apply

27  to Sample Notices 2 or 3.  Those notices requested that Giganews perform searches on

28  the terms "Your P10" and "P10website," and remove all resulting messages.  As

1   Perfect 10 demonstrated, a few .zip files would have appeared in response to each

2   search.  Giganews did not need to perform any side by side comparisons and would

3   have been able to extract thousands of Message-IDs in 20 seconds.  (Dkt. No. 449-3,

4   ¶¶19, 23; Dkt. No. 449-10 (Exh. 8), Dkt. No.  452 (Exh. 1), Videos 2-3.)

5          Furthermore, Perfect 10 submitted evidence showing that Giganews could have

6   used Sample Notices 6-8 to block approximately 10,000 Message-IDs in no more than

7   a few minutes, even if it could not read specific Message-IDs identified in the notices.

8   (Dkt. No. 449-3 ¶¶21, 24, 33-35; Dkt. No. 449-11 (Exh. 9); Dkt. No. 449-19 (Exh.

9   17); Dkt. No. 449-20 (Exh. 18); Dkt. No. 449-21 (Exh. 19); Dkt 452 (Exh. 1) (Video

10  4).  In the Order, the Court criticizes Perfect 10 for not re-sending these notices to

11  Giganews via mail after Giganews complained that the faxed versions of these notices

12  were illegible.  Order at 12.  It was not necessary for Perfect 10 to do so, however,

13  because the notices asked Giganews to perform searches such as "perfecttengallery"

14  and "P10 2006" and block *all resulting messages*, not merely the identified Message-

15  IDs.  Because the searches requested in the notices were legible, Giganews did not

16  need any additional information to block all resulting messages as the notices

17  requested.  Giganews could have done so almost immediately using the Mimo

18  automatic Message-ID extraction feature which only Giganews knew about.

19         Perfect 10 also submitted evidence showing that Giganews received original

20  electronic copies of Sample Notices 6-8 in discovery on June 13, 2014 in a folder

21  labelled "DMCA Notices from P10 to Giganews.  (Dkt. No. 543-3, Exh. 6, p. 5).

22  Giganews received Sample Notice 8 as well via email from Lynell Davis on August

23  23, 2104.  (Dkt. No. 442, ¶39.)  Nevertheless, Giganews admittedly did not block

24  those Message-IDs until September 2014.  In addition, Perfect 10 submitted evidence

25  demonstrating that as of November 1, 2014, at least 830 Perfect 10 images could still

26  be downloaded from messages Giganews claimed to have blocked.  (Dkt. No. 606-1

27  ¶¶8-9, Exh. 38; Dkt. No. 608, Exh. A.)

28         Finally, the Court's complaints that Perfect 10's DMCA notices improperly

1   pointed to a list of search results did not apply to Giganews's Sample Notice A.

2   Sample Notice A, which was sent to Giganews on March 25, 2009, before the

3   automatic Message-ID extraction feature found in the Mimo newsreader was created,

4   did not include any suggested search term.  Rather, Sample Notice A consisted

5   exclusively of 1,468 Perfect 10 Images with their Image Identifiers.  (Dkt. No. 550-2,

6   ¶¶27-28; Dkt. No. 550-4, Exhs. 13-14.)  Perfect 10 demonstrated that other Usenet

7   providers had processed similar notices and that Giganews could have processed

8   Sample Notice A at the rate of approximately one image per second – an

9   extraordinarily fast rate by DMCA standards.  (Dkt. No. 550-2, ¶¶27-28, 36-40; Dkt.

10  No. 550-4 (Exhs. 13-14, 20); Dkt. No. 550-5 (Exhs. 21-24).)  Therefore, as Perfect 10

11  argued, Sample Notice A complied with Section 512(c)(3)(A)(iii) of the DMCA,

12  because it provided information reasonably sufficient to permit Giganews to locate the

13  infringing material.   (Dkt. No. 550-2 ¶¶27-28; Dkt. No. 550-4 Exhs. 13-14, *cited in*

14  Dkt. No. 550 at 8:21-9:10.)  Furthermore, Giganews has not provided evidence that

15  Message-IDs were available for any of the images in that notice when it was created

16  in 2009, or explained how Perfect 10 could have obtained such Message-IDs.  (Dkt.

17  No. 550-2 ¶27.)

18       In issuing the Order, however, this Court did not address any of the above

19  evidence.  Nowhere in the Order did the Court discuss any of the Sample Notices

20  identified by either Perfect 10 or Giganews, let alone specifically explain why any of

21  those notices failed to comply with the notification requirements of Section

22  512(c)(3)(A) of the DMCA.

23       **E.    The Court Did Not Address Perfect 10's Other Evidence Of Actual**

24              **Or Constructive Knowledge**

25       In finding that "there is no evidence that Giganews had any knowledge, actual

26  or constructive, of any specific infringing content other than those messages for which

27  Perfect 10 provided legible Message IDs…" [Order at 13], the Court did not address

28  substantial contrary evidence submitted by Perfect 10.  *See* Dkt. No. 606 at 18:27-

20:19, 22:19-24:1.  For example, Perfect 10 submitted evidence that many of its images at issue, including Sample Images 1, 4, 6, and 9 displayed Perfect 10 copyright notices, which courts have found provide actual knowledge.  *See Rogers v. Ecolor Studio*, 2013 WL 752256 at \*7 (E.D.N.Y., 2013) *cited in* Dkt. No. 606 19:13-15.  The Court also did not address evidence from *Ellison v. Robertson*, 357 F.3d 1072, 1077 ((9th Cir. 2007) *cited in* Dkt. No. 606, 19:21-28, that a mere telephone call from a third party advising a Usenet operator of infringing activity in a particular Usenet newsgroup was sufficient to put that Usenet operator on notice of that infringing activity.  Finally, the Court also did not address Perfect 10's evidence of willful blindness.  (Dkt. No. 606 at 22:19-24:1.)

## IV.   CONCLUSION

As the above discussion demonstrates, Perfect 10 presented significant material facts in opposition to Giganews's Motion that this Court failed to consider in issuing the Order granting the Motion.  As a result, various rulings by the Court, including findings that Perfect 10 presented no contrary evidence or that the evidence in support of Giganews's position was "undisputed," were clearly erroneous.

Accordingly, for all of the foregoing reasons, Perfect 10 respectfully requests that this Court grant this Motion, reconsider its Order in light of all of the evidence submitted by Perfect 10 discussed above, and issue a new ruling that addresses such evidence.  Such a ruling should deny Giganews's Motion, rule that Giganews is not entitled to partial summary judgment on Perfect 10's claims for contributory copyright infringement, and instead rule that Perfect 10 is entitled to partial summary judgment on its contributory infringement claim.

Dated:  November 30, 2014          Respectfully submitted,

By:  _____
Lynell D. Davis, Esq.
Attorney for Plaintiff Perfect 10, Inc.