ANDREW P. BRIDGES (CSB No. 122761)
abridges@fenwick.com
ILANA RUBEL (CSB No. 221517)
irubel@fenwick.com
TODD R. GREGORIAN (CSB No. 236096)
tgregorian@fenwick.com
KATHLEEN LU (CSB No. 267032)
klu@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:  415.875.2300
Facsimile:   415.281.1350

Attorneys for Defendants
GIGANEWS, INC. and
LIVEWIRE SERVICES, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| PERFECT 10, INC., a California Corporation , <br><br> Plaintiff, <br><br> v. <br><br> GIGANEWS, INC., a Texas Corporation; LIVEWIRE SERVICES, INC., a Nevada Corporation; and Does 1 through 100, inclusive, <br><br> Defendant. | Case No.: 11-cv-07098-AB (SHx) <br><br> **DEFENDANTS GIGANEWS, INC. AND LIVEWIRE SERVICES, INC.'S NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEY'S FEES AND EXPENSES** <br><br> Date:        February 2, 2015 <br> Time:        10:00 A.M. <br> Courtroom:  790 Roybal <br> Judge:  Hon. André Birotte, Jr. |
| GIGANEWS, INC., a Texas Corporation; LIVEWIRE SERVICES, INC., a Nevada Corporation, <br><br> Counterclaimants, <br><br> v. <br><br> PERFECT 10, INC., a California Corporation, <br><br> Counterdefendant. | |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION FOR AWARD OF ATTORNEY'S FEES .......................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 2

I.    INTRODUCTION .............................................................................................. 2

II.   FACTUAL AND PROCEDURAL BACKGROUND ...................................... 3

III.  ARGUMENT ................................................................................................... 10

    A.    DEFENDANTS SHOULD RECOVER ATTORNEY'S FEES THEY INCURRED DEFENDING AGAINST ALL CLAIMS. ........................................................................... 10

        1.    The Court Should Award Fees Under the Copyright Act .................................................................... 11

            a.    Defendants Obtained a Complete Merits Victory. ........................................................ 12

            b.    Perfect 10 Persisted in Frivolous and Unreasonable Positions. ..................................... 12

            c.    Perfect 10 Pursued The Case with an Improper Motive. .................................................... 14

            d.    The Court Should Award Fees to Compensate Defendants and Deter Perfect 10 from Continuing its Campaign of Unmeritorious Suits. ............................................................. 16

        2.    The Court Should Award Fees Under the Lanham Act. ......... 17

        3.    The Court Should Award Fees Defendants Incurred Defending Against Perfect 10's State-Law Claims. ................. 18

            a.    California Law Mandates an Award of Fees on Perfect 10's Publicity Claims. ........................... 18

            b.    The Court Should Award Fees Defendants Incurred Defending Against the Unfair Competition Law Claim to the Extent It Was Intertwined with Other Claims. ....................... 19

    B.    The Fees and Expenses That Defendants Request Are Reasonable. ............................................................... 20

        1.    The Rates of Defendants' Counsel Are Reasonable In Light of the Nature of this Case ......................................... 21

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS
## (Continued)

**Page**

2.     Defendants' Attorneys Worked a Reasonable Number of Hours. ................................................................. 23

C.     The Court Should Also Award Reasonable Expenses. ...................... 24

IV.     CONCLUSION ............................................................. 25

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR AWARD OF ATTORNEY'S
FEES AND EXPENSES

ii

Case No.: 11-cv-07098-AB (SHx)

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

CASES

4
*Batjac Prods., Inc. v. Goodtimes Home Video Corp.,*
5
No. CV 96-7416 DDP, 1997 WL 7455039
(C.D. Cal. Sept. 26, 1997) ........................................................................ 12

6
*Bernal v. Paradigm Talent and Literary Agency,*
No. CV 07-06445 SVW, 2010 WL 6397561
7
(C.D. Cal. Jun. 1, 2010)............................................................................. 12

8
*Blum v. Stenson,*
465 U.S. 886, 104 S. Ct. 1541 (1984) ...................................................... 21
9
*Camacho v. Bridgeport Fin., Inc.,*
10
523 F.3d 973 (9th Cir. 2008) .................................................................... 21

11
*Davis v. City and Cnty. Of San Francisco,*
976 F.2d 1536 (9th Cir. 1992) .................................................................. 25
12
*Duckhole v. NBC Universal Media LLC,*
13
No. CV 12-10077-BRO, 2013 WL 5797204
(C.D. Cal. Oct. 25, 2013)..................................................................... 12, 16
14
*Entm't Research Grp. v. Genesis Creative Grp.,*
15
122 F.3d 1211 (9th Cir. 1997) ............................................................ 11, 12

16
*Fair Wind Sailing, Inc. v. Dempster,*
764 F.3d 303 (3d Cir. 2014) ..................................................................... 17
17
*Fantasy, Inc. v. Fogerty,*
18
94 F.3d 553 (9th Cir. 1996) ...................................................................... 11

19
*Fogerty v. Fantasy,*
510 U.S. 517 (1994) ............................................................................ 11, 17
20
*Glass v. Sue,*
21
No. CV 09-8570-RGK, 2011 WL 5611028
(C.D. Cal. Feb. 8, 2011) ........................................................................... 13
22
*Graciano v. Robinson Ford Sales, Inc.,*
23
144 Cal. App. 4th 140 (2006).................................................................... 19

24
*Hensley v. Eckerhart,*
461 U.S. 424, 103 S.Ct. 1933 (1983) ....................................................... 20
25
*Historical Research v. Cabral,*
26
80 F.3d 377 (9th Cir. 1996) ...................................................................... 11

27
*In re Broadcom Corp. Sec. Litig.,*
No. SACV 01-275, 2005 U.S. Dist. LEXIS 41993
28
(C.D. Cal. Sept. 12, 2005)......................................................................... 25

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

*In re Rossco Holdings, Inc.*,
  No. CV-14-917-JFW, 2014 WL 2611385
  (C.D. Cal. May 30, 2014) .................................................................................. 22

*IPVX Patent Holdings, Inc. v. Voxernet LLC*,
  No. 5:13-cv-01708, 2014 WL 5795545 (N.D. Cal. Nov. 6, 2014) .................... 22

*Jones v. Corbis Corp.*,
  No. CV 10-8668-SVW CWX, 2011 WL 4526084 (C.D. Cal. Aug. 24,
  2011) .................................................................................................................. 22

*Kerr v. Screen Extras Guild, Inc.*,
  526 F.2d 67 (9th Cir. 1975) ............................................................................... 20

*Kirby v. Sega of Am., Inc.*,
  144 Cal. App. 4th 47 (2006) ............................................................................... 19

*Lakim Indus., Inc. v. Linzer Prods. Corp.*,
  No. 2:12-cv-04976, 2013 WL 1767799 (C.D. Cal. Apr. 24, 2013) ................... 21

*Laskay v. New Line Cinema Corp.*,
  230 F.3d 1367 (9th Cir. 2000) ........................................................................... 18

*Lewis v. Activision Blizzard, Inc.*,
  No. C 12-1096 CW, 2014 WL 4953770 (N.D. Cal. Sept. 25, 2014) ................. 19

*Love v. Associated Newspapers, Ltd.*,
  611 F.3d 601 (9th Cir. 2010) ............................................................................. 18

*Love v. The Mail on Sunday*,
  No. CV05-7798 ABC, 2007 WL 2709975 (C.D. Cal. Sep. 7, 2007) ...... 12, 16, 19

*Mattel, Inc. v. MGA Entm't*,
  2011 WL 3420603 (C.D. Cal. Aug. 4, 2011) ..................................................... 22

*Mattel, Inc. v. MGA Entm't, Inc.*,
  705 F.3d 1108 (9th Cir. 2013) ..................................................................... 11, 22

*Mattel, Inc. v. Walking Mountain Prods.*,
  353 F.3d 792 (9th Cir. 2003) ............................................................................. 18

