ANDREW P. BRIDGES (CSB No. 122761)
abridges@fenwick.com
ILANA RUBEL (CSB No. 221517)
irubel@fenwick.com
TODD R. GREGORIAN (CSB No. 236096)
tgregorian@fenwick.com
KATHLEEN LU (CSB No. 267032)
klu@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350

Attorneys for Defendants
GIGANEWS, INC. and
LIVEWIRE SERVICES, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| PERFECT 10, INC., a California Corporation , <br><br> Plaintiff, <br><br> v. <br><br> GIGANEWS, INC., a Texas Corporation; LIVEWIRE SERVICES, INC., a Nevada Corporation; and Does 1 through 100, inclusive, <br><br> Defendant. | Case No.: 11-cv-07098-AB (SHx) <br><br> **REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR AWARD OF ATTORNEY'S FEES AND EXPENSES** <br><br> Date: February 2, 2015 <br> Time: 10:00 A.M. <br> Courtroom: 790 Roybal <br> Judge: Hon. André Birotte, Jr. |
| GIGANEWS, INC., a Texas Corporation; LIVEWIRE SERVICES, INC., a Nevada Corporation, <br><br> Counterclaimants, <br><br> v. <br><br> PERFECT 10, INC., a California Corporation, <br><br> Counterdefendant. | |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................ 1

II.   THE FEE AWARD FURTHERS THE COPYRIGHT ACT'S
      GOALS .................................................................................... 4

III.  EVEN ONE *FOGERTY* FACTOR CAN JUSTIFY AN AWARD,
      BUT HERE ALL FACTORS FAVOR DEFENDANTS ................................. 6

      A.   Defendants' Degree of Success on All Fronts Strongly
           Favors Fees. .................................................................. 6

      B.   Perfect 10 Maintained Unreasonable and Frivolous Positions. ........... 6

      C.   Perfect 10's Improper Motive Supports an Award of Fees. ............... 9

      D.   An Award of Fees Is Necessary to Deter Perfect 10. ..................... 10

      E.   Perfect 10 Is a Multimillionaire's Hobby and Tax Shelter,
           Not an Impecunious Plaintiff. ............................................. 12

IV.   THE NON-COPYRIGHT CLAIMS LACKED LEGAL SUPPORT. ................. 13

V.    RATES OF DEFENDANTS' COUNSEL ARE CONSISTENT
      WITH THE PREVAILING RATES IN THIS DISTRICT ......................... 14

      A.   Defendants' Evidence Supports Rates They Use for the
           Lodestar. ................................................................... 14

      B.   Perfect 10's Survey Data Are Not Reliable for This Type of
           Case. ........................................................................ 16

      C.   Only Comparisons with Comparable Attorneys Are
           Probative. .................................................................. 17

VI.   PERFECT 10'S TACTICS DROVE UP THE HOURS FOR
      DEFENSE. ............................................................................ 18

      A.   Perfect 10 Misrepresents the Hours and Resources It Spent. ............ 19

      B.   Perfect 10's Unreasonable Conduct Drove Up Defendants'
           Hours. ....................................................................... 20

      C.   The Existential Threat to Defendants Merited a Vigorous
           Defense. ..................................................................... 22

VII.  DEFENDANTS' BILLS SHOW THE BASIS FOR THE FEES. ................. 22

VIII. PERFECT 10'S OTHER PROPOSED REDUCTIONS LACK
      MERIT. ................................................................................ 23

IX.   THE RIGHT OF PUBLICITY ALLOCATION IS REASONABLE. ............... 24

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

X.    CONCLUSION ............................................................................................ 25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*airfx.com v. AirFX, LLC*,
   2013 U.S. Dist. LEXIS 31587 (D. Ariz. Mar. 7, 2013) ...................................... 15

*Amadasun v. Dreamworks, LLC*,
   359 F. Supp. 2d 1367 (N.D. Ga. 2005) ............................................................ 13

*Bernal v. Paradigm Talent & Literary Agency*,
   No. 07-06445, 2010 WL 6397561 (C.D. Cal. June 1, 2010) ............................. 18

*Blum v. Stenson*,
   465 U.S. 886 (1984) ......................................................................................... 18

*Bosley Medical Institute, Inc. v. Kremer*,
   403 F. 3d 672 (9th Cir. 2005) ........................................................................... 14

*Bridgeport Music, Inc. v. Diamond Time, Ltd.*,
   371 F. 3d 883 (6th Cir. 2004) ............................................................................. 7

*Bridgeport Music, Inc. v. WB Music Corp.*,
   520 F.3d 588 (6th Cir. 2008) ...................................................................... 7, 9, 10

*Camacho v. Bridgeport Fin., Inc.*,
   523 F.3d 973 (9th Cir. 2008) ....................................................................... 16, 19

*Carmel & Carmel PC v. Dellis Const., Ltd.*,
   858 F. Supp. 2d 43 (D.D.C. 2012) .................................................................... 23

*Cataphora Inc. v. Parker*,
   848 F. Supp. 2d 1064 (N.D. Cal. 2012) ........................................................... 19

*Chalmers v. City of Los Angeles*,
   796 F.2d 1205 (9th Cir. 1986), *op. amended on denial of reh'g*,
   808 F.2d 1373 (9th Cir. 1987) .......................................................................... 15

*Choyce v. SF Bay Area Indep. Media Ctr.*,
   2014 WL 5597274 (N.D. Cal. Nov. 3, 2014) ................................................... 4, 5

*Cohen v. Virginia Elec. & Power Co.*,
   617 F. Supp. 619 (E.D. Va. 1985) .................................................................... 12

*Cruz ex rel. Cruz v. Alhambra Sch. Dist.*,
   601 F. Supp. 2d 1183 (C.D. Cal. 2009) ............................................................ 17

*Davis v. City and Cty. of San Francisco*,
   976 F.2d 1536 (9th Cir. 1992) .......................................................................... 18

*Democratic Party of Washington State v. Reed*,
   388 F.3d 1281, 1286 (9th Cir.2004) ................................................................. 24

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES
## (Continued)

Page(s)

*Diamond Star Bldg. Corp. v. Freed*,
  30 F.3d 503 (4th Cir. 1994) ...................................................................... 11

*Fantasy, Inc. v. Fogerty*,
  94 F.3d 553 (9th Cir. 1996) (*Fogerty II*) ................................................ 6

*Ferland v. Conrad Credit Corp.*,
  244 F.3d 1145 (9th Cir. 2001) ................................................................ 20

*Fogerty v. Fantasy, Inc*,
  510 U.S. 517 (1994) (*Fogerty I*) ..................................................*passim*

*Gen. Dynamics Corp. v. United States*,
  No. CV 89-6762, 1996 WL 200255 (C.D. Cal. Mar. 25, 1996), *rev'd
  on other grounds*, 139 F.3d 1280 (9th Cir. 1998) ................................ 23

*Glover v. Johnson*,
  934 F.2d 703 (6th Cir. 1991) .................................................................. 17

*Graham-Sult v. Clainos*,
  756 F.3d 724 (9th Cir. 2014) .................................................................. 19

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ...................................................................... 20, 23, 26

*Historical Research v. Cabral*,
  80 F.3d 377 (9th Cir. 1996) ...................................................................... 5

*Hous. Rights Ctr. v. Sterling*,
  No. 03-859, 2005 WL 3320738 (C.D. Cal. Nov. 1, 2005) .................... 16

*ICU Med., Inc. v. Alaris Med. Sys., Inc.*,
  No. 04-00689, 2007 WL 6137002 (C.D. Cal. June 28, 2007) .............. 15

*In re Aspartame Antitrust Litigation*,
  817 F.Supp.2d 608 (E.D.Pa.2011) .......................................................... 25

*Int'l Longshoremen's & Warehousemen's Union v. Los Angeles Export
  Terminal, Inc.*,
  69 Cal. App.4th 287 (1999) ...................................................................... 19

*IPVX Patent Holdings, Inc. v. Voxernet LLC*,
  No. 13- 01708, 2014 WL 5795545 (N.D. Cal. Nov. 6, 2014) .............. 24

*Jones v. Corbis Corp.*,
  No. CV 10-8668-SVW CWX, 2011 WL 4526084 (C.D. Cal. Aug. 24,
  2011), *aff'd*, 489 F. App'x 155 (9th Cir. 2012) .................................... 24

*Lakim Indus., Inc. v. Linzer Prods. Corp.*,
  No. 12- 04976, 2013 WL 1767799 (C.D. Cal. Apr. 24, 2013) .............. 19

# TABLE OF AUTHORITIES
## (Continued)

Page(s)

*Lexar Homes, Inc. v. Port*,
No. 12-416, 2013 WL 6498293 (E.D. Wash. Dec. 11, 2013)...............1, 2, 4, 7

*Love v. Mail on Sunday*,
2007 U.S. Dist. 2007 WL 2709975 (C.D. Cal. Sept. 7, 2007),
*aff'd*, 611 F.3d 601 (9th Cir. 2010) .......................................................... 19

