ANDREW P. BRIDGES (CSB No. 122761)
abridges@fenwick.com
ILANA RUBEL (CSB. No. 221517)
irubel@fenwick.com
TODD R. GREGORIAN (CSB No. 236096)
tgregorian@fenwick.com
KATHLEEN LU (CSB No. 267032)
klu@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:   415.875.2300
Facsimile:    415.281.1350

Attorneys for Defendants
GIGANEWS, INC., and
LIVEWIRE SERVICES, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>GIGANEWS, INC., a Texas Corporation; LIVEWIRE SERVICES, INC., a Nevada corporation; and DOES 1 through 100, inclusive,<br><br>Defendants.<br><br>_____<br><br>GIGANEWS, INC., a Texas Corporation; LIVEWIRE SERVICES, INC., a Nevada Corporation,<br><br>Counterclaimants,<br><br>v.<br><br>PERFECT 10, INC., a California Corporation,<br><br>Counterdefendant. | Case No.: 11-cv-07098-AB (SHx)<br><br>***DISCOVERY MATTER***<br>***Before Hon. Stephen J. Hillman***<br><br>**DEFENDANTS' RESPONSE TO PERFECT 10'S OBJECTIONS TO [PROPOSED] FURTHER AMENDED ORDER REGARDING DEFENDANTS' MOTION FOR SANCTIONS (DKT. 654-1)**<br><br>Date:   January 26, 2015<br>Time:   1:00 p.m.<br>Room:  550 (Roybal) |

**Table of Contents**

Page(s)

I. VIOLATIONS OF THE MARCH 17, 2014 ORDER (DKT. 223) .................. 1

II. VIOLATIONS OF THE APRIL 24, 2014 ORDER (DKT. 254) .................... 4

III. VIOLATIONS OF THE JUNE 5, 2014 ORDER (DKT. 311) ........................ 8

IV. OTHER DISCOVERY NONCOMPLIANCE AND MISCONDUCT .......... 12

V. NONCOMPLIANCE OF MS. POBLETE AND MS. AUGUSTINE ........... 13

VI. CONCLUSION ......................................................................................... 14

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## Table of Authorities

Page(s)

**CASES**

*McCoy v. Sw. Airlines Co.*,
  208 F.R.D. 617 (C.D. Cal. 2002) .................................................................................... 1

*Perfect 10, Inc. v. Google, Inc.*,
  No. CV 04-9484 AHM, 2010 U.S. Dist. LEXIS 75071 (C.D. Cal.
  July 26, 2010) ................................................................................................................ 2

*PSEG Power N.Y., Inc. v. Alberici Constructors, Inc.*,
  No. 1:05-CV-657, 2007 WL 2687670 (N.D. N.Y. Sept. 7, 2007) ................................. 4

*Skepnek v. Roper & Twardowsky, LLC*,
  No. 11- 4102-KHV, 2014 WL 289470 (D. Kan. Jan. 27, 2014) .................................... 4

*Wingnut Films, Ltd. v. Katja Motion Pictures Corp.*,
  No. CV 05-1516-RSWL SHX, 2007 WL 2758571 (C.D. Cal. Sept.
  18, 2007) ...................................................................................................................... 12

**RULES**

Fed. R. Civ. P. 11 ............................................................................................................. 5, 7

Fed. R. Civ. P. 30(b)(6) ........................................................................................................ 7

Fed. R. Civ. P. 37 ................................................................................................................. 1

Defendants Giganews, Inc. and Livewire Services, Inc. hereby submit their response to Plaintiff Perfect 10, Inc.'s Objections to Defendants' [Proposed] Further Amended Order, as directed by the Court. *See* Declaration of Armen Nercessian ("Nercessian Decl."), Ex. A [Jan. 26, 2015 Sanctions Hearing Tx.] at 8:12-16; *see also* Dkt. 664. Perfect 10's objections continue its characteristic practice of excessive filings and distractions.[1] Perfect 10 admits the truth of the majority of the proposed findings that Defendants set forth, raising technical objections or arguing that the Court should excuse its noncompliance. Perfect 10's *admissions* rather than its objections should draw the Court's attention here. A party must take all reasonable steps to comply with an order of the Court. *McCoy v. Sw. Airlines Co.*, 208 F.R.D. 617, 621 (C.D. Cal. 2002). Perfect 10 instead allowed scores of its own deficiencies to continue without remedy as the case proceeded through expert discovery and on to summary judgment. Perfect 10's conduct warrants the imposition of sanctions.

## I. VIOLATIONS OF THE MARCH 17, 2014 ORDER (DKT. 223)[2]

Perfect 10 does not dispute Defendants' proposed factual findings concerning the March 17, 2014 Order. *Compare* Dkt. 654-1 [Proposed Further Amended Order ("Proposed Order")] at 9:23-10:15, *with* Dkt. 656 [Perfect 10's Objections to Proposed Order ("Obj.")] at 13:1-16:1. Instead, Perfect 10 offers baseless

---

[1] In fact, while Defendants were finalizing this response (and without giving Defendants any notice), Perfect 10 submitted two further filings concerning this sanctions proceeding, including a 250-page declaration in support of its objections. *See* Dkts. 669 & Dkt. 670. The Court should disregard Perfect 10's untimely submissions, which consist primarily of argument that Perfect 10 could have included in the Joint Stipulation six months ago. However, if the Court considers Perfect 10's irregular filings, Defendants request leave to respond.

[2] Defendants group their responses to Perfect 10's objections to minimize repetition where possible. Defendants also do not address all of Perfect 10's repeated objections that they failed to conduct a conference of counsel, as the Court already held that "the intent and spirit of Rule 37's meet and confer requirement was more than satisfied" in this case. Dkt. 665 at 1.

procedural objections that mischaracterize the meet-and-confer process and the Court's past orders. As Perfect 10 has done throughout this suit and its prior cases, Perfect 10's objections only "purpor[t] to 'dispute' a fact, but then stat[e] allegations that are consistent with the asserted fact." *Perfect 10, Inc. v. Google, Inc.*, No. CV 04-9484 AHM (SHx), 2010 U.S. Dist. LEXIS 75071, at *3-4 n.5 (C.D. Cal. July 26, 2010) (stating that "[t]he Court will not address these immaterial 'disputes,' which do nothing more than strain the Court's resources and distract from the real issues in this litigation.").

First, Perfect 10 contends that the Court's June 5, 2014 Order, which declined to impose discovery sanctions against Perfect 10 *at that time*, precludes a fee award for Perfect 10's continued non-compliance. Obj. at 13:2-7. To the contrary, the Court in that order overruled all Perfect 10's objections, noted Perfect 10's continuing duty to supplement its production, and cautioned Perfect 10's attorneys regarding their certification that Perfect 10 had produced all responsive documents.[3] "[P]laintiff's attorneys are aware of the solemnity of their discovery certifications, and have proceeded accordingly, at their own jeopardy if they have signed such certifications in bad faith." Dkt. 311 at 1-2.

Second, Perfect 10 contends that Defendants' letter requesting a conference did not give it notice of its violations of the March 17, 2014 Order. Obj. at 13:8-10. But Defendants raised Perfect 10's non-compliance with the June 5, 2014 Order, which superseded the March 17 Order and *addressed the same requests* (RFP Nos. 1 & 2), overruling Perfect 10's objections to them. *See* Dkt. 389 [Gregorian Decl.], Ex. 5 [Jul. 2, 2014 letter]. As the Court has already found: "Perfect 10 was on

---

[3] As just one example of Perfect 10's continuing failure, as discussed at the January 26 hearing, Perfect 10 withheld communications with Steven Fabrizio responsive to this order that it never identified on a privilege log. *See* Dkt. 655-1 [Reply Bridges Decl. re Fees Motion] at ¶¶ 19, 21; Dkt. 650-5 [Benink Decl.], Ex. 1 at 4.

| DEFENDANTS' RESPONSE TO OBJECTIONS TO [PROPOSED] FURTHER AMENDED ORDER | 2 | CASE NO. 11-cv-07098-AB (SHx) |

clear notice of what defendants alleged was the insufficient compliance." Dkt. 665 at 1.

Perfect 10's specific objections are also flawed, and the Court should overrule them:

***Perfect 10's Failure to Search and Produce Email Communications (Proposed Order at 9:24-10:9).*** Perfect 10 does not dispute that it failed to produce internal email communications until the last day of discovery; and it omitted from its production over sixty attachments, emails in its possession that the third parties produced separately (including evidence of spoliation), and documents from entire email accounts. Instead, Perfect 10 *admits* these fact findings and argues either that Defendants have not established their relevance or that the Court should excuse the violations. *See, e.g.*, Obj. at 13:26-28 ("Defendants have not adduced any evidence as to why Perfect 10 would have deliberately failed to include the attachments or why these emails were meaningful in any way"); *see also* 14:9-10 (Defendants "have not adduced any evidence that the missing emails would have been responsive to that order"); *cf.* Dkt. 425 [Supplemental Memorandum ("Supp.")] at 2-3. Perfect 10's arguments fail:

- The email communications were responsive to at least RFP No. 1 (communications about Defendants re: infringement) and RFP No. 64 (communications about Defendants or this litigation), for which the Court ordered production (Dkt. 254 at 4). Dkt. 388 [Joint Stipulation Re: Defendants' Motion for Sanctions ("Jt. Stip.")] at 88. Perfect 10's contention that it had no obligation to produce communications *between itself and the third-party witnesses* is particularly meritless. *See* Supp. at 2 n.2.
- Defendants have no burden to establish the relevance of each of the sixty still-missing email attachments that Perfect 10 never produced. A party cannot strip responsive emails of their attachments and metadata before

production. *See PSEG Power N.Y., Inc. v. Alberici Constructors, Inc.*, No. 1:05-CV-657 (DNH/RFT), 2007 WL 2687670, at *12 (N.D. N.Y. Sept. 7, 2007) (emails and attachments must be produced together); *see also Skepnek v. Roper & Twardowsky, LLC*, No. 11- 4102-KHV, 2014 WL 289470, at *2-3 (D. Kan. Jan. 27, 2014)(same).

- At no point does Perfect 10 deny that it deleted numerous of its email accounts shortly before the filing suit. *See, e.g.*, Obj. at 15:17-18 ("*If true, then it was an action from 2011*, prior to this case even beginning…"). The Court ordered Perfect 10 to identify the acts of document destruction but Perfect 10 did not do so. (Dkt. 311 at 3 [ROG 10].) Furthermore, the 21 accounts likely contained responsive information. For example, Perfect 10 deleted the email account of its former general counsel, Dan Cooper. Perfect 10 elsewhere withheld responsive communications with Mr. Cooper. Gregorian Decl., Ex. 13 [Perfect 10's Amended Responses to Defendants' Third Set of Requests for Production] at 5.

***Perfect 10's Failure to Identify All Businesses It Previously Accused of Infringement (Proposed Order at 10:10-15).*** As explained above, the Court's June 5, 2014 Order overruled all objections Perfect 10 relied upon to avoid full compliance with the March 17, 2014 order, and the fact that the Court chose not to sanction Perfect 10 at that time does not control. Dkt. 311 [June 5, 2014 Order] at 1. Perfect 10 and its attorneys continued to certify that it provided a full response to RFP No. 2 even after Defendants identified specific and glaring deficiencies. *See* Gregorian Decl., Ex. 14 at RFP No. 2. That conduct violated the Court's order.

## II.  VIOLATIONS OF THE APRIL 24, 2014 ORDER (DKT. 254)

***Perfect 10's Failure to Identify Alleged Infringement on Defendants' Websites (Proposed Order at 10:17-21).*** Defendants raised three critical deficiencies in Perfect 10's response to Livewire Interrogatory No. 1. *See* Jt. Stip.

at 82-83.  Perfect 10 does not dispute any of them.  It identified only top-level domains and *not* the URLs of specific pages containing allegedly infringing material.  Obj. at 16:13-25.  The websites at issue are publicly available.  Perfect 10 did not need discovery regarding Defendants' server configuration to make these identifications.  Obj. at 16:21-25; *see also* Jt. Stip. at 117.  Domains can contain hundreds or thousands of web pages.  If Perfect 10 ever had a valid basis under Rule 11 to accuse *any* of Defendant's web pages, it could have identified them by URL.  In the face of the Court's warnings, Perfect 10 even now advances false notions about the operation of the Internet in order to cover its misconduct.

*Perfect 10's Failure to Identify IP Addresses (Proposed Order at 10:22-28)*.  Perfect 10 does not address the sworn testimony establishing that it omitted IP addresses from its response.  Jt. Stip. at 83-84; Dkt. 394 [Tran Decl.] at ¶¶ 13-15, Exs. 1-2.  Perfect 10 instead suggests the Court should excuse its omissions as the fault of its purported expert, John Wilkins.  Obj. at 16:28-17:7.  But Perfect 10 had the burden here, not Mr. Wilkins.  Moreover, Mr. Wilkins did not testify that Perfect 10 disclosed all responsive IP addresses.  Nor did he submit any testimony supporting the theory that he misled Perfect 10.  In fact, Perfect 10 produced an email exchange among Mr. Wilkins, Mr. Apai, and Mr. Zada *discussing IP addresses omitted* from Perfect 10's response.  Dkt. 424 [Aug. 25, 2014 Supp. Gregorian Decl.] at ¶¶ 12-16, Ex. 5.  Perfect 10's objections provide no excuse for its failure to provide IP addresses.

*Perfect 10's Failure to Identify Allegedly Infringing Usenet Messages (Proposed Order at 11:1-6)*.  The Court unequivocally ordered Perfect 10 to: "produce one complete reproduction of each allegedly infringing Usenet message including the full set of message headers and the message body."  Dkt. 254 at 1.

Perfect 10 argues that it could not respond because it did not have a pre-existing list of Message-IDs or printouts of messages to produce in documentary

form. This argument rests on Perfect 10's "interpretation" of another Court order denying Perfect 10's own baseless motions for sanctions. *See* Obj. at 17:12-17. The Court's Order did not allow for Perfect 10 to disregard its requirements in favor of its own incorrect "interpretation." *See* Obj. at 17:22-19:1. It directed Perfect 10 to produce one complete reproduction of each allegedly infringing message, without exception. Perfect 10's attempted self-help around this central discovery obligation is willful disobedience of this Court's order.

Perfect 10 also asserts that it had no idea what "message body" means, but that term has a well-established meaning which Perfect 10 ignores. *See* Obj. at 18:2-15; Supp. Gregorian Decl. at ¶ 3, Ex. 1. The Court itself noted its orders were "sufficiently clear to Plaintiff, or it would have sought timely clarification." Dkt. 665 at 1. Perfect 10 could have complied with the order in various alternative ways. *See, e.g.*, Supp. Gregorian Decl. at ¶¶ 8-11, Exs. 2-4. Contrary to Perfect 10's assertions, Defendants never demanded production of the encoded text files (or "binheader" files) that Perfect 10 did produce, which are incomplete, unusable, and lack identifying message headers. *See* Supp. Gregorian Decl. at ¶¶ 5-6.

Finally, Perfect 10 continues to claim burden over both the Court's order and the original interrogatory, which asked Perfect 10 to identify Message-IDs of the allegedly infringing messages. As Judge Birotte noted, ***Perfect 10 itself testified it could gather 90% of the Message-IDs at issue in 15 minutes***, and although it has "now extracted Message IDs for 'approximately 54,000 Perfect 10 messages,'" it still "refuses to submit a DMCA takedown notice using that information." Dkt. 620 at 13. Perfect 10's objections ignore that point, and they try to complicate a straightforward order of the Court. But they do not controvert the essential finding that Perfect 10 failed to produce a full set of message headers and bodies, and the Court should therefore overrule them in their entirety.

*Perfect 10's Failure to Produce Materials From Earlier Lawsuits (Proposed Order at 11:7-25).* Perfect 10 does not dispute that it failed to produce these materials; it argues that it "produced what it had." Obj. at 19:2-20. But Perfect 10 *did* have access to materials that it nevertheless failed to produce. Veritext Corporation confirmed that Perfect 10 still had access to deposition transcripts from the *Google* and *Cybernet Ventures* matters. Nevertheless, Perfect 10 failed to produce transcripts for at least eight days of depositions in *Google* and the Rule 30(b)(6) deposition of Perfect 10 in *Cybernet Ventures*. Gregorian Decl. at ¶ 29. Perfect 10's evidence includes no detail about **what Perfect 10 actually did** to locate responsive materials. *See* Dkt. 656-1 [Davis Decl.], Ex. 2 [Zada Decl.] at ¶ 8. Given the contrary evidence that Perfect 10 failed to produce documents in its control, the record does not support an argument that Perfect 10 performed a reasonable search. *See* Gregorian Decl. at ¶¶ 26, 28-32, Ex. 14 at RFP Nos. 10-15, 55, and 57; Ex. 17; Ex. 19. Finally, Perfect 10 maintains that it "also produced 22 bankers boxes" suggesting that perhaps *they* contained the missing materials. Obj. at 19:18-20. They did not. Perfect 10 forced Defendants to inspect these boxes in Los Angeles, and Defendants' list of deficiencies does not include materials that Perfect 10 made available for inspection. Gregorian Decl. at ¶ 5, Ex. 3. The Court should overrule Perfect 10's objections.

*Perfect 10's Failure to Produce Evidence Supporting Its Claims of Direct and Indirect Infringement (Proposed Order at 11:26-12:5).* Perfect 10 does not dispute that it failed to produce documents responsive to RFP Nos. 24-29, 31-35, 38, 39, and 41. It argues that "Perfect 10 produced what *it* believed supported its allegations." *See* Obj. at 19:23-20:12. Defendants acknowledge the possibility that Perfect 10 had no Rule 11 basis for its direct infringement claims, and thus no associated documentary evidence. *See* Dkt. 619 at 12 ("the record is devoid of any evidence to support the only theory of direct liability as to Giganews that survived

the pleading stage"). If Perfect 10 had no evidence to support its direct infringement claims, it could have said so candidly. But Perfect 10 did not do that. Perfect 10 simply failed to produce even the most basic evidence on its claims (for example, evidence identifying the allegedly infringing messages, as discussed above).

*Perfect 10's Failure to Produce Information About the Perfect 10 Website (Proposed Order at 12:6-10).* Once more, Perfect 10 admits the stated deficiency. *See* Obj. at 20:16-28. Once more, Perfect 10 fails to set forth any actual facts supporting the conclusory assertion that it performed a reasonable search. *See* Obj. Davis Decl., Ex. 2 [Zada Decl.] at ¶ 8. Defendants submitted *uncontroverted* evidence and testimony that Perfect 10 had access to and control over the missing data and metrics. Gregorian Decl. at ¶¶ 33-36, Exs. 21-23. And Perfect 10 provides no support for its contention that "Defendants could have generated whatever analytics or metrics that they wanted from Perfect 10's server logs."[4] *See* Obj. at 20:27-28. Since the objections betray Perfect 10's continued "refus[al] to do what [is] well within its power," *see* Dkt. 620 at 12, this Court should overrule them.

**III. VIOLATIONS OF THE JUNE 5, 2014 ORDER (DKT. 311)**

*Perfect 10's Failure to Identify Images that Never Appeared on Perfect 10's Websites (Proposed Order at 12:12-17).* Perfect 10's objections mischaracterize the record and the Orders of the Court. *See* Obj. at 21:10-21. Perfect 10 does not dispute that it represented to the Court that the "spreadsheet [Perfect 10 was compiling] will be sufficient to identify alleged infringements of images that have never appeared on Perfect 10's website." Dkt. 277 [May 20, 2014

---

[4] By contrast, Defendants offered sworn testimony explaining why it would "be impossible to derive some of the metrics using these server logs alone." Tran Decl. at ¶¶ 10-11.

Joint Stipulation] at 68. Because of this representation, the Court "agree[d] that the spreadsheet . . . should be sufficient to economically respond" to Giganews Interrogatory No. 2. Dkt. 311 at 3. But, after Defendants sought clarification of the June 5, 2014 Order, the Court specifically reserved judgment on this issue: "As to Interrogatory 2, the Motion for Clarification is premature. The court will await service of the spreadsheet, so that all parties may consider whether it is compliant with the court's order." Dkt. 338 at 1. The final spreadsheet Perfect 10 delivered failed to include the information sought. *See* Gregorian Decl., Ex. 34 [Perfect 10's Supp. Responses to Giganews' Second Set of Interrogatories] at 6-357. Defendants required this information because all allegedly infringed images that appeared on Perfect 10's website form a compilation, warranting (following any determination of liability) only a single statutory damages award. Jt. Stip. at 85-86; *see also* Dkt. 535 [Defendant's Motion for Partial Summary Judgment on Statutory Damages]. In its Opposition to Defendants' summary judgment motion on statutory damages, Perfect 10 complained of "the tremendous and costly burden of determining which images at issue in the case have likely never appeared on perfect10.com." *See* Dkt. 543 [Perfect 10's Opposition Defendant's Motion for Partial Summary Judgment on Statutory Damages] at 20. But Perfect 10 should not be able to claim burden in an attempt to recover windfall statutory damages ***which would be precluded by the very evidence it refuses to provide.*** Perfect 10 distorts the procedural history, and the Court should overrule its objections.

> ***Perfect 10's Spoliation of Documents (Proposed Order at 12:18-22).*** As explained in Section I, above, Perfect 10 admitted the deletion of email accounts. Now, with its objections, Perfect 10 asserts ***for the first time (and without factual support or citation)*** that its deletion of email accounts would not have destroyed

any documents. Obj. at 21:28-22:2. No evidence supports this attorney argument.[5] No evidence rebuts Defendants' analysis that these accounts contained responsive information and that Perfect 10 produced no emails from these accounts. Jt. Stip. at 86-87; Supp. Gregorian Decl. at ¶¶ 20-22; *see also* Section I. With each filing Perfect 10 simply changes its story – and it remains free to, since it never submits sworn testimony to support of any of its conflicting versions of the truth. If Perfect 10 did not destroy the emails associated with these accounts when it deleted the accounts themselves, then it did not search and produce documents from what it retained. Dkt. 389 at ¶ 24. Either way, Perfect 10 violated the Court's orders.

***Perfect 10's Failure to Identify Mr. Zada's Relationships with Declarants (Proposed Order at 12:23-28).*** Perfect 10's objections admit that Perfect 10 did not fully comply with this request as ordered. *See* Obj. at 22:12-20. For instance, Perfect 10 admitted that it failed to disclose Mr. Zada's relationship with the attorneys in the action because they "seemed obvious." Obj. at 22:16-17. Knowing that Livewire Interrogatory No. 12 aims to uncover the potential bias for each of its declarants in this action, Perfect 10 chose to provide a flippant response, which again shows Perfect 10's disrespect for this Court's order. *See* Jt. Stip. at 87-88; Gregorian Decl. at ¶¶ 57-58, Ex. 33 [Perfect 10's Supp. Responses to Livewire's Second Set of Interrogatories] at 8-9. For example, even though Mr. Apai has received substantial payments from Perfect 10 as a webmaster, Perfect 10 stated *only*: "Dr. Zada and Melanie Poblete have also played ping pong with Szabolcs Apai, with mixed results." *See id.* Perfect 10's minimal disclosure does not satisfy the Court's Order, and its objections do nothing to change that fact.

---

[5] In any case, Perfect 10 did not raise this argument anywhere in the Joint Stipulation, and—as the Court recently noted—Perfect 10 "declined the opportunity to file a Supplemental Memorandum." *See* Dkt. 665 at 1. Therefore, Perfect 10 waived this argument.

*Perfect 10's Response to Giganews Interrogatory No. 4 (Proposed Order at 13:2-7).* Perfect 10 does not dispute that its response omits Usenet subscriptions identified in correspondence with Mr. Chumura. *See* Obj. at 23:3-7; Gregorian Decl., Ex. 36 at 9. In the face of this obvious deficiency, which Perfect 10 never attempted to remedy, the Court should reject Perfect 10's conclusory and unsupported assertion that it performed a reasonable search.

*Perfect 10's Response to Giganews Interrogatory No. 10 (Proposed Order at 13:8-13).* Perfect 10 now admits that it has no evidence that any Giganews employees were directly involved in infringement. Obj. at 23:13-16. Although Defendants requested such a confirmation from Perfect 10 repeatedly over a period of months, Perfect 10 provides it only after the Court has entered judgment against it and it faces sanctions. Perfect 10 attempts to shift the blame for this to Defendants, "[b]ecause Defendants managed to successfully prevent Perfect 10 from learning the identities of at least 49 infringers of its copyrights." *Id.* This bad-faith objection mischaracterizes the Court's September 4, 2014 Order. The Court did not prevent Perfect 10 from obtaining the identities of alleged direct infringers; it held that Perfect 10 had to bear the cost and perform its own analysis of the available data. *See* Dkt. 412. The Court also specifically found that "Giganews has already provided plaintiff with detailed instructions as to how Perfect 10 itself may obtain the information it seeks." Dkt. 412 at 1.

*Perfect 10's Response to Giganews Interrogatory No. 13 (Proposed Order at 13:14-17).* Defendants requested a finding that Perfect 10 represented to the Court that it could not provide a narrative response to the Interrogatory, when in fact it could. Perfect 10's objections do not dispute that it *did* provide a narrative response *despite representing the contrary* to the Court. *See* Obj. at 23:20-24. Therefore, Perfect 10 sets forth no basis for objecting to this finding.

## IV. OTHER DISCOVERY NONCOMPLIANCE AND MISCONDUCT

***Perfect 10's Deletion of Email Accounts (Proposed Order at 13:19-20).*** Defendants address Perfect 10's admitted deletion of email accounts in Sections I and III above. *See also* Jt. Stip. at 86-87; Supp. Gregorian Decl. at ¶¶ 21-22. Perfect 10's argument that Defendants would have to bring a separate spoliation motion before the Court could make this finding (Obj. at 25:4-8) only further illustrates Perfect 10's efforts to multiply proceedings in this case and raise the cost even more. It also demonstrates Perfect 10's willful violation of the duty to preserve. *See Wingnut Films, Ltd. v. Katja Motion Pictures Corp.*, No. CV 05-1516-RSWL SHX, 2007 WL 2758571, at *14-16 (C.D. Cal. Sept. 18, 2007) (Hillman, Magistrate J.) (failure to suspend document destruction policy sanctionable).

***Perfect 10's Incomplete Production of its Image Library (Proposed Order at 14:21-23).*** Perfect 10 admitted that it did not produce copies of all allegedly infringed works. *See* Gregorian Decl. at ¶ 27, Ex. 18 [list of missing directories]; Jt. Stip. at 90; Dkt. 356.3 [Zada Decl.] at ¶ 16; Supp. Memo. at 2. Even now, while flatly stating that this assertion is "false," Perfect 10 can represent only that it produced copies of "***most*** of the images at issue in this case." *See* Obj. at 24:17-27 (emphasis added). At any point, Perfect 10 could have certified that it did not allege infringement of any images it omitted from production. It did not, because it did allege infringement of additional images, and it simply failed to comply with the Court's order to produce them.

***Perfect 10's Failure to Produce a Privilege Log (Proposed Order at 14:24-26).*** The Court ordered Perfect 10 to serve a privilege log if it intended to withhold documents on that basis. *See, e.g.*, Dkt. 254 [April 24, 2014 Order] at 2. On the last day of fact discovery, Perfect 10 represented that it would provide a privilege

log.[6] Gregorian Decl. at ¶¶ 37-39, Ex. 27. Now Perfect 10 changes its position, arguing that the parties' agreement absolved it from having to log *any* communications. Obj. at 25:2-26:6. Perfect 10's suggestion that all its purportedly privileged communications post-date the complaint is simply not credible and is contradicted by the record, including the admissions of counsel that Perfect 10 employees Ms. Poblete and Ms. Augustine withheld but failed to log privileged documents. *See* Gregorian Decl. at ¶¶ 37-39, Ex. 27; Supp. Gregorian Decl. at ¶¶ 26-30; Jt. Stip. at 95-99; Supp. Memo. at 3.

## V. NONCOMPLIANCE OF MS. POBLETE AND MS. AUGUSTINE

Perfect 10 admits both Ms. Poblete and Ms. Augustine failed to comply with the Court's Order, attempting to blame the Court's entry of an "impossible order." *See* Obj. at 26:7-29:13. Perfect 10 does not dispute the substance of the proposed order in any material part. *See* Proposed Order at 18:1- 27:21. For instance, Perfect 10 does not dispute that Ms. Poblete and Ms. Augustine intentionally violated the Court's Order, withholding documents and failing to provide a privilege log. *See* Obj. at 27:8-10, 28:23-25. Nor does Perfect 10 dispute that Ms. Poblete and Ms. Augustine failed to submit any new declarations establishing compliance. Instead, Perfect 10 contends that their original declarations "respond to and rebut Defendants' 'factual analysis and evidence'" even though these very declarations established their noncompliance and intentional violations of the Court's order. *See* Obj. at 28:9-13, 29:9-13. Perfect 10 also does not dispute that Ms. Poblete and Ms. Augustine gave false deposition testimony that their later-produced documents contradicted. *See* Obj. at 27:20-24. Further, Mr. Benink's efforts after the compliance deadline do not establish the "impossibility" of

---

[6] In fact, at the conference for this motion, Mr. Zada stated incorrectly that Perfect 10 *had* produced a privilege log. Gregorian Decl. at ¶ 15, Ex. 11 [Jul. 14, 2014 Conference Transcript] at 5.

DEFENDANTS' RESPONSE TO OBJECTIONS TO [PROPOSED] FURTHER AMENDED ORDER

13

CASE NO. 11-cv-07098-AB (SHx)

compliance (*see* Obj. at 29:17-28), particularly as Mr. Benink was unable to articulate the nature of the supposed burden or to propose any solutions. *See* Supp. Gregorian Decl. at ¶¶ 35-36; Gregorian Decl. at ¶¶ 9-12, Exs. 7-9; Nercessian Decl., Ex. A [Jan. 26, 2015 Sanctions Hearing Tx.] at 63:13-64:25, 69:8-70:4. Finally, neither Perfect 10, Ms. Poblete, nor Ms. Augustine, ever affirmatively moved the Court for relief from the Order, as was their duty if they truly could not comply. Instead, they simply decided to cease their compliance efforts and ignore the Court's order, yet they now shamelessly argue that they should not be sanctioned for the willful disregard of this Court's authority.

## VI. CONCLUSION

None of Perfect 10's objections dispute the findings in Defendants' proposed order, nor do they excuse Perfect 10's admitted non-compliance. The Court should overrule Perfect 10's objections in their entirety, and adopt the proposed order in whole or part as it considers appropriate.

Dated: February 3, 2015                FENWICK & WEST LLP

                                       By: */s/ Andrew P. Bridges*
                                           Andrew P. Bridges

                                       Attorneys for Defendants
                                       GIGANEWS, INC., and
                                       LIVEWIRE SERVICES, INC.