1

2

3

4

5

6

7

8

9          UNITED STATES DISTRICT COURT

10         CENTRAL DISTRICT OF CALIFORNIA

11              WESTERN DIVISION

12   PERFECT 10, INC., a California          Case No.: 11-cv-07098-AB (SHx)
     corporation,
13                                           **DISCOVERY MATTER**
                    Plaintiff,               *Before Hon. Stephen J. Hillman*
14
           v.                                **FURTHER INTERIM FINDINGS
15                                           RE DEFENDANTS GIGANEWS,
     GIGANEWS, INC., a Texas Corporation;    INC. AND LIVEWIRE SERVICES,
16   LIVEWIRE SERVICES, INC., a Nevada       INC.'S MOTION FOR SANCTIONS
     corporation; and DOES 1 through 100,    (DKT. 356 AND 388)**
17   inclusive,

18                  Defendants.

19   ─────────────────────────────
     GIGANEWS, INC., a Texas Corporation;
20   LIVEWIRE SERVICES, INC., a Nevada
     Corporation,
21
                    Counterclaimants,
22
           v.
23   PERFECT 10, INC., a California
     Corporation,
24
                    Counterdefendant.
25
26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Before the Court is Giganews, Inc. and Livewire Services, Inc.'s motion for sanctions (Dkt. 356 and 388).  The Court has considered the motion, papers, arguments, and the proceedings in this Court.  For good cause appearing therefor, the Court hereby issues these interim Findings.  Plaintiff's Objections (Doc. 656) are overruled.

## I.   **FINDINGS OF FACT**

The Court finds that the record establishes the following facts:

### **SUMMARY OF FINDINGS**

- Perfect 10 failed to comply with this Court's discovery orders of March 17, 2014 (Dkt. 223), April 24, 2014 (Dkt. 254); June 5, 2104 (Dkt. 311); and June 23, 2014 (Dkt. 326).

- Perfect 10-affiliated witnesses—Melanie Poblete, Wendy Augustine, Sean Chumura, Szabolcs Apai, Jennifer McCall, and Eileen Koch—represented by Perfect 10's counsel, failed to comply with this Court's the June 5, 2014 Order (Dkt. 312) (the "Third-Party Witness Compliance Order") and the July 8, 2014 Order (Dkt. 342) (the "Second Amended Order").[1]

- Perfect 10-affiliated witness Craig Yamato, represented by Perfect 10's counsel, failed to comply with this Court's June 18, 2014 Order (Dkt. 320) (the "Yamato Order") and June 20, 2014 Order (Dkt. 322) (the "Amended Yamato Order").

- Perfect 10 and its attorneys improperly interfered with Mike Saz's response to Defendants' subpoena.

- Under the guidance and direction of their attorneys, Perfect 10 and each of its affiliated witnesses willfully violated this Court's orders

---

[1]   In deciding this order, the Court stated that "[s]anctions are deferred until there is full compliance with this Order."  Dkt. 342 at 6, ¶9.

1

**March 17, 2014 Order (Dkt. 223)**

- On January 31, 2014, Defendants moved to compel production of documents responsive to their First Set of Requests for Production.  Dkt. 182.  Among other things, Defendants' First Set of Requests for Production included requests seeking the production of Perfect 10's communications with third parties about Defendants (RFP No. 1), as well as Perfect 10's communications relating to its infringement claims (RFP No. 2).  Dkt. 182-3.

- On March 17, 2014, the Court revised RFP Nos. 1 and 2 of Defendants' First Set of Requests for Production, ordering responses and production of documents responsive to the modified requests.  Dkt. 223.  In particular, for RFP No. 2 (as modified), the Court ordered Perfect 10 to provide a list of all businesses, entities, and websites that it has accused of infringing upon its copyrights since January 1, 2000.

**April 24, 2014 Order (Dkt. 254)**

- On April 7, 2014, Defendants moved to compel production of documents responsive to RFP Nos. 4-20, 23-68, 70-78 of Defendants' Second Set of Requests for Production and responses to Interrogatory Nos. 1-6 to Livewire's First Set of Interrogatories.  Dkt. 234.

- Defendants' Second Set of Requests for Production included requests for documents concerning damages to Perfect 10 as a result of any action from Defendants (RFP No. 5); documents relating to Usenet subscriptions, IP addresses, and email addresses for employees, contractors and affiliates (RFP Nos. 6, 8, 9); documents from prior litigations and proceedings, including expert materials and complaints (RFP Nos. 10-15, 55); licenses, contracts, assignment agreements and other transactional documents relating to the Works-At-Issue (RFP Nos. 19-20, 23); evidence of direct infringement (RFP Nos. 24-29, 38, 39, 41);

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

evidence of indirect infringement (RFP Nos. 30-35); information about the Perfect 10 website relevant to damages (RFP Nos. 44-46, 48, 51-54); settlement agreements (RFP No. 57); and documents and communications about Mr. Zada's background (RFP Nos. 66-68, 76, 78). *See* Dkt. 389 [Gregorian Decl. ISO Motion for Sanctions], Ex. 12 [Perfect 10's Amended Responses to Defendants' Second Set of Requests for Production].

▪ Livewire's First Set of Interrogatories included requests that Perfect 10 identify all allegedly infringing URLs (Interrogatory No. 1); all email addresses and IP addresses for employees, contractors and affiliates (Interrogatory Nos. 2 and 4, respectively); Message-IDs for all allegedly infringing Usenet messages (Interrogatory No. 5); and all advertising and promotion for Perfect 10 products (Interrogatory No. 6). *See* Gregorian Decl., Ex. 30 [Perfect 10's Supplemental Responses to Livewire's First Set of Interrogatories].

▪ On April 24, 2014, the Court granted Defendants' motion to compel in substantial part, issuing an order directing Perfect 10 to comply with five interrogatories and sixty-seven document requests. Dkt. 254. In this regard, the Court ordered Perfect 10:

  o to identify all allegedly infringing URLs;

  o to identify by Message-ID all allegedly infringing Usenet messages;

  o to identify all advertising and promotion of Perfect 10's product since January 1, 2008;

  o to identify all IP addresses and email addresses used by Perfect 10 or Persons acting at its direction or under its control during the time period alleged in the complaint (and to produce document sufficient to show all such addresses);

- o to produce all ownership documents, including copyright registrations, documents sufficient to identify the author and photographer of every work in the case, and materials regarding licensing or assignment;
- o to produce all evidence of direct and indirect infringement;
- o to produce information about the Perfect 10 website, including server logs and documents sufficient to determine metrics about website usage (i.e. total number of visits, total number of unique visitors, number of paid subscribers);
- o to produce documents from past Perfect 10 litigations, in all deposition transcripts, declarations, expert reports, settlement agreements, and complaints.

- ▪ In its April 24, 2014 Order, the Court set as a deadline for compliance the close of fact discovery on June 30, 2014, but directed that "Plaintiff shall commence to respond to each Interrogatory and Document Request on a rolling basis forthwith." Dkt. 254 at 5.

### June 5, 2104 Order (Dkt. 311)

- ▪ On May 17, 2014, Defendants moved to compel Perfect 10 to comply with the Court's Order of March 17, 2014 (Dkt. No. 223) ordering responses and production of documents responsive to RFP Nos. 1 and 2 (as modified); to provide responses to interrogatories (Interrogatory No. 1 to Giganews's First Set of Interrogatories; Interrogatory No. 2 to Giganews's Second Set of Interrogatories; and Interrogatory Nos. 7-12 of Livewire's Second Set of Interrogatories); and to produce documents responsive to RFP Nos. 81-87 of Defendants' Third Set of Requests for Production. Dkt. 259.
  - o Interrogatory No. 1 of Giganews's First Set of Interrogatories requested that Perfect 10 state the date it first anticipated litigation against Giganews. *See* Dkt. 389 [Gregorian Decl.], Ex. 33

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

[Perfect 10's Supplemental Responses to Giganews' First Set of Interrogatories].

o   Interrogatory No. 2 of Giganews's Second Set of Interrogatories requested that Perfect 10 identify those images that had never appeared on any websites that Perfect 10 has owned or operated. *See* Dkt. 389 [Gregorian Decl.], Ex. 34 [Perfect 10's Supplemental Responses to Giganews' Second Set of Interrogatories].

o   Livewire's Second Set of Interrogatories requested that Perfect 10 identify its current and former employees, webmasters, and independent contractors (Interrogatory Nos. 7-9); that it provide information about destruction or spoliation of documents (Interrogatory Nos. 10 and 11); and that it identify all business and social relationship between Mr. Zada and declarants in this or related lawsuits (Interrogatory No. 12). *Id.*, Ex. 32 [Perfect 10's Supplemental Responses to Livewire's Second Set of Interrogatories].

o   Defendants' Third Set of Requests for Production included requests for documents and communications with specific third-parties (*i.e.* Sheena Chou, Daniel Cooper, Visa, MasterCard, and Google) concerning Defendants. *Id.*, Ex. 13 [Perfect 10's Amended Responses to Defendants' Third Set of Requests for Production].

▪ On June 5, 2014, the Court granted Defendants' motion in substantial part. The Court ordered Perfect 10 to comply with its Court's Order of March 17, 2014 (Dkt. No. 223), overruling all of Perfect 10's "objections in their entirety." Dkt. 311 at 1. The Court's order directed Perfect 10 to comply with another five interrogatories and seven document requests, making certain allowances for allegedly privileged matter. Dkt. 311 at 3-4.

### June 23, 2014 Order (Dkt. 326)

- On June 9, 2014, Defendants moved to compel Perfect 10 to respond to Interrogatory Nos. 3-6, 10, 13, and 14, of Giganews' Third Set of Interrogatories to Perfect 10.  Dkt. 313.

- The relevant portions of Giganews' Third Set of Interrogatories included requests that Perfect 10 identify by Message-ID all Usenet messages that it contends Defendants failed to remove (Interrogatory Nos. 3 and 13) and any Usenet messages it posted (Interrogatory No. 5); that it identify all alleged infringers (Interrogatory No. 10); and that it identify all circumstances of Defendants' uploading to Usenet of any messages that infringe Perfect 10 copyrights (Interrogatory No. 14).  *See* Dkt. 389 [Gregorian Decl.], Ex. 35 [Perfect 10's Supplemental Responses to Giganews' Third Set of Interrogatories].

- On June 24, 2014, the Court granted this motion in substantial part, ordering that Perfect 10 respond to Interrogatory Nos. 3, 4, 5, 10, 13, and 14, subject to certain limitations.  Dkt. 326.

### Defendants' Efforts to Secure Compliance

The Court now finds that the record establishes the following facts:

- As of one month after this Court's April 24, 2014 Order (Dkt. 254), Perfect 10 had still not produced any documents in response to the Court's Order.  Defendants therefore sought to meet and confer regarding Perfect 10's compliance with the Court's Order.  Dkt. 389 [Gregorian Decl.], Ex. 2 [May 23, 2014 letter from Gregorian to Davis].

- Counsel for Perfect 10 responded by making certain documents available for inspection and copying in Los Angeles at Defendants' expense.  Defendants again requested a conference regarding Perfect 10's noncompliance with the April 24, 2014 Order (Dkt. 254).  *Id.*, Ex. 3

Fenwick & West LLP
Attorneys at Law
San Francisco

[May 23, 2014 through May 30, 2014 email exchange between Gregorian to Davis].

▪ On June 2, 2014, the parties conducted a telephonic conference pursuant to Local Rule 37-1 to discuss Perfect 10's noncompliance with the Court's April 24, 2014 Order (Dkt. 254).  Perfect 10 represented that:

    o Perfect 10 would supplement its responses to Livewire's Interrogatory Nos.1, 2 and 4 on June 10;

    o Perfect 10 would provide supplementary responses to Livewire's Interrogatory Nos. 3 (spreadsheet of Works-At-Issue), 5 (identity of Usenet messages by Message-ID), and 6 (identity of all Perfect 10 advertising and promotion) by the close of discovery;

    o Perfect 10's May 27 production, June 3 inspection, and its anticipated June 10 production would substantially complete Perfect 10's production with respect to RFP Nos. 6-20, 23, 24, 42, 46-55, 57, 62, 65, 74, and 76-78; and

    o Perfect 10 would comply with all remaining requests by the June 30 discovery deadline.  Dkt. 389 [Gregorian Decl.], Ex. 4 [transcription of June 2, 2014 telephonic conference].

▪ On June 13, 2014, Perfect 10 produced a number of files appearing in subfolders labeled "binheader."  These subfolders appeared to contain copies of Usenet message bodies without corresponding header information.  *Id*. at ¶7; Dkt. 394 [Tran Decl.] at ¶¶17-18.

▪ On July 2, 2014, Defendants' counsel sent an email to Perfect 10's counsel requesting a privilege log and another Local Rule 37-1 conference about deficiencies in Perfect 10's compliance with the Court's Orders. *Id*., Ex. 5 [July 2, 2014 email from Gregorian to Perfect 10's counsel].

▪ In response to Defendants' July 2, 2014 email, one of Perfect 10's counsel, Mr. Benink, sent a letter requesting a conference to address only

7

Melanie Poblete's and Wendy Augustine's failure to comply with the Court's June 5, 2014 Order (Dkt. 312).  *Id*., Ex. 6 [July 2, 2014 letter from Benink to Gregorian].

▪ On July 7, 2014, the parties conducted a Local Rule 37-1 conference, at which Mr. Benink requested that Defendants agree to modify the Court's June 5, 2014 Order.  Counsel for Perfect 10 offered no proposals, stating that Defendants "bear the burden" to make a proposal.  When asked, however, Mr. Benink did not know what actual undue burden the Order placed on Ms. Poblete and Ms. Augustine, and he could not identify what part of the Order created the supposed burden.  Dkt. 389 [Gregorian Decl.] at ¶10.  After the call, on July 8, 2014, Defendants' counsel sent Perfect 10's counsel a letter explaining why Defendants would not accept this request.  Defendants' counsel also requested a definite date for Ms. Poblete and Ms. Augustine's full compliance with the Court's June 5, 2014 Order, as well as their re-deposition at Perfect 10's expense.  *Id*., Ex. 7 [July 8, 2014 letter from Gregorian to Benink].

▪ In response to the July 8, 2014 letter, Mr. Benink sent an email accusing Defendants' counsel of mischaracterizing his statements at the July 8, 2014 conference.  The email stated that Mr. Benink would "respond formally in due course."  *Id*., Ex. 8 [July 8, 2014 email from Benink to Gregorian].  Perfect 10's counsel never provided any further response addressing Defendants' concerns.  *Id*. at ¶11.

▪ Over one week later, Mr. Benink emailed Defendants' counsel to offer follow-on depositions of Ms. Poblete and Ms. Augustine.  *Id*., Ex. 9 [July 16, 2014 email from Benink to Gregorian].  Perfect 10's counsel did not represent that Ms. Poblete and Ms. Augustine would comply with the Court's June 5, 2014 Order, nor did he provide a definite date for full compliance.  Perfect 10's counsel also failed to mention either

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

Ms. Poblete and Ms. Augustine's missing privilege logs or the 20,000 additional documents he had estimated they withheld from production and that Defendants have still not received. The offer also required that Defendants take the additional depositions at their own further expense. Dkt. 389 [Gregorian Decl.] at ¶12.

- Another of Perfect 10's counsel, David Schultz, also replied to the July 2, 2014 email of Defendants' counsel. Mr. Schultz insisted that Perfect 10 would not participate in a Local Rule 37 conference until Defendants first identified to him in writing every violation of every Court order that Perfect 10 and its affiliated witnesses committed. Ultimately, Mr. Schultz agreed to participate in a conference under protest. *Id*., Ex. 10 [July 2 through July 10, 2014 email exchange between Gregorian and Schultz].

- On July 14, 2014, the parties conducted a third Local Rule 37-1 conference addressing the deficiencies in Perfect 10's compliance with all of the Court's past discovery orders. Counsel for Perfect 10 were not prepared to address whether Perfect 10 would produce a privilege log, a subject Defendants had identified in writing in their July 2 email.

**1.      Perfect 10 Failed to Comply Fully With the Court's Orders**.

Regarding Perfect 10, the Court now finds that the record establishes the following facts:

**Violations of the March 17, 2014 Order (Dkt. 223)**

- Perfect 10 did not produce its internal email communications until the close of fact discovery on June 30, 2014. That email production omitted attachments from at least sixty emails that Perfect 10 produced. Dkt. 389 [Gregorian Decl.] at ¶23; *see also id*., Ex. 16 [list of emails with missing attachments].

- In its email production, Perfect 10 also failed to produce its copies of certain responsive emails and attachments that third parties either

9

produced or identified in their productions.  In particular, Perfect 10 withheld from its production an email suggesting Mr. Chumura deleted twenty-one Perfect 10 email accounts shortly before this lawsuit was filed. Perfect 10 produced virtually no emails from these email addresses. Dkt. 389 [Gregorian Decl.] at ¶24.

- Perfect 10 failed to produce any emails from certain addresses identified in its supplemental response to Livewire's Interrogatory No. 2.  *Id.* at ¶25.

- Perfect 10 omitted several businesses that Perfect 10 has previously accused of infringement from its supplemental response to RFP No. 2. *Id.*, Ex. 14 [list of deficiencies in Perfect 10's document production and its responses to Defendants' document requests] at 2.  Perfect 10's response also misleadingly identifies website domains instead of the *business* or *entity* that Perfect 10 actually accused.  *Id.*

## Violations of the April 24, 2014 Order (Dkt. 254)

- Perfect 10 failed to identify by URL all Defendants' World Wide Web pages that have contained material that allegedly infringes Perfect 10's copyrights.  Dkt. 389 [Gregorian Decl.], Ex. 31 [Perfect 10's Supp. Responses to Livewire's First Set of Interrogatories] at 4-5, Ex. 35 [chart of deficiencies in Perfect 10's interrogatory responses] at 1.

- Perfect 10 failed to identify all IP addresses used by Perfect 10, its employees or others acting at its direction for the time period alleged in the Complaint, up to the date of the response to this Interrogatory.  *Id.*, Ex. 31 [Perfect 10's Supp. Responses to Livewire's First Set of Interrogatories] at 7; Ex. 35 [chart of deficiencies in Perfect 10's interrogatory responses] at 3; *see also* Gregorian Decl. at ¶51; Dkt. 394 [Tran Decl.] at ¶¶13-15.

- Perfect 10 failed to identify all allegedly infringing Usenet message by Message-ID.  In particular, Perfect 10 failed to produce one complete

Fenwick & West LLP
Attorneys at Law
San Francisco

10

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

reproduction of each allegedly infringing Usenet message including the full set of message headers and the message body.  Dkt 389 [Gregorian Decl.] at ¶¶52-55; *see also id.*, Ex. 35 [chart of deficiencies in Perfect 10's interrogatory responses] at 4; Dkt. 424 [Supp. Gregorian Decl.] at ¶¶2-11.

- Perfect 10 served Defendants an incomplete production of deposition and expert materials.  Dkt. 389 [Gregorian Decl.] at ¶28; *see also id.*, Ex. 19 [list of missing deposition and expert materials].

- Perfect 10 failed to produce any deposition transcripts for thirty of its earlier lawsuits.  While some of Perfect 10's thirty lawsuits may not have involved depositions, Perfect 10 has not identified them.  *Id.* at ¶29.

- Perfect 10 failed to produce any expert reports for thirty-three of its earlier lawsuits.  While some of those prior lawsuits might not have involved preparation of expert reports, Perfect 10 has not indicated that there were none.  *Id.* at ¶30.

- Perfect 10 failed to produce its complaints from all its earlier lawsuits.  *Id.* at ¶31.

- Perfect 10 also failed to produce its settlement agreements from earlier lawsuits, including some of the settlement agreements that Mr. Zada relied upon for his damages opinion.  *Id.* at ¶32, Ex. 20; Dkt. 356.3 [Zada Decl.] at ¶18.

- Perfect 10 failed to produce about two hundred declarations from in its earlier lawsuits.  Dkt. 389 [Gregorian Decl.] at ¶26; *see also id.*, Ex. 17 [list of missing declarations].

- Perfect 10 failed to produce any evidence supporting its claim of direct infringement.  *Id.*, Ex. 14 [chart of deficiencies in Perfect 10's document production] at RFP Nos. 24-29, 38, 39, 41; *see also* Gregorian Decl. at ¶59, Ex. 47 [single page of "P-MEGA"  production discussing Giganews].

11

- Perfect 10 failed to produce any evidence supporting its claim of indirect infringement.  Dkt. 389 [Gregorian Decl.], Ex. 14 [chart of deficiencies in Perfect 10's document production] at RFP Nos. 31-35.

- Perfect 10 failed to produce analytics or metrics regarding usage of Perfect 10's websites.  *Id*. at ¶¶33-36, Exs. 21-26; *see also id*., Ex. 14 [chart of deficiencies in Perfect 10's document production] at RFP Nos. 44-46, 48, 51-54.  Also, Perfect 10 production of server logs is incomplete, omitting over a year's worth of data.  *Id*. at ¶33.

### **Violations of the June 5, 2014 Order (Dkt. 311)**

- Perfect 10 failed to identify the images it asserts Defendants have infringed but that have never appeared on Perfect 10's websites, as well as of any asserted infringements.  Dkt. 389 [Gregorian Decl.], Ex. 34 [Perfect 10's Supp. Responses to Giganews' Second Set of Interrogatories] at 6-357; Ex. 35 [chart of deficiencies in Perfect 10's interrogatory responses] at 6.

- Perfect 10 failed to identify all documents that Perfect 10 destroyed, recycled, gave away, discarded, or otherwise disposed of between January 1, 2009 and the present.  Dkt. 395 [Belichick Decl.] at ¶51, Ex. 46; Dkt. 389 [Gregorian Decl.], Ex. 35 [chart of deficiencies in Perfect 10's interrogatory responses] at 7.

- Perfect 10 failed to identify all business and social relationships between Norman Zada and every declarant in support of Perfect 10 in this Action. Dkt. 389 [Gregorian Decl.], Ex. 33 [Perfect 10's Supp. Responses to Livewire's Second Set of Interrogatories] at 8-9; Ex. 35 [chart of deficiencies in Perfect 10's interrogatory responses] at 7; *see also id*. at ¶¶57-58.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

### Violations of the June 23, 2014 (Dkt. 326)

- Perfect 10's response to Giganews Interrogatory No. 4 fails to identify all accounts that Perfect 10 and its affiliates opened or used on Defendants' Usenet access services.  Dkt. 389 [Gregorian Decl.], Ex. 35 [chart of deficiencies in Perfect 10's interrogatory responses] at 8.  Perfect 10's response pursuant to Fed. R. Civ. P. 33(d) is also deficient because the documents Perfect 10 identifies are substantially nonresponsive.  *Id.*

- Perfect 10's response to Giganews Interrogatory No. 10 fails to identify any infringers whose alleged conduct would support a direct infringement claim against Defendants.  *Id.*, Ex. 35 [chart of deficiencies in Perfect 10's interrogatory responses] at 9.  Perfect 10's response pursuant to Fed. R. Civ. P. 33(d) is also deficient because it fails to identify the documents from which Defendants may derive an answer.  *Id.*

- Perfect 10's response to Giganews Interrogatory No. 13 contradicts Perfect 10's prior representations to the Court that it would be unable to provide a narrative response to this interrogatory.  *Id.*, Ex. 35 [chart of deficiencies in Perfect 10's interrogatory responses] at 10.

### Other Misconduct and Discovery Noncompliance

- Before filing suit, Perfect 10 deleted email accounts that likely contained responsive documents.  Dkt. 356.3 [Zada Decl.] ¶14.

- Perfect 10 served Defendants an incomplete production of its Image Library.  Dkt. 389 [Gregorian Decl.] at ¶27; *see also id.*, Ex. 18 [list of missing directories].

- Despite withholding documents on the basis of privilege, Perfect 10 never furnished any privilege log to Defendants.  Dkt. 389 [Gregorian Decl.] at ¶¶37-39; Dkt. 424 [Supp. Gregorian Decl.] at ¶¶26-30.

**Perfect 10 Admitted or Conceded Many of its Failures and the**

**Perfect 10-Affiliated Witnesses Failed to Submit Any New Declarations**

- Perfect 10 admitted, either expressly or through silence, many of the compliance failures identified in the motion for sanctions.  Dkt. 425 [Supp. Memo. ISO Motion for Sanctions] at 1-3 (including evidentiary citations).

- After Defendants and Perfect 10 and its affiliated witnesses filed the Joint Stipulation and all evidence regarding Defendants' motion for sanctions (Dkt. 388), Perfect 10 and its affiliated witnesses failed to file any supplemental memorandum or additional evidence as allowed by Civil Local Rule 37-2.3.  *See* Dkt. 427 [Supp. Belichick Decl.] at 1-50, Exs. A and B thereto; Dkt. 424 [Supp. Gregorian Decl.] at 1-10, Exs. 1-13 thereto.

- None of the Perfect 10-affiliated witnesses filed a new declaration in opposition to Defendants' sanctions motion that responded to or rebutted any of Defendants' factual analysis and supporting evidence.  *See id.*

**Facts the Court Previously Found Regarding the**

**Perfect 10-Affiliated Witnesses' Discovery Noncompliance**

In the Second Amended Order (Dkt. 342), the Court found the following facts regarding the Perfect 10-afilliated witnesses— Melanie Poblete, Wendy Augustine, Szabolcs Apai, Sean Chumura, Eileen Koch, and Jennifer McCall:

- On March 31, Defendants served third-party witnesses Gwendalyn Augustine, Jennifer McCall, and Sean Chumura with subpoenas to produce documents and information, commanding the production of all documents by April 15, 2014.  Dkt. 342 at 2.

- On April 1, 2014, Defendants served third-party witnesses Melanie Poblete, Szabolcs Apai, and Eileen Koch with subpoenas to produce

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

documents and information, commanding the production of all requested documents by April 15, 2014.  Dkt. 342.

▪ On April 14, 2014, counsel for Plaintiff Perfect 10, Inc. served objections and responses to the document subpoenas on behalf of Plaintiff and Ms. Poblete, Mr. Apai, Ms. Koch, Ms. Augustine, Ms. McCall, and Mr. Chumura (collectively, the "Subpoenaed Witnesses").  *Id*.

▪ None of the Subpoenaed Witnesses produced any of the requested documents to Defendants by the due date of April 15, 2014.  *Id*.

▪ On April 17, 2014, Defendants deposed Mr. Chumura who, admitted that he has had documents in his possession that are responsive to Defendants subpoena, but that he had not yet found them.  Although a number of Defendants' document requests to Mr. Chumura concerned his financial dealing with Perfect 10 and Norman Zada, Mr. Chumura admitted not searching for the requested documents.  Mr. Chumura said that his search for responsive documents was ongoing.  Dkt. 342 at 2.

▪ On April 18, 2014, Defendants sent a letter to counsel for Plaintiff and the Subpoenaed Witnesses that identified each issue and/or discovery request in dispute regarding the Subpoenaed Witnesses, as required by L.R. 37-1, further requesting a meet-and-confer by telephone to discuss the discovery disputes.  *Id*.

▪ On April 23, 2014, Defendants deposed Ms. Poblete who admitted that she did not perform any "fresh search" for documents in response to the Defendants' subpoena and that she is not aware of anyone else performing a search for documents in response to the subpoena.  *Id*. at 2-3.

▪ On April 25, 2014, Defendants deposed Mr. Apai, who admitted that he had not searched all of his email accounts for responsive documents. Mr. Apai also testified that he deleted all of his emails in his Hotmail email account a few months ago, in January or February 2014, and did not

do anything to try to retrieve them.  Mr. Apai further admitted that he did not search his Hotmail email account or his G-mail email account or for "Giganews" or "Livewire" as Defendants' subpoena requested.  Finally, Mr. Apai testified that he was willing to do further searches of his email accounts in response to the subpoena.  Dkt. 342 at 3.

- On or about April 24, 2014 and May 7, 2014, Defendants received some documents from Ms. Augustine and Ms. McCall, respectively.  *Id.*

- On April 28, 2014, counsel for Defendants, Plaintiff, and the Subpoenaed Witnesses conducted a meet-and-confer conference by telephone regarding the April 18, 2014 letter.  Defendants, Plaintiff, and the Subpoenaed Witnesses reached a number of agreements concerning the Subpoenaed Witnesses' compliance efforts, including among other things, that:  (1) they would search for responsive documents using reasonable search terms; (2) they would provide details of the searches performed; and (3) they would reconsider their objections in light of the Court's other discovery orders on the same topics.  Dkt. 342 at 3.

- Following the conference, the Subpoenaed Witnesses did not fully comply with these agreements.  *Id.*

- On May 12, 2014, Defendants sent the Subpoenaed Witnesses and Perfect 10 a stipulation and proposed order to address the Subpoenaed Witnesses' discovery noncompliance, to which they did not agree.  *Id.*

- The Court found that Defendants had sufficiently established the right to compel further discovery responses and documents from the Subpoenaed Witnesses.  *Id.* at 3-4.

- In deciding this order, the Court stated that "[s]anctions are deferred until there is full compliance with this Order."  Dkt. 342 at 6, ¶9.

### 2. Melanie Poblete (Perfect 10 Employee) Failed to Fully Comply With the Court's Orders.

Regarding Ms. Poblete, the Court now finds that the record establishes the following facts:

- Melanie Poblete is Perfect 10's only full time employee other than Mr. Zada, she lives at Mr. Zada's home address, and she is Norm Zada's right-hand person in this litigation.   Dkt. 395 [Belichick Decl.] at ¶72, Ex. 68 [Poblete Decl.] at 1-11, ¶¶2, 7, 14, 17-19.

- Perfect 10's counsel represented Ms. Poblete in these discovery matters.

- On June 30, 2014, Ms. Poblete served supplemental responses and a declaration admitting her noncompliance with the Second Amended Order. *Id*. at ¶71, Ex. 67 [Poblete Supplemental Responses], at ¶72, Ex. 68 [Poblete Decl.] at 1-6.

- Ms. Poblete admitted that she did not begin her compliance efforts until June 16, 2014, just two weeks before the compliance deadline.  Belichick Decl. at ¶72, Ex. 68 at 3, ¶7.  Instead of using a qualified eDiscovery vendor, Ms. Poblete collected her electronic data herself, which took a number of days. *Id*. at 4-5, ¶¶8-11.

- In her declaration, Ms. Poblete stated that at some unspecified point in time she concluded (with Mr. Benink) that they needed to hire a qualified litigation support service vendor to assist them with their compliance efforts. *Id*.

- Ms. Poblete has refused to produce "all non-privileged documents," instead  withholding documents that she admitted were responsive to the required search terms but that she said "have nothing to do with Perfect 10, Norman Zada, [her] work as a paralegal, the Usenet, or any of the defendants in the case."  Dkt. 342 [Second Amended Order] at 4, ¶2; Belichick Decl. at ¶72, Ex. 68 [Poblete Decl.] at 5, ¶12.

Fenwick & West LLP
Attorneys at Law
San Francisco

- Ms. Poblete admitted that in 2012, after Perfect 10 filed its lawsuit against Defendants, Ms. Poblete gave her personal laptop away without keeping a backup of her electronic files.  Dkt. 395 [Belichick Decl.] at ¶72, Ex. 68 [Poblete Decl.] at ¶6.  She also failed to list and search the Perfect 10 laptop computer that she admitted at her deposition that she used while traveling for Perfect 10 business.  *Id*. at ¶74, Ex. 70 [Poblete Depo. Trans.] at 126-127.

- Ms. Poblete did not search all of her electronic media and email accounts using the search terms that the Court ordered.  Belichick Decl. at ¶72, Ex. 68 at 1-3, ¶¶4-6.

- Ms. Poblete claimed that a significant percentage of her responsive emails were protected from disclosure based on privilege or work product. *Id*. at 5, ¶11 ("It is my understanding that Eric Benink and other attorneys would be reviewing my documents to determine whether they are attorney-client privileged.").  But she failed to serve any privilege log by June 30, 2014 or at all, thus waiving any objections based on privilege or work product.

- On June 30, 2014, Ms. Poblete produced a small number of financial documents and emails from her melanie@mausnerlaw.com, melanie@melaniegracestyle.com,  and gracemelly@live.com email accounts, but failed to serve a privilege log for all withheld documents. Belichick Decl. at ¶71.

- In her declaration, Ms. Poblete stated:  "I forwarded my nine .pst files to Erik Benink to turn over for searching by a third-party vendor."  Belichick Decl. at ¶72, Ex. 68 [Augustine Decl.] at ¶13.  Defendants, however, did not receive any of Ms. Poblete's responsive emails or any privilege log for all of the documents that Mr. Benink apparently withheld from production.

Fenwick & West LLP
Attorneys at Law
San Francisco

18

- Mr. Benink admits that Ms. Poblete failed to comply with the Second Amended Order by the compliance deadline.  Dkt. 395 [Belichick Decl.] at ¶66, Ex. 63 [Benink Decl.] at 1, 4, ¶¶4 and [14].

- Ms. Poblete admitted, contrary to her sworn deposition testimony, that Mr. Zada invested in a business that she founded and ran with a partner. *Id*. at ¶15; *see also* Belichick Decl. at ¶73, Ex. 69 [True Colors Lingerie Investor Agreement]; Ex. 70 [April 23, 2014 Poblete Depo. Trans.] at 245-246 (testifying that "we don't have anything where we both invested into something" and that she does not have any business relationship with Mr. Zada apart from Perfect 10).

- Ms. Poblete admitted, again contrary to her sworn deposition testimony, that she receives $2,000 a month in cash directly from Mr. Zada. Belichick Decl. at ¶72, Ex. 68 [Poblete Decl.] at ¶19, Ex. 70 [April 23, 2014 Poblete Depo. Trans.] at 73-75 (testifying that she receives a salary of under $60,000 from Perfect 10 after she took a pay cut from her previous salary of around $80,000).  Although Ms. Poblete provided extensive corrections to her deposition transcript, she did not correct any of her testimony regarding her compensation, even though Defendants previously noted this serious discrepancy. *See* Dkt. 307 at 70.  Mr. Zada testified that Ms. Poblete demanded this change to her compensation so that she could receive cash payments.  *Id*. at ¶77, Ex. 73 [April 25, 2014 Zada Depo. Trans.] at 337:23-340:4.

- Ms. Poblete also made a late production of other documents that conflicted with her deposition testimony, which Defendants could have used at her deposition had she timely produced them.  For example, Ms. Poblete's June 30 production included a March 26, 2009 email (which Perfect 10 failed to produce) concerning use of certain Usenet access sites, which identifies the Perfect 10 personnel likely investigating

19

on Usenet, including Inna Khusid, Jennifer McCall, Gwendalyn
Augustine, Sean Chumura, and Norman Zada.  Belichick Decl. at ¶78,
Ex. 74.  As noted below, Ms. Augustine testified that she did not even
know what Usenet is.  Dkt. 395 [Belichick Decl.] at ¶68, Ex. 65 [June 24,
2014 Augustine Depo. Trans.] at 88:1-15, 284:8-24.

- Other emails show that Mr. Zada instructed Ms. Poblete to prepare
DMCA notices in a specific style, when Ms. Poblete testified at her
deposition that she did not draft Perfect 10's DMCA notices.  Belichick
Decl. at ¶74, Ex. 70 [April 23, 2014 Poblete Depo. Trans.] at 178:4-14.

- Ms. Poblete testified at her deposition that an attorney always instructs her
regarding evidence gathering, but the emails that she produced on the
final day of discovery show that Mr. Zada alone does. *Id*., Ex. 70 at
16:10-23, Ex. 71 (emails showing that Mr. Zada instructed Ms. Poblete to
conduct infringement investigations); *see also id*. at ¶76, Ex. 72 (showing
that *Mr. Zada* instructed Ms. Poblete to conduct infringement
investigations).

- Ms. Poblete produced an email that refers to a "Copyright Chart (for
complaints), which could reflect what works Perfect 10 contends
Defendants have infringed in this case.  Perfect 10 failed to produce this
document even though responsive to Defendant's requests.  Belichick
Decl. at ¶79, Ex. 75.

- Ms. Poblete did not produce all responsive non-privileged documents or
any privilege log as the Court instructed her to do.  Further, Ms. Poblete
never explained what happened to all of her documents that she provided
to Mr. Benink and the third-party vendor.

- Regardless of Perfect 10's assertion of good faith efforts by Ms. Poblete,
Perfect 10 admitted that Ms. Poblete failed to comply fully with the
Court's Order.  Dkt. 395 [Belichick Decl.] at ¶66, Ex. 63 [Benink Decl.]

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

at [14]; *see also* Dkt. 388 [Joint Stip ISO Motion for Sanctions] at 78,80-81 (stating that it was Perfect 10's "intention" to log Ms. Poblete's allegedly privileged documents but admitting it never did so and failed to complete her production of responsive documents, including the failure to produce all non-privileged responsive documents that the Second Amended Order commanded her to produce) .

- Ms. Poblete failed to submit a new declaration in opposition to Defendants' sanctions motion that responded to or rebutted any of Defendants' factual analysis and evidence. *See* Dkt. 427 [Supp. Belichick Decl.] at ¶¶77-84 (discussing Ms. Poblete's noncompliance and misconduct).

3. **Wendy Augustine (Perfect 10 Employee) Failed to Comply Fully Comply With the Court's Orders**.

Regarding Ms. Augustine, the Court now finds that the record establishes the following facts:

- Wendy Augustine has worked off and on as a Perfect 10 employee, participating in acquisition of images and copyrights for Perfect 10 and submission of copyright registrations.  Dkt. 395 [Belichick Decl.] at ¶64, Ex. 61 [Augustine Decl.] at 1-2, 4, ¶¶1, 6, 16, Ex. B thereto.

- Perfect 10's counsel represented Ms. Augustine in these discovery matters.

- Instead of complying with the Second Amended Order by June 30, 2014 as the Court instructed her to do, Ms. Augustine served supplemental responses and a declaration admitting her noncompliance.  Belichick Decl. at ¶63, Ex. 60 [Augustine Supplemental Responses] at 1-15, at ¶64, Ex. 61 [Augustine Decl.] at 1-6.

- On June 30, 2014, Augustine produced a small number of personal emails but failed to produce a privilege log for all documents that she had withheld.  Dkt. 395 [Belichick Decl.] at ¶63.

- Ms. Augustine provided a declaration identifying her electronic media and email accounts, including date ranges of available documents.  *Id*., Ex. 61 at 1-2, ¶¶3-5.  This more detailed declaration shows that the other third-party witnesses' declarations fell well-short of what the Second Amended Order required and that their counsel failed to supervise their discovery efforts and ensure that they complied fully with the Second Amended Order.

- While Ms. Augustine claimed that she spent approximately 50 hours on her compliance efforts, she did not give any details regarding the timing of her compliance efforts.  Her only admission regarding timing concerns was the fact that she sent some of her electronic data to Eric Benink, Perfect 10's attorney, on June 24, 2014, less than a week before the close of fact discovery.  Belichick Decl. at ¶64, Ex. 61 at 2, ¶6, at 3, ¶9.

- Perfect 10 and Ms. Augustine have been aware of Defendants' request for compliance since at least May 12, 2014, when Defendants' provided a Stipulation and Proposed Order in an effort to avoid motion practice. Perfect 10 and the Subpoenaed Witnesses "did not even attempt to negotiate reasonable compromise changes."  Dkt. 301 at 3, 23-24, 42-43, 72.

- Despite the Court's instruction to produce *all non-privileged documents*, Ms. Augustine, under guidance of Perfect 10's counsel, has refused to produce all such documents, intentionally withholding a number of documents responsive to the required search terms that she asserts are "irrelevant and personal."  Belichick Decl. at ¶64, Ex. 61 at 3-4, ¶11.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- Like the other third-party witnesses' belated productions of documents, Ms. Augustine's June 30 production included documents that conflicted with her deposition testimony, which Defendants likely would have used as exhibits at her deposition.  For example, Ms. Augustine produced a December 2013 email from Mr. Zada about a Usenet "project," but she testified at her deposition that she had never heard of Usenet until Defendants served her with a subpoena for documents.  Dkt. 395 [Belichick Decl.] at ¶67, Ex. 64, at ¶68, Ex. 65 [June 24, 2014 Augustine Depo. Trans.] at 88:1-15, 284:8-24.  Other documents would have allowed Defendants to clarify exactly when Ms. Augustine worked for Perfect 10.  *Id*. at ¶69, Ex. 66, at ¶68, Ex. 65 [June 24, 2014 Augustine Depo. Trans.] at 51:2-52:17.  Ms. Augustine also testified that Perfect 10 did not pay her in cash, when documents suggest otherwise.  *Id*. at ¶69, Ex. 66, at ¶68, Ex. 65 [June 24, 2014 Augustine Depo. Trans.] at 14:24-15:2.

- Ms. Augustine claimed that a significant percentage of her responsive emails are protected from disclosure based on privilege or work product.  *Id*., Ex. 61 at 3, ¶10 ("It is my understanding that Eric Benink and other attorneys would be reviewing my documents to determine whether they are attorney-client privileged.").  Nevertheless, she and Perfect 10's counsel failed to serve any privilege log by June 30, 2014, or when she produced additional documents on July 10, 2014, thus waiving any objections based on privilege or work product.

- Although Ms. Augustine admitted that she has used her wendy@perfect10.com account from 2008 to the present, she states that she did not search that account for responsive email.  Belichick Decl. at ¶64, Ex. 61 [Augustine Decl.] at 2, ¶5, at 3, ¶9, at 4, ¶12-14, at 6, ¶¶23, 26.

23

- Based on Perfect 10's June 30 production, which included an email about recovering Ms. Augustine's emails in 2010, all of her emails should have been available for searching and production of responsive documents. Dkt. 395 [Belichick Decl.] at ¶65, Ex. 62.

- Ms. Augustine made at least some efforts to perform manual searches for responsive electronic documents.  Dkt. 342 at 5-6, ¶¶3-5, 7.  Belichick Decl. at ¶64, Ex. 61 [Augustine Decl.] at 4-5, ¶¶13-19.  However, she did not describe performing manual searches regarding Document Requests 1-3.  *Id*. at 4, ¶12.

- Instead, Ms. Augustine claimed that Ms. Poblete "obtained the messages from [the wendy@perfect10.com] account" and [t]hose files were exported to an Outlook .pst file" that Ms. Augustine sent to Mr. Benink on June 24, 2014.  *Id*. at 3, ¶9.

- In her declaration, Ms. Augustine stated:  "I have turned over all of the foregoing documents to Eric Benink for review, searching by the third party service bureau, redaction, and removal and logging of privileged documents."  Belichick Decl. at ¶64, Ex. 61 [Augustine Decl.] at 6, ¶26. Defendants, however, received production of only a dozen wendy@perfect10.com emails from Perfect 10, and none from Ms. Augustine.

- Mr. Benink admitted that Ms. Augustine failed to comply fully with the Second Amended Order by the compliance deadline.  *Id*. at ¶66, Ex. 63 [Benink Decl.] at 1, ¶3, at 4, ¶[14].

- Mr. Benink's declaration described the compliance efforts made by his clients, but it did not state when Ms. Augustine started her compliance efforts.  *Id*., Ex. 63 at 1-4.  One thing is clear:  Mr. Benink did not contact an outside eDiscovery vendor until June 19, 2014 (*id*. at 1, ¶5), despite the fact that Defendants had requested production for months, and the Court

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24

June 2, 2014 Order specifically raised the "possibility of an outside computer expert retained by plaintiff . . . ." Dkt. 295 at 5:3-6. Ms. Augustine never produced all responsive non-privileged documents or a privilege log.

- Mr. Benink's declaration described his compliance efforts leading up to the close of fact discovery, including the efforts of "law clerks" to prepare privilege logs regarding Ms. Augustine's and Ms. Poblete's documents that he withheld from production. Dkt. 395 [Belichick Decl.] at ¶66, Ex. 63 [Benink Decl.] at 1-4, ¶¶4-13. But Mr. Benink failed to serve any such privilege logs by June 30, 2014, and he did not serve any privilege log in connection with Ms. Augustine's untimely production of documents on July 10, 2014. *Id*. at ¶70 (noting that Ms. Augustine produced 220 screenshots of emails from her unitydrmr@yahoo.com account dated from May 2, 2002 through May 20, 2014, but failed to serve any privilege log for documents that she had withheld or any supplemental declaration describing the search methods or terms that Ms. Augustine used to produce such documents).

- Ms. Augustine never produced the wendy@perfect10.com emails that Mr. Benink claimed he was reviewing and processing for production. For example, Mr. Benink's declaration attempted to justify and excuse his clients' failure to comply fully with the Second Amended Order by the June 30, 2014 deadline based on the amount of data, number of responsive emails, and burden of reviewing and logging them. Belichick Decl. at ¶66, Ex. 63 [Benink Decl.] at 1-4, ¶¶3-[14].

- In this regard, he specifically referenced both Ms. Augustine's and Ms. Poblete's perfect10.com emails (*id*. at ¶¶4,12-13), concluding "[t]he review and production of these documents has been extraordinarily challenging" and "[g]iven the staggering volume of documents,

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25

Ms. Poblete and Ms. Augustine have been unable to fully comply, despite their desire to do so." *Id.* at ¶[14]. Having failed to receive any emails from Ms. Augustine's or Ms. Poblete's perfect10.com email accounts, it is unclear whether Mr. Benink (1) changed his mind and decided not to produce any responsive documents from these email accounts or (2) concluded that all such responsive documents are privileged and no privilege log is required.

- Regardless of Perfect 10's assertion of good faith efforts by Ms. Augustine, Perfect 10 admitted that Ms. Augustine failed to comply fully with the Court's Order. Dkt. 395 [Belichick Decl.] at ¶66, Ex. 63 [Benink Decl.] at [14]; *see* also Dkt. 388 [Joint Stip ISO Motion for Sanctions] at 68-71 (stating that it was Perfect 10's "intention" to log Ms. Augustine's allegedly privileged documents but admitting it never did so and failed to complete her production of responsive documents, including the failure to produce all non-privileged responsive documents that the Second Amended Order commanded her to produce) .

- Ms. Augustine failed to submit a new declaration in opposition to Defendants' sanctions motion that responded to or rebutted any of Defendants' factual analysis and evidence. *See* Dkt. 427 [Supp. Belichick Decl.] at ¶¶63-70 (discussing Ms. Augustine's noncompliance and misconduct).

**4.**     **Szabolcs Apai (Perfect 10-Affiliated Witness) Failed to Comply Fully Comply With the Court's Orders**.

Regarding Mr. Apai, the Court now finds that the record establishes the following facts:

- Szabolcs Apai was a computer consultant to and webmaster for Perfect 10. Dkt. 388 [Joint Stip. ISO Motion for Sanctions] at 40 and 44; Dkt. 395 [Belichick Decl.] at ¶¶28, 30-33, Exs. 25, 27-30.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- Perfect 10's counsel represented Mr. Apai in these discovery matters.
- Mr. Apai's discovery noncompliance and misconduct is shown by the discrepancies between his sworn deposition testimony and his later production of responsive documents.
- At his deposition on April 25, 2014, Mr. Apai testified that:  (1) In January or February 2014, he deleted all emails in the Hotmail email account he uses for work-related communications; (2) he did not do anything to try to recover his deleted Hotmail emails; (3) he reviewed Defendants' subpoena with Perfect 10's attorney, Natalie Locke, and they determined he did not have any responsive documents; (4) he never exchanged emails with Mr. Zada or other Perfect 10 personnel using his Gmail email account; (5) he had searched his Gmail email account for emails with Mr. Zada and Perfect 10 personnel anyway, and did not find any responsive documents; and (6) he did not search for "Giganews" or "Livewire" because he knew he had no communications about them due to the deletion of his Hotmail emails.  Dkt. 395 [Belichick Decl.] at ¶23, Ex. 21 [April 25, 2014 Apai Depo. Trans.] at 118-126, 134-135, 150-155.
- When asked whether he searched for anything to prepare for his deposition, Mr. Apai stated:  "I don't have anything.  There's nothing to search for."  *Id*., Ex. 21 [April 25, 2014 Apai Depo. Trans.] at 11:6-13.
- On the final day of fact discovery, months after his document production deadline and deposition, Mr. Apai produced over 5,000 documents through Perfect 10's counsel, including: (1) over 600 emails from his Hotmail account (dated between August 2007 through May 2014) that he previously testified he deleted in January or February 2014; (2) over 800 emails from his Gmail email account that he previously testified he did not use for Perfect 10 work; (3) over 1300 emails with Mr. Zada, including at least 342 emails from his Hotmail account and 178 emails

27

from his Gmail account that Mr. Apai previously testified he had searched without finding any responsive emails; and (4) Over 600 emails with Mr. Chumura, including at least 295 emails from his Hotmail account and 346 from his Gmail account that Mr. Apai claimed that he searched previously without finding any responsive emails.  Dkt. 395 [Belichick Decl.] at ¶24, Exs. 22, 27 [showing Apai Hotmail emails from before January 2014].

- Mr. Apai did not explain his failure to produce these documents before his deposition.  Nor did he explain how he was able to produce emails from his Hotmail account that he had repeatedly testified he deleted.  Mr. Apai also did not explain why he had so many emails with Mr. Zada and other Perfect 10 personnel in his Gmail account, which he had testified he did not use for work and that he had already searched without finding responsive documents.  *Id.* at ¶26, Ex. 24 [Apai Decl.] at 1-3.

- Despite his later production, Mr. Apai still did not comply with the Court's Second Amended Order.

- Mr. Apai did not perform manual searches for electronic documents based "on [his] own knowledge, diligence, and reasonable efforts."  Dkt. 342 at 5-6, ¶¶3-5, 7.  Belichick Decl. at ¶25, Ex. 23 [Apai Supplemental Responses] at 1-13, at ¶26, Ex. 24 [Apai Decl.] at 1-3.

- Mr. Apai's declaration does not establish that his search efforts are sufficient and does not provide all the details the Court ordered him to provide.  *See* Dkt. 342 at 4, ¶1.  Belichick Decl. at ¶26, Ex. 24 [Apai Decl.] at 1-3.

- Despite these violations of the Court's Second Amended Order, Ms. Davis provided a sworn declaration stating that she "fully explained" the Order to Mr. Apai and Mr. Apai's declaration "fully address[es] the Second Amended Order.  Belichick Decl. at ¶13, Ex. 12 [Davis Decl.]

at 1, ¶3.  Ms. Davis' declaration again failed to provide the details that the Court ordered.  Dkt. 342 at 4, ¶1.

- Furthermore, Mr. Apai's document production includes documents that conflict with his (and other Perfect 10 witnesses') deposition testimony.  Because Mr. Apai produced them on the final day of fact discovery, Defendants had no opportunity to examine *any* Perfect 10 personnel about them.  Dkt. 388 [Joint Stip. ISO Motion for Sanctions] at 43-44 (including evidentiary citations).

- Other documents from Mr. Apai's production raise serious questions about Perfect 10's document production and its own compliance with the Court's orders.  For example, some show the existence of summary documents regarding Perfect 10 website metrics—documents the Court ordered Perfect 10 to produce—whereas Perfect 10 has only produced server logs and claimed it had no other responsive documents.  Dkt. 395 [Belichick Decl.] at  ¶34, Ex. 31; *compare* the Court's April 24, 2014 Order (Dkt. 254) granting Defendants' motion to compel regarding website metrics.

- Mr. Apai failed to submit a new declaration in opposition to Defendants' sanctions motion that responded to or in any way rebutted Defendants' factual analysis and evidence.  *See* Dkt. 427 [Supp. Belichick Decl.] at ¶¶22-35 (discussing Mr. Apai's noncompliance and misconduct).

### 5.   Sean Chumura (Perfect 10-Affiliated Witness) Failed to Comply Fully With the Court's Orders.

Regarding Mr. Chumura, the Court now finds that the record establishes the following facts:

- Sean Chumura is a business associate with Mr. Zada in a different venture and a technical consultant who advised Perfect 10, who investigated Giganews, and who furnished declarations on Perfect 10's behalf in this

Fenwick & West LLP
Attorneys at Law
San Francisco

and other cases.  Dkt. 395 [Belichick Decl.] at ¶¶37, 39-47, Ex. 33 [April 17, 2014 Chumura Depo. Trans.] at 82-84, 157-170; Exs. 35-43.

▪ Perfect 10's counsel represented Mr. Chumura in these discovery matters.

▪ Mr. Chumura's discovery noncompliance and misconduct is shown by the discrepancies between his sworn deposition testimony and his later extensive production of responsive documents.

▪ At his deposition on April 17, 2014, Mr. Chumura testified, contrary to his subpoena responses, that he possessed responsive documents.  For some categories he testified that he did not search for responsive documents.  For others he said he did conduct a search, but was unable to find anything responsive.  In particular, he said he looked for and failed to locate an external hard drive that contained his historical AOL email and the software program (the "Zadalizer") he created for Perfect 10 targeting Giganews.  Dkt. 395 [Belichick Decl.] at ¶37, Ex. 33 [April 17, 2014 Chumura Depo. Trans.] at 139-170, 310-312.

▪ The only thing that Mr. Chumura agreed to produce in his responses to Defendants' subpoena was a software program he created for Mr. Zada, but he claimed at his deposition that he could not find it.  Belichick Decl. at ¶36, Ex. 32 [Chumura's Responses and Objections] at 12.

▪ Following his deposition, Perfect 10's attorneys made further representations about Mr. Chumura's purported follow-up search efforts:

> Mr. Chumura has made a thorough search of his
> storage and was unable to locate the hard drive
> referenced in his deposition.  Mr. Chumura did a
> search on his old computer, including a recovery, and
> did not find any responsive documents.  Mr. Chumura
> does not have any transcripts, declarations, or

computer programs in his possession, custody, or
control responsive to the subpoena.

Belichick Decl. at ¶38, Ex. 34 [May 1, 2014 email from
N. Locke] at 1.

- Mr. Chumura's unsworn representations, however, did not establish that
  he had met his discovery obligations.  Dkt. 307 [Joint Stip. ISO MTC
  re Third-Party Witnesses] at 22-23.  For example, Mr. Chumura did not
  say that he searched of all of the places he identified at his deposition as
  places where the "missing" drive might be; he did not say that he searched
  all of his computers and electronic media; he did not say that he searched
  any email accounts; and he did not identify any search terms that he
  purportedly used to locate responsive documents.

- On the final day of fact discovery, months after his original document
  production deadline and deposition, Mr. Chumura finally produced nearly
  2,000 pages of emails from his AOL email account (ranging from 2004 to
  the present) and the Zadalizer program he wrote for Perfect 10 that he had
  claimed were on the lost external hard drive.  Belichick Decl. at ¶39.

- Mr. Chumura, however, failed to produce any of the attachments to his
  emails that he produced on June 30, 2014, thus rendering his production
  defective and incomplete.  Belichick Decl. at ¶53.  Perfect 10 produced
  only a portion of one of these emails that Mr. Chumura produced.  *Id.*,
  Ex. 49 (including only a portion of Ex. 48).

- Perfect 10's June 30 production also included numerous emails about the
  "Zadalizer" program, which Defendants were unable to use as deposition
  exhibits when questioning Mr. Chumura and Mr. Zada.  Belichick Decl. at
  ¶40, Ex. 36 (discussing automated DMCA notices for Usenet, which
  undermines Perfect 10's alleged burden of sending proposed DMCA
  notices because the Zadalizer program already retrieved and displayed

31

Message-IDs back in 2007).  *See also*, *id*. at ¶41, Ex. 37 (regarding testing of the Zadalizer program on thumbnail images), at ¶42, Ex. 38 (concerning trouble-shooting the Zadalizer program), at ¶43, Ex. 39 (providing detailed instructions regarding the Zadalizer program), at ¶44, Ex. 40 (showing the Zadalizer program had an option to list Message-IDs).  Mr. Chumura failed to also produce Exs. 36 and 38.

- Mr. Chumura also produced financial documents reflecting Mr. Zada's investment of $900,000 and participation in CW International, a business venture of Mr. Chumura's.  Dkt. 395 [Belichick Decl.] at 39 (summary of documents), Ex. 35 (financial documents).

- As with Mr. Apai late production, there is no excuse for Mr. Chumura's and counsel's failure to produce all responsive documents before his deposition.  Nowhere in his declaration did Mr. Chumura explain how, after his deposition and at the close of discovery, he was finally able to produce emails from his AOL account that he had repeatedly testified were on an external hard drive that he had lost.  Belichick Decl. at ¶48, Ex. 44 [Chumura Decl.] at 1-3.

- Similarly, there is no excuse for Perfect 10's failure to timely produce numerous documents regarding Mr. Chumura's Usenet investigations in 2006 and 2007.  These documents are relevant to when Perfect 10 reasonably anticipated litigation against Giganews and should have preserved evidence—a key issue in this case, and Defendants were unable to use them as deposition exhibits when questioning Perfect 10's witnesses.  Belichick Decl. at ¶45, Ex. 41 (regarding Mr. Chumura's Usenet investigations in 2006), at ¶46, Ex. 42 (concerning Mr. Chumura's "working the usenet trace" involving Giganews in 2007), at ¶47, Ex. 43 (showing Mr. Chumura's testing in 2006 of Usenet Giant and Fast Usenet, two of Defendant Livewire's brands).

32

- Despite his late production, Mr. Chumura, under the guidance of Perfect 10's counsel, did not fully comply with the Court's Second Amended Order.

- Mr. Chumura did not perform manual searches for electronic documents based "on [his] own knowledge, diligence, and reasonable efforts." Dkt. 342 at 5-6, ¶¶3-5, 7.  Dkt. 395 [Belichick Decl.] at ¶49, Ex. 45 [Chumura Supplemental Responses] at 1-13, at ¶48, Ex. 44 [Chumura Decl.] at 1-3.

- Mr. Chumura's declaration did not establish that his search efforts were sufficient and did not provide all the details the Court ordered him to provide. *See* Dkt. 342 at 4, ¶1; Belichick Decl. at ¶48, Ex. 44 [Chumura Decl.] at 1-3.

- For example, at his deposition, Mr. Chumura testified that his current computer is "newer," (about six months old), there would be no responsive emails on it, and he used AOL and Exchange email software. Belichick Decl. at ¶37, Ex. 33 [April 17, 2014 Chumura Depo. Trans.] at 140-141.  Mr. Chumura's declaration stated only that he owned two computers but did not identify them, say when he obtained them, what documents they maintained, the date ranges of the documents on each computer, how he specifically searched for responsive documents, or any details about his email accounts except the perfunctory assertion that he "searched all electronic documents, including email." *Id.* at ¶48, Ex. 44 [Chumura Decl.] at 1-3.

- Even with these violations of the Court's Second Amended Order, Ms. Davis again provided a sworn declaration stating that she "fully explained" the Order to Mr. Chumura and Mr. Chumura's declaration "fully address[ed] the Second Amended Order.  Belichick Decl. at ¶13,

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Ex. 12 [Davis Decl.] at 1, ¶3.  Ms. Davis' declaration again failed to provide the details that the Court had ordered.  Dkt. 342 at 4, ¶1.

▪ The documents Mr. Chumura produced on the final day of fact discovery also disclosed entirely new information regarding Perfect 10's destruction of documents, and about Mr. Zada's ghost-writing of fact and expert declarations for other witnesses:

   o Less than two months before filing this lawsuit against Defendants, Mr. Chumura asked Mr. Zada for permission to delete twenty-one email accounts, including email accounts for Mr. Zada, Rebecca Chaney, Mr. Apai, Mr. Chumura, Ms. Augustine, and Dan Cooper, Perfect 10's former in-house counsel.  Perfect 10 did not produce this email.  Dkt. 395 [Belichick Decl.] at ¶51, Ex. 46.

   o Communications between Mr. Zada, Mr. Chumura, and Mr. Yamato in January and February 2014 that neither Perfect 10 nor Mr. Yamato have produced.  Belichick Decl. at ¶52, Ex. 47 at internal page nos. 108-116.

   o Mr. Chumura supervised the preparation of Mr. Yamato's declaration, and Mr. Yamato failed to produce any of these documents regarding that supervision.  Belichick Decl. at ¶53, Ex. 48.

   o Mr. Zada supervised and drafted (without attorney involvement until late in the process) the declaration that Mr. Chumura filed in this case. Belichick Decl. at ¶54, Ex. 50.

   o Mr. Zada drafted supporting declarations for supposedly independent experts and then had Mr. Chumura send the declarations to the experts for them to sign.  Belichick Decl. at ¶55, Ex. 52.  Perfect 10 failed separately to produce this email.  *Id.*

   o One email that shows Mr. Zada personally supervising and drafting Mr. Chumura's declaration, with assistance from Ms. Poblete but no

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

attorney involvement until late in the process, contains improper redactions, including an email dated May 27, 2011 from Mr. Chumura to Mr. Zada and Ms. Poblete.  Dkt. 395 [Belichick Decl.] at ¶54, Ex. 50 at internal page nos. 1181-1182.  Perfect 10 produced only a portion of one of these emails produced by Chumura.  *Id*. at ¶54, Ex. 51 (including only a portion of Ex. 48).

  o Accordingly, Mr. Chumura's belated production shows that Perfect 10's search for and production of responsive documents remains inadequate.

- Perfect 10's counsel also served a privilege log on behalf of Mr. Chumura for documents he withheld dated May 2011 to the present.  These include communications relating to Perfect 10's cases against Defendants, Google, and YandEx.  Belichick Decl. at ¶57, Ex. 54 [Chumura Privilege Log] at 1-5.  Despite the Second Amended Order's clear command to produce all non-privileged documents, Mr. Chumura, under guidance of Perfect 10's counsel, withheld documents based on relevance, third-party privacy and confidentiality objections.  *Id*. at 1-2.  These emails were communications between Perfect 10 and Quinn Emanuel (opposing counsel) in connection with the *Google* case, which Perfect 10 and Mr. Chumura acknowledged were not privileged.  Thus, Perfect 10's and Mr. Chumura's refusal to produce them was an intentional violation of the Court's Second Amended Order.  Belichick Decl. at ¶58, Ex. 55.

- There was also no justification for Mr. Chumura's withholding of documents based on privilege or work product before April 2, 2014, when Defendants served Mr. Chumura with a subpoena in this case and Perfect 10's attorneys became his attorneys.

- Some of the allegedly privileged communications listed on Mr. Chumura's privilege log do not involve communications with

35

attorneys, while others do not involve Mr. Chumura.  Belichick Decl. at ¶57, Ex. 54 [Chumura Privilege Log] at 1-5.  Based on Perfect 10's and Mr. Chumura's privilege log, there can be no justification for withholding these documents.

- The records shows that (a) Mr. Chumura failed to do a thorough initial search for responsive documents before his deposition, (b) Mr. Chumura provided false or misleading testimony at his deposition, (c) Mr. Chumura's tardy document production revealed numerous important issues that should have been disclosed much earlier so Defendants could have obtained additional discovery, and (d) Mr. Chumura did not fully comply with the Court's Second Amended Order.

- Mr. Chumura failed to submit a new declaration in opposition to Defendants' sanctions motion that responded to or rebutted any of Defendants' factual analysis and evidence.  *See* Dkt. 427 [Supp. Belichick Decl.] at ¶¶36-58 (discussing Mr. Chumura's noncompliance and misconduct).

**6.  Eileen Koch (Perfect 10-Affiliated Witness) Failed to Comply Fully With the Court's Orders**.

Regarding Ms. Koch, the Court now finds that the record establishes the following facts:

- Eileen Koch has provided a variety of public relations services to Perfect 10.  Dkt. 388 [Joint Stip. ISO Motion for Sanctions] at 25 and 28.

- Perfect 10's counsel represented Ms. Koch in these discovery matters.

- As it did for the other Perfect 10-affiliated witnesses, the Court ordered Ms. Koch to search her electronic documents for the terms listed on Appendix A and produce all non-privileged responsive documents.  Instead, Ms. Koch chose to search her documents for only two of the terms,  "Giganews" and "Livewire", which she claimed "returned zero

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

results." Dkt. 395 [Belichick Decl.] at ¶11, Ex. 10 [Koch Supplemental Responses] at 3-5, at ¶12, Ex. 11 [Koch Decl.] at ¶6.

▪ Under the guidance of Perfect 10's counsel, Ms. Koch did not perform manual searches for electronic documents based "on [her] own knowledge, diligence, and reasonable efforts." Dkt. 342 [Second Amended Order] at 5-6, ¶¶3-5, 7; Dkt. 395 [Belichick Decl.] at ¶11, Ex. 10 [Koch Supplemental Responses] at 1-13, at ¶12, Ex. 11 [Koch Decl.] at 1-3.

▪ The Court ordered Ms. Koch to identify all IP addresses she has used for any business purpose since she first worked for Perfect 10 or Norman Zada. Dkt. 342 [Second Amended Order] at 5-6, ¶6 (Document Request No. 14). Under the guidance of Perfect 10's counsel, Ms. Koch refused to do so, based on an incorrect statement that any third-party with that information can access all of her electronic data. Belichick Decl. at ¶12, Ex. 11 [Koch Decl.] at 3, ¶10, Ex. 10 [Koch Supplemental Responses] at 12.

▪ Rather than produce all non-privileged documents that "were located after a reasonable and diligent search as provided herein" (Dkt. 342 at 4, ¶2), Ms. Koch admitted that she reviewed the documents she located based on the search terms and then decided for herself which documents to produce. Belichick Decl. at ¶12, Ex. 11 [Koch Decl.] at 1, ¶4.

▪ Ms. Koch's declaration, which presumably Perfect 10's counsel drafted and reviewed, does not establish that her search efforts were sufficient and does not provide all the details the Court ordered her to provide. *Id.* at ¶12, Ex. 11 [Koch Decl.] at 1-3. Ms. Koch's perfunctory declaration does not provide the level of detail the Court ordered her to provide. Dkt. 342 at 4, ¶1 (requiring "identifying all computers, electronic media, and paper files [she] searched, all computers, electronic media, and paper files [she]

maintain[s] but did not search, the date range of the documents [she] searched, all search terms employed for electronic searching, and all other search methods employed").  Dkt. 395 [Belichick Decl.] at ¶12, Ex. 11 [Koch Decl.] at 1-3.

- The Second Amended Order also required "detailed declarations under oath (by each Subpoenaed Witness and its counsel) regarding their search efforts."  Dkt. 342 at 4, ¶1.  Despite these violations of the Court's Second Amended Order listed above, Ms. Davis's sworn declaration states that she "fully explained" the Second Amended Order to Ms. Koch and that Ms. Koch's declaration "fully address[es] the [Second Amended] Order. Belichick Decl. at ¶12, Ex. 12 [Davis Decl.] at 1, ¶3.  Ms. Davis' declaration also fails to provide the details that the Court ordered.  Dkt. 342 at 4, ¶1.

- Ms. Koch's description of her compliance efforts also raises serious questions regarding whether she searched all documents within her possession, custody, or control under the guidance of Perfect 10's counsel.  For example, Ms. Koch claims she owns three networked computers and understands (based on consultation with an unidentified "technical professional") that "each machine has access to the same information."  Belichick Decl. at ¶12, Ex. 11 [Koch Decl.] at 1, ¶5.  From here, Ms. Koch concludes:  "As a result, performing the Court ordered searches on my laptop also covers all electronic files and emails within the three networked computers.  For each search below I searched my laptop computer."  *Id*.

- Although a networked computer may be able to access information located on another computer that is also on the same network, Ms. Koch's searches of her laptop do not necessarily cover all information located on her other networked computers.  Ms. Koch failed to provide details

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

38

regarding each of her computers, her network, the local and networked files on each computer, her email accounts, and how she performed her search for documents, demonstrating compliance with the Court's order. Dkt. 395 [Belichick Decl.] at ¶12, Ex. 11 [Koch Decl.] at 1, ¶5.

- Ms. Koch made other statements in her declaration that were also inconsistent with the record in this case. She states: "Since it has been approximately ten years since I have performed any work for Perfect 10 or Dr. Norman Zada, I simply do not have many documents responsive to my document subpoena." Belichick Decl. at ¶12, Ex. 11 [Koch Decl.] at 1, ¶4. Perfect 10, however, produced a financial statement showing a payment to Ms. Koch of $2,500 in February 2013 for "February PR." *Id.* at ¶16, Ex. 14 [Perfect 10's General Ledger] at 1.

- Ms. Koch also claimed that she did not have many responsive documents but admitted that "hundreds of documents result from each search." *Id.* at ¶12, Ex. 11 [Koch Decl.] at 1, ¶4. As discussed above, because Ms. Koch failed to perform the searches the Court ordered for Document Requests Nos. 1-3 (requiring all search terms listed on Appendix A), she could be referring only to searches relating to Document Requests Nos. 4-12 and 16-17. For these requests, the Court ordered Ms. Koch to perform a two-step process involving first the use of search terms related to Perfect 10 and then second search terms relating to the specific topics that are found on Appendices B-D. Dkt. 342.

- For example, for Document Request No. 4, the first step involved searching for each first and last name identified in the request (Dkt. 342 at 4, ¶4), while Document Requests Nos. 5-12 and 16-17 involved searching first for "Perfect 10", "Perfect10", "P10", "Zada", "Zadeh", and "Norm".

- Ms. Koch said that, for even the limited search term set she used, "hundreds of documents result from each search."  Belichick Decl. at ¶12, Ex. 11 [Koch Decl.] at 1, ¶4.

- Under the guidance of Perfect 10's counsel, however, Ms. Koch produced only *two single page emails*. Dkt. 395 [Belichick Decl.] at ¶16, Ex. 15 [Koch Production].  Accordingly, Ms. Koch or Perfect 10's counsel improperly withheld hundreds of documents.  Dkt. 342 at 4, ¶2.  The Second Amended Order requires production of documents responsive to the search terms, not only the documents that Ms. Koch or Perfect 10 *deem* responsive by their own independent judgment.  Dkt. 342 at 4, ¶2.

- Ms. Koch failed to submit a new declaration in opposition to Defendants' sanctions motion that responded to or rebutted any of Defendants' factual analysis and evidence.  *See* Dkt. 427 [Supp. Belichick Decl.] at ¶¶11-16 (discussing Ms. Koch's noncompliance and misconduct).

**7.** <u>**Jennifer McCall (Perfect 10-Affiliated Witness) Failed to Comply Fully With the Court's Orders**</u>.

Regarding Ms. McCall, the Court now finds that the record establishes the following facts:

- Jennifer McCall is a former Perfect 10 employee who maintained its website, selecting photographs to display, coordinating with Ms. Poblete regarding copyright registrations, and investigating alleged infringements.  Dkt. 388 [Joint Stip. ISO Motion for Sanctions] at 33 and 37.

- Perfect 10's counsel represented Ms. McCall in these discovery matters.

- Ms. McCall, under the guidance of Perfect 10's counsel, also failed to comply with the Second Amended Order.

- Ms. McCall's declaration does not establish that her search efforts are sufficient and does not provide all the details the Court ordered her to

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

provide.  *See* Dkt. 342 at 4, ¶1; Dkt. 395 [Belichick Decl.] at ¶18, Ex. 17 [McCall Decl.] at 1-3.

- Ms. McCall, advised by Perfect 10's counsel, also did not perform manual searches for electronic documents based "on [her] own knowledge, diligence, and reasonable efforts."  Dkt. 342 at 5-6, ¶¶3-5, 7.  Dkt. 395 [Belichick Decl.] at ¶18, Ex. 17 [McCall Decl.] at 1-3.

- The Court ordered Ms. McCall to search on each of the first and last names in Document Request No. 4.  Instead, Ms. McCall searched for full names.  *Id.* at ¶20, Ex. 18 [Examples from Names folder].  For example, Ms. McCall's screenshots show she searched full names, including but not limited to "Sean Chumura" or "Szabolcs Apai," and not surprisingly she did not get any results for most names.  Belichick Decl. at ¶20, Ex. 18 (examples of Ms. McCall's defective searches).  By contrast, when Ms. McCall ran searches using terms such as "Norm", "normanz", and "Melanie," she received a large number of hits.  *Id.*, Ex. 18.  And these search results showed emails involving both Mr. Chumura and Mr. Apai.  *Id.*

- The fact that the Perfect 10 affiliated witnesses kept making the same mistakes over and over shows that Perfect 10's counsel was not adequately supervising their efforts to ensure full compliance with the Court's Orders.

- Ms. McCall, through Perfect 10's counsel, provided screenshots to show her search efforts.  But these appear to show that she only searched her *inbox*, and not *all emails sent or received by her* or all emails in all folders within her email account.  Belichick Decl. at ¶20, Ex. 18.

- Ms. McCall did not produce all attachments to her responsive emails.  *Id.* at ¶21, Ex. 19

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- Ms. McCall's responses to Document Requests Nos. 16 and 17, which Perfect 10's counsel likely prepared and reviewed, did not state that she performed the searches the Court ordered. *Id.* at ¶17, Ex. 16 [McCall Supplemental Responses] at 12-13.

- Despite these failings, Perfect 10's counsel Ms. Davis yet again provided a sworn declaration that she "fully explained" the Second Amended Order to Ms. McCall and stating that Ms. McCall's declaration "fully address[es] the [Second Amended] Order. Dkt. 395 [Belichick Decl.] at ¶13, Ex. 12 [Davis Decl.] at 1, ¶3. Ms. Davis' declaration again failed to provide the details that the Court had ordered. Dkt. 342 at 4, ¶1.

- Ms. McCall failed to submit a new declaration in opposition to Defendants' sanctions motion that responded to or rebutted any of Defendants' factual analysis and evidence. *See* Dkt. 427 [Supp. Belichick Decl.] at ¶¶17-21 (discussing Ms. McCall's noncompliance and misconduct).

8. **Craig Yamato (Perfect 10-Affiliated Witness) Failed to Fully Comply With the Court's Orders**.

Regarding Mr. Yamato, the Court now finds that the record establishes the following facts:

- Craig Yamato is a Perfect 10-affiliated witness who furnished a declaration in support of Perfect 10's Motion for Preliminary Injunction. Dkt. 67.

- Perfect 10's counsel represented Mr. Yamato in these discovery matters.

- On April 24, 2014, Defendants served Mr. Yamato with a subpoena for the production of documents. Dkt. 298-1 [Memo. ISO Motion to Compel Discovery Compliance from Craig Yamato and for Sanctions ("Yamato Motion")] at 8.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- On May 1, 2014, counsel for Perfect 10 and Mr. Yamato served their objections and responses to Defendants' subpoena, asserting that the requested documents either did not exist or were protected from disclosure because of a privilege or privacy interest.  *Id*. at 10-11, 15-16, 19-22, 28-29.

- Defendants made repeated efforts to meet and confer with Mr. Yamato regarding his insufficient discovery responses and document production, but he failed to respond.  Dkt. 298-2 [Belichick Decl.] at ¶¶3-9, Exs. B-E.

- On June 2, 2014, Defendants filed a motion to compel discovery compliance from Mr. Yamato.  Dkt. 298-1.

- Perfect 10's and Mr. Yamato's opposition to the Yamato Motion (Dkt. 315) focused on whether Defendants had properly requested a conference of counsel, failing to "set forth even one position regarding Mr. Yamato's asserted relevance, privilege and privacy objections."  Dkt. 317 [Yamato Reply Brief] at 4.

- Defendants argued that this meant Mr. Yamato had waived all of his substantive objections.  *Id*.

- The Court agreed.  The Court ordered that "[a]ll [o]bjections are overruled" and that Mr. Yamato "shall (1) produce to the defendants ***all responsive documents*** in his possession, custody, or control that were located after a reasonable and diligent search as provided herein."  Dkt. 322 [June 20, 2014 Amended Yamato Order] at 1-3 (emphasis added).

- Defendants' Revised Proposed Order Compelling Discovery Compliance from Mr. Yamato (Dkt. 317-1) requested that he produce all responsive non-privileged documents and serve a privilege log.  The Court's Amended Yamato Order adopted almost entirely the specific language in Defendants' Revised Proposed Order.  *See* Dkt. 322 at 1-3.  The Court modified the Revised Proposed Order by ordering Mr. Yamato to produce

to defendants "*all responsive documents*" and eliminated the requirement of serving a privilege log because overruling his privilege objections made it unnecessary. *Id.* (emphasis added).

- To avoid any further dispute about the broad scope of the Court's compliance Order, Defendants stated their expectation that the Court's Order required production of all responsive documents in his possession, custody, and control (including documents within the possession of his attorneys) and that he was not allowed to withhold responsive documents for any reason. Dkt. 395 [Belichick Decl.] at ¶7, Ex. 5 [June 18, 2014 Email from J. Belichick to L. Davis] at 1. Defendants asked Mr. Yamato to confirm that he would comply fully with the Court's Order, but he refused to do so. *Id.*

- Despite the Court's Amended Yamato Order compelling Mr. Yamato to comply fully with Defendants' subpoena, he did not "produce to the defendants *all responsive documents* in his possession, custody, or control . . . ." Dkt. 322 at 1, ¶2 (emphasis added); Belichick Decl. at ¶3, Ex. 2 [Yamato Supplemental Responses] at 1-13, at ¶4, Ex. 3 [Yamato Decl.] at 1-3.

- In fact, Mr. Yamato did not produce *even one* additional responsive document. *Id.* at ¶5.

- Mr. Yamato refused to produce responsive documents based on improper claims of privilege while refusing to serve a privilege log. *Id.* at ¶3, Ex. 2 [Yamato Supplemental Responses] at 1-13.

- Mr. Yamato's supplemental discovery responses include general objections and state only that "all responsive non-privileged documents . . . have been produced." *Id.* at ¶3, Ex. 2 [Yamato Supplemental Responses] at 1-13.

- Mr. Yamato did not do any manual searches for electronic documents based "on his own knowledge, diligence, and reasonable efforts." Dkt. 322 at 1-2, ¶¶3-5, 7. Belichick Decl. at ¶3, Ex. 2 [Yamato Supplemental Responses] at 1-13, at ¶3, Ex. 2 [Yamato Decl.] at 1-3.

- Mr. Yamato also did not properly perform the Court-ordered searches for electronic documents. *Id*. at ¶4, Ex. 3 [Yamato Decl.] at 1-3, Ex. 1 thereto.

- Mr. Yamato refused to produce the missing attachments to emails in his prior production that Defendants specifically identified to the Court in the motion to compel. *See* Dkt. 298-1 [Yamato Motion] at 13-14; Dkt. 298-2 [Belichick Decl.] at ¶¶10-11; Dkt. 298-8 [Ex. F thereto] (an email chain between Mr. Yamato and Mr. Zada dated August 28, 2011, which identifies drafts of Mr. Yamato's declaration that he failed to produce); Dkt. 298-9 [Ex. G thereto] (an email chain between Perfect 10, Mr. Yamato, and Mr. Chumura dated August 27-28, 2011, which identifies a draft declaration of Mr. Chumura that Mr. Yamato failed to produce). Notably, Perfect 10 also withheld its own copies of these emails and attachments. Belichick Decl. at ¶¶8-9, Ex. 7.

- In its recent document productions at the close of fact discovery, Perfect 10 *did produce* a June 5, 2014 email between Mr. Yamato and Perfect 10's CEO, Norman Zada. Belichick Decl. at 10, Ex. 8 [June 5, 2014 Email Chain] at 1. Mr. Yamato failed to produce this document, showing one or more of the following: (1) Mr. Yamato improperly deleted the June 5, 2014 email from his email account before searching for electronic documents; (2) Mr. Yamato, under the guidance of Perfect 10's counsel, did not perform a thorough manual search of his email, which if he simply sorted by sender and recipient, would have turned up this email with Mr. Zada; (3) Mr. Yamato, under the guidance

Fenwick & West LLP
ATTORNEYS AT LAW
SAN FRANCISCO

45

of Perfect 10's counsel, did not perform the electronic searches he says he did because multiple search terms are found in the email; and/or

(4) Mr. Yamato's searches located the June 5 email but then, under the guidance of Perfect 10's counsel, he refused to produce it, invoking a privilege objection, even though the document is not privileged, the Court's Amended Order overruled all objections, and Mr. Yamato and counsel failed to produce a privilege log.  Dkt. 395 [Belichick Decl.] at ¶¶3-10.

▪ Mr. Yamato also failed to produce other email communications with Perfect 10 that fall within the scope of the order.  Belichick Decl. at ¶10, Ex. 9 [Email communications between Mr. Yamato and Perfect 10 during April, May, and June 2014].

▪ Mr. Yamato did not serve a detailed declaration establishing that his search efforts are sufficient, including the information the Court required. *Id*. at ¶4, Ex. 3 [Yamato Decl.] at 1-3.

▪ Notwithstanding all of these violations of the Court's Amended Yamato Order, Perfect 10's counsel Lynell Davis provided a sworn declaration stating that she explained the Court's Amended Order to Mr. Yamato and that his declaration "fully addresses Paragraphs 1-7 of the Order."  *Id*. at ¶6, Ex. 4 [Davis Declaration] at 1, ¶3.

▪ The Amended Yamato Order states:  "An attorney for Perfect 10 shall concurrently serve a declaration that he or she has fully explained the Court's Order to Mr. Yamato, and believes that Mr. Yamato's Declaration fully addresses the above Orders."  Dkt. 322 at 2, ¶8.  But simply repeating the required words from the Amended Order was insufficient. Ms. Davis had an independent duty to supervise her client's compliance efforts.  *See Qualcomm Inc. v. Broadcom Corp.*, No. 05-cv-1958-B (BLM), 2008 U.S. Dist. LEXIS 911, at *47 (S.D. Cal. Jan. 7, 2008) ("The

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Federal Rules impose an affirmative duty *upon lawyers* to engage in discovery in a responsible manner and to conduct a 'reasonable inquiry' to determine whether discovery responses are sufficient and proper.") (emphasis added); Dkt. 298-1 [Yamato Motion] at 11-13 (detailing a counsel's duty to supervise and requesting a declaration showing full compliance).  This duty and the Amended Order required Ms. Davis to verify that Mr. Yamato correctly performed the required searches and complied fully with the Amended Order, but she did not.

▪ Mr. Yamato failed to submit a new declaration in opposition to Defendants' sanctions motion that responded to or rebutted any of Defendants' factual analysis and evidence.  *See* Dkt. 427 [Supp. Belichick Decl.] at ¶¶3-10 (discussing Mr. Yamato's noncompliance and misconduct).

**9.      Perfect 10's Admissions Regarding its Affiliated Witnesses.**

Regarding the Perfect 10-affiliated witnesses, the Court now finds that the record establishes the following facts:

▪ Perfect 10 admitted that Mr. Yamato defied the Court's Order that had overruled his objections and ordered him to produce all responsive documents.  Dkt. 388 [Joint Stip. ISO Motion for Sanctions] at 19-20, 22.

▪ Perfect 10 admitted that (1) Mr. Chumura, Ms. Koch, Ms. Poblete, and Ms. Augustine withheld documents based on relevance objections that the Court had overruled; and (2) Ms. Koch cherry-picked the documents she located based on the Court-ordered searches based upon her own decision of what subset of documents she deemed "responsive".  Dkt. 388 [Joint Stip. ISO Motion for Sanctions] at 31-32, 56, 67-71, 77-81.

▪ Perfect 10 admitted that Ms. Koch "chose not to provide her current IP address," despite the fact that the Court ordered her to do so.  *Id*. at 32 n.22.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

47

- Perfect 10 admitted that in many instances, the third-party witnesses failed to perform the Court-ordered searches, including all required search terms. *Id*. at 31-32, 39.

- Perfect 10 admitted that Ms. Augustine and Ms. Poblete have still not produced all responsive documents—including the 20,000 email communications identified by Perfect 10's counsel—and failed to produce any privilege log, all the while withholding documents based on privilege. Dkt. 388 [Joint Stip. ISO Motion for Sanctions] at 67-71, 77-81.

**10. <u>Perfect 10 Guided and Directed its Affiliated Witnesses'</u> <u>Noncompliance Efforts and Misconduct</u>**.

The Court now finds that the record establishes the following facts:

- Perfect 10 argued incorrectly that the Court did not impose on attorneys any "requirements of verifying that [a third-party witness] correctly performed the searches or fully complied with [an] Order." Dkt. 388 [Joint Stip. ISO Motion for Sanctions] at 24 n.13.

- Perfect 10 attempted to disavow any connection with the discovery misconduct of third-party witnesses. *Id*. at 44 ("Perfect 10 does not control Mr. Apai in any way.  Perfect 10 merely offered to help Mr. Apai avoid the costs of hiring his own attorney."); at 53 (same for Mr. Chumura).

- At the same time, however, Perfect 10 attempted to rely on third-party productions and privilege logs to satisfy its own discovery obligations. Dkt. 388 [Joint Stip. ISO Motion for Sanctions] at 124 ("Such emails have been produced as part of the third party productions . . . .").

- And Perfect 10 took credit for the third-party declarations and supplemental responses, contending that these documents established "Perfect 10's Massive, Good Faith Efforts To Comply With Discovery." *Id*. at 114-16.

- Perfect 10's attorneys (Ms. Davis and Ms. Locke) and its paralegal (Ms. Poblete) work directly for Perfect 10 and take orders directly from Mr. Zada. The caption in their litigation pleadings in this case has given Ms. Davis' and Ms. Locke's business affiliation and business address as "Perfect 10" at Perfect 10's address, and they use "@Perfect10.com" email addresses.

- Acting through Perfect 10's attorneys whom Mr. Zada directs, Perfect 10 and its affiliated witnesses engaged in substantial discovery misconduct that Perfect 10 and its attorneys aided and abetted, including by their "failure to supervise," all in violation of the discovery rules, well-established case law, and this Court's Orders.

- Perfect 10's attorneys either "supervised" the witnesses' noncompliance or their "failure to supervise" was culpable. They certified the witnesses' responses as compliant and provided sworn statements that their declarations complied with the Court's Orders, despite counsel's lack of any personal knowledge regarding the truth. Dkt. 427 [Supp. Belichick Decl.] at ¶5, 15, 19, 30, 37, 53. Perfect 10's counsel even contended that they did not need to verify that the witnesses "correctly performed the searches or fully complied with [an] Order." Dkt. 388 [Joint Stip. ISO Motion for Sanctions] at 24 n.13.

- But this Court already warned them of "the solemnity of their discovery certifications," noting that they proceed "at their own jeopardy if they have signed such certifications in bad faith." Dkt. 311 at 2; *see also* Dkt. 427 [Supp. Belichick Decl.] at ¶15.

- Mr. Zada admitted on the last day of fact discovery that he expected to "make final approvals" on all forthcoming third-party witness materials. Dkt. 398 [Gregorian Decl.] at ¶38, Ex. 27 [June 30, 2014 Zada Dep. Trans.] at 296:10-297:8.

49

- In the peculiar circumstances of Perfect 10's conduct in this case, the Court can properly hold Perfect 10 and its attorneys responsible for the Perfect 10-affiliated witnesses' conduct.  Supp. Belichick Decl. at ¶¶2-84.

11.    **Perfect 10 Interfered with Mike Saz's Document Production**.

The Court now finds that the record establishes the following facts:

- Mike Saz was a customer of Giganews whom Perfect 10 disclosed as a witness in its initial disclosures, and who signed a declaration for Perfect 10 that Perfect 10 never filed.  Mr. Saz performed work for Perfect 10 in connection with the *Perfect 10 v. Yandex* case and this lawsuit, including running searches on search engines for specific search terms and collecting the results.  Dkt. 395 [Belichick Decl.] at ¶59, Ex. 56 [June 27, 2014 Saz Depo. Trans.] at 36:9-50:4.

- In response to Defendants' subpoena, Mr. Saz provided Perfect 10's counsel with his documents, including emails, that he believed were responsive.  Perfect 10 refused to produce all of them, withholding certain documents allegedly based on attorney-client privilege and work product, despite that fact that Mr. Saz denied that Perfect 10's attorneys represented him in connection with Defendants' subpoena.

- On June 20, 2014, Mr. Saz produced various image files, plus approximately 50 pages of other documents, including only 18 email messages.  Dkt. 395 [Belichick Decl.] at ¶60, Ex. 57.  Mr. Saz's privilege log lists eight emails that Perfect 10 withheld from Mr. Saz's production.  Dkt. 395 [Belichick Decl.] at ¶61, Ex. 58 [Saz Privilege Log] at 1.

- At his deposition on June 27, 2014, Mr. Saz testified under oath as follows:

  o  He did not understand Perfect 10's attorney, Lynell Davis, to be acting as his attorney in connection with Defendants' subpoena.  He did not have any legal representation engagement agreement with Ms. Davis

Fenwick & West LLP
Attorneys at Law
San Francisco

and he never discussed with Ms. Davis that she would be his lawyer for purposes of responding to Defendants' subpoena. *Id*. at ¶59, Ex. 56 [June 27, 2014 Saz Depo. Trans.] at 13.

- o Ms. Davis explained to him that she represented Perfect 10 in this case and she did not mention any other clients that she represented in this case. *Id*.

- o Craig Englander was the only attorney that he understood represented him in this case, but Mr. Englander did not assist him in responding to Defendants' subpoena. *Id*. at ¶59, Ex. 56 [June 27, 2014 Saz Depo. Trans.] at 9:12-18; 13:10-13.

- o He searched his email accounts for responsive documents. *Id*. at 14:2-15:24.

- o He found approximately 30-50 emails responsive to Defendants' subpoena. *Id*. at 15:25-5.

- o He turned all of these emails over to Ms. Davis and understood she would produce them to Defendants. *Id*. at 15:6-21.

- o He had no discussions with Ms. Davis about any emails that she would not be turning over to Defendants, and he understood that all of the emails he gave to Ms. Davis were responsive to Defendants' subpoena. *Id*. at 16:22-17:8, 97:3-12.

- o He never saw before his deposition the privilege log relating to his document production, which he acknowledged identified Ms. Davis as only Perfect 10's attorney without any indication that she was also his attorney. Dkt. 395 [Belichick Decl.] at ¶59, Ex. 56 [June 27, 2014 Saz Depo. Trans.] at 111:5-17.

- ▪ After a break during the deposition, Mr. Saz testified that he had some emails with Ms. Davis but that he thought those emails "were excluded

51

for confidentiality," as they related to "requests for information and documents." *Id.* at 109:12-24.

- When Defendants asked Mr. Saz what those emails said, Mr. Saz's attorney at the deposition, Mr. Englander, instructed Mr. Saz not to answer, claiming that Mr. Saz's responses to Defendants' subpoena indicated that Ms. Davis was acting on behalf of both Perfect 10 and Mr. Saz, and that Mr. Saz did not understand the legal implications of the questions that he had answered to the contrary about Ms. Davis acting as his attorney. *Id.* at 109:25-110:17.

- Regardless of his deposition counsel's objections, instructions, and representations, Mr. Saz never testified that: (1) Ms. Davis acted as his attorney in connection with Defendants' subpoena; (2) he was confused about the numerous questions about this topic that he had answered earlier in the deposition; or (3) he wanted to amend or correct his previous testimony. And Mr. Saz never served any corrections to his deposition transcript. Dkt. 395 [Belichick Decl.] at ¶59.

- Because Mr. Saz testified that he provided Ms. Davis with approximately 30-50 emails, even counting the allegedly privileged documents, approximately another 20 emails may be unaccounted for and should have been produced. Defendants raised all of these issues with Perfect 10 and demanded the full production of documents relating to Mr. Saz, including all of the documents that Mr. Saz provided to Perfect 10 and Perfect 10's own documents. Perfect 10, however, has refused to produce any additional documents from Mr. Saz. Belichick Decl. at ¶62, Ex. 59.

- Perfect 10's document production on the last day of discovery included five email strings of messages between Mr. Saz and Perfect 10 dating from June 2013, and April and May 2014. Although these emails are

responsive to Defendants' subpoena to Mr. Saz, he failed to produce any of these documents.  Neither Perfect 10 nor Mr. Saz disputed this fact.

- Mr. Saz failed to submit a declaration in opposition to Defendants' sanctions motion that responded to or rebutted any of Defendants' factual analysis and evidence.

- Based on the above noted facts, Perfect 10 and its counsel improperly interfered with Mr. Saz's response to Defendants' subpoena, withholding certain documents allegedly based on attorney-client privilege and work product, despite that fact that Mr. Saz denied that Perfect 10's attorneys represented him in connection with Defendants' subpoena.

## II.   CONCLUSIONS OF LAW

### A.   The Court Has the Authority to Impose Monetary Sanctions Against Perfect 10, and/or its Attorneys, for Their Discovery Noncompliance, Violations of this Court's Orders, and Misconduct.

The Court has the authority to require a party violating an order, the attorney advising the party, or both, to pay the moving party's reasonable expenses, including attorney fees, caused by the violation, unless substantially justified.  Fed. R. Civ. P. 37(b)(2)(C); *Toth v. Trans World Airlines, Inc.*, 862 F.2d 1381 (9th Cir. 1988) (upholding joint and several liability for monetary sanctions against plaintiff and her attorney as not violating due process).  The Court also has the inherent authority to impose monetary sanctions for discovery noncompliance and abuse. *Chambers v. Nasco, Inc.*, 501 U.S. 32, 50 (1991) (federal courts have the inherent power to impose attorney's fees as a sanction for bad-faith conduct even where the conduct at issue could also be sanctioned under another statute or rule); *see also* 28 U.S.C. § 1927 ("Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    excess costs, expenses, and attorneys' fees reasonably incurred because of such

2    conduct.").

3          Defendants have presented this Court with extensive evidence showing

4    unjustified discovery noncompliance, numerous violations of this Court's orders,

5    and pervasive failures by Perfect 10, its attorneys, and the Perfect 10-affiliated

6    witnesses.  The court will proceed to determine the reasonable amount of monetary

7    sanctions, and whether they should be assessed against Perfect 10 and/or its

8    counsel.

9                        **ATTORNEY'S FEES AS SANCTIONS**

10          In calculating an appropriate fee award, the court must independently

11   determine "the number of hours reasonably expended on litigation" and the

12   "reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The

13   "reasonable hourly rate" should be based on the prevailing local rate for "similar

14   services by lawyers of reasonably comparable skill, experience, and reputation."

15   *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (quoting

16   *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).  In the Ninth Circuit, the

17   appropriate legal community for this determination is the district in which the court

18   sits. *Id.*; *Mendenhall v. NTSB*, 213 F.3d 464, 471 n.5 (9th Cir. 2000); *Barjon v.*

19   *Dalton*, 132 F.3d 496, 500 (9th Cir. 1997).  Justification of the rates may rest upon

20   evidence that clients in fact pay the rates sought, attorney affidavits regarding

21   prevailing rates in a community, other cases determining the rates to be reasonable,

22   and survey evidence regarding the fees of comparable counsel.  *See Lakim Indus. v.*

23   *Linzer Prods. Corp*., No. 2:12-cv-04976, 2013 WL 1767799, at *8 (C.D. Cal. Apr.

24   24, 2013).  In calculating the number of hours reasonably expended, courts should

25   ///

26   ///

27   ///

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

2    exclude hours that are "excessive, redundant or otherwise unnecessary." *Hensley*,

3    461 U.S. at 434.  The Court will issue a separate Minute Order addressing what is

4    now required to determine the amount of reasonable attorney fees.

5

6

7    Dated: February 04, 2015      _____

8                                  STEPHEN J. HILLMAN

9                                  United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28