ANDREW P. BRIDGES (CSB No. 122761)
abridges@fenwick.com
TODD R. GREGORIAN (CSB No. 236096)
tgregorian@fenwick.com
KATHLEEN LU (CSB No. 267032)
klu@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350

Attorneys for Defendants
GIGANEWS, INC., and
LIVEWIRE SERVICES, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>GIGANEWS, INC., a Texas Corporation; LIVEWIRE SERVICES, INC., a Nevada corporation; and DOES 1 through 100, inclusive,<br><br>Defendants.<br><br>GIGANEWS, INC., a Texas Corporation; LIVEWIRE SERVICES, INC., a Nevada Corporation,<br><br>Counterclaimants,<br><br>v.<br><br>PERFECT 10, INC., a California Corporation,<br><br>Counterdefendant. | Case No.: 11-cv-07098-AB (SHx)<br><br>***DISCOVERY MATTER***<br>***Before Hon. Stephen J. Hillman***<br><br>**DEFENDANTS' RESPONSE TO COURT'S REQUEST FOR FURTHER INFORMATION ON FEES PERTAINING TO DEFENDANTS' MOTION FOR SANCTIONS (DKT. 675)** |

Defendants Giganews, Inc. and Livewire Services, Inc. respond to the Court's request for further information regarding Defendants' fee request.[1] Dkt. 675. The fees they seek pertain to two earlier motions, for compliance from certain nonparty Perfect 10-related witnesses (Dkt. 342) and for compliance from Mr. Yamato (Dkt. 322), and also to this long-running motion regarding misconduct of both Perfect 10 and all of the Perfect 10-related witnesses (Dkt. 356). Defendants seek fees only for work directly on these discovery enforcement motions. They do not seek fees for other work, such as review of inbound document productions, in the normal course of discovery or that counsel would have performed irrespective of Perfect 10's misconduct.

Defendants' attorneys spent a reasonable number of hours on their enforcement motions, particularly in light of the large number of discovery requests at issue and Perfect 10's unwillingness to comply with the Court's orders or to participate in a meaningful and efficient meet-and-confer process. The Court should grant the full amount of fees Defendants seek as monetary sanctions.

## I. DEFENDANTS SEEK ONLY FEES THAT DIRECTLY RELATE TO THE DISCOVERY ENFORCEMENT MOTIONS.

Defendants have taken a conservative approach in calculating the fees they seek in this sanctions motion. There were many tasks for which Defendants do not seek fees even though the work was relevant to enforcing Perfect 10's discovery compliance. *See* Declaration of Armen Nercessian ("Nercessian Decl.") at ¶8. For instance, the motion papers included charts that counsel had created from

---

[1] This briefing supplements the Declaration of Joseph S. Belichick in support of Defendants' Motion for Sanctions, filed January 16, 2015. Dkt. 653. Although the Court has not requested briefing regarding the reasonableness of defense counsel's rates, the record contains extensive briefing on that issue. *See* Dkt. 655 [Reply Brief] at 14-18; Dkt. 655-1 [Reply Declaration of Bridges] at ¶¶24, 36-39, Ex. X; Dkt. 655-34 [Reply Declaration of Zeughauser]; Dkt. 644 [Opening Brief] at 21-23; Dkt. 644-1 [Declaration of Bridges] at ¶¶9-45, Exs. 2-3; Dkt. 644-19 [Declaration of Zeughauser].

spreadsheets tracking Perfect 10's degree of compliance with each of the Court's orders on a request-by-request basis. Nercessian Decl. at ¶9; *see also, e.g.*, Dkt. 389 [Declaration of Todd Gregorian (hereinafter, "Gregorian Decl.")], Exs. 14, 15, 36 (charts of deficiencies). Over the course of discovery, defense counsel reviewed Perfect 10's productions and built the spreadsheets by identifying both the responsive information and the deficiencies in Perfect 10's responses. Nercessian Decl. at ¶9. While that work contributed to Defendants' motions enforcing discovery compliance, and made the work on the motions more efficient, Defendants have not sought reimbursement for it. Nercessian Decl. at ¶9, Ex. 4 [Excerpted Billing Statements] (billing entries associated with development of compliance spreadsheets). Instead, they seek fees for developing and drafting the charts and other supporting materials that were specific to the enforcement motions.

At the sanctions hearing, the Court inquired about certain highlighted billing entries for which Defendants seek fees. *See* Nercessian Decl., Ex. 3 [Jan. 26, 2015 Sanctions Hearing Transcript] at 9:3-17 (question about specific entry), 10:6-11 (same), 10:12-17 (same), 11:5-9 (same), 11:18-23 (same). The Court's questions generally pertained to whether Defendants sought reimbursement for the entirety of or only part of each highlighted billing entry.[2] To dispel any confusion, following the hearing, counsel individually reviewed each billing entry to provide specific estimates of the time attributable to the compensable tasks alone. Defendants' new Exhibit 1 to this paper is a revision of the Exhibit 1 they filed in connection with Declaration of Joseph S. Belichick on January 16, 2015. Nercessian Decl. at ¶3, Ex. 1 [Update of Exhibit 1 to Belichick Declaration]; *see also* Dkt. 653.

---

[2] For instance, the Court inquired about two tasks pertaining to efforts to enforce compliance by Perfect 10's nonparty affiliates: "Confer with J. Belichick re meet and confer on third party subpoenas" and "Confer with J. Belichick re third party discovery issues." Nercessian Decl., Ex. 3[Jan. 26, 2015 Sanctions Hearing Transcript] at 9:3-17 and 10:6-11.

DEFENDANTS' RESPONSE TO COURT'S REQUEST RE SANCTIONS MOTION     2     CASE NO. 11-cv-07098-AB (SHx)

Defendants' revised billing statements contain two kinds of entries: (1) entries for which Defendants seek **complete reimbursement**; and (2) entries for which Defendants seek **partial reimbursement**. Nercessian Decl. at ¶3, Ex. 1 [Update of Exhibit 1 to Belichick Declaration]. Defendants have also annotated the billing statements as follows:

- blacking out entries that have no relation to the sanctions request;
- striking out portions of time entries that have no relation to the sanctions request; and
- providing revised time figures for the relevant portions of time entries, while leaving intact the time entries that pertain exclusively to the sanctions request.

*Id.* These revisions show exactly the fees that Defendants seek as sanctions. (On some entries, defense counsel have also redacted certain small portions of an entry to protect work product and privileged material, but the distinction between the blacking out of irrelevant entries and the blacking out of redacted material should be apparent.)

For ease of review, Defense counsel have also broken down Defendants' fee request by motion: (1) fees relating to the motion pertaining to certain nonparty Perfect 10-related witnesses (Dkt. 342); (2) fees relating to the motion pertaining to Mr. Yamato (Dkt. 322); and (3) fees relating to this motion for discovery compliance and for sanctions (Dkt. 356). Nercessian Decl. at ¶10.

Finally, taking the most conservative approach, Defendants have removed any work for document review from their fee request.[3] Fenwick's billing system requires its timekeepers to provide a "task code" when entering their time. Nercessian Decl. at ¶7. The task code identifies the general type of work in the

---

[3] Defendants agree with the Court that "any of the hours involv[ing] solely review of discovery actually produced by Plaintiffs" are "not compensable." *See* Dkt. 675 at 1.

entry from a pre-set list of categories (*e.g.*, "written discovery," "summary judgment motions"). *Id.* Defendants do not request any reimbursement of hours for entries coded "Document Review/Production," even though Defendants' discovery enforcement motions required such work. Nercessian Decl. at ¶8. Use of Fenwick's task codes, in addition to careful review of the invoices, ensures that the time entries in the request reflect work pertaining only to Defendants' enforcement motions.

## II. DEFENSE COUNSEL SPENT A REASONABLE NUMBER OF HOURS ON THE DISCOVERY ENFORCEMENT MOTIONS.

Having obstructed discovery and driven up Defendants' legal fees, Perfect 10 ironically complains that defense counsel spent an unreasonable amount of time seeking discovery compliance. This motion addressed Perfect 10's noncompliance with six discovery orders of the Court, covering Perfect 10's compliance with over seventy-five document requests and fifteen interrogatories. *See* Dkt. 676 [Further Interim Findings] at 2-6. The motion also required examination of nonparty declarations by Perfect 10-affiliated witnesses, their discovery responses, and their deposition testimony. *See* Dkt. 395 [Declaration of Joseph Belichick in support of Joint Stipulation]; Dkt. 427 [Supplemental Declaration of Joseph Belichick]. The resulting Joint Stipulation exceeded 140 pages and included extensive supporting materials chronicling Perfect 10 and its affiliates' noncompliance on a request-by-request basis. *See, e.g.*, Dkt. 388 [Joint Stipulation]; Gregorian Decl., Exs. 14, 15, 36 (charts of deficiencies). Perfect 10 increased the work necessary for the motion both by filing untimely objections and by submitting briefing and correspondence either urging delay or opposing any hearing on this motion. *See* Dkt. 656 [Objections to Proposed Further Amended Order]; Nercessian Decl., Ex. 6 [Jan. 13, 2015 Perfect 10 Response re: Pending Motion], Ex. 5 [Oct. 27, 2014 Perfect 10 Statement re: Pending Motion], Ex. 7 [Email exchange between Schultz and

Gregorian, dated December 4 and 5, 2014] (refusing to stipulate to the continued jurisdiction of the Court to hear the motion).

At every turn, Perfect 10 multiplied the fees and expenses of Defendants. Perfect 10 failed to deliver its productions consistent with standard practices. *See* Gregorian Decl. at ¶¶16-18. Perfect 10 also refused to meet and confer in good faith, compelling Defendants to undertake several rounds of correspondence and conferences that did not bring the parties any closer to resolving their discovery disputes. *See* Dkt. 676 [Further Interim Findings] at 6-9. In fact, Defendants had to hold three separate Local Rule 37-1 conferences to address the deficiencies in Perfect 10's compliance. *See id.* Even with all that, Perfect 10 maintains that Defendants did not do enough "to disclose to Perfect 10 their positions with respect to the issues raised in the Motion."[4] Dkt. 656 [Objections to Proposed Further Amended Order] at 9. Despite clear orders from the Court, Perfect 10 tries to shift its burdens to Defendants. *See, e.g.* Dkt. 676 [Further Interim Findings] at 8 ("Mr. Benink requested that Defendants agree to modify the Court's June 5, 2014 Order. Counsel for Perfect 10 offered no proposals, stating that Defendants 'bear the burden' to make a proposal.").

As this Court already found, "defendants had to file numerous Motions, each prefaced by meet and confers, to obtain, at great expense, the underlying Orders" and—in the face of Perfect 10's intransigence and obfuscation—Defendants had no choice but to take reasonable steps ensure Perfect 10's compliance. *See* Dkt. 665 at 1. Given the scale of the necessary effort and Perfect 10's unwillingness to cooperate, the number of hours Defendants spent attempting to secure compliance with the Court's discovery orders is reasonable.

---

[4] Even now, Perfect 10 intends to prolong this sanctions proceeding by moving for review of any adverse ruling by this Court. Nercessian Decl. at ¶6, Ex. 2 [Feb. 9, 2015 email from Schultz to Defendants' counsel]; *see also* Dkt. 677 at 2.

DEFENDANTS' RESPONSE TO COURT'S REQUEST RE SANCTIONS MOTION      5      CASE NO. 11-cv-07098-AB (SHx)

### III. DEFENDANTS REQUEST LEAVE TO SUBMIT SUPPLEMENTAL EVIDENCE OF ADDITIONAL FEES SINCE DECEMBER 31, 2014 THAT THE COURT SHOULD AWARD AS SANCTIONS.

Pursuant to the Court's Order dated December 19, 2014 (Dkt. 639), on January 16, 2015, Defendants filed the "relevant billing statements and supporting declarations" regarding their fee request. Dkt. 653. At that time, Defendants noted that their fee request included only the hours and fees that had been entered and released in the Fenwick billing system as of December 31, 2014, and did not include any estimates for unreleased December 2014 time or Fenwick's work relating to the sanctions motion in January 2015. Since December 31, 2014, Fenwick has spent considerable additional hours that are directly related to the sanctions motion, including among other things:

- preparing Defendants' fee request (Dkt. 653);
- preparing findings of fact and conclusions of law in a detailed proposed order that the Court requested (Dkt. 654.1);
- preparing for and attending the Court hearing on January 26, 2015;
- preparing and filing Defendants' Response to Perfect 10's Objections to the Proposed Further Amended Order (Dkt. 672); and
- preparing and filing Defendants' Opposition to Perfect 10's Request for leave to File Supplemental Declarations (Dkt. 673).

Defendants again request the opportunity to file an additional declaration and billing statements, which will include any unreleased December 2014 billings and Fenwick's January and February 2015 billings that relate directly to the sanctions motion. *See* Nercessian Decl. at ¶5; Belichick Decl. at ¶3.

### IV. CONCLUSION

Defendants have narrowly tailored their sanctions fee request to include fees for only work directly on the discovery enforcement motions. Defendants have also identified which portions of specific billing entries are compensable. Had Perfect

10 and its affiliates complied with this Court's orders, had they candidly acknowledged their failures and promptly sought to correct them, and had they not covered them up or blamed them on Defendants, defense counsel would not have had to devote the extraordinary amount of time they did on their discovery enforcement motions.  Perfect 10's unreasonableness does not render Defendants' diligence in seeking to enforce this Court's orders unreasonable.  The Court should award Defendants the full amount of sanctions they seek.

Dated:  February 11, 2015    FENWICK & WEST LLP

By: */s/ Andrew P. Bridges*
      Andrew P. Bridges

Attorneys for Defendants
GIGANEWS, INC., and
LIVEWIRE SERVICES, INC.