1
2
3
4
5
6
7
8           UNITED STATES DISTRICT COURT
9           CENTRAL DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| PERFECT 10, INC. | Case No.  CV 11-07098-AB (SHx) |
| Plaintiff, | **ORDER DENYING PLAINTIFF PERFECT 10, INC.'S MOTION FOR RECONSIDERATION OF THE COURT'S ORDER GRANTING SUMMARY JUDMENT IN FAVOR OF DEFENDANTS RE INDIRECT COPYRIGHT INFRINGEMENT** |
| v. | |
| GIGANEWS, INC. *et al.* | |
| Defendants. | |

Pending before the Court is Plaintiff Perfect 10, Inc.'s ("Perfect 10") motion for reconsideration (Dkt. No. 627) of the Court's order (Dkt. No. 620) granting Defendants' motion for summary judgment re indirect copyright infringement (Dkt. No. 440) and denying as moot Perfect 10's mirror-image motion for summary judgment. (Dkt. No. 467.)  For the reasons discussed more fully below, Perfect 10 fails to satisfy the requirements for reconsideration, and the Court **DENIES** the motion.

I.      **Background**

On November 14, 2014, this Court entered three separate orders disposing of the parties' seven competing motions for partial summary judgment.  (Dkt. Nos. 619,

620, & 621.)   First, the Court granted Defendants' motion for partial summary judgment on the question of direct copyright liability, holding that the undisputed evidence demonstrated Defendants could not be liable for direct copyright infringement as a matter of law.  (Dkt. No. 619.)  Having granted partial summary judgment on direct infringement in defendant's favor, the Court denied Perfect 10's mirror-image motion for partial summary judgment on direct infringement as moot. (Dkt. No. 619.)  Next, the Court granted Defendants' motion for partial summary judgment on the question of indirect copyright liability, concluding the undisputed evidence demonstrated Giganews, Inc. ("Giganews") could not be liable for contributory or vicarious copyright infringement.[1]  (Dkt. No. 620.)  The Court then denied Perfect 10's mirror-image motion for partial summary judgment on the question of indirect copyright infringement as moot.  (Dkt. No. 620.)  Finally, the Court denied the parties remaining three motions for partial summary judgment on a handful of non-dispositive issues as moot because the Court's first two orders disposed of all the claims remaining in the action.  (Dkt. No. 621.)  After considering Perfect 10's objections to Defendants' proposed judgment (and adopting some of them), the Court entered judgment in Defendants' favor on November 26, 2014.  (Dkt. No. 628.)

After the Court entered judgment, Perfect 10 moved for reconsideration of the Court's order on the question of indirect copyright infringement.  (Dkt. No. 627.) Because Perfect 10 does not move for reconsideration of the Court's order granting summary judgment in Defendants' favor on the question of direct copyright infringement or the Court's order denying the remaining motions for summary judgment as moot, the Court does not address those orders further.  Nor does the

---

[1] Because Perfect 10's claims of indirect copyright infringement against Defendant Livewire Services, Inc. had already been dismissed with prejudice at the pleading stage, the Court's order did not address Perfect 10's claims of indirect infringement against Livewire.

Court address the portion of its order on indirect infringement concluding Giganews could not be liable for vicarious infringement as a matter of law because the undisputed evidence showed Giganews did not obtain a direct financial benefit from the infringing conduct of third parties.  (*See* Dkt. No. 620, pp. 3-7.)  Perfect 10 does not seek reconsideration of any portion of the Court's order on vicarious infringement.

## II.    Legal Standard

"A district court may reconsider its grant of summary judgment under either Federal Rule of Civil Procedure 59(e) (motion to alter or amend a judgment) or Rule 60(b) (relief from judgment)."  *School Dist. No. 1J, Multnomah County Or. V. ACandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993).  Generally, a motion for reconsideration brought within 28 days of the entry of judgment is treated as a motion under Rule 59(e).  *See* Fed. R. Civ. Proc. 59(e) (motions to alter or amend judgment under that rule must be brought within 28 days of entry of judgment); *see also In re Benham*, No.  CV 13-00205-VBF, 2013 WL 3872185, at *1 (C.D. Cal. May 29, 2013) ("A motion for reconsideration filed within 28 days of a judgment is typically treated as a motion under Federal Rule of Civil Procedure 59(e)").  Perfect 10 moves for reconsideration under Rule 59(e).  (Dkt. No. 627, p. 1.)  "Under Rule 59(e), a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law."  *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999).  Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources."  *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003).  "For reasons of judicial economy and finality, such motions are disfavored and are rarely granted."  *Resolution Trust Corp. v. Aetna Cas. & Sur. Co.*, 873 F. Supp. 1386, 1393 (D. Ariz. 1994)

1   Although a party may make a Rule 59(e) motion to substantively challenge a
2   court's entry of summary judgment, the challenge must be grounded in truly *new* law
3   or evidence.   Reconsideration "may not be used to relitigate old matters, or to raise
4   arguments or present evidence that could have been raised prior to the entry of
5   judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quotation
6   omitted).  A motion to reconsider may not "rehash[] what ha[s] been before the court
7   when it ruled" on the prior motion. *Faysound Ltd. v. United Coconut Chemicals, Inc.*,
8   878 F.2d 290, 296 (9th Cir. 1989); *accord* Cai*sse Nationale de Credit Agricole v. CBI
9   Industries, Inc*., 90 F.3d 1264, 1270 (7th Cir.1996) ("Reconsideration is not an
10  appropriate forum for rehashing previously rejected arguments or arguing matters that
11  could have been heard during the pendency of the previous motion.").   Nor does
12  reconsideration afford a party an opportunity to try out new arguments or evidence
13  that it could have, but did not, discover or advance the first time around. *U.S. v.
14  Westlands Water Dist.*, 134 F.Supp.2d 1111, 1130 (E.D. Cal. 2001); *United States v.
15  Navarro*, 972 F.Supp. 1296, 1299 (E.D. Cal. 1997).   Generally, the aim of
16  reconsideration is to accommodate a fundamental change in circumstances going to
17  the heart of a court's original analysis.

19   Alternatively, reconsideration may also be used as a narrow vehicle to correct a
20  "clear" or "manifest" error of law or fact in a court's earlier ruling. *Roschewski v.
21  Raytheon Co*., 471 F. App'x 588, 589 (9th Cir. 2012) (citing *School Dist. No. 1J,
22  Multnomah Cnty., Or. v. ACandS, Inc*., *supra,*, 5 F.3d 1255, 1262–63 (9th Cir.1993).
23  Although the Ninth Circuit has not yet articulated what constitutes a "clear" or
24  "manifest" error for the purposes of reconsideration, other circuits have.  As the Fifth
25  Circuit has noted, "'clearly erroneous' is a very exacting standard. Mere doubts or
26  disagreement about the wisdom of a prior decision...will not suffice for this exception.
27  To be clearly erroneous, a decision must strike us as more than just maybe or probably
28  wrong; it must be dead wrong." *Hopwood v. State of Texas*, 236 F.3d 256 (5th Cir.

2000) (internal quotes omitted); *see also Campion v. Old Republic Home Prot. Co.*, No. 09-CV-748-JMA NLS, 2011 WL 1935967, at *1 (S.D. Cal. May 20, 2011) (citing *Hopwood* and applying this standard on motion for reconsideration).  Similarly, a "'manifest error' is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601 (7th Cir. 2000); *see also Mays v. Colvin,* No. 1:13-CV-00904-SKO, 2014 WL 6893825, at *3 (E.D. Cal. Dec. 8, 2014) (citing *Oto* and applying this standard on motion for reconsideration).

## III.   Discussion

Perfect 10 does not seek reconsideration on the ground that new evidence or law undermines the Court's holding on the question of contributory infringement. Instead, Perfect 10 seeks reconsideration solely on the ground that the Court committed clear and manifest error by ignoring Perfect 10's authorities and evidence. The Court considers each of these arguments in turn.

### A.   The Court Did Not Ignore, Disregard, Or Misapply Any Controlling Authorities Cited In Plaintiff's Opposition

The bulk of Perfect 10's motion for reconsideration contends that the Court failed to account for Perfect 10's evidence.  However, Perfect 10 also contends that the Court committed clear and manifest error by failing to address two cases Perfect 10 cited in its reply to its own motion for summary judgment on the issue of indirect copyright infringement.  (Dkt. No. 627, p. 14 (noting two cases cited in Dkt. No. 620, Perfect 10's reply brief.)  Perfect 10 first argues that the court failed to consider the unreported, out-of-circuit district court decision in *Rogers v. Elcor Studio*, No. 11-CV-4493(ARR)(RER), 2013 WL 7552256, at *7 (E.D.N.Y. Feb. 7, 2013) which held that

1   a copyright notice at the end of a film gave the alleged infringer actual and
2   constructive notice that the film was subject to copyright.  (Dkt. No. 627, p. 14.)
3   Perfect 10 also argues that the Court failed to consider the Ninth Circuit's holding in
4   *Ellison v. Robertson*, 357 F.3d 1072, 1077 (9th Cir. 2004) that a phone call from an
5   AOL subscriber should have put AOL on notice of the existence of the infringing
6   activity on the particular USENET group at issue in that case.  (Dkt. No. 627, p. 14.)

7

8       To begin with, the Court notes that its summary judgment order on indirect
9   infringement only addressed the substance of Giganews' motion, which was
10   dispositive of the entire question of indirect infringement.  The Court's did not
11   address *Rogers v. Elcor Studio* because **Perfect 10 did not cite that case anywhere**
12   **in its opposition**.  (Dkt. No. 536.)  "Judges are not like pigs, hunting for truffles
13   buried in briefs."  *Independent Towers of Washington v. Washington*, 350 F.3d 925,
14   929 (9th Cir. 2003) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th
15   Cir.1991)).  To the extent Perfect 10 thought *Rogers v. Elcor Studio* was material to
16   opposing Giganews' motion for partial summary judgment, it was free to cite that case
17   in opposition.  It did not do so.  Fed. R. Civ. Proc. 56(c)(1)(C) ("The court need only
18   consider the cited materials" in opposition to summary judgment).  Instead, Perfect 10
19   cited that case in a string citation in its reply brief to its own summary judgment
20   motion (Dkt. No. 606, p. 19), which the Court did not reach because Giganews'
21   motion was dispositive of the question.  Likewise, although all parties and the Court
22   cited *Ellison v. Robertson* in the context of Giganews' motion, Perfect 10 did not cite
23   *Ellison* for that proposition in opposition to Giganews' motion.  Again, Perfect 10
24   only cited *Ellison* on that point in a single sentence in its reply to its own motion for
25   summary judgment.  (*Id.*)  In hindsight, Perfect 10 may wish it had opposed
26   Giganews' motion on different grounds, but reconsideration is not an opportunity to
27   take a second bite at the apple.  *Exxon Shipping Co. v. Baker*, 554 U.S. at 485 n.5.  It
28   is an opportunity to correct the Court's error, not Perfect 10's.

But even if Perfect 10 had cited either case for the propositions it now articulates, neither case undermines the Court's reasoning.  In *Rogers v. Elcor Studio*, for example, a foreign film company made a "shot-by-shot reproduction" of the plaintiff's original film, and even used audio pulled directly from the original work. *Rogers v. Elcor Studio*, 2013 WL 752256, at *1.  On a motion for default judgment to determine the appropriate amount of damages, the district court observed the defendant had actual knowledge that the original work was copyrighted because the original film "contained a copyright notice at the end of the film.  *Id*., at *7. Importantly, the district court inferred in that *direct infringement* action that the defendant had seen the copyright notice in the film because there was no question the defendant had watched the film to make its "shot-by-shot" copy of the original film in "exacting detail." *Id*.  In this case, by contrast, there was no evidence that Giganews ever personally viewed or copied any of Perfect 10's copyrighted material such that it would have had occasion to see a "copyright notice" contained in the image.[2]  Indeed, it is for that reason that the Court granted summary judgment in favor of Defendants on the issue of direct infringement – a result Perfect 10 does not challenge by reconsideration.

Likewise, in *Ellison v. Robertson*, there was evidence that an AOL user put AOL on notice that a *specific* newsgroup contained unauthorized copies of *specific* works.  *Ellison v. Robertson*, 357 F.3d at 1077.  Based on that specific warning of specific infringing material in a specific newsgroup, the Court of Appeals concluded AOL should have known "of the infringing activity on the particular USENET group

---

[2] As another court of this district has observed when Perfect 10 made a similar argument, Giganews "is not obligated to comb through tens of thousands of images to determine which ones contain copyright notices. This would impermissibly "shift a substantial burden from the copyright owner to the provider … ."  *Perfect 10, Inc. v. Google, Inc.*, No. CV 04-9484-AHM (SHx), 2010 WL 9479059, at *10 (C.D. Cal. July 26, 2010) (quoting *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007).).

1     at issue in [that] case… ."  *Id*.  That holding is entirely consistent with the litany of

2     Ninth Circuit decisions preceding and following *Ellison*, cited at length in the Court's

3     summary judgment order, that Perfect 10's claim for contributory infringement

4     required evidence that Giganews had specific knowledge of specific infringing content

5     on its servers.  *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d

6     1006, 1022 (9th Cir. 2013); *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068,

7     1072 (9th Cir. 2013); *Perfect 10, Inc. v. Amazon.com, Inc*., 508 F.3d 1146, 1172 (9th

8     Cir. 2007) *A&M Records, Inc. v. Napster, Inc*., 239 F.3d 1004, 1020-21 (9th Cir.

9     2001).  Nothing in *Ellison* suggests a contrary result.  Even if Perfect 10 had properly

10    raised the argument it belatedly attempts to assert on reconsideration, the result would

11    be the same because the undisputed evidence showed Giganews did not have specific

12    knowledge of a specific message or newsgroup containing specific infringing content.

13

14              **B.      The Court Did Not Ignore, Disregard, or Misapply any of Perfect**

15                        **10's Material Evidence**

16

17            The remainder of Perfect 10's request for reconsideration concerns the Court's

18    conclusion that:

19                  "[T]here is no evidence that Giganews had any knowledge,

20                  actual or constructive, of any specific infringing content other

21                  than those messages for which Perfect 10 provided legible

22                  Message IDs.  As to those messages, the evidence is undisputed

23                  that Giganews promptly blocked access to the infringing

24                  message."

25

26    (Dkt. No. 620, at p. 13.)  Perfect 10's assertion that the Court was "dead wrong" on

27    this point rests on several separate arguments.

28

1       **1.    The Undisputed Evidence Shows Message-IDs Were the**

2              **Only Method for Consistently Identifying a Specific Usenet**

3              **Message**

4

5       Perfect 10 disputes the Court's underlying conclusion "the evidence before the

6  Court is undisputed that the only method for consistently identifying a specific Usenet

7  message that Giganews could promptly remove is the post's Message-ID." (Dkt. No.

8  627, pp. 7-8 (quoting Dkt. No. 620,  p. 12).)  Perfect 10 begins by repeating its

9  evidence that "Message Descriptions are superior to Message-IDs" to identify specific

10  infringing content.  (Dkt. No. 627, p. 7.)  This Court has twice considered this

11  argument, and the evidence Perfect 10 offers in support of it, and found it insufficient

12  to create a disputed issue of material fact.  (Dkt. No. 620, pp. 10-12; Dkt. No. 619, p.

13  $3^3$ (considering evidence of various fields contained in every Usenet message, and

14  observing the evidence is undisputed that a Message-ID is the "only way to uniquely

15  identify a Usenet message" because the content of Message-ID field is the only field

16  that is not subject to the arbitrary whims of the individual making the post and is the

17  only field that cannot be the same in any two messages).)[4]

18

19       To make this argument, Perfect 10 cites to a host of evidence it contends the

20  Court "failed to consider" or "overlooked." (Dkt. No. 627, pp. 7-8.)  To the extent the

21  Court "failed to consider" or "overlooked" the evidence Perfect 10 identifies in its

22  motion for reconsideration, the reason is simple:  Perfect 10 did not cite any of it in its

23

---

24  [3] In its order on indirect infringement, the Court expressly incorporated the fact summary from  its

25  order on direct liability.  (Dkt. No. 620, p. 2.)

26  [4] Perfect 10 did not previously, and does not now, offer anything to controvert the evidence that a

27  Message-ID is the only field in a Usenet message over which the individual posting the message (in
this context, the alleged direct infringer) has no control.  Nor has Perfect 10 submitted any evidence
to controvert the notion that, unlike every other field in a message, the Message-ID field is the only

28  field in a Usenet post that cannot be the same for any two messages.

1  opposition.   Pursuant to Federal Rule of Civil Procedure 56(c)(1), Perfect 10 was
2  required to "cite to particular parts of the materials in the record" that would "establish
3  the … presence of a genuine dispute… ."   Fed. R. Civ. Proc. 56(c)(1)(A) & (B).
4  Perfect 10 largely failed to do so, and it would have been "unfair" to the Court and
5  "profoundly unfair" to Giganews to require the Court "to search the entire record for a
6  genuine issue of fact, even though [Perfect 10] [did] not set it out in the opposition
7  papers."  *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th
8  Cir. 2001).  Perfect 10's newfound reliance on evidence well outside the record on the
9  motion for summary judgment would, in effect, transform the Court into "the lawyer
10  for [Perfect 10], performing the lawyer's duty of setting forth specific facts showing
11  that there is a genuine issue for trial."  *Id.* [5]

12

13  Of course, in the context of cross-motions for summary judgment, a party may
14  cite to evidence attached to a separate motion for summary judgment.  *Fair Housing*
15  *Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1135-36 (9th Cir.
16  2001).   Even so, however, "when parties submit cross-motions for summary
17  judgment, each motion must be considered on its own merits" and "[t]he court must
18  rule on each party's motion on an individual and separate basis.  *Id.* at 1136 (internal
19  quotes omitted").   A party opposing summary judgment who wishes to have the court
20  to consider evidence cited in a separate motion for summary judgment must actually
21  *cite* the evidence *in its opposition papers*.  *Id.* (noting on cross-motions for summary
22  judgment, district court is required to review evidence filed in support of another
23  motion so long as that evidence is "specifically identified in [the] moving papers")  As
24  one leading treatise correctly puts it, "a cross-motion for summary judgment is not an

25  _____

26  [5] At oral argument, Perfect 10 suggested it had somehow cited the entire docket in this case (which
   exceeds 600 entries) in support of its opposition.  Even if it had been proper to do so (it would not),
27  Perfect 10 did no such thing.  Instead, Perfect 10's separate statement cited specific items of
   evidence in support of its motion.  (See generally, Dkt. No. 537.)  That evidence was insufficient to
28  survive summary judgment.

opposition to the original motion." Cal. Prac. Guide Fed. Civ. Pro. Before Trial, ¶14:122.5 (citing *Beard v. Banks*, 548 U.S. 521, 527). To the extent Perfect 10 sought to oppose Giganews' motion based on evidence attached to one of the other six motions for summary judgment, Perfect 10 was required to actually cite that evidence in its opposition papers. Fed. R. Civ. Proc. 56(c)(1)(A), (c)(3); *Beard v. Banks*, *supra*, 548 U.S. at 527 (where party filed cross-motion for summary judgment rather than opposition to original motion for summary judgment, district court properly treated original motion as unopposed).

Nevertheless, the bulk of the evidence Perfect 10 cites in support of reconsideration was not cited anywhere in any of their opposition papers to Giganews' motion. In support of its contention that the Court ignored important evidence, for example, Perfect 10 cites extensively to evidence it submitted in support of:

- Perfect 10's opposition to Giganews' motion for summary judgment on the adequacy of Perfect 10's notices under the Digital Millennium Copyright Act's ("DMCA") safe harbor provision and supporting evidence (Dkt. No. 550); and

- Perfect 10's reply in support of its own motion on indirect infringement and supporting evidence. (Dkt. Nos. 606, & 616.)

(Dkt. No. 627, pp. 7-9.) Perfect 10 did not cite to any of that evidence in its opposition papers (including Perfect 10's opposition separate statement), and it would have be wholly inappropriate for the Court take on the role of Perfect 10's lawyer, scouring the docket for uncited evidence in support of Plaintiff's opposition. *Carmen v. San Francisco Unified School Dist.*, 237 F.3d at 1031.

Perfect 10 also contends that the Court did not consider evidence Perfect 10 submitted in support of its own motion regarding the sufficiency of its notices under the DMCA bearing on the role of Message-IDs in identifying a unique Usenet message.  (Dkt. No. 627, pp. 7-9.)  Although Perfect 10 apparently did cite to some of that evidence a handful of times in its opposing separate statement (Dkt. No. 537), Perfect 10 failed to cite any of that evidence in its opposition brief or argue why any such evidence created a disputed issue of material fact.  This fact alone prevents reconsideration, as Perfect 10's failure to address that that evidence in its opposition waived any arguments related to it.  *U.S. v. Kitsap Physicians Service*, 314 F.3d 995, 999 (9th Cir. 2002) (party's failure to present evidence to in opposition brief to district court on summary judgment waived argument relating to that evidence); .  *Moreno Roofing Co., Inc. v. Nagle*, 99 F.3d 340, 343 (9th Cir. 1996) (passing remarks on an issue in opposition to summary judgment insufficient to avoid waiver); *accord John-Charles v. California*, 646 F.3d 1243, 1247 n.4 (holding party "failed to develop any argument on this front, and thus has waived it"); *U.S. v. Kimble*, 107 F.3d 712, 715 n.2 (9th Cir. 1997) (where party fails to "coherently develop[]" an argument on appeal "we deem it to have been abandoned"); *see also U.S. v. George*, 291 Fed. App'x. 803, 805 (9th Cir. 2008) (holding party's "failure to adequately develop these arguments in his brief operates as a waiver"); and *REP MCR Realty, L.L.C. v. Lynch*, 363 F.Supp.2d 984, 1015 (N.D.Ill.2005) (holding that a plaintiff waives an argument he fails to raise in opposition to a motion).

But even if Perfect 10's citation to evidence in its separate statement alone was sufficient to put that evidence at issue in Giganews' motion for summary judgment on indirect liability, the evidence did not create a disputed issue of fact and the Court did not "clearly" and "manifestly" err by not discussing it.  Perfect 10 first cites to evidence submitted in support of its own DMCA motion suggesting that in certain circumstances it was impossible to obtain a Message-ID for a particular message, but

1   still possible to download infringing content from Giganews' servers.  (Dkt. No. 627,
2   p. 7 (citing Dkt. No. 449-3, ¶31 & Dkt. No. 449-16, Exh. 14); *see also* Dkt. No. 537,
3   pp. 13-14.)  That evidence consists of a DMCA takedown notice Perfect 10's CEO
4   Norman Zada sent to Giganews and several other Usenet providers on April 17, 2014.
5   (Dkt. No. 449-16.)  In that notice, Zada stated he had conducted a search using the
6   Mimo newsreader software for photos of a particular model who had modeled for
7   Perfect 10. (*Id*, at Exh. 14, p. 1.)  Zada attached screenshots of his computer search
8   results to the notice.  (*Id*., at Exh. 14, pp. 3, 6, 9, & 12.)  In each of those screenshots,
9   Zada had selected a particular message from the search results, but the Mimo
10  newsreader did not display any "Header" information (which would include the
11  Message-ID) and gave the message "Header Failure:  Failed loading headers from
12  server." (*Id*.)  In a separate declaration, Zada declared he was still "able to download
13  infringing Perfect 10 images from those messages" despite the fact that the Mimo
14  newsreader software could not download the message header.  (Dkt. No. 449-3, ¶31.)
15  According to Perfect 10, the Court got it "dead wrong" by failing to discuss this
16  evidence before concluding that a Message-ID is the only way to uniquely identify
17  any specific message with specific infringing conduct.  (Dkt. No. 627, p. 7.)

18

19      As Giganews' evidence in reply made clear, however, Zada's search results did
20  not offer any evidence that content was available on Giganews' servers for which it
21  was impossible to obtain a Message-ID.  As Giganews' chief technology officer Philip
22  Molter explained in his reply declaration, newsreaders, such as the Mimo software
23  Zada used, rely upon third-party indices to search for content on Giganews servers,
24  much like a search engine such as Google searches its own index rather than the entire
25  internet, to respond to an individual search request.  (Dkt. No. 546-1, ¶12.)  Because
26  these third-party indices do not directly search Giganews' servers in real-time, an
27  index may return a search result for a message that no longer exists on Giganews'
28  servers.  (*Id*.)  However, because the message no longer exists on Giganews' servers, a

user who tries to access the non-existent message (including its message header) on Giganews' servers in response to a search query will be unable to do so, much in the same way that an internet search will sometimes produce inaccessible "dead links" to websites that are no longer available on the internet. (*Id.*)

In response to a search request for a particular set of search criteria, a newsreader like Mimo will often group multiple messages into a single search result listing, despite the fact that there is no similar association between the independent messages on Giganews' servers. (Dkt. No. 546-1, ¶14.) Because of this grouping, it is possible for a newsreader like Mimo to return an error message for one Message-ID but still download associated content from *other Message-IDs* grouped into the same search result. (*Id.*) This does not mean, however, that the Message-IDs from the still-available posts are unavailable as Zada suggests. (*Id.*) Such a result would be impossible because the fundamental architecture of the Usenet provides that content is only available through the Usenet by way of messages, and every message must have a corresponding Message-ID. (*Id.*) The fact that Zada did not know how to use his newsreader to identify the Message-IDs of the still-existing messages lumped into his single search result does not change the fundamental (and still undisputed) fact: if content is available on the Usenet, it must have an associated Message-ID. (*Id.*)

But as the Court noted in its order granting Giganews motion for summary judgment, the law places the responsibility of "identifying the potentially infringing material" (which can only truly be done with a Message-ID) "squarely on" Perfect 10. *Perfect 10, Inc. v. CCBill LLC* ("*CCBill*") 488 F.3d 1102, 1118 (9th Cir. 2007). Nothing in the evidence Perfect 10 identified in its opposition separate statement (but omitted from its opposition brief), suggests it was at all impossible for Perfect 10 to obtain a Message-ID for any specific infringing content *available on Giganews'*

*servers*,[6] nor does it suggest any basis "to shift [that] substantial burden from [Perfect 10] to" Giganews.  *Id*.  The Court did not clearly err in omitting a discussion of Perfect 10's irrelevant evidence on this point, and finds no basis for reconsideration.

> **2.     The Undisputed Evidence Shows Giganews Promptly Removed All Messages for which Perfect 10 Provided a Compliant DMCA Notice**

Perfect 10 next argues that the Court committed clear error in holding "the evidence is undisputed that Giganews promptly blocked access to the infringing messages" as soon as it received actual or constructive notice in the form of "legible Message IDs."  (Dkt. No. 627, p. 3 (quoting Dkt. No. 620, p. 13).)  Specifically, Perfect 10 points to a single sentence in its opposition brief where it noted "Giganews has also failed to process 10 Message-IDs found in DMCA notices sent by Perfect 10 via email."  (Dkt. No. 536, p. 21 (citing Dkt. No. 538 ¶47; Dkt. No. 508-3, Exh. 31, Dkt. No. 553.[7])  Again, Perfect 10's casual reference to this argument in opposition was insufficient to present it to the Court, and the argument is now waived.  *Moreno Roofing Co., Inc. v. Nagle*, *supra*, 99 F.3d at 343 (passing remarks on an issue in opposition to summary judgment insufficient to avoid waiver).  Perfect 10 may not

---

[6] It is also worth observing that nothing in the takedown notice even suggests any of the images were available on Giganews' servers.  None of the search results specify which index Zada searched, whether that search included an index of Giganews' servers, or from which server Zada actually downloaded the content.  (Dkt. No. 449-16.)  Indeed, Zada sent the takedown notice in question to multiple Usenet providers, each operating their own set of servers.  (*Id*., at p. 1.)  Zada's accompanying declaration adds no more insight, omitting any reference to the servers from which he actually downloaded the allegedly infringing content.  To the extent Perfect 10's intends to suggest this is evidence that content was available on *Giganews' servers* despite being unable to access the Message-ID, that inference lacks foundation.  To the extent Perfect 10 uses it to show that the allegedly infringing content was available somewhere on the Usenet, it is irrelevant.

[7] The Court's citation to Docket Number 553 refers to a manually lodged disk filed under seal with the Court.  The docket entry itself notes that the original exhibit is on file with the clerk.

1   seek a do-over by raising it for the first time on reconsideration.[8]

2

3         Still, even if Perfect 10 had not waived this argument by failing to raise it in

4   opposition to Giganews' motion for summary judgment on indirect liability, the

5   argument is unavailing.  On reconsideration, Perfect 10 identifies 10 takedown notices

6   it sent to Giganews using its search-and-screenshot method via email. (*See* Dkt. No.

7   620, pp. 10-11; Dkt. No. 619, pp. 5-6 (discussing Perfect 10's screenshot-search

8   takedown notices).)  Each of the screenshots displayed numerous search results, with

9   one arbitrarily selected search result.  (Dkt. No. 508-3, Exh. 31, Dkt. No. 553.)  For

10  each of those 10 searches, the screenshot displays a Message-ID for the randomly

11  selected search result buried in the message header in the bottom right corner of the

12  screen.  (Dkt. No. 508-3, Exh. 31, Dkt. No. 553.)  For those 10 select searches, Perfect

13  10 notes a similar search more than a year later revealed the message was still

14  available.  (Dkt. No. 508-3, Exh. 31, Dkt. No. 553.)

15

16        Highlighting a portion of the Court's order discussing Perfect 10's attempt to

17  fax similar DMCA notices in which the Court noted similar Message-IDs were

18  illegible, Perfect 10 concludes these 10 messages provided Giganews actual notice of

19  the allegedly infringing content contained in them because the images were clearer

20  than the ones they faxed.  Though true, this fact is of little relevance.  As the Court

21  *also* noted, DMCA notices that do not substantially comply with the requirements set

22  forth in the DMCA for a takedown notice "*shall not be considered* … in determining

23  whether a service provider has actual knowledge or is aware of facts or circumstances

24

---

25  [8] That Perfect 10 may have addressed at least part of this argument in one of its other motions for

26  summary judgment is immaterial.  As Perfect 10 conceded at oral argument, the Court was not
    required to construe all seven summary judgment motions as a single, "mega motion."  (Dkt. No.

27  648 pp. 29:24-30:1.)  If Perfect 10 believed this argument was sufficient to defeat Giganews' motion
    for summary judgment on the issue of indirect liability, Perfect 10 had the burden to present that

28  argument to the court in its opposition to Giganews' motion.  It failed to do so.

1   from which infringing activity is apparent."  17 U.S.C. §512(c)(3)(B)(i).  (*See* Dkt.

2   No. 620, p. 11 (quoting section 512(c)(3)(B)(i)).)  Among other things, a DMCA

3   takedown notice must identify "the material that is claimed to be infringing or to be

4   the subject of infringing activity and that is to be removed or access to which is to be

5   disabled, and information reasonably sufficient to permit the service provider to locate

6   the material."  17 U.S.C. §512(c)(3)(A)(iii).  As the Court further held, "[t]he goal of

7   this provision is to provide the service provider with adequate information to find and

8   address the allegedly infringing material expeditiously."   *Viacom Int'l, Inc. v.*

9   *YouTube, Inc.*, 940 F.Supp.2d 110, 115 (S.D.N.Y. 2013) (internal citations omitted).

10

11       This Court and Judge Collins have both concluded Perfect 10's screenshot-

12   search takedown notices fail to substantially comply with this basic DMCA

13   requirement.  (Dkt. No. 620, pp. 11-13; Dkt. No. 180, pp. 13-16.)  That Perfect 10's

14   emailed versions of those notices were slightly more legible is of little consequence

15   because, legible or not, inadequate takedown notices "shall not be considered" in

16   determining whether Giganews had notice of any infringing content on its servers.  It

17   may be that those deficient notices legibly identified a single Message-ID, but Perfect

18   10's own evidence made clear that Giganews utilizes an *automated* system for

19   processing takedown notices.  (Dkt. No. 539-1, p. 40:21-25.)  This automated system

20   is essential to expeditiously processing takedown notices in light of the staggering

21   volume of requests Giganews receives – in the year between November 6, 2012 and

22   November 6, 2013, Giganews processed more than half-a-billion takedown notices.

23   (*Id.*, at ¶32.)  Perfect 10 was well aware of this fact, indeed the Court drew the facts

24   from Perfect 10's own evidence, but the evidence was also undisputed that Perfect 10

25   obstinately refused to provide Message-IDs in any form that would permit Giganews

26   to process the requests through its automated system.  Even after Perfect 10 identified

27   a method of automatically extracting Message-IDs that it admitted would allow it to

28   takedown more than 90% of the alleged infringing material on Giganews' servers in

17.

less than 48 hours using Giganews' automated systems, Perfect 10 refused to present its takedown notices in a form that would permit Giganews to "find and address the allegedly infringing material expeditiously."  *Viacom Int'l, Inc. v. YouTube, Inc.*, *supra*, 940 F.Supp.2d at 115 (quoting DMCA legislative history); *accord Perfect 10 v. Giganews, Inc.*, 993 F.Supp.2d 1192, 1200 (C.D. Cal. 2014) (same, quoting *Viacom* and DMCA legislative history).

Even in their legible emailed form, the evidence is undisputed that Perfect 10's insistence on its screenshot-search method only presented the Message-IDs (to the extent it provided them at all) as non-searchable, secondary information in a larger image file, making it impossible for Giganews to use that information in its automated systems.  Indeed, Perfect 10 admits the ancillary Message-IDs in its screenshot-search notices were immaterial to the notices themselves.  (Dkt. No. 627, p. 12 (arguing it was not necessary to resend legible Message-IDs where a screenshot-search notice was illegible "because the notices asked Giganews to perform searches … and block all resulting messages, not merely the identified Message-IDs") (emphasis in original).)  Even the 10 takedown notices that happened to include a legible Message-ID which Giganews ostensibly failed to remove were never designed to specify a particular Message-ID with particular infringing content.  (*Id.*) (emphasis in original).)  As Perfect 10 acknowledges, its notices identified *search terms* rather than *specific content*. This is fatal under the DMCA, which requires a compliant notice identify *both* the specific infringing content *and* an effective means of locating that content.  17 U.S.C. §512(c)(3)(A)(iii).

Like other aspects of Perfect 10's takedown notices that both this Court and Judge Collins held inadequate under the DMCA, Perfect 10's screenshot-search notices would require Giganews to conduct a visual review of each of Perfect 10's notices on the chance that the screenshot included a Message-ID (most did not) and on

the chance that any such Message-ID was legible (most were not).  Giganews would then be required to manually transcribe the lengthy string of characters making up the Message-ID and perform an "onerous side-by-side" comparison (*see* Dkt. No. 620, p. 11; Dkt. No. 180, p. 16) of the Message-ID in Perfect 10's screenshot image and the transcribed Message-ID.  This is in contrast to Perfect 10's ability to simply copy-and-paste the Message-ID from the newsreader software and compile it in a file that Giganews could have quickly and efficiently processed through its automated DMCA takedown process.  Every aspect of Perfect 10's screenshot-search takedown notices undermined the fundamental purpose of the DMCA notice procedure, which places the burden "squarely" on Perfect 10 to "identify[] the potentially infringing material and adequately document" it (*CCBill*, 448 F.3d at 115) and to "provide [Giganews] with adequate information to find and address the allegedly infringing material *expeditiously*."  *Perfect 10 v. Giganews, Inc.*, 993 F.Supp.2d at 1200.

As the Court observed in its prior order, there is no question that a valid DMCA notice including a legible Message-ID would have given Giganews actual or constructive knowledge of specific infringement.  (Dkt. No. 620, p. 12.)  But the 10 DMCA notices Perfect 10 identifies in its motion for reconsideration are not such notices.  Rather, they are the sort of screenshot-search notices that run afoul of the very purpose of the DMCA takedown procedure, despite Perfect 10's legal burden and ability to produce compliant notices with text-readable Message-IDs.[9]

---

[9] Admittedly, the undisputed evidence also showed that Giganews actually did remove a number of messages identified in Perfect 10's deficient notices.  (Dkt. No. 558, ¶45; Dkt. No. 537, ¶45.) However, the fact that Giganews took the extra effort to take down content in response to a number of Perfect 10's deficient DMCA notices does not mean it was legally obligated to do so for all of them.  As Giganews pointed out at the hearing on this motion and the evidence at summary judgment made plain, its handful of attempts to accommodate Giganews' inadequate DMCA notices was simply not scalable given the volume of DMCA notices Giganews processes each year.  Nor is Plaintiff's suggestion that other Usenet service providers process Perfect 10's notices material.  Giganews had no obligation under the DMCA to redesign its entire takedown system to accommodate Perfect 10's screenshot method, even if other service providers had systems more amenable to them.  Moreover, the evidence was undisputed at summary judgment that Giganews is

**3.    The Court Did not Ignore Evidence Regarding When Perfect 10 Discovered a Software Feature that Would Allow Perfect 10 to Quickly Remove More than 90% of its Content From Giganews' Servers**

Perfect 10 also moves for reconsideration on the ground that the Court "overlooked Perfect 10's evidence that it did not learn of the automatic Message-ID extraction feature found in the Mimo newsreader until May 21, 2014, after Perfect 10 sent to Giganews all of the DMCA notices in this case, and that, without such knowledge, it would have taken Perfect 10 months to manually cut and paste 60,000 Message-IDs into a text file."  (Dkt. No. 627, pp. 9-10.)  The Court did not overlook any such evidence, and Perfect 10 does not identify any basis for reconsideration.

To begin with, much of the evidence Perfect 10 asserts the court overlooked was not cited anywhere any of Perfect 10's opposition papers. (*See* Dkt. No. 627, pp. 9-10 (identifying evidence Perfect 10 cited in its reply on a separate summary judgment motion, but not cited in Perfect 10's opposition brief or opposition separate statement to Giganews' summary judgment motion on indirect infringement).) Moreover, Perfect 10's argument regarding the day it discovered the particular feature of the Mimo newsreader misapprehends the point the Court made in its order granting Giganews' motion for summary judgment on indirect infringement.  The evidence is undisputed that Perfect 10 presently has the technological capability to easily remove "more than 90% of the infringing Perfect 10 content that Perfect 10 is aware of on Defendant's servers"  (Dkt. No. 325, ¶18) within 48 hours by automatically extracting Message-IDs into a machine-readable document and submitting them to Giganews'

---

by far the largest Usenet service provider.  That other service providers could do something at a smaller scale is not evidence that Giganews could do so at a much larger scale (let alone evidence that Giganews was legally obligated to do so).

automated takedown system.  Irrespective of when Perfect 10 learned of the software feature that would allow it to do so, the evidence is undisputed that Perfect 10 knows *now*.  It was that evidence, not the date of Perfect 10's discovery, that was relevant to the Court's analysis in its prior order.

Despite repeated admonitions from Giganews (and one from Judge Collins) that Perfect 10's takedown notices were inadequate under the DMCA, Perfect 10 insisted on using its screenshot-search DMCA notices and refused to supply the sort of machine-readable Message-IDs that would have allowed Giganews to immediately begin the takedown process.  That Perfect 10 *continues* to refuse to produce a compliant DMCA notice with machine-readable Message-IDs, despite its admitted ability to do so since at least May of 2014, belies Perfect 10's insistence that the purpose of its takedown notices was ever to provide Giganews sufficient information to "find and address the allegedly infringing material expeditiously." [10]  *Viacom Int'l,*

---

[10] At oral argument, Perfect 10 argued for the first time at any point in this action that in June 2014 it gave Giganews a list of roughly 54,000 machine-readable individual Message-IDs of infringing content but that Giganews has failed to take the messages down.  (Dkt. No. 648, p. 32:7-11.)  Perfect 10 did not present, cite, or proffer any evidence in support of this argument on summary judgment, in its motion for reconsideration, or at oral argument, and any such belated evidence cannot support reconsideration.  Nevertheless, the Court also notes Perfect 10 appears to have identified the evidence in question for the first time two weeks after the hearing on reconsideration in the context of an entirely different motion.  In opposition to Defendants' separate motion for attorneys' fees, Perfect 10 contends that it provided Giganews 54,000 machine-readable Message-IDs on June 26, 2014.  (Dkt. No. 650, p. 12, citing Dkt. No. 650-8, ¶¶11-12 & Exh. 1.)  Notably, however, Perfect 10 does not assert in its opposition to Defendants' attorneys' fee motion that it provided those Message-IDs in any manner consistent with a DMCA takedown notice.  *Id.*  Indeed, Defendants' note Perfect 10 produced those Message-IDs *in discovery responses* at Defendants' own request.  (Dkt. No. 655-1, ¶35.)  There is no evidence that Perfect 10's discovery responses (1) were submitted to Giganews' designated DMCA agent, or (2) included a statement under penalty of perjury that Perfect 10 had a good faith belief that Perfect 10 was the lawful owner of copyrighted content contained in each of those 54,000 Message-IDs, both of which are necessary for a compliant DMCA notice.  17 U.S.C. §512(c)(3)(A), (c)(3)(A)(v).  To date, Perfect 10 has refused to supply those Message-IDs in a DMCA notice despite its admitted ability to do so.  (Dkt. NO. 655-1, ¶35.)  If anything, that Perfect 10 has such a compilation at its immediate disposal only emphasizes the Court's prior observation – if Perfect 10 were actually interested in protecting its copyrights from infringement, it could do so in a matter days.  Instead, it makes a conscious choice not to do so.

21.

*Inc. v. YouTube, Inc.*, *supra*, 940 F.Supp.2d at 115.  If Perfect 10's goal is to remove its copyrighted material from Giganews' servers, Perfect 10 could have achieved that goal any time since May of 2014.  It chooses not to.  With the antidote in its hands, Perfect 10 declines to take it and instead insists on debating how badly it has been poisoned.

Nor did the Court "overlook" evidence that, prior to discovering the automated Message-ID extraction feature in the Mimo newsreader, it would have been very labor intensive to identify Message-IDs.  The Court merely emphasized that the burden of performing that task falls "squarely on" perfect 10, and declined to "shift [that] substantial burden" to Giganews.  (Dkt. No. 620, (quoting *CCBill*, 488 F.3d at 1113).)

### 4.  The Court Did Not Clearly Err in Failing to Separately Discuss Evidence of Immaterial Variations in Perfect 10's DMCA Notices

Perfect 10 further argues that the Court committed clear and manifest error by not considering evidence of screenshot-search notices Perfect 10 sent to Giganews after Judge Collins' original order.  (Dkt. No. 627, pp. 10-13.)  Again, however, a significant portion of the evidence Perfect 10 relies on for this proposition is nowhere to be found in any of Perfect 10's opposition papers to Giganews' summary judgment motion on indirect infringement.[11]  (*See* Dkt. No. 627, pp. 11-13 (citing to evidence in

---

[11] Specifically, Perfect 10 did not cite or rely upon any evidence regarding "Sample Notice A" in its opposition papers to Giganews indirect infringement summary judgment motion.  (*See* Dkt. No. 627, pp. 12-13.)  It would have been improper for the Court to consider such uncited evidence in deciding Giganews' summary judgment motion (*Carmen v. San Francisco Unified School Dist.*, 237 F.3d at 1031), and it would be similarly improper to reconsider summary judgment based on evidence Perfect 10 identifies for the first time in its motion for reconsideration.  *Exxon Shipping Co. v. Baker*, 554 U.S. at 485 n.5.

Dkt. Nos. 543, 550, 606, & 608, none of which were cited in Perfect 10's opposition brief or separate statement).)

With respect to the evidence that actually was before the Court on Giganews' indirect infringement summary judgment motion, Perfect 10's argument for reconsideration essentially boils down to a claim that its later screenshot-search notices produced fewer search results that would have alleviated some of the numerous problems with that search method identified by Judge Collins and this Court.  (Dkt. No. 627, pp. 10-12.)  The Court did not separately address these minor variations in Perfect 10's DMCA notices because they were immaterial to the Court's ultimate conclusion.  Nothing in the evidence Perfect 10 identified in its opposition papers (and emphasizes on reconsideration) changes the fundamental problem common to all of Perfect 10's takedown notices:  they identified *search terms*, not *specific infringing content* (which on the Usenet can only be uniquely identified with a Message-ID).  A search term on the Usenet is no more specific content than a search term on the World Wide Web is a website.  Perfect 10 has never offered any evidence to undermine this Court's and Judge Collins' holdings that "the material accessible through the Usenet is in a constant state of flux. As such, there is no certainty that any particular search will yield the exact same results at different times. Searches moments apart could yield different results."  (Dkt. No. 620, p. 11 (quoting Dkt. No. 180, p. 15.)  As this Court observed, the ever-changing nature of the content available on the Usenet made it effectively impossible for Perfect 10's screenshot-search notices to make representation in good faith that Perfect 10 owned the copyright to all the material accessible through the search terms.  (Dkt. No. 620, pp. 11-12 (citing 17 U.S.C. §512(c)(3)(A)(v)).)

**5.     The Court Did Not Clearly Err in Failing to Discuss Evidence of Willful Blindness that Perfect 10 Did not Cite or Rely Upon**

Finally, Perfect 10 argues that the Court committed manifest error because it "did not address Perfect 10's evidence of willful blindness" which Perfect 10 submitted in briefing on a separate motion and never identified in its opposition papers to Giganews' motion in indirect infringement. (Dkt. No. 627, p. 14.)  It would have been improper for the Court to consider such uncited evidence in deciding Giganews' summary judgment motion (*Carmen v. San Francisco Unified School Dist.*, 237 F.3d at 1031), and it would be similarly improper to reconsider summary judgment based on evidence Perfect 10 identifies for the first time in its motion for reconsideration.  *Exxon Shipping Co. v. Baker*, 554 U.S. at 485 n.5.  As to the arguments and evidence Perfect 10 actually did present in its opposition papers, the Court considered and rejected them. (Dkt. No. 620, p. 10, n.4.)

## IV.     Conclusion

In light of the foregoing, the Court **DENIES** Perfect 10's motion for reconsideration.  Perfect 10 does not identify any new evidence or law that it could not have, with reasonable diligence, presented to the Court in its opposition papers.  Nor does Perfect 10 identify any material evidence or authorities cited in its opposition papers that the Court ignored or disregarded such that the Court can be said to have committed clear or manifest error.

Dated:  March 6, 2015          _____
                                HONORABLE ANDRÉ BIROTTE JR.
                                UNITED STATES DISTRICT COURT JUDGE

24.