1 | ANDREW P. BRIDGES (CSB No. 122761)
abridges@fenwick.com
2 | JOSEPH S. BELICHICK (CSB No. 229371)
jbelichick@fenwick.com
3 | TODD R. GREGORIAN (CSB No. 236096)
tgregorian@fenwick.com
4 | FENWICK & WEST LLP
555 California Street, 12th Floor
5 | San Francisco, CA 94104
Telephone: 415.875.2300
6 | Facsimile: 415.281.1350

7 | Attorneys for Defendants
GIGANEWS, INC. and
8 | LIVEWIRE SERVICES, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9 | UNITED STATES DISTRICT COURT

10 | CENTRAL DISTRICT OF CALIFORNIA

11 | WESTERN DIVISION

| | |
|---|---|
| 12 PERFECT 10, INC., a California Corporation , | Case No.: 11-cv-07098-AB (SHx) |
| 13 Plaintiff, | **[REDACTED PUBLIC VERSION]** |
| 14 v. | **DEFENDANTS GIGANEWS, INC. AND LIVEWIRE SERVICES, INC.'S NOTICE OF MOTION AND MOTION TO ALTER OR AMEND JUDGMENT TO ADD JUDGMENT DEBTOR AND SUPPLEMENTAL FEES AWARD** |
| 15 GIGANEWS, INC., a Texas Corporation; LIVEWIRE SERVICES, INC., a Nevada Corporation; and Does 1 through 100, inclusive, | |
| 16 | |
| 17 | |
| 18 Defendant. | Date:        June 1, 2015 |
| 19 | Time:        10:00 A.M. Courtroom:  790 Roybal Judge: Hon. André Birotte, Jr. |
| 20 ──────────────── | |
| 21 GIGANEWS, INC., a Texas Corporation; LIVEWIRE SERVICES, INC., a Nevada Corporation, | |
| 22 | |
| 23 Counterclaimants, | |
| 24 v. | |
| 25 PERFECT 10, INC., a California Corporation, | |
| 26 Counterdefendant. | |
| 27 | |

28

DEFENDANTS' MOTION TO ALTER OR
AMEND JUDGMENT TO ADD JUDGMENT
DEBTOR AND FOR SUPP. FEES AWARD

Case No.: 11-cv-07098-AB (SHx)

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION TO ALTER OR AMEND JUDGMENT TO ADD JUDGMENT DEBTOR AND SUPPLEMENTAL FEES AWARD..............1

MEMORANDUM OF POINTS AND AUTHORITIES.........................................2

I.    INTRODUCTION.................................................................................2

II.   FACTUAL AND PROCEDURAL BACKGROUND.................................3

    A.    Mr. Zada Uses Perfect 10 as His Personal Tax Shelter Intentionally Undercapitalizing It and Incurring Losses. ....................3

    B.    Mr. Zada Exploited Perfect 10's Assets for His Personal Use.............4

    C.    Mr. Zada Commingled His Own Funds with Perfect 10's. .................6

    D.    Mr. Zada Personally Led the Litigation Against Defendants..............7

    E.    Defendants Have Continued to Incur Fees Litigating Against Perfect 10. ........................................................................................9

III.  ARGUMENT .......................................................................................10

    A.    The Court Should Amend the Judgment to Add Norman Zada as a Judgment Debtor...............................................................10

        1.    Norman Zada is the Alter Ego of Perfect 10. ..........................11

            a.    Zada Undercapitalized Perfect 10. ................................11

            b.    Zada Commingled His and Perfect 10's Assets and Operations................................................................12

            c.    Injustice Would Result if the Court Permits Zada to Escape Liability.................................................13

        2.    Norman Zada Exerted a Degree of Control Over the Litigation Unique for a Non-Lawyer.........................................14

    B.    The Court Should Award Defendants The Additional Fees They Reasonably Incurred Litigating This Matter. ........................15

IV.   CONCLUSION ....................................................................................16

Fenwick & West LLP
Attorneys at Law
San Francisco

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Associated Vendors Inc. v. Oakland Meat Co.*,
  210 Cal. App. 2d 825 (Cal. Ct. App. 1962).........................................11

*Automotriz del Golfo de Cal. v. Resnick*,
  47 Cal. 2d 792 (1957).......................................................11, 12, 13

*Cigna Prop. & Cas. Ins. Co. v. Polaris Pictures Corp.*,
  159 F.3d 412 (9th Cir. 1998)...................................................10

*In re Levander*,
  180 F.3d 1114 (9th Cir.1999).................................................10

*Jack Farenbaugh & Son v. Belmont Const., Inc.*,
  194 Cal. App. 3d 1023 (1987).........................................10, 12, 14

*Katzir's Floor & Home Design, Inc. v. M-MLS.com*,
  394 F.3d 1143 (9th Cir. 2004).................................................11

*Laborers Clean-Up Contract Admin. Trust Fund v. Uriarte Clean-Up Serv., Inc.*,
  736 F.2d 516 (9th Cir. 1984)..................................................12

*Mesler v. Bragg Mgmt. Co.*,
  39 Cal. 3d 290...............................................................11

*NEC Electronics Inc. v. Hurt*,
  208 Cal. App. 3d 772 (1989)..........................................10, 11, 14

*Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*,
  854 F.2d 1538 (9th Cir. 1988)..............................................11, 13

*Odnil Music Ltd. v. Katharsis LLC*,
  2008 U.S. Dist. LEXIS 28508 (E.D. Cal. Apr. 7, 2008).......................15

*Peacock v. Thomas*,
  516 U.S. 349 (1996).........................................................10

*S.L. ex rel. Loof v. Upland Unified Sch. Dist.*,
  747 F.3d 1155 (9th Cir. 2014).................................................10

*United States v. Eleven Vehicles, Their Equip. & Accessories*,
  200 F.3d 203 (3d Cir. 2000)..................................................15

*Zoran Corp. v. Chen*,
  185 Cal. App. 4th 799 (Cal. Ct. App. 2010)..................................11

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

**STATUTES**

Cal. Civ. Proc. Code § 187 ......................................................................... 10

**RULES**

Fed. R. Civ. P. 54 ....................................................................................... 10

Fed. R. Civ. P. 59(e) ................................................................................... 10

Fed. R. Civ. P. 69(a) ............................................................................. 3, 10

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

<u>**NOTICE OF MOTION TO ALTER OR AMEND JUDGMENT TO ADD**</u>

<u>**JUDGMENT DEBTOR AND SUPPLEMENTAL FEES AWARD**</u>

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

DEFENDANTS GIGANEWS, INC. AND LIVEWIRE SERVICES, INC. GIVE NOTICE THAT ON that, on June 1, 2015 at 10:00 A.M., or as soon thereafter as feasible, in Courtroom No. 4 of the United States District Court for the Central District of California, located at 312 N. Spring Street, Los Angeles, California, Defendants Giganews, Inc. and Livewire Services, Inc., will, and hereby do, move for an order (1) adding Norman Zada, alter ego of Plaintiff Perfect 10, Inc., as a judgment debtor, and (2) supplementing the Court's earlier fee award (Dkt. 686) with additional fees incurred by Defendants since their last submission.

Defendants base this motion on this notice; the memorandum in support; the declaration of Andrew P. Bridges and its exhibits; all other pleadings and papers on file in this action; any matters of which this Court may take judicial notice; and any other evidence and argument that counsel may present at or before the hearing on this matter.  This motion follows a conference of counsel pursuant to L.R. 7-3 which took place on March 26, 2015.


Dated:  April 21, 2014                              FENWICK & WEST LLP


                                                    By:  /s/Andrew P. Bridges
                                                         Andrew P. Bridges

                                                    Attorneys for Defendants
                                                    GIGANEWS, INC., and
                                                    LIVEWIRE SERVICES, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Fenwick & West LLP
Attorneys at Law
San Francisco

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Giganews, Inc., and Livewire Services Inc. ask the Court to alter and amend its judgment in two ways. First, they ask the Court to include Norman Zada, Perfect 10's CEO, as a judgment debtor with respect to award of attorney's fees and costs because of his unquestionable role as *alter ego* of Perfect 10 and his extraordinary personal involvement controlling every action of Perfect 10 and its attorneys in the case. Second, the Court should update the judgment to reflect additional fees and costs that Defendants incurred after their last submission of their fees and costs.

## I.   INTRODUCTION

In January 2015, Perfect 10 submitted this testimony from Norm Zada, sworn under penalty of perjury:

> Perfect 10 currently is in substantial debt. It only has annual revenues of approximately $40,000 per year... If this Court grants [][Defendants' fees] Motion, and awards Defendants the attorney's fees they are seeking, Perfect 10 will be forced to shut down, lay off its remaining employees after 18 years of existence, and declare bankruptcy.

Dkt. 650-8, at 5, ¶ 15. The Court did award Defendants their attorney's fees and expenses, and it found that Perfect 10's "impecunity is intentional." Dkt. 686 at 25:14-23. As a result, because of Perfect 10 and Norm Zada's deliberate use of an insolvent shell to conduct the litigation and to fund Mr. Zada's hobby, Defendants face the prospect of recovering nothing from Perfect 10 while continuing to incur fees as Mr. Zada litigates his appeal. Perfect 10's lawyers have proposed a partial payment on behalf of Perfect 10, evidently from Mr. Zada, and a lien on Mr. Zada's home in an effort to avoid enforcement of the judgment. But according to the clear statements of Perfect 10 and its lawyers, Perfect 10 itself is not in a position to pay the award against it, and the receipt of payments ostensibly from or on behalf of an

insolvent company may create numerous risks in the event of bankruptcy proceedings.

California law (applicable here through Federal Rule of Civil Procedure 69(a)) allows a judgment creditor to add an alter ego as a judgment debtor by motion. The Court should permit that here. The evidence in this case established beyond doubt that Perfect 10 and Mr. Zada are alter egos. The Perfect 10 business headquarters for many years, a lavish mansion in Beverly Park, was Mr. Zada's personal home and playground; employees did not know whether they worked for Perfect 10 or for Mr. Zada personally; and Mr. Zada commingled personal and corporate expenses. Perfect 10 has never been profitable as a business and has never generated significant income through sale of its images. Yet Mr. Zada has nonetheless used Perfect 10's expenses (and losses) to reduce his personal income taxes and fund his lavish lifestyle. Mr. Zada has also held himself out as responsible for Perfect 10's debts, representing to the Court that he personally "desire[s] to honorably pay the judgment and eliminate post-judgment litigation." Dkt. 696 at 2 n.1. Defendants therefore respectfully request that the Court grant his desire and amend the judgment to add Norman Zada as a judgment debtor.

In addition, the Court's earlier order awarding attorney's fees and expenses took into account the submissions Defendants had filed before the order. Defendants reasonably incurred more fees and expenses after their last submission and they ask the Court to update the award with those fees and expenses.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Mr. Zada Uses Perfect 10 as His Personal Tax Shelter Intentionally Undercapitalizing It and Incurring Losses.

Mr. Zada, an experienced money manager with investments in various financial markets, founded Perfect 10 "to live out the Bachelor in Paradise dream," replete with "a constant stream of naked young things flowing over his threshold." Declaration of Andrew P. Bridges in Support of Motion to Amend ("Bridges

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Decl.") ¶ 2, Ex. 1 [David Weddle, *Among the Mansions of Eden: Tales of Love, Lust, and Land in Beverly Hills* (1st ed. 2003)], at 64, 87; Ex. 2 [4/25/14 Zada Depo.] at 538:20-23.  By 1994, a few years before Perfect 10's founding, Mr. Zada earned over $9 million per year by managing hedge funds valued at more than $159 million.  *Id.*, Ex. 1 at 85.  Mr. Zada continued this profitable line of work until 2007.  Dkt. 696-3 at 2, ¶ 4.  Mr. Zada's personal savings provided Perfect 10's sole source of capital, and—despite his wealth—he purposefully limited his investments in Perfect 10 and chose never to seek other investors.  *Id.*, Ex. 3 [4/24/14 Zada Depo.] at 165:10-19.  He remains the only shareholder of Perfect 10.  *Id.*, Ex. 4 [8/24/14 Zada Depo.] at 246:19-21.

As a result, Perfect 10's finances have remained precarious throughout its existence.  "Perfect 10 has never been a self-sustaining business, and to date, has lost more than $50 million dollars, if not more."  Dkt. 686, at 17 (*citing* Dkt. 644-15, pp. 159:7-21, 161:16-23).  It has "'never been solvent' in more than 15 years of operation" and has perennially been "on the verge of bankruptcy."  Dkt. 686 at 25; *see also* Bridges Decl., Ex. 3 [4/24/14 Zada Depo.] at 159:7-21.

As the Court found, this was by design: Mr. Zada sought to have Perfect 10 operate at a loss.  Dkt. 686, at 21, 25 ("the evidence suggests Perfect 10's impecunity is intentional").  As Mr. Zada explained, because Perfect 10 is an S Corporation, "Perfect 10's losses combined with whatever profits I may have on a particular year."  Bridges Decl., Ex. 4 [8/24/14 Zada Depo.] at 248:1-11; *see also id.*, Ex. 2 [4/25/14 Zada Depo.] at 499:23-500:4; Ex. 5 [6/5/14 Chaney Depo.] at 50:23-51:18.  Mr. Zada has now submitted excerpts from his personal income tax filings that reflect millions of dollars of losses on the line for reporting S Corporation income.  Dkt. 696-3, Ex. 1 (line 17).  Mr. Zada exploited Perfect 10's losses to offset his own earnings for tax purposes.

**B.     Mr. Zada Exploited Perfect 10's Assets for His Personal Use.**

Mr. Zada has consistently blurred the line between his and Perfect 10's

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   assets: "he's in it for the lifestyle." Bridges Decl., Ex. 1 [David Weddle, *Among the*

2   *Mansions of Eden: Tales of Love, Lust, and Land in Beverly Hills*], at 65.  As Mr.

3   Zada himself testified, "the world seems to revolve around beautiful women and

4   love and sex."  *Id.*, Ex. 3 [4/24/14 Zada Depo.] at 171:12-13.  "Norm erected the

5   Perfect 10 Mansion, where, as shown in the magazine, nymphets play Frisbee

6   inside the 16,000-square-foot palace or volleyball in the pool, or wash Norm's car."

7   *Id.*, Ex. 6 ["Living Large in the 'Bimbo Vortex,'" *Los Angeles Times*, March 16,

8   2003].  His life at the Perfect 10 mansion became the basis for a reality show

9   focusing on him, "Norm's Perfect World."  *Id.*, Ex. 7 [6/25/14 Chou Depo.] at

10  23:17-22.

11       The Perfect 10 mansions served simultaneously as Perfect 10's offices and as

12  Mr. Zada's personal residence.  *Id.*, Ex. 5 [Chaney Depo.] at 23:23-24:5; 25:3-23.

13  Over the years, these addresses included 72 Beverly Park in Beverly Hills, and

14  Perfect 10's current headquarters at 11803 Norfield Court in the Bel Air

15  neighborhood of Los Angeles.  *Id.* [Chaney Depo.] at 23:18-24:4; Ex. 8 [Poblete

16  Depo.] at 13:9-13; Ex. 9 [Screenshot of Perfect10.com address].  Sometimes Zada

17  held the deed and sometimes Perfect 10 did,[1] but each home had a similar function,

18  serving as a Perfect 10 workplace and Mr. Zada's playground, where he mixed his

19  personal life and his business life "pretty thoroughly."  *Id.*, Ex. 7 [Chou Depo.] at

20  25:15-19.

21       For example, Mr. Zada does not separate personal and business areas of his

22  residence.  *Id.*, Ex. 5 [Chaney Depo.] at 35:3-10.  He maintains Perfect 10's

23  business records[2] in his bedroom, in addition to hallways, basements, studios, and

24  ---

25  [1] Perfect 10 bought the 72 Beverly Park property for $3,250,000 in 1997 and sold it
    for $16,500,000 in 2010.  Bridges Decl., Ex. 10 [Accurint reports]; Ex. 11 [Zillow

26  printouts]; & Ex. 2 [4/25/14 Zada Depo.] at 320:7-11.  Mr. Zada bought the current

27  Perfect 10 headquarters for $4,250,000 in 2010 and currently holds it in his own
    name.  *Id.*

28  [2] Mr. Zada also mixes his personal and business correspondence, using the same

his office. *Id.* at 33:16-34:12. Mr. Zada has also held Perfect 10 events at the home, including boxing matches between company models. *Id.* at 19:21-20:9. Melanie Poblete, Perfect 10's paralegal, lives at the Norfield Court mansion, with free rent and food. *Id.*, Ex. 2 [4/25/14 Zada Depo.] at 331:23-25; 341:14-20; Ex. 8 [Poblete Depo.] at 74:4-13. Former employee Sheena Chou lived there for approximately two years. *Id.*, Ex. 7 [Chou Depo.] at 98:20-24. In total, more than a dozen Perfect 10 workers have conducted their regular business at Mr. Zada's residences. *Id.*, Ex. 5 [Chaney Depo.] at 29:6-31:16.

Perfect 10 employees also provide personal services for Mr. Zada. Ms. Poblete runs personal errands for Mr. Zada, cooks for him, and does his bookkeeping. *Id.*, Ex. 8 [Poblete Depo.] at 250:19-251:4; Ex. 2 [4/25/14 Zada Depo.] at 340:14-25. Part of another employee's job function at Perfect 10 was to massage Mr. Zada. *Id.*, Ex. 5 [Chaney Depo.] at 16:17-17:16; 142:23-143:5. Some employees allowed Mr. Zada to indulge in physical intimacy, and he hit them on the buttocks, licked their faces, or had them expose their breasts for him. *Id.* at 142:15-144:20. Perfect 10 also paid employees to work on Mr. Zada's side projects, such as ghost-writing Mr. Zada's personal biography. *Id.* at 21:2-22:9; *Id.*, Ex. 8 [Poblete Depo.] at 247:1-25.

## C. Mr. Zada Commingled His Own Funds with Perfect 10's.

Mr. Zada does not keep Perfect 10's money separate from his own when paying certain expenses. Mr. Zada transferred money from his personal savings to prop up Perfect 10 at various times. *Id.*, Ex. 3 [4/24/14 Zada Depo.] at 159:17-160:5, 165:12-19. He is Perfect 10's only significant creditor (until the judgment in this case), and he has provided the only meaningful source of funds for Perfect 10 for several years. *Id.*, Ex. 4 [8/24/14 Zada Depo.] at 245:21-246:12; Ex. 2 [4/25/14 Zada Depo.] at 547:12-17. Sometimes Perfect 10 paid its employees and

email account for both. Bridges Decl., Ex. 12 [6/30/14 Zada Depo.] at 303:24-304:7.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

sometimes Mr. Zada did personally.  For example, Melanie Poblete, Perfect 10's paralegal, asked to receive part of her salary in cash, which Mr. Zada paid personally.  *Id.*, Ex. 2 [4/25/14 Zada Depo.] at 338:10-18 ("Q: So her salary from Perfect 10 went down but you made up the difference with personal cash? A: Correct.").  Another Perfect 10 model and legal assistant, Sheena Chou, received her compensation alternately from Mr. Zada and Perfect 10 at various times throughout her employment.  *Id.*, Ex. 7 [Chou Depo.] at 104:21-105:15.  ███

████████████████████████████████████████████████████████

██████████████████████████████████   *Id.*, Ex. 13 [McCall Depo.] at 37:3-24.

### D.   Mr. Zada Personally Led the Litigation Against Defendants.

Mr. Zada directs all aspects of Perfect 10's primary business, its litigation. "In his capacity as President and CEO, Zada spends 'eight hours a day,' 365 days a year on litigation" for Perfect 10.  Dkt. 686, at 18 (*citing* Dkt. No. 644-16, at 541:1-2); *see also* Bridges Decl., Ex. 12 [6/30/14 Zada Depo.] at 15:23-24.  Mr. Zada also personally finances Perfect 10's litigation, its biggest expense after 2009, with his own funds.  *Id.*, Ex. 2 [4/25/14 Zada Depo.] at 548:15-549:6.  Perfect 10's litigation is Mr. Zada's personal crusade: "*I'm* the victim of a crime.  Okay? Your clients are stealing everything *I* own . . . . *I* instead prefer to sue your clients." *Id.*, Ex. 4 [8/24/14 Zada Depo.] at 274:20-275:2 (emphasis added).

In this case, the Court found that "Mr. Zada's work went well beyond that of a typical corporate representative."  Dkt. 686 at 44.

- He created DMCA notices for Perfect 10 and sent them under his own name and contact information, rather than that of Perfect 10.  Bridges Decl., Ex. 2 [4/25/14 Zada Depo.] at 396:3-397:6 ("Giganews is not going to be surprised by a . . . DMCA notice from me. They'll certainly know that it's . . . Perfect 10.").

- He personally wrote to the Justice Department and the Texas Attorney

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

General regarding Defendants.  *Id.* at 343:18-346:4.

- He conducted Perfect 10's search for communications regarding Defendants in response to discovery requests, and personally reviewed and approved the declarations and document production of non-party witnesses.  *Id.* at 351:19-25; *Id.*, Ex. 12 [6/30/14 Zada Depo.] at 296:10-297:8.

- He participated by VideoLink in depositions of Defendants' witnesses, and frequently interjected and directed counsel to ask specific questions.  *Id.*, Ex 2 [4/25/14 Zada Depo.] at 385:13-19; Dkt. 686, at 44.

- He selected Perfect 10's experts, frequently drafted or edited their declarations, and tried to serve personally as Perfect 10's damages expert.  Bridges Decl. Ex. 2 [4/25/14 Zada Depo.] at 307:10-16; Dkt. 686, at 39 n.15 & 44.

- He personally paid others to prepare and execute declarations on Perfect 10's behalf.  Bridges Decl. Ex. 7 [Chou Depo.] at 217:11-13.

- "Mr. Zada [] frequently wrote 'the first draft of a brief or [his] declaration, put the exhibits together, and then [passed] that off to the attorneys to make sure everything [was] … professional and legal.'" Dkt. 686, at 44. (Dkt. No. 655-7, p. 84:5-10.).

- He tried to argue a significant portion of a discovery motion in place of Perfect 10's counsel.  Dkt. 686, at 44-45.

Mr. Zada himself described his central role in Perfect 10's discovery efforts as follows:

> Our position is we've complied with everything . . . .  *Because I had to do it!  Because I was involved.  Because, we spent months doing this.*  So I know exactly what we complied with.  We complied with everything.

Dkt. 355, Declaration of Todd R. Gregorian in Support of Defendants' Motion to Compel Compliance, Ex. 11.  By the time discovery closed in this case in June

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2014, Mr. Zada had already spent more than 2,000 hours working it.  *Id.* at 44. After the Court had brought it to an end and awarded Defendants their attorney's fees, Perfect 10 proposed that it and Mr. Zada each make a conditional partial payment towards the judgment (falling short of the full amount) in order to stay enforcement.  Bridges Decl. Ex. 14 [4/4/15 E. Benink email].

### E.    Defendants Have Continued to Incur Fees Litigating Against Perfect 10.

On March 24, 2015, the Court issued its order awarding Defendants their reasonable attorney's fees and expenses.  Dkts. 684 & 686.  The Court found that such an award would serve the purposes of the Copyright Act, as it would discourage "serial litigants from bringing unmeritorious suits and then unnecessarily driving up litigation costs."  *Id.* at 24:11-12; 58:11-13.  The Court based its award on Defendants' submission of invoices, which included fees incurred through approximately December 23, 2014.  Dkt. 644-9.

Despite the Court's grant of summary judgment, Defendants have continued to incur fees following their December submission.  Perfect 10 has caused a significant portion of this expense by continuing to litigate in the same manner that justified the original award.  For example, despite Judge Hillman's repeated refusal to allow further briefing on Defendants' sanctions motion, Perfect 10's counsel filed a request for leave to file supplemental declarations "explaining their actions." Dkt. 669 at 2:14-19.  Without waiting for leave, counsel also filed one declaration exceeding 250 pages full of argument responding to charts Defendants had submitted with their sanctions motion almost six months earlier.  Dkt. 670.

In another filing, Perfect 10 violated Judge Hillman's order by rearguing substantive issues concerning its misconduct and sanctions.  Dkt. 681.  Perfect 10 also submitted declarations from Melanie Poblete (Dkt. 681-2) and Jennifer McCall (Dkt. 681-3), two of the Perfect 10 affiliated third-party witnesses who had violated the Court's June 5, 2014 order.  While much of that briefing rehashed objections

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Fenwick & West LLP
Attorneys at Law
San Francisco

1   that Judge Hillman already overruled, Perfect 10 also raised new arguments and

2   new case law that required Defendants to prepare their response.

3        Perfect 10 also threatened an *ex parte* application for an order staying

4   enforcement of the judgment and the fee award, and it has made several

5   complicated and illusory "settlement" offers designed to frustrate enforcement of

6   the judgment while avoiding the need to post a supersedeas bond.  Bridges Decl.

7   Ex. 15.  Each of these actions required Defendants to expend resources conducting

8   research and responding.  Defendants detail their further expenses in the

9   Declaration of Andrew P. Bridges.

10  **III.   ARGUMENT**

11      **A.   The Court Should Amend the Judgment to Add Norman Zada as a**

12           **Judgment Debtor.**

13       Federal Rule of Civil Procedure 69(a) "permits judgment creditors to use any

14  execution method consistent with the practice and procedure of the state in which

15  the district court sits."  *Peacock v. Thomas*, 516 U.S. 349, 359 n.7 (1996); *see also*

16  *In re Levander*, 180 F.3d 1114, 1120 (9th Cir.1999) (stating that Fed. R. Civ. P.

17  69(a) "empowers federal courts to rely on state law to add judgment-debtors").

18  California Code of Civil Procedure Section 187 allows a judgment creditor to

19  amend the judgment to add a nonparty alter ego as a judgment debtor.  *See Jack*

20  *Farenbaugh & Son v. Belmont Const., Inc*., 194 Cal. App. 3d 1023, 1027 (1987);

21  *NEC Electronics Inc. v. Hurt*, 208 Cal. App. 3d 772, 778 (1989).  The judgment-

22  creditor must bring its motion within a reasonable amount of time[3] and show both

23  (1) that the party to be added satisfies the alter ego criteria, and (2) that the new

24

---

25  [3] The Rule 59(e) deadline does not govern such a motion, because adding a party to
    a judgment is not a substantive amendment going to the merits of the case.  *Cigna*

26  *Prop. & Cas. Ins. Co. v. Polaris Pictures Corp*., 159 F.3d 412, 421 (9th Cir. 1998).
    Nevertheless, to avoid any possible controversy, particularly with hyperlitigious

27  opponents like Perfect 10 and Norman Zada, Defendants file this motion within the
    Rule 59(e) deadline.  *See* Dkt. 686; *S.L. ex rel. Loof v. Upland Unified Sch. Dist.,*

28  747 F.3d 1155, 1162 (9th Cir. 2014) (under Rule 54, an attorney's fees award
    constitutes a separate judgment effective upon its entry on the docket).

1 party had control of the litigation and occasion to conduct it with a diligence

2 corresponding to the risk of personal liability involved.  *Hurt*, 208 Cal. App. 3d at

3 778-79; *see also Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d

4 1143, 1148-49 (9th Cir. 2004).

### 1.      Norman Zada is the Alter Ego of Perfect 10.

6       To establish a party as the alter ego of a corporation, the applicant must show

7 "(1) that there [is] such unity of interest and ownership that the separate

8 personalities of the corporation and the individual no longer exist and (2) that, if the

9 acts are treated as those of the corporation alone, an inequitable result will follow."

10 *Automotriz del Golfo de Cal. v. Resnick*, 47 Cal. 2d 792, 796 (1957).  A finding of

11 alter ego liability requires both factors.  *Associated Vendors Inc. v. Oakland Meat*

12 *Co.*, 210 Cal. App. 2d 825, 837 (Cal. Ct. App. 1962).

13       To determine whether there is a sufficient unity of interest and ownership to

14 support alter ego liability, courts consider a long list of factors, including

15 inadequate capitalization, commingling of funds and assets, sole ownership of the

16 corporation by an individual, lack of segregation of corporate records, and the

17 treatment by an individual of the assets of the corporation as his own.[4]  *Zoran Corp.*

18 *v. Chen*, 185 Cal. App. 4th 799, 811-12 (Cal. Ct. App. 2010).   The Court must look

19 to the totality of the circumstances.  *Id*.  "The essence of the alter ego doctrine is

20 that justice be done." *Mesler v. Bragg Mgmt. Co*., 39 Cal. 3d 290, 301(1985).

### a.      Zada Undercapitalized Perfect 10.

22       Inadequate capitalization itself provides a sufficient basis to make an alter

23 ego determination.  *See Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v.*

24 *Louisiana Hydrolec*, 854 F.2d 1538, 1543-1544 (9th Cir. 1988) (corporate president

25 owning 25 percent of corporation's stock found alter ego on ground of

---

26 [4] *Zoran* lists fourteen non-exclusive factors that a court may consider in
27 determining alter ego status.  There is no magic number that a court requires before
it will recognize an alter ego; in some cases, a finding on only a few factors will
28 suffice.  *See e.g.*, *Louisiana Hydrolec*, 854 F.2d at 1543-1544.  Defendants attach as
**Appendix A** a chart showing which factors apply in this case.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

undercapitalization); *Laborers Clean-Up Contract Admin. Trust Fund v. Uriarte Clean-Up Serv., Inc.*, 736 F.2d 516, 524 (9th Cir. 1984); *Resnick*, 47 Cal. 2d at 799. Where the corporation's principals reduce it to a mere shell by stripping its assets, for example, courts typically affirm an alter ego finding. *See, e.g.*, *Jack Farenbaugh & Son*, 194 Cal.App.3d at 1033-1034.

Mr. Zada stripped Perfect 10 of assets on a regular basis to fund his lavish lifestyle and his litigation hobby. He engaged in a unique pattern of both funding and stripping the company as part of his tax-dodge strategy. The Court has already found that Mr. Zada intentionally undercapitalized Perfect 10. Dkt. 686, at 21, 25. He occasionally transferred money from his personal savings to prop up Perfect 10, but otherwise intentionally caused Perfect 10 to operate at a loss for tax purposes. Bridges Decl. Ex. 3 [4/24/14 Zada Depo.] at 159:7-160:5, 165:12-19; Ex. 4 [8/24/14 Zada Depo.] at 248:1-11; Dkt. No. 644-18, at 50:23-51:10; *see also* Bridges Decl. Ex. 2 [4/25/14 Zada Depo.] at 499:23-500:4; Ex. 5 [6/5/14 Chaney Depo.] at 50:23-51:18. Mr. Zada's undercapitalization of Perfect 10 weighs strongly in favor of the determination Defendants seek.

### b.    Zada Commingled His and Perfect 10's Assets and Operations.

As pages 4-6 above showed, Mr. Zada fully intertwined Perfect 10's and his personal operations and assets. The Court already determined Perfect 10 is his tax shelter. Mr. Zada remains Perfect 10's only shareholder. Mr. Zada's home and Perfect 10's office are one and the same. Perfect 10 employees provide personal services for Mr. Zada, and Mr. Zada occasionally pays them for Perfect 10 duties from his personal funds. Mr. Zada even offered to personally make a conditional partial contribution towards satisfaction of the judgment and stated in a separate filing that he "desire[s] to honorably pay the judgment and eliminate post-judgment litigation." Dkt. 696 at 2 n.1.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

### c.   Injustice Would Result if the Court Permits Zada to Escape Liability.

Finally, the Court must determine whether allowing Mr. Zada to escape liability would lead to an unjust result. *See Louisiana Hydrolec*, 854 F.2d at 1544. The California Supreme Court has held inadequate capitalization standing alone satisfies this requirement of inequity:

> If a corporation is organized and carries business without substantial capital in such a way that the corporation is likely to have no sufficient assets available to meet its debts, it is inequitable that shareholders should set up such flimsy organization to escape personal liability.  The attempt to do corporate business without providing any sufficient basis of financial responsibility to creditors is an abuse of the separate entity and will be ineffectual to exempt shareholders from corporate debts.  It is coming to be recognized as the policy of the law that shareholders should in good faith put at the risk of the business unencumbered capital reasonably adequate for prospective liabilities.  If the capital is illusory or trifling compared with the business to be done and the risks of loss, this is a ground for denying the separate entity privilege.

*Resnick*, 47 Cal.2d 792, 797 (1957).  As discussed above, there can be no doubt as to Perfect 10's inadequate capitalization.

For many additional reasons, failure to hold Mr. Zada accountable for his actions would provide an unjust result.  The Court ruled that Perfect 10 is a "serial plaintiff operating on a self-proclaimed business model of litigation."  Dkt. 684 [Fees Order] at 23:28.  Finding Perfect 10's improper motive in bringing suit "well-documented," the Court further noted that "Perfect 10 litigated this action in an unnecessarily litigious manner that was guaranteed (if not designed) to drive up the costs of litigation."  *Id*. at 21:8-9 n.4. "The record is replete with similar

1   unnecessary motion practice and obstinate behavior in discovery, that would be too

2   lengthy to summarize here." *Id*.  Absent the alter ego determination, the Court's fee

3   award serves only to deter an empty corporate shell, one that Mr. Zada may well

4   shut down as he has repeatedly threatened in court filings.  *See* Bridges Decl. Ex.

5   16 [OVH Dismissal Stipulation].

### 2.      Norman Zada Exerted a Degree of Control Over the Litigation Unique for a Non-Lawyer.

8        A judgment against a corporation "can be made individually binding on a

9   person associated with the corporation only if the individual to be charged ... had

10  control of the litigation and occasion to conduct it with a diligence corresponding to

11  the risk of personal liability that was involved." *Hurt*, 208 Cal. App. 3d at 778-79.

12  Provided the facts establish such control, the corporate entity "virtually

13  represented" the alter ego in the lawsuit.  *Id.*  "Control of the litigation […] may

14  consist of a combination of factors, usually including the financing of the litigation,

15  the hiring of attorneys, and control over the course of the litigation." *Id.* at 781; *see*

16  *also Jack Farenbaugh & Son*, 194 Cal.App.3d at 1030-31 (finding control where

17  alter ego served as president of the party corporation and testified at trial).

18       A veteran of over thirty lawsuits, including some in which other litigants

19  sought attorney's fees against Perfect 10, Mr. Zada had every reason to know that

20  Perfect 10's litigation behavior risked exposure to a fees award.  The Court is aware

21  of the intense personal involvement of Norm Zada in the litigation and how he has

22  managed the case as if he were Perfect 10's lead counsel directing teams of

23  subordinate counsel.  As pages 6-8 above discuss, Mr. Zada financed the litigation,

24  selected and supervised its attorneys and experts, drafted pleadings and

25  declarations, supervised non-party witnesses' discovery efforts, served as both a

26  fact and expert witness, participated in conferences of counsel, directed deposition

27  questioning, and argued at motion hearings.  The facts here not only meet each

28  factor relevant to the control determination but exceed them.  Mr. Zada litigated

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' MOTION TO ALTER OR
AMEND JUDGMENT TO ADD JUDGMENT
DEBTOR AND SUPP. FEES AWARD

14

Case No.: 11-cv-07098-AB (SHx)

every detail of this case exactly as he wished, providing an ample basis to find control.

### B.     The Court Should Award Defendants The Additional Fees They Reasonably Incurred Litigating This Matter.

Defendants ask that the Court supplement its fee award to include work performed after the reply in support of the fees motion in December 2014.   Such a supplemental award falls within the Court's discretion.  *See United States v. Eleven Vehicles, Their Equip. & Accessories,* 200 F.3d 203, 209-10 (3d Cir. 2000) (district court properly exercised its discretion in entertaining a supplemental fee request); *Odnil Music Ltd. v. Katharsis LLC*, 2008 U.S. Dist. LEXIS 28508 at *4-6 (E.D. Cal. Apr. 7, 2008)(in copyright action awarding supplemental attorney's fees incurred in amending judgment to include alter ego), *report and recommendation adopted*, 2008 U.S. Dist. LEXIS 35867 (E.D. Cal. Apr. 30, 2008).

The supplemental fees were for the following work:

- Reply briefing on the motion for attorney's fees.
- Further briefing and argument on the motion for sanctions before Judge Hillman, including responding to the improper supplemental filings by Perfect 10 discussed above;
- The motion for review of Judge Hillman's order vacating his earlier findings of fact regarding the propriety of sanctions against Perfect 10 and its attorneys;
- Preparation to oppose Perfect 10's proposed *ex parte* application for an order staying enforcement of the judgment and the fee award (which Perfect 10 ultimately did not file);
- Responding to proposals made by both Perfect 10's litigation and bankruptcy counsel, including research regarding amendment of the judgment and consultation with a bankruptcy specialist; and
- Preparation of this motion.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  Bridges Decl. ¶ 20, Exs. 18-20.  Defendants reasonably incurred these fees and they

2  request the Court award them in full, but also include in their submission a

3  calculation of the fee amount if the Court decides to carry forward the 10%

4  deduction it previously applied.  *Id.*, ¶ 24; *see* Dkt. 686 at 49.  Defendants will also

5  continue to incur fees following the filing of this motion, and they therefore request

6  that the Court award those fees, the amount of which Defendants will support with

7  a further declaration at the hearing on this motion.

8  **IV.    CONCLUSION**

9         As former Perfect 10 model and legal assistant Sheena Chou testified: "Norm

10  and Perfect 10 is one and the same."  Bridges Decl. Ex. 7 [Chou Depo.] at 24:14-

11  18.  As one of the many Perfect 10 employees who both lived and worked at Mr.

12  Zada's home, she would know.  *See id.*, 98:20-24.  Perfect 10 and Norman Zada

13  have been functionally indistinguishable this litigation, and they should be legally

14  indistinguishable in the judgment.  Mr. Zada controlled the litigation and directed

15  the conduct that led to the Court's fee award.  Allowing him to hang liability for

16  that award on an empty corporate shell would defeat the purpose of the award of

17  fees and expenses, and it would work a substantial injustice in this case.  For all of

18  these reasons, Defendants respectfully request the Court add Norman Zada, alter

19  ego of Perfect 10, as a judgment debtor to the judgment and also award Defendants

20  their supplemental reasonable attorney's fees and expenses.

22  Dated:  April 21, 2015                   FENWICK & WEST LLP

24                                           By: */s/Andrew P. Bridges*
                                                 Andrew P. Bridges

25                                           Attorneys for Defendants
26                                           GIGANEWS, INC., and
                                             LIVEWIRE SERVICES, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## Appendix A: Evidence Supporting *Alter Ego* Finding[1]

| *Alter Ego* Factor | Factual Evidence |
|---|---|
| [1] [c]ommingling of funds and other assets, failure to segregate funds of the separate entities, and the unauthorized diversion of corporate funds or assets to other than corporate uses . . .; | The record evidence supports this factor. *See* Dkt. 696-3, Ex. 1 (line 17); Dkt. 696-3 at 2, ¶ 4; Bridges Decl., Ex. 2 [4/25/14 Zada Depo.] at 171:12-13, 320:7-11, 331:23-25, 338:10-18, 340:14-25, 341:14-20, 499:23-500:4, 547:12-17, 548:15-549:6; Ex. 3 [4/24/14 Zada Depo.] at 159:17-160:5, 165:10-19, 245:21-246:12; Ex. 4 [8/24/14 Zada Depo.] at 248:1-11, 274:20-275:2; Ex. 5 [6/5/14 Chaney Depo.] at 16:17-17:16; 19:21-20:9, 21:2-22:9, 23:18-24:5, 25:3-23, 29:6-31:16, 33:16-34:12, 50:23-51:18; 142:15-144:20; Ex. 6 ["Living Large in the 'Bimbo Vortex,'" *Los Angeles Times*, March 16, 2003]; Ex. 7 [6/25/14 Chou Depo.] at 23:17-22, 25:15-19, 98:20-24, 104:21-105:15, 217:11-13; Ex. 8 [Poblete Depo.] at 74:4-13, 247:1-25, 250:19-251:4; Ex. 9 [Screenshot of Perfect10.com address]; Ex. 10 [Accurint reports]; Ex. 11 [Zillow printouts]; Ex. 12 [6/30/14 Zada Depo.] at 303:24-304:7; Ex. 13 [McCall Depo.] at 37:3-24. |
| [2] the treatment by an individual of the assets of the corporation as his own . . .; | The record evidence supports this factor. *See* Dkt. 696-3, Ex. 1 (line 17); Dkt. 696-3 at 2, ¶ 4; Bridges Decl., Ex. 2 [4/25/14 Zada Depo.] at 171:12-13, 320:7-11, 331:23-25, 338:10-18, 340:14-25, 341:14-20, 499:23-500:4, 547:12-17, 548:15-549:6; Ex. 3 [4/24/14 Zada Depo.] at 159:17-160:5, 165:10-19, 245:21-246:12; Ex. 4 [8/24/14 Zada Depo.] at 248:1-11, 274:20-275:2; Ex. 5 [6/5/14 Chaney Depo.] at 16:17-17:16; 19:21-20:9, 21:2-22:9, 23:18-24:5, 25:3-23, 29:6-31:16, 33:16-34:12, 50:23-51:18; 142:15-144:20; Ex. 6 ["Living Large in the 'Bimbo Vortex,'" *Los Angeles Times*, March 16, 2003]; Ex. 7 [6/25/14 Chou Depo.] at 23:17-22, 25:15-19, 98:20-24, 104:21-105:15, 217:11-13; Ex. 8 [Poblete Depo.] at 74:4-13, 247:1-25, 250:19-251:4; Ex. 9 [Screenshot of Perfect10.com address]; Ex. 10 [Accurint reports]; Ex. 11 [Zillow printouts]; Ex. 13 [McCall Depo.] at 37:3-24. |
| [3] the failure to obtain authority to issue stock or to subscribe to or issue the same . . .; | This factor is not applicable. |

[1] The *alter ego* factors noted in this chart come from *Zoran Corp. v. Chen*, 185 Cal. App. 4th 799, 811-12 (Cal. Ct. App. 2010).

| *Alter Ego* Factor | Factual Evidence |
|---|---|
| [4] the holding out by an individual that he is personally liable for the debts of the corporation . . .; | The record evidence supports this factor.  *See* Dkt. 696-3, Ex. 1 (line 17); Dkt. 696 at 2 n.1; Bridges Decl., Ex. 2 [4/25/14 Zada Depo.] at 338:10-18, 547:12-17, 548:15-549:6; Ex. 3 [4/24/14 Zada Depo.] at 159:17-160:5, 165:12-19; Ex. 4 [8/24/14 Zada Depo.] at 245:21-246:12, 274:20-275:2; Ex. 7 [Chou Depo.] at 104:21-105:15, 217:11-13; Ex. 14 [4/4/15 E. Benink email]; Ex. 13 [McCall Depo.] at 37:3-24. |
| [5] the failure to maintain minutes or adequate corporate records, and the confusion of the records of the separate entities . . .; | The record evidence supports this factor.  *See* Dkt. 686 at 44; Bridges Decl., Ex. 2 [4/25/14 Zada Depo.] at 331:23-25, 320:7-11, 338:10-18, 341:14-20, 548:15-549:6; Ex. 5 [Chaney Depo.] at 23:18-24:5, 25:3-23, 29:6-31:16, 33:16-34:12, 35:3-10; Ex. 7 [Chou Depo.] at 25:15-19, 104:21-105:15; Ex. 8 [Poblete Depo.] at 13:9-13, 74:4-13; Ex. 9 [Screenshot of Perfect10.com address]; Ex. 10 [Accurint reports]; Ex. 11 [Zillow printouts]; Ex. 12 [6/30/14 Zada Depo.] at 303:24-304:7; Ex. 13 [McCall Depo.] at 37:3-24. |
| [6] the identical equitable ownership in the two entities; the identification of the equitable owners thereof with the domination and control of the two entities; identification of the directors and officers of the two entities in the responsible supervision and management; | This factor is not applicable, as only one corporate entity is at issue. |
| [7]  sole ownership of all of the stock in a corporation by one individual or the members of a family . . . ; | The record evidence supports this factor.  *See* Bridges Decl., Ex. 3 [4/24/14 Zada Depo.] at 165:10-19; Ex. 4 [8/24/14 Zada Depo.] at 246:19-21. |
| [8] the use of the same office or business location; the employment of the same employees and/or attorney . . .; | The record evidence supports this factor.  *See* Bridges Decl., Ex. 1 [David Weddle, *Among the Mansions of Eden: Tales of Love, Lust, and Land in Beverly Hills*], at 65; Ex. 2 [4/25/14 Zada Depo.] at 320:7-11; Ex. 5 [Chaney Depo.] at 16:17-17:16; 19:21-20:9, 23:18-24:5, 25:3-23, 29:6-31:16, 33:16-34:12, 35:3-10, 142:15-144:20;  Ex. 6 ["Living Large in the 'Bimbo Vortex,'" *Los Angeles Times*, March 16, 2003]; Ex. 7 [6/25/14 Chou Depo.] at 23:17-22, 25:15-19, 98:20-24; Ex. 8 [Poblete Depo.] at 13:9-13, 250:19-251:4; Ex. 10 [Accurint reports]; Ex. 11 [Zillow printouts] |

| *Alter Ego* Factor | Factual Evidence |
|---|---|
| [9] the failure to adequately capitalize a corporation; the total absence of corporate assets, and undercapitalization . . .; | The record evidence supports this factor. *See* Dkt. 696-3, Ex. 1 (line 17); Dkt. 686, at 17 (*citing* Dkt. 644-15, pp. 159:7-21, 161:16-23), 21, 25; Dkt. No. 644-18, at 50:23-51:10; Bridges Decl., Ex. 2 [4/25/14 Zada Depo.] at 499:23-500:4; Ex. 3 [4/24/14 Zada Depo.] at 159:7-160:5, 165:12-19; Ex. 4 [8/24/14 Zada Depo.] at 248:1-11; Ex. 5 [6/5/14 Chaney Depo.] at 50:23-51:18. |
| [10] the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation . . .; | The record evidence supports this factor. *See* Dkt. 696-3, Ex. 1 (line 17); Dkt. 686, at 17 (*citing* Dkt. 644-15, pp. 159:7-21, 161:16-23), 21, 25; Dkt. No. 644-18, at 50:23-51:10; Bridges Decl., Ex. 1 [David Weddle, *Among the Mansions of Eden: Tales of Love, Lust, and Land in Beverly Hills*], at 65; Ex. 2 [4/25/14 Zada Depo.] at 320:7-11, 338:10-18, 340:14-25, 499:23-500:4, 547:12-17; Ex. 3 [4/24/14 Zada Depo.] at 159:7-160:5, 165:12-19; Ex. 4 [8/24/14 Zada Depo.] at 245:21-246:12, 248:1-11; Ex. 5 [6/5/14 Chaney Depo.] at 16:17-17:16, 21:2-22:9, 23:18-24:5, 25:3-23, 50:23-51:18, 142:15-144:20; Ex. 6 ["Living Large in the 'Bimbo Vortex,'" *Los Angeles Times*, March 16, 2003]; Ex. 7 [6/25/14 Chou Depo.] at 23:17-22, 25:15-19, 104:21-105:15; Ex. 8 [Poblete Depo.] at 247:1-25, 250:19-251:4; Ex. 10 [Accurint reports]; Ex. 11 [Zillow printouts], Ex. 13 [McCall Depo.] at 37:3-24. |
| [11] the concealment and misrepresentation of the identity of the responsible ownership, management and financial interest, or concealment of personal business activities . . .; | This factor is not applicable. |

| *Alter Ego* Factor | Factual Evidence |
|---|---|
| [12] the disregard of legal formalities and the failure to maintain arm's length relationships among related entities . . . ; | The record evidence supports this factor.  *See* Dkt. 696-3, Ex. 1 (line 17); Dkt. 696-3 at 2, ¶ 4; Dkt. 686 at 44; Bridges Decl., Ex. 2 [4/25/14 Zada Depo.] at 171:12-13, 320:7-11, 331:23-25, 338:10-18, 340:14-25, 341:14-20, 499:23-500:4, 547:12-17, 548:15-549:6; Ex. 3 [4/24/14 Zada Depo.] at 159:17-160:5, 165:10-19, 245:21-246:12; Ex. 4 [8/24/14 Zada Depo.] at 248:1-11, 274:20-275:2; Ex. 5 [6/5/14 Chaney Depo.] at 16:17-17:16; 19:21-20:9, 21:2-22:9, 23:18-24:5, 25:3-23, 29:6-31:16, 33:16-34:12, 35:3-10, 50:23-51:18; 142:15-144:20; Ex. 6 ["Living Large in the 'Bimbo Vortex,'" *Los Angeles Times*, March 16, 2003]; Ex. 7 [6/25/14 Chou Depo.] at 23:17-22, 25:15-19, 98:20-24, 104:21-105:15, 217:11-13; Ex. 8 [Poblete Depo.] at 13:9-13, 74:4-13, 247:1-25, 250:19-251:4; Ex. 9 [Screenshot of Perfect10.com address]; Ex. 10 [Accurint reports]; Ex. 11 [Zillow printouts]; Ex. 12 [6/30/14 Zada Depo.] at 303:24-304:7; Ex. 13 [McCall Depo.] at 37:3-24. |
| [13] the use of the corporate entity to procure labor, services or merchandise for another person or entity . . . ; | The record evidence supports this factor.  *See* Dkt. 696-3, Ex. 1 (line 17); Dkt. 696-3 at 2, ¶ 4; Dkt. 686, at 17 (*citing* Dkt. 644-15, pp. 159:7-21, 161:16-23), 21, 25,44; Dkt. No. 644-18, at 50:23-51:10; Bridges Decl., Ex. 1 [David Weddle, *Among the Mansions of Eden: Tales of Love, Lust, and Land in Beverly Hills*], at 65; Ex. 2 [4/25/14 Zada Depo.] at 171:12-13, 320:7-11, 331:23-25, 338:10-18, 340:14-25, 341:14-20, 499:23-500:4, 547:12-17, 548:15-549:6; Ex. 3 [4/24/14 Zada Depo.] at 159:17-160:5, 165:10-19, 245:21-246:12; Ex. 4 [8/24/14 Zada Depo.] at 248:1-11, 274:20-275:2; Ex. 5 [6/5/14 Chaney Depo.] at 16:17-17:16; 19:21-20:9, 21:2-22:9, 23:18-24:5, 25:3-23, 29:6-31:16, 33:16-34:12, 35:3-10, 50:23-51:18; 142:15-144:20; Ex. 6 ["Living Large in the 'Bimbo Vortex,'" *Los Angeles Times*, March 16, 2003]; Ex. 7 [6/25/14 Chou Depo.] at 23:17-22, 25:15-19, 98:20-24, 104:21-105:15, 217:11-13; Ex. 8 [Poblete Depo.] at 13:9-13, 74:4-13, 247:1-25, 250:19-251:4; Ex. 9 [Screenshot of Perfect10.com address]; Ex. 10 [Accurint reports]; Ex. 11 [Zillow printouts]; Ex. 12 [6/30/14 Zada Depo.] at 303:24-304:7; Ex. 13 [McCall Depo.] at 37:3-24. |

| *Alter Ego* Factor | Factual Evidence |
|---|---|
| [14] the diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors, or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another . . . ; | The record evidence supports this factor. *See* Dkt. 696-3, Ex. 1 (line 17); Dkt. 686, at 17 (*citing* Dkt. 644-15, pp. 159:7-21, 161:16-23), 21, 25; Dkt. No. 644-18, at 50:23-51:10; Bridges Decl., Ex. 2 [4/25/14 Zada Depo.] at 499:23-500:4; Ex. 3 [4/24/14 Zada Depo.] at 159:7-160:5, 165:12-19; Ex. 4 [8/24/14 Zada Depo.] at 248:1-11; Ex. 5 [6/5/14 Chaney Depo.] at 50:23-51:18. |
| [15] the contracting with another with intent to avoid performance by use of a corporate entity as a shield against personal liability, or the use of a corporation as a subterfuge of illegal transactions . . .; | This factor is not applicable, as the avoidance of liability in this case is not based on any Perfect 10 contracts.  Rather, the record evidence establishes that Norman Zada uses the corporate entity Perfect 10 as a shield against liability for his own litigation practices. *See* Dkt. 686, at 18 (*citing* Dkt. No. 644-16, at 541:1-2), 39 n.15, 44-45; Dkt. 355, Declaration of Todd R. Gregorian in Support of Defendants' Motion to Compel Compliance, Ex. 11; Bridges Decl., Ex. 2 [4/25/14 Zada Depo.] at 307:10-16, 343:18-346:4, 351:19-25, 385:13-19, 396:3-397:6, 548:15-549:6; Ex. 4 [8/24/14 Zada Depo.] at 274:20-275:2; Ex. 7 [Chou Depo.] at 217:11-13; Ex. 12 [6/30/14 Zada Depo.] at 15:23-24, 296:10-297:8; Ex. 14 [4/4/15 E. Benink email]. |
| [16] and the formation and use of a corporation to transfer to it the existing liability of another person or entity. | This factor is not applicable.  Rather, the record evidence establishes the opposite issue—namely, that Norman Zada personally engages in abusive litigation practices and attempts to use the corporate form of Perfect 10 to absorb any resulting liability.  *See* Dkt. 686, at 18 (*citing* Dkt. No. 644-16, at 541:1-2), 39 n.15, 44-45; Dkt. 355, Declaration of Todd R. Gregorian in Support of Defendants' Motion to Compel Compliance, Ex. 11; Bridges Decl., Ex. 2 [4/25/14 Zada Depo.] at 307:10-16, 343:18-346:4, 351:19-25, 385:13-19, 396:3-397:6, 548:15-549:6; Ex. 4 [8/24/14 Zada Depo.] at 274:20-275:2; Ex. 7 [Chou Depo.] at 217:11-13; Ex. 12 [6/30/14 Zada Depo.] at 15:23-24, 296:10-297:8; Ex. 14 [4/4/15 E. Benink email]. |

**Appendix A: Evidence Supporting *Alter Ego* Finding[1]**

| *Alter Ego* Factor | Factual Evidence |
|---|---|
| [1] [c]ommingling of funds and other assets, failure to segregate funds of the separate entities, and the unauthorized diversion of corporate funds or assets to other than corporate uses . . .; | The record evidence supports this factor.  *See* Dkt. 696-3, Ex. 1 (line 17); Dkt. 696-3 at 2, ¶ 4; Bridges Decl., Ex. 2 [4/25/14 Zada Depo.] at 171:12-13, 320:7-11, 331:23-25, 338:10-18, 340:14-25, 341:14-20, 499:23-500:4, 547:12-17, 548:15-549:6; Ex. 3 [4/24/14 Zada Depo.] at 159:17-160:5, 165:10-19, 245:21-246:12; Ex. 4 [8/24/14 Zada Depo.] at 248:1-11, 274:20-275:2; Ex. 5 [6/5/14 Chaney Depo.] at 16:17-17:16; 19:21-20:9, 21:2-22:9, 23:18-24:5, 25:3-23, 29:6-31:16, 33:16-34:12, 50:23-51:18; 142:15-144:20; Ex. 6 ["Living Large in the 'Bimbo Vortex,'" *Los Angeles Times*, March 16, 2003]; Ex. 7 [6/25/14 Chou Depo.] at 23:17-22, 25:15-19, 98:20-24, 104:21-105:15, 217:11-13; Ex. 8 [Poblete Depo.] at 74:4-13, 247:1-25, 250:19-251:4; Ex. 9 [Screenshot of Perfect10.com address]; Ex. 10 [Accurint reports]; Ex. 11 [Zillow printouts]; Ex. 12 [6/30/14 Zada Depo.] at 303:24-304:7; Ex. 13 [McCall Depo.] at 37:3-24. |
| [2] the treatment by an individual of the assets of the corporation as his own . . .; | The record evidence supports this factor.  *See* Dkt. 696-3, Ex. 1 (line 17); Dkt. 696-3 at 2, ¶ 4; Bridges Decl., Ex. 2 [4/25/14 Zada Depo.] at 171:12-13, 320:7-11, 331:23-25, 338:10-18, 340:14-25, 341:14-20, 499:23-500:4, 547:12-17, 548:15-549:6; Ex. 3 [4/24/14 Zada Depo.] at 159:17-160:5, 165:10-19, 245:21-246:12; Ex. 4 [8/24/14 Zada Depo.] at 248:1-11, 274:20-275:2; Ex. 5 [6/5/14 Chaney Depo.] at 16:17-17:16; 19:21-20:9, 21:2-22:9, 23:18-24:5, 25:3-23, 29:6-31:16, 33:16-34:12, 50:23-51:18; 142:15-144:20; Ex. 6 ["Living Large in the 'Bimbo Vortex,'" *Los Angeles Times*, March 16, 2003]; Ex. 7 [6/25/14 Chou Depo.] at 23:17-22, 25:15-19, 98:20-24, 104:21-105:15, 217:11-13; Ex. 8 [Poblete Depo.] at 74:4-13, 247:1-25, 250:19-251:4; Ex. 9 [Screenshot of Perfect10.com address]; Ex. 10 [Accurint reports]; Ex. 11 [Zillow printouts]; Ex. 13 [McCall Depo.] at 37:3-24. |
| [3] the failure to obtain authority to issue stock or to subscribe to or issue the same . . .; | This factor is not applicable. |

[1] The *alter ego* factors noted in this chart come from *Zoran Corp. v. Chen*, 185 Cal. App. 4th 799, 811-12 (Cal. Ct. App. 2010).

| *Alter Ego* Factor | Factual Evidence |
|---|---|
| [4] the holding out by an individual that he is personally liable for the debts of the corporation . . .; | The record evidence supports this factor. *See* Dkt. 696-3, Ex. 1 (line 17); Dkt. 696 at 2 n.1; Bridges Decl., Ex. 2 [4/25/14 Zada Depo.] at 338:10-18, 547:12-17, 548:15-549:6; Ex. 3 [4/24/14 Zada Depo.] at 159:17-160:5, 165:12-19; Ex. 4 [8/24/14 Zada Depo.] at 245:21-246:12, 274:20-275:2; Ex. 7 [Chou Depo.] at 104:21-105:15, 217:11-13; Ex. 14 [4/4/15 E. Benink email]; Ex. 13 [McCall Depo.] at 37:3-24. |
| [5] the failure to maintain minutes or adequate corporate records, and the confusion of the records of the separate entities . . .; | The record evidence supports this factor. *See* Dkt. 686 at 44; Bridges Decl., Ex. 2 [4/25/14 Zada Depo.] at 331:23-25, 320:7-11, 338:10-18, 341:14-20, 548:15-549:6; Ex. 5 [Chaney Depo.] at 23:18-24:5, 25:3-23, 29:6-31:16, 33:16-34:12, 35:3-10; Ex. 7 [Chou Depo.] at 25:15-19, 104:21-105:15; Ex. 8 [Poblete Depo.] at 13:9-13, 74:4-13; Ex. 9 [Screenshot of Perfect10.com address]; Ex. 10 [Accurint reports]; Ex. 11 [Zillow printouts]; Ex. 12 [6/30/14 Zada Depo.] at 303:24-304:7; Ex. 13 [McCall Depo.] at 37:3-24. |
| [6] the identical equitable ownership in the two entities; the identification of the equitable owners thereof with the domination and control of the two entities; identification of the directors and officers of the two entities in the responsible supervision and management; | This factor is not applicable, as only one corporate entity is at issue. |
| [7]  sole ownership of all of the stock in a corporation by one individual or the members of a family . . . ; | The record evidence supports this factor. *See* Bridges Decl., Ex. 3 [4/24/14 Zada Depo.] at 165:10-19; Ex. 4 [8/24/14 Zada Depo.] at 246:19-21. |
| [8] the use of the same office or business location; the employment of the same employees and/or attorney . . .; | The record evidence supports this factor. *See* Bridges Decl., Ex. 1 [David Weddle, *Among the Mansions of Eden: Tales of Love, Lust, and Land in Beverly Hills*], at 65; Ex. 2 [4/25/14 Zada Depo.] at 320:7-11; Ex. 5 [Chaney Depo.] at 16:17-17:16; 19:21-20:9, 23:18-24:5, 25:3-23, 29:6-31:16, 33:16-34:12, 35:3-10, 142:15-144:20;  Ex. 6 ["Living Large in the 'Bimbo Vortex,'" *Los Angeles Times*, March 16, 2003]; Ex. 7 [6/25/14 Chou Depo.] at 23:17-22, 25:15-19, 98:20-24; Ex. 8 [Poblete Depo.] at 13:9-13, 250:19-251:4; Ex. 10 [Accurint reports]; Ex. 11 [Zillow printouts] |

| *Alter Ego* Factor | Factual Evidence |
|---|---|
| [9] the failure to adequately capitalize a corporation; the total absence of corporate assets, and undercapitalization . . .; | The record evidence supports this factor. *See* Dkt. 696-3, Ex. 1 (line 17); Dkt. 686, at 17 (*citing* Dkt. 644-15, pp. 159:7-21, 161:16-23), 21, 25; Dkt. No. 644-18, at 50:23-51:10; Bridges Decl., Ex. 2 [4/25/14 Zada Depo.] at 499:23-500:4; Ex. 3 [4/24/14 Zada Depo.] at 159:7-160:5, 165:12-19; Ex. 4 [8/24/14 Zada Depo.] at 248:1-11; Ex. 5 [6/5/14 Chaney Depo.] at 50:23-51:18. |
| [10] the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation . . .; | The record evidence supports this factor. *See* Dkt. 696-3, Ex. 1 (line 17); Dkt. 686, at 17 (*citing* Dkt. 644-15, pp. 159:7-21, 161:16-23), 21, 25; Dkt. No. 644-18, at 50:23-51:10; Bridges Decl., Ex. 1 [David Weddle, *Among the Mansions of Eden: Tales of Love, Lust, and Land in Beverly Hills*], at 65; Ex. 2 [4/25/14 Zada Depo.] at 320:7-11, 338:10-18, 340:14-25, 499:23-500:4, 547:12-17; Ex. 3 [4/24/14 Zada Depo.] at 159:7-160:5, 165:12-19; Ex. 4 [8/24/14 Zada Depo.] at 245:21-246:12, 248:1-11; Ex. 5 [6/5/14 Chaney Depo.] at 16:17-17:16, 21:2-22:9, 23:18-24:5, 25:3-23, 50:23-51:18, 142:15-144:20; Ex. 6 ["Living Large in the 'Bimbo Vortex,'" *Los Angeles Times*, March 16, 2003]; Ex. 7 [6/25/14 Chou Depo.] at 23:17-22, 25:15-19, 104:21-105:15; Ex. 8 [Poblete Depo.] at 247:1-25, 250:19-251:4; Ex. 10 [Accurint reports]; Ex. 11 [Zillow printouts], Ex. 13 [McCall Depo.] at 37:3-24. |
| [11] the concealment and misrepresentation of the identity of the responsible ownership, management and financial interest, or concealment of personal business activities . . . ; | This factor is not applicable. |

| *Alter Ego* Factor | Factual Evidence |
|---|---|
| [12] the disregard of legal formalities and the failure to maintain arm's length relationships among related entities . . . ; | The record evidence supports this factor. *See* Dkt. 696-3, Ex. 1 (line 17); Dkt. 696-3 at 2, ¶ 4; Dkt. 686 at 44; Bridges Decl., Ex. 2 [4/25/14 Zada Depo.] at 171:12-13, 320:7-11, 331:23-25, 338:10-18, 340:14-25, 341:14-20, 499:23-500:4, 547:12-17, 548:15-549:6; Ex. 3 [4/24/14 Zada Depo.] at 159:17-160:5, 165:10-19, 245:21-246:12; Ex. 4 [8/24/14 Zada Depo.] at 248:1-11, 274:20-275:2; Ex. 5 [6/5/14 Chaney Depo.] at 16:17-17:16; 19:21-20:9, 21:2-22:9, 23:18-24:5, 25:3-23, 29:6-31:16, 33:16-34:12, 35:3-10, 50:23-51:18; 142:15-144:20; Ex. 6 ["Living Large in the 'Bimbo Vortex,'" *Los Angeles Times*, March 16, 2003]; Ex. 7 [6/25/14 Chou Depo.] at 23:17-22, 25:15-19, 98:20-24, 104:21-105:15, 217:11-13; Ex. 8 [Poblete Depo.] at 13:9-13, 74:4-13, 247:1-25, 250:19-251:4; Ex. 9 [Screenshot of Perfect10.com address]; Ex. 10 [Accurint reports]; Ex. 11 [Zillow printouts]; Ex. 12 [6/30/14 Zada Depo.] at 303:24-304:7; Ex. 13 [McCall Depo.] at 37:3-24. |
| [13] the use of the corporate entity to procure labor, services or merchandise for another person or entity . . . ; | The record evidence supports this factor. *See* Dkt. 696-3, Ex. 1 (line 17); Dkt. 696-3 at 2, ¶ 4; Dkt. 686, at 17 (*citing* Dkt. 644-15, pp. 159:7-21, 161:16-23), 21, 25,44; Dkt. No. 644-18, at 50:23-51:10; Bridges Decl., Ex. 1 [David Weddle, *Among the Mansions of Eden: Tales of Love, Lust, and Land in Beverly Hills*], at 65; Ex. 2 [4/25/14 Zada Depo.] at 171:12-13, 320:7-11, 331:23-25, 338:10-18, 340:14-25, 341:14-20, 499:23-500:4, 547:12-17, 548:15-549:6; Ex. 3 [4/24/14 Zada Depo.] at 159:17-160:5, 165:10-19, 245:21-246:12; Ex. 4 [8/24/14 Zada Depo.] at 248:1-11, 274:20-275:2; Ex. 5 [6/5/14 Chaney Depo.] at 16:17-17:16; 19:21-20:9, 21:2-22:9, 23:18-24:5, 25:3-23, 29:6-31:16, 33:16-34:12, 35:3-10, 50:23-51:18; 142:15-144:20; Ex. 6 ["Living Large in the 'Bimbo Vortex,'" *Los Angeles Times*, March 16, 2003]; Ex. 7 [6/25/14 Chou Depo.] at 23:17-22, 25:15-19, 98:20-24, 104:21-105:15, 217:11-13; Ex. 8 [Poblete Depo.] at 13:9-13, 74:4-13, 247:1-25, 250:19-251:4; Ex. 9 [Screenshot of Perfect10.com address]; Ex. 10 [Accurint reports]; Ex. 11 [Zillow printouts]; Ex. 12 [6/30/14 Zada Depo.] at 303:24-304:7; Ex. 13 [McCall Depo.] at 37:3-24. |

| *Alter Ego* Factor | Factual Evidence |
|---|---|
| [14] the diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors, or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another . . . ; | The record evidence supports this factor.  *See* Dkt. 696-3, Ex. 1 (line 17); Dkt. 686, at 17 (*citing* Dkt. 644-15, pp. 159:7-21, 161:16-23), 21, 25; Dkt. No. 644-18, at 50:23-51:10; Bridges Decl., Ex. 2 [4/25/14 Zada Depo.] at 499:23-500:4; Ex. 3 [4/24/14 Zada Depo.] at 159:7-160:5, 165:12-19; Ex. 4 [8/24/14 Zada Depo.] at 248:1-11; Ex. 5 [6/5/14 Chaney Depo.] at 50:23-51:18. |
| [15] the contracting with another with intent to avoid performance by use of a corporate entity as a shield against personal liability, or the use of a corporation as a subterfuge of illegal transactions . . .; | This factor is not applicable, as the avoidance of liability in this case is not based on any Perfect 10 contracts.  Rather, the record evidence establishes that Norman Zada uses the corporate entity Perfect 10 as a shield against liability for his own litigation practices.  *See* Dkt. 686, at 18 (*citing* Dkt. No. 644-16, at 541:1-2), 39 n.15, 44-45; Dkt. 355, Declaration of Todd R. Gregorian in Support of Defendants' Motion to Compel Compliance, Ex. 11; Bridges Decl., Ex. 2 [4/25/14 Zada Depo.] at 307:10-16, 343:18-346:4, 351:19-25, 385:13-19, 396:3-397:6, 548:15-549:6; Ex. 4 [8/24/14 Zada Depo.] at 274:20-275:2; Ex. 7 [Chou Depo.] at 217:11-13; Ex. 12 [6/30/14 Zada Depo.] at 15:23-24, 296:10-297:8; Ex. 14 [4/4/15 E. Benink email]. |
| [16] and the formation and use of a corporation to transfer to it the existing liability of another person or entity. | This factor is not applicable.  Rather, the record evidence establishes the opposite issue—namely, that Norman Zada personally engages in abusive litigation practices and attempts to use the corporate form of Perfect 10 to absorb any resulting liability.  *See* Dkt. 686, at 18 (*citing* Dkt. No. 644-16, at 541:1-2), 39 n.15, 44-45; Dkt. 355, Declaration of Todd R. Gregorian in Support of Defendants' Motion to Compel Compliance, Ex. 11; Bridges Decl., Ex. 2 [4/25/14 Zada Depo.] at 307:10-16, 343:18-346:4, 351:19-25, 385:13-19, 396:3-397:6, 548:15-549:6; Ex. 4 [8/24/14 Zada Depo.] at 274:20-275:2; Ex. 7 [Chou Depo.] at 217:11-13; Ex. 12 [6/30/14 Zada Depo.] at 15:23-24, 296:10-297:8; Ex. 14 [4/4/15 E. Benink email]. |