UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | |
|---|---|
| Case No.:   CV 11-07098-AB (SHx) | Date:   June 3, 2015 |

Title:   *Perfect 10, Inc. v. Giganews, Inc., et al.*

Present: The Honorable    ANDRÉ BIROTTE JR.

|  Carla Badirian  |  N/A  |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Appearing | None Appearing |

**Proceedings:**      **[In Chambers] Order DENYING Defendants' Motion to Amend the Judgment to Add Norman Zada as an Additional Judgment Debtor and for a Supplemental Award of Attorneys' Fees (Dkt. No. 709)**

Pending before this Court is Defendants' motion to amend the judgment to add Norman Zada as an additional judgment debtor as Plaintiff Perfect 10's ("Perfect 10") alter ego, and to include a supplemental award of attorneys' fees.   (Dkt. No. 709.)   For the reasons discussed below, Defendants have failed to meet their burden of showing by a preponderance of the evidence that it is necessary to add Norman Zada to the judgment as to avoid injustice, and the Court **DENIES** Defendants' request to amend the judgment to add Norman Zada as an additional judgment debtor.   The Court further finds that Defendants supplemental request for attorneys' fees is untimely under Federal Rule of Civil Procedure 54(d), and **DENIES** Defendants' request for an additional $574,582.50 in fees.   (Dkt. No. 709.)

## I.    BACKGROUND

The issues before the Court are well known to the parties, and the Court has already summarized much of the evidence offered by Defendants, Perfect 10, and Norman Zada at length in its recent orders in this case.   (*See* Dkt. Nos. 712, 686, 682,

619-621.)   The Court does not repeat that evidence here except to the extent it is directly relevant to the Court's findings in this motion, in which case the Court sets that specific evidence forth below.[1]

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 69 permits a district court to enforce a money judgment in "accord with the procedure of the state where the court is located" unless federal law provides otherwise.   Fed. R. Civ. P. 69(a)(1).   Put simply, "Rule 69(a)…permits judgment creditors to use any execution method consistent with the practice and procedure of the State in which the district court sits."   *Peacock v. Thomas*, 516 U.S. 349, 359 n.7 (1996).   California law, in turn, affords courts "all the means necessary to carry [their jurisdiction] into effect…."   Cal. Code Civ. Proc. 187. Specifically, California Code of Civil Procedure section 187 gives trial courts the authority to "add a third party to a judgment" as an additional judgment debtor "to satisfy the original judgment."   *Wells Fargo Bank, N.A. v. Weinberg*, 227 Cal. App. 4th 1, 7, 173 Cal. Rptr. 3d 113 (Ct. App. 2014).   "Utilizing section 187, judgments are typically amended to add additional judgment debtors on the grounds that a person or entity is the alter ego of the original judgment debtor. This is an equitable procedure based on the theory that the court is not amending the judgment to add a new defendant but is merely inserting the correct name of the real defendant."   *McClellan v. Northridge Park Townhome Owners Ass'n, Inc.*, 89 Cal. App. 4th 746, 752, 107 Cal. Rptr. 2d 702, 706 (Ct. App. 2001) (internal quotes and edits omitted).   "This circuit has approved the use of the state procedure in federal court pursuant to Federal Rule of Civil Procedure 69(a)." *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1148 (9th Cir. 2004).[2]

"To amend a judgment under § 187, two requirements must usually be met: '(1) that the new party be the alter ego of the old party and (2) that the new party had controlled the litigation, thereby having had the opportunity to litigate, in order to satisfy due process concerns.'"   *In re Levander*, 180 F.3d 1114, 1121 (9th Cir. 1999), quoting

---

[1]   The Court **SUSTAINS** Mr. Zada's first through fourth evidentiary objections to Defendants' initial evidence and **OVERRULES** Mr. Zada's fifth objection.   (Dkt. No. 715.)   The Court further **GRANTS** Zada's unopposed request to submit supplemental evidence in response to Defendants' reply evidence (Dkt. No. 727) and **DENIES** his alternative request to strike Defendants' reply evidence as moot in light of Mr. Zada's opportunity to respond to Defendants' reply evidence.   (Dkt. No. 728, pp. 1-8.)   As to Mr. Zada's specific objections to Defendants' reply evidence, the Court **OVERRULES** Zada's first objection and **SUSTAINS** his second and third objections.   (Dkt. No. 728, pp. 7-9.)   The Court **OVERRULES** Defendants' first through fourth and twenty-second objections to Zada's evidence and **SUSTAINS** Defendants' fourth through twenty-first objections.   (Dkt. No. 717.)

[2]   Under Cal. Code Civ. Proc. 187, a court may add additional judgment debtors to a judgment by a noticed motion, and the "trial court is not required to hold an evidentiary hearing."   *Wells Fargo Bank, N.A. v. Weinberg*, *supra*, 227 Cal. App. 4th at 9.

*Triplett v. Farmers Ins. Exchange*, 24 Cal. App. 4th 1415, 1421, 29 Cal. Rptr. 2d 741 (1994). The party seeking to add a third party to a judgment under California Code of Civil Procedure section 187 must prove both elements by a preponderance of the evidence. *Wollersheim v. Church of Scientology*, 69 Cal. App. 4th 1012, 1017, 81 Cal. Rptr. 2d 896, 899-900 (Ct. App. 1999).

### A. Alter Ego Liability

Beginning with the first element under section 187 – whether the new party is the alter ego of an old party – federal courts "apply the law of the forum state in determining whether a corporation is an alter ego" of an individual. *Towe Antique Ford Foundation v. I.R.S.*, 999 F.2d 1387, 1391 (9th Cir. 1993). "California law recognizes an alter ego relationship, such that a corporation's liabilities may be imposed on an individual, only when two conditions are met: (1) there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased, and (2) an adherence to the fiction of the separate existence of the corporation would sanction a fraud or promote injustice." *S.E.C. v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003) (internal quotes and edits omitted). Under California law, "[a]lter ego is an extreme remedy, sparingly used." *Hasso v. Hapke*, 227 Cal. App. 4th 107, 155, 173 Cal. Rptr. 3d 356, 395 (Ct. App. 2014), quoting *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 539, 99 Cal. Rptr. 2d 824, 836 (Ct. App. 2000).

### 1. Unity of Interest

California courts have articulated as many as 20 different factors that may be appropriate to consider in determining alter ego liability. *See Zoran Corp. v. Chen*, 185 Cal. App. 4th 799, 811-812, 110 Cal. Rptr. 3d, 597 606-07 (Ct. App. 2010). Among those various factors courts have considered are whether:

- the individual and the corporation commingled their assets or failed to segregate their funds;

- the individual treated the corporate assets as his own;

- the individual held himself out as being personally liable for the corporate debts;

- the corporation maintained minutes or held regular board meetings;

- a single individual or family owned all of the corporate equity;

- the corporation was adequately capitalized;

- the individual utilized the corporation as a shell; and

- the individual disregarded legal formalities.

*Id.*

However, "[t]here is no litmus test" under California law to determine when an individual shareholder may be said to be the alter ego of a corporation. *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300, 702 P.2d 601, 606 (1985). "No one characteristic governs, but the courts must look at all the circumstances to determine whether the doctrine should be applied." *Sonora Diamond Corp. v. Superior Court*, *supra*, 83 Cal. App. 4th at 539. The ultimate question is not whether any individual factor weighs in favor of or against holding an individual liable for the acts of the corporation, or even by adding up the number of factors that counsel for or against alter ego liability. Rather, "[t]he essence of the alter ego doctrine is that justice be done." *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d at 301. If, under the circumstances of the case, it would be inequitable to treat the individual and the corporation as separate entities, courts should avoid that inequitable result by disregarding the distinction between corporation and individual and impose liability "to reach an equitable result." *Id.* (internal quotes omitted). Because that determination "is essentially an equitable one," it "is particularly within the province of the trial court." *Zoran Corp. v. Chen*, 185 Cal. App. 4th at 811, quoting *Stark v. Coker*, 20 Cal.2d 839, 846, 129 P.2d 390 (Cal. 1942).

## 2. Injustice

Still, given the importance of the corporate form, and its traditional limitations on individual liability, the doctrine of alter ego liability should be narrowly applied to circumstances where it is truly necessary to avoid injustice. *Mesler v. Bragg Mgmt. Co.*, *supra*, 39 Cal. 3d at 301. "The injustice that allows a corporate veil to be pierced is not a general notion of injustice; rather, it is the injustice that results only when corporate separateness is illusory." *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, *supra*, 394 F.3d at 1149. "Difficulty in enforcing a judgment or collecting a debt does not satisfy this standard." *Sonora Diamond Corp. v. Superior Court*, *supra*, 83 Cal. App. 4th at 539. "In almost every instance where a plaintiff has attempted to invoke the doctrine he is an unsatisfied creditor." *Mid-Century Ins. Co. v. Gardner*, 9 Cal. App. 4th 1205, 1213, 11 Cal. Rptr. 2d 918, 923 (Ct. App. 1992), quoting *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 26 Cal. Rptr. 806 (Ct. App. 1962). Permitting a party to invoke the alter ego doctrine simply because he cannot otherwise satisfy the judgment would eviscerate the primary protection the corporate form is designed to offer – insulation from individual liability. Rather, the alter ego doctrine serves to offer an equitable solution where an individual abuses the benefits of the corporate form, using its protections against individual liability as a sword rather than a shield to take action in bad faith. *Id.* ("The purpose of the doctrine is not to protect every unsatisfied creditor, but rather to afford him protection, where some conduct *amounting to bad faith* makes it inequitable, under the applicable rule above cited, for the

equitable owner of a corporation to hide behind its corporate veil.") (emphasis in original).

### B.     Control Over the Litigation

In addition to establishing the propriety of alter ego liability, a litigant seeking to add a third party to a judgment under California Code of Civil Procedure section 187 must demonstrate that the third party had control over the underlying litigation.  *NEC Electronics v. Hurt*, 208 Cal. App. 3d 772, 778-79, 256 Cal. Rptr. 441, 444-45 (Ct. App. 1989).   This second element serves to protect the alter ego's due process rights by ensuring that the alter ego had "occasion to conduct [the underlying litigation] with a diligence corresponding to the risk of personal liability that was involved."  *Katzir's Floor and Home Design, Inc. v. M-MLS.com*, *supra*, 394 F.3d at 1149-50, quoting *NEC Electonics v. Hurt*, 208 Cal. App. 3d at 778-79.   "Control of the litigation sufficient to overcome due process objections may consist of a combination of factors, usually including the financing of the litigation, the hiring of attorneys, and control over the course of the litigation."  *NEC Electronics, Inc. v. Hurt*, *supra*, 208 Cal. App. 3d at 781, (internal quotes omitted).   Put more broadly, the alter ego must been "actively involved" in the underlying lawsuit such that he can be said to have had an opportunity to protect his individual interests.  *Id*.; *compare Directi Internet Solutions Pvt. Ltd. v. Dhillon*, No. CIV. 2:12-1045 WBS, 2014 WL 3057514, at *1 (E.D. Cal. July 7, 2014) ("due process concerns take on an even greater importance where the underlying litigation resulted in a default judgment or was otherwise not contested").

## III.   DISCUSSION

Defendants urge the Court to add Norman Zada to the judgment as an additional judgment debtor under Rule 69(a) and California Code of Civil Procedure section 187. (Dkt. No. 709.)   Zada opposes.   (Dkt. No. 714.)   Defendants further move the Court to amend the judgment to include an additional award of $574,582.50 in attorneys' fees. (DKt. No. 709.)   Perfect 10 opposes that additional request (Dkt. No. 716) and Zada joins Perfect 10's Opposition.   (Dkt. No. 714, p. 1, n.1.)

### A.     Adding Norman Zada to the Judgment

Beginning briefly with the second element under California Code of Civil Procedure section 187 – Mr. Zada's control over the litigation – Zada does not dispute that Defendants have satisfied their burden to show that Zada exercised extensive control over the underlying litigation and that Zada was "actively involved" in prosecuting this action.   As the Court noted in its order granting Defendants' motion for attorneys' fees and non-taxable costs, Mr. Zada directed every aspect of this litigation, spending thousands of hours on this case alone, drafting briefs, interjecting questions at deposition, drafting and editing expert declarations, and (improperly) offering oral argument before

the magistrate judge. (Dkt. No. 686, pp. 44-45 (citing evidence); *see also* Dkt. No. 709, pp. 7-9 (collecting similar evidence).) Indeed Mr. Zada even attempted to testify as an expert witness on Perfect 10's behalf. (See Dkt. No. 582.) The Court agrees with Defendants' undisputed assertion that Zada exercised sufficient control over this litigation to satisfy the requirements of due process.

The only disputed question before the Court under California Code of Civil Procedure section 187 is whether Mr. Zada is Perfect 10's alter ego such that it would be equitable to "pierce" the proverbial corporate veil and hold Mr. Zada accountable for the judgment against Perfect 10. Because the Court finds that a finding of alter ego liability is not necessary to avoid injustice in this case, the Court answers that remaining question in the negative.

> **1.      Defendants Have Not Met their Burden to Prove an Injustice Would Result if the Court Does Not Add Mr. Zada to the Judgment**

It may be, although the Court need not conclusively find, that Zada and Perfect 10 have a sufficient unity of interest to support a finding of alter ego liability. Mr. Zada is Perfect 10's sole shareholder, officer, director, and investor. (Dkt. Nos. 703-3, p. 547:12-17; 703-4, p. 165:10-19; 714-2, Exh. 1.) In deposition, Zada repeatedly described Perfect 10's assets as his own. (*See* Dkt. No. 703-5, pp. 274:20-275:13.) Zada "mix[ed] his personal social life and his business life pretty thoroughly in his role at Perfect 10." (Dkt. No. 703-8, p. 25:15-19.) Zada had Perfect 10 employees perform numerous personal services for him, including giving him massages, performing personal clerical tasks, and ghostwriting his personal biography. (Dkt. No. 703-6, pp. 17:1-16, 21:2-22:9; 703-9, pp. 250:19-251:1-4.) Although the evidence suggests Zada paid for at least some of those personal services himself. (*See* Dkt. No. 714-3, ¶ 8.) And there is at least some evidence to suggest that Zada regularly paid Perfect 10 employees for their Perfect-10-related work from his personal bank accounts. (*See* Dkt. No. 703-8, pp. 104:21-105:1-15, 114:11-13.) Zada never maintained separate personal or business email accounts (Dkt. No. 703-13, pp. 303:24-304:7.) On the other hand Perfect 10 and Zada have always maintained separate bank accounts (Dkt. No. 714-1, ¶ 7), and Perfect 10 regularly conducts annual corporate board meetings. (Dkt. No. 714-2, ¶ 4, Exh. 1.)

The Court need not determine whether Zada and Perfect 10 shared a unity of interests, however, because Defendants have failed to meet their burden to show by a preponderance of the evidence that it would be inequitable to respect the corporate form in this instance. Even Defendants acknowledge that a litigant's "inability to pay" does not satisfy this second element of alter ego liability under California law. (Dkt. No. 725, p. 10:23.) Again, "[d]ifficulty in enforcing a judgment or collecting a debt does not satisfy this standard" of inequity or injustice. *Sonora Diamond Corp. v. Superior*

*Court*, *supra*, 83 Cal. App. 4th at 539.   Instead, Defendants argue that it would be unjust to respect corporate separateness in this instance because Perfect 10 "organized and carrie[d] business without substantial capital in such a way that the corporation [was] likely to have no sufficient assets available to meet its debts," which, in itself, is would lead to an unjust result by allowing Zada to "set up such flimsy organization to escape personal liability."   (Dkt. No. 7089, p. 13:9-13, quoting *Automotriz Del Golfo De California S. A. De C. V. v. Resnick,* 47 Cal. 2d 792, 797, 306 P.2d 1 (Cal. 1957).)

Defendants have not met their burden, however, of demonstrating by a preponderance of the evidence that Zada so undercapitalized Perfect 10 to ensure that it would have insufficient assets to pay its debts or that Zada misused the corporate form to "escape personal liability" for his own debts.   In nearly 20 years of operations, Perfect 10 has never been unable to pay a debt until the instant judgment.   (Dkt. No. 714-2, ¶ 23.)   Indeed, Perfect 10 has regularly maintained in excess of $1,000,000 in net assets and equity.   (Dkt. Nos. 726-1 thru 726-17.)   When Perfect 10 brought suit in 2011, it had roughly $1.7 million in net assets and equity (Dkt. No. 726-14, p. 412), and it had in excess of $2 million in net assets and equity on March 31, 2014, the last date for which the information is available to the Court.   (Dkt. No. 726-17, p. 509.)   Moreover, those numbers do not reflect the value of Perfect 10's admittedly sizeable library of intellectual property.   (Dkt. No. 714-1, ¶ 6.)   Perfect 10 owns more than 70,000 copyrights and a number of trademarks, which have a significant additional market value.   (Dkt. No. 714-2, ¶¶ 10-15, Exh. 2.)

Put simply, "[t]here is no evidence [Zada] 'stripped' [Perfect 10] of its assets." *Sonora Diamond Corp. v. Superior Court*, *supra*, 83 Cal. App. 4th at 547.   To the contrary, the evidence shows that Zada left Perfect 10 with millions of dollars in net assets.   As Perfect 10's sole shareholder, those assets were ultimately Zada's to lose in the event of a judgment against Perfect 10, and Zada left them with Perfect 10.[3]   Perhaps most importantly, given the record regarding Perfect 10's existing assets, Defendants have failed to demonstrate that Perfect 10 currently has insufficient assets to satisfy the judgment were it to sell some or all of its intellectual property.   Defendants have not, for example, made any attempt to estimate the value of Perfect 10's trademark and copyright catalogue to show that, when combined with Perfect 10's other net assets, Perfect 10 has insufficient capital to satisfy the judgment in full.   In 2009, for example, Perfect 10 received an offer to sell the "Perfect 10" trademark alone for $1 million.   (Dkt. No. 714-2, ¶ 15.)   And as recently as 2011, an outside investor valued Perfect 10 at $8 million, offering $4 million for a 50 percent equitable stake in the company.   (*Id*.) Defendants offer no evidence to suggest that Perfect 10's net capitalization has

---

[3]  It is true that Zada drew down his capital contributions in Perfect 10 between 2010 and 2012 (Dkt. No. 726-18.)   But, as mentioned above, Perfect 10's net assets actually increased since 2010 despite Zada's capital withdrawals.   (*Id*.)   In any event, Zada has not drawn out any of his capital investment in more than two years.   (*Id*.)

significantly decreased since that time.   Indeed, Defendants' own evidence demonstrates that Perfect 10 ran at an operating profit for 4 of the last five years (Dkt. No. 726-18), suggesting ongoing corporate value that would support, rather than undermine those prior valuations.

Though clearly under Mr. Zada's exclusive control, the evidence does not support a finding that Perfect 10 is the "empty corporate shell" Defendants believe it is.[4]   (Dkt. No. 709, p. 14:5.)   Defendants cite no authority to suggest that a corporation may be considered "undercapitalized" absent a showing that it lacks sufficient capital to satisfy the debt in question.   The Court finds none.   *Compare Laborers Clean-Up Contract Admin. Trust Fund v. Uriarte Clean-Up Serv., Inc.*, 736 F.2d 516, 525 n.13 (9th Cir. 1984) (fact that a litigant "is insolvent does not of itself constitute an inequitable result"). "Without such evidence, the alter ego doctrine cannot be invoked" (*Sonora Diamond Corp.*, *supra*, 83 Cal. App. 4th at 539), and the Court cannot add Mr. Zada to the judgment under California Code of Civil Procedure section 187 irrespective of whether Zada and Perfect 10 had a unity of interests.

### 2.    The Court's Prior Order on Attorneys' Fees Is Consistent with its Conclusion that Defendants Have not Met their Burden to Show Undercapitalization

Defendants also suggest the Court should find that Zada undercapitalized Perfect 10 because the Court previously "found that Perfect 10's 'impecunity is intentional.'" (Dkt. No. 709, pp. 2:20, 12::11-12, citing Dkt. No. 686, pp. 21, 25.)   To begin with, the Court did not so "find."   Rather, the Court rejected Perfect 10's argument that its financial condition prohibited an award of attorneys' fees because, given Perfect 10's repeated insistence that it was on the verge of bankruptcy, Perfect 10's argument would mean that even a serial litigant like Perfect 10 was effectively immune from an adverse award of attorneys' fees under the Copyright Act.   (Dkt. No. 686, p. 25:6-23.)   In so holding, the Court noted that at least some evidence "*suggest[ed]* Perfect 10's impecunity is intentional."   (Dkt. No. 686, p. 25:22-23.)[5]   The Court also rejected Perfect 10's argument that it could not have possibly brought suit with an improper motive because it

---

[4]  There is a difference between saying that the judgment might force Perfect 10 to shut down and that Perfect 10 has insufficient capital to satisfy the judgment.   It may be that Perfect 10 is forced to shut down and liquidate its assets to satisfy the judgment.   But so long as Perfect 10 has sufficient assets to liquidate, that is Perfect 10's problem, not Defendants'.

[5]  The evidence the Court previously noted as "suggesting" that Perfect 10's "impecunity is intentional" was the deposition testimony of longtime Perfect 10 model and employee Rebekah Chaney.   (Dkt. No. 686, p. 25:22-23, citing Dkt. No. 644-18, p. 51:4-8.)   In opposition to this motion, Mr. Zada attacks Ms. Chaney's credibility as a witness and urges the Court to discount her deposition testimony.   (Dkt. No. 714, pp. 17-18.)   The Court did not and does not haveany reason to pass on the appropriate weight to afford Ms. Chaney's testimony because it is not essential to any issue before the Court.

loses money on litigation, noting Mr. Zada's own testimony that he is able to write-off Perfect 10's losses for tax purposes (*see* Dkt. No. 644-17, p. 248:1-11), and again noting the evidence that he sees those losses as a benefit.   (*Id*., at pp. 20:25-21:7.)   However, the Court emphasized then, and reiterates now, that its finding that Perfect 10 brought suit with an improper motive was grounded in "Perfect 10's own conduct in this litigation." (*Id*., at p. 21:7-9.)   Namely, its ongoing refusal to make any sincere efforts to protect its copyrights by submitting compliant DMCA notices and its unnecessarily litigious behavior.

The Court did not go so far as to "find" that Mr. Zada actually does operate Perfect 10 at an intentional loss (i.e., by weighing the evidence in supporting and contradicting that conclusion) because it was unnecessary to do so.   (*See, e.g.*, Dkt. No. 712, p. 8 n.6 [order denying Defendants' motion for review of the magistrate judge's order, noting *Defendants* have repeatedly made this argument].)   In any event, there is a significant difference between saying that Zada intended Perfect 10 to sometimes run at an *operating loss* and saying that Perfect 10 was *undercapitalized*.   As Perfect 10's financial records demonstrate, it frequently maintained multi-million dollar capital reserves (to say nothing of the value of its intellectual property), even when it ran at an operating loss.   (Dkt. Nos. 726-1 thru 726-17.)   Even if the Court had "found" that Zada ran Perfect 10 at an operational loss for tax purposes (it did not), such a finding would be entirely consistent with the Court's conclusion here that Defendants have failed to meet their evidentiary burden of proving Perfect 10 was undercapitalized to pay its reasonably foreseeable debts.[6]

### B.    Supplemental Attorneys' Fees

Defendants also move the Court to award them an additional $574,582.50 in attorneys' fees incurred after December 24, 2014 for work performed on:

- Reply briefing on the motion for attorneys' fees;

- Further briefing and argument on the motion for sanctions before Magistrate Judge Hillman;

- The motion for review of Magistrate Judge Hillman's order denying Defendants' motion for sanctions as moot;

---

[6]  Nor would the fact that Perfect 10 has recently operated at a profit undermine the notion that Mr. Zada intentionally ran Perfect 10 at an operating loss, if the Court had so found.   As Mr. Zada's own tax records show, in 2010, Perfect 10's prior losses gave Mr. Zada a nearly $11 million loss carryover. (Dkt. No. 714-1, Exh. 3, p. 4.)   Because that loss continues to carry forward on Mr. Zada's taxes, he has reported (and can continue to report) six- or seven-digit income from Perfect 10 and other investments tax-free for several years while still maintaining a substantial loss carryover.   (Dkt. No. 714-1, Exh. 3, pp. 5-8.)

- Preparation to oppose a proposed *ex parte* application that Perfect 10 ultimately did not file;

- Responding to various proposals by Perfect 10; and

- Preparing this motion.

(Dkt. No. 709, pp. 15-16.)

Pursuant to Federal Rule of Civil Procedure 54(d)(2)(B)(i) and Civil Local Rule 54-10, a party seeking attorneys' fees must generally make that request within 14 days after entry of judgment. "Although the 14–day period is not jurisdictional, the failure to comply with Rule 54 should be sufficient reason to deny the fee motion, absent some compelling showing of good cause." *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 889-90 (9th Cir. 2000) (internal quotes and insertions omitted). Here, the Court extended Defendants' deadline to move for an award of attorneys' fees to 28 days and Defendants timely filed their original motion for attorneys' fees on December 29, 2014.[7]   (Dkt. No. 644.)   In bringing their original motion, however, Defendants were required to "state the amount sought or provide a fair estimate of it" in their moving papers. Fed. R. Civ. P. 54(d)(2)(B)(iii). As the Advisory Committee notes to Rule 54 explain, the purpose this requirement is to provide "sufficient [information] to alert the adversary and the court that there is a claim for fees, and the amount of such fees (or a fair estimate)." Fed. R. Civ. P. 54, 1993 Advisory Committee notes. The "fair estimate" provision allows a party seeking fees to do so even when "the motion [cannot] be supported at the time of filing with the evidentiary material bearing on the fees." *Id.* Rule 54's requirement that a party estimate yet-unincurred attorneys' fees, in turn, supports Rule 54's broader preference "for the court to resolve fee disputes shortly after" judgment which "enables the court in appropriate circumstances to make its ruling on a fee request in time for any appellate review of a dispute over fees to proceed at the same time as review on the merits of the case." *Id.*

Defendants contend that they "timely requested the fees at issue" in this motion (Dkt. No. 725, p. 12:12-13) because they asked in their initial motion for attorneys' fees that the Court "set a date for Defendants to supplement their request with later fees and costs for inclusion in a final award." (Dkt. No. 644, p. 25:23-24.) But such an amorphous request is inadequate under Rule 54(d)(2)(B)(iii), which requires, at minimum, a "fair estimate" of any additional fees that would be impossible to precisely tally at the time of filing, and the Court did not grant it.[8] Defendants "could have

---

[7] Although the Court signed the judgment on November 26, 2014, the clerk did not enter it (thereby giving notice of its entry to Defendants) until December 1, 2014.

[8] As one district court has noted, such a vague request tacked on the end of a fee motion "is insufficient" under Rule 54(d)(2)(B)(iii) "as it specifies neither the impetus for, nor any calculation of such 'additional amounts.'"   *King v. Midland Credit Mgmt., Inc.*, No. 11-CV-02808-CMA-BNB, 2013

complied with Rule 54 in" their December 29, 2014 "motion by giving a 'fair estimate'
of the amount of fees [they] would expend in litigating" the remaining issues in this case.
*King v. Midland Credit Mgmt., Inc.* ("*King I*"), No. 11-CV-02808-CMA-BNB, 2013 WL
2236934, at *2 (D. Colo. May 21, 2013). aff'd, 549 Fed. App'x 791 (10th Cir. 2013).   At
the time of their initial fee motion, for example, Defendants could have reasonably
anticipated that they would file a reply to the fees motion, continue litigating the
sanctions motion which was already pending before Magistrate Judge Hillman at the
time, seek to add Mr. Zada to the judgment, and respond to various post-judgment
proposals.   "Simply put, [Defendants] did not face an insurmountable obstacle in
providing an estimate in [their] first motion."   *King v. Midland Credit Mgmt., Inc.*
("*King II*"), 549 Fed. App'x 791, 794 (10th Cir. 2013)   Nonetheless, Defendants failed
to offer any "fair estimate" of the attorneys' fees they would spend litigating future
issues, all of which were reasonably foreseeable at the time of their initial motion, and
their "supplemental" request for fees – filed nearly four months after that initial estimate
was due – is untimely.   *Kona Enterprises, Inc. v. Estate of Bishop*, *supra*, 229 F.3d at
889-90.

It is also worth observing that the Court did not rule on Defendants' initial fee
request until March 24, 2015.   That is, the vast majority of Defendants' "supplemental
fees and expenses applied for [here] were incurred, and therefore known to [Defendants]
prior to" this Court's March 24, 2015 decision.   *United States v. Eleven Vehicles, Their
Equip. & Accessories*, 200 F.3d 203, 210 (3d Cir. 2000), *cited with approval on other
grounds in Gwaduri v. I.N.S.*, 362 F.3d 1144, 1146 (9th Cir. 2004).   To the extent
Defendants incurred fees that were truly unforeseeable or impossible to estimate at the
time they filed their initial motion, they "could have and should have supplemented their
fee request *prior to* the court's decision" on their original (i.e., timely) fee motion.[9]   *Id.*

---

WL 2236934, at *2 (D. Colo. May 21, 2013) aff'd, 549 Fed. App'x 791 (10th Cir. 2013).

[9] Even Defendant's motion for review of the Magistrate's order was clearly foreseeable months before
the Court ruled on the fee motion on March 24.   Magistrate Judge Hillman indicated early on that he
would likely consider the request for discovery sanctions moot if this Court were to grant Defendants'
fee motion.   As early as January 6, 2015, Magistrate Judge Hillman noted that this Court's "ruling [on
the attorneys' fee motion] could potentially impact the outcome of the Discovery Sanctions Motion" as
the fees Defendants sought as a sanction were likely "subsumed within the Attorney Fees Motion."
(Dkt. No. 647.)   Defendants' own billing records reflect that they did, in fact, foresee their objection to
Magistrate Judge Hillman's mootness conclusion, and *immediately* began to research and brief the issue.
(Dkt. No. 703-19, p. 185 (billing entries dated January 6, 2015 and January 7, 2015 for "Research
mootness of discovery sanctions proceeding" and January 8, 2015 billing entry for "revise and review
section regarding mootness.")   Even if this Court had denied Defendants' fee motion such that
Magistrate Judge Hillman could have confirmed his interim findings and awarded fees as a sanction,
Perfect 10 made known as early as February 2015 that it would seek review of such an order.   (*See* Dkt.
No. 703-19, p. 207 (February 9, 2015 billing entry by Defendants' counsel regarding "P10's anticipated
motion for review of sanctions order").   Either way, Defendants' should have foreseen *some form* of
motion practice regarding Magistrate Judge Hillman's ruling on the sanctions motion.   *See also*, *King*

(emphasis added).   They did not.   Instead, Defendants waited another month after the Court granted their initial fee motion to bring this untimely request for supplemental fees. Defendants fail to show any justification for their delay in making their supplemental fee request, let alone make the requisite "compelling showing of good cause." *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d at 889-90.   That alone is "sufficient reason to deny the fee motion."   *Id*. at 889.[10]

## IV.   CONCLUSION

"Alter ego is an extreme remedy, sparingly used" (*Hasso v. Hapke*, 227 Cal. App. 4th at 155), and Defendants fail to demonstrate by a preponderance of the evidence that this is one of the rare instances where that extreme remedy is necessary to avoid injustice. The only evidence before the Court regarding Perfect 10's actual capitalization suggests that Perfect 10 may yet have sufficient capital to satisfy the judgment, and, in any event Defendants have surely not proven by a preponderance of the evidence that Zada purposefully undercapitalized Perfect 10 to the point of being a shell corporation. Absent such evidence, the Court cannot impose alter ego liability on Mr. Zada no matter how closely his interests were aligned with Perfect 10's.

Moreover, Defendants' untimely request for another half-million dollars in attorneys' fees ignores their initial obligation to give a fair estimate of their fees when they brought their initial fee motion in December 2014.   While Rule 54 did not require Defendants to provide a perfect accounting of yet-unexpended fees, it did demand that they make a reasonable attempt to estimate foreseeable expenses.   Defendants did not do so, nor did they ever attempt so supplement their fee request before the Court ruled on their motion some three months later.   That delay frustrated the purpose of Rule 54(d), which is aimed at ensuring speedy resolution of fee disputes.   The Court will not exercise its discretion to permit a belated fee request absent a "compelling showing of good cause" for Defendants' delay.   *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d at 889-90.   Defendants offer none.

In light of the foregoing, the Court **DENIES** Defendants' motion to amend the judgment by adding Norman Zada as an additional judgment debtor and for an award of an additional $574,582.50 in attorneys' fees.

**IT IS SO ORDERED**

---

*II*, 549 Fed. App'x. at 794 (post-judgment objection to magistrate judge's recommendation "is not a 'judgment'" that would restart the time to bring a fee motion).

[10]   As the Tenth Circuit correctly observed in *King II*, Defendants' suggestion that they only seek "supplemental" fees "obviously fails because [their] supplemental motion [seeks] fees for new work previously unmentioned."   *King II*, 549 Fed. App'x at 794.   The belated request cannot, therefore "relate back to [Defendants'] initial motion for fees."   *Id*.