*Moore v. Jas. H. Matthews & Co.*,
  682 F.2d 830 (9th Cir. 1982) ............................................................................. 21

*Netbula v. Chordiant Software, Inc.*,
  No. 5:08-cv-00019-JW, Dkt. 594 (N.D. Cal. Dec. 17, 2010) ............................ 22

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.*,
  134 S. Ct. 1749 (2014) ....................................................................................... 17

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES
### (Continued)

Page(s)

*Pastre v. Weber*,
800 F. Supp. 1120 (S.D.N.Y. 1991) ................................................................ 25

*Perfect 10, Inc. v. CC Bill, LLC*,
488 F.3d 1102 (9th Cir. 2007) ........................................................................ 16

*Perfect 10, Inc. v. Google, Inc.*,
653 F.3d 976 (9th Cir. 2011) ....................................................................... 4, 5

*Perfect 10, Inc. v. Visa Int'l Servs. Ass'n*,
No. C 04-00371 JW, 2005 WL 2007932 (N.D. Cal. Aug. 12, 2005) ................ 13

*Religious Technology Center v. Netcom On-Line Communications Services, Inc.*,
907 F. Supp. 1361 (N.D. Cal. 1995) ................................................................. 5

*Robinson v. Lopez*,
No. CV 03-3732 LGB, 2003 WL 2316906, 69 U.S.P.Q.2d (BNA) 1241 (C.D. Cal. Nov. 24, 2003) ............................................................... 11

*Scott v. Meyer*,
No. CV 09-6076 ODW, 2010 WL 2569286 (C.D. Cal. Jun. 21, 2010) ........ 12, 16

*SOFA Entm't, Inc. v. Dodger Prods., Inc.*,
709 F.3d 1273 (9th Cir. 2013) ........................................................................ 17

*Stephen W. Boney, Inc. v. Boney Servs., Inc.*,
127 F.3d 821 (9th Cir. 1997) .......................................................................... 18

*Trustees of Constr. Indus. v. Redland Ins. Co.*,
460 F.3d 1253 (9th Cir. 2006) ........................................................................ 25

*Twentieth Century Fox Film Corp. v. Entm't Distrib.*,
429 F. 3d 869 (9th Cir. 2005) ......................................................................... 24

*Van Asdale v. Int'l Game Tech.*,
No. 3:04-cv-00703-RAM, 2011 WL 2118637 (D. Nev. May 24, 2011) ........... 20

*Video-Cinema Films, Inc. v. CNN, Inc.*,
Nos. 98 Civ. 7128, 98 Civ. 7129, 98 Civ. 7130, 2003 U.S. Dist. LEXIS 4887 (S.D.N.Y. Mar. 31, 2003) ............................................................... 16

*Walker v. Countrywide Home Loans, Inc.*,
98 Cal. App. 4th 1158 (2002) ......................................................................... 19

*Welch v. Metropolitan Life Ins. Co.*,
480 F.3d 942 (9th Cir. 2007) .......................................................................... 21

*Wyatt Tech. Corp. v. Malvern Instruments, Inc.*,
No. CV 07-8298 ABC, 2010 U.S. Dist. LEXIS 144973 (N.D. Cal. June 17, 2010), *aff'd*, 526 Fed. Appx. 761 (9th Cir. 2013) ........................................ 25

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Yue v. Storage Tech Corp.*,
No. C-07-05850 JW (EDL), 2008 U.S. Dist. LEXIS 68920
(N.D. Cal. Aug. 6, 2008) *adopted by* 2008 U.S. Dist. LEXIS 68801
(N.D. Cal. Sept. 5, 2008) ................................................................................ 22

**STATUTES**

15 U.S.C. § 1117(a) ........................................................................................ 17

17 U.S.C. § 505 ........................................................................................*passim*

17 U.S.C. § 512 ("DMCA") ..................................................................... 6, 8, 9, 16

47 U.S.C § 230 (Communications Decency Act of 1996 ("CDA")) .................... 6, 19

Cal. Civ. Code § 3344 ................................................................................. 18, 19

Cal. Civ. Code § 3344(a) .............................................................................. 18, 19

35 U.S.C. § 285 (Patent Act) .......................................................................... 17

**RULES**

Civ. L.R. 54 ..................................................................................................... 24

Fed. R. Civ. P. 56(h) ......................................................................................... 6

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## NOTICE OF MOTION FOR AWARD OF ATTORNEY'S FEES

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

DEFENDANTS GIGANEWS, INC. AND LIVEWIRE SERVICES, INC. GIVE NOTICE THAT ON that, on February 2, 2015 at 10:00 A.M., or as soon thereafter as feasible, in Courtroom 790 of the United States District Court for the Central District of California, located at 255 East Temple Street, Los Angeles, CA 90012-3332, Defendants Giganews, Inc. and Livewire Services, Inc., will, and hereby do, move for an order granting Defendants their reasonable attorney's fees and other recoverable expenses in this matter.  Defendants base this motion on this notice; the memorandum in support; the declarations of Andrew P. Bridges, Peter D. Zeughauser, Todd R. Gregorian and their exhibits; all other pleadings and papers on file in this action; any matters of which this Court may take judicial notice, and any other evidence and argument as counsel may present at or before the hearing on this matter.  This motion follows a conference of counsel pursuant to L.R. 7-3 which took place on November 18, 2014.

Dated:  December 29, 2014          FENWICK & WEST LLP


                                   By: _/s/Andrew P. Bridges_
                                       Andrew P. Bridges

                                   Attorneys for Defendants
                                   GIGANEWS, INC., and
                                   LIVEWIRE SERVICES, INC.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

As the Court recognized in its summary judgment orders, Perfect 10 could have avoided this litigation in a matter of minutes by submitting to Defendants proper notifications of claimed infringement.  Instead, Perfect 10's CEO, a veteran of dozens of lawsuits but a non-lawyer with no professional standards to influence him, pursued this case with blind passion and greed, relying on a series of outrageous and false statements and baseless arguments, including claims that Defendants *themselves* uploaded infringing messages to Usenet.  Plaintiff waged an extraordinary campaign of three and a half years, taking step after step to create litigation chaos, with enormous burdens and expenses for Defendants, while seeking catastrophic statutory damages (without actual damage) and injunctions. Perfect 10 is a unique litigant.  Sadly, this is not a unique case: Perfect 10 has shown no signs of letting up, and it will not curb its litigation misbehavior unless this Court demonstrates that courts will not idly indulge Perfect 10's misbehavior.

Defendants prevailed completely in this case, obtaining final judgment on the merits.  Defendants won dismissal of Perfect 10's trademark, right of publicity, and unfair competition claims, and summary judgment on its copyright claims—a determination as a matter of law that out of the nearly 20,000 works Perfect 10 claimed, Defendants did not infringe a single Perfect 10 copyright.  Three district judges (Judges Matz, Collins, and Birotte) ruled unanimously against Perfect 10's copyright theories.  A fourth judge, in the Southern District of California, saw through Perfect 10's forum shopping at the outset and sent the case to this Court. At every significant turn, the Court has ruled against Perfect 10.  Nor is it alone in doing so.  The Court of Appeals for the Ninth Circuit, in Perfect 10's other cases involving CCBill, Google, and Amazon.com, have also ruled against Perfect 10 on every appeal.  They have made clear rulings that Perfect 10 has steadfastly ignored. Both the facts of this case and the relevant legal standards call out for an award to

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Defendants of their attorney's fees and expenses.

2       The fees that Defendants request are reasonable in light of the scope and

3   complexity of the case and Perfect 10's tireless and constant attempts to drive up

4   the expense.  Perfect 10's complaint threatened statutory damages of potentially

5   billions of dollars, and only after three years of litigation did Perfect 10 reveal that

6   it considered the settlement value of the case to be over $51 million.  For Perfect

7   10, litigation gamesmanship and the costs it imposes are the engine for the

8   settlements that are at the heart of its business plan.  Defendants incurred

9   reasonable expense to defend this case.  Anything less than a full award of fees to

10  Defendants will penalize Defendants for seeing this case to a conclusion on the

11  merits.  Anything less than a full award will encourage Perfect 10 to continue to

12  pursue its wrongful objective: using the prospect of outrageous litigation claims and

13  tactics to extract unwarranted payments.

14  ## II.    FACTUAL AND PROCEDURAL BACKGROUND

15      Plaintiff Perfect 10 is a failed publisher of an adult magazine and website and

16  a serial litigant best known for its copyright infringement lawsuits.  Perfect 10 has

17  sued a variety of companies including Visa and MasterCard, Google, Amazon.com,

18  Tumblr, and Microsoft, attempting to hold each liable for the copyright

19  infringements of individual Internet users.  In this case, Perfect 10 sued two

20  providers of Usenet access, alleging: (1) direct and indirect copyright infringement,

21  based on Perfect 10's allegation that the Usenet contains material that infringes its

22  copyrights; (2) trademark infringement and dilution based upon Defendants'

23  provision of Usenet messages that allegedly contain Perfect 10's marks; (3) unfair

24  competition; and (4) violation of rights of publicity Perfect 10 claimed to have

25  acquired from its models.  Dkt. 1, ¶ 74.  Perfect 10's behavior over the three and a

26  half years of the case reveals a single-minded drive to increase litigation expense

27  and to intimidate Defendants into paying enormous sums to settle the case.

28      ***Improper Venue.***  Perfect 10's gamesmanship began when it brought this

1   action in an improper venue.  Perfect 10 had previously filed approximately two

2   dozen cases in the Central District of California, where it resides.  Dkt. 56 at 2.

3   After several defeats in this Court, however, Perfect 10 filed this case in the

4   Southern District of California.  The Southern District of California rejected Perfect

5   10's forum shopping, finding that "Perfect 10 has failed to show [a] specific

6   connection to the Southern District" and noting that the "mere fact that Perfect 10

7   has a website does not provide a nexus to the Southern District."  *Id.*  Perfect 10

8   also later opposed a related-case assignment in this District without basis.  Dkt. 62.

9       ***Preliminary Injunction.***   In another case, the Ninth Circuit in 2011 affirmed

10  denial of Perfect 10's motion for preliminary injunction against Google, ruling that

11  Perfect 10's accusations of infringement against many companies made it unable to

12  show irreparable harm at Google's hands.  *See Perfect 10, Inc. v. Google, Inc.*, 653

13  F.3d 976 (9th Cir. 2011).  The ruling effectively established that Perfect 10 was

14  unable to show irreparable harm at the hands of any company.  Nonetheless, Perfect

15  10 sought an onerous preliminary injunction against Defendants in this case,

16  recycling its arguments of irreparable harm.  In denying Perfect 10's motion, Judge

17  Matz noted that Perfect 10 did not address the Ninth Circuit's ruling in its briefing,

18  even though Defendants relied on *Google* in their opposition.  Dkt. 88, at 2.

19  Following *Google*, the Court held that Perfect 10's claim that 150 other entities had

20  infringed upon its images meant an injunction against Defendants would not

21  prevent any supposed irreparable injury.  *Id.*  The Court further found no irreparable

22  harm because Perfect 10 ceased publication of its magazine years before and

23  submitted no evidence it had ever turned a profit.  *Id.*

24      ***Motions to Dismiss.***   The Court noted that Perfect 10's original Complaint

25  was "marred by excessively conclusory language" (Dkt. 97, at 1) that "obscures"

26  the facts regarding Defendants' alleged conduct.  *Id.* at 2.  Defendants moved to

27  dismiss because of those and other defects in Perfect 10's pleading.  Perfect 10

28  asserted claims for copyright infringement against Defendants based on

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Defendants' provision of Usenet access to their customers.  Dkt. 1, ¶¶ 36-37.

2   Perfect 10 alleged:

3           Defendants sell to their customers for as little as $4.99

4           per month access to their servers, which are virtual

5           warehouses containing billions of dollars worth of

6           copyrighted works.

7   *Id*. at ¶ 24.  Perfect 10 acknowledged, however, that "Defendants purportedly copy

8   all of the materials on their servers from a global system of online bulletin boards

9   called the USENET."  *Id*.  The Court (Judge Matz then presiding) granted

10  Defendants' motion to dismiss, rejecting Perfect 10's direct infringement claims.

11  Dkt. 97 at 13.  The Court concluded that "copyright infringement requires 'some

12  element of volition or causation which is lacking where a defendant's system is

13  merely used to create a copy by a third party.'"  *Id*. (citing *Netcom*, 907 F. Supp. at

14  1370) (internal quotation omitted).  Applying that principle to the facts that Perfect

15  10 had alleged, the Court concluded that "Defendants merely engaged in the act of

16  designing and implementing a system that automatically and uniformly creates

17  temporary copies of all data sent through it, whether that data contains infringing

18  content or not.  Such conduct does not constitute any volitional act."  *Id*. at 11

19  (internal citation and quotation omitted).  The Court warned Perfect 10 that any

20  amended complaint should not "use the same vague and conclusory language that

21  plagued the original complaint."  *Id*. at 24.  The Court also held that Perfect 10 had

22  adequately pled its claims of contributory and vicarious copyright infringement

23  against Giganews, but it dismissed those claims against Livewire.  *See id*. at 13-19.

24          Perfect 10's original complaint also alleged multiple additional claims

25  (Dkt. 1 ¶¶ 48-78) that the Court dismissed:

26  •   Perfect 10 did not adequately plead its claims for direct trademark

27      infringement, secondary trademark infringement, and trademark dilution,

28      because it failed to set forth any allegation of trademark "use" by Defendants

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  or third-parties;

2  &bull; The Communications Decency Act of 1996 ("CDA"), 47 U.S.C § 230,

3   provided Defendants immunity against Perfect 10's claims of publicity

4   violations under the California statute, right of publicity violations under

5   California common law, and unfair competition under California statutes.

6 Dkts. 11 & 97 at 19-24.

7   In its Amended Complaint, Perfect 10 repeated its boilerplate allegations

8 regarding Defendants' provision of Usenet access, requiring a further motion to

9 dismiss to address the same infringement theories the Court had already rejected.

10 *See* Dkts. 111 & 129 at 3 ("it is clear that these allegations cannot support [a] claim

11 for direct infringement").  The Court, however, allowed Perfect 10 to proceed based

12 on new, and scurrilously false, allegations that *Giganews employees* had *themselves*

13 directly uploaded infringing materials.  *Id*.  The Court noted that Perfect 10 had

14 made these allegations on information and belief and characterized them as "not the

15 strongest set of allegations."  *Id.* at 4.

16   ***Perfect 10's Early Motion for Summary Judgment.***  Perfect 10 moved on

17 November 4, 2013, for partial summary judgment on issues relating to Defendants'

18 affirmative defenses, namely the DMCA compliance of Perfect 10's takedown

19 notices and purported ineligibility of Defendants for DMCA safe harbor.  Dkt. 142.

20 The Court denied the motion entirely.  Dkt. 180 at 2.  The Court also noted that

21 Perfect 10's "voluminous evidentiary objections" were "substantially meritless."

22 *Id*. at 5.  Perfect 10 later tried to overcome this failure with a motion for sanctions

23 pursuant to Fed. R. Civ. P 56(h), accusing *all of Defendants' witnesses* of filing

24 false declarations.  Dkt. 325.  The Court termed the motion "ill-considered and

25 overreaching" and denied it as meritless.  Dkt. 343.

26   ***Discovery***.  Perfect 10's intransigence in discovery forced Defendants to

27 obtain numerous orders against it.  *See* Dkts. 223, 254, 311, & 326.  The Court also

28 issued orders against Perfect 10-affiliated witnesses, whom Perfect 10's counsel

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   represented, for acts that ranged from insufficient responses to willful misconduct.

2   *See* Dkts. 312, 320 & 342.  By contrast, the Court substantially or entirely denied

3   Perfect 10's motions to compel and for discovery sanctions.  *See* Dkts. 216, 295,

4   316, & 412.  Perfect 10's noncompliance with its discovery obligations was bold, as

5   detailed in Defendants' pending sanctions motion (Dkt. 356): [1]

6   • Perfect 10 made an unsolicited dump of 800,000 pages before Defendants

7     had sent any discovery requests, and then it refused to disclose how it

8     selected those materials for production or how they related to Defendants'

9     later discovery requests.  Perfect 10 then made multiple representations as to

10    the "completeness" of its production both before and after motion practice

11    that, on investigation, turned out to be false.

12   • In spite of the Court's orders, Perfect 10 refused to disclose evidence

13    supporting the basic elements of its claims, including: identification of the

14    copyrighted works asserted in the case, the Usenet messages and websites it

15    alleged infringe its copyrights, its claimed evidence that Defendants posted

16    infringing materials to Usenet, and its claimed evidence that the presence of

17    Perfect 10 images on Usenet acts as a draw for any Usenet subscriber.

18   • Also contrary to Court order, Perfect 10 sought to preclude investigation of

19    its activities on the Usenet, refusing to fully disclose its Usenet accounts, IP

20    addresses, email addresses, and advertising and promotional efforts.  And

21    Perfect 10 sought to preclude investigation of its past litigation activity and

22    positions, refusing to identify all those lawsuits and to produce all related

23    declarations, deposition transcripts, and expert reports.

24   • None of the Perfect 10 affiliated witnesses complied with the Court's orders

25    directing their searches for documents.  Instead, they withheld responsive

---

[1] Defendants' Motion for attorney fees related to their discovery briefing remains pending.  *See* Dkt. 638.  Defendants do not seek a double-recovery of their fees: to the extent Magistrate Judge Hillman issues an award, Defendants will withdraw their request for reimbursement of the corresponding fees he awards from this motion.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

documents at their own discretion, excluded electronic search terms that the Court specifically ordered, or searched a selective subset of their electronic files.  Most did not conduct manual searches or provide sworn declarations including the details of their search that the Court ordered them to provide.  One flatly refused to provide IP address information as the Court had ordered.  *Nevertheless, Perfect 10's counsel submitted declaration testimony under penalty of perjury that these witnesses had fully complied with the Court's orders.*

- Perfect 10's technical consultants Sean Chumura and Szabolcs Apai gave repeated, sworn testimony that they had no responsive documents because they had lost or destroyed their files.  But on the final day of fact discovery, well after their depositions, each produced thousands of pages of responsive documents that exposed the falsehood of their testimony.

Perfect 10 also misbehaved during expert discovery.  Perfect 10 designated three putative expert witnesses, Richard Waterman, J. Douglas Tygar, and Norman Zada.  Each of these witnesses offered opinions that were irrelevant, beyond their expertise, or impermissible lay opinions.  For example, Mr. Zada sought to qualify himself as an expert on the Usenet based on his experience as a user, and as an expert on DMCA notice and takedown procedures based on his experience of having sent takedown notices.  He also sought to offer purported "expert" opinions regarding the credibility of Defendants' witnesses.  Mr. Waterman sought to opine regarding the current prevalence of infringement of images on the Usenet based on an obsolete study regarding music.  Facing the threat of Daubert motions, Perfect 10 suggested it might withdraw some of its "expert" opinions but did not.  Only after Defendants paid to prepare and file Daubert motions did Perfect 10 voluntarily withdraw substantial portions of the testimony of two of its putative experts (Dkt. 526 at 3; Dkt. 525 at 3), and ever evasive, it substituted a new declaration by the third, long after the deadline, to assert previously undisclosed opinions.  Dkt. 524-1.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Ultimately, the Court granted Defendants' motions and barred Mr. Zada from

2   testifying as an expert.  Dkts. 580-582.

3       ***Summary Judgment.***  Disregarding the Court's denial of its earlier motion

4   for partial summary judgment (Dkt. 180), Perfect 10 again moved on the same issue

5   of the adequacy of its DMCA notices to Defendants.  Dkt. 449.  In addition, Perfect

6   10 moved for partial summary judgment concerning direct copyright infringement

7   (Dkt. 453) and indirect copyright infringement (and Giganews's alleged

8   ineligibility for DMCA safe harbor).  Dkt. 504.  Defendants brought a total of four

9   motions for partial summary judgment as to direct copyright infringement (Dkt.

10  357); indirect copyright infringement (Dkt. 440); adequacy of Perfect 10's

11  notifications of claimed infringement (Dkt. 534); and statutory damages.  Dkt. 535.

12      The Court granted Defendants' motions with respect to direct and indirect

13  infringement and denied all other summary judgment motions as moot.  Dkts. 619-

14  21.  Ruling on direct infringement, the Court noted Perfect 10's resurrection of

15  rejected legal theories:

16          In an implicit admission that the facts before the Court are no different

17          than the allegations Judge Matz and Judge Collins previously rejected,

18          Perfect 10 repeatedly urges the Court to depart from Judge Matz' and

19          Judge Collins' prior rulings.

20  Dkt. 619 at 15; *see also id.* at 16.  The Court also recognized that Perfect 10 had

21  produced no evidence on the direct infringement allegations that had caused Judge

22  Collins to allow the claim to proceed, namely that Defendants or their employees

23  uploaded Perfect 10 materials to Usenet.  *Id.* at 12.  The allegations were false.

24      On the vicarious and contributory infringement claims the Court found no

25  probative evidence tended to show that Giganews received a direct financial benefit

26  from infringement of Perfect 10 copyrighted material or had knowledge of any

27  specific infringing Perfect 10 material on its servers.  Dkt. 620 at 14.  The Court

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  also commented on Perfect 10's practice of submitting hundreds of inadequate

2  takedown notices:

3      Not only did Perfect 10 submit illegible Message-IDs for the 542

4      messages it claims Giganews refused to take down, but when

5      Giganews asked Perfect 10 to resubmit the Message-IDs in a legible

6      format so that Giganews could block access to the infringing

7      messages (as Giganews had done with thousands of other messages in

8      response to Perfect 10's takedown notices) Perfect 10 refused to do

9      what was well within its power.

10     Even more puzzling, Perfect 10 also admits that it is aware of and

11     capable of using an infinitely simpler method of presenting Giganews

12     with readily identifiable Message-IDs for use in a proper takedown

13     notice . . . Perfect 10 did not take that simple step to protect its

14     copyrights.

15  *Id.* at 12-13.  The Court entered final judgment in Defendants' favor on all claims.

16  Dkt. 628.  Undeterred, Perfect 10 pursues reconsideration of the Court's summary

17  judgment orders.  *See* Dkt. 627.

18  **III.  ARGUMENT**

19      **A.  DEFENDANTS SHOULD RECOVER ATTORNEY'S FEES**
        **THEY INCURRED DEFENDING AGAINST ALL CLAIMS.**
20

21      Defendants prevailed on all of Perfect 10's asserted claims: copyright

22  infringement, trademark infringement, right of publicity, and unfair competition.

23  Although the parties spent most of the case litigating the copyright claims,

24  Defendants also incurred substantial early expense to defeat Perfect 10's other

25  aggressive claims.  In addition, Defendants prevailed on major procedural issues,

26  including defeating Perfect 10's improper venue and its preliminary injunction

27  motion.  Under the applicable standards the Court should award fees on all claims

28  with the exception of those associated only with the unfair competition claim.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

### 1.    The Court Should Award Fees Under the Copyright Act.

The Copyright Act permits a district court to "award a reasonable attorney's fee to the prevailing party as part of the costs."  17 U.S.C. § 505.  Prevailing plaintiffs and prevailing defendants get equal treatment: the court should award fees when the prevailing party's successful prosecution or defense of a claim furthers the purpose of the Copyright Act.  *See Fogerty v. Fantasy,* 510 U.S. 517, 534 (1994) ("*Fogerty I*"); *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 558 (9th Cir. 1996) ("*Fogerty II*") ("Faithfulness to the purposes of the Copyright Act is. . . the pivotal criterion").

> [E]xceptional circumstances are not a prerequisite to an award of
> attorneys fees; district courts may freely award fees, as long as they
> treat prevailing plaintiffs and prevailing defendants alike and seek to
> promote the Copyright Act's objectives.

*Historical Research v. Cabral*, 80 F.3d 377, 378 (9th Cir. 1996) (citation and internal quotation omitted).  The purposes of the Copyright Act "[are] furthered when defendants 'advance a variety of meritorious copyright defenses.'"  *Mattel, Inc. v. MGA Entm't, Inc.*, 705 F.3d 1108, 1111 (9th Cir. 2013).

Several factors guide a district court's determination of whether a fee award furthers the Copyright Act's purposes: (1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) objective unreasonableness (both in the factual and in the legal components of the case); and (5) the need, in particular circumstances, to advance considerations of compensation and deterrence.  *See Entm't Research Grp. v. Genesis Creative Grp.*, 122 F.3d 1211, 1229 (9th Cir. 1997) (citing *Fogerty II*)).  Not all factors must be present: "[c]ourts have awarded costs for copyright claims based on a single factor."  *See Robinson v. Lopez*, No. CV 03-3732 LGB (PLAx), 2003 WL 2316906, at *2, 69 U.S.P.Q.2d (BNA) 1241 (C.D. Cal. Nov. 24, 2003) (*citing Fogerty II*, 94 F.3d at 558).  Unusually in this case, *all* five factors weigh in favor of an award.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

### a. Defendants Obtained a Complete Merits Victory.

The first factor, the degree of success obtained, weighs in favor of any defendant that was "completely successful against the copyright claims." *Love v. The Mail on Sunday*, No. CV05-7798 ABC (PJWX), 2007 WL 2709975, at *5 (C.D. Cal. Sep. 7, 2007)("*Love I*"). This factor "weighs more in favor of a party who prevailed on the merits rather than a technical defense." *Duckhole v. NBC Universal Media LLC,*, No. CV 12-10077-BRO, 2013 WL 5797204, at *2 (C.D. Cal. Oct. 25, 2013); *see also Bernal v. Paradigm Talent and Literary Agency*, No. CV 07-06445 SVW (PLAx), 2010 WL 6397561, at *3 (C.D. Cal. Jun. 1, 2010). Here, Defendants prevailed against all of Perfect 10's copyright claims, establishing as a matter of law that they committed neither direct nor indirect copyright infringement. Dkts. 619 & 620. This merits victory, which thwarted Perfect 10's attempts to reverse the Ninth Circuit's mandate placing responsibility to copyright policing on copyright holders, to manufacture liability from deliberately defective notices, and to expand the contours of direct and indirect liability for copyright infringement, and which protected a core component of the Internet and forum for free speech, furthered the purposes of the Copyright Act. This weighs strongly in favor of an award.

### b. Perfect 10 Persisted in Frivolous and Unreasonable Positions.

"Allegations that are unsupported by facts or law are objectively unreasonable." *Batjac Prods., Inc. v. Goodtimes Home Video Corp.*, No. CV 96-7416 DDP, 1997 WL 7455039, at *3 (C.D. Cal. Sept. 26, 1997). A party cannot reasonably maintain a factual allegation throughout litigation without evidentiary support. *See Entm't Research Grp.*, 122 F.3d at 1229 (upholding award where "it was 'objectively unreasonable' for [plaintiff] to have maintained [copyright] claims for almost three years without evidentiary basis"); *Scott v. Meyer*, No. CV 09-6076 ODW (RZx), 2010 WL 2569286, at *3 (C.D. Cal. Jun. 21, 2010) (noting courts

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   have held "the maintenance of copyright claims for protracted period of a time

2   without evidentiary support" to be "objectively unreasonable").  A case crosses the

3   line from unreasonable to frivolous where "the result is obvious or the arguments

4   are wholly without merit."  *Glass v. Sue*, No. CV 09-8570-RGK (SHx), 2011 WL

5   5611028, at *3 (C.D. Cal. Feb. 8, 2011).  A case is also frivolous if "the factual

6   contention is clearly baseless." *Perfect 10, Inc. v. Visa Int'l Servs. Ass'n*, No. C 04-

7   00371 JW, 2005 WL 2007932, at *4 (N.D. Cal. Aug. 12, 2005).

8        Pervasively throughout the case Perfect 10 asserted unreasonable and

9   frivolous positions.  The Court observed that Perfect 10 made no attempt to support

10  its sole viable direct infringement theory with evidence.  Instead Perfect 10 forced it

11  to rule three times that the mere provision of Usenet access does not constitute

12  direct infringement.  *See* Dkt. 619 at 12 ("Although Perfect 10 repeats the

13  arguments Judge Matz and Judge Collins already rejected, the record is devoid of

14  any evidence to support the only theory of direct liability as to Giganews that

15  survived the pleading stage.").  Notwithstanding the absence of evidence, Perfect

16  10 refused to abandon the direct infringement claim at the close of discovery.  *See*

17  Gregorian Decl., Ex. 1.  Maintaining the claim with no evidentiary support was

18  itself unreasonable; moving for summary judgment on this claim based on a theory

19  that the Court had already rejected twice (and opposing Defendants' motion on the

20  same grounds) was frivolous.

21       Perfect 10 also pursued its indirect infringement claim despite a similar lack

22  of evidentiary support.  The Court found the record:

23  • "devoid of any evidence that Giganews had the necessary knowledge of

24     specific third-party infringement to support a claim for contributory

25     infringement;"

26  • "lack[ing] . . . a single piece of evidence" indicating that Perfect 10 images

27     cause customers to subscribe to Giganews; and

28  • without "any competent evidence to suggest that infringement of other forms

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

of media is rampant on Giganews's servers." Dkt. 620 at 1, 5, 7 & 9.  Moreover, Perfect 10 recycled failed theories on summary judgment that the Court had already rejected.  *See, e.g.,* Dkt. 620 at 11.  Perfect 10's continued prosecution of a claim for which it lacked any evidence on multiple elements was unreasonable and frivolous.

Finally, Perfect 10 burdened the Court and Defendants with a series of frivolous objections and discovery motions.  Magistrate Judge Hillman issued four separate orders requiring Perfect 10 to comply with discovery obligations and two additional orders requiring the same of Perfect 10-related witnesses whom Perfect 10's counsel represented.  *See* Dkts. 223, 254, 311, 326, 318, 322, and 326.  Perfect 10 filed a series motions for sanctions that it lost, one of which the Court described as "meritless"  "entirely unpersuasive," and "ill-conceived and overreaching."  Dkt. 343 [July 14, 2014 Civil Minutes] at 1.  The Court described another motion as involving mere "technical" problems, and specified that Perfect 10 should bear the cost of any technical assistance because the discovery sought was "highly unlikely to yield information that will advance plaintiff's case."  Dkt. 295 at 4.  Perfect 10 never sought the technical assistance when it faced the burden of paying for it, revealing that it simply had wanted to impose additional burdens on Defendants. *See* Dkt. 344-6 [Belichick Decl.], ¶ 4; *see also* Dkt. 412 ("The Motion is Denied. In sum Perfect 10 has the ability to obtain the information it desires, and Giganews is not obstructing Perfect 10's efforts").

### c.    Perfect 10 Pursued The Case with an Improper Motive.

Perfect 10's evident goal in this suit was to force settlement before the Court adjudicated the merits.  The Court observed that Perfect 10 could have ensured the prompt removal of any messages with its images from Giganews's servers if it had any interest in doing so:

Had Perfect 10 performed its own investigative duties, extracted the

Fenwick & West LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Message-IDs, and submitted those Message ID's [] in a machine-readable format, there would be little left to discuss in this case. Dkt. 620 at 13.  By its own admission Perfect 10 could have taken that step in minutes.  *See* Gregorian Decl., Ex. 2 [Perfect 10 30(b)(6) Depo.] at 207:22 - 208:13 (estimating 15 minutes to extract Message ID's for 90% of allegedly infringing Usenet messages).  This choice makes no sense for a party seeking to protect its copyrights, but it perfectly fits one whose business model rests on litigation.

Perfect 10 has never been profitable as a business; according to Perfect 10's CEO, it has lost over $50 million (which losses, while also funding Mr. Zada's lavish mansion and lifestyle, are passed through to Mr. Zada's personal income taxes to offset his enormous hedge fund profits because Perfect 10 is an S corporation).  Gregorian Decl., Ex. 3 [April 24 Zada Depo.] at 159:7-21; Ex. 5 [August 24 Zada Depo.] at 247:15-248:11; Ex. 6 [June 5 Chaney Depo.] at 50:20-51:10.  After more than a decade in business, Perfect 10 has generated less than $12,000 from the licensing of its images, and its website has only 1,200 active subscribers.  *Id.*, Ex. 3 at 212:18 - 213:2; Ex. 4 [April 25 Zada Depo.] at 563:5-6. Perfect 10 now spends a negligible amount of time—only forty hours *per year* – producing new works.  *Id.,* Ex. 4 at 539:25-541:4.  Nor does Perfect 10 employ measures to prevent its own customers from downloading and disseminating images, essentially courting infringement.  *Id*., Ex. 3 at 76:18- 79:21.

Instead, Perfect 10 generates its revenue through litigation settlements (Gregorian Decl., Ex. 3 [April 24 Zada Depo.] at 161:24-162:5), and the overwhelming majority of its employee time and financial resources supports the litigation business.  *Id.,* Ex. 4 [April 25 Zada Depo.] at 539:25-541:4; *see also* Ex. 3 [April 24 Zada Depo.] at 84:1-4 (Zada's primary role as CEO is litigation management); *id.* at 162:6-163:9 (litigation Perfect 10's largest expense).  Perfect 10 has acquired copyrights to images for the purpose of improving its litigation position, and it routinely buys the copyrights to images it discovers on allegedly

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

infringing websites.  *Id.*, Ex. 3 at 38:19-42:17.  As part of its strategy, Perfect 10 provides DMCA notices that courts have criticized as noncompliant and overly burdensome, and for which Perfect 10's own lawyers disclaim responsibility.  *See Perfect 10, Inc. v. CC Bill, LLC*, 488 F.3d 1102, 1111-13 (9th Cir. 2007); *see also* Gregorian Decl., Ex. 3 [April 24 Zada Depo.] at 93:2-95:3.

Courts facing litigants who similarly use the Copyright Act as a payment-extraction vehicle have little difficulty finding improper motive.  *See Video-Cinema Films, Inc. v. CNN, Inc.*, Nos. 98 Civ. 7128, 98 Civ. 7129, 98 Civ. 7130, 2003 U.S. Dist. LEXIS 4887, at *15-16 (S.D.N.Y. Mar. 31, 2003) (motive improper where plaintiff purchased copyrights for the purpose of bringing suit, and describing conduct as "nothing more than an obvious effort to use the Copyright Act to secure payment" from parties with a valid defense); *see also Duckhole*, 2013 WL 5797204, at *2 (considering extensive litigation history of plaintiff's CEO as evidence of improper motivation).  Perfect 10's motivation of securing windfall settlements undermines the purposes of the Copyright Act, and it weighs heavily in favor of granting Defendants their attorney's fees and expenses.

> ### d.    The Court Should Award Fees to Compensate Defendants and Deter Perfect 10 from Continuing its Campaign of Unmeritorious Suits.

"Deterring non-meritorious lawsuits against defendants seen as having 'deep pockets' and compensating parties that must defend against meritless claims are both laudable ends."  *Scott*, 2010 WL 2569286, at *3.  The need both to compensate and to deter is greatest where a plaintiff's tactics have unnecessarily driven up costs.  *See Love I*, 2007 WL 2709975, at * 5 ("[T]here is a need in this case …to deter Plaintiffs from advancing unsupportable claims. … Plaintiff's case was vastly overpled, thus unnecessarily expanding the Defendants' (and this Court's) work.").

Perfect 10 has filed over 30 copyright lawsuits, each seeking astronomical statutory damages and often seeking injunctions that would require the defendants,

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   at least temporarily, to cease providing services.  Gregorian Decl. Ex. 3, [April 24

2   Zada Depo.] at 10:19-11:7.  Perfect 10 has never won a damage award in a

3   contested case.  *Id.* at 166:4-17.  Moreover, because Perfect 10 seeks to force

4   settlements, Perfect 10 does everything in its power to drive up costs, posing

5   substantial burdens on defendants.  For example, as discussed above, Defendants

6   could not obtain Perfect 10's discovery compliance even after six discovery orders

7   from this Court.  Defeating Perfect 10's direct infringement claims required cross-

8   motions for summary judgment, even though Perfect 10 had developed no evidence

9   to support its claim.  The Ninth Circuit has recognized that "[w]hen a fee award

10  encourages a defendant to litigate a meritorious [defense] against an unreasonable

11  claim of infringement, the policies of the Copyright Act are served."  *SOFA Entm't,

12  Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013).  Here, Defendants

13  should receive compensation for the costs of litigating their meritorious defenses,

14  and the Court should deter Perfect 10 from asserting future meritless claims.

15      In sum, all of the *Fogerty* factors favor an award of fees in this case.

16          **2.      The Court Should Award Fees Under the Lanham Act.**

17      The Lanham Act provides reasonable attorney's fees to the prevailing party

18  in exceptional cases.  15 U.S.C. § 1117(a).  In *Octane Fitness*, the Supreme Court

19  reviewed the standard under Section 285 of the Patent Act, holding that "an

20  'exceptional' case is simply one that stands out from others with respect to the

21  substantive strength of a party's litigating position (considering both the governing

22  law and the facts of the case) or the unreasonable manner in which the case was

23  litigated."  *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749,

24  1756 (2014).  In making that holding, the Court noted that the Lanham Act's fee-

25  shifting provision is identical to the Patent Act's, and since then courts have applied

26  the *Octane Fitness* standard to fees requests under the Lanham Act.  *See id*; *Fair

27  Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 314-15 (3d Cir. 2014).[2]  A prevailing

28  ─────────────────────
    [2] Before *Octane Fitness*, the Ninth Circuit identified a number of circumstances that

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

defendant need not show evidence of bad faith to recover. *Stephen W. Boney, Inc. v. Boney Servs., Inc.*, 127 F.3d 821, 827 (9th Cir. 1997).

Perfect 10 based all of its trademark claims on the bare allegation that Defendants provide Usenet access services. *See* Dkt. 1 [Complaint] at ¶ 54 ("Defendants infringe Perfect 10 trademarks by providing lists of titles containing such marks when a user searches for one of Perfect 10's copyrighted works"); *see also id.* at ¶ 62. Under well-settled law, that does not constitute trademark use. As Judge Matz noted, "[t]he Court is unaware of any authority that would support such a broad construction of direct trademark infringement law, and Plaintiff does not cite any." Dkt. 97 at 20. Similarly, in connection with Perfect 10's secondary liability claim, the Court stated that "Plaintiff's Complaint is bereft of any allegations that a third party used Plaintiff's marks in connection with a commercial transaction." *Id.* at 2. As the Court noted, Perfect 10 knew from its own earlier cases that "use" of its trademark was an essential element. *See id.* at 21 n.10. Perfect 10's trademark claim was meritless and, in the context of its litigation practices throughout this case, merits an "exceptional case" finding.

### 3.   The Court Should Award Fees Defendants Incurred Defending Against Perfect 10's State-Law Claims.

#### a.   California Law Mandates an Award of Fees on Perfect 10's Publicity Claims.

Under California law, the right of publicity arises from two sources: Civil Code Section 3344 and California case law.[3] Section 3344 mandates recovery of attorney fees by the prevailing party. Cal. Civ. Code § 3344(a) ("[t]he prevailing party in any action under this section shall . . . be entitled to attorney's fees and costs"); *see also Love v. Associated Newspapers, Ltd.* ("*Love II*"), 611 F.3d 601,

---

support a finding a plaintiff's case exceptional, including asserting an objectively unreasonable claim, ignoring a clear defense, or disregarding orders of the court. *See Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 816 (9th Cir. 2003); *Laskay v. New Line Cinema Corp.*, 230 F.3d 1367 (9th Cir. 2000).
[3] Perfect 10 alleged violations of the right of publicity under both the California statute and common law. *See* Dkt. 1 at ¶¶ 72-78.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

614 (9th Cir. 2010);  *Love I*, 2007 WL 2709975, at *2  (J. Collins) (Section 3344 "renders an award of attorneys' fees mandatory"); *Kirby v. Sega of Am., Inc.*, 144 Cal. App. 4th 47, 62 (2006) ("The mandatory fee provision in section 3344 subdivision (a) leaves no room for ambiguity"). Where a plaintiff bases a common-law claim for a publicity rights violation on the same alleged unauthorized use as its statutory Section 3344 claim, the claims are "inextricably intertwined," and a court will not apportion costs between them. *Love I*, 2007 WL 2709975, at *3.

In this case, Perfect 10 based both its common-law and its statutory publicity claims on the same allegations.  *See* Dkt. 1 at ¶¶ 72-78.  The Court rejected both claims on the same basis, holding Defendants immune from them under the CDA, 47 U.S.C § 230.  Dkt. No. 97 at 22-24.[4]  Because Perfect 10's publicity claims were inextricably intertwined, the Court should award Defendants all their fees on these claims as the prevailing parties.

### b.   The Court Should Award Fees Defendants Incurred Defending Against the Unfair Competition Law Claim to the Extent It Was Intertwined with Other Claims.

Attorneys' fees are not generally recoverable under the California's unfair competition law.  *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1180 (2002) ("[W]here a plaintiff sues solely under the unfair competition law, fees may not be recovered by a prevailing defendant.").  Nevertheless, "if a plaintiff does not bring suit solely under the unfair competition law, the trial court has discretion to apportion fees to claims not brought pursuant to that law—as long as those claims authorize attorney fees awards."  *Id.* at 1180.  Further, "[a]pportionment is not required when the issues in the fee and nonfee claims are so inextricably intertwined that it would be impractical or impossible to separate the attorney's time into compensable and noncompensable units."  *Graciano v.*

---

[4] That Defendants won on the basis of preemption does not defeat their entitlement to fees. *See Lewis v. Activision Blizzard, Inc.*, No. C 12-1096 CW, 2014 WL 4953770, at *2 (N.D. Cal. Sept. 25, 2014) ("[t]he fact that [a Section] 3344 claim [is] preempted by federal law does not preclude an award of [Section] 3344 attorneys' fees to the prevailing party").

Fenwick & West LLP
Attorneys at Law
San Francisco

1    *Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 159 (2006).

2        Here, Defendants have eliminated from their request 5% of all time entries

3    during the pendency of the unfair competition claim, reflecting their best estimate

4    of the approximate total amount of attorney time attributable to that claim.  Bridges

5    Decl. ¶¶ 55-56.  Other than these reductions, Defendants and their counsel cannot

6    segregate the work counsel performed to defend against Perfect 10's unfair

7    competition law claim from other claims, especially from the right of publicity

8    claims which arise from similar allegations and resulted in dismissal on the same

9    basis.  *Compare* Dkt. 1 at ¶¶ 72-78, *with id.* at ¶¶ 64-71; *see also* Dkt. 11-1 at 26-

10   32;  Dkt. No. 97 at 22-24.

11        **B.    The Fees and Expenses That Defendants Request Are Reasonable.**

12        In determining an appropriate attorney fees award, courts employ the lodestar

13   method.  *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939

14   (1983).  The district court must first determine the presumptive lodestar figure by

15   multiplying the number of hours reasonably expended on the litigation by a

16   reasonable hourly rate.  *Id.*  After determining the presumptive lodestar fee, the

17   court may adjust the award either up or down using factors that are not part of the

18   lodestar determination itself, including (i) time limitations imposed by the client or

19   other circumstances; (ii) the amount at issue and the results counsel obtained; (iii)

20   the experience, reputation, and ability of the attorneys; (iv) the desirability of the

21   case; (v) the nature and length of the professional relationship with the client; and

22   (vi) awards in similar cases.  *Van Asdale v. Int'l Game Tech.*, No. 3:04-cv-00703-

23   RAM, 2011 WL 2118637, at *2 (D. Nev. May 24, 2011) (citing factors in *Kerr v.*

24   *Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975), and explaining that

25   other factors that *Kerr* cited have since become part of the lodestar analysis or have

26   fallen out of favor with the Ninth Circuit).

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**1.  The Rates of Defendants' Counsel Are Reasonable In Light of the Nature of this Case.**

Rates are reasonable if they are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11, 104 S. Ct. 1541, 1547 (1984); *see also Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) (holding that reasonable rates should be determined "by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity.") (internal citation omitted).  "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Justification of the rates may rest upon evidence that clients in fact pay the rates sought, attorney affidavits regarding prevailing rates in a community, other cases determining the rates to be reasonable, and survey evidence regarding the fees of comparable counsel.  *See Lakim Indus., Inc. v. Linzer Prods. Corp.*, No. 2:12-cv-04976, 2013 WL 1767799, at *8 (C.D. Cal. Apr. 24, 2013).  Here each type of evidence establishes the reasonableness of Defendants' counsel's rates.

First, the ability of counsel to command a particular rate from paying clients is itself evidence of reasonableness. *See Moore v. Jas. H. Matthews & Co.,* 682 F.2d 830, 840 (9th Cir. 1982) ("Unless counsel is working outside his or her normal area of practice, the billing-rate multiplier is, for practical reasons, usually counsel's normal billing rate.").  Here both Fenwick & West and Winston & Strawn charged Giganews the standard rates for a case within the firms' usual practice areas, and Giganews paid those rates. *See* Bridges Decl. ¶ 15.

Moreover, the rates are in line with the rates that comparable law firms charge. *See* Declaration of Peter Zeughauser ¶¶ 9-11.  Mr. Zeughauser, an expert regarding attorney billing rates in the Central District of California, has considered

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  both Fenwick & West and Winston & Strawn's respective rates in this case and

2  concluded that they are in line with prevailing rates in the community.  *See id.* ¶¶ 1-

3  11.  Given his knowledge of legal fees charged in the Central District,

4  Mr. Zeughauser's conclusion that hourly rates Defendants paid in this case reflect

5  prices for the sort of legal work in Los Angeles establishes that those rates are

6  reasonable.

7        Moreover, a number of courts in the Central District and elsewhere have

8  recognized the reasonableness of the rates at issue.  In *Mattel, Inc. v. MGA Entm't,*

9  *Inc.*, the Central District awarded fees for legal work in a complex copyright case

10  performed at rates ranging from $360 to $985 an hour.  2011 WL 3420603 at *9

11  (C.D. Cal. Aug. 4, 2011).[5]  Courts routinely award fee awards to both Fenwick &

12  West and Winston & Strawn based on the actual fee charged to the client,

13  recognizing that the fees charged are reasonable for the skill level of counsel and

14  the complexity of work performed.  *See, e.g., IPVX Patent Holdings, Inc. v.*

15  *Voxernet LLC*, No. 5:13-cv-01708, 2014 WL 5795545, at *7-8 (N.D. Cal. Nov. 6,

16  2014) (awarding full fees and noting the reasonableness of Fenwick & West rates);

17  *In re Rossco Holdings, Inc.*,  No. CV-14-917-JFW, 2014 WL 2611385 (C.D. Cal.

18  May 30, 2014) (affirming conclusion of bankruptcy court that rates charged by

19  Winston & Strawn reflected reasonable rates in the Central District of California).[6]

20  This Court too should treat these rates as reasonable.

21        Finally, survey evidence also supports the reasonableness of the rates

22  Defendants paid.  According to a survey performed by Valeo Partners, a consulting

23

24  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
[5]  Although the *Mattel* court did not specify the billing rates it awarded, Defendants

25  submit the declaration used to support the fees request that identifies those rates and ask the Court to take judicial notice of that filing.  Bridges Decl., Ex. 2 [Zeughauser *Mattel* Declaration].

26  [6]  Numerous courts have also approved Fenwick's historical rates as reasonable.  *See Yue v. Storage Tech Corp.*, No. C-07-05850 JW (EDL), 2008 U.S. Dist. LEXIS

27  68920, at *13-14 (N.D. Cal. Aug. 6, 2008) *adopted by* 2008 U.S. Dist. LEXIS 68801 (N.D. Cal. Sept. 5, 2008); *Netbula v. Chordiant Software, Inc.*, No. 5:08-cv-00019-JW, Dkt. 594 (N.D. Cal. Dec. 17, 2010); *Jones v. Corbis Corp.*, No. CV 10-

28  8668-SVW CWX, 2011 WL 4526084 (C.D. Cal. Aug. 24, 2011).

firm that monitors legal billing rates, senior partners in AmLaw 100 firms charged an average of $894 per hour in 2014.  *See* Bridges Decl. ¶ 45, Ex. 3.  The rate for Mr. Bridges' time as Giganews's lead counsel is consistent with a range that this market average reflects.  The Valeo survey also indicates that AmLaw 100 firms charged an average of $527 per hour for associate time, which is again in line with the rates that Fenwick & West charged Giganews.  Because the rates charged in this case are consistent with those that comparably experienced counsel in the field charge, the Court should treat the rates of Defendants' counsel as reasonable.

## 2.   Defendants' Attorneys Worked a Reasonable Number of Hours.

To determine the reasonable hours worked in winning this case, Defendants began with the total hours worked and took a conservative approach, striking or reducing time entries where the work could be viewed as duplicative or took longer than one might reasonably expect.  *See* Bridges Decl. ¶ 46.  Reductions include:

- Removing all "write-off" or "no-charge" billing entries that counsel in exercising billing discretion did not charge to the clients.

- Ensuring the request reflects all courtesy discounts counsel gave to the clients during the course of the case.

- Not seeking reimbursement for the time of certain attorneys or staff members who performed limited tasks on the case.

- Eliminating from the request all work performed by Winston & Strawn from June 2012 on, in light of the fact that Mr. Bridges had moved to Fenwick & West and Winston & Strawn eventually withdrew as counsel.

- Allocating 5% of all litigation tasks to the unfair competition claim before its dismissal and excluding that amount from Defendants' fee request.  While some courts might treat those general tasks as "inextricably intertwined" with the other issues and therefore recoverable, Defendants have provided a more conservative allocation to ensure their request does not include the work

1    related to that claim.

2    •   Striking miscellaneous other individual time entries in the judgment of

3        Defendants' counsel to reflect a conservative approach to this request.

4    Bridges Decl. ¶¶ 46-49, 56 & Exs. 6-7.  Together, these reductions total

5    $276,950.84.  *See id.*

6        The resulting request falls within a reasonable range of the number of hours

7    that a case of this magnitude and complexity requires.  As discussed above, Perfect

8    10's intransigence and misconduct substantially increased the scope of work.  There

9    have been nearly six hundred and fifty docket entries in this case.  To date,

10   Defendants have prevailed (either in full or in substantial part) on twenty-six of the

11   thirty substantive motions the Court has decided (two others became moot, and two

12   remain pending).  Bridges Decl. Ex. 1 [Motion Scorecard].

13       Finally, at no point did Perfect 10 give Defendants any opportunity to

14   conclude the litigation for less than they expended in fees.  To the contrary, for

15   years Perfect 10 alleged infringements that if proven could result in well over $1

16   billion in statutory damages, but it refused to identify the actual amount it sought.

17   Only very late in the case, in expert discovery, did Perfect 10 theorize that the

18   settlement value of the case was $51,103,897.  Bridges Decl. Ex. 9.

19       **C.    The Court Should Also Award Reasonable Expenses.**

20       The Copyright Act entitles Defendants as prevailing parties to recover their

21   full costs in addition to fees.  17 U.S.C. § 505; *Twentieth Century Fox Film Corp. v.*

22   *Entm't Distrib.*, 429 F. 3d 869, 885 (9th Cir. 2005) (Section 505 authorizes an

23   award of non-taxable costs in addition to fees).  While Defendants have submitted a

24   Bill of Costs in accordance with the requirements of Local Rule 54,[7] they also now

25   seek an award of their non-taxable expenses.  As set forth in Mr. Bridges'

26

27   [7] Defendants have not included in this motion any of the taxable costs identified in
     their Bill of Costs.  Nevertheless, to the extent the Clerk determines any such costs
28   are not taxable, Defendants request the Court award them as a part of their
     expenses.  Dkt. 635[Application to Tax Costs].

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

declaration, counsel necessarily incurred these expenses in the course of providing legal services and counsel typically bills these expenses separately to the client apart from attorney hours.  Bridges Decl. ¶ 59.  The expenses include out-of-pocket costs associated with its attorneys' taking of deposition testimony (including videotaping and transcribing the depositions and the travel expenses to attend them), computerized legal research charges; courier, document production, and copying costs.  *Id.*  Courts have consistently recognized these as recoverable expenses.  *See Trustees of Constr. Indus. v. Redland Ins. Co*., 460 F.3d 1253, 1258-59 (9th Cir. 2006) ("growing circuit consensus" that "reasonable charges for computerized research may be recovered as attorneys' fees); *Davis v. City and Cnty. Of San Francisco*, 976 F.2d 1536, 1556 (9th Cir. 1992) (out-of-pocket expenses including the travel, courier and copying costs); *Wyatt Tech. Corp. v. Malvern Instruments, Inc*., No. CV 07-8298 ABC (RZx), 2010 U.S. Dist. LEXIS 144973, at *8–9 (N.D. Cal. June 17, 2010), *aff'd*, 526 Fed. Appx. 761 (9th Cir. 2013); *Pastre v. Weber*, 800 F. Supp. 1120, 1123, 1127 (S.D.N.Y. 1991) (photocopying, messenger services, contract printing, travel); *In re Broadcom Corp. Sec. Litig*., No. SACV 01-275, 2005 U.S. Dist. LEXIS 41993, at * 27-28 (C.D. Cal. Sept. 12, 2005) (court reporting and video in connection with depositions).

## IV.   CONCLUSION

In the circumstances of this extraordinary case, Defendants ask the Court to grant the motion; award Defendants **$6,104,372.66** in fees and **$436,634.97** in expenses; and set a date for Defendants to supplement their request with later fees and costs for inclusion in a final award.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

Dated:  December 29, 2014          FENWICK & WEST LLP

2

3                                   By: /s/Andrew P. Bridges
                                        Andrew P. Bridges
4
                                    Attorneys for Defendants
5                                   GIGANEWS, INC., and
                                    LIVEWIRE SERVICES, INC.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR AWARD OF ATTORNEY'S
FEES AND EXPENSES                    26          Case No.: 11-cv-07098-AB (SHx)