*Love v. Mail on Sunday*,
2007 U.S. Dist. LEXIS 97061 (C.D. Cal. Sept. 7, 2007), *aff'd*, 611
F.3d 601 (9th Cir. 2010)..................................................................... 25, 26

*Love v. Mail on Sunday*,
No. 05-7798, 2007 WL 2709975 (C.D. Cal. Sept. 7, 2007) ..................17, 20, 26

*Lytle v. Carl*,
382 F.3d 978 (9th Cir. 2004)...................................................................... 23

*Malautea v. Suzuki Motor Corp.*,
148 F.R.D. 362 (S.D. Ga. 1991), *aff'd*, 987 F.2d 1536 (11th Cir. 1993) ............ 22

*Maljack Productions v. GoodTimes Home Video Corp.*,
81 F.3d 881 (9th Cir. 1996)......................................................................... 6

*Masimo Corp. v. Tyco Health Care Grp., L.P.*,
No. 02-4770, 2007 WL 5279897 (C.D. Cal. Nov. 5, 2007)................................ 17

*Mitek Holdings, Inc. v. Arce Eng'g Co.*,
198 F. 3d 840 (11th Cir. 1999)...................................................................... 13

*Moore v. Jas. H. Matthews & Co.*,
682 F.2d 830 (9th Cir. 1982)........................................................................ 15

*O'Well Novelty Co. v. Offenbacher, Inc.*,
No. 97-2095, 1999 WL 813964 (D. Md. June 4, 1999), *aff'd*, 225 F.3d
655 (4th Cir. 2000) .................................................................................. 11

*Perfect 10, Inc. v. CCBill LLC*,
488 F. 3d 1102 (9th Cir. 2007)..............................................................*passim*

*Perfect 10, Inc. v. Google, Inc.*,
653 F.3d 976 (9th Cir. 2011).................................................................*passim*

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
494 F. 3d 788 (9th Cir. 2007), *cert. denied*, 553 U.S. 1079 (2008)..........8, 11, 14

*Prison Legal News v. Schwarzenegger*,
608 F.3d 446 (9th Cir. 2010)....................................................................... 17

*Partners for Health & Home, L.P. v. Seung Wee Yang*,
488 B.R. 431 (C.D. Cal. 2012)..................................................................... 18

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Fenwick & West LLP
Attorneys at Law
San Francisco

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

*Real v. Continental Group, Inc.*,
116 F.R.D. 211 (N.D.Cal.1986) .......................................................................... 24

*Robinson v. Lopez*,
No. 03-3732, 2003 WL 2316906 (C.D. Cal. Nov. 24, 2003)............................... 6

*Rorabaugh v. Cont'l Cas. Co.*,
No. 05-3612, 2007 WL 867301 (C.D. Cal., Mar.16, 2007) ............................... 19

*Ruff v. Cnty. of Kings*,
700 F. Supp. 2d 1225 (E.D. Cal. 2010) .............................................................. 23

*Showtime Entm't LLC v. Ammendolia*,
885 F. Supp. 2d 507 (D. Mass. 2012), *rev'd in part on other grounds,*
*question certified sub nom. Showtime Entm't, LLC v. Town of Mendon*,
769 F.3d 61 (1st Cir. 2014) ................................................................................. 23

*SOFA Entm't, Inc. v. Dodger Prods., Inc.*,
709 F. 3d 1273 (9th Cir. 2013) ............................................................................. 2

*SOFA Entm't, Inc. v. Dodger Prods., Inc.*,
No. 08-02616, 2010 WL 6397558 (C.D. Cal. Nov. 29, 2010), aff'd,
709 F.3d 1273 (9th Cir. 2013) ............................................................................ 18

*T-Peg, Inc. v. Vt. Timber Works, Inc.*,
669 F.3d 59 (1st Cir. 2012) ................................................................................ 10

*Tibble v. Edison Int'l*,
No. 07-5359, 2011 WL 3759927 (C.D. Cal. Aug. 22, 2011), *aff'd*, 520
F. App'x 499 (9th Cir. 2013)............................................................................... 24

*Tuff 'N' Rumble Mgmt. v. Profile Records*,
1997 WL 470114 (S.D.N.Y. Aug. 15, 1997) ....................................................... 7

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
896 F.2d 403 (9th Cir. 1990) ............................................................................. 16

*Viveros v. Donahoe*,
No. 10-08593, 2013 WL 1224848 (C.D. Cal. Mar. 27, 2013) ........................... 16

*White v. City of Richmond*,
713 F.2d 458 (9th Cir. 1983) ............................................................................. 15

*Wyatt Tech. Corp. v. Malvern Instruments, Inc.*,
2010 U.S. Dist. LEXIS 144973 (N.D. Cal. June 17, 2010) ............................... 26

STATUTES

17 U.S.C.A. § 505 ("Copyright Act")............................................................... 5, 7, 13

15 U.S.C. § 1114(1)(a) ......................................................................................... 14

1

## TABLE OF AUTHORITIES
(Continued)

2                                                                    **Page(s)**

3   15 U.S.C. § 1117(a) ................................................................ 15

4   17 U.S.C. § 512 ("DMCA").................................................. *passim*

5   28 U.S.C. § 1927................................................................. 9

6   47 U.S.C § 230(c)(1) ("Communications Decency Act") ....................................... 14

7   **OTHER AUTHORITIES**

8   Nimmer on Copyright § 14.10[D][3][b] (2011) ...................................... 10

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## I.     INTRODUCTION

Perfect 10's stubbornly wrong-headed claims and dubious litigation tactics forced Defendants to incur millions of dollars in attorney's fees and expenses. As this Court found in granting summary judgment for Defendants, "Perfect 10 did not take [the] simple step to protect its copyrights" by submitting takedown notices with Message-IDs of allegedly infringing Usenet messages. Dkt. 620, at 13. Mr. Zada "testified it is 'actually very easy for Perfect 10 to collect message IDs to put into a DMCA notice.'"  *Id.*  This Court observed that, had Perfect 10 done so, "there would be little left to discuss in this case." *Id.*  Instead, Perfect 10 manufactured this litigation in hopes that Defendants would opt to pay millions of dollars to settle the case instead of racking up additional legal fees and expenses. Perfect 10's needless lawsuit is precisely the circumstance that justifies a fee award. *See Lexar Homes, Inc. v. Port*, No. 12-416, 2013 WL 6498293, at *6 (E.D. Wash. Dec. 11, 2013) ("there is reason for an award of costs and fees so as to deter this Plaintiff, and other similarly situated plaintiffs, from instituting claims . . . based on a cost/benefit analysis that tells such plaintiffs that they can score big if they win and that there will be no adverse consequences if they lose").

Perfect 10's arguments opposing the making of *any* award—despite its utter loss on the merits—exemplify the unreasonable nature of Perfect 10's positions throughout this case.  Perfect 10 knew the legal flaws of many of its positions but pressed them despite having lost on those points earlier in this case or other cases. *See, e.g.*, *Perfect 10, Inc. v. CCBill LLC*, 488 F. 3d 1102, 1119 (9th Cir. 2007) (CDA precludes the same type of state-law claims this Court dismissed here, Dkt. 97, at 22); Dkt. 619, at 12 (describing repeated rulings that direct infringement requires volition); Dkt. 620, at 10 (reiterating Judge Collins' holding on service provider's duty). Fully disregarding these fatal flaws, Perfect 10 wasted the Court's and Defendants' resources by rehashing failed arguments. Also, despite Defendants' repeated efforts to narrow the issues, Perfect 10 continually fought

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

against conceding any points. After conferring with Defendants about Perfect 10's failures to state a claim, Perfect 10 did not back up its claims with factual allegations but instead opted to "exaggerate" in defending the claims that the Court dismissed. Dkt. 97, at 24 [March 8, 2013 order dismissing Perfect 10's claims, except contributory and vicarious infringement against Giganews].  And after Judge Collins criticized the weakness of Perfect 10's direct infringement allegations, Perfect 10 refused to drop that theory.  After discovery, "[r]ather than point to any evidence," Perfect 10 simply "rehashe[d] arguments already considered and rejected" by the Court. Dkt. 619, at 12; *see also Lexar Homes*, 2013 WL 6498293, at *5 ("Plaintiff's continued pursuit of its claims without the foundational evidence pertaining to its copyright or the alleged copying was objectively unreasonable."). Perfect 10 also took unreasonable positions in discovery, refusing to produce key documents,[1] burying Defendants under avalanches of unresponsive documents, and fruitlessly moving to compel on dozens of discovery requests. All this unreasonableness, while "no longer a prerequisite to a fee award," supports an award of fees. *SOFA Entm't, Inc. v. Dodger Prods., Inc.*, 709 F. 3d 1273, 1280 (9th Cir. 2013).

Worse, to justify its unsupportable positions, Perfect 10 repeatedly misrepresented the law and facts, forcing Defendants to spend extra time responding to Perfect 10's canards. *See, e.g.*,

- Dkt. 620, at 7 [order granting Defendants summary judgment on indirect liability] (rejecting Perfect 10's argument that Judge Matz and Judge Collins "have already ruled" that a direct financial benefit exists, because "[n]either Judge Matz nor Judge Collins so held");
- *Id.* at n.2 (criticizing attempt to "fabricate a claim for vicarious infringement out of thin air" as "specious");
- *Id.* at n.4 (ruling "the evidence does not support a claim of willful blindness")

---

[1] Defendants' motion for discovery sanctions is set for hearing on January 26, 2015.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

and Dkt. 627 [Perfect 10 reconsideration mot.], at 14 (falsely claiming "the Court also did not address Perfect 10's evidence of willful blindness");

- Dkt. 343 (denying Perfect 10's motion for sanctions as "ill-considered and overreaching" and criticizing that Perfect 10 "exaggerates" Judge Collins' previous ruling denying its summary judgment motion);

- Dkt. 88 [order denying preliminary injunction] (noting Perfect 10's failure to mention *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976 (9th Cir. 2011), even though it involved Perfect 10 and "the Ninth Circuit rejected these very arguments" that Perfect 10 made here regarding harm).

Even in its current opposition, Perfect 10 skirts the truth by concealing that its own attorney fee total omits the work of certain attorneys, legal staff, and Mr. Zada, who spent more than 6,000 hours working on this case. Reply Declaration of Andrew Bridges ["Bridges Reply Decl."] ¶¶ 7–22.

Perfect 10's conduct in this case has driven Defendants' fees and costs far beyond what a typical copyright or trademark infringement case would incur. Perfect 10 incurred the risk that it might someday have to pay Defendants. As the Supreme Court noted, because litigation expense is considerable, "[i]t is increasingly recognized that the person who forces another to engage counsel to vindicate, or defend, a right should bear the expense of such engagement and not his successful opponent." *Fogerty v. Fantasy, Inc*, 510 U.S. 517, 529 (1994) (*Fogerty I*) (citation omitted). Mr. Zada chose to lead Perfect 10's litigation tactics, burying Defendants with unnecessary motion practice, unreadable and faxed takedown notices, and hundreds of pages of declarations full of impermissible "evidence" and his personal opinion. Perfect 10, which exists now to launch lawsuits and serve as a tax shelter for Mr. Zada (Gregorian Decl., Ex. 5, at 247:15–248:11; Ex. 6, at 50:20–51:10), deserves no sympathy for having to pay Defendants' fees.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## II.   THE FEE AWARD FURTHERS THE COPYRIGHT ACT'S GOALS.

Defendants' business is to provide access to Usenet, a public forum in which content "is primarily user-driven." Dkt. 619, at 2–3 [Order granting Defendants' motion for partial summary judgment re direct infringement].  When a plaintiff unsuccessfully attacks someone who fosters a public forum, a fee award is especially appropriate. *Choyce v. SF Bay Area Indep. Media Ctr.*, 2014 WL 5597274, at *5 (N.D. Cal. Nov. 3, 2014). In *Choyce*, the court found that, although the defendant's website was not creative expression itself, "it is a forum for public expression," and the "Copyright Act's fee-shifting provision is designed to ensure that such forums for expression are not hindered by asserted intellectual property claims that have no basis in the law." *Id.*; *see also Fogerty I*, 510 U.S. at 527 ("copyright law ultimately serves the purpose of enriching the general public through access to creative works"); *Lexar Homes*, 2013 WL 6498293, at *6 ("Federal courts do not exist so that litigants can roll the dice in copyright litigation" not aimed at promoting expression).

Perfect 10 attacked Defendants with a motion for preliminary injunction based on wild accusations that their conduct as alleged "internet pirates" could "**be considered a felony**."  Dkt. 17-1, at 1–2 (emphasis original).  Mr. Zada emphasized that his goal was to shut down Giganews and the Usenet access it provides: "If we get a preliminary injunction against your client, he's gone—It's the end." Bridges Reply Decl. ¶ 3.  Perfect 10 refused to use Defendants' effective and well established procedure for identifying and removing unauthorized content that third party users might post. Dkt. 620, at 13 [Order granting Defendants' motion for partial summary judgment re indirect infringement]. "Perfect 10 did not take that simple step to protect its copyrights," but instead "sent Giganews hundreds of inadequate screenshot-search takedown notices" or "refuses to submit a DMCA takedown notice" at all. *Id.*

Perfect 10's choice to sue and try to shut down Usenet access instead of

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Fenwick & West LLP
Attorneys at Law
San Francisco

using the expeditious solution for removing messages shows that its strategy from the outset was to overwhelm and incapacitate Defendants, not to further the goals of the Copyright Act. Unsurprisingly, Perfect 10's predictions of prevailing on the merits or of the dire harm it would suffer have failed to come true. Defendants had to expend millons of dollars in legal fees to protect their Usenet access services, and "[a]warding fees will serve the usual purposes of a fee-shifting statute by deterring future baseless claims and compensating Defendants for the costs of defending against such claims." *Choyce*, 2014 WL 5597274, at *5; *see also Fogerty I*, 510 U.S. at 527 (noting that Copyright Act should encourage defendants "to advance a variety of meritorious copyright defenses")[2]; *Historical Research v. Cabral*, 80 F.3d 377, 378 (9th Cir. 1996) ("[D]istrict courts may freely award fees, as long as they treat prevailing plaintiffs and prevailing defendants alike and seek to promote the Copyright Act's objectives.").

Even after losing on the merits on all its claims, Perfect 10 continued to attack Defendants' Usenet business. **After the Court granted summary judgment for Defendants, Perfect 10 demanded $3 million from Defendants and has submitted no new takedown notices.** Bridges Reply Decl. ¶ 6. This underscores that Perfect 10's true motivation is pecuniary, not furthering the goals of the Copyright Act. *See Fogerty I*, 510 U.S. at 526 ("private motivation must ultimately serve the cause of promoting broad public availability of literature, music, and the other arts") (citation omitted). Defendants' willingness and efforts to resist all of Perfect 10's claims here furthered the goals of the Copyright Act.

---

[2] Perfect 10 argues that fee awards to alleged infringers are appropriate *only if* the "defendants owned copyrights to the allegedly infringing works, obtained a license to such works, or engaged in permitted fair use" or if the plaintiff did not own the copyrights. Opp. at 10. Perfect 10 cites no authority that the law restricts the "variety of meritorious copyright defenses" to Perfect 10's list. Moreover, cases against service providers are uncommon because copyright holders (except for Perfect 10) have little motivation to sue service providers who, like Defendants, have effective DMCA procedures for identifying and removing infringing material. Perfect 10's focus on whether defendants have a right to use the allegedly infringing works is misplaced because it ignores the fact that Usenet providers do not use or control the content that their users post.

## III.   EVEN ONE *FOGERTY* FACTOR CAN JUSTIFY AN AWARD, BUT HERE ALL FACTORS FAVOR DEFENDANTS.

### A.   Defendants' Degree of Success on All Fronts Strongly Favors Fees.

"Courts have awarded costs for copyright claims based on a single [*Fogerty*] factor." *Robinson v. Lopez*, No. 03-3732, 2003 WL 2316906, at *2 (C.D. Cal. Nov. 24, 2003). The *Fogerty* court affirmed an award of fees even though the "district court could find no fault in the way [the defendant] conducted [its] case." *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 556 (9th Cir. 1996) (*Fogerty II*). Perfect 10 cannot and does not attempt to challenge Defendants' overwhelming degree of success, the first *Fogerty* factor.[3]   Perfect 10 advanced unmeritorious positions at every turn and lost.  Defendants' degree of success weighs heavily and by itself warrants an award of fees.

### B.   Perfect 10 Maintained Unreasonable and Frivolous Positions.

Though "blameworthiness is not a prerequisite to awarding fees to a prevailing defendant," Perfect 10's unreasonable conduct and frivolous positions in this case for more than three years strongly justify an award of fees. *See id.* at 558.

To persuade the Court not to dismiss Perfect 10's direct infringement claim again (Dkt. 129), Perfect 10 fabricated a scurrilous claim that Defendants' *employees themselves* uploaded infringing material to the Usenet. *See* Dkt. 619, at 12. When it pled its amended direct infringement claim, Perfect 10 did not have a shred of evidence to support this fiction, which Judge Collins criticized as "not the strongest set of allegations." Dkt. 129, at 4. After years of litigation and discovery, Perfect 10 still lacked any evidence. Dkt. 619, at 12. Perfect 10 pretends its direct claim was reasonable because it previously sued an unrelated website operator, GUBA, whose employees *did* themselves download infringing material.  That does

---

[3] Perfect 10 notes that it has moved for reconsideration.  Opp. at n.4.  An award of fees need not wait for exhaustion of all appeals.  *See Maljack Productions v. GoodTimes Home Video Corp.*, 81 F.3d 881 (9th Cir. 1996) (affirming both summary judgment and fees award).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   not change that Perfect 10 lacked any evidence in *this* case and made a factually

2   baseless claim.

3        Even after discovery, Perfect 10 refused to drop its direct claim, forcing

4   Defendants to move for summary judgment.  In opposition, Perfect 10 entirely

5   abandoned its theory of employee uploads and instead attempted to re-litigate

6   theories the Court had already dismissed.  *See* Dkt. 619, at 12.  A plaintiff's

7   "continued pursuit of its claims without the foundational evidence pertaining to its

8   copyright or the alleged copying [is] objectively unreasonable."  *Lexar*, 2013 WL

9   6498293, at *5; *see also Bridgeport Music, Inc. v. Diamond Time, Ltd*., 371 F. 3d

10  883, 894 (6th Cir. 2004) (inferring from "plaintiffs' failure to weed out stale claims

11  . . . that these claims remain for the sole purpose of extracting a settlement based on

12  the cost of litigating further," which "is not an objective to be promoted under the

13  Copyright Act").

14       Perfect 10's conduct after losing its first motion for partial summary

15  judgment was also frivolous:  *accusing all of Defendants' witnesses of perjury*,

16  Perfect 10 filed a sanctions motion that the Court found "meritless," "entirely

17  unpersuasive," and "ill-considered and overreaching."  Dkt. 343.  Contrary to

18  Perfect 10's argument that discovery misconduct cannot constitute objective

19  unreasonableness, a plaintiff's disregard of its discovery obligations or its "failure

20  to research properly the law or facts involved in its claims" is a ground to award

21  fees to Defendants, because that conduct "caused defendants to incur substantial

22  legal expenses which could have been avoided." *Tuff 'N' Rumble Mgmt. v. Profile*

23  *Records*, 1997 WL 470114, at *1 (S.D.N.Y. Aug. 15, 1997); *see also Bridgeport*

24  *Music, Inc. v. WB Music Corp.,* 520 F.3d 588, 593 (6th Cir. 2008) (fee award for

25  abuse of discovery and the summary judgment process by submitting massive

26  statements of disputed facts which included legal conclusions and immaterial and

27  argumentative assertions).  Perfect 10 repeatedly disregarded Judge Hillman's

28  orders and wasted the Court's time.  *See* Dkts. 223, 254, 311, 316, 318, 322, 326.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Perfect 10 tries to liken this case to past cases in which it avoided paying fees despite losing. But positions that may not have been objectively unreasonable in those older cases[4] are unreasonable now after the courts rejected the same arguments by the same litigant. Unreasonably, Perfect 10 nonetheless disregarded directly adverse authority throughout this case by claiming:

- Irreparable harm even though *Perfect 10 v. Google* held that infringement was not the cause of Perfect 10's perpetual unprofitability and 2007 cessation of its magazine. Dkt. 88.

- Liability for claims under state law even though *Perfect 10 v. CCBill* held the CDA expressly preempts the state-law claims. Dkt. 97, at 22-23.

- Vicarious liability even though *Perfect 10 v. CCBill* held "receiving a one-time set-up fee and flat, periodic payments for service from a person engaging in infringing activities would not constitute receiving a 'financial benefit directly attributable to the infringing activity.'" *See* Dkt. 620, at 6.

- Contributory liability for not investigating users' postings even though *Perfect 10 v. CCBill* held the law "impose[s] no such investigative duties on service providers" and "place[s] the burden of . . . identifying the potentially infringing material and adequately documenting infringement . . . *squarely on the owners of the copyright.*" *See* Dkt. 620, at 10, 13.

- Sufficiency of its DMCA notices even though the Ninth Circuit criticized Perfect 10's notices as flawed for improperly putting the burden on the service provider to find messages. *Perfect 10 v. CCBill*, 488 F.3d at 1113.

Even now, after losing this case, Perfect 10 maintains the unreasonable positions this Court has rejected again and again, distorts this Court's rulings, mischaracterizes the facts, and raises irrelevant and inflammatory claims:

---

[4] *Perfect 10, Inc. v. CCBill LLC*, 488 F. 3d 1102 (9th Cir. 2007), *cert. denied*, 552 U.S. 1102 (2007); *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F. 3d 788 (9th Cir. 2007), *cert. denied*, 553 U.S. 1079 (2008); *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 1713 (2012).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- "Defendants simply exploit copyright holders' works and distribute them to countless users without permission." Opp. at 1
- "Defendants made electronic copies . . . that infringe Perfect 10's trademarks." *Id*. at 17.
- "Giganews made unauthorized copies of 61,000 Perfect 10 images." *Id*. at 10
- "Giganews offers these images to its customers without Perfect 10's permission." *Id*. at 8.
- Claiming that a case against a website operator that directly posted images to its website was "an almost identical case" to this one. *Id*. at 8.
- Claiming that persons *who have nothing to do with Defendants* are criminals, and without any basis tarring Defendants with the same brush. *Id*. at 6.

Perfect 10's recidivist relitigation of facts it knows to be false and law it knows to be wrong is both objectively unreasonable and frivolous. *See WB Music*, 520 F.3d at 594 (finding futile and unreasonable the plaintiff's theory that companion cases rejected under similar factual circumstances).[5]

### C.  Perfect 10's Improper Motive Supports an Award of Fees.

Perfect 10 sought a baseless preliminary injunction to threaten Defendants' business in order to force a large nuisance settlement. Perfect 10 boasted that an injunction would be "the end" of Defendants, demanded $7 million in settlement, and threatened, "If Perfect 10 receives an injunction, that number will go up substantially." Bridges Reply Decl. ¶¶ 3, 5, Ex. D. Since denying that preliminary injunction, the Court has recognized that Perfect 10's actions are inconsistent with a motivation of removing infringement, comparing Perfect 10 to someone who sues for poisoning despite having the antidote. *Id.* ¶ 35, Ex. W at 31:12-15. **Perfect 10**

---

[5] While Defendants seek an award of their fees and expenses under various statutory provisions, the Court on its own may consider requiring personal payment of excess costs, expenses, and attorney's fees by Perfect 10's complicit counsel pursuant to 28 U.S.C. § 1927 for "multiplying proceedings unreasonably and vexatiously." That would require an inquiry into the personal conduct of each of the counsel. An award by the Court of the Defendants' full fees and expenses may make consideration of Section 1927 sanctions unnecessary.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**has not submitted any takedown notices in the two months since the Court granted Defendants summary judgment.** Protecting its rights is not its goal.

Moreover, Perfect 10 again falsely accuses Defendants of not processing 54,000 Message-IDs that it produced in discovery.  Opp. at 12.  As the Court already noted, "Perfect 10 refuses to submit a DMCA takedown notice using that information" even though "it is 'actually very easy for Perfect 10 to collect message IDs to put into a DMCA notice.'"  Dkt. 620, at 13.  Perfect 10 still refuses to do so. Yokubaitis Decl. ¶ 3.

### D.     An Award of Fees Is Necessary to Deter Perfect 10.

A "district court applying *Fogerty* and its progeny may fashion a fee award for the purpose of discouraging 'overly aggressive litigation tactics' and encouraging parties 'to litigate in a more responsible, realistic manner.'" *T-Peg, Inc. v. Vt. Timber Works, Inc.*, 669 F.3d 59, 62 (1st Cir. 2012) (quoting *Bridgeport Music*, 520 F.3d at 595). An award based on deterrence requires no finding that the losing party acted in bad faith. *Id.* at 62 ("hard-ball litigation tactics ... merit an award of fees") (citing Nimmer on Copyright § 14.10[D][3][b] (2011)). The deterrence factor applies to litigants' behavior throughout the case, not just the outset.  "[M]otivating [a plaintiff] to sort through its claims applies with equal force to claims that become futile during the course of litigation as it does to claims that are objectively unreasonable at the outset." *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F. 3d 588, 595 (6th Cir. 2008). As Defendants describe above, Perfect 10 prolonged this case, and the resulting cost, by staking out unreasonable positions without legal or factual basis, even pressing for a preliminary injunction after the Ninth Circuit categorically rejected its claim of irreparable harm (*see* Dkt. 88). And as Section VI describes, Mr. Zada directed Perfect 10's litigation tactics to escalate the fees and expenses they forced Defendants to incur.

Deterrence especially warrants a fee award to prevailing defendants when the copyright owner has a pattern of similar copyright lawsuits. *See O'Well Novelty*

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Co. v. Offenbacher, Inc.*, No. 97-2095, 1999 WL 813964, at *7 (D. Md. June 4, 1999), *aff'd*, 225 F.3d 655 (4th Cir. 2000). Perfect 10's litigation history calls for deterrence.  Since the courts in *CCBill* and *Visa* declined to award fees, Perfect 10 has devoted its energy to litigation by filing at least twelve new cases and extracting millions of dollars in nuisance settlements.  Mr. O'Connor's argument is telling: in his view, a "reasonable" copyright defendant should pay out $1-2 million dollars in a nuisance settlement[6] *even when the defendant had done nothing wrong and would win completely on the merits*.  O'Connor Decl. ¶ 36.

The purpose of copyright law is not to encourage nuisance suits or nuisance settlements.  The Court should not penalize Defendants for opting to defend their Usenet service instead of paying Perfect 10 a windfall.  *See Diamond Star Bldg. Corp. v. Freed*, 30 F.3d 503, 506-07 (4th Cir. 1994). Only by making Defendants whole would this Court ensure that Perfect 10 compensates Defendants for "advanc[ing] a variety of meritorious copyright defenses," deter Perfect 10 from pursuing nuisance settlements based on unmeritorious claims, and encourage defendants with meritorious copyright defenses "to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement," as the Supreme Court demands.  *See Fogerty I*, 510 U.S. at 517.

Contrary to Perfect 10's protests that a fee award would chill the enforcement of copyrights, Perfect 10 could have enforced its copyrights by submitting proper DMCA notices like other copyright owners. Where Perfect 10 instead chose to drag Defendants through "considerable expense and trouble in plaintiff's losing cause," "there is no reason why the discretion of the Court should not be exercised to award fees" because "plaintiff lost and deserved to lose."  *See Cohen v. Virginia Elec. & Power Co.*, 617 F. Supp. 619, 623 (E.D. Va. 1985) (remarking that "we must

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

---

[6] Even if Mr. O'Connor were correct, Perfect 10 never offered to settle the case for less than fees Defendants ultimately expended.  Bridges Reply Decl. ¶ 5, Ex. D. Even after it lost, Perfect 10 sought a payout of $3 million.  *Id.* ¶ 6; Yokubaitis Decl. ¶ 2, Ex. A.

1    remember that it wasn't the defendant who chose to litigate").

2    **E.     Perfect 10 Is a Multimillionaire's Hobby and Tax Shelter, Not an**

3    **Impecunious Plaintiff.**

4    Perfect 10's attempts paint itself as a "David" to Giganews's "Goliath" ring

5    false. For years, and in multiple cases, Perfect 10 claimed poverty. *See, e.g.*,

6    *Perfect 10, Inc. v. Google, Inc.*, 653 F. 3d 976, 982 (9th Cir. 2011); Dkt. 88.  When

7    convenient, Perfect 10 frequently invokes the specter of bankruptcy.  As both Judge

8    Matz and the Ninth Circuit recognized, Perfect 10 has been claiming that it is "very

9    close to bankruptcy" and "on the verge of financial ruin" for *years* but has never

10   filed for bankruptcy protection. *See* Dkt. 88; *Google*, 653 F.3d at 981-82.  In early

11   2010, Mr. Zada claimed Perfect 10 "is near bankruptcy, and must have immediate

12   relief to survive." Bridges Reply Decl., Ex. Z [*Google* Dkt. 784, at 1 (Perfect 10's

13   2d motion for PI)]; Ex. AA [No. 10-56316, Dkt. 11, at 82].

14   Perfect 10 repeated the same wolf-crying when it moved for a preliminary

15   injunction in this case.  In 2011, it claimed to this court that "Perfect 10 has

16   submitted undisputed evidence that it will go into bankruptcy unless it can enjoin

17   the massive copyright infringement of its works." Dkt. 17, at 22.  Perfect 10's

18   current claims that a fee award would push it into bankruptcy have no more

19   credibility than its previous claims.  In 2011, this Court and the Ninth Circuit ruled

20   that Perfect 10's financial state is not attributable to any defendant and rejected any

21   injunction (Dkt. 88; *Google*, 653 F.3d at 982).

22   Perfect 10's dire prediction remains false over three years later because the

23   company is merely a hobby horse for a multimillionaire who made his personal

24   fortune in hedge fund trading.  *See* Bridges Reply Decl. Ex. CC (Chaney Depo.)

25   50:23-51:18; Ex. G (Zada 4/25 Depo.) 497:22-498:15.  Mr. Zada uses Perfect 10's

26   S-corporation status as a tax shelter to offset his personal income while at the same

27   time off-loading expenses such as Mr. Zada's personal residence (the "Perfect 10

28   Mansion" onto the corporation and using Perfect 10 to lend money to friends.  *Id.*

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Ex. BB (Zada 8/24 Depo.) 247:15-247:16; 248:1-248:11; Ex. G (Zada 4/25 Depo.) 320:9-320:11; Ex. F (Zada 4/24 Depo.) at 211:25-212:3. Perfect 10's limited amount of official assets results from the manner in which Mr. Zada chooses to fund it.  When Perfect 10 is low on money, Mr. Zada transfers in more.  *Id.* Ex. G (Zada 4/25 Depo.) at 547:12-549:6.

Defendants, on the other hand, do not make anywhere near "hundreds of millions of dollars per year," and, after already taking discovery on Defendants' revenues, Mr. Zada's claim that that it is "likely" borders on false testimony.  See *Id.* Ex. BB (Zada 8/24 Depo.) 158:6-10.

While equity is a factor in deciding whether to award fees, "consideration of whether plaintiff can afford to pay the fees is improper; the more proper consideration is whether imposing the fees will further the goals of the Copyright Act." *Amadasun v. Dreamworks, LLC*, 359 F. Supp. 2d 1367, 1376 (N.D. Ga. 2005) (awarding fees to encourage meritorious defenses) (citing *Mitek Holdings, Inc. v. Arce Eng'g Co.*, 198 F. 3d 840, 842-43 (11th Cir. 1999)). Even if Perfect 10 had been honest about its financial straits, equity does not require keeping an abusive plaintiff alive to sue again.

## IV.   THE NON-COPYRIGHT CLAIMS LACKED LEGAL SUPPORT.

Perfect 10 forced Defendants to fight claims of right of publicity and trademark infringement even though rulings in other Perfect 10 cases showed these claims had no legal basis. In dismissing Perfect 10's state-law claims, Judge Matz noted that, in *Perfect 10, Inc. v. CCBill*, "a case involving Plaintiff, the Ninth Circuit held that the CDA [Communications Decency Act, 47 U.S.C § 230(c)(1)] establishes 'broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service' and expressly preempts conflicting state laws." Dkt. 97, at 22 (citing *CCBill*, 488 F.3d at 1118). Accordingly, in *CCBill*, the Ninth Circuit found the service provider defendant had "CDA immunity for all of the state claims raised by Perfect 10."

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*CCBill*, 488 F.3d at 1119. Yet four years later, Perfect 10 unreasonably ignored this settled law and caused Defendants to incur significant fees here.

Perfect 10's trademark claims fared no better. In dismissing the direct infringement claim, Judge Matz called out the complete absence of any factual or legal basis: "Plaintiff fails to explain how Defendants' service constitutes the "use" of the Perfect 10 mark in the sale or marketing of a good or service. . . . The Court is unaware of any authority that would support such a broad construction of direct trademark infringement law, and Plaintiff does not cite any." Dkt. 97, at 20. Perfect 10's other trademark claims suffered from the same fundamental flaw. *Id.* at 21. A trademark infringement claim fundamentally must arise from *use* of the owner's mark "in connection with the sale, offering for sale, distribution or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." Dkt. 97, at 19 (citing 15 U.S.C. § 1114(1)(a)); *see also Bosley Med. Institute, Inc. v. Kremer*, 403 F. 3d 672, 676 (9th Cir. 2005) ("Infringement claims are subject to a commercial use requirement."). Despite lacking any evidence of the use of Perfect 10's marks in this manner on Defendants' services,[7] Perfect 10 pressed ahead with its trademark claims. These groundless and unreasonable claims are exceptional under Section 1117(a) and warrant a fee award. *See airfx.com v. AirFX, LLC*, 2013 U.S. Dist. LEXIS 31587, at *5 (D. Ariz. Mar. 7, 2013) (claim was not based on any commercial use and thus was groundless and unreasonable).[8]

## V.   RATES OF DEFENDANTS' COUNSEL ARE CONSISTENT WITH THE PREVAILING RATES IN THIS DISTRICT.

### A.   Defendants' Evidence Supports Rates They Use for the Lodestar.

Contrary to Perfect 10's assertions (Opp. at 26), "actual billing rates provide

---

[7] In contrast, in *Visa*, Perfect 10 did allege use of its marks by websites that the defendant financial companies allegedly enabled. *See Visa*, 494 F. 3d at 793.
[8] Perfect 10 has not learned and still repeats its baseless opinion that "Defendants made electronic copies . . . that infringe Perfect 10's trademarks." Opp. at 16.

Fenwick & West LLP
Attorneys at Law
San Francisco

1    a reasonable basis for the lodestar analysis." *ICU Med., Inc. v. Alaris Med. Sys.,*

2    *Inc.*, No. 04-00689, 2007 WL 6137002, at *3 (C.D. Cal. June 28, 2007). [9]  While

3    not dispositive, "a particular attorney's billing rate is relevant . . . evidence of a

4    reasonable hourly rate." *Id.*  Perfect 10 makes no attempt to rebut Defendants'

5    argument that "the ability of counsel to command a particular rate from paying

6    clients is itself evidence of reasonableness" (Mot. at 28, citing *Moore v. Jas. H.*

7    *Matthews & Co.*, 682 F.2d 830, 840 (9th Cir. 1982)).  Perfect 10 completely ignores

8    that in 2014, two courts awarded fees to Fenwick & West and Winston & Strawn

9    based on actual rates (Mot. at 29).

10          Furthermore, other extensive evidence corroborates the reasonableness of the

11   actual rates that Defendants paid to litigate in this District.  *See* Dkt. 644-1 [Bridges

12   Decl.]; Dkt. 644-19 [Zeughauser Decl.].  Under well-settled Ninth Circuit law,

13   "[a]ffidavits of the [fee applicant's] attorney and other attorneys regarding

14   prevailing fees in the community, and rate determinations in other cases,

15   particularly those setting a rate for the [fee applicant's] attorney, are satisfactory

16   evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps*

17   *Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).  Perfect 10 does not dispute or

18   even address the Zeughauser Declaration.  As for the Bridges Declaration,

19   Perfect 10 fails to explain *why* the detailed biographies are insufficient to support

20   the rates Defendants request—even Perfect 10's fees expert, John O'Connor, does

21   "not doubt the qualifications of Mr. Bridges or the reputations of Winston and

22   Strawn and Fenwick and West" or the competence of the firm in this premium

23   _____

24   [9] Perfect 10 misapprehends *Chalmers v. City of Los Angeles*, 796 F.2d 1205 (9th
     Cir. 1986), *op. amended on denial of reh'g*, 808 F.2d 1373 (9th Cir. 1987)).

25   *Chalmers* and the case it cites (*White v. City of Richmond*, 713 F.2d 458, 461 (9th
     Cir. 1983)) were civil rights cases in which the "rates actually charged the

26   prevailing party" would understate the reasonable rate.  *See Chalmers*, 796 F.2d at
     1210); *White*, 713 F.2d at 461 ("[M]any civil rights practitioners do not bill their

27   clients at an hourly commercial rate.").  "While *evidence of counsel's customary*
     *hourly rate may be considered by the District Court*, it is not an abuse of discretion

28   in this type of case [*i.e.*, civil cases involving fee shifting] to use the reasonable
     community standard."  *White*, 713 F.2d at 461 (emphasis added).

1    sector.  Dkt. 650-7 [O'Connor Decl.] ¶¶ 48-50.

2        **B.    Perfect 10's Survey Data Are Not Reliable for This Type of Case.**

3        The Central District of California is the relevant community for determining

4    reasonable rates. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir.

5    2008). Courts in this District routinely dismiss the *Laffey* matrix[10] because it "does

6    not comport with the reality of Los Angeles firm billing practices."  *Hous. Rights*

7    *Ctr. v. Sterling*, No. 03-859, 2005 WL 3320738, at *2-3 (C.D. Cal. Nov. 1, 2005)

8    (finding "rates of up to $1,000 per hour" were "much more in line with this Court's

9    experience than is the *Laffey* Matrix"); *see Viveros v. Donahoe*, No. 10-08593,

10   2013 WL 1224848, at *5 n.31 (C.D. Cal. Mar. 27, 2013); *Cruz ex rel. Cruz v.*

11   *Alhambra Sch. Dist.*, 601 F. Supp. 2d 1183, 1200 n.15 (C.D. Cal. 2009) (finding

12   *Laffey* matrix "inconsistent with the standards . . . requiring that the Court consider

13   the skill and expertise of these particular attorneys in setting their rate"). "[J]ust

14   because the *Laffey* matrix has been accepted in the District of Columbia does not

15   mean that it is a sound basis for determining rates elsewhere, let alone in a legal

16   market 3,000 miles away." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446,

17   454 (9th Cir. 2010). Using the *Laffey* matrix here would greatly understate

18   reasonable rates. Zeughauser Reply Decl. ¶ 4.

19       Perfect 10's AIPLA survey excerpts (Dkt. 650-2, at 48-49) are too general to

20   be reliable.  The only data specific to this District, an aggregate of only thirteen

21   individuals, do not differentiate by their experience, expertise, or practice.  Mr.

22   Bridges and Defendants' other attorneys work in a specialized practice and have

23   greater-than-average skill and experience.  Zeughauser Reply Decl. ¶ 3; Bridges

24   Reply Decl. ¶¶ 36-37, 39.  The remainder of the AIPLA data are not specific to the

25   relevant community, this District, and are less than a reasonable rate because this

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

---

[10] Data for the matrix came from a 1983 survey of rates in the District of Columbia. Zeughauser Reply Decl. ¶ 4. Even after adjusting for inflation, it has no relation to the legal market in 2011–2014 in this District, where high demand for legal services has consistently caused prevailing rates to increase much faster than inflation. *Id.*

District has higher rates than most other areas.  *See* Dkt. 650-2, at 48-49.

By contrast, the Valeo Partners survey report (Bridges Decl. ¶ 45, Ex. 3) has data specific to the Greater Los Angeles area for various years and differentiates between attorneys of different experience levels and different types of firms.  These firms are the peers of Defendants' counsel within the Greater Los Angeles legal community, compete for the same caliber of attorneys, and offer comparable legal services.  Bridges Reply Decl. ¶ 36.

### C.    Only Comparisons with Comparable Attorneys Are Probative.

Determining a reasonable rate requires "close attention paid to the fees charged by 'lawyers of reasonably comparable skill, experience, and reputation.'" *Davis v. City and Cty. of San Francisco*, 976 F.2d 1536, 1546 (9th Cir. 1992) (quoting *Blum v. Stenson,* 465 U.S. 886, 895 n.11 (1984)). Perfect 10 and Mr. O'Connor propose rates that are not on par with those of attorneys of comparable skill, experience, and reputation.  The low end of the legal market lacks the specialized skills and experience of Defendants' counsel, especially in intellectual property litigation, and Defendants rationally sought counsel with experience both in fact-intensive DMCA cases generally and in opposing Perfect 10's aggression specifically.  Zeughauser Reply Decl. ¶ 3; Bridges Reply Decl. ¶ 37.  In all events, the rates of Defendants' counsel are moderate and on par with those of comparable attorneys skilled in copyright litigation. Zeughauser Reply Decl. ¶ 11.  ***In Perfect 10's own fee request against Cybernet Ventures, Inc. over a decade ago***, Perfect 10's attorneys submitted evidence that "Los Angeles firms bill partners at a rates [*sic*] between $325 and $850."  Bridges Reply Decl. at ¶ 38, Ex. X [Order awarding fees].[11] The rates of Defendants' counsel are much less than the "super premium"

---

[11] Rates Perfect 10 paid its counsel are irrelevant to whether the rates of Defendants' counsel are reasonable. Bridges Reply Decl. ¶ 39.  Perfect 10 misleadingly contends that the rate of "Perfect 10's former attorney Mausner of $320/hour" reflects prevailing rates now, even though Mr. Mausner charged Perfect 10 the exact same rate over a decade ago.  Bridges Reply Decl. ¶ 38, Ex. X [Order awarding fees in *Cybernet Ventures*].

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  rates of $1,200 to $1,400 an hour for the highest tier lawyers in this District.

2  Zeughauser Reply Decl. ¶ 3.

3      In cherry-picking cases awarding lower rates than what Defendants request,

4  Perfect 10 ignores that its claims and tactics made this case far more complex than

5  any of the cases Perfect 10 cites.[12]  As Defendants describe in Section VI,

6  Perfect 10's misconduct and gamesmanship throughout this litigation multiplied the

7  issues, making this suit anything but a "standard DMCA case" (Dkt. 650-7 ¶ 51).

8  An award "higher than that awarded in other cases" can be reasonable because the

9  award must "tak[e] into account what is reasonable under the circumstances" of a

10 given case. *Graham-Sult v. Clainos*, 756 F.3d 724, 752 (9th Cir. 2014) (internal

11 quotation omitted). [13]

12 **VI.   PERFECT 10'S TACTICS DROVE UP THE HOURS FOR DEFENSE.**

13     A litigant "cannot litigate tenaciously and then be heard to complain about

14 the time necessarily spent by the [adversary] in response." *Cataphora Inc. v.*

15 *Parker*, 848 F. Supp. 2d 1064, 1070 (N.D. Cal. 2012) (quoting *Int'l*

16 *Longshoremen's & Warehousemen's Union v. Los Angeles Export Terminal, Inc.*,

17 69 Cal. App. 4th 287, 304 (1999)).  "Defending against an over-pled complaint

18 packed with a barrage of convoluted allegations often requires more work than

19

20 [12] *Bernal v. Paradigm Talent & Literary Agency*, No. 07-06445, 2010 WL
21 6397561, at *1 (C.D. Cal. June 1, 2010) (single copyright claim based on
   screenplay); *Partners for Health & Home, L.P. v. Seung Wee Yang*, 488 B.R. 431,
22 435 (C.D. Cal. 2012) (cyber-squatting); *SOFA Entm't, Inc. v. Dodger Prods., Inc.*,
   No. 08-02616, 2010 WL 6397558, at *1 (C.D. Cal. Nov. 29, 2010), aff'd, 709 F.3d
23 1273 (9th Cir. 2013) (copyright claim based on seven-second TV clip); *Lakim*
   *Indus., Inc. v. Linzer Prods. Corp.*, No. 12- 04976, 2013 WL 1767799, at *1 (C.D.
24 Cal. Apr. 24, 2013) (patent infringement of paint-roller assembly).
   [13] Rates that are higher than the average or median can still be "reasonable." *See*
25 *Glover v. Johnson*, 934 F.2d 703, 716 (6th Cir. 1991) (affirming award at rate over
   forty-five percent higher than the median rate because of "counsels' qualifications,
26 experience, and skill" in the relevant practice area); *Love v. Mail on Sunday*,
   No. 05-7798, 2007 WL 2709975, at *8 (C.D. Cal. Sept. 7, 2007) (reasonable "to
27 hire a nationally-renowned law firm—with relatively high hourly rates"); *Masimo*
   *Corp. v. Tyco Health Care Grp., L.P.*, No. 02-4770, 2007 WL 5279897, at *7 (C.D.
28 Cal. Nov. 5, 2007) (approving a $1,000 rate at the "upper end for attorneys in the
   community (and indeed, in the country)" in 2007).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

maintaining such an action requires." *Love v. Mail on Sunday*, No. 05-7798, 2007 U.S. Dist. 2007 WL 2709975, at *10 (C.D. Cal. Sept. 7, 2007), *aff'd*, 611 F.3d 601 (9th Cir. 2010).

Perfect 10 pontificates that defense counsel should have defended this case "in half the time" instead of having a "billing frenzy" amounting to more time than Perfect 10 spent on this case.  But the number of hours of Perfect 10's counsel is irrelevant to whether the hours of the prevailing parties' counsel are reasonable. *See id.* (finding hours reasonable even though losing party's counsel billed "less that 50% of the hours" prevailing party's counsel did); *Rorabaugh v. Cont'l Cas. Co.*, No. 05-3612, 2007 WL 867301, at *2 (C.D. Cal., Mar.16, 2007).  Moreover, "Plaintiff's counsel may have billed fewer hours, but Plaintiff also lost.  Thus, in this case, the difference in hours that Plaintiff and Defendants spent has no bearing on the reasonableness of Defendants' work."  *Love*, 2007 WL 2709975, at *10; *see also Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1151 (9th Cir. 2001) (hours comparison must control "for the possibility that the prevailing party's attorney—who, after all, did prevail—spent more time because she did better work"); *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.").

## A.    Perfect 10 Misrepresents the Hours and Resources It Spent.

Perfect 10 misleads the Court about the amount of time it spent on this litigation by concealing *thousands* of hours Mr. Zada and Ms. Poblete spent on this litigation, untold hours of legal work from Ms. Augustine and Ms. Chou, and the participation of at least two other attorneys in this litigation.[14] Deposition testimony and Mr. Benink's time records reveal Perfect 10 omitted from its representations to the Court at least 6,000 additional hours by its most significant "timekeepers."

---

[14] These are Steven Fabrizio, then co-head of Jenner & Block's Content, Media, and Entertainment practice, and Jeffrey Mausner, who submitted a declaration without admitting his work on this case.  Bridges Reply Decl. ¶¶ 19-20, Ex. R.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Bridges Reply Decl. ¶¶ 7-22.[15]  Perfect 10 also conceals the extent to which it litigated this case by relying on work recycled from its other cases.[16]

    After adding in the time Perfect 10 failed to disclose, Perfect 10 may have spent thousands more hours litigating this case than Defendants' counsel.  *Id.* ¶¶ 23-25.  Perfect 10's concealment of the true nature of its litigation efforts is yet another example of its improper conduct of this litigation.  The Court should reject Perfect 10's false representations and find Defendants' hours reasonable.

### B.    Perfect 10's Unreasonable Conduct Drove Up Defendants' Hours.

    Perfect 10 maintained unreasonable positions throughout this case. *See* Section III.B.  Not only did Perfect 10 cling to positions long after they had proved untenable, but it also regularly refused all efforts by Defendants to narrow any of the issues through the meet-and-confer process, instead forcing Defendants into costly motion practice.  Bridges Reply Decl. ¶ 31.  For example, despite the Ninth Circuit ruling that Perfect 10 could not establish irreparable harm in *Perfect 10 v. Google*, Perfect 10 forced Defendants to oppose a preliminary injunction motion, which Judge Matz summarily denied.  *Id.* ¶ 32.  Similarly, despite opportunities to avoid (or at least, reduce) motion practice to exclude its putative expert testimony,

---

[15] Perfect 10's CEO Norm Zada acted as senior partner, senior associate, and paralegal, amounting to more than 2,000 hours.  Bridges Reply Decl. ¶¶ 8-13, Exs. F-M. He would "often" write "the first draft of a brief" and "put the exhibits together" before "pass[ing] that off to the attorneys to make sure that everything is, you know, professional and legal," routinely spoke for Perfect 10 on meet-and-confer teleconferences, interjected at hearings, directed deposition testimony, and approved Perfect 10's discovery responses and the document productions of third parties. *Id.* ¶¶ 8-13, Exs. F-M.
Melanie Poblete stated what Perfect 10 paid contract attorneys but failed to mention thousands of hours she spent on this case.  *Id.* ¶¶ 14-15, Ex. N (admitting she spends approximately 80% of her time on litigation, 90% of which is for this case).  Perfect 10 also had two other contractors:  Ms. Augustine, who testified to her work preparing document productions, discovery responses, and filings in this litigation, and who was present at the hearing on Perfect 10's motion for reconsideration; and Ms. Chou, who spent approximately 20 hours a week perform legal assistant work, including significant work in support of Perfect 10's motion for preliminary injunction.  *Id.* ¶¶ 16-18, Exs. P, Q.
[16] Ms. Poblete testified reused document productions from Perfect 10's previous cases, in some instances before Defendants had sent any discovery requests.  Bridges Reply Decl. ¶¶ 23-25, Ex. N.  As a serial plaintiff, Perfect 10's reuse saved both time and money.  Defendants, as first-time copyright litigants, lack that luxury.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Perfect 10 waited until Defendants filed three *Daubert* motions before withdrawing or significantly revising the expert opinions at issue. *Id.* ¶ 33. Worse, Perfect 10 maintained its meritless direct infringement claims for years despite having no factual support, forcing Defendants to bear the costs of summary judgment briefing and several rounds of motion practice on related discovery. *Id.* ¶ 34, Ex. U.

Perfect 10's bad-faith tactics made discovery particularly costly. *Id.* ¶¶ 27-30. Defendants had to seek judicial assistance on the vast majority of their discovery requests. *See id.* ¶¶ 28-29. Even after securing a court order and receiving assurances that Perfect 10 had complied, defense counsel often later discovered those assurances to be false. *Id.* ¶ 30, Ex. T. "A party should not have to file a motion to compel followed by a motion for sanctions to obtain discoverable material from an opponent," but Perfect 10 forced Defendants to do just that. *See Malautea v. Suzuki Motor Corp.*, 148 F.R.D. 362, 365 (S.D. Ga. 1991), *aff'd*, 987 F.2d 1536 (11th Cir. 1993); Bridges Reply Decl. ¶¶ 27-30. Even now, most of the discovery disputes between the parties remain unresolved. *Id.* ¶¶ 28, 30, Ex. T.

Meanwhile, Perfect 10 lobbed multiple meritless motions for sanctions at Defendants. *Id.* ¶ 27. For example, after supposedly learning how to extract Message-IDs automatically, Perfect 10 chose not to submit them in a compliant DMCA notice. It instead tried to undo the Court's earlier summary judgment ruling against it by moving for sanctions and accusing *all* of Defendants' witnesses of perjury. *See* Dkt. 325. Perfect 10 and Mr. Zada, untethered to professional standards of conduct, wanted to prolong this litigation and to make it as expensive as possible for Defendants. *Id.* ¶¶ 27, 35, Exs. V, W (describing Perfect 10's evolving DMCA notices and "gotcha" tactics).

Given the breathtaking scope of Perfect 10's misconduct, the Court should discount the opinion of Mr. O'Connor, whose only understanding of the case, beyond his review of the papers for this motion, comes from Perfect 10's own characterization of the case. *Id.* ¶ 26. Had Mr. O'Connor conducted any

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

independent review of the pleadings and discovery, he would have seen that there is nothing "typical" about this case. *Id.* ¶ 27.

### C.    The Existential Threat to Defendants Merited a Vigorous Defense.

Defendants litigated as if this was "bet the company" litigation because it was. *Id.* ¶¶ 3-6, Exs. A-D.  Perfect 10 obviously intended to threaten the destruction of Defendants' Usenet businesses.  *Id.*  Only now, after Defendants won and are seeking fees, does Perfect 10 assert that it would have settled this case early for $2 million.  *Id.* ¶¶ 5-6, Ex. D.  But Perfect 10's conduct and statements contradict that claim.  Early in this case, Perfect 10's counsel stated it would not settle for less than $7 million.  *Id.* ¶ 7, Ex. D.  Even *after* the Court granted summary judgment for Defendants, Mr. Zada still demanded $3 million to settle the lawsuit.  Yokubaitis Decl. ¶ 2, Ex. A; Bridges Reply Decl. ¶ 6.  Mr. Zada's post-judgment settlement offer warned, ""I think you should understand that should Perfect 10 be successful in part or all of its appeal, *such a ruling should potentially cost you and your company at least $100 million*."  Yokubaitis Decl. ¶ 2, Ex. A (emphasis added).

Given the high stakes of this lawsuit, including Perfect 10's apparent intention to put Defendants out of business, Defendants reasonably sought counsel who would invest sufficient time to defeat Perfect 10's bullying.  *See Gen. Dynamics Corp. v. United States*, No. 89-6762, 1996 WL 200255, at *32 (C.D. Cal. Mar. 25, 1996), *rev'd on other grounds*, 139 F.3d 1280 (9th Cir. 1998) (approving award over $25 million because "[t]his was a bet your company case").

## VII.    DEFENDANTS' BILLS SHOW THE BASIS FOR THE FEES.

"A request for attorney's fees should not result in a second major litigation" and does not require "great detail how each minute of . . . time was expended." *Hensley*, 461 U.S. at 437 & n.12.  The applicant need only "establish that the time was spent on the matters for which the district court awarded attorneys' fees."  *Lytle v. Carl*, 382 F.3d 978, 989 (9th Cir. 2004); *see also Ruff v. Cnty. of Kings*, 700 F. Supp. 2d 1225, 1239 (E.D. Cal. 2010) (accepting " minimal descriptions"); *Carmel*

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

& *Carmel PC v. Dellis Const., Ltd.*, 858 F. Supp. 2d 43, 47 (D.D.C. 2012).

The detail in Defendants' billing statements permits the Court to evaluate the reasonableness of the hours[17] and is comparable to the detail the Ninth Circuit courts in the Central District have accepted.[18]  The statements itemize tasks and are not "block billing" that prevents a determination of whether counsel performed tasks in a reasonable amount of time.  *See IPVX Patent Holdings, Inc. v. Voxernet LLC*, No. 13- 01708, 2014 WL 5795545, at *8 (N.D. Cal. Nov. 6, 2014) (awarding Fenwick fees and finding "the billing statements . . . do not contain block billing and show that all entries are itemized by task.").

## VIII.  PERFECT 10'S OTHER PROPOSED REDUCTIONS LACK MERIT.

The tasks Perfect 10 challenges as "secretarial or clerical in nature" are paralegal work that a fee award should include.[19]

The "data extraction and processing costs" are from Fenwick's eDiscovery-related services.  *See* Dkt. 650-2 [Poblete Decl., Ex. 3] at 16-17.  These expenses

---

[17] As Defendants' lead counsel offered in his opening declaration, if the Court requests it, Defendants will submit unredacted copies of their billing statements for *in camera* inspection. Dkt. 644-1 [Bridges Decl.] at ¶¶ 52, 57.  Unredacted billing statements should in no case be made available to Perfect 10, as doing so would amount to turning over a playbook containing roughly four years of privileged information, including litigation strategy, to a notorious serial litigant.  *See, e.g., Real v. Continental Group, Inc.*, 116 F.R.D. 211, 213–14 (N.D.Cal.1986) (holding that "the attorney-client privilege embraces attorney time, records and statements to the extent that they reveal litigation strategy and the nature of the services provided").  In fact, even Perfect 10 concedes that "redactions [in time entries] may be utilized to protect disclosure of privileged materials."

[18] Compare *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1286 (9th Cir.2004) (allowing recovery for "Counsel call to discuss [REDACTED]" and "Research Supreme Court case law involving [REDACTED]"), and *Jones v. Corbis Corp.*, No. CV 10-8668-SVW CWX, 2011 WL 4526084 (C.D. Cal. Aug. 24, 2011), *aff'd*, 489 F. App'x 155 (9th Cir. 2012) (approving similar redactions in a fee award to Fenwick and West), with Dkt. 650-2 [Poblete Decl., Ex. 3] ("Research [REDACTED]," "Conduct factual research [REDACTED]," and "Team communications [REDACTED]").

[19] Compare Dkt. 650-2 [Poblete Decl., Ex. 5] (challenging "Organize attorney set of documents in preparation for hearing," "Organize documents for attorney review and in preparation for production," and other entries by timekeeper CM), with *Jones*, 2011 WL 4526084, at *6 (finding that "Preparation of materials for use during deposition" and "Preparation of exhibit materials for opposition to summary judgment and class certification motions and Chambers copysets" were not clerical in nature and warranted base paralegal rates).

are a proper part of a fee award.  *See Tibble v. Edison Int'l*, No. 07-5359, 2011 WL 3759927, at *7 (C.D. Cal. Aug. 22, 2011), *aff'd*, 520 F. App'x 499 (9th Cir. 2013) (taxing costs for ESI "necessarily incurred in responding to Plaintiffs' discovery requests"); *In re Aspartame Antitrust Litigation*, 817 F. Supp. 2d 608, 614 –615 (E.D. Pa. 2011) (award from creation of litigation database, storage of data, imaging hard drives, keyword searches, de-duplication, data extraction and processing, and technical support necessary to complete these tasks, but not bates labeling).  All these eDiscovery services were necessary in this litigation both for Defendants' own productions and to allow defense counsel to review Perfect 10's high volume of documents.  *See* Opp. at 22 (admitting "Perfect 10 produced more than 1,462 gigabytes of electronic documents" and "22 banker's boxes of paper documents.").  Without those services, the number of hours Defendant's attorneys and paralegals spent would have only increased.

## IX.   THE RIGHT OF PUBLICITY ALLOCATION IS REASONABLE.

Defendants conservatively allocated only 15% of tasks covering multiple or intertwined claims to the rights of publicity claims.  These tasks include (1) initial review the complaint and investigation of claims; (2) the motion to transfer venue, which required five declarations in total and voluminous exhibits (granted, Dkt. 56); (3) the motion to dismiss, which included not only the motion brief and the reply brief, but also three declarations and supplemental filings of voluminous exhibits as the Court ordered (granted in part, including on the publicity claims with prejudice, Dkt. 101) and a request for leave to file the reply due to the timing of the transfer (granted, Dkt. 71); (4) after transfer, a notice of related cases, which Perfect 10 unreasonably opposed, driving up costs (granted, Dkt. 76); (5) a motion to strike Perfect 10's ***eight-months late*** supplemental filing to the motion to dismiss (granted, Dkt. 94); (6) settlement discussions; and (7) legal and factual research, analysis, and planning for the case as a whole and miscellaneous procedural matters and filings over the course of two years.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    When claims or tasks are intertwined, courts have discretion to allocate the

2  *entirety* of the applicable tasks to the fee-shifting claim.  *Love*, 2007 WL 2709975,

3  at *3; *Wyatt Tech. Corp. v. Malvern Instruments, Inc.*, 2010 U.S. Dist. LEXIS

4  144973, at *8–9 (N.D. Cal. June 17, 2010).  Perfect 10 attempts to turn the standard

5  on its head.  Perfect 10 asks this Court to allocate *none* of the tasks that applied to

6  all claims to the right of publicity claim and pretend that this claim, which

7  Perfect 10 elected to assert and which took two years to dismiss, had no part in the

8  defense of this case except for 9 pages of drafting (with an assumption of no

9  research).  Tellingly, Perfect 10 cites no case law in support, and it has none.

10    Perfect 10's own logic shows that, if anything, Defendants *underallocated*

11  the rights of publicity claims.  As Perfect 10 argues, Defendants devoted 6 of 25

12  pages of their brief on the motion to dismiss and 3 of 14 pages of the reply solely to

13  the rights of publicity claims.  Opp. at 25; Dkts. 11-1, 72.  Thus, the rights of

14  publicity claims represented at least 24% of the main brief and 21% of the reply

15  brief, demonstrating that Defendants' general allocation of 15% is not only

16  reasonable but conservative.

17  **X.    CONCLUSION**

18    This case was wholly unnecessary: Perfect 10 had the antidote to the alleged

19  infringement all along. Instead of following the DMCA procedures like other

20  copyright holders, Perfect 10 caused Defendants to spend millions of dollars to

21  defend their Usenet access services, which Defendants should now recover to

22  promote the statutory purposes and in the interests of justice.

23

24  Dated:  January 16, 2015          FENWICK & WEST LLP

25                                    By:      /s/ Andrew P. Bridges
                                               Andrew P. Bridges
26
                                      Attorneys for Defendants
27                                    GIGANEWS, INC., and
                                      LIVEWIRE SERVICES, INC.
28